**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| D&T PARTNERS, LLC, successor-in-interest to ACET Venture Partners, LLC, | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Cause: 3:21-CV-1171-B |
| v. | § | |
| | § | |
| BAYMARK PARTNERS, LP, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**WINDSPEED AND MR. SZETO'S BRIEF IN SUPPORT OF MOTION
TO DISMISS CLAIMS PURSUANT TO RULE 12(B)(6)**

Jason T. Rodriguez
   Texas State Bar No. 24042827
   *Attorney-In-Charge*
Timothy P. Woods
   Texas State Bar No. 21965500
Gordon W. Green
   Texas State Bar No. 24083102

HIGIER ALLEN & LAUTIN, P.C.
2711 N. Haskell Ave., Suite 2400
Dallas, Texas 75204
Telephone: (972) 716-1888
Facsimile: (972) 716-1899
jrodriguez@higierallen.com
twoods@higierallen.com
ggreen@higierallen.com


ATTORNEYS FOR WINDSPEED TRADING, LLC, MR. WILLIAM SZETO, MS. ZHEXIAN LIN, MS. DANA MARIE TOMERLIN, MS. PADASAMAI VATTANA; MS. PAULA KETTER, MS. VANESSA TORRES

## TABLE OF CONTENTS

I. SUMMARY………………………………………………………………….....   1

II. BACKGROUND…………………………………………………………….  2

A. Procedural Background……………………………………………….   2

B. Summary of Averments in the Complaint……………………………………   3

i. Windspeed Trading, LLC…………………………………….....…………………….   3

ii. William Szeto…………………………………………………………..…….   4

iii. Foreclosure Sale is the Alleged Racketeering Activity……………………………...   4

III. ARGUMENTS AND AUTHORITIES ………………………………….....   5

A. Rule 12(b)(6) Standard ……………………………………………………   5

B. Rule 9(b) Standard…………………………………………………………   6

C. Plaintiff Fails to Establish Elements Common to All RICO Causes of Action ……...   7

D. Plaintiff has Not Alleged an Association-in-Fact as a Matter of Law with Windspeed or Mr. Szeto ……………………………………………………………...   8

i. Plaintiff Fails to Establish Windspeed is a RICO "Person" or a Part of an Association-in-Fact Enterprise …………........................................................   10

ii. Plaintiff Fails to Establish Mr. Szeto as a RICO Person…………………………….   11

E. Plaintiff Fails to Establish that Windspeed Itself is a Racketeering Enterprise………   12

F. 1962(c) – Count I …………………………………………………………   13

G. 1962(a) – Count II …………………………………………………………   14

H. 1962(d) – Count III ………………....……………………………….……..   14

i. Plaintiff Fails to Meet Heightened Pleading Standard and Establish Intent for Conspiracy......…………………………………………………………………….   15

G. State Law Causes of Action…………………………………………………   18

i. Fraud…………………………………………………………………....…   18

ii. Breach of Fiduciary Duty and Aiding and Abetting……………………………........   19

iii. Texas Uniform Fraudulent Transfer Act (TUFTA)……………………………   20

iv. Civil Conspiracy……………………………………………………………   21

H. The Court Should Decline To Exercise Supplemental Jurisdiction Over State Law Claims……………………………………………………………………………..   22

VI. CONCLUSION……………………………………………………………   22

V. PRAYER…………………………………………………………………   23

## TABLE OF AUTHORITIES

Cases

*Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007)……………………………….. 13

*Allstate Insurance Company v. Benhamou*, 190 F. Supp. 3d 631, 648 (S.D. Tex. 2016) 10

*Alufase USA LLC v. Palma*, 2016 WL 3911127, at *3 (S.D. Tex. May 6, 2016)……… 6

*Armendariz v. Chowaiki*, 2016 WL 8856919, at *9 (W.D. Tex. Mar. 31, 2016)………. 9

*Arruda v. Curves International, Inc.*, 2020 WL 4289380, at *3 (W.D. Tex. July 27, 2020)………………………………………………………………………… 16

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)………………………………………… 6

*Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993)………………………………….. 15

*Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 439–40 (5th Cir. 1987)………. 9, 11

*Aubrey v. D Magazine Partners, L.P.*, No. 3:19-cv-0056-B, 2020 WL 619839, at *4 (N.D. Tex. Feb. 10, 2020)……………………………………………………… 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)……………………………….. 6

*Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F.Supp. 995, 1005 (S.D. Tex. 1995)….. 15

*Brunig v. Clark*, 2007 WL 9712119, at *8 (S.D. Tex. Sept. 24, 2007)…………………. 9

*Cadle Co. v. Schultz*, 779 F.Supp. 392, 399 (N.D. Tex. 1991)…………………………. 15

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)………… 6

*Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 239 (5th Cir. 2010)………………...... 15

*Clark v. Nat'l Equities Holdings, Inc*., 561 F. Supp. 2d 632, 639 (E.D. Tex. 2006), *remanded in part on other grounds*, 229 F. App'x 314 (5th Cir. May 30, 2007)………. 10, 12

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000)………………………………………………………………………… 6

*Commercial Metals Co. v. Chazanow*, No. 3:09-CV-0808-B, 2009 WL 3853704, at *4 (N.D. Tex. Nov. 7, 2009)……………………………………………………... 8, 15

*Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995)……………………………………… 13

*Cypress/Spanish Ft. I, L.P. v. Prof. Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 711 (N.D. Tex. 2011)………………………………………………………………………… 6

*Delta Truck & Tractor, Inc. v. J.I. Case Co*., 855 F.2d 241, 242 (5th Cir.1988), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989)………………..…… 8, 10

*Drake v. Costume Armour Inc.*, 736 Fed.Appx. 505, 506 (5th Cir.2018), citing, *inter alia*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 619 (1988)… 22

*Ebert v. Gustin*, 2016 WL 11663164, at *8 (N.D. Tex. May 12, 2016)………………... 19

*Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)……………………………………… 11

*Ernst & Young, LLP v. Pac. Mut. Life Ins.*, 51 S.W.3d 573, 577 (Tex. 2001)…………. 18

*Garcia v. Lion Mexico Consolidated, L.P.*, 2017 WL 9479195, at *4 (W.D. Tex. Sept. 11, 2017)…………………………………………………………………………....... 6

*GFRS Equipment Leasing Fund II LLC v. Nguyen*, No. 3:18-cv-2250-L, 2019 WL 3530421, at *4 (N.D. Tex. Aug. 1, 2019)……………………………………………… 7, 8

*Harris County, Texas v. Eli Lilly and Company*, 2020 WL 5803483, at *16 (S.D. Tex. Sept. 29, 2020)……………………………………………………………………… 18

*H.J. Inc. v. Northwestern Bell Te. Co.*, 492 U.S. 229, 241 (1989)……………...………... 7, 8

