# WARRANT PURCHASE AGREEMENT

THIS WARRANT PURCHASE AGREEMENT (this "***Agreement***"), dated as of October 18, 2018 (the "***Effective Date***"), is entered into between WINDSPEED TRADING, LLC, a Texas limited liability company (the "***Company***") and SUPER G CAPITAL, LLC, a Delaware limited liability company ("***Purchaser***").  Capitalized terms used herein without definition have the meanings assigned to them in the Warrant (as defined below).

## RECITALS

A.   The Company and Purchaser are entering into a Business Loan and Security Agreement of even date herewith (as the same may be amended, restated, renewed, replaced, supplemented or otherwise modified from time to time, the "***Loan Agreement***"), providing, subject to the terms and conditions thereof, for, among other things, a certain term loan to be made by Purchaser to the Company.

B.   The Company has received, and expects to receive, substantial benefits pursuant to the Loan Agreement, which benefits are hereby acknowledged.

C.   It is a condition to Purchaser's willingness to enter into the Loan Agreement and provide to the Company the financing contemplated thereby that the Company shall have issued a warrant to Purchaser to purchase membership interests in the Company (the "***Warrant***"), representing up to an aggregate of forty percent (40.0%) of the pro-forma, fully-diluted equity in the Company as of the date of exercise, subject to the terms hereof.

D.   The Company is willing and has voluntarily and freely agreed to issue the Warrant, as hereinafter provided.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby covenant and agree as follows:

1.   **Warrant.**

(a)   <u>Warrant Price</u>.  During the period commencing on the Effective Date (the "***Exercise Date***") and continuing to and including October 18, 2023 (the "***Expiration Date***"), the Warrant shall entitle Purchaser thereof, subject to the other provisions of this Agreement, to purchase from the Company membership interests of the Company representing up to an aggregate of forty percent (40.0%) of the Company's total outstanding membership interests (the "***Warrant Interests***") at the time of exercise, on a fully-diluted basis, including, without limitation, after giving effect to the issuance of the Warrant and the related Warrant Interests and the exercise thereof, for a total exercise price of $100.00, or $2.50 per 1% of membership interest (the "***Exercise Price***"), of the Company as set forth in the Warrant attached hereto as <u>Exhibit A</u>.

(b)     <u>Duration</u>.  All or any portion of the Warrant may be exercised at any time, as specified herein, on or after the Exercise Date and at or before 5pm Dallas, Texas time on the Expiration Date.  Any portion of the Warrant not exercised at or before 5pm Dallas, Texas time on the Expiration Date shall become void and all rights of Purchaser under this Agreement and the Warrant shall cease.

2. **Exercise of Warrant.**

(a)     On or before the Expiration Date, all or any portion of the Warrant may be exercised by surrendering the Warrant at the Company's principal offices or at such other places as mutually agreed to by the Company and Purchaser, with the Notice of Exercise (the "***Exercise Notice***") attached to the Warrant duly executed, accompanied by payment in full, in lawful money of the United States of America, in cash, by certified check or by wire transfer of immediately available funds, of the Exercise Price for the portion of the Warrant Interests for which the Warrant is being exercised.  The date on which payment in full of the Exercise Price for the Warrant Interests being purchased and the duly executed and completed Warrant and Exercise Notice are received by the Company, shall be deemed to be the issue date of which such Warrant Interests.

(b)     As soon as practicable after any exercise of the Warrant, the Company shall issue to Purchaser a membership interest representing the percentage interest for which Purchaser has elected to purchase as stated in the Exercise Notice in fully registered form, registered in such name or names as may be directed by Purchaser; and, if Purchaser has elected to purchase less than all of the Warrant Interests, and if prior to the Expiration Date, the Company shall execute and deliver a new Warrant evidencing the remaining Warrant Interests for which the Warrant may be exercised.

(c)     The Company shall pay any stamp or other tax or other governmental charge required to be paid in connection with any transfer involved in the issue of the Warrant Interests.

3. **Amended and Restated Company Agreement.**  Upon Purchaser's exercise of the Warrant (in part or in full), the parties hereby agree to execute and deliver that certain Amended and Restated Company Agreement, the form of which is attached hereto as <u>Exhibit B</u> (the "***A&R Company Agreement***"), and further agree to be bound by the terms of the A&R Company Agreement.  The Company shall cause all other members of the Company to execute and deliver the A&R Company Agreement promptly upon Purchaser's full or partial exercise of the Warrant.

