PLAINTIFF'S
EXHIBIT
24

# COLLATERAL ASSIGNMENT OF RIGHTS
# UNDER ACQUISITION TRANSACTION DOCUMENTS AND SUBORDINATION
# AGREEMENT

This Collateral Assignment of Rights under Acquisition Transaction Documents and Subordination Agreement (as amended, restated or otherwise modified from time to time, this "Agreement") is entered into as of July 20, 2017 by and between **ACET GLOBAL, LLC,** a Texas limited liability company ("Acquisition Party"), **SUPER G CAPITAL, LLC,** a Delaware limited liability company ("Lender") pursuant to that certain Business Loan and Security Agreement, dated of even date herewith (as amended, supplemented or restated from time to time, the "Loan Agreement"), by and between Acquisition Party and Lender.

WHEREAS, Acquisition Party and ACET Venture Partners LLC, a Texas limited liability company ("Seller"), and the members of the Seller (collectively, the "Members", and together with the Seller, the "Seller Parties") are parties to that certain Asset Purchase Agreement (together with any and all amendments, supplements or other modifications thereto, the "Purchase Agreement"), dated as of July 20, 2017, pursuant to which Acquisition Party purchased substantially all of the assets of Seller (the "Acquisition Transaction"); the Purchase Agreement and all other agreements, documents and instruments executed and delivered in connection with the Acquisition Transaction, as each may be amended, modified, restated or supplemented from time to time, are collectively referred to herein as the "Acquisition Transaction Documents";

WHEREAS, Acquisition Party and Lender have entered into the Loan Agreement, providing for a term loan facility in the principal amount of up to $1,000,000;

WHEREAS, as a condition to Lender entering into the Loan Agreement, Lender has required that (i) Acquisition Party grant to Lender a security interest in and collateral assignment of all of Acquisition Party's respective rights and remedies under the Acquisition Transaction Documents, and (ii) the Seller Parties acknowledge and agree to such security interest and collateral assignment by executing and delivering the Acknowledgement appended to the end of this Agreement; and

WHEREAS, capitalized terms, unless otherwise defined herein, shall have the meanings set forth in the Loan Agreement.

NOW, THEREFORE, in consideration of the premises set forth herein and for other good and valuable consideration, Acquisition Party agrees as follows:

1.  As collateral security for the payment and performance of all of the Obligations, Acquisition Party hereby assigns, transfers and sets over to Lender, its successors and assigns, all of Acquisition Party's rights and remedies (but not its obligations) under and with respect to the Acquisition Transaction Documents, and all right, title and interest in and to any and all sums due to or recovered by Acquisition Party under the Acquisition Transaction Documents, including, without limitation, Acquisition Party's rights and remedies with respect to (i) any breach by any Seller Party of any representations, warranties and covenants under the


EXHIBIT B

Acquisition Transaction Documents and (ii) any indemnification from any Seller Party arising under or pursuant to the Acquisition Transaction Documents.

2. Acquisition Party represents and warrants that:

(a) There has been no assignment of any of Acquisition Party's rights under the Acquisition Transaction Documents to any other person or entity;

(b) Acquisition Party is not in default in any material respect under the Acquisition Transaction Documents and knows of no default on the part of any other party to the Acquisition Transaction Documents; and

(c) Acquisition Party has not done or omitted to do any act so as to be estopped from exercising any of its rights under the Acquisition Transaction Documents.

3. Acquisition Party agrees and covenants unto Lender as follows:

(a) Acquisition Party will perform and observe each and every material condition and covenant of Acquisition Party contained in the Acquisition Transaction Documents.

(b) At any time (other than during the existence of an Event of Default as defined in the Loan Agreement), insofar as Acquisition Party may have any right, privilege or claim against any person or entity under the Acquisition Transaction Documents, including, without limitation, all of Acquisition Party's rights and remedies with respect to indemnification, Acquisition Party shall use prudent business judgment concerning the enforcement of such rights, privileges and claims in accordance with the terms of the Acquisition Transaction Documents and if, in the exercise of such judgment, Acquisition Party determines to enforce such rights, privileges and claims, Acquisition Party shall enforce the same diligently, in good faith and at no cost or expense to Lender.

(c) Acquisition Party hereby (i) specifically and irrevocably authorizes and directs the Seller Parties upon notice to the Seller Parties (with a copy to Acquisition Party) by Lender, following an Event of Default and so long as such Event of Default is continuing, to make all payments due to Acquisition Party under or arising under the Acquisition Transaction Documents directly to Lender, and (ii) irrevocably makes, constitutes and appoints Lender (and all officers, employees or lenders designated by Lender) as its true and lawful attorney (and Lender-in-fact), with full authority in the place and stead of Acquisition Party and in the name of Acquisition Party, Lender or otherwise, from time to time in Lender's discretion to take any action and to execute any instrument that Lender may deem necessary or advisable to accomplish the purposes of this Agreement, including to (w) take any and all action, in its own name or the name of Acquisition Party, including filing any claim or instituting any action or proceeding, as Lender deems necessary or desirable to exercise the rights and remedies of Acquisition Party, and/or to enforce the obligations of the Seller Parties, under the Acquisition Transaction Documents, (x) ask, demand, receive, receipt and give acquittance for any and all amounts which may be or become due and payable, or remain unpaid at any time and times to Acquisition Party by any Seller Party under or pursuant to the Acquisition Transaction Documents, (y) endorse any checks, drafts or other orders for the payment of money payable to Acquisition Party

