PLAINTIFF'S
EXHIBIT

**26**

# FORBEARANCE AGREEMENT

This FORBEARANCE AGREEMENT (this "Forbearance Agreement") is made and entered into as of April 12, 2018 (the "Commencement Date"), by and between **SUPER G CAPITAL, LLC**, a Delaware limited liability company ("Lender"), and **ACET GLOBAL, LLC**, a Texas limited liability company ("Borrower").

## RECITALS OF FACT:

A.      Lender made a Loan in the amount of $750,000 (the "First Loan") to Borrower pursuant to that certain Business Loan and Security Agreement, dated as of July 20, 2017 (as amended, the "Loan Agreement"), by and between Borrower and Lender.  Capitalized terms, which are used herein but not defined herein, shall have the meanings ascribed to them in the Loan Agreement.

B.      Pursuant to the Loan Agreement, Borrower covenanted to do the following, among other things:

(1)      At all times maintain cash in its deposit accounts with Bank other than the Escrow Account equal to no less than $50,000; and

(2)      Make Weekly Payments as provided in the Loan Agreement..

C.      Borrower has failed to make the Weekly Payments of $15,000 due on March 22, 2018 and on March 29, 2018.  With Borrower's consent, and without waiving its right to declare an Event of Default arising from Borrower's failure to make such Weekly Payments, Lender has initiated ACH debit entries to Borrower's Account aggregating $10,000 as partial payments of the defaulted Weekly Payments.

D.      Since _____, 201__, Borrower has failed maintain cash in its deposit accounts with Bank other than the Escrow Account equal to no less than $50,000.

E.      Borrower's failures, as described in paragraphs C and D above, are hereinafter collectively referred to as the "Designated Defaults."

F.      The Designated Defaults constitute Events of Default pursuant to Sections 7.1 and 7.2, respectively, of the Loan Agreement.

G.      Borrower has requested that Lender forbear from exercising certain rights and remedies provided to Lender under the Loan Documents and otherwise available at law or in equity as a result of the Designated Defaults.  Subject to the terms and conditions contained herein, Lender is prepared to forbear from the exercise of such rights and remedies.

**NOW, THEREFORE, FOR AND IN CONSIDERATION** of the foregoing Recitals of Fact, the covenants hereinafter contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

BP_008132

**Section 1.**     **Recitals of Fact**.  All of the above Recitals of Fact are true and correct and incorporated herein by reference.

**Section 2.**     **Acknowledgment of Outstanding Obligations**.  Borrower acknowledges that: (a) as of the Commencement Date, and assuming that all payments made by Borrower prior to the Commencement Date have accepted by Borrower's bank, the outstanding principal balance of and accrued interest on the First Loan is $535,000.00, and that such amounts are due and payable in full without offset, deduction or counterclaim of any kind or character whatsoever; (b) each of the Designated Defaults constitutes an Event of Default under the Loan Documents, and (c) among other things, the Designated Defaults permit Lender to (i) accelerate the Obligations evidenced by the Loan Documents, (ii) charge the default rate provided for in the Loan Agreement, (iii) commence any legal or other action to collect any or all of the Obligations owing under the Loan Documents from Borrower and the Collateral, (iv) foreclose or otherwise realize on the Collateral and any or all other security for the Obligations owing under the Loan Documents and apply the proceeds thereof to such Obligations and/or (v) take any other enforcement action or otherwise exercise any or all rights and remedies provided for by any or all of the Loan Documents or applicable law.

**Section 3.**     **Acknowledgment of Continuation of Liabilities**.  The Obligations of Borrower under the Loan Documents shall, except as expressly modified herein, remain in full force and effect, and shall not be released, impaired, diminished or in any other way modified or amended as a result of the execution and delivery of this Forbearance Agreement or by the agreements and undertakings of the parties contained herein. Borrower hereby ratifies and confirms each of the Loan Documents and the rights granted thereunder in favor of Lender. Borrower hereby confirms that the security interests granted pursuant to the Loan Documents continue to secure the Obligations of Borrower under the Loan Documents and that such security interests remain in full force and effect.

