**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| D&T PARTNERS, LLC, successor-in-interest to ACET Venture Partners, LLC, *et al* | § § § | |
| *Plaintiff*, | § § | Civil Cause: 3:21-CV-1171-B |
| v. | § § | |
| BAYMARK PARTNERS, LP, *et al*., | § § | |
| *Defendants*. | § | |

**WINDSPEED EMPLOYEES' BRIEF IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6**

Jason T. Rodriguez
    Texas State Bar No. 24042827
    *Attorney-In-Charge*
Timothy P. Woods
    Texas State Bar No. 21965500
Gordon W. Green
    Texas State Bar No. 24083102

HIGIER ALLEN & LAUTIN, P.C.
2711 N. Haskell Ave., Suite 2400
Dallas, Texas 75204
Telephone: (972) 716-1888
Facsimile: (972) 716-1899
jrodriguez@higierallen.com
twoods@higierallen.com
ggreen@higierallen.com


ATTORNEYS FOR WINDSPEED TRADING, LLC,
MR. WILLIAM SZETO, MS. ZHEXIAN LIN, MS.
DANA MARIE TOMERLIN, MS. PADASAMAI
VATTANA; MS. PAULA KETTER, MS.
VANESSA TORRES

## TABLE OF CONTENTS

**I. SUMMARY**………………………………………………………………….....   1

**II. BACKGROUND**………………………………………………………...   3

  A. <u>Procedural Background</u>……………………………………………….   3

    *i.The State Case*…………………………………………………….   3

    *ii.  This Federal Case*………………………………………………….   3

  B. <u>Summary of Averments in the Complaint</u>……………………………….   4

    *i. The Windspeed Employees*……………………………………..……….   5

    *iii. Foreclosure Sale is the Alleged Racketeering Activity*…………………………....   6

**III. ARGUMENTS AND AUTHORITIES**……………………………….....   7

  A. <u>Rule 12(b)(6) Standard</u> ……………………………………………….   7

  B. <u>Plaintiff Fails to Establish Elements Common to All RICO Causes of Action</u> ……..   8

  C. <u>Plaintiff has Not Alleged an Association-in-Fact as a Matter of Law with the Windspeed Employees</u> …………………………………………..................   10

    *i. The Windspeed Employees Were Acting in the Course and Scope of Their Employment and Thus Not Distinct from the Alleged Enterprise-in-Fact* …………....   12

  D. <u>1962(c) – Count I</u> ………………………………………………….   13

  E. <u>1962(a) – Count II</u> ………………………………………………….   14

  F. <u>1962(d) – Count III</u> …………………………………….………..   15

    *i.Plaintiff Fails to Meet Heightened Pleading Standard and Establish Intent for Conspiracy*....…………………………………….………………………….   15

  G. <u>State Law Causes of Action</u>………………………..…………………….   17

    *i. Plaintiff Fails to Establish Aiding and Abetting a Breach of Fiduciary Duty* ...……..   17

    *ii. Plaintiff Fails to Show Elements to Establish TUFTA* ………………………....   18

    *iii. Plaintiff Fails to Meet the Heightened Standard Necessary for Civil Conspiracy*....   19

  H. <u>In the Alternative, The Court Should Decline To Exercise Supplemental Jurisdiction Over State Law Claims</u>…………………………………………………..   20

**VI. CONCLUSION**……………………………………………………….   21

**V. PRAYER**………………………………………………………………….   21

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007)…………………………………….. 13

*Armendariz v. Chowaiki*, 2016 WL 8856919, at *9 (W.D. Tex. Mar. 31, 2016)………. 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)…………………………………………… 8

*Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993)…………………………………….. 15

*Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 439–40 (5th Cir. 1987)………. 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)…………………………………….. 8

*Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F.Supp. 995, 1005 (S.D. Tex. 1995)….. 15

*Boyle v. United States*, 556 U.S. 938 (2009)…………………………………………….. 12

*Brunig v. Clark*, 2007 WL 9712119, at *8 (S.D. Tex. Sept. 24, 2007)…………………. 11

*Cadle Co. v. Schultz*, 779 F.Supp. 392, 399 (N.D. Tex. 1991)…………………………. 10

*Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953, 961 (5th Cir. 1994)… 19

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)………… 8

*Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 239 (5th Cir. 2010)…………….......... 16

*Clark v. Nat'l Equities Holdings, Inc.*, 561 F. Supp. 2d 632, 639 (E.D. Tex. 2006), *remanded in part on other grounds*, 229 F. App'x 314 (5th Cir. May 30, 2007)………. 11

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000)…………………………………………………………………………….. 6, 8

*Commercial Metals Co. v. Chazanow*, No. 3:09-CV-0808-B, 2009 WL 3853704, at *4 (N.D. Tex. Nov. 7, 2009)……………………………………………………………... 10, 15

*Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995)…………………………………… 13, 15

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir.1988), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989)……………….....… 9

*Ebert v. Gustin*, 2016 WL 11663164, at *8 (N.D. Tex. May 12, 2016)…………….….. 17

*Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)…………………………………… 11

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017)…………………………………………………………………………………… 17, 18

*GFRS Equipment Leasing Fund II LLC v. Nguyen*, No. 3:18-cv-2250-L, 2019 WL 3530421, at *4 (N.D. Tex. Aug. 1, 2019)………………………………………………… 8

*Henkel v. Emjo Invs., Ltd.*, 480 S.W.3d 1 (Tex.App.—Houston [1st Dist.] 2016, no pet.)……………………………………………………………………………………… 19

*H.J. Inc. v. Northwestern Bell Te. Co.*, 492 U.S. 229, 241 (1989)……………..………... 8, 10

*In re Burzynski*, 989 F.2d 733, 742 (5th Cir.1993)…..……………………………….. 9, 10, 16

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781-82 (5th Cir. 2018)…………………………………………………………………… 17, 18