*In re Artho*, 587 B.R. 866, 885 (Bankr. N.D. Tex. 2018)……………………………… 21

*In re Burzynski*, 989 F.2d 733, 742 (5th Cir.1993)…..……………………………… 8, 17

*In re Sunpoint Sec.*, Inc., 350 B.R. 741, 747 (Bankr. E.D. Tex. 2006)……………..…… 14

*Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998)………………… 21

*Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016)……………………… 21

*Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)……...…… 19

*Matter of ATP Oil & Gas Corp.*, 711 Fed.Appx. 216, 221 (5th Cir. 2017)……………… 19

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)………………… 19

*Oblio Telecom, Inc. v. Patel*, 2009 WL 1650481, at *7 (N.D. Tex. June 10, 2009)…….... 9

*Landry v. Air Line Pilots Ass'n Int'l, AFL–CIO*, 901 F.2d 404, 433 (5th Cir.1990)…….... 13

*Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 426 (5th Cir. 1987)…..……… 12

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)………………………… 7

*Murex, LLC v. GRC Fuels, Inc.*, No. 3:15-CV-3789-B, 2016 WL 4207994, at *2 (N.D. Tex. Aug. 10, 2016)……………………………………………………………… 5, 9

*N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, No. 4:09-cv-2556, 2011 WL 5325785, at *7 (S.D. Tex. Nov. 3, 2011)……………………………………… 10

*Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993)…………………………………… 11

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2nd Cir. 1994)………………………………………………………………… 11

*Salinas v. United States*, 522 U.S. 52, 65 (1997)………………………………………... 15

*Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B, 2007 WL 9711726, at *6 (N.D. Tex. May 9, 2007)……………………………………………………… 8, 9, 11, 13, 14, 15

*Snow Ingredients Incorporated v. SnoWizard Incorporated*, 833 F.3d 512, 526 (5th Cir. 2016)…………………………………………………………………… 7, 16

*St. Germain v. Howard*, 556 F.3d 261, 263–64 (5th Cir. 2009)………………………… 22

*St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000)…………... 10

*Tow v. Amegy Bank, N.A.*, 498 B.R. 757, 770 (S.D. Tex. 2013)………………………… 20

*Troyer v. Boomtown*, LLC, 2004 WL 2984364, at *8 (E.D. La. Dec. 22, 2004)……….... 12

*United States v. Humphrey*, 104 F.3d 65, 70 n.3 (5th Cir. 1997)…………………….... 16

*United States v. Martinez*, 921 F.3d 452, 476 (5th Cir. 2019)…………………………... 17

*United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir 1998)……………………… 15

*United States v. Sutherland*, 656 F.2d 1181, 1187 (5th Circuit 1981)…………………... 15

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)………………………………………………………………………….... 7

*Vanderbilt Mortg. and Finance, Inc. v. Flores*, 735 F.Supp.2d 679, 700 (S.D. Tex. 2010)……………………………………………………………………………………... 14, 17

*Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228–29 (5th Cir. 2003)…………….... 8, 9, 11, 12, 13

*Williams v. WMX-Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)……………………… 6, 16

*Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 762 (Tex.App.—Houston [1st Dist. 2017, pet. denied)………………………………………………………………………... 21

*Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)………………………………………………………………………………... 8, 15

*Zastrow v. Hous. Auto Imprts. Greenway, Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015)……. 9, 12, 17

Statutes

Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ § 24.002(2)(A)………………………………………………... 20

Tex. Bus. & Comm. Code § 24.005(a)(2)……………………………………………… 21

18 U.S.C. § 1961(5)…………………………………………………………………….. 8

18 U.S.C. § 1962(a)-(c)……………………………………………………………….. 5, 7, 8, 9, 10, 11, 13, 14, 15

Rules

Fᴇᴅᴇʀᴀʟ Rᴜʟᴇ ᴏғ Cɪᴠɪʟ Pʀᴏᴄᴇᴅᴜʀᴇ 12…………………………………………… 5, 6

Fᴇᴅᴇʀᴀʟ Rᴜʟᴇ ᴏғ Cɪᴠɪʟ Pʀᴏᴄᴇᴅᴜʀᴇ 9(ʙ)…………………………………………… 6

TO THE HON. JANE J. BOYLE;
UNITED STATES DISTRICT JUDGE:

COME NOW defendants Windspeed Trading, LLC ("Windspeed") and William Szeto ("Mr. Szeto," and together with Windspeed, "Defendants") and files this, its *Windspeed and Mr. Szeto's Brief in Support of Motion to Dismiss Claims Pursuant to Rule 12(b)(6)* (the "Brief"). This Brief is filed in support of the *Windspeed and Mr. Szeto's Motion to Dismiss Claims Pursuant to Rule 12(b)(6)* (the "Motion"). In support of the Motion and Brief, Windspeed would respectfully show this Court as follows:

## I. SUMMARY

1.      The Complaint brings RICO actions against the senior secured lender, a purchaser and its employees for a UCC1 "foreclosure"[1] sale related to collateral upon which Plaintiff has voluntarily subordinated its lien to a valid and perfected lien by the secured party who foreclosed.

2.      The "wrong" about which Plaintiff complains is the rightful foreclosure of a secured lender, to which Plaintiff voluntarily subordinated its interest. After the UCC foreclosure occurred, that collateral (not Plaintiff's collateral) was sold to Windspeed.

3.      RICO was promulgated in order to reduce organized crime, not to weigh in on a UCC disposition of collateral and the sale of said collateral thereafter. For all its bluster, the Complaint alleges racketeering activity occurred because a senior secured lender – to which Plaintiff voluntarily subordinated its interest – foreclosed on its collateral.

4.      The Complaint fails to assert facts which would show an enterprise existed or exists to commit the acts alleged by Plaintiff. The Complaint alleges that an inner circle of entities and their officers/employees collaborated for the sole purpose of winding down a business and

---

[1]      The "foreclosure" was a sale under the Texas Uniform Commercial Code. Plaintiff refers to it as a "foreclosure", which it is technically not. However, for the ease of continuity, the same term is used in this Brief.

disposing of its assets into a new entity.  Nowhere does Plaintiff assert sufficient facts to indicate that this enterprise existed for purposes other than to allegedly commit racketeering activity.  All of Plaintiff's RICO causes of action fail on that basis.