4. **Representations of the Company.**  The Company hereby represents and warrants to Purchaser as follows:

(a)     <u>Organization and Good Standing</u>.  The Company is a limited liability company duly organized, validly existing and in good standing under the laws of State of Texas and has full power and authority to own and lease its property and to conduct its business as presently conducted by it and to enter into and perform this Agreement, to carry out the transactions contemplated by this Agreement and to issue, sell and deliver the Warrant and the Warrant Interests. The Company has furnished to Purchaser true and complete copies of its formation documents and operating agreement, each as amended to date and presently in effect.

2

(b)     <u>Capitalization</u>.  As of the Effective Date, William Szeto is the sole member of the Company and owns 100% of the membership interest of the Company.  Except as set forth on <u>Exhibit C</u>, (i) no membership interests of the Company have been duly reserved for issuance upon the exercise of outstanding options and warrants granted by the Company pursuant to equity plans or other option and warrant agreements; (ii) no subscription, warrant, option, convertible security or other right (contingent or otherwise) to purchase or acquire from the Company any membership interests of the Company is authorized or outstanding; (iii) there is not any commitment of the Company to issue any membership interests, securities, warrants, options or other such rights or to distribute to holders of any class of interests any evidences of indebtedness or assets; and (iv) the Company has no obligation (contingent or otherwise) to purchase, redeem or otherwise acquire any membership interests or any interest therein or make any other distribution in respect thereof. No holder of any warrant, option or other right to purchase any equity of the Company has, by virtue of such warrant, option or other right, the right to receive, participate in or otherwise in any manner benefit from any distributions paid by the Company in cash or property on account of the equity of the Company unless such holder exercises such warrant, option or other right and acquires equity of the Company.

(c)     <u>Reservation of Membership Interests</u>. Except as set forth on <u>Exhibit C</u>, no membership interests are reserved for issuance to employees, officers, consultants and directors of the Company. There are no agreements, written or oral, between the Company and any holder of its securities, relating to the acquisition, disposition or voting of the securities of the Company after the date hereof.

(d)     <u>Issuance of Warrant and Warrant Interests</u>. The issuance, sale and delivery of the Warrant in accordance with this Agreement, and the issuance and delivery of the Warrant Interests upon exercise of the Warrant, have been duly authorized by all necessary limited liability company action on the part of the Company. The Warrant Interests have been duly and validly reserved and, when issued upon exercise of the Warrant, will be duly and validly issued, fully paid and nonassessable. When issued, the Warrant Interests will be free from any claims, liens or encumbrances, other than restrictions on transfer under this Agreement and the A&R Company Agreement and under applicable state and federal securities laws.

(e)     <u>Authority</u>. The execution, delivery and performance by the Company of this Agreement and the Warrant have been duly authorized by all necessary action on the part of the Company and its members, including without limitation, the approval by the managers and members of the execution and delivery of the A&R Company Agreement pursuant to <u>Section 3</u>. This Agreement and the Warrant constitute legal, valid and binding obligations of the Company enforceable against the Company in accordance with their respective terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other laws of general application affecting enforcement of creditors' rights generally. The execution and delivery of, and performance of the transactions contemplated by, this Agreement and the Warrant, and compliance with their provisions by the Company, will not violate any provision of law or regulation and will not conflict with or result in any breach of any of the terms, conditions or provisions of, or constitute a default under, the Company's formation documents, company agreement or any other governing agreements, or any indenture, lease, mortgage, agreement or other instrument to which the Company is a party or by which it or any of its properties is bound, or any decree, judgment, order, statute, rule or regulation applicable to the Company or its properties, or result in the creation

BP_003321

or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the assets or properties of the Company, where such violation, conflict, breach, default or imposition of a lien, change or encumbrance could have a material adverse effect on the Company.

(f) <u>Governmental and Other Consents</u>. No consent, approval, order or authorization of, or registration, qualification, designation, declaration or filing with, any governmental authority or other person or entity is required on the part of the Company in connection with the execution, delivery and performance of this Agreement and the Warrant or the offer, issuance, sale and delivery of the Warrant and the Warrant Interests, except any notices of sale required to be filed with the Securities and Exchange Commission under Regulation D of the Securities Act of 1933, as amended (the "***Securities Act***"), or such post-closing filings as may be required under applicable state securities laws, all which will be filed within applicable periods therefor. Based upon the representations made by Purchaser in <u>Section 5</u>, the offer and sale of the Warrant and the Warrant Interests to Purchaser will be exempt from the registration requirements of the Securities Act and from the qualification requirements of any applicable state securities laws.