in payment thereof, and (z) collect any and all damages, awards and other monies due from the Seller Parties and apply the same on account of the Obligations in accordance with the terms and provisions of the Loan Agreement. The power of attorney granted herein is coupled with an interest and shall terminate only at such time as the Obligations have been paid and satisfied in full in cash ("Payment in Full") (though, except as provided in the Loan Agreement, such power may only be exercised during the existence of an Event of Default). The Seller Parties are hereby authorized to recognize Lender's claims to rights (but not the obligations) hereunder and under the Acquisition Transaction Documents without investigating any reason for any action taken by Lender or the validity or the amount of the Obligations or existence of any Event of Default, or the application to be made by Lender of any of the amounts to be paid to Lender. In no event, however, shall Lender be required or obligated in any manner to assert or exercise any right or remedy of Acquisition Party, or to enforce any obligations of the Seller Parties, under the Acquisition Transaction Documents, and Lender's failure to do so shall not give rise to any liability to Acquisition Party or any other person or entity. Without limiting the foregoing, during the existence of an Event of Default under the Loan Agreement, Acquisition Party shall not make any payments to any Seller Party under the Acquisition Transaction Documents.

(d) Acquisition Party shall keep Lender fully informed of all circumstances bearing upon Acquisition Party's rights and remedies, and the Seller Parties' obligations, under the Acquisition Transaction Documents, and Acquisition Party shall not waive, amend, alter, modify or terminate any of its rights or remedies, or any of the Seller Parties' covenants or obligations, under the Acquisition Transaction Documents without the prior written consent of Lender, which consent shall not be unreasonably withheld, conditioned or delayed. Acquisition Party shall promptly advise Lender in writing of any breach or default by any Seller Party of any of its covenants or obligations under the Acquisition Transaction Documents.

(e) Notwithstanding the foregoing, Acquisition Party expressly acknowledges and agrees that it shall remain liable under Acquisition Transaction Documents to observe and perform all of the conditions and obligations therein contained to be observed and performed by it, and that neither this Agreement, nor any action taken pursuant hereto, shall cause Lender to be under any obligation or liability in any respect whatsoever to any party to the Acquisition Transaction Documents for the observance or performance of any of the representations, warranties, conditions, covenants, agreements or terms therein contained.

4. Acquisition Party agrees as follows:

(a) This Agreement is effective until Payment in Full.

(b) This Agreement shall be binding upon and inure to the benefit of each of the parties hereto and their respective successors and permitted assigns.

(c) This Agreement shall not be amended, modified or supplemented, or any provision waived, without the written agreement of Acquisition Party and Lender at the time of such amendment, modification, supplement or waiver.

(d) The provisions of this Agreement and other agreements and documents referred to herein are to be deemed severable, and the invalidity or unenforceability of any

3

provision shall not affect or impair the remaining provisions which shall continue in full force and effect.

(e)     This Agreement shall be effective upon delivery to the Lender, without further act, condition or acceptance by the Lender.

(f)     Sections 11, 12 and 15 of the Loan Agreement are hereby incorporated herein by this reference, with the names of the parties to this Agreement and the applicable documents being used instead of those in the Loan Agreement.

(g)     Any notices required or permitted to be given pursuant to this Agreement must be in writing and may be given by personal delivery, email, facsimile, first class mail via the United States Postal Service, postage prepaid, or by any overnight courier by sending said notice to the applicable recipient at the address set forth below:

| If to Lender: | with a copy to: |
|---|---|
| Super G Capital, LLC<br>23 Corporate Plaza, Suite 100<br>Newport Beach, CA 92660<br>Attention: Marc Cole<br>Facsimile: (949) 73407486<br>Email: marc@supergcapital.com | Jeffer Mangels Butler & Mitchell LLP<br>1900 Avenue of the Stars, 7th Floor<br>Los Angeles, CA 90067<br>Attention: Joel J. Berman<br>Facsimile: 310-203-0567<br>Email: jberman@jmbm.com |
| If to Acquisition Party: | with a copy to: |
| ACET Global, LLC<br>Granite Park II<br>5700 Granite Parkway, Suite 435<br>Plano, Texas 75024<br>Attention: David Hook<br>Email: dhook@baymarkpartners.com | Hallett & Perrin, P.C.<br>1445 Ross Avenue, Suite 2400<br>Dallas, Texas 75202<br>Attention: Gordon T. Foote II<br>Email: gfoote@hallettperrin.com |

If to Seller Parties:

1501 10th Street, Suite 100
Plano, Texas 75074
Attention: Tomer Damti
Email: tomer@acetvp.com

If any party desires to change the address or email and fax numbers to which notices are to be sent, it shall do so in writing and deliver the same to the other parties in accordance with the notice provisions set forth above. Any notice given by any party under this

4

Agreement will be effective upon a party's receipt of the notice or if mailed, upon the earlier of a party's receipt of the notice and the third (3rd) Business Day after the mailing of the notice.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, this instrument has been duly executed and delivered, as of the date first set forth above.