**Section 4.**     **Forbearance.**

(a)     Forbearance Period.  Subject to the conditions precedent in Section 5 below, for the period beginning on the Commencement Date and ending on October 25, 2018 (the "Forbearance Period"), Lender, without waiving, curing or ceasing the occurrence or continuance of the Designated Defaults, agrees to forbear from the exercise of any of its rights and remedies available under the Loan Agreement and the other Loan Documents on account of the occurrence or continuance of the Designated Defaults and from requiring Borrower to immediately pay to Lender for application to the First Loan, the unpaid balance of the First Loan outstanding on such date, including any and all accrued and unpaid interest thereon and fees and costs due Lender.  Lender's forbearance shall be effective only with respect to the Designated Defaults and shall automatically terminate and cease to be of any force and effect, and Lender may exercise all of its rights and remedies as may be available under the Loan Agreement, the other Loan Documents and under applicable law or in equity, if the Forbearance Period is earlier terminated pursuant to any other provision of this Forbearance Agreement.

(b)     Other Terminations of the Forbearance Period.  The Forbearance Period will also terminate upon the occurrence of any Forbearance Termination Event (as hereinafter defined).

BP_008133

(c)    Effect of Expiration or Termination of the Forbearance Period. Upon the termination or expiration of the Forbearance Period, all forbearances, deferrals and indulgences granted by Lender in this Section 4 shall automatically terminate, and Lender shall thereupon have, and shall be entitled to exercise, any and all rights and remedies which it may have upon the occurrence of an Event of Default. Without limiting the generality of the foregoing, upon the expiration or termination of this Forbearance Agreement, all costs and expenses reasonably incurred by Lender in connection with the First Loan, including but not limited to enforcement of the First Loan, not previously reimbursed by Borrower, shall be immediately due and payable.

**Section 5.    Effectiveness of Forbearance Agreement.** The undertakings of Lender and the Forbearance Period provided for herein, and the amendment of the Loan Agreement as set forth in Section 6 below, shall not become effective unless and until Lender receives the following:

(a)    a duly executed counterpart of this Forbearance Agreement from the Borrower; and

(b)    a duly executed copy of the Reaffirmation and Consent by BAYMARK ACET HOLDCO LLC, a Texas limited liability company ("Parent"), a copy of which is attached hereto as Exhibit A.

Upon Borrower's receipt of the documents and information described above, the terms and conditions set forth herein shall be deemed effective and operative as of the Commencement Date.

**Section 6.    Amendment of Loan Agreement.**

(a)    The payment terms of the First Loan set forth in the Loan Chart at the beginning of the Loan Agreement are hereby amended and restated to provide that, as of the Commencement Date, Borrower shall make the payments on the First Loan as follows:

(i)    Commencing on the Commencement Date, and continuing on the same day of each succeeding week to and including May 24, 2018, Borrower shall make a Weekly Payment to Lender equal to $5,000.00;

(ii)    Commencing on May 31, 2018 and continuing on the same day of each succeeding week to and including October 18, 2018, Borrower shall make a Weekly Payment to Lender equal to $15,000,00; and

(iii)    On October 25, 2018, Borrower shall pay Lender all unpaid Obligations.

(b)    By no later than April 30, 2018, Borrower shall deliver to Lender written evidence that Parent shall have completed its cash capital contribution to Borrower of no less than $30,000; Lender acknowledges that Borrower has received $15,000 of such contribution.

BP_008134

(c)     Commencing on the Commencement Date, and continuing on the same date of each succeeding week until the Obligations are paid in full, Borrower shall deliver to Lender reports, in form satisfactory to Lender, of (i) Borrower's inventory, as of the last Business Day of the immediately preceding week, and (ii) Borrower's sales during the immediately preceding week.

(d)     Borrower's failure to comply with the terms of subsections 6(a), 6(b) and 6(c) above shall constitute an Event of Default, for which no notice or cure provision shall be applicable.

(e)     The provisions in the Loan Agreement pertaining to the Second Loan are deleted. For removal of doubt, Lender shall have no obligation to make the Second Loan (or any other loan or advance) to Borrower.

(f)     Borrower acknowledges that this Forbearance Agreement does not constitute a novation of any of the Obligations.