*In re Sunpoint Sec.*, Inc., 350 B.R. 741, 747 (Bankr. E.D. Tex. 2006)……………..…… 14

*Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)…… 15

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)………………… 17

*Oblio Telecom, Inc. v. Patel*, 2009 WL 1650481, at *7 (N.D. Tex. June 10, 2009)……... 11

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)…………………………… 8

*Murex, LLC v. GRC Fuels, Inc.*, No. 3:15-CV-3789-B, 2016 WL 4207994, at *2 (N.D. Tex. Aug. 10, 2016)…………………………………………………………………….. 7, 10

*Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993)…………………………………… 12

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2nd Cir. 1994)…………………………………………………………………………………. 11

*Salinas v. United States*, 522 U.S. 52, 65 (1997)………………………………………... 15

*Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B, 2007 WL 9711726, at *6 (N.D. Tex. May 9, 2007)………………………………………………………………… 9, 11, 13, 14, 15

*Snow Ingredients Incorporated v. SnoWizard Incorporated*, 833 F.3d 512, 526 (5th Cir. 2016)………………………………………………………………………………….. 8, 16

*St. Germain v. Howard*, 556 F.3d 261, 263–64 (5th Cir. 2009)………………………… 20

*Taylor v. Rothstein Kass & Company, PLLC*, 2020 WL 554583, at *5 (N.D. Tex. Feb. 4, 2020)…………………………………………………………………………………... 17

*United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978)……………………………… 12

*United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir 1998)……………………….. 16

*United States v. Sutherland*, 656 F.2d 1181, 1187 (5th Circuit 1981)…………………... 15

*Vanderbilt Mortg. and Finance, Inc. v. Flores*, 735 F.Supp.2d 679, 700 (S.D. Tex. 2010)……………………………………………………………………………………... 14

*Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228–29 (5th Cir. 2003)……………...... 9

*Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)……………………………………………………………………………….. 10

*Zastrow v. Hous. Auto Imprts. Greenway, Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015)……. 10, 11, 16

Statutes

Tex. Bus. & Comm. Code § 24.005(a)(2)………………………………………….. 19

18 U.S.C. § 1961(5)…………………………………………………………………... 9

18 U.S.C. § 1962(a), (c), and (d)…………………………………………...………. 8, 13, 14, 15

28 U.S.C. § 1367(c)(3)……………………………………………………………... 20

Rules

Federal Rule of Civil Procedure 12……………………………………………… 7

Federal Rule of Civil Procedure 9(b)……………………………………………… 15, 16, 19

\

\

\

\

\

\

\

\

\

T<small>O THE</small> H<small>ON.</small> J<small>ANE</small> J. B<small>OYLE</small>;
U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> J<small>UDGE</small>:

COME NOW defendants Ms. Zhexian Lin ("Lin"), Ms. Dana Marie Tomerlin ("Tomerlin"), Ms. Padasamai Vattana ("Vattana"); Ms. Paula Ketter ("Ketter"), Ms. Vanessa Torres ("Torres" and together with Szeto, Lin, Tomerlin, Vattana and Ketter the "Windspeed Employees") and file this, their *Windspeed Employees' Brief in Support of Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6)* (the "Brief"). This Brief is filed in support of the *Windspeed Employees' Amended Motion to Dismiss Claims Pursuant to Rule 12(b)(6)* (the "Motion"). In support of the Motion and Brief, the Windspeed Employees would respectfully show this Court as follows:

## I. SUMMARY

1. The Complaint, amended on September 30, 2021, brings RICO and state law actions against the senior secured lender, a purchaser and its employees for a UCC1 "foreclosure"[1] sale related to collateral upon which Plaintiff did not have a lien, which was subject to a valid and perfected lien by the secured party who foreclosed. The amendments to the Complaint to not substantively change the allegations of this case, other than add additional defendants which Plaintiff believes were part of the alleged RICO conspiracy.

2. To be fair, the Complaint is long and filled with all manner of allegations. At one point, the Complaint describes the removal of break-room property – but no mention of the kitchen sink. However, a line of zeroes is still nothing.

---

[1] The "foreclosure" was a sale under the Texas Uniform Commercial Code. Plaintiff refers to it as a "foreclosure", which it is technically not. However, for the ease of continuity, the same term is used in this Brief.

3.      The "wrong" about which Plaintiff complains is the rightful foreclosure of a secured lender, to which Plaintiff voluntarily subordinated its interest. After the UCC foreclosure occurred, that collateral (not Plaintiff's collateral) was sold to Windspeed Trading, LLC.

4.      RICO was promulgated to reduce organized crime, not the UCC disposition of collateral and the sale thereafter.  For all its bluster, the Complaint asserts RICO because a senior secured lender – to which Plaintiff voluntarily subordinated its interest – foreclosed on its collateral.

5.      The Complaint fails to assert facts which would show an enterprise existed or exists to commit the acts alleged by Plaintiff.  The Complaint alleges that an inner circle of entities and their officers/employees collaborated for the sole purpose of winding down a business and disposing of its assets into a new entity.  Nowhere does Plaintiff assert sufficient facts to indicate that this enterprise existed for purposes other than to allegedly commit racketeering activity.  All of Plaintiff's RICO causes of action fail on that basis.

6.      Furthermore, Plaintiff includes no allegations in the Complaint to suggest that the Windspeed Employees are distinct RICO persons which are separate and apart from the RICO entities which Plaintiff alleges form an association-in-fact enterprise.  Absolutely no facts are asserted which suggest that they had knowledge or operated some level of control in the alleged racketeering activities.  In fact, the deposition testimony of all the Windspeed Employees, which is incorporated by reference into this suit, firmly establishes that none of the Windspeed Employees, even Mr. Szeto, had the requisite intent or had agreed to participate in racketeering activities with an alleged enterprise.  Accordingly, Plaintiff fails to establish this common element to its RICO causes of action, and those RICO claims must be dismissed on this basis.  The same

failure to assert facts which suggest knowledge or some level of control also entitle the Windspeed Employees to dismissal of the state law claims brought against them.