5.     Furthermore, Plaintiff includes no allegations in its Complaint to suggest that Windspeed is an entity which qualifies as a distinct RICO entity or which is a part of an association-in-fact enterprise.  For as long-winded and laborious a read as the Complaint is, no facts are asserted with any particularity to support that Windspeed and Mr. Szeto had knowledge or operated some level of control in the alleged racketeering activities.  In fact, the deposition testimony of Windspeed's representative, Mr. Szeto, which is incorporated by reference into this suit, firmly establishes that none of the employees of Windspeed, even Mr. Szeto, had the requisite intent or had agreed to participate in racketeering activities with an alleged enterprise.  Accordingly, Plaintiff fails to establish this common element to its RICO causes of action, and those RICO claims must be dismissed on this basis.  The same failure to adequately allege knowledge or intent entitles both Windspeed and Mr. Szeto to dismissal of the state law claims against them.

## II. BACKGROUND

A. Procedural Background

6.     Mr. Szeto and Windspeed refer to and adopt the Motion to Dismiss filed by Defendants Ms. Zhexian Lin ("Lin"), Ms. Dana Marie Tomerlin ("Tomerlin"), Ms. Padasamai Vattana ("Vattana"); Ms. Paula Ketter ("Ketter"), Ms. Vanessa Torres ("Torres" and together with Lin, Tomerlin, Vattana and Ketter the "Windspeed Employees") for their summary of the procedural posture of this case.  *See Windspeed Employees' Motion to Dismiss RICO Claims Pursuant to Rule 12(b)(6)*, pg. 3.

B. <u>Summary of Averments in the Complaint</u>

  7. Mr. Szeto and Windspeed refer to and adopt the Motion to Dismiss filed by the Windspeed Employees for their initial summary of general averments in the Complaint. *See Windspeed Employees' Motion to Dismiss RICO Claims Pursuant to Rule 12(b)(6)*, pgs. 3-4.

  *i. Windspeed Trading, LLC*

  8. Plaintiff alleges Windspeed was created as a sham to be "nothing more than a vehicle to fraudulently transfer the assets and business operations of ACET Global . . . ." *See id.* at pg. 57. Plaintiff alleges various Defendants "beneficially owned" Windspeed, while Defendants Baymark Partners and Super G took operational control of Windspeed through board positions and made all decisions regarding Windspeed. *See id.* at pg. 4. Windspeed's appointed CEO, Mr. Szeto, is alleged to have exercised no control over Windspeed, having been relegated to merely a "small economic interest" in Windspeed." *Id.* at pg. 57.[2]

  9. Plaintiff alleges that the board of Windspeed was a "sham," due to the allegation that no board meeting was ever held by the ownership of Windspeed, nor were there any minutes or resolutions. *See id.* at pg. 63. Plaintiff alleges that sometime around October 2018, the assets of ACET Global were transferred to Windspeed, and Windspeed continued the e-commerce business of ACET Global. *See id.* at pgs. 78-86. Plaintiff alleges that the Foreclosure Sale Agreement, which is the operative document which sold the assets of ACET Global to Windspeed, amounted to a paper trail to cover up the theft of ACET Global's assets and to shield Windspeed from ACET Global's liabilities. See id. at pgs. 94-108.

---

[2] Windspeed's own Company Agreement, cited to and quoted in the Complaint, provides that "members" of Windspeed have no right to control the business or have any authority to act for or bind the company. *See id.* at pg. 62.

*ii. William Szeto*

10.     The Complaint alleges that Mr. Szeto was installed as the CEO for ACET Global in 2018 and "caused" ACET Global to transfer its assets and operations to Windspeed, an entity partially owned by Mr. Szeto, in October 2018.  The Complaint frequently asserts that Mr. Szeto was "used", "directed", "caused" or "utilize[d]" to serve various roles and perform various functions, such as maintaining two separate sets of books for ACET Global and Windspeed and winding down ACET Global.  *See, e.g.* Doc. No. 1, pgs. 4-5, 17, 57, 92.  The Complaint goes so far, on multiple occasions, as to condescendingly refer to Mr. Szeto as a "puppet" of the Defendants.  *See id.*, pgs. 25, 64.

11.     Though Plaintiff casually disregards his testimony, the deposition testimony of Mr. Szeto shows that he was unaware of Plaintiff's secured loan, the secured loan which the alleged RICO enterprise was seeking to defraud.  Doc. No. 1, pg. 29.[3]  When you pare down the mountain of statements made concerning Mr. Szeto in the Complaint, you have this basic set of alleged facts: (1) Mr. Szeto was made CEO of ACET Global; (2) Mr. Szeto was used to form and was made part owner of Windspeed; (3) Mr. Szeto was tasked with forming the wind-down plan for ACET Global, including helping in the moving of equipment and inventory from ACET Global to Windspeed; and (4) Mr. Szeto executed the Foreclosure Sale Agreement in March 2019.  *See id.* at pgs. 4, 25, 107.

*iii. Foreclosure Sale is the Alleged Racketeering Activity*

12.     In the Complaint, Plaintiff alleges that numerous predicate acts giving rise to RICO claims occurred, such as (i) wire fraud, (ii) mail fraud, (iii) obstruction of justice, (iv) bankruptcy

---

[3] It is important to note that Plaintiff acknowledges the possibility that Mr. Szeto was never informed about Plaintiff's secured loan.  *See* Docket #1, pg. 113, fn 67.

fraud, and (v) money laundering.  *See id.* at pg. 2.  However, all these predicate acts are tied to a single alleged racketeering activity, the foreclosure sale and transfer of ACET Global's assets to Windspeed.  The alleged formation of the "enterprise" of Defendants[4], its collaboration, and its later alleged efforts to obstruct were all related to the disposition of assets owned by ACET Global.  No allegation is made in this Complaint that Defendants nor Windspeed have any plans to orchestrate another foreclosure sale or transfer of assets.  In fact, the Complaint alleges the "critical steps" of the scheme were achieved in the fall of 2018.  *See id.* at pg. 4.  The objective of the alleged racketeering activity was achieved on March 1, 2019 when the Foreclosure Sale Agreement completed the transfer of assets from ACET Global to Windspeed.  *See id.* at pg. 6.

13.     The Complaint alleges that Defendants have either engaged in perjury or committed tax/bankruptcy fraud in order to hide the evidence of defrauding Plaintiff.  *See id.* at pg. 3.  Beyond the alleged efforts to obstruct pending litigation initiated by Plaintiff, the Complaint does not allege that the Defendants have continued their alleged racketeering activity against Plaintiff or anyone, for that matter.

### III. ARGUMENTS AND AUTHORITIES

14.     This Motion seeks dismissal under Rule 12(b)(6) of counts I, II, and III of the Complaint which assert claims under 18 U.S.C. § 1962(a), (c), and (d) of the Racketeer Influenced and Corrupt Organization Act ("RICO").