(g) <u>Disclosures</u>. Neither this Agreement nor any exhibit hereto nor any certificate or instrument furnished or to be furnished to Purchaser or its counsel in connection with the transactions contemplated by this Agreement contains any material misstatement of fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading. The Company knows of no information or fact which has or would have a material adverse effect on the financial condition, business or prospects of the Company which has not been disclosed to Purchaser.

5. **<u>Representations of Purchaser.</u>** Purchaser represents and warrants to the Company as follows:

(a) <u>Investment</u>. Purchaser is acquiring the Warrant and the Warrant Interests for its own account for investment and not with a view to, or for sale in connection with, any distribution thereof, nor with any present intention of distributing or selling the same. Purchaser understands that the Warrant and the Warrant Interests have not been registered under the Securities Act, or qualified under any applicable state securities laws in reliance upon exemptions from such requirements.

(b) <u>Authority</u>. Purchaser has full power and authority to enter into and to perform this Agreement in accordance with its terms. The execution, delivery and performance by Purchaser of this Agreement have been duly authorized by all necessary action on behalf of Purchaser. This Agreement constitutes the valid and binding obligation of Purchaser enforceable in accordance with its terms.

(c) <u>Sophisticated Investor; Accredited Investor</u>. Purchaser has not been organized, reorganized or recapitalized specifically for the purpose of investing in the Company. Purchaser has sufficient business and financial knowledge and experience so as to be capable of evaluating the merits and risks of its investment in the Company. Purchaser is an "accredited investor" as that term is defined in Rule 501(a) promulgated under the Securities Act.

4

(d)     *Restricted Securities*. Purchaser acknowledges that the Warrant and the Warrant Interests have not been registered under the Securities Act and, as a result, must be held indefinitely unless they are subsequently registered under the Securities Act or an exemption from such registration is available.

(e)     *Access to Information*. Purchaser has had an opportunity to discuss the Company's business, management and financial affairs with the Company's management. Purchaser has also had an opportunity to ask questions of officers of the Company, which questions were answered to its satisfaction.

6.    **Restrictive Legend.** Each certificate representing any Warrant or any Warrant Interests or other securities issued in respect of the Warrant or the Warrant Interests upon a distribution, recapitalization, merger, consolidation or similar event, shall (unless there is in effect a registration statement under the Securities Act covering such proposed transfer, such securities have been sold under Rule 144 or as otherwise permitted by the provisions of this Agreement) and be stamped or otherwise imprinted with a legend substantially in the following form (in addition to any legend required under applicable state securities laws):

> THIS WARRANT AND THE WARRANT INTERESTS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY APPLICABLE STATE SECURITIES LAWS AND MAY NOT BE OFFERED, SOLD OR TRANSFERRED OR OTHERWISE DISPOSED OF UNLESS SO REGISTERED OR AN EXEMPTION THEREFROM IS AVAILABLE. THE WARRANT INTERESTS ARE SUBJECT TO THE PROVISIONS OF THAT CERTAIN LIMITED LIABILITY COMPANY AGREEMENT DATED AS OF SEPTEMBER 27, 2018 (AS MAY BE AMENDED AND RESTATED FROM TIME TO TIME, THE "COMPANY AGREEMENT"), INCLUDING CERTAIN RESTRICTIONS ON TRANSFER SET FORTH THEREIN. THE WARRANT INTERESTS ARE ALSO SUBJECT TO THE PROVISIONS OF A CERTAIN WARRANT PURCHASE AGREEMENT DATED AS OF THE DATE HEREOF (THE "WARRANT PURCHASE AGREEMENT"), INCLUDING CERTAIN RESTRICTIONS ON TRANSFER SET FORTH THEREIN. A COMPLETE AND CORRECT COPIES OF THE COMPANY AGREEMENT AND THE WARRANT PURCHASE AGREEMENT ARE AVAILABLE FOR INSPECTION AT THE PRINCIPAL OFFICE OF THE COMPANY AND WILL BE FURNISHED UPON WRITTEN REQUEST AND WITHOUT CHARGE.