**ACQUISITION PARTY:**   **ACET GLOBAL, LLC**

By: _____
David J. Hook, President


**ACCEPTED:**   **SUPER G CAPITAL, LLC**, as Lender

By: _____
Marc Cole, Chief Financial Officer

*[SIGNATURE PAGE TO COLLATERAL ASSIGNMENT OF RIGHTS UNDER ACQUISITION TRANSACTION DOCUMENTS AND SUBORDINATION AGREEMENT]*

S-1

**App. 068**

IN WITNESS WHEREOF, this instrument has been duly executed and delivered, as of the date first set forth above.

**ACQUISITION PARTY:**          **ACET GLOBAL, LLC**

By: _____
David J. Hook, President


**ACCEPTED:**          **SUPER G CAPITAL, LLC**, as Lender

By: _____
Marc Cole, Chief Financial Officer

## Acknowledgement

This Acknowledgment is given in connection with the foregoing Collateral Assignment of Rights Under Acquisition Transaction Documents and Subordination Agreement (the "Collateral Assignment") by Acquisition Party in favor of Lender.

The undersigned, being the "Seller Parties" under the Acquisition Transaction Documents referenced in the Collateral Assignment, hereby acknowledge and consent to the following: (x) the assignment by Acquisition Party of its rights and remedies under the Acquisition Transaction Documents to Lender under the Collateral Assignment; and (y) the subordination in the following paragraphs. The undersigned further acknowledge the power of attorney granted to Lender by Acquisition Party in the Collateral Assignment, and agree that Lender shall have the right to exercise any and all rights of Acquisition Party, and enforce the obligations of the Seller Parties, under the Acquisition Transaction Documents.

The Seller Parties agree that, until the Obligations (as defined below) are paid and performed in full:

(a) after the Seller Parties receive written notice from Lender of an Event of Default, the Seller Parties shall not demand, attempt to collect or otherwise receive any payments due to the Seller Parties under the Acquisition Transaction Documents; if, notwithstanding the foregoing, any of the Seller Parties receives such payments, such Seller Party shall hold such payments in trust, not commingle such payments with any other assets of the Seller Parties, and shall immediately remit such payments to Lender together with any appropriate endorsements;

(b) at all times, whether before, after or during the pendency of any insolvency proceeding of Borrower or any Pledgor and notwithstanding the priorities that would ordinarily result from the order of granting or perfection of any security interests, the order of filing or recording of any financing statements, or the priorities that would otherwise apply under applicable law, that (i) Lender's security interest in the Collateral shall constitute first priority liens in such property to secure the Obligations and shall be superior to any lien or other interest of the Seller Parties in the same property arising pursuant to the Acquisition Transaction Documents, by operation of law or otherwise; and (ii) any lien or other interest at any time acquired by the Seller Parties in any of the Collateral shall be subordinate to the security interest of Lender therein. The Seller Parties agree to execute such amendments to financing statements and other documents as may be necessary to reflect of record the existence of this Agreement and the priorities set forth herein;

(c) they will (if requested to do so by Lender after and during the continuance of an Event of Default) release its liens in any Collateral in connection with and in order to facilitate any enforcement action by Lender, an orderly liquidation or going concern sale or other disposition of such Collateral by any Pledgor (whether prior to or during the pendency of any insolvency proceeding), or a sale or other disposition by a bankruptcy trustee or receiver for Pledgor or its assets; and promptly upon the request of Lender, the Seller Parties will execute and deliver such documents, instruments and agreements as are necessary to effectuate such release and to evidence such release in the appropriate public records. Notwithstanding the foregoing,

any lien of the Seller Parties shall, subject to all of the provisions of this Agreement, continue in the proceeds of any such Collateral until applied to the Obligations; and

(d) as used herein, (x) the terms "Pledgor" and "Collateral" shall have the meanings ascribed to them in the Pledge Agreement; (y) the term "Obligations" shall include all Obligations as defined in the Loan Agreement and all interest, legal fees and other charges that accrue or are incurred in connection with any of the foregoing during the pendency of any insolvency proceeding of Borrower or Pledgor, whether or not Lender is authorized by 11 U.S.C. § 506 or otherwise to claim or collect any such interest, legal fees or other charges from Borrower or Pledgor; and "Pledge Agreement" means that certain Pledge Agreement, of even date, by Baymark ACET HoldCo, LLC, a Texas limited liability company, in favor of Lender.

IN WITNESS WHEREOF, this Acknowledgement has been duly executed by the Seller Parties as of the date and year first above written.

**SELLER PARTIES:**    **ACET VENTURE PARTNERS LLC**, a Texas limited liability company

By: _____
Its: President

_____
Tomer Damti, individually

3