**Section 7.     Representations, and Warranties**. As a material inducement to Lender to enter into this Forbearance Agreement, Borrower represents, warrants and covenants to Lender that:

(a)     The execution, delivery and performance by Borrower of this Forbearance Agreement have been duly authorized by all requisite or other legal action on the part of Borrower and will not violate its organizational documents, or any document, instrument or agreement to which any of Borrower is a party or by which it or its assets are bound or any law or regulation, or any order or decree of any court or government instrumentality;

(b)     All of the representations and warranties of Borrower contained in the Loan Documents are true and correct on and as of the date hereof;

(c)     As of the date hereof, except for the Designated Defaults, no Event of Default has occurred or is continuing under the Loan Documents; and

(d)     Borrower hereby (i) renews, ratifies and confirm the Obligations evidenced by the Loan Agreement, as modified hereby; (ii) acknowledges that the security interests created and evidenced by the Loan Documents are valid, subsisting and enforceable in accordance with their terms; (iii) acknowledges that, as of the Commencement Date, there are no offsets, claims or defenses to the Obligations; and (iv) agrees that the Loan Documents are and remain the valid, subsisting and enforceable agreements of Borrower, enforceable against Borrower in accordance with their terms.

**Section 8.     Forbearance Termination Event**. The occurrence of an Event of Default other than the Designated Defaults under the Loan Agreement or any default under this Forbearance Agreement shall constitute a Forbearance Termination Event hereunder..

**Section 9.     No Other Waivers**. The execution, delivery and effectiveness of this Forbearance Agreement shall not, except as expressly provided in Section 4 hereof, operate as an forbearance or waiver of any right, power or remedy of Lender under the Loan Agreement or any

BP_008135

of the other Loan Documents, nor constitute a forbearance or waiver of any provision of the Loan Agreement or any of the other Loan Documents. Except for the forbearance expressly set forth in <u>Section 4</u> hereof, the text of the Loan Agreement and all other Loan Documents shall remain unchanged and in full force and effect, and Borrower hereby ratifies and confirms its obligations thereunder. This Forbearance Agreement shall not constitute a modification of the Loan Agreement or a course of dealing with Lender at variance with the Loan Agreement such as to require further notice by Lender to require strict compliance with the terms of the Loan Agreement and the other Loan Documents in the future.

**Section 10.     Other Representations, Warranties and Covenants**.

(a)     The parties hereto hereby agree that the decision by Lender to grant the forbearance as outlined herein is not and shall not be deemed to constitute an undertaking by Lender to forbear or refrain from exercising any and all rights and remedies available to it under the Loan Agreement and the other Loan Documents and under applicable law upon the occurrence of any Forbearance Termination Event or other termination or expiration of the Forbearance Period.

(b)     Borrower acknowledges and agrees that: (i) this Forbearance Agreement shall in no way occasion a release of any Collateral held by Lender as security to or for the Obligations; and (ii) all Collateral held by Lender as security to or for the Obligations shall continue to secure the Obligations.

**Section 11.     Remedies Upon Occurrence of a Forbearance Termination Event**.  In the event that a Forbearance Termination Event shall occur, Lender shall have and may exercise all of the rights and remedies which are available to it under and pursuant to the terms and provisions of this Forbearance Agreement, the Loan Documents and under applicable law.  In no event shall any failure by Lender to exercise any of its remedies on account of the occurrence of any Forbearance Termination Event or other expiration or termination of the Forbearance Period hereunder be deemed to be a waiver of the right of Lender to exercise such remedies in the future.   Any waiver granted by Lender must be in writing and will not be construed as a continuing waiver.  No waiver will be implied from any delay or failure by Lender to take action on account of any default by Borrower.

**Section 12.     Rights and Remedies of Lender**.  Lender's rights and remedies arising under and contained in this Forbearance Agreement shall be separate, distinct and cumulative and none of them shall be in exclusion of the other; subject to the terms of this Forbearance Agreement, all remedies arising under or contained in this Forbearance Agreement shall be in addition to every other remedy now or hereafter existing at law, in equity, by statute or under the Loan Documents; neither any course of dealing by Lender nor any failure or delay on its part to exercise any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or privilege preclude any other or further exercise thereof or the exercise of any other right or privilege.

**Section 13.     Release**.     BORROWER   FULLY,   FINALLY,   AND   FOREVER RELEASES   AND   DISCHARGES   LENDER   AND   ITS   SUCCESSORS,   ASSIGNS, DIRECTORS,  OFFICERS,  EMPLOYEES,  AGENTS,  AND  REPRESENTATIVES  (THE

BP_008136

"RELEASED PARTIES") FROM, FOR AND AGAINST ANY AND ALL ACTIONS, CAUSES OF ACTION, CLAIMS, DEBTS, DEMANDS, LIABILITIES, OBLIGATIONS, AND SUITS, OF WHATEVER KIND OR NATURE, IN LAW OR EQUITY (COLLECTIVELY, "CLAIMS"), WHETHER NOW KNOWN OR UNKNOWN, RELATING TO THE FIRST LOAN, THE LOAN DOCUMENTS OR THE ACTIONS OR OMISSIONS OF LENDER IN RESPECT OF THE FIRST LOAN OR THE LOAN DOCUMENTS, AND ARISING FROM EVENTS OCCURRING PRIOR TO THE COMMENCEMENT DATE.