## II. BACKGROUND

A. Procedural Background

7.      This civil action is the second lawsuit filed and pending by plaintiff D&T Partners, LLC ("Plaintiff") relating to the underlying facts alleged in the *Original Complaint* (the "Complaint") filed in this action.

8.      Prior to this action being filed, Plaintiff had already asserted similar claims in state court.  This action appears to be an attempt to improperly circumvent the pleading amendment deadline in the state court action, which prevented Plaintiff from asserting the claims it now asserts.

*i. The State Case*

9.      On July 12, 2019, Plaintiff filed its *Plaintiff's Original Petition* initiating the civil action styled *D&T Partners, LLC v. ACET Global, LLC*, *et al*., pending in the 116th District Court, Dallas County, Texas (the "State Case").

10.      The live petition in the State Case is *Plaintiff's Second Amended Petition* (the "State Petition").  The State Petition arises from the same set of facts which are asserted in this case and contains similar causes of action, except it does not include the RICO claims which appear before this Court.

11.      The trial in the State Case is set for February 14, 2022.

*ii. This Federal Case*

12.      On May 21, 2021, Plaintiff filed its *Original Complaint* (the "Original Complaint") which initiated the above-captioned civil action (the "Federal Case").

13.     The Windspeed Employees, and the other defendants, filed motions to dismiss the Original Complaint.  Rather than address the motions to dismiss, Plaintiff filed the Amended Complaint ("Complaint").[2]

14.     While the sprawling Complaint added new parties, it did nothing to address the deficiencies which render it subject to dismissal pursuant to Rule 12(b)(6).

15.     The Motion and this Brief are filed seeking dismissal of the live Complaint.

B. Summary of Averments in the Complaint

16.     Despite its enormous size, at most, the Complaint simply alleges a conspiracy between a senior secured lender, a purchaser, and certain employees to orchestrate a sale of assets from the borrower to the purchaser.  Plaintiff alleges a cadre of shady individuals and entities collaborated together to sell the assets of a borrower out from under it, in order that the purchaser would benefit from the assets of the borrower without any obligation to fulfill the borrower's debts. All Defendants deny these claims.

17.     Plaintiff alleges that certain defendants held ownership and/or control in an entity called ACET Global, LLC ("ACET Global").  Doc. No. 36, pg. 3, 4.  ACET Global is alleged to have been indebted to Plaintiff with a secured loan which encumbered assets of ACET Global. *See id.* at pg. 4.[3]  Another loan was made to ACET Global by Super G Capital, LLC ("Super G"), and the security interest of Plaintiff became subordinated, by agreement of Plaintiff, to the secured loan of Super G.[4]  *See id.* at pg. 25, 29-30.  At some point, Plaintiff alleges, the ownership of ACET Global decided to eject its CEO, who is also an officer of Plaintiff, and install Mr. Szeto as CEO.

---

[2] The Windspeed Employees hereby adopt and incorporate the motions to dismiss filed by the Baymark Defendants, Holdco, SG Credit Partners, Inc. and Marc Cole, and Hallett & Perrin PC and Julie Smith, as well as the arguments incorporated into their respective briefs in support.

[3] Exhibit 11, referenced by Plaintiff to support its alleged loan on the assets of ACET Global, is actually a security agreement in which ACET Venture Partners, LLC is the secured lender, not Plaintiff.  *See* Doc. No.1, Ex. 11.

*See id.* at pg. 30-31.  According to Plaintiff, this was all part of an elaborate scheme to wind down ACET Global and transfer its business and assets to another company called Windspeed Trading, LLC ("Windspeed").  *See id.*

18.     The wind down and transition were orchestrated, so Plaintiff surmises, in order to fabricate a default and foreclosure on the assets of ACET Global by Super G.  *See id.* at pg. 32-33. The recipient of the assets of ACET Global at the foreclosure sale was predetermined to be Windspeed, according to Plaintiff.  *See id.* at pg. 67, 108.  Plaintiff alleges that Windspeed is merely a continuation of ACET Global with its assets, business model, and employees, but without its liability to Plaintiff.  *See e.g. id.* at pg. 88-90.  Plaintiff alleges that Windspeed has not paid a dollar on the debt that Plaintiff alleges it is owed from ACET Global.  *See id.* at pg. 142

*i. The Windspeed Employees*

19.     Plaintiff names six employees as defendants in this matter who both worked for ACET Global and for Windspeed.  *See id.* at pg. 18-19.  Other than frequently citing to their deposition testimony in the body of the Complaint, practically no factual allegations are made regarding the roles the Windspeed Employees played at either ACET Global or Windspeed, save and except for Mr. Szeto.[5]  Apparently, Plaintiff expects the dearth of allegations regarding Ms. Lin, Ms. Tomerlin, Ms. Vattana, Ms. Ketter, and Ms. Torres to create RICO-person designations out of thin air.

---

[5] Other than citations to her deposition testimony, the only other reference to Ms. Lin is to identify her as the accountant for Windspeed; other than citations to her deposition testimony, the only other reference to Ms. Tomerlin is to identify her as a fulfillment employee and allege she helped move inventory from ACET Global to Windspeed and obtained temporary storage unit; other than citations to her deposition testimony, the only other reference to Ms. Vattana is to identify her as the sales manager for Windspeed; the only reference to Ms. Ketter is to identify her as a fulfillment employee and allege she helped move inventory from ACET Global to Windspeed and obtained temporary storage unit; and the only references to Ms. Torres is to identify her as an employee and to allege she expropriated ACET Global's website and close its bank accounts.