A. Rule 12(b)(6) Standard

15.     If a plaintiff's complaint fails to state such a claim, Rule 12(b)(6) allows a defendant to file a motion to dismiss.  *Murex, LLC v. GRC Fuels, Inc*., No. 3:15-CV-3789-B, 2016 WL 4207994, at *2 (N.D. Tex. Aug. 10, 2016)

---

[4] Plaintiff also pleads, in Count III, that Windspeed, itself, is the RICO enterprise, in the alternative to there being an association-in-fact.  *See id.* at pg. 138.  This Motion deals with that allegation further down in the briefing.

16.     To survive a motion to dismiss pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) ("Rule 12(b)(6)"), the factual allegations in a complaint must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. It also "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

17.     In assessing claims on a motion to dismiss, the Court may consider documents attached to the plaintiff's complaint or a motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); see also *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).

B. Rule 9(b) Standard

27.     When a plaintiff's allegations claim fraud or mistake, Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to "state with particularity the circumstances" surrounding the allegations.  Fed. R. Civ. P. 9(b); *see also Garcia v. Lion Mexico Consolidated, L.P.*, 2017 WL 9479195, at *4 (W.D. Tex. Sept. 11, 2017).  This standard includes "RICO claims resting on allegations of fraud."  *Williams v. WMX-Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *see also Alufase USA LLC v. Palma*, 2016 WL 3911127, at *3 (S.D. Tex. May 6, 2016).  At a minimum, this means the plaintiff must plead the time, place, and contents of false representations; the identity of the person making the misrepresentations; and what he obtained thereby.  *See Cypress/Spanish Ft. I, L.P. v. Prof. Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 711 (N.D. Tex. 2011);

*see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (plaintiff must plead the "who, what, when, where, and how" of the alleged fraud).

C. Plaintiff Fails to Establish Elements Common to All RICO Causes of Action

18.     18 U.S.C. § 1962 provides for the prohibited actions under the RICO statute set forth in four subsets.   18 U.S.C. § 1962(a), (b), (c), and (d).   In order to state a claim for damages under RICO, a plaintiff must allege (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.  18 U.S.C. § 1962(a)-(c); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).   RICO was created by Congress in order to combat long-term criminal conduct.   *GFRS Equipment Leasing Fund II LLC v. Nguyen*, No. 3:18-cv-2250-L, 2019 WL 3530421, at *4 (N.D. Tex. Aug. 1, 2019) (citing *H.J. Inc. v. Northwestern Bell Te. Co.*, 492 U.S. 229, 241 (1989)).   Civil RICO liability does not exist unless the pleadings allege actual criminal activity.   *Snow Ingredients Incorporated v. SnoWizard Incorporated*, 833 F.3d 512, 526 (5th Cir. 2016).

19.     Plaintiff has asserted that all defendants violated the following subsections of section 1962:

        a.  18 U.S.C. § 1962(c) – Count I,

        b.  18 U.S.C. § 1962(a)[5] – Count II, and

        c.  18 U.S.C. § 1962(d) – Count III.

---

[5]     The heading for Count II in the Complaint does not list the Windspeed Employees. However, the averments in Count II refer to "All Defendants".  Complaint at p. 135, ¶ 317.

20.     Elements common to all four sub-sections are: (1) a person who engages in (2) a pattern of racketeering activity[6] (3) connected to the acquisition, establishment, conduct or control of an enterprise. *Whelan v. Winchester Prod. Co*., 319 F.3d 225, 228–29 (5th Cir. 2003) citing *Delta Truck & Tractor, Inc. v. J.I. Case Co*., 855 F.2d 241, 242 (5th Cir.1988), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989).  A "pattern of racketeering" requires at least two predicate acts of racketeering activity under 18 U.S.C. § 1961(1) that have occurred within ten years of each other.  18 U.S.C. § 1961(5).  These predicate acts must be related, and they must amount to or pose a threat of continued criminal activity.  *Nguyen*, 2019 WL 3530421, at *4 (citing *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)).

21.     It is not enough that the predicate acts are merely related, but they must be sufficiently continuous to assure a federal cause of action.  *Commercial Metals Co. v. Chazanow*, No. 3:09-CV-0808-B, 2009 WL 3853704, at *4 (N.D. Tex. Nov. 7, 2009) (quoting *In re Burzynski*, 989 F.2d 733, 742 (5th Cir.1993)).  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement . . . ."  *Id.* (citing *H.J. Inc.*, 492 U.S. at 241).  Liability in a RICO action "depends on whether the threat of continuity is demonstrated."  *Id.* (citing *H.J. Inc.*, 492 U.S. at 241).

22.     The failure of establish any one of these elements will result in the failure to state a claim and thus dismissal under Rule 12(b)(6).  *See Whelan*, 319 F.3d at 230.

D. Plaintiff has Not Alleged an Association-in-Fact as a Matter of Law with Windspeed or Mr. Szeto

23.     There are several types of defined "enterprises" which will satisfy the requirements of section 1962.  The only one pled by the Plaintiff, with an exception in Count III of this matter,

---

[6]     "'Racketeering activity'" includes certain state and federal offenses listed in § 1961(1). [citation omitted] The individual acts of racketeering are commonly described as the "predicate" acts or offenses." *Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B, 2007 WL 9711726, at *6 (N.D. Tex. May 9, 2007)

is an association-in-fact.  *See* Doc. No. 1, pg. 133.  Thus, in order to meet the requirement of the existence of an enterprise for the purposes of section 1962, Plaintiff must properly allege the existence of an association-in-fact, as the term is used in the statute.

24.     An "association in fact" enterprise "must have an ongoing organization or be a continuing unit, such that the enterprise has an existence that can be defined apart from the commission or the predicate acts."  *Murex*, 2016 WL 4207994, at *10 (quoting *Zastrow v. Hous. Auto Imprts. Greenway, Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015)).  "The enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it engages."  *Whelan*, 319 F.3d at 229.  In other words, "[t]he enterprise must be 'an entity separate and apart from the pattern of activity in which it engages.'"  *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 439–40 (5th Cir. 1987); *see also Zastrow*, 789 F.3d at 562 (if the alleged enterprise is one "created by the alleged racketeering activity itself" it is not an association in fact).  *Id.*

25.     Plaintiff must "plead specific facts that establish that the association exists for purposes other than simply to commit the predicate acts."  *Aubrey v. D Magazine Partners, L.P.*, No. 3:19-cv-0056-B, 2020 WL 619839, at *4 (N.D. Tex. Feb. 10, 2020).  Moreover, a plaintiff cannot simply lump a group of defendants together, but must instead "plead the specified facts as to each defendant."