7.    **Anti-Dilution Provisions.**

(a)    *Reorganization, Reclassification or Recapitalization of the Company*. In case of (I) a capital reorganization, reclassification or recapitalization of the Company's membership interests or securities (other than in the cases referred to in Section 7(b), (ii) the Company's consolidation or merger with or into another entity in which the Company is not the surviving entity, or a reverse triangular merger in which the Company is the surviving entity but the Company's ownership interests immediately prior to the merger are converted, by virtue of the merger, into other property, whether in the form of securities, cash or otherwise, or (iii) the sale or

transfer of the Company's property as an entirety or substantially as an entirety, then, as part of such reorganization, reclassification, recapitalization, merger, consolidation, sale or transfer, lawful provision shall be made so that there shall thereafter be deliverable upon the exercise of the Warrant or any portion thereof (in lieu of or in addition to the number of Warrant Interests theretofore deliverable, as appropriate), and without payment of any additional consideration (other than the applicable Exercise Price), the membership interest, equity interest or other securities or property to which Purchaser would otherwise have been deliverable upon the exercise of the Warrant or any portion thereof at the time of such reorganization, reclassification, recapitalization, consolidation, merger, sale or transfer would have been entitled to receive in such reorganization, reclassification, recapitalization, consolidation, merger, sale or transfer. This Section 7(a) shall apply to successive reorganizations, reclassifications, recapitalizations, consolidations, mergers, sales and transfers and to the stock, membership interests, partnership interests or similar equity securities of any other entity that is or are at the time receivable upon the exercise of the Warrant.

(b)     Reclassifications. If the Company changes any of the Warrant Interests into the same or a different number of membership interests or securities of any other class or classes, the Warrant shall thereafter represent the right to acquire such number and kind of securities as would have been issuable as the result of such change with respect to the Warrant Interests under the Warrant immediately prior to such reclassification or other change and the Exercise Price therefor shall be appropriately adjusted.

(c)     Liquidation; Dissolution. If the Company shall dissolve, liquidate or wind up its affairs, Purchaser shall have the right, but not the obligation, to exercise the Warrant effective as of the date of such dissolution, liquidation or winding up. If any such dissolution, liquidation or winding up results in any cash distribution to Purchaser in excess of the aggregate Exercise Price for the Warrant Interests for which the Warrant is exercised, then Purchaser may, at its option, exercise the Warrant without making payment of such aggregate Exercise Price and, in such case, the Company shall, upon distribution to Purchaser, consider such aggregate Exercise Price to have been paid in full, and in making such settlement to Purchaser, shall deduct an amount equal to such aggregate Exercise Price from the amount payable to Purchaser.

(d)     Dilution Events Relating to Capitalization Representations. If there is a breach or a failure of the representation contained in Section 4(b) (Capitalization) (excluding warrants and options significantly out of the money) and such breach or failure results in adverse effect in the ownership percentage represented by the Warrant Interests had such representation been true and correct in all material respects (excluding warrants and options significantly out of the money), then an appropriate adjustment shall be made necessary to preserve, without dilution, the ownership percentage represented by the Warrant Interests intended to be granted to Purchaser had such representation been true and accurate in all material respects (excluding warrants and options significantly out of the money). In each such case and if deemed necessary by Purchaser, Purchaser shall appoint a firm of independent public accountants of recognized national or regional standing which shall give their opinion upon the adjustment, if any, on a basis consistent with the essential intent and principles established in this Section 7(d), necessary to preserve, without dilution, the ownership percentage represented by the Warrant Interests. Upon receipt of such opinion, Purchaser shall promptly deliver a copy thereof to the Company and the Company shall make the adjustments described therein.