BORROWER ACKNOWLEDGES AND AGREES THAT SUCH PARTY HAS BEEN INFORMED BY ITS ATTORNEYS AND ADVISORS OF, AND IS FAMILIAR WITH AND DOES HEREBY EXPRESSLY WAIVE, THE PROVISIONS OF SECTION 1542 OF THE CALIFORNIA CIVIL CODE, AND ANY SIMILAR STATUTE, CODE, LAW OR REGULATION OF ANY STATE OR OF THE UNITED STATES, TO THE FULL EXTENT THAT IT MAY WAIVE SUCH RIGHTS AND BENEFITS. CIVIL CODE SECTION 1542 PROVIDES:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Borrower represents and warrants that it has not heretofore assigned or transferred, or purported to assign or transfer, to any person, firm, or corporation whomsoever any of the Claims herein released. Borrower agrees to indemnify and hold harmless the Released Parties against any claim based on, arising out of or in connection with any such prior transfer or assignment or purported transfer or assignment.

Borrower acknowledges that, except as expressly set forth herein, no representations of any kind or character have been made to it by any Released Party, or by any of the Released Party's agents, representatives or attorneys, to induce the execution of this Forbearance Agreement.

Borrower acknowledges that this Forbearance Agreement effects the settlement of Claims which are denied and contested by the Released Parties, and that nothing contained herein shall be construed as an admission of liability by or on behalf of the Released Parties, by whom liability is expressly denied.

Section 14.    Miscellaneous.

(a)    Entire Agreement; Forbearance Agreements.    This Forbearance Agreement reflects the entire understanding of the parties with respect to the subject matter herein contained and supersedes any prior agreements, whether written or oral, in regard thereto.

(b)    Full Force and Effect.    Except as expressly modified herein, all terms of the Loan Agreement and the other Loan Documents shall be and shall remain in full force and effect and shall constitute the legal, valid, binding and enforceable obligations of Borrower to Lender.

950778v3                                  -6-

BP_008137

(c)      Governing Law.  This Forbearance Agreement shall be governed by, and shall be construed in accordance with, the laws of the State of California, without resort to its laws of conflicts, and all applicable laws of the United States of America.

(d)      Counterparts.  This Forbearance Agreement may be executed in multiple counterparts, each of which shall be an original and all of which, taken together, shall constitute but one and the same agreement among the parties. Any party may execute and deliver a counterpart of this Forbearance Agreement by delivering by facsimile or other electronic transmission a signature page of this Forbearance Agreement signed by such party, and any such facsimile or other electronic signature shall be treated in all respects as having the same effect as an original signature. Any party delivering by facsimile or other electronic transmission a counterpart executed by it shall promptly thereafter also deliver a manually signed counterpart of this Forbearance Agreement.

(e)      Binding Nature.  This Forbearance Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

(f)      Captions.  The captions to the Sections and paragraphs of the Forbearance Agreement are for the convenience of the parties only, and are not a part of this Forbearance Agreement.

(g)      Severability.  In case any one or more of the provisions contained in this Forbearance Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, the same shall not affect any other provision of this Forbearance Agreement and this Forbearance Agreement shall be construed as if such invalid or illegal or unenforceable provision had never been contained herein.

(h)      Conflict.  In the event any conflict arises between the terms of any of the Loan Documents, the terms of this Forbearance Agreement shall govern in all instances of such conflict.

(i)      Loan Document.  This Forbearance Agreement is a Loan Document for all purposes.

(j)      No Novation.  This Forbearance Agreement is not intended to be, nor shall it be construed to create, a novation or accord and satisfaction.

(k)      Lender's Fees and Costs.  Borrower agrees to pay upon demand all of Lender's attorneys' fees and costs with respect to the preparation of this Forbearance Agreement.