20.     The Windspeed Employees were not officers or managers of ACET Global an Windspeed.   Their duties for ACET Global and Windspeed were substantially similar.   Ms. Tomerlin handled fulfillment, which entails printing, packing, and shipping orders.  *See id.*; *see also* Doc. No. 36-4, pg. 3.[6]  Ms. Lin was an accountant for ACET Global and Windspeed.  *See id.* at pg. 12; *see also* Doc. No. 36-5, pg. 4.  Ms. Vattana was a sales manager for ACET Global and Windspeed.  *See id.* at pg. 12; *see also* Doc. No. 36-10, pg. 3.  Ms. Ketter is alleged to be employed in fulfillment, while Ms. Torres' employment title is not provided.  *See id.* at pg. 12.

21.     At least three of the Windspeed Employees have testified that they had no knowledge of any alleged foreclosure of ACET Global, of a debt owed to Plaintiff or Super G, or of any plans to cause ACET Global to fail in order to transfer assets to Windspeed.  *See* Doc. No. 36-4, pg. 19; Doc. No. 36-5, pg. 19; Doc. No. 36-10, pg. 23.  Furthermore, they have testified that they did not know Defendants David Hook, Anthony Ludlow, Marc Cole, and Steven Bellah, and they barely knew Defendant Matthew Denegre beyond exchanges of mere pleasantries.  *See* Doc. No. 36-4, pgs. 5-6; Doc. No. 36-5, pg. 9; Doc. No. 36-10, pg. 8.  They also testified that they either had no knowledge of the Baymark and Super G defendants, or they were vaguely aware of their existence.  *See id.*  These five non-executive Windspeed Employees had no connection to, nor significant knowledge of, most of the alleged members of this so-called criminal enterprise which Plaintiff so desperately wants to believe existed.

*ii. Foreclosure Sale is the Alleged Racketeering Activity*

---

[6] Certain documents are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to their claims.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  The deposition transcripts are a core part of the Complaint, in that they are constantly cited to in the body of the Complaint, and every single deposition transcript from the state court matter is attached as an exhibit to the Complaint.  Accordingly, the deposition transcripts of the Employees may be properly considered by this Court.

22. In the Complaint, Plaintiff alleges that numerous predicate acts giving rise to RICO claims occurred, such as (i) wire fraud, (ii) mail fraud, (iii) obstruction of justice, (iv) bankruptcy fraud, and (v) money laundering. Doc. No. 36, pg. 2. However, all these alleged predicate acts are tied to a single alleged racketeering activity, the foreclosure sale of ACET Global's assets to Windspeed by a secured creditor. The alleged formation of the "enterprise" of Defendants, its collaboration, and its later alleged efforts to obstruct were all related to the disposition of assets owned by ACET Global. No allegation is made in this Complaint that Defendants have any plans to orchestrate another foreclosure sale or transfer of assets. In fact, the Complaint alleges the "critical steps" of the scheme were completed in the fall of 2018. *See* Doc. No. 36, pg. 6. The objective of the alleged racketeering activity was achieved on March 1, 2019 when the Foreclosure Sale Agreement ultimately resulted in the transfer of assets from ACET Global to Windspeed. *See* Doc. No. 36, pg. 9.

23. The Complaint alleges that Defendants have either engaged in perjury or committed tax/bankruptcy fraud in order to hide the evidence of defrauding Plaintiff. *See* Doc. No. 36, pgs. 4-5. Beyond the alleged efforts to obstruct pending litigation initiated by Plaintiff, the Complaint does not allege that the Defendants have continued their racketeering activity against Plaintiff.

### III. ARGUMENTS AND AUTHORITIES

24. This Motion seeks dismissal under Rule 12(b)(6) of counts I, II, and III of the Complaint which assert claims under 18 U.S.C. § 1962(a), (c), and (d) of the Racketeer Influenced and Corrupt Organization Act ("RICO"), and the state law claims under counts VI, VII, and VIII.

A. Rule 12(b)(6) Standard

25.     If a plaintiff's complaint fails to state such a claim, Rule 12(b)(6) allows a defendant to file a motion to dismiss.  *Murex, LLC v. GRC Fuels, Inc.*, No. 3:15-CV-3789-B, 2016 WL 4207994, at \*2 (N.D. Tex. Aug. 10, 2016)

26.     To survive a motion to dismiss pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) ("Rule 12(b)(6)"), the factual allegations in a complaint must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. It also "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

27.     In assessing claims on a motion to dismiss, the Court may consider documents attached to the plaintiff's complaint or a motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); see also *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).

B. Plaintiff Fails to Establish Elements Common to All RICO Causes of Action

28.     18 U.S.C. § 1962 provides for the prohibited actions under the RICO statute set forth in four subsets.   18 U.S.C. § 1962(a), (b), (c), and (d).  In order to state a claim for damages under RICO, a plaintiff must allege (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.  18 U.S.C. § 1962(a)-(c); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).  RICO was created by Congress in order to combat long-term criminal

conduct. *GFRS Equipment Leasing Fund II LLC v. Nguyen*, No. 3:18-cv-2250-L, 2019 WL 3530421, at *4 (N.D. Tex. Aug. 1, 2019) (citing *H.J. Inc. v. Northwestern Bell Te. Co.*, 492 U.S. 229, 241 (1989)). Civil RICO liability does not exist unless the pleadings allege actual criminal activity. *Snow Ingredients Incorporated v. SnoWizard Incorporated*, 833 F.3d 512, 526 (5th Cir. 2016).

29.     "Reduced to plain English" the statute mandates that: "(a) a person who has received income from a pattern of racketeering cannot invest that income in an enterprise; (b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering; (c) a person who is employed by or associated with an enterprise cannot conduct the enterprise's affairs through a pattern of racketeering; (d) a person cannot conspire to violate subsections (a), (b), or (c)." *Whelan v. Winchester Prod. Co*., 319 F.3d 225, 229 (5th Cir. 2003)) citing *In re Burzynski*, 989 F.2d 733, 741 (5th Cir.1993) (quote reformatted from bullets to string)).