26.     Failure to plausibly establish an association-in-fact enterprise demands dismissal of the entire RICO claim. *Whelan*,  319 F.3d at 230 (affirming dismissal of RICO claim for failure to demonstrate an enterprise); *Oblio Telecom, Inc. v. Patel*, 2009 WL 1650481, at *7 (N.D. Tex. June 10, 2009); *Sharif*, 2007 WL 9711726, at *10; *Armendariz v. Chowaiki*, 2016 WL 8856919, at *9 (W.D. Tex. Mar. 31, 2016); *Brunig v. Clark*, 2007 WL 9712119, at *8 (S.D. Tex. Sept. 24,

2007); *Clark v. Nat'l Equities Holdings, Inc.*, 561 F. Supp. 2d 632, 639 (E.D. Tex. 2006), *remanded in part on other grounds*, 229 F. App'x 314 (5th Cir. May 30, 2007).

i.   *Plaintiff Fails to Establish Windspeed is a RICO "Person" or a Part of an Association-in-Fact Enterprise*

27.   "The object of all civil and criminal RICO actions is the RICO 'person,' the defendant." *Delta Truck & Tractor, Inc.*, 855 F.2d at 242.  A defendant qualifies as a RICO "person," for purposes of liability, if the person "either [] poses or has posed a continuous threat of engaging in acts of racketeering . . . The continuous threat requirement may not be satisfied if no more is pled than that the person has engaged in a limited number of predicate racketeering acts." *Id.*

28.   A RICO person, or, defendant, is distinct from the RICO enterprise and must be distinguished from the enterprise itself.  *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000).  To establish liability under section 1962(c), one must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name. *Allstate Insurance Company v. Benhamou*, 190 F. Supp. 3d 631, 648 (S.D. Tex. 2016) (quoting *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, No. 4:09-cv-2556, 2011 WL 5325785, at *7 (S.D. Tex. Nov. 3, 2011)).

29.   Plaintiff's RICO claims against Windspeed fail, at the very least, due to their inability to adequately plead that Windspeed is a RICO person under the statute.  First of all, the racketeering activity, which Plaintiff takes 140 pages to describe in the Complaint, occurred over a limited period of time and was completed, according to Plaintiff, early in 2019.  Furthermore, Plaintiff's convoluted fact pattern does not clearly establish whether or not Windspeed is a RICO person distinct from the enterprise, as it appears the entire gravamen of Plaintiff's suit is that

Windspeed was created to be **THE** racketeering enterprise.  This is further supported by Plaintiff's direct allegation that Windspeed is, in fact, a RICO enterprise in Count III of the Complaint.

30.     According to Plaintiff, Windspeed's entire purpose for existence was to defraud Plaintiff, and the other Defendants, including the entities and individuals which allegedly conspired to create Windspeed and the employees who work for Windspeed, are all allegedly associates-in-fact of the Windspeed enterprise.   Accordingly, Windspeed cannot be a RICO person, as it exercised no control over its creation and use as a racketeering vehicle, according to Plaintiff.  *Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (each RICO "must have some part in directing" the affairs of the RICO enterprise, directly or indirectly).  The word "conduct" under the statute "require[s] some degree of direction and the word 'participate' [] require[s] some part in that direction."  *Id.*

*ii. Plaintiff Fails to Establish Mr. Szeto as a RICO Person*

31.     Company officers and employees not associated other than through the activities of the company do not constitute an enterprise for purposes of § 1962(c)."  *Whelan*, 319 F.3d at 230. "The fact that officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation."  *Sharif*, 2007 WL 9711726, at *8 (citing *Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)); *Whelan*, 319 F.3d at 229; further citing *Atkinson*, 808 F.2d at 441 (concluding that bank, holding company, and three bank employees did not exist separately apart from the bank); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2nd Cir. 1994) ("[B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented.").

32.    Throughout the Complaint, Plaintiff uses a variety of words to paint the picture that Mr. Szeto was operating at the behest of others.  Plaintiff talks about Mr. Szeto being used, utilized, directed in order to carry out the alleged wind down of ACET Global and to form Windspeed and accomplish an alleged transfer of assets.  *See e.g.* Doc. No. 1, pg. 25 ("Szeto was actually brought on to help form Windspeed and to serve as a puppet . . . in carrying out the planned wind down of ACET Global's operations and the fraudulent transfer of its assets to Windspeed . . . .").  Plaintiff's cynical ploy to label Mr. Szeto is not without consequences.  The Complaint makes it apparent that Mr. Szeto did not exercise the control nor authority which is required to establish somebody as a RICO person.  The Complaint only establishes that Mr. Szeto was acting in his role as CEO of both ACET Global and Windspeed, as he was allegedly commanded to do by other Defendants.  Accordingly, all of Plaintiff's RICO claims should fail as to Mr. Szeto on this basis alone.

E. <u>Plaintiff Fails to Establish that Windspeed Itself is a Racketeering Enterprise</u>

33.    A plaintiff is required to plead specific facts that establish that the enterprise exists for purposes other than simply to commit the predicate acts. *Zastrow*, 789 F.3d at 562 (affirming dismissal of RICO claim where the complaint alleged "an enterprise created by the alleged racketeering activity itself"); *Whelan*, 319 F.3d at 229 ("It is not enough to establish that a defendant corporation through its agents committed the predicate acts in the conduct of its own business."); *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 426 (5th Cir. 1987); *Patel*, 711 F. Supp. 2d at 678 (finding that the plaintiff must allege "the existence of an ascertainable structure separate and apart from the alleged pattern of racketeering."); *Clark*, 561 F. Supp. 2d at 638 (citing *Troyer v. Boomtown*, LLC, 2004 WL 2984364, at *8 (E.D. La. Dec. 22, 2004)).

34.     "An enterprise that "briefly flourished and faded" will not suffice; a plaintiff must adduce evidence showing that the enterprise functioned as a continuing unit. *Whelan*, 319 F.3d at 230 citing (*Landry v. Air Line Pilots Ass'n Int'l, AFL–CIO*, 901 F.2d 404, 433 (5th Cir.1990)).

35.     Plaintiff expends an excessive amount of words and space to allege that Windspeed was created in order to perpetuate racketeering activities.  The alleged purpose of this enterprise, Windspeed, was to denude ACET Global of assets and transfer them to Windspeed.  It is clear from the allegations in the Complaint that the alleged purpose of Windspeed was to commit a predicate act, not to serve an independent purpose or goal.  Based on the very allegations contained in the Complaint, Plaintiff cannot establish any of the counts asserting RICO in this case.  Based on this pleading failure, Counts I-III should be dismissed for failure to state a claim.

F. [1962(c) – Count I]

36.     Subsection (c) of RICO prohibits any "'person employed by or associated with any enterprise' from participating in or conducting the affairs of the enterprise through a pattern of racketeering activity."  18 U.S.C. § 1962(c); *see also Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (quoting *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995)).  "Under § 1962(c), the RICO 'person' and the RICO 'enterprise' must be distinct...[t]his required distinction is based on a textual reading of § 1962(c), which speaks of 'person[s] who are 'employed by or associated with' the 'enterprise.'"  *Sharif*, 2007 WL 9711726, at *8.