BP_003324

(e) <u>Notices</u>. If the Company, after the Effective Date, proposes to effect (i) any transaction described in <u>Sections 7(a)</u> or <u>7(b)</u> hereof, or (ii) a liquidation, dissolution or winding up of the Company described in <u>Section 7(c)</u> hereof, or (iii) any payment of a distribution with respect to any equity of the Company (other than distributions to the Company's members to meet their tax obligations on income realized by such members attributable solely to such members' investment in the Company and compensation paid to any member in the ordinary course of business for services provided to the Company), then, in each such case, the Company shall deliver to Purchaser a notice describing such proposed action and specifying the date on which the Company's books shall close, or a record shall be taken, for determining the holders of equity of the Company entitled to participate in such action, or the date on which such reorganization, reclassification, consolidation, merger, sale, transfer, liquidation, dissolution or winding up shall take place or commence, as the case may be, and the date as of which it is expected that holders of equity of the Company shall be entitled to receive securities and/or other property deliverable upon such action, if any such date is to be fixed. Such notice shall be delivered to Purchaser at least twenty (20) days prior to the record date for such action in the case of any action described in clause (i) above at least ten (10) days prior to the record date for such action in the case of any action described in clause (iii) above, and in the case of any action described in clause (ii) above, at least twenty (20) days prior to the date on which the action described is to take place and at least twenty (20) days prior to the record date for determining holders of equity of the Company entitled to receive interests and/or other property in connection with such action. The failure to give notice required by this <u>Section 7(e)</u> or any defect therein shall be a breach of this Agreement but shall not affect the legality or validity of the action taken by the Company or the vote upon any such action.

(f) <u>No Impairment</u>. The Company shall not, by amendment of its formation documents or through any reorganization, recapitalization, transfer of assets, consolidation, merger, dissolution, issuance or sale of membership interests or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Company, but shall at all times in good faith assist in the carrying out of all the provisions of this Section and in the taking of all such action as may be necessary or appropriate in order to protect the rights of Purchaser against impairment.

(g) <u>Application</u>. Except as otherwise provide herein, all sections of this Section are intended to operate independently of one another. If an event occurs that requires the application of more than one section, all applicable sections shall be given independent effect.

8. **<u>Restrictions on Transferability.</u>**

(a) <u>Transfers</u>. Neither the Warrant nor the Warrant Interests shall be transferable except upon the conditions specified in this <u>Section 8</u> and the A&R Company Agreement, and in compliance with applicable federal and state securities laws. Purchaser will cause any proposed transferee of the Warrants or the Warrant Interests held by Purchaser to agree to take and hold such securities subject to the provisions and upon the conditions specified in this <u>Section 8</u> and the A&R Company Agreement if and to the extent that such securities continue to be restricted securities in the hands of the transferee.

(b) <u>Notice of Proposed Transfers</u>. Prior to any proposed transfer of the Warrant or any Warrant Interests, Purchaser shall give written notice to the Company of Purchaser's

7

intention to effect such transfer. Each such notice shall describe the manner and circumstances of the proposed transfer. Each certificate, warrant or other security evidencing the Warrant or the Warrant Interests transferred as above provided shall bear the appropriate restrictive legend set forth in Section 6, except that such certificate, warrant or other security shall not bear such restrictive legend if in the opinion of counsel for the Company or Purchaser, such legend is not required under the Securities Act or any applicable state securities law.

9. **Miscellaneous**

(a) Brokers. Each of the Company and Purchaser (i) represents and warrants that it has retained no finder or broker or taken any other action resulting in the payment of any brokerage fee or sales commission in connection with the transactions contemplated by this Agreement or the Warrant, and (ii) will indemnify and save the other harmless from and against any and all claims, liabilities or obligations with respect to brokerage or finders fees or commissions, or consulting fees in connection with the transactions contemplated by this Agreement asserted by any person on the basis of any statement or representation alleged to have been made by such indemnifying party.

(b) Survival. The representations, warranties, covenants, and agreements made herein shall survive any investigation made by any party hereto and shall survive the execution and delivery of this Agreement and the closing of the transactions contemplated hereby.

(c) Additional Actions and Documents. The parties shall execute and deliver such further documents and instruments and shall take such other further actions as may be required or appropriate to carry out the intent and purposes of this Agreement.

(d) Successors and Assigns. This Agreement and the Warrant shall bind and inure to the benefit of the parties hereto and their respective successors and assigns. Subject to the provisions of this Agreement and in the Warrant, Purchaser may transfer all or part of its interest in this Agreement and the Warrant to a Permitted Transferee (as defined in the A&R Company Agreement).

(e) Parties in Interest. Nothing in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the parties to it and their respective successors and assigns. Nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third persons to any party to this Agreement.