BP_008138

**Section 15.**    Construction.  This Forbearance Agreement and all other agreements and documents executed and/or delivered in connection herewith have been prepared through the joint efforts of all of the parties hereto. Neither the provisions of this Forbearance Agreement or any such other agreements and documents nor any alleged ambiguity therein shall be interpreted or resolved against any party on the ground that such party or its counsel drafted this Forbearance Agreement or such other agreements and documents, or based on any other rule of strict construction.  Each of the parties hereto represents and declares that such party has carefully read this Forbearance Agreement and all other agreements and documents executed in connection therewith, and that such party knows the contents thereof and signs the same freely and voluntarily.  The parties acknowledge that they have been represented by legal counsel of their own choosing in negotiations for and preparation of this Forbearance Agreement and all other agreements and documents executed in connection herewith and that each of them has read the same and had their contents fully explained by such counsel and is fully aware of their contents and legal effect. If any matter is left to the decision, right, requirement, request, determination, judgment, opinion, approval, consent, waiver, satisfaction, acceptance, agreement, option or discretion of Lender or its employees, counsel, or agents in the Loan Agreement or any other Loan Documents, such action shall be deemed to be exercisable by Lender or such other person in its sole and absolute discretion and according to standards established in its sole and absolute discretion. Without limiting the generality of the foregoing, "option" and "discretion" shall be implied by the use of the words "if" and "may. Time is of the essence with respect to the obligations of Borrower set forth herein. Upon the effectiveness of this Forbearance Agreement, each reference in the Loan Agreement to "this Agreement," "hereunder," "herein," "hereof" or words of like import referring to the Loan Agreement shall mean and refer to the Loan Agreement as amended by this Forbearance Agreement.  Upon the effectiveness of this Forbearance Agreement, each reference in the Loan Documents to the "Loan Agreement," "thereunder," "therein," "thereof" or words of like import referring to the Loan Agreement shall mean and refer to the Loan Agreement as amended by this Forbearance Agreement.

BP_008139

IN WITNESS WHEREOF, the parties hereto have caused this Forbearance Agreement to be duly executed by their duly authorized officers as of the Commencement Date.

**BORROWER:**

**LENDER:**

ACET GLOBAL, LLC.

SUPER G CAPITAL, LLC

By: _____
David J. Hook, President

By: _____
Marc Cole, Chief Financial Officer

950778v3.

## EXHIBIT A

## REAFFIRMATION AND CONSENT

### Reaffirmation and Consent

Capitalized terms used herein but not otherwise defined herein have the meanings ascribed to them in that certain Business Loan and Security Agreement, dated as of July 20, 2017 (as amended, restated, supplemented or otherwise modified, the "Loan Agreement"), by and between **SUPER G CAPITAL, LLC**, a Delaware limited liability company ("Lender"), and **ACET GLOBAL, LLC,** a Texas limited liability company ("Borrower"), or in that certain Forbearance Agreement, dated as of April 12, 2018 (the "Forbearance Agreement"), between Lender and Borrower. Each of the undersigned hereby (a) represents and warrants to Lender that the execution, delivery, and performance of this Reaffirmation and Consent is within his/her/its powers, has been duly authorized by all necessary action, and is not in contravention of any law, rule, or regulation, or any order, judgment, decree, writ, injunction, or award of any arbitrator, court, or governmental authority, or of any contract or undertaking to which he/she/it is a party or by which any of his/her/its property may be bound or affected; (b) consents to the transactions contemplated by the Forbearance Agreement; (c) acknowledges and reaffirms his/her/its obligations owing to Lender under any Loan Documents to which he/she/it is a party; and (d) agrees that each of the Loan Documents to which he/she/it is a party is and shall remain in full force and effect. Although the undersigned has been informed of the matters set forth herein and has acknowledged and agreed to same, he/she/it understands that Lender has no obligations to inform him/her/it of such matters in the future or to seek his/her/its acknowledgment or agreement to future amendments, and nothing herein shall create such a duty. Delivery of an executed counterpart of this Reaffirmation and Consent by telefacsimile or electronic pdf file shall be equally as effective as delivery of an original executed counterpart of this Reaffirmation and Consent. Any party delivering an executed counterpart of this Reaffirmation and Consent by telefacsimile or electronic .pdf file also shall deliver an original executed counterpart of this Reaffirmation and Consent but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Reaffirmation and Consent. This Reaffirmation and Consent shall be governed by the laws of the State of California.

950778v3

IN WITNESS WHEREOF, the undersigned has caused this Reaffirmation and Consent to be executed as of the date of the Forbearance Agreement.

BAYMARK ACET HOLDCO LLC,
a Texas limited liability company

By: _____
    David J. Hook, President

BP_008142