30.     Plaintiff has asserted that all defendants violated the following subsections of section 1962:

    a.   18 U.S.C. § 1962(c) – Count I,

    b.   18 U.S.C. § 1962(a)[7] – Count II, and

    c.   18 U.S.C. § 1962(d) – Count III.

31.     Elements common to all four sub-sections are: (1) a person who engages in (2) a pattern of racketeering activity[8] (3) connected to the acquisition, establishment, conduct or control of an enterprise. *Whelan v. Winchester Prod. Co*., 319 F.3d 225, 228–29 (5th Cir. 2003) citing

---

[7]     The heading for Count II in the Complaint does not list the Windspeed Employees. However, the averments in Count II refer to "All Defendants". Complaint at p. 145, ¶ 326.

[8]     "'Racketeering activity'" includes certain state and federal offenses listed in § 1961(1). [citation omitted] The individual acts of racketeering are commonly described as the "predicate" acts or offenses." *Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B, 2007 WL 9711726, at *6 (N.D. Tex. May 9, 2007)

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir.1988), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989).  A "pattern of racketeering" requires at least two predicate acts of racketeering activity under 18 U.S.C. § 1961(1) that have occurred within ten years of each other.  18 U.S.C. § 1961(5).  These predicate acts must be related, and they must amount to or pose a threat of continued criminal activity.  *Nguyen*, 2019 WL 3530421, at *4 (citing *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)).

32.     It is not enough that the predicate acts are merely related, but they must be sufficiently continuous to assure a federal cause of action.  *Commercial Metals Co. v. Chazanow*, No. 3:09-CV-0808-B, 2009 WL 3853704, at *4 (N.D. Tex. Nov. 7, 2009) (quoting *Burzynski*, 989 F.2d at 742).  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement . . . ."  *Id.* (citing *H.J. Inc.*, 492 U.S. at 241).  Liability in a RICO action "depends on whether the threat of continuity is demonstrated."  *Id.* (citing *H.J. Inc.*, 492 U.S. at 241).

33.     Each of these elements in and of itself is a term of art.  *Cadle Co. v. Schultz*, 779 F. Supp. 392, 396 (N.D. Tex. 1991).  The failure of establish any one of these elements will result in the failure to state claim and thus dismissal under Rule 12(b)(6).  *See Whelan*, 319 F.3d at 230.

## C. Plaintiff has Not Alleged an Association-in-Fact as a Matter of Law with the Windspeed Employees

34.     There are several types of defined "enterprises" which will satisfy the requirements of section 1962.  The only one pled by the Plaintiff, except in Count III, is association-in-fact.  *See* Doc. No. 36, pg. 147.  Thus, in order to meet the requirement of the existence of an enterprise for the purposes of section 1962, Plaintiff must properly allege the existence of an association-in-fact, as the term is used in the statute.

35.      An "association in fact" enterprise "must have an ongoing organization or be a continuing unit, such that the enterprise has an existence that can be defined apart from the commission or the predicate acts." *Murex*, 2016 WL 4207994, at *10 (quoting *Zastrow v. Hous. Auto Imprts. Greenway, Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015)).  "The enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it engages." *Whelan*, 319 F.3d at 229.  In other words, "[t]he enterprise must be 'an entity separate and apart from the pattern of activity in which it engages.'"  *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 439–40 (5th Cir. 1987); *see also Zastrow*, 789 F.3d at 562 (if the alleged enterprise is one "created by the alleged racketeering activity itself" it is not an association in fact).

36.      Failure to plausibly establish an association-in-fact enterprise demands dismissal of the entire RICO claim. *Whelan*,  319 F.3d at 230 (affirming dismissal of RICO claim for failure to demonstrate an enterprise); *Oblio Telecom, Inc. v. Patel*, 2009 WL 1650481, at *7 (N.D. Tex. June 10, 2009); *Sharif v. Wellness Int'l Network, Ltd.*, 2007 WL 9711726, at *10 (N.D. Tex. May 9, 2007); *Armendariz v. Chowaiki*, 2016 WL 8856919, at *9 (W.D. Tex. Mar. 31, 2016); *Brunig v. Clark*, 2007 WL 9712119, at *8 (S.D. Tex. Sept. 24, 2007); *Clark v. Nat'l Equities Holdings, Inc.*, 561 F. Supp. 2d 632, 639 (E.D. Tex. 2006), *remanded in part on other grounds*, 229 F. App'x 314 (5th Cir. May 30, 2007).

37.      "Company officers and employees not associated other than through the activities of the company do not constitute an enterprise for purposes of § 1962(c)."  *Whelan*, 319 F.3d at 230.  "The fact that officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation."  *Sharif*, No. 3:05-CV-01367-B, 2007 WL 9711726, at *8 (citing *Elliot v. Foufas*,

867 F.2d 877, 881 (5th Cir. 1989)); *Whelan*, 319 F.3d at 229; further citing *Atkinson*, 808 F.2d at 441 (concluding that bank, holding company, and three bank employees did not exist separately apart from the bank); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2nd Cir. 1994) ("[B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented.").