37.     The only allegations contained in this Count regarding Mr. Szeto is that he directed the Windspeed Employees to give "demonstrably false testimony during depositions," and they "coordinated" with Szeto to "provide misleading and false information to carry out the frauds of the enterprise."  Doc. No. 1, pg. 133.  As detailed in the Windspeed Employees' Motion to Dismiss, the Complaint fails to explain what role the Windspeed Employees had in the enterprise beyond

fulfilling their duties as employees.  As words like "used," "utilized," and "facilitated" suggest, any action done in furtherance of racketeering activity was done at the behest of higher authority and without sufficient direction over the enterprise.  That means Mr. Szeto was not distinct from the alleged RICO enterprise, as he did not act with sufficient authority or control over the alleged RICO enterprise, and/or Windspeed.  Accordingly, Count I fails to state a claim upon which relief can be granted.

G. [1962(a) – Count II]

38.    "With respect to § 1962(a), a plaintiff must allege "that its injury flows from the use or investment of racketeering proceeds, rather than from the underlying predicate racketeering acts." *Sharif*, 2007 WL 9711726, at *8 citing *In re Sunpoint Sec.*, Inc., 350 B.R. 741, 747 (Bankr. E.D. Tex. 2006).  Courts within the Fifth Circuit have generally rejected claims under section 1962(a) which assert that the plaintiff was injured by the reinvestment of proceeds by the defendants into its business "for purposes of perpetuation or expansion." *Vanderbilt Mortg. and Finance, Inc. v. Flores*, 735 F.Supp.2d 679, 700 (S.D. Tex. 2010).

39.    It is clear that Count II fails to state a claim against Windspeed and Mr. Szeto upon which relief can be granted.  The Complaint explicitly states that the basis for this cause of action is due to reinvestment of funds received from racketeering activities into the enterprise of the Defendants.  As case law has made clear, no injury can be derived from the RICO enterprise reinvesting illegally derived funds back into the enterprise.  Accordingly, Plaintiff has failed to state a claim with regards to Count II.

H. [1962(d) – Count III]

40.    Count III of the Complaint asserts that all Defendants in this matter, including Windspeed and Mr. Szeto, conspired to violate subsections (a), (b), and (c) of RICO, in violation

of § 1962(d).  *See Word of Faith World Outreach Center Church, Inc.*, 90 F.3d at 121.  A claim for RICO conspiracy must allege "three elements: (1) knowledge by the defendant of the essential nature of the conspiracy; (2) the defendant's objective manifestation of an agreement to participate in the conduct of the affairs of an enterprise, and (3) an overt act, which need not be a crime, in furtherance of the conspiracy."  *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F.Supp. 995, 1005 (S.D. Tex. 1995) (citing *United States v. Sutherland*, 656 F.2d 1181, 1187 (5th Circuit 1981).

41.     If a plaintiff's claims fail under Section 1962(a)-(c), then there is no cause of action under Section 1962(d).  *Sharif*, 2007 WL 9711726, at *9 citing *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993).  Because the claims against Windspeed and Mr. Szeto fail, as set forth above, the claim for conspiracy under Section 1962(d) must also fail and should be dismissed with prejudice as to them.

   i.   *Plaintiff Fails to Meet Heightened Pleading Standard and Establish Intent for Conspiracy*

42.     A person cannot be held liable for a RICO conspiracy "merely by evidence that he associated with other . . . conspirators or by evidence that places the defendant in a climate of activity that reeks of something foul."  *Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 239 (5th Cir. 2010 (quoting *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir 1998)).  A conspirator must at least know of the conspiracy and "adopt the goal of furthering or facilitating the criminal endeavor."  *Salinas v. United States*, 522 U.S. 52, 65 (1997).

43.     As it relates to mail fraud, Plaintiff is required to plead adequately to directly connect the defendant to the fraudulent scheme involving the use of the mails.  *Chazanow*, 2009 WL 3853704, at *6 (quoting *Cadle Co. v. Schultz*, 779 F.Supp. 392, 399 (N.D. Tex. 1991)).  The only reference to "mail" in the entire monstrosity of the Complaint is a vague allegation that the Defendants or "someone associated with the scheme" used the mails to mail a Notice of Forfeiture.

Doc. No. 1, pg. 139.  No allegation is provided as to who mailed the notice nor how the person who mailed it knew they were participating in a fraud actionable under RICO, or whether they were acting outside the ordinary scope of their job title.  Accordingly, mail fraud as a predicate will not establish liability against Mr. Szeto.

44.    As for wire fraud, the claim requires: (1) a scheme to defraud; (2) the interstate use of the wires to execute the scheme; (3) the use of wires being incident to the essential execution of the scheme; and (4) actual injury to the plaintiff.  *United States v. Humphrey*, 104 F.3d 65, 70 n.3 (5th Cir. 1997).  Like the other predicate claims, wire fraud requires heightened pleading under Rule 9(b).  *WMX Technologies, Inc.*, 112 F.3d at 177.  If predicate acts of fraud are not pled with particularity, civil RICO claims are subject to dismissal.  *Arruda v. Curves International, Inc.*, 2020 WL 4289380, at *3 (W.D. Tex. July 27, 2020).

45.    Nowhere in this long-winded, prolix, Complaint can be found a single allegation which ties Windspeed or Mr. Szeto to acts of wire fraud.  Other than conclusorily referencing wire fraud as a predicate act in the recitation of the causes of action, the Complaint makes absolutely no reference anywhere else of the use of wires by Windspeed or Mr. Szeto in furtherance of a fraud.  There are no allegations of the where, what, when, how, and why the fraud was allegedly committed by Windspeed and Mr. Szeto.  The same fatal flaw that plagues all the other causes of action asserted in the Complaint so too decimates this cause of action.

46.    Additionally, Plaintiff includes unsubstantiated allegations that Mr. Szeto lied in his deposition in the referenced State Court matter.  Aside from the fact that it is not true, Plaintiff cannot rely on litigation activity to support a claim for RICO.  *See SnoWizard Incorporated*, 833 F.3d at 524.  The reasoning behind this is that, if the alleged predicate acts took place in the context of defending a lawsuit, the unlawful conduct "did not constitute or threaten long-term criminal

activity." *Zastrow*, 789 F.3d at 561 (quoting *Burzynski*, 989 F.2d at 742-43).  Since early 2019, Plaintiff's allegations regarding predicate acts of an alleged enterprise have occurred in the context of defending against litigation from Plaintiff regarding the alleged fraudulent foreclosure sale. Accordingly, there is no threat of long-term criminal activity, even if it were assumed that such a threat existed before March of 2019.  Obstruction of justice fails as a predicate act in this case.