(f) Amendments, Waivers and Consents. This Agreement shall not be changed or modified, in whole or in part, except by supplemental agreement signed by both parties. No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

(g) Notices. All notices, requests, consents, and other communications under this Agreement shall be in writing and shall be delivered by hand, prepaid overnight courier, or mailed by first class, certified or registered mail, return receipt requested, postage prepaid or sent by email or facsimile:

BP_003326

| | |
|---|---|
| Windspeed Trading, LLC | Super G Capital, LLC |
| 3408 Provine Road | 23 Corporate Plaza, Suite 100 |
| McKinney, Texas 75074 | Newport Beach, California 92660 |
| Attn: William Szeto | Attn: Marc Cole |
| Email: bill@windspeedtrading.com | Email: marc@supergcapital.com |

With a copy (which will not constitute notice) to:
Higier Allen & Lautin, P.C.
The Tower at Cityplace
2711 N. Haskell Avenue, Suite 2400
Dallas, Texas 75204
Attn: Alexander M. Szeto, Esq.
Email: aszeto@higierallen.com

or at such other address or addresses, email address, or facsimile number(s) as may be furnished in writing to the parties. Notices provided in accordance with this Section 9(g) shall be deemed delivered upon physical delivery or upon delivery by facsimile or email transmission.

(h) Attorneys' Fees. If either party brings any suit, action, counterclaim, or arbitration to enforce the provisions of this Agreement or the Warrant, the prevailing party therein shall be entitled to recover a reasonable allowance for attorneys' fees and litigation expenses in addition to court costs. In this Section 9(h), "*prevailing party*" means (i) the party in whose favor a judgment, decree, or final order is rendered, or (ii) if all claims in such suit or proceeding are not resolved in favor in one party, the party obtaining substantially the relief sought, as determined by the court or arbitrator(s) involved in such suit or proceeding.

(i) Governing Law. The rights and obligations of the parties shall be governed by, and this Agreement and the Warrant shall be construed and enforced in accordance with, the laws of the State of Texas.

(j) Jurisdiction and Venue. The parties hereto consent to the jurisdiction of all federal and state courts in the State of Texas, and agree that venue shall lie exclusively in Dallas County, Texas.

(k) Waiver of Jury Trial. The Company agrees that neither it nor any assignee or successor shall seek a jury trial in any lawsuit, proceeding, counterclaim or any other action based upon, or arising out of, this Agreement, or the Warrant, or the dealings or the relationship between the Company and Purchaser.

(l) Entire Agreement. This Agreement and the documents and agreements contemplated herein constitute the entire agreement between the parties with regard to the Warrant, the Warrant Interests, and any securities issuable, directly or indirectly, upon conversion of the Warrant Interests.

(m) Severability. If any provision of this Agreement or the Warrant, or the application of such provision to any person or circumstances, is held invalid or unenforceable, the

remainder of this Agreement and the Warrant, or the application of such provision to person or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

   (n) <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.  This Agreement may be signed electronically, either as a manually-signed original signature that is faxed or e-mailed as a .pdf (or similar file format), or containing, or to which there is affixed, an electronic signature

(*Signatures page follows.*)

529582v2

10

IN WITNESS WHEREOF, the parties have caused this Warrant Purchase Agreement to be executed as of the Effective Date.

**COMPANY:**

**Windspeed Trading, LLC**, a Texas limited liability company

By: _____/s/ William Szeto_____
Name: William Szeto
Title: Manager


**PURCHASER:**

**Super G Capital, LLC**, a Delaware limited liability company

By: _____
Name: Marc Cole
Title: Chief Financial Officer

IN WITNESS WHEREOF, the parties have caused this Warrant Purchase Agreement to be executed as of the Effective Date.

**COMPANY:**

**Windspeed Trading, LLC**, a Texas limited liability company

By: _____
Name: William Szeto
Title: Manager

**PURCHASER:**

**Super G Capital, LLC**, a Delaware limited liability company

By: _____
Name: Marc Cole
Title: Chief Financial Officer

Signature Page – Warrant Purchase Agreement
Super G Capital, LLC

**EXHIBIT A**

**FORM OF WARRANT**

(*See attached.*)

BP_003331

**EXHIBIT B**

**FORM OF AMENDED AND RESTATED COMPANY AGREEMENT**

(*See attached.*)

BP_003332

# EXHIBIT C

## EXCEPTIONS TO REPRESENTATIONS AND WARRANTIES

4(b)

Warrant Purchase Agreement, dated as of October 18, 2018, by and between the Company and Baymark Partners Management, LLC and Warrant to Purchase Membership Interests in the Company, dated as of October 18, 2018, issued by the Company to Baymark Partners Management, LLC for membership interests in the Company representing up to 40% of the Company's outstanding equity interests.

BP_003333