38.     Furthermore, each defendant alleged to be a RICO person must "have some part in directing" the affairs of the RICO enterprise, directly or indirectly. *Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993). The word "conduct" under the statute "require[s] some degree of direction and the word 'participate' [] require[s] some part in that direction." *Id.* When the plaintiff alleges the defendants formed an association-in-fact, the plaintiff must plead "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938 (2009).

    i.   *The Windspeed Employees Were Acting in the Course and Scope of Their Employment and Thus Not Distinct from the Alleged Enterprise-in-Fact*

39.     Based on the wealth of deposition testimony generously provided by Plaintiff in the Complaint, there is no logical conclusion which can be rendered in this matter other than the Windspeed Employees were merely acting within the course and scope of their employment. The Complaint clearly shows that Ms. Tomerlin, Ms. Lin, Ms. Vattana, Ms. Ketter, and Ms. Torres were only performing their routine functions as a sales manager, an accountant, working in fulfillment, or providing customer service and does not provide any allegations to suggest otherwise. To the extent they committed predicate acts while performing their employment duties, Plaintiff provides no evidence of allegations that these employees directed any control over the

planning of the predicate acts, nor does Plaintiff assert any allegations that they knew or were in agreement to participate in the RICO enterprise. *See United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978) (plaintiff must indicate that the defendants, by their "words or actions . . . objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes.")

40.     As to allegations that Mr. Szeto directed the Employees to give "demonstrably false testimony during depositions," and they "coordinated" with Szeto to "provide misleading and false information to carry out the frauds of the enterprise," the deposition testimony of the Windspeed Employees clearly evidences the opposite of Plaintiff's conclusory allegations. *See* Doc. No. 36-4, pg. 3; Doc. No. 36-5, pg. 3; Doc. No. 36-10, pg. 3.  As shall be discussed later in the Brief, even assuming those allegations in the Complaint are true, allegations of false testimony when defending litigation do not qualify as a predicate act for the purposes of establishing racketeering activity.  Accordingly, the Windspeed Employees are not adequately alleged to be distinct RICO-persons within the alleged association-in-fact.

D. 1962(c) – Count I

41.     Subsection (c) of RICO prohibits any "'person employed by or associated with any enterprise' from participating in or conducting the affairs of the enterprise through a pattern of racketeering activity."  18 U.S.C. § 1962(c); *see also Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (quoting *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995)).  "Under § 1962(c), the RICO 'person' and the RICO 'enterprise' must be distinct...[t]his required distinction is based on a textual reading of § 1962(c), which speaks of 'person[s] who are 'employed by or associated with' the 'enterprise.'"  *Sharif*, 2007 WL 9711726, at *8.

42.     The only allegations contained in this Count regarding the Windspeed Employees are the conclusory allegation that employees of ACET Global and Windspeed "facilitated" a fraudulent transfer and that Szeto directed the Windspeed Employees to give "demonstrably false testimony during depositions," and they "coordinated" with Szeto to "provide misleading and false information to carry out the frauds of the enterprise."  Doc. No. 36, pg. 143.  As detailed above in this Motion, the Complaint fails to explain what role the Windspeed Employees had in the enterprise beyond fulfilling their duties as employees.  As words like "facilitated" suggest, any action done in furtherance of racketeering activity was done at the behest of higher authority and without sufficient direction over the enterprise.  That means the Windspeed Employees were not distinct from the alleged RICO enterprise, as they did not act outside of the scope of their employment in these entities which are alleged to have been a part of the enterprise.  Accordingly, Count I fails to state a claim upon which relief can be granted.

E. 1962(a) – Count II

43.     "With respect to § 1962(a), a plaintiff must allege "that its injury flows from the use or investment of racketeering proceeds, rather than from the underlying predicate racketeering acts." *Sharif*, 2007 WL 9711726, at *8 citing *In re Sunpoint Sec*., Inc., 350 B.R. 741, 747 (Bankr. E.D. Tex. 2006).  Courts within the Fifth Circuit have generally rejected claims under section 1962(a) which assert that the plaintiff was injured by the reinvestment of proceeds by the defendants into its business "for purposes of perpetuation or expansion."  *Vanderbilt Mortg. and Finance, Inc. v. Flores*, 735 F.Supp.2d 679, 700 (S.D. Tex. 2010).

44.     Though it is unclear from this Count II whether the Windspeed Employees are meant to be included under this count, it is clear that Count II fails to state a claim upon which relief can be granted.  The Complaint explicitly states that the basis for this cause of action is due

to reinvestment of funds received from racketeering activities into the enterprise of the Defendants. As case law has made clear, no injury can be derived from the RICO enterprise reinvesting illegally derived funds back into the enterprise.  Accordingly, Plaintiff has failed to state a claim with regards to Count II.

F. 1962(d) – Count III

45.     Count III of the Complaint asserts that all Defendants in this matter, including the Employees, conspired to violate subsections (a), (b), and (c) of RICO, in violation of § 1962(d). *See Word of Faith World Outreach Center Church, Inc.*, 90 F.3d at 121.  A claim for RICO conspiracy must allege "three elements: (1) knowledge by the defendant of the essential nature of the conspiracy; (2) the defendant's objective manifestation of an agreement to participate in the conduct of the affairs of an enterprise, and (3) an overt act, which need not be a crime, in furtherance of the conspiracy."  *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F.Supp. 995, 1005 (S.D. Tex. 1995) (citing *United States v. Sutherland*, 656 F.2d 1181, 1187 (5th Circuit 1981).

46.     If a plaintiff's claims fail under Section 1962(a)-(c), then there is no cause of action under Section 1962(d).  *Sharif*, 2007 WL 9711726, at *9 (citing *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993)).  Because the claims against the Windspeed Employees fail, as set forth above, the claim for conspiracy under Section 1962(d) must also fail and should be dismissed with prejudice as to them.

  i.   *Plaintiff Fails to Meet Heightened Pleading Standard and Establish Intent for Conspiracy*

47.     Furthermore, RICO claims grounded in predicate acts of fraud, such as mail fraud, wire fraud, and bank fraud, must meet Rule 9(b)'s heightened particularity pleading requirement. *Chazanow*, 2009 WL 3853704, at *4 (citing *Bonton*, 889 F.Supp. at 1004); *see also Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (Rule 9(b) applies to all

allegations of fraudulent conduct, "whether part of a claim of fraud or not"). "[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Singh*, 480 F.3d at 357 (quoting *Crowe*, 43 F.3d at 206).