47.     As for Plaintiff's allegations regarding money laundering and engaging in monetary transactions in property derived from specified unlawful activity, it fails to allege sufficient facts to establish that either predicate act occurred.  A money laundering claim requires the plaintiff to show that a defendant conducted a financial transaction with the specific intent to promote an unlawful activity.  *Flores*, 746 F.Supp.2d at 842.  With the engagement in money transactions with property derived from unlawful activity, it must be shown the defendant had knowledge the property was derived from unlawful means.  *United States v. Martinez*, 921 F.3d 452, 476 (5th Cir. 2019).  The Complaint fails to sufficiently allege that Mr. Szeto was aware of Plaintiff's secured loan, and his deposition testimony establishes that.  *See* Doc. No. 1-4, pg. 19; Doc. No. 1-5, pg. 19; Doc. No. 1-10, pg. 23.  Additionally, Plaintiff cannot establish specific intent with Windspeed, as Plaintiff goes to great efforts to allege that Windspeed was acting at the behest of other actors, and no discussion is had regarding Windspeed's intent.  The failure to establish any awareness of Plaintiff's alleged interest in ACET Global's property necessarily results in the failure to establish RICO claims based on money laundering or engagement in money transactions with property derived from unlawful activity.  For these reasons, Plaintiff fails to establish its Count III claim, as well as every other RICO-based claim in the Complaint.

G. State Law Causes of Action

48. Mr. Szeto and Windspeed generally adopt the arguments asserted in the Motion to Dismiss, filed by Defendants SG Credit Partners, Inc. and Marc Cole (the "SG Parties"), regarding the applicability of Rule 9(b) to any state law claims based on underlying allegations of fraud or mistake, as well as analysis of an officer's alter ego liability. *See Defendants SG Credit Partners, Inc. and Marc Cole's Motion to Dismiss*.

*i. Fraud*

49. Common law fraud requires a false material representation which the defendant knew was false or was made "recklessly as a positive assertion without any knowledge of its truth." *Harris County, Texas v. Eli Lilly and Company*, 2020 WL 5803483, at *16 (S.D. Tex. Sept. 29, 2020) (quoting *Ernst & Young, LLP v. Pac. Mut. Life Ins.*, 51 S.W.3d 573, 577 (Tex. 2001)). It must be shown that the defendant "intended to induce [the plaintiff] to act upon the representation" and that the plaintiff "actually and justifiably relied upon the representation and thereby suffered injury." *Id.* (quoting *Ernst & Young, LLP*, 51 S.W.3d at 577).

50. As to the fraud cause of action asserted against Mr. Szeto, this claim fails for the simple purpose that the Complaint does not notify the reader of a single misrepresentation which Mr. Szeto ever made to Plaintiff. For that matter, the Complaint cites no single communication between Mr. Szeto and Plaintiff. For all the reader may know, representatives of Plaintiff and Mr. Szeto had never interacted before. More importantly, there is absolutely no evidence to suggest that Mr. Szeto knowingly made a misrepresentation to Plaintiff. Based on the arguments and briefing regarding fraud claims asserted in the other Defendants' Motions to Dismiss, Plaintiff fails to assert a fraud claim against Mr. Szeto.

*ii. Breach of Fiduciary Duty and Aiding and Abetting*

51.     It is axiomatic that a breach of fiduciary duty claim requires that a fiduciary relationship exist between the **plaintiff** and the defendant.  *See Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied).  Additionally, for aiding and abetting, it must be shown that the accused "party must be aware it was participating in the breach."  *Ebert v. Gustin*, 2016 WL 11663164, at *8 (N.D. Tex. May 12, 2016) (citing *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)).  Plaintiff conclusorily alleges that a fiduciary duty is owed to the creditors of ACET Global upon insolvency.  Plaintiff does not explain nor plead with particularity how Mr. Szeto could be the fiduciary of an entity which he has never heard of, nor when the fiduciary relationship began.[7]  Plaintiff does not explain how Mr. Szeto breached this alleged duty once ACET was no longer in operation.  *See Matter of ATP Oil & Gas Corp.*, 711 Fed.Appx. 216, 221 (5th Cir. 2017) (no duty is owed to a company's creditors while the company continues to operate).  Furthermore, nowhere does Plaintiff allege that Windspeed became a fiduciary of ACET Global or Plaintiff during a period of insolvency.

52.     The only time the words "fiduciary" and "duty" appear in the Complaint are in the conclusory recitations of the causes of action.  This is further evidence of how desperate Plaintiff has become in its shotgun approach to find a claim to stick against the Defendants.  This cause of action only seeks to further confuse, rather than state a clear, plausible claim.  Accordingly, the breach of fiduciary duty and aiding and abetting claims should be dismissed.

---

[7] The Complaint never makes reference to Mr. Szeto having specific knowledge of Plaintiff's existence, and the Complaint does not rule out that Mr. Szeto was never informed of the existence of Plaintiff's loan.  *See* Doc. No. 1, pg. 113, fn 67; see also Doc. No. 1-2, pg. 71 (Mr. Szeto testifying he does not know who Plaintiff is.).

53.     Mr. Szeto and Windspeed further cite to and rely on the briefing provided by the SG Parties' Motion to Dismiss regarding the cause of action for aiding and abetting breach of fiduciary duty.  *See Defendants SG Credit Partners, Inc. and Marc Cole's Motion to Dismiss.*

*iii. Texas Uniform Fraudulent Transfer Act (TUFTA)*

54.     Mr. Szeto and Windspeed adopt and incorporate the briefing provided by the SG Parties in their Motion to Dismiss regarding the TUFTA cause of action.  *See Defendants SG Credit Partners, Inc. and Marc Cole's Motion to Dismiss.*

55.     Plaintiff fails to take into account that, "to the extent that [property] is encumbered by a valid lien," that property is not an "asset" under TUFTA.  *Tow v. Amegy Bank, N.A.*, 498 B.R. 757, 770 (S.D. Tex. 2013) (quoting TEX. BUS. & COM. CODE § 24.002(2)(A)).  The property at issue in this case was foreclosed on and sold for the amount of $514,144.86.  *See* Doc. No. 1, pg. 6.  Plaintiff's lien, alone, is allegedly worth $3.2 million, not to mention the value of Super G's senior lien on the property.  Even if the valuation which Plaintiff alleges was used by the Baymark Defendants in their taxes to value the property were used in this context, it still would be undersecured, based on Plaintiff's allegations as to the amount of its secured claim.  *See* Doc. No. 1, pg. 130 ($2,907,290 in proceeds versus $3.2 million lien).  Plaintiff has not alleged a value for the property which would exceed the combined amount of the Plaintiff and Super G's liens on the property.  Accordingly, TUFTA would not apply to the alleged transfer of fully secured assets from ACET Global to Windspeed.