48.     A person cannot be held liable for a RICO conspiracy "merely by evidence that he associated with other . . . conspirators or by evidence that places the defendant in a climate of activity that reeks of something foul." *Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 239 (5th Cir. 2010 (quoting *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir 1998)). A conspirator must at least know of the conspiracy and "adopt the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65 (1997).

49.     Plaintiff fails to include any allegations to suggest that the Windspeed Employees agreed to partake in an enterprise of racketeering activity. Not a single sentence in the entire Complaint alleges that the Windspeed Employees ever expressed consent to partake in racketeering activity. In fact, the Complaint alleges the opposite; the Windspeed Employees were carrying out their daily tasks or following orders in their roles within either ACET Global or Windspeed. Based on the allegations in the Complaint, it is impossible to satisfy Rule 9(b) and sufficiently show a specific agreement to take part in racketeering activity.

50.     Additionally, Plaintiff includes vague allegations that the Windspeed Employees lied in their depositions in the referenced State Court matter. Aside from the fact that it is untrue, Plaintiff cannot rely on litigation activity to support a claim for RICO. *See SnoWizard Incorporated*, 833 F.3d at 524. The reasoning behind this is that, if the alleged predicate acts took place in the context of defending a lawsuit, the unlawful conduct "did not constitute or threaten long-term criminal activity." *Zastrow*, 789 F.3d at 561 (quoting *Burzynski*, 989 F.2d at 742-43).

Since early 2019, Plaintiff's allegations regarding predicate acts of an alleged enterprise have occurred in the context of defending against litigation from Plaintiff regarding the alleged fraudulent foreclosure sale. Accordingly, there is no threat of long-term criminal activity, even if it were assumed that such a threat existed before March of 2019. Obstruction of justice fails as a predicate act in this case.

G. State Law Causes of Action

   i.   *Plaintiff Fails to Establish Aiding and Abetting a Breach of Fiduciary Duty*

51.   It should be initially stated that Plaintiff utterly fails to make it clear whether or not it is asserting a derivative claim on behalf of ACET Global for this aiding and abetting claim. In fact, Plaintiff confusingly argues that ACET Global, itself, owed and breached fiduciary duties to Plaintiff. *See* ECF No. 36, pg. 153. Plaintiff fails under Rule 8 to provide adequate notice as to whether a derivative claim is being brought against the Windspeed Employees by Plaintiff.

52.   To plead a breach of fiduciary duty, a plaintiff must allege: (1) there existed a fiduciary relationship; (2) the defendants breached their fiduciary duty; and (3) the defendants' breach must have resulted in injury to the plaintiff or benefit to the defendants; the derivative claim of aiding and abetting a breach of fiduciary duty adds an important fourth element: (4) that the accused "party must be aware it was participating in the breach." *Ebert v. Gustin*, 2016 WL 11663164, at *8 (N.D. Tex. May 12, 2016) (citing *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)).

53.   Whether it is Plaintiff or ACET Global which is asserting this aiding and abetting claim, the claim fails as a matter of law because the Fifth Circuit refuses to recognize the existence of a claim for aiding and abetting a breach of fiduciary duty. *See Taylor v. Rothstein Kass & Company, PLLC*, 2020 WL 554583, at *5 (N.D. Tex. Feb. 4, 2020) (citing *In re DePuy*

*Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781-82 (5th Cir. 2018)). The reason for this is that the Supreme Court of Texas "has not expressly decided whether Texas recognizes a cause of action for aiding and abetting." *Taylor*, 2020 WL 554583, at *5 (citing *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017)).   Based on this, the Fifth Circuit has stated it would "exceed[] the bounds of its legitimacy in fashioning novel causes of action not yet recognized by state courts." *See DePuy Orthopaedics*, 888 F.3d at 781-82.  Based on the lack of recognition of this "novel" cause of action by the Fifth Circuit, the claim for aiding and abetting breach of fiduciary duty fails on its face.

54. Furthermore, incorporating the analysis from the briefing of Defendants SG Credit Partners, Inc. and Marc Cole, Plaintiff fails to state sufficient facts which would establish that the Windspeed Employees aided and abetted a breach of fiduciary duty.  *See Defendants SG Credit Partners, Inc. and Marc Cole's Amended Motion to Dismiss*.  At no single point in the Complaint does Plaintiff allege specifically that any of the Windspeed Employees engaged in aiding and abetting.  The Complaint only establishes that the Windspeed Employees were doing their jobs, not controlling entities and participating in self-dealing.  For the same reason that every single cause of action in this suit fails as a matter of law against the Windspeed Employees, this cause of action, too, must fail.

### ii.  Plaintiff Fails to Show Elements to Establish TUFTA

51. The Texas Uniform Fraudulent Transfer Act ("TUFTA") provides that "(a) [a] transfer or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a

reasonable equivalent value in exchange for the transfer or obligation, and the debtor: (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."  Tex. Bus. & Com. Code § 24.005.

52.     The Windspeed Employees incorporate and rely on the arguments asserted by Defendants Windspeed Trading, LLC and William Szeto in their Motion to Dismiss regarding the lack of a transfer of "assets" when those assets are fully encumbered.  *See Defendants Windspeed and Mr. Szeto's Amended Motion to Dismiss*.

53.     Again, the Windspeed Employees must endure more insufferably vague allegations from Plaintiff which appear to serve no greater intent than to harass the Windspeed Employees for having been employed by two of the Defendants.  Plaintiff conclusorily alleges that the Windspeed Employees transferred assets of ACET Global with the actual intent to defraud Plaintiff.  However, Plaintiff does not even bother to allege facts which plausibly show that the Windspeed Employees even know what Plaintiff is.  Plaintiff has utterly failed to allege any particular facts which would show the Windspeed Employees had the specific intent to defraud.  Accordingly, the TUFTA cause of action against the Windspeed Employees should be dismissed.