56.     Furthermore, Windspeed did not receive the transfer of **any** assets from ACET Global.  Rather, as evidenced by the Bill of Sale executed March 1, 2019, Windspeed received the assets from Super G, upon foreclosure on the assets of ACET Global.  *See* Doc. No. 1, Ex. 39.  Furthermore, Windspeed is a good-faith purchaser based on the Loan Agreement executed with

Super G Capital, LLC, as evidenced in the Complaint.  *See id.*, Ex. 18.  Based on this evidence, Mr. Szeto also cannot be shown as a transferee of any of the assets of ACET Global.  Moreover, Plaintiff cannot prove Windspeed nor Mr. Szeto did not take in good faith or for a reasonably equivalent value *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016); Tex. Bus. & Comm. Code § 24.005(a)(2).  Plaintiff's TUFTA claim fails for this reason, as well.

 *iv. Civil Conspiracy*

 57. To prevail on its civil conspiracy claim, Plaintiff must establish the following essential elements: "(1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means) (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998); *see also Ernst & Young, L.L.P*, 51 S.W.3d at 583.  Proof of the conspirators' intent to engage in conduct which would result in injury, without more, does not establish a civil conspiracy claim; rather there must be the specific intent to agree to accomplish an unlawful purpose or a lawful purpose by unlawful means.  *In re Artho*, 587 B.R. 866, 885 (Bankr. N.D. Tex. 2018) (citing *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 762 (Tex.App.—Houston [1st Dist. 2017, pet. denied)).

 58. As discussed in great detail in this Motion and in other Defendants' Motions to Dismiss, the failure to adequately allege the underlying causes of action for this claim renders this cause of action meritless.  Furthermore, there is no particularity pled which suggests that either Windspeed or Mr. Szeto knowingly had a meeting of the minds with the other Defendants to defraud Plaintiff.  Accordingly, Plaintiff's civil conspiracy cause of action fails as a matter of law.

H. The Court Should Decline To Exercise Supplemental Jurisdiction Over State Law Claims

59.     As already explained in detail above, Counts IV through VIII (the "State Law Claims") should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  In addition, in the event the Court dismisses Plaintiff's RICO causes of action against Windspeed and Mr. Szeto, the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).  "The district court has discretion to dismiss pendent state law claims, and may decline to exercise supplemental jurisdiction over such claims where it has dismissed claims over which it had original jurisdiction." *St. Germain v. Howard*, 556 F.3d 261, 263–64 (5th Cir. 2009) (affirming dismissal of state law claims after dismissing RICO claims under Rule 12(b)(6)).  In fact, it is the Fifth Circuit's "general rule [] to dismiss state claims when the federal claims to which they are pendent are dismissed." *Drake v. Costume Armour Inc.*, 736 Fed.Appx. 505, 506 (5th Cir.2018), citing, *inter alia*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 619 (1988).

60.     As expressed by other Defendants in this matter, the rationale for hearing the State Law Claims evaporates if the RICO causes of action are dismissed.  Plaintiff has a pending state court lawsuit dealing with the same issues and many of the same claims in which trial is imminent. Plaintiff would unjustifiably be allowed to relitigate claims which have been thoroughly briefed and subjected to discovery in the state court matter.

## IV. CONCLUSION

61.     For the reasons stated in this Motion, Plaintiff has failed to state a claim upon which relief can be granted for all of its RICO and state law causes of action.  Plaintiff has failed to allege acts to show that an actual RICO enterprise existed between the Defendants in this case which carried out a purpose distinctive from the alleged racketeering activity, nor that Windspeed itself

was a RICO Enterprise.  Plaintiff pleads insufficient facts to establish that two or more predicate

acts occurred to create a RICO offense.  Lastly, Plaintiff wholly fails to establish that Mr. Szeto

was a distinctive RICO person in a racketeering enterprise.  Furthermore, the failure to adequately

allege facts supporting involvement in a RICO enterprise also warrant the dismissal of the state

law claims brought against Windspeed and Mr. Szeto.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, Mr. Szeto and Windspeed respectfully

request that the Court dismiss with prejudice Counts I, II, III, IV, V, VI, VII, and VIII of the

Complaint against them.  Mr. Szeto and Windspeed further pray for any additional relief to which

they may be justly entitled.

Dated: August 9, 2021
Dallas, Texas

HIGIER ALLEN & LAUTIN, PC

By: */s/ Gordon W. Green*
Jason T. Rodriguez
   Texas State Bar No. 24042827
   *Attorney-In-Charge*
Timothy P. Woods
   Texas State Bar No. 21965500
Gordon W. Green
   Texas State Bar No. 24083102

HIGIER ALLEN & LAUTIN, P.C.
2711 N. Haskell Ave., Suite 2400
Dallas, Texas 75204

Telephone: (972) 716-1888
Facsimile: (972) 716-1899

jrodriguez@higierallen.com
twoods@higierallen.com
ggreen@higierallen.com

**ATTORNEYS FOR WINDSPEED TRADING, LLC, MR. WILLIAM SZETO, MS. ZHEXIAN LIN, MS. DANA MARIE TOMERLIN, MS. PADASAMAI VATTANA; MS. PAULA KETTER, MS. VANESSA TORRES**

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of August 2021, a true and correct copy of the foregoing document was served *via* the Court's ECF system and by email to the following parties.

| | |
|---|---|
| Jason B. Freeman<br>Freeman Law, PLLC<br>2595 Dallas Parkway, Suite 420<br>Frisco, Texas 75034<br>jason@freemanlaw-pllc.com<br><br>**Counsel for Plaintiff** | Edward P. Perrin, Jr.<br>Jennifer R. Poe<br>HALLETT & PERRIN, P.C.<br>1445 Ross Ave., Suite 2400<br>Dallas, Texas 75202<br>eperrin@hallettperrin.com<br>jpoe@hallettperrin.com<br><br>**Counsel for Baymark Defendants** |
| John David Blakley<br>William D. Dunn<br>DUNN SHEEHAN, LLP<br>3400 Carlisle Street, Suite 200<br>Dallas, Texas 75204<br>jdblakley@dunnsheehan.com<br><br>**Counsel for Super G Capital, LLC and Steven Bellah** | Andrea Levin Kim<br>DANIELS TREDENNICK, PLLC<br>6363 Woodway Dr., Ste. 700<br>Houston, Texas 77057<br>andrea.kim@dtlawyers.com<br><br>Rachel Williams<br>WILLIAMS LAW, PC<br>10300 N. Central Expry., Ste. 544<br>Dallas, Texas 75231<br><br>**Counsel for SG Credit Partners, Inc. and Marc Cole** |

*/s/ Gordon W. Green*_____
Gordon W. Green