*iii.   Plaintiff Fails to Meet the Heightened Standard Necessary for Civil Conspiracy*

54.     A civil conspiracy claim consists of: (1) an agreement between two or more parties; (2) to commit an unlawful act or a lawful act by unlawful means; (3) the committing of some overt act in furtherance of the conspiracy; and (4) damage to plaintiff as a result of the acts performed in furtherance of the conspiracy.  *See Henkel v. Emjo Invs., Ltd.*, 480 S.W.3d 1 (Tex.App.— Houston [1st Dist.] 2016, no pet.).  Civil conspiracy to commit a tort that sounds in fraud must be

pleaded with particularity in accordance with Rule 9(b).  *Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953, 961 (5th Cir. 1994).

55.     As a last desperate attempt at a grab-all cause of action against the Windspeed Employees, Plaintiff asserts a civil conspiracy cause of action to commit all the other asserted causes of actions in the Complaint.  Since there are no other underlying causes of action which have been plausibly asserted against the Windspeed Employees, this claim for civil conspiracy must also fail.  As Plaintiff failed to do with its RICO claims, nowhere is there any allegation that the Windspeed Employees agreed to conspire with any parties to commit unlawful acts or commit lawful acts by unlawful means.

H. In the Alternative, The Court Should Decline To Exercise Supplemental Jurisdiction Over State Law Claims

55.     As already explained in detail above, Counts VI, VII, and VIII (the "State Law Claims") should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  In the alternative, in the event the Court dismisses Plaintiff's RICO causes of action against the Windspeed Employees, and not the State Law Claims, the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).  "The district court has discretion to dismiss pendent state law claims, and may decline to exercise supplemental jurisdiction over such claims where it has dismissed claims over which it had original jurisdiction." *St. Germain v. Howard*, 556 F.3d 261, 263–64 (5th Cir. 2009) (affirming dismissal of state law claims after dismissing RICO claims under Rule 12(b)(6)).  As expressed by other Defendants in this matter, the rationale for hearing the State Law Claims evaporates if the RICO causes of action are dismissed.  Plaintiff has a pending state court lawsuit dealing with the same issues and many of the same claims in which trial is imminent.  Plaintiff would unjustifiably be allowed to relitigate claims which have been thoroughly briefed and subjected to discovery in the state court matter.

## IV. CONCLUSION

57.     For the reasons stated in this brief, Plaintiff has failed to state a claim upon which relief can be granted, both directly and derivatively, for all of its RICO and state law causes of action.  Plaintiff has failed to allege acts to show that an actual RICO enterprise existed between the Defendants in this case which carried out a purpose distinctive from the alleged racketeering activity.  Plaintiff pleads insufficient facts to establish that two or more predicate acts occurred to create a RICO offense.  Lastly, Plaintiff wholly fails to establish that the Windspeed Employees were acting outside of the scope of the employment duties and were distinctive RICO persons from the entity by which they were employed.  Failure to adequately assert these facts also warrants the dismissal of all state law claims against the Windspeed Employees.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, Windspeed Employees respectfully request that the Court dismiss with prejudice Counts I, II III, VI, VII, and VIII of the Complaint against them.  The Windspeed Employees further pray for any additional relief to which they may be justly entitled.

Dated: November 3, 2021
Dallas, Texas

\

\

\

\

\

HIGIER ALLEN & LAUTIN, PC

By: */s/ Gordon W. Green*_____
Jason T. Rodriguez
   Texas State Bar No. 24042827
   *Attorney-In-Charge*
Timothy P. Woods
   Texas State Bar No. 21965500
Gordon W. Green
   Texas State Bar No. 24083102

HIGIER ALLEN & LAUTIN, P.C.
2711 N. Haskell Ave., Suite 2400
Dallas, Texas 75204

Telephone: (972) 716-1888
Facsimile: (972) 716-1899

jrodriguez@higierallen.com
twoods@higierallen.com
ggreen@higierallen.com

**ATTORNEYS FOR WINDSPEED TRADING, LLC, MR. WILLIAM SZETO, MS. ZHEXIAN LIN, MS. DANA MARIE TOMERLIN, MS. PADASAMAI VATTANA; MS. PAULA KETTER, MS. VANESSA TORRES**

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of November 2021, a true and correct copy of the foregoing document was served *via* the Court's ECF system and by email to the following parties.

| | |
|---|---|
| Jason B. Freeman<br>Freeman Law, PLLC<br>2595 Dallas Parkway, Suite 420<br>Frisco, Texas 75034<br>jason@freemanlaw-pllc.com<br><br>**Counsel for Plaintiff** | Edward P. Perrin, Jr.<br>Jennifer R. Poe<br>HALLETT & PERRIN, P.C.<br>1445 Ross Ave., Suite 2400<br>Dallas, Texas 75202<br>eperrin@hallettperrin.com<br>jpoe@hallettperrin.com<br><br>**Counsel for Baymark Defendants** |
| John David Blakley<br>William D. Dunn<br>DUNN SHEEHAN, LLP<br>3400 Carlisle Street, Suite 200<br>Dallas, Texas 75204<br>jdblakley@dunnsheehan.com<br><br>**Counsel for Super G Capital, LLC and Steven Bellah** | Andrea Levin Kim<br>DANIELS TREDENNICK, PLLC<br>6363 Woodway Dr., Ste. 700<br>Houston, Texas 77057<br>andrea.kim@dtlawyers.com<br><br>Rachel Williams<br>WILLIAMS LAW, PC<br>10300 N. Central Expry., Ste. 544<br>Dallas, Texas 75231<br><br>**Counsel for SG Credit Partners, Inc. and Marc Cole** |

*/s/ Gordon W. Green*
Gordon W. Green