UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), Directly and Derivatively on Behalf of ACET GLOBAL, LLC and BAYMARK ACET HOLDCO, LLC | § § § § § § | |
| and | § § | |
| ACET GLOBAL, LLC, | § § | |
| *Plaintiffs*, | § § | |
| v. | § § | |
| BAYMARK PARTNERS, LP; BAYMARK PARTNERS MANAGEMENT, LLC; SUPER G CAPITAL, LLC; SG CREDIT PARTNERS, INC.; BAYMARK ACET HOLDCO, LLC; BAYMARK ACET DIRECT INVEST, LLC; BAYMARK PARTNERS; DAVID HOOK; TONY LUDLOW; MATT DENEGRE; WILLIAM SZETO; MARC COLE; STEVEN BELLAH; ZHEXIAN "JANE" LIN; DANA MARIE TOMERLIN; PADASAMAI VATTANA; PAULA KETTER; VANESSA TORRES; WINDSPEED TRADING, LLC; HALLETT & PERRIN, P.C.; and JULIE A. SMITH, | § § § § § § § § § § § § § § § § § § § | CIVIL CAUSE NO. 3:21-CV-01171-B |
| *Defendants*. | § § | |

**DEFENDANTS HALLETT & PERRIN, P.C. AND JULIE A. SMITH'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
AND BRIEF IN SUPPORT**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

APPLICABLE STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    III.   Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.     Plaintiff's Improper "Shotgun" Pleading and Failure to Comply with Rule 8 . . . . 6

    II.    Plaintiff's Claims Under RICO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.    18 U.S.C §1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.    18 U.S.C. § 1962(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        C.    18 U.S.C. § 1962(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    III.   Plaintiff's State-Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        A.    Attorney Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        B.    Common-Law Fraud (Count IV) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        C.    Breach of Fiduciary Duty/Aiding and Abetting Breach of Fiduciary Duty (Counts V, VI) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        D.    Texas Uniform Fraudulent Transfer Act (Count VII) . . . . . . . . . . . . . . . 18

        E.    Civil Conspiracy (Count VIII) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# INDEX OF AUTHORITIES

## Cases

*7-Eleven, Inc. v. Puerto Rico-7 Inc.*, Civil Action No. 3:08-CV-00140-B,
2008 WL 4951502 (N.D. Tex. Nov. 19, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Azrielli v. Cohen Law Offices*, 21 F.3d 512 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Baumer v. Pachl*, 8 F.3d 1341 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Chau v. Aviva Life & Annuity Co.*, Civil Action no. 3:09-CV-2305-B,
2011 WL 1990446 (N.D. Tex. May 20, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Drake v. Costume Armour, Inc.*, 736 F. App'x 505 (5th Cir. 2018) (per curiam) . . . . . . . . . . . 14

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
565 F.3d 200 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Haynes & Boone, LLP v. NFTD, LLC*, — S.W.3d —, No. 20-0066,
2021 WL 2021453 (Tex. May 21, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hidden Values, Inc. v. Wade*, Civil Action No. 3-11-CV-1917-L,
2012 WL 1836087 (N.D. Tex. May 18, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10

*Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732 (5th Cir. 2014) (per curiam) . . . . . . . . . . 3

*Howley v. Bankers Standard Ins. Co.*, Civil Action No. 3:19-CV-2477-L,
2021 WL 913290 (N.D. Tex. Mar. 10, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832 (N.D. Tex. 2005). . . . . . . . . . . . . . . . . . . . 5

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
Civil Action No. 3:12-cv-3515-B, 2014 WL 5460450 (N.D. Tex. Oct. 27, 2014). . . . . . . . . . . . 6

*In re Taxable Mun. Bod Sec. Litig.*, Civ. A. Nos. 90-4714, 90-4718,
1993 WL 534035 (E.D. La. Dec. 13, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759 (5th Cir. 2019). . . . . . . . . 4, 14, 15

*Jaser v. AT&T Servs. Inc.*, Civil Case No. 3:18-CV-3429-B-BH,
2020 WL 1329151 (N.D. Tex. Mar. 23, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 8

*Jessen v. Duvall*, No. 14-16-00869-CV, 2018 WL 1004659
(Tex. App.—Houston [14th Dist.] Feb. 22, 2018, no pet.) (mem. op.) . . . . . . . . . . . . . . . . . . . . 18

*Johnson v. Ashmore*, 681 F. App'x 345 (5th Cir. 2017) (per curiam) . . . . . . . . . . . . . . . . . . . . . 17

*Maynard v. PayPal, Inc.*, Civil Action No. 3:18-CV-0259-D,
2019 WL 3552432 (N.D. Tex. Aug. 5, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

*Muskegan Hotels, LLC v. Patel*, 986 F.3d 692 (7th Cir 2021) . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355 (N.D. Tex. 2019) . . . . . . . . . . . . 8

*Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580 (5th Cir. 1992) . . . . . . . . 12, 14

*Paul v. Aviva Life & Annuity Co.*, Civil Action No. 3:09-CV-1490-B,
2010 WL 5105925 (N.D. Tex. Dec. 14, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Poe v. Bock*, EP-17-CV-00232-DCG, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018). . . . . . . . . 13

*Qatalys, Inc. v. Mountain Med. Techs., Inc.*, Civil Action No. 3:14-cv-1784-L,
2015 WL 1401220 (N.D. Tex. Mar. 27, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Roe v. Johnson Cty., Tex.*, No. 3:18-c-2497-B-BN,
2019 WL 5031357 (N.D. Tex. Jul. 29, 2019),
*report and recommendation adopted*, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019) . . . . . . . 5, 8

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
682 F.3d 1043 (D.C. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*South Avis Realty, Inc. v. Neece*, Civil Action No. 1:19-CV-206,
2020 WL 3542272 (S.D. Tex. Jun. 30, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . 12

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page iii**

*Taylor v. Academic P'ships LLC*, No. 3:19-cv-1764-K-BN,
2020 WL 5127791 (N.D. Tex. Jun. 17, 2020),
*report and recommendation adopted*, 2020 WL 5110370 (N.D. Tex. Aug. 29, 2020) . . . . . . . . . 7

*Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Varela v. Gonzales*, Civil Action No. 3:13-CV-1278-B,
2013 WL 5658606 (N.D. Tex. Oct. 17, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Walter v. Drayson*, 538 F.3d 1244 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Williams v. WMX Techs., Inc.*, 112 F.3d 175 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wilson v. Deutsche Bank Trust Co. Americas*, Civil Action No. 3:18-CV-0854-D,
2019 WL 175078 (N.D. Tex. Jan. 10, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553 (5th Cir. 2015) . . . . . . . . . . . . 10

*Zucker v. Farish*, Civil Action No. 3:18-CV-01790-K,
2018 WL 6570867 (N.D. Tex. Dec. 12, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## **Statutes**

18 U.S.C. § 1962(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 1962(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex. Bus. & Comm. Code § 24.009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Defendants Hallett & Perrin, P.C. ("H&P") and Julie A. Smith ("Smith") (referred to collectively herein as the "Attorney Defendants") file this Motion to Dismiss Plaintiff's First Amended Complaint  Pursuant to Rules 12(b)(6), 9(b), and 8 (as well as Rules 12(b)(1) and 23.1[1]) and Brief in Support, and in support thereof would respectfully show the Court as follows:

## SUMMARY OF ARGUMENT

Faced with five motions to dismiss, Plaintiff decided not to remedy any of the numerous identified defects in its Original Complaint. Rather, Plaintiff decided it would amend and make its pleading *even more confusing* by dragging the Attorney Defendants into this morass. However, Plaintiff's purported "claims" against the Attorney Defendants (to the extent they can be deciphered from Plaintiff's unbelievably verbose "shotgun" pleading) fare no better than Plaintiff's "claims" against any of the other Defendants. Plaintiff's First Amended Complaint ("FAC") also fails spectacularly under Rules 12(b)(6), 9(b), and 8.

Plaintiff's RICO claims (the only basis for federal jurisdiction) are deficient for a variety of reasons. However, a particularly glaring defect in the RICO section 1962(c) claim against the Attorney Defendants is Plaintiff's complete inability to allege any facts that would suggest that the Attorney Defendants come anywhere close to satisfying the "operation-or-management" requirement for stating such a claim. Instead, the allegations in the FAC describe run-of-the-mill legal services provided by the Attorney Defendants to their clients. The FAC also fails to plead basic facts necessary for any claim under RICO section 1962(a), and its RICO conspiracy claim under section 1962(d) necessarily falls with the other two RICO claims.

---

[1]The Attorney Defendants hereby adopt and incorporate by reference the arguments set forth in Defendant Baymark ACET Holdco, LLC's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support regarding Plaintiff's lack of standing to assert any "derivative" claims on behalf of either ACET Global, LLC or Baymark ACET Holdco, LLC and Plaintiff's failure to comply with Federal Rule of Civil Procedure 23.1.

As for Plaintiff's state law claims (which the Court should not even reach as federal jurisdiction vanishes with Plaintiff's nonexistent RICO claims), it is clear from the express allegations in the FAC that they are all barred by the defense of attorney immunity. Even if that were not the case, Plaintiff still fails to plead coherent facts that could support the required elements of its state law claims.

The FAC does not identify any "misrepresentations" by the Attorney Defendants that could support any claim for common-law fraud. It neither describes any fiduciary breaches by the Attorney Defendants nor points to facts suggesting the type of "unlawful intent" necessary for a claim for aiding and abetting any other Defendant's purported breach of fiduciary duty. It also does not explain how the Attorney Defendants could possibly be proper defendants under the Texas Uniform Fraudulent Transfer Act when there are no allegations that the Attorney Defendants received or benefitted from any "fraudulently transferred" assets. Finally, the FAC does not plead any facts that would support a "reasonable inference" that the Attorney Defendants participated in any "conspiracy."

## APPLICABLE STANDARDS

### I.      Rule 12(b)(6)

To satisfy the requirements of Federal Rule of Civil Procedure 12(b)(6), a plaintiff must set forth the "grounds for [its] entitlement to relief," and doing so "requires more than labels and conclusions."[2] "[A] formulaic recitation of the elements of a cause of action will not do."[3] Instead,

---

[2]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

[3]*Id.*

a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[4] To have the necessary "facial plausibility," the complaint must included "factual content" that would allow the Court to draw the "reasonable inference" that the defendants are "liable for the misconduct alleged."[5] "[C]onclusory allegations, unwarranted deductions, [and] legal conclusions" will *not* satisfy the requirement for "factual content," and the Court should not accept them as true.[6]

In considering a motion to dismiss, the Court may consider documents attached to a plaintiff's complaint or incorporated into the complaint by reference, as well as matters of which the Court may take judicial notice.[7] Moreover, the Court need not accept "factual allegations" that are contradicted by documents that are properly considered along with the complaint when ruling on a motion to dismiss.[8]

---

[4]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

[5]*Id*. The Court should not, however, "strain to find inferences favorable to the plaintiff." *Hidden Values, Inc. v. Wade*, Civil Action No. 3-11-CV-1917-L, 2012 WL 1836087, at *2 (N.D. Tex. May 18, 2012).

[6]*Hidden Values*, 2012 WL 1836087, at *2.

[7]*Varela v. Gonzales*, Civil Action No. 3:13-CV-1278-B, 2013 WL 5658606, at *2 (N.D. Tex. Oct. 17, 2013); *see also Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 209 n.6 (5th Cir. 2009) ("Appellants fail to acknowledge that because they attached the letter to their complaint . . . it is relevant for the purposes of evaluating a motion to dismiss.").

[8]*See Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732, 737 (5th Cir. 2014) (per curiam) ("Hollingshead's conclusory allegation that Aetna improperly 'denied' his benefits is insufficient to survive dismissal because it is contradicted by the documents attached to his first amended complaint."); *Maynard v. PayPal, Inc.*, Civil Action No. 3:18-CV-0259-D, 2019 WL 3552432, at *10 (N.D. Tex. Aug. 5, 2019) ("To accept plaintiffs' contention would be to ignore the first page of the user agreement . . . ."); *Qatalys, Inc. v. Mountain Med. Techs., Inc.*, Civil Action No. 3:14-cv-1784-L, 2015 WL 1401220, at *5 (N.D. Tex. Mar. 27, 2015) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.") (quoting *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013)).

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 3**

The Court may also consider a defendant's affirmative defense in the context of a Rule 12(b)(6) motion to dismiss, so long as the facts required to establish such affirmative defense appear on the face of the complaint.[9]

## II.    Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires parties alleging fraud to meet a heightened pleading standard, one in which the "circumstances constituting fraud" are stated "with particularity."[10] In particular, the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[11] Moreover, "simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b). The claimant must still allege specific facts that support an inference of fraud."[12]

## III.    Rule 8

"The underlying purpose of Rule 8 is to eliminate prolixity in pleading and to achieve brevity, simplicity, and clarity."[13] Thus, Federal Rule of Civil Procedure 8(a)(2) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 8(d)(1) provides that "[e]ach allegation must

---

[9] *See, e.g.*, *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019).

[10] Rule 9(b) applies to "RICO claims resting on allegations of fraud, such as when the RICO predicate act alleged involves wire or mail fraud." *Varela*, 2013 WL 5658606, at *3.

[11] *Flaherty*, 565 F.3d at 206. "A dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim." *Id.*

[12] *7-Eleven, Inc. v. Puerto Rico-7 Inc.*, Civil Action No. 3:08-CV-00140-B, 2008 WL 4951502, at *2 (N.D. Tex. Nov. 19, 2008) (internal citation omitted); *see also id.* ("[T]his Court applies Rule 9(b) with force and without apology.") (internal quotation marks omitted).

[13] *Jaser v. AT&T Servs. Inc.*, Civil Case No. 3:18-CV-3429-B-BH, 2020 WL 1329151, at *4 (N.D. Tex. Mar. 23, 2020) (internal quotation marks and alteration omitted).

be simple, concise, and direct." Further, "Rule 9(b)'s demand for particularity works in tandem with Rule 8(a)'s insistence upon simple, concise, and direct allegations."[14]

Claims presented in a "shotgun" fashion—that is, with each claim beginning with some variation of "Plaintiff realleges as if set forth fully herein" all of the preceding paragraphs—"lack substantive plausibility."[15] The Fifth Circuit has denounced "shotgun" pleading that does not comply with the requirements of Rule 8.[16] "Shotgun" complaints typically "set forth an excessive number [of] facts," with the result that "each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies."[17] As one court in this District has explained, the "shotgun" approach to pleading claims is

> discouraged by courts because it interferes with a district court's ability to manage its docket, unnecessarily impedes the orderly and efficient disposition of disputes, and wastes scarce judicial resources by causing courts to engage in the onerous task of sifting through a myriad of irrelevant allegations in ruling on the sufficiency of a claim, making it difficult to know which factual allegations were intended to support which claims for relief.[18]

---

[14]*Zucker v. Farish*, Civil Action No. 3:18-CV-01790-K, 2018 WL 6570867, at *3 (N.D. Tex. Dec. 12, 2018) (internal quotation marks omitted).

[15]*Howley v. Bankers Standard Ins. Co.*, Civil Action No. 3:19-CV-2477-L, 2021 WL 913290, at *9 (N.D. Tex. Mar. 10, 2021); *see also Roe v. Johnson Cty., Tex.*, No. 3:18-c-2497-B-BN, 2019 WL 5031357, at *4-5 (N.D. Tex. Jul. 29, 2019) ("Shotgun pleadings are subject to dismissal under Rule 12(b)(6)."), *report and recommendation adopted*, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019).

[16]*Howley*, 2021 WL 913290, at *9 (quoting *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788-89 (5th Cir. 1986) as criticizing "shotgun" pleadings that exist when "the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick").

[17]*Zucker*, 2018 WL 6570867, at *3 (internal citations and quotation marks omitted).

[18]*Howley*, 2021 WL 913290, at *9; *see also In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 857-58 (N.D. Tex. 2005) (rejecting "puzzle pleading" because "assembling puzzles is not the duty of the Court" and stating "it is the parties' burden to present succinct pleadings which clearly lay out the elements").

## ARGUMENT AND AUTHORITIES[19]

### I.     Plaintiff's Improper "Shotgun" Pleading and Failure to Comply with Rule 8

This Court has previously recognized that "[w]hen a complaint does not meet the pleading requirements of Rule 8, Rule 12(b)(6) authorizes dismissal of a civil action."[20] The FAC, which consists of 393 paragraphs and takes up 157 pages (not including the hundreds of pages of attached exhibits[21]), is the exact opposite of the "short and plain" and "simple, concise, and direct" pleading required by Rule 8.[22] Moreover, the FAC is a perfect example of improper "shotgun" pleading and why such style of pleading is so likely to create "unnecessary confusion."[23]

Plaintiff cannot blame the particularity requirements of Rule 9(b) for its ridiculously verbose FAC. In fact, even with its hundreds of paragraphs, the FAC still fails to plead its claims sounding

---

[19]The other Defendants in this case are also filing motions to dismiss the FAC. The Attorney Defendants hereby adopt the arguments set forth in the following briefs filed by the other Defendants to the extent the arguments raised in such briefs apply equally to the Attorney Defendants: Baymark Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support; Defendants SG Credit Partners, Inc.'s and Marc Cole's Memorandum of Law in Support of Motion to Dismiss Plaintiff's First Amended Complaint; Defendants Super G Capital, LLC's and Steven Bellah's Brief in Support of Their Motion to Dismiss Plaintiff's First Amended Complaint, Windspeed Employees' Brief in Support of Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6), and Windspeed and Szeto's Brief in Support of Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6).

[20]*Jaser*, 2020 WL 1329151, at *4.

[21]Plaintiff makes the following statement about the *46 exhibits* attached to its FAC: "All exhibits hereto are adopted and incorporated by reference in this First Amended Complaint for all purposes as if set forth herein in full." FAC at 2 n.1.

[22]Even the FAC's "Short Summary" consists of 21 paragraphs and covers approximately 12 pages of the FAC. *See* FAC ¶¶ 1-21.

[23]*See Howley*, 2021 WL 913290, at *9. This Court has also previously considered "contradictory" allegations to factor into the Court's motion to dismiss analysis. *See In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, Civil Action No. 3:12-cv-3515-B, 2014 WL 5460450, at *5 (N.D. Tex. Oct. 27, 2014); *see also Wilson v. Deutsche Bank Trust Co. Americas*, Civil Action No. 3:18-CV-0854-D, 2019 WL 175078, at *7 n.14 (N.D. Tex. Jan. 10, 2019) (finding the complaint to be "internally contradictory as well as vague—providing an additional reason to dismiss the claim"). The FAC offers a number of contradictory allegations. For example, was Defendant William Szeto a "puppet" of the Windspeed board, *see* FAC ¶¶ 155, 171, or was the board a "sham" that "took no action," *see* FAC ¶¶ 169-70? Were there "two sets of books," *see id.* ¶ 181, or was there "no effort to separately account for [ACET Global's] inventory," *see id.* ¶ 200?

in fraud with the required particularity.  "A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for the absence of detail."[24]

In the absence of the required "straightforward" pleading, both the Court and the Attorney Defendants are left to "try to fish a gold coin from a bucket of mud."[25] Making things even "muddier" and more confusing, the FAC purports to add "derivative claims" on behalf of two additional "Plaintiffs"—ACET Global, LLC ("ACET Global") and Baymark ACET Holdco, LLC, ("Holdco"), both clients of the Attorney Defendants.[26] However, the FAC makes no effort whatsoever to differentiate or explain which claims are being brought derivatively and which claims are being asserted directly by the original Plaintiff, D&T Partners, LLC ("D&T").[27] Without an analytical framework provided in the FAC, the addition of purported "derivative" claims and Plaintiffs exponentially compounds the Rule 8 and Rule 9(b) deficiencies in the FAC. The Attorney Defendants (along with the Court and all of the other Defendants) are left to try and decipher for themselves which claims are being asserted against them by whom and upon what basis.**[28]**

---

[24]*Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

[25]*Taylor v. Academic P'ships LLC*, No. 3:19-cv-1764-K-BN, 2020 WL 5127791, at *7 (N.D. Tex. Jun. 17, 2020) (quoting *Hall v. Civil Air Patrol, Inc.*, 193 F. App'x 298, 299-300 (5th Cir. 2006) (per curiam)), *report and recommendation adopted*, 2020 WL 5110370 (N.D. Tex. Aug. 29, 2020).

[26]*See* FAC at 1-2, ¶¶ 33, 38. As noted above, the Attorney Defendants adopt and incorporate by reference the arguments set forth in Defendant Baymark ACET Holdco, LLC's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support, which address the impropriety of the FAC's "derivative" claims. *See supra* note 1.

[27]To make things even more ambiguous, the FAC defines D&T, Holdco, and ACET Global collectively as a singular "Plaintiff." FAC at 1-2.

[28]The FAC also consistently refers to "Defendants" generally, with no attempt to identify any particular Defendant's conduct or explain what allegations relating to any specific Defendant's conduct satisfy the elements of any specific claim. *See, e.g.*, FAC ¶ 369 ("The Defendants made materially false representations to Plaintiff . . . ."). As this Court has previously recognized, "group pleading" that "does not distinguish the conduct of the individual Defendants"
(continued...)

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 7**

This Court has previously dismissed a complaint for being "far too lengthy" as well as "overly repetitious" and "difficult to follow."[29] The FAC is all of these things, and it should be dismissed on the basis of its Rule 8 violations alone.[30] Nevertheless, the Attorney Defendants also address below several more specific reasons why the FAC has failed to state any claim against them, all of which also require dismissal of Plaintiff's claims.

## II.    Plaintiff's Claims Under RICO

Plaintiff asserts three RICO claims against the Attorney Defendants in the FAC: a claim under 18 U.S.C. § 1962(c), a claim under 18 U.S.C. § 1962(a), and a claim under 18 U.S.C. § 1962(d).[31] However, as set forth below, Plaintiff has failed to plead any *facts* that would support any of these claims against the Attorney Defendants.[32]

### A.    18 U.S.C. § 1962(c)

Section 1962(c) makes it unlawful

> for any person employed by or associated with any enterprise engaged in, or
> the activities of which affect, interstate or foreign commerce, to *conduct* or

---

[28](...continued)
is improper. *Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355, 369 (N.D. Tex. 2019).

[29]*Jaser*, 2020 WL 1329151, at *5. The FAC is certainly repetitious. For example, the FAC is filled with needlessly duplicative deposition excerpts. *See, e.g.*, FAC ¶ 115 (quoting from the deposition of Marc Cole); *id.* ¶ 116 (quoting the same deposition testimony of Marc Cole); *id.* ¶ 199 (quoting from the deposition of William Szeto); *id.* ¶ 206 (quoting the same deposition testimony of William Szeto); *see also id.* ¶ 183 (quoting from the deposition of Matt Denegre, including reading from an excerpt of an October 19, 2018 e-mail); *id.* ¶ 184 (presenting a screen shot of the same October 19, 2018 e-mail).

[30]*See Roe*, 2019 WL 5031357, at *5 (discussing the plaintiff's "shotgun pleading" and that "[t]his pleading deficiency is reason enough to grant all eight Rule 12(b)(6) motions to dismiss").

[31]FAC ¶¶ 310-24 (Count I); ¶¶ 325-38 (Count II); ¶¶ 339-67 (Count III).

[32]In addition, the defense of attorney immunity, discussed *infra* section III(A), may also apply to bar Plaintiff's claims under RICO.

> participate, directly or indirectly, in the *conduct* of such enterprise's affairs through a pattern of racketeering activity . . . .[33]

In *Reves v. Ernst & Young*, the Supreme Court interpreted this language to "require[] an element of direction."[34] Particularly with respect to the Attorney Defendants, it is this "element of direction" that is wholly absent from the FAC.

In *Reves*, the Supreme Court considered whether the actions of an accounting firm that merely provided audit reports to a Co-op's board gave rise to liability under section 1962(c).[35] Specifically, the plaintiff in *Reves* complained about the accounting firm's failure to tell the board about certain of the firm's conclusions and that, without those conclusions, the Co-op was actually insolvent.[36] After the Co-op filed for bankruptcy, the bankruptcy trustee sued a number of defendants, including the accounting firm, under RICO.[37] The district court granted summary judgment in favor of the accounting firm, and the D.C. Circuit affirmed.[38] The Supreme Court agreed with the lower courts that the accounting firm's actions in merely providing accounting services to the Co-op were not sufficient to give rise to liability under section 1962(c).[39]

---

[33] 18 U.S.C. § 1962(c) (emphasis added).

[34] 507 U.S. 170, 178 (1993); *see also id.* at 179 ("In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs."); *id*. at 185 ("[W]e hold that 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must participate in the operation or management of the enterprise itself.") (internal citation omitted).

[35] *See id.* at 186.

[36] *See id.* at 174-75 (describing the accounting firm's actions)

[37] *Id.* at 175.

[38] *Id.* at 176-77.

[39] *Id.* at 186 ("Thus, we could only conclude that Arthur Young participated in the operation or management of the Co-op itself if Arthur Young's failure to tell the Co-op's board that the plant should have been given its fair market value constituted such participation. We think that Arthur Young's failure in this respect is not sufficient to give rise to liability under § 1962(c)."

Since *Reves*, courts have considered whether attorneys that simply provide legal services to an alleged RICO enterprise meet the "operation-or-management requirement" necessary to state a claim under section 1962(c). They have concluded that a complaint "that does no more than allege that a law firm performed legal work for an enterprise fails to state a violation."[40] This is the case even if the attorneys had "knowledge of the client's unlawful activities"[41] and regardless of whether the attorneys "rendered [their] services well or poorly, properly or improperly."[42]

> *Performance of legal services that facilitate operation of an enterprise does not represent participation in the "operation or management" of the enterprise.* This is so even when the defendant has substantial persuasive power to induce certain action by the enterprise, or, as part of its professional services offers consultation on important management decisions.[43]

In this case, there is no RICO "enterprise."[44] Even if there were, however, the FAC does not allege that the Attorney Defendants did anything other than perform legal work, such as drafting

---

[40] *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 699 (7th Cir 2021); *see also Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) ("In sum, the pleadings show that Temple and her firm were part of the enterprise but fail to show that she or her firm had 'some part in directing its affairs.' One can be 'part' of an enterprise without having a role in its management and operation. Simply performing services for the enterprise does not rise to the level of direction, whether one is 'inside' or 'outside.'") (internal citation omitted); *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521-22 (2d Cir. 1994) (rejecting a § 1962(c) claim against an attorney when he only represented other alleged RICO defendants and the structure of the deal about which the plaintiffs complained had been presented to him by his clients "as a *fait accompli*").

[41] *Muskegan Hotels*, 986 F.3d at 699.

[42] *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (concluding that the attorney's role "was limited to providing legal services to the limited partnership and EPA" and that, as a result, it did not satisfy the *Reves* test for liability under § 1962(c)).

[43] *In re Taxable Mun. Bod Sec. Litig.*, Civ. A. Nos. 90-4714, 90-4718, 1993 WL 534035, at *4 (E.D. La. Dec. 13, 1993) (emphasis added); *see also Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 561 n.7 (5th Cir. 2015) (recognizing that "[t]he circuit courts of appeals have declined to extend RICO liability under § 1962(c) to an attorney's provision of routine legal services") (quoting *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051 n.7 (D.C. Cir. 2012)).

[44] In what can only be characterized as the naked allegation that: "Alternatively, Hallett & Perrin constitutes a separate enterprise within the meaning of § 1961(4)." FAC ¶ 349. The FAC makes no attempt whatsoever to explain *how* H&P is (or even could be) an "enterprise" for purposes of RICO. The Court should ignore Plaintiff's unsupported and blatantly conclusory allegation that H&P is, itself, an "enterprise." *See, e.g.*, *Hidden Values, Inc. v. Wade*, Civil Action No. 3-11-CV-1917-L, 2012 WL 1836087, at *2 (N.D. Tex. May 18, 2012)(stating that "conclusory allegations, unwarranted deductions, [and] legal conclusions" will not satisfy the requirement to plead "factual content").

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 10**

agreements, corresponding with other parties' counsel, and defending their clients in pending litigation (with Plaintiff D&T Partners, LLC).[45] The FAC contains no allegations that would even suggest that the Attorney Defendants were "directing" any of the actions about which Plaintiff complains.

In fact, Plaintiff's own allegations demonstrate that the Attorney Defendants were not "directing anything." Plaintiff attached Smith's entire deposition transcript as an Exhibit to the FAC and "adopted and incorporated" it as part of the FAC.[46] In her testimony, Smith stated that she was merely following the lead of the parties, including her client.[47] Even the purported "backdating" to which Plaintiff repeatedly points was, according to Plaintiff's allegations in the FAC, done by the Attorney Defendants "at Baymark's instruction."[48]

---

[45]*See, e.g.*, FAC ¶ 148 ("Baymark tasked its law firm, Hallett & Perrin, with drafting the transactional documents."); *id.* ¶ 163 ("Julie Smith acknowledges that she and Hallett & Perrin helped Baymark set up a structure that would allow BP Management to both control Windspeed and to have ownership of 40% of its membership interests for a nominal exercise price of $100."); *id.* ¶ 218 ("Hallett & Perrin corresponded directly with Vanderwoude (Super G's counsel)."); *id.* ¶ 230 ("Hallett & Perrin attorneys discussed the Notice [of Foreclosure] with Super G's counsel before Hallett & Perrin's client received the Notice."); *id.* ¶¶ 124-27 (describing discussions between Plaintiff's counsel and H&P in connection with Plaintiff's "pending lawsuit against several parties").

[46]*See* FAC at 2 n.1; FAC Exh. 6.

[47]*See* FAC Exh. 6, Smith Depo. at 49:1-4 ("The business points were primarily resolved *before the attorneys got involved*. I don't know which party was the one that set up the capital structure.") (emphasis added); *id.* at 50:19-22 ("It was my understanding that Windspeed Trading was an existing company and that we were revising the company agreement to reflect the business deal among the parties.").

[48]FAC ¶ 2. What Plaintiff characterizes as "backdating" is the "as of March 1, 2019" date of the Foreclosure Sale Agreement that Plaintiff includes as Exhibit 18 to the FAC. Plaintiff attempts to distinguish the "as of" date from an "effective" date, going so far as to mischaracterize Smith's testimony about the issue. *See* FAC ¶ 2 ("In deposition testimony, Julie Smith specifically confirmed that the backdating was not *effective* dating, but was actual backdating.") (emphasis in original). Smith's actual testimony was: "Q: When you say – you know, when you say many firms engage in backdating, are you referring to effective dating, or are you referring to backdating. A: *I see those as the same thing*." FAC Exh. 6, Smith Depo. at 36:10-16 (emphasis added); *see also id.* at 34:12-15 ("Q: When was this document actually signed? A: I believe the end of March, *to be effective as of March 1st*.") (emphasis added)  Moreover, nowhere in the FAC does Plaintiff identify any legal significance whatsoever to the difference between the "as of March 1, 2019" date and the date the Foreclosure Sale was actually *executed*, which was in late March. *See* FAC Exh. 37 (March 26, 2019 e-mail from Smith forwarding executed signature pages).

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 11**

The FAC offers no facts to support any "element of direction" on the part of the Attorney Defendants. For this reason alone, Plaintiff has failed to state any section 1962(c) claim against the Attorney Defendants, and the claim must be dismissed.

**B.      18 U.S.C. § 1962(a)**

Section 1962(a) of RICO is specifically directed at those who 1) have received "income derived, directly or indirectly, from a pattern of racketeering activity" *and* 2) have "use[d] or invest[ed], directly or indirectly, any part of such income, or the proceeds of such income" in connection with an enterprise.[49] "[I]njuries due to predicate acts cannot form the basis of an investment injury for the purposes of § 1962(a)."[50] Instead, "for a viable § 1962(a) claim, any injury must flow *from the use or investment of racketeering income*."[51]

Plaintiff makes only the most conclusory allegations regarding its purported claim under section 1962(a): "The Defendants, either directly or indirectly received income from the pattern of racketeering activity through the fraudulent transfer (avoiding amounts payable to Plaintiff), and the proceeds were reinvested back into the enterprise."[52] The FAC pleads no specific facts regarding any "income" received by *any* of the Defendants, much less the Attorney Defendants specifically, nor does the FAC plead any specific facts regarding how any such "income" was "reinvested" by the

---

[49] 18 U.S.C. § 1962(a).

[50] *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 443 (5th Cir. 2000); *see also Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 550 (5th Cir. 2012) ("[I]njuries resulting from predicate acts of 'racketeering activity' themselves cannot form the basis of an investment injury for purposes of § 1962(a).").

[51] *St. Paul Mercury Ins.*, 224 F.3d at 441 (emphasis added); *see also Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir. 1992) ("Parker & Parsley's injury does not stem from the *investment* of the income from racketeering activity; therefore, it has pleaded no cause of action under section 1962(a).") (emphasis in original); *Paul v. Aviva Life & Annuity Co.*, Civil Action No. 3:09-CV-1490-B, 2010 WL 5105925, at *6 (N.D. Tex. Dec. 14, 2010) ("There are no well-pleaded facts to support that Plaintiffs have suffered an investment injury, as opposed to any injury arising from the predicate acts.").

[52] FAC ¶ 330.

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 12**

Attorney Defendants into the "enterprise."[53] Moreover, Plaintiff pleads no facts to suggest that it was in any way "injured" by the use or investment of racketeering income. Instead, it is clear from the FAC that the *only* injury it is claiming was complete once ACET Global had no assets left.[54]

The Court should dismiss Plaintiff's section 1962(a) claim against the Attorney Defendants for this reason as well as those generally applicable to all of Plaintiff's RICO claims.[55]

### E.      18 U.S.C. § 1962(d)

RICO section 1962(d) prohibits "conspir[ing] to violate any of the provisions of subsections (a), (b), or (c)."[56] Similar to the analysis under section 1962(c), "[a]llegations that a law firm provided legal representation to an enterprise do not, without more, suffice to state a RICO conspiracy" under section 1962(d).[57] Rather, a complaint must provide *details* about the content of the alleged agreement to violate RICO, when and where any such agreement arose, and what acts of racketeering were purportedly agreed upon.[58] There are no such allegations in the FAC with respect to the Attorney Defendants.

---

[53]Although it is not entirely clear against which Defendants Plaintiff is actually asserting its section 1962(a) claim, Plaintiff expressly lists both of the Attorney Defendants under the heading "Count II: Violations of 18 U.S.C. § 1962(a) (Civil RICO)." FAC at 145.

[54]*See, e.g.*, FAC ¶¶ 323, 337.

[55]*See supra* note 19 (adopting the RICO-related arguments for dismissal contained in the other Defendants' briefs).

[56]18 U.S.C. § 1962(d). Accordingly, because the FAC fails to state a claim under either § 1962(c) or § 1962(a) (for the reasons stated herein as well as the reasons stated in the other Defendants' briefs), it necessarily fails to state a claim under § 1962(d). *See, e.g.*, *Poe v. Bock*, EP-17-CV-00232-DCG, 2018 WL 4275839, at *8 (W.D. Tex. Sept. 7, 2018) ("If a plaintiff fails to plead the requisite elements of a RICO claim under § 1962(a)-(c), he is likewise unable to plead a conspiracy under § 1962(d) to violate those sections.").

[57]*Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 699 (7th Cir. 2021); *see also RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051 (D.C. Cir. 2012) (finding the plaintiff failed to state a claim under § 1962(d) against attorneys when "the allegations of the complaint target[ed] Freshfields' services as attorneys, nothing more").

[58]*See Muskegan Hotels*, 986 F.3d at 700.

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 13**

The Court should also dismiss Plaintiff's section 1962(d) conspiracy claim against the Attorney Defendants for failure to state a claim.

## III.   Plaintiff's State Law Claims

In the Fifth Circuit, the "general rule" is to dismiss pendent state claims when the federal claims giving rise to federal jurisdiction are dismissed.[59] Thus, because Plaintiff has wholly failed to plead any viable claims against the Attorney Defendants under RICO, the Court can simply dismiss the FAC in its entirety. Nevertheless, the Attorney Defendants address below how Plaintiff has also failed to state its various claims under Texas law.[60]

### A.   Attorney Immunity

Under Texas law, attorney immunity is a "*comprehensive affirmative defense protecting attorneys from liability to non-clients*, stemming from the broad declaration . . . that attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages."[61] Thus, the doctrine of attorney immunity "generally insulates a lawyer from civil liability to a non-client for conduct performed as part of the discharge of the lawyer's duties to his client."[62] The focus relevant to a claim for attorney immunity

---

[59]*See, e.g.*, *Drake v. Costume Armour, Inc.*, 736 F. App'x 505, 506 (5th Cir. 2018) (per curiam) ("But here there are no good reasons for retaining the state law claims in this federal suit."); *Parker & Parsley Petroleum Co.*, 972 F.2d at 590 (concluding that "the district court . . . abused its discretion in retaining jurisdiction over the state law claims after it had dismissed the federal RICO claims.").

[60]Plaintiff's state law claims are also addressed in various detail in the other Defendants' briefs, which the Attorney Defendants have adopted. *See supra* note 19.

[61]*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (emphasis added) (internal quotation marks omitted).

[62]*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019); *see also South Avis Realty, Inc. v. Neece*, Civil Action No. 1:19-CV-206, 2020 WL 3542272, at *5 (S.D. Tex. Jun. 30, 2020) (applying attorney immunity when the plaintiff's allegations "all demonstrate that Neece acted *solely as FGR's attorney* in connection with the purchase agreement") (emphasis added).

is "on the kind—not the nature—of the attorney's conduct."[63] Moreover, the defense of attorney immunity "is properly characterized as a true immunity from suit" and is not merely "a defense to liability."[64]

On the face of the FAC, it is clear that Plaintiff's "claims" against the Attorney Defendants are those of a "non-client" (D&T).[65]  Moreover, whatever "claims" the FAC purports to assert against the Attorney Defendants are based entirely upon conduct performed by the Attorney Defendants in their "unique lawyerly capacity," within the scope of their representation of their clients.[66] That is the only kind of conduct Plaintiff alleges. For example, the FAC describes Smith's role in drafting documents legal documents, including foreclosure-related documents.[67] It describes her advice to her clients about the foreclosure transaction.[68] It details communications between the Attorney Defendants and other parties' counsel regarding the various transactions.[69]

---

[63] *Ironshore Europe DAC*, 912 F.3d at 765 (quoting *Cantey Hanger*, 767 S.W.3d at 483-84); *see also South Avis Realty*, 2020 WL 3542272, at *5 ("The inquiry necessarily focuses on the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct.") (emphasis in original, internal quotation marks omitted).

[64] *Ironshore Europe DAC*, 912 F.3d at 763; *see also South Avis Realty*, 2020 WL 3542272, at *6 ("As entitlement to immunity is apparent from the face of SAR's complaint, Neece is not required to make an additional showing as to the scope of his representation to FGR; he is entitled to the defense of attorney immunity."); *Haynes & Boone, LLP v. NFTD, LLC*, — S.W.3d —, No. 20-0066, 2021 WL 2021453, at *10 (Tex. May 21, 2021) (recognizing that attorney immunity exists to "alleviat[e] in the mind of the attorney any fear that he or she *may be sued* or held liable to a non-client for providing zealous representation") (emphasis added).

[65] As noted above, he FAC purports to add additional "Plaintiffs" ACET Global and Holdco. *See* FAC at 1-2; *id.* ¶¶ 33, 38. As set forth in detail in Defendant Baymark ACET Holdco, LLC's Motion to Dismiss and Brief in Support, Plaintiff D&T Partners lacks standing to assert claims on behalf of either of these entities in this case. However, even if either of these entities were properly a "Plaintiff" in this case, the FAC does not articulate with any coherence any purported basis for any claims on behalf of either of these "Plaintiffs" against the Attorney Defendants.

[66] *Haynes & Boone,* 2021 WL 2021453, at *10. In *Haynes & Boone*, the Texas Supreme Court also expressly affirmed what the Fifth Circuit had already concluded in *Troice v. Greenberg Traurig, L.L.P.*—that attorney immunity includes "the multitude of attorneys that routinely practice and advise clients in non-litigation matters." *Id.* (discussing *Troice*, 921 F.3d 501 (5th Cir. 2019)).

[67] FAC ¶¶ 2, 123.

[68] *Id.* ¶ 16.

[69] *Id.* ¶¶ 125, 143, 153, 215-19.

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 15**

None of the Attorney Defendants' conduct described in the FAC is anything more than "conduct performed as part of the discharge of [their] duties to [their] client[s]."[70] Accordingly, the Attorney Defendants are entitled to dismissal of all the state-law claims in the FAC based on the defense of attorney immunity.[71]

### B.  Common-Law Fraud (Count IV)

Despite Plaintiff's repeated generic references to "fraud" throughout the FAC, Plaintiff makes almost no attempt to identify any alleged "misrepresentations" with particularity.[72] Plaintiff certainly does not identify *any* actionable "misrepresentations" made by the Attorney Defendants to Plaintiff D&T Partners, LLC, much less with the particularity required by Rule 9(b).[73] The closest Plaintiff comes is describing a purported "misrepresentation" by Ed Perrin of H&P to Plaintiff's counsel that there was "no relationship" between Super G Capital and any of the defendants in the state-court case also filed by Plaintiff D&T Partners, LLC.[74]

Putting aside for the purpose of this Motion whether or not the facts described in the FAC would actually constitute a "misrepresentation," as a matter of law, even if they did, such "misrepresentation" cannot form the basis of any claim by Plaintiff. Attorney immunity "protects

---

[70]*See Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 348 (5th Cir. 2016) ("These are classic examples of an attorney's conduct in representing his client. That some of it was allegedly wrongful, or that he allegedly carried out some of his responsibilities in a fraudulent manner, is no matter.").

[71]The Attorney Defendants address below additional reasons besides attorney immunity for the dismissal of Plaintiff's state law claims.

[72]*See, e.g.*, FAC ¶¶ 3, 15, 98, 118, 132, 133, 141, 176, 183, 193, 197, 225, 235, 239, 260, 262, 266, 294, 295, 303.

[73]The FAC also contains no allegations of any purported "misrepresentations" by the Attorney Defendants to either ACET Global or Holdco the newly added "derivative" Plaintiffs.

[74]*See* FAC ¶¶ 124-27.

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 16**

even allegedly fraudulent statements made to non-clients in connection with a legal representation."[75] Moreover, nowhere in the FAC does Plaintiff allege that it in any way acted in reliance on any such "misrepresentation."[76] For this reason as well, Plaintiff has failed to state a claim for common-law fraud against the Attorney Defendants.

Because Plaintiff does not plead its common-law fraud claim against the Attorney Defendants with the particularity demanded by Rule 9(b), this claim must be dismissed.

### C. Breach of Fiduciary Duty/Aiding and Abetting Breach of Fiduciary Duty (Counts V, VI)

As an initial matter, the FAC specifically names seven Defendants under its claim for breach of fiduciary duty, including the Attorney Defendants, but then asserts its claim for "aiding and abetting" breach of fiduciary duty against all Defendants.[77] This would appear to suggest that Plaintiff is attempting to sue some Defendants for "aiding and abetting" themselves. Clearly, this makes no sense.

Further, Plaintiff's "shotgun pleading" again makes it impossible to determine what specific conduct by what specific Defendant serves as the basis for either Plaintiff's breach of fiduciary duty or its aiding and abetting claims. The "facts" that Plaintiff does allege, however, make no sense as to the Attorney Defendants.

For example, the FAC alleges that the "Fiduciary Claim Defendants breached their fiduciary duty by willfully and/or through gross negligence (i) allowing the business and assets [of ACET

---

[75] *Johnson v. Ashmore*, 681 F. App'x 345, 346 (5th Cir. 2017) (per curiam).

[76] One of the necessary elements of a claim for fraud is a plaintiff's "action or inaction taken in justifiable reliance upon" a "false representation of material fact." *Maynard vv. PayPal, Inc.*, Civil Action No. 3:18-CV-0259-D, 2019 WL 3552432, at *8 (N.D. Tex. Aug. 5, 2019).

[77] *See* FAC at 151 (asserting Count V against Ludlow, Szeto, Hook, Denegre, Baymark ACET Holdco, Hallett & Perrin, and Julie A. Smith); *id.* at 153 (asserting Count VI against "All Defendants").

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 17**

Global, LLC] to waste, (ii) failing to cause ACET Global to pay under the D&T Note, and (iii) failing to cause ACET Global to otherwise comply with the terms of the D&T Note."[78] What is entirely missing from the FAC is any facts that would even suggest how the Attorney Defendants were in any position to cause any "waste" of ACET Global, LLC's assets or how they could possibly have had the control over ACET Global, LLC to "cause" it to pay or not pay under the D&T Note.[79]

Similarly, to support any aiding and abetting claim, Plaintiff must plead *facts* that would show both that the Attorney Defendants in particular "had an unlawful intent" and that they "substantially assisted and encouraged the wrongdoer in the wrongdoer's tortious act."[80] The FAC includes no such facts with respect to the Attorney Defendants.[81] The Court should dismiss these claims against the Attorney Defendants as well.

### D.    Texas Uniform Fraudulent Transfer Act (Count VII)

Plaintiff purports to assert its TUFTA claim against all Defendants.[82] However, TUFTA only provides for recovery against the transferee of the assets or the person for whose benefit the transfer

---

[78]FAC ¶ 371.

[79]Plaintiff's other allegations of "breach of fiduciary duty" are similarly left completely unconnected to the Attorney Defendants. *See, e.g.*, FAC ¶ 371 (asserting that the "Fiduciary Claim Defendants also breached their fiduciary duty by . . . willfully diverting the assets of ACET Global in order to benefit themselves" without offering any facts to suggest either that the Attorney Defendants specifically had any ability to "divert[]" ACET Global, LLC's assets or that the Attorney Defendants were in any way "benefit[ed]" by such "diver[sion]" of ACET Global, LLC's assets.

[80]*Jessen v. Duvall*, No. 14-16-00869-CV, 2018 WL 1004659, at *7 (Tex. App.—Houston [14th Dist.] Feb. 22, 2018, no pet.) (mem. op.).

[81]In fact, Smith's deposition testimony, which Plaintiff incorporated in its entirety in the FAC, demonstrates the absence of any "unlawful intent" by Smith and H&P. For example, Smith testified that at the time of the foreclosure, she did not know that Windspeed was [allegedly] already in possession of ACET Global, LLC's assets. FAC Exh. 6, Smith Depo. at 18:8-20. She also testified that she did not believe that ACET Global, LLC had assets worth in excess of the Super G secured debt. *Id*. at 61:2-20.

[82]FAC ¶¶ 377-80.

was made.[83] Plaintiff does not plead facts that would identify the Attorney Defendants as the transferee of any of ACET Global's assets, nor does Plaintiff explain how any "transfer" of ACET Global's assets was done to "benefit" the Attorney Defendants. Accordingly, Plaintiff has failed to state a claim against the Attorney Defendants under TUFTA, and the Court should dismiss this claim as well.

### E.      Civil Conspiracy (Count VIII)

It is unclear what Plaintiff claims the Defendants, including the Attorney Defendants, "conspired" to do. However, any claim for conspiracy necessarily relies on the underlying torts alleged by Plaintiff. Thus, the pleading defects in Plaintiff's state law claims necessarily impact Plaintiff's conspiracy claims as well. For example, to the extent Plaintiff is claiming a "conspiracy" to commit "fraud," Plaintiff must meet the particularity requirements of Rule 9(b), which as set forth above, it has not done.[84] For all the reasons set forth above, as well as in the other Defendants' briefs, Plaintiff's claim for civil conspiracy against the Attorney Defendants must be dismissed along with its other claims.

### PRAYER

WHEREFORE, Defendants Hallett & Perrin, P.C. and Julie A. Smith  respectfully request that the Court grant their Motion to Dismiss Plaintiff's First Amended Complaint and dismiss all of Plaintiff's claims asserted therein, as well as for such other and further relief to which they may be justly entitled.

---

[83]Tex. Bus. & Comm. Code § 24.009.

[84]*See, e.g.*, *Chau v. Aviva Life & Annuity Co.*, Civil Action no. 3:09-CV-2305-B, 2011 WL 1990446, at *10 (N.D. Tex. May 20, 2011) (dismissing a civil conspiracy claim for failure to comply with Rule 9(b)).

Respectfully submitted,

*/s/ Edward P. Perrin, Jr.*
Edward P. Perrin, Jr.
State Bar No. 15796700
Jennifer R. Poe
State Bar No. 00794470
Elizabeth A. Fitch
State Bar No. 24075777
HALLETT & PERRIN, PC
1445 Ross Ave., Suite 2400
Dallas, TX 75202
Telephone: (214) 953-0053
Facsimile: (214) 922-4142
eperrin@hallettperrin.com
jpoe@hallettperrin.com
efitch@hallettperrin.com

**ATTORNEYS FOR DEFENDANTS
BAYMARK PARTNERS MANAGEMENT, LLC;
BAYMARK ACET HOLDCO, LLC;
BAYMARK ACET DIRECT INVEST, LLC;
BAYMARK PARTNERS; DAVID HOOK;
TONY LUDLOW; MATTHEW DENEGRE;
HALLETT & PERRIN, P.C., and
JULIE A. SMITH**


**DANIEL D. TOSTRUD**
Texas Bar No. 20146160
dtostrud@cobbmartinez.com
**MATTHEW E. LAST**
Texas Bar No. 24054910
mlast@cobbmartinez.com
**COBB MARTINEZ WOODWARD PLLC**
1700 Pacific Avenue, Suite 3100
Dallas, TX 75201
(214) 220-5200
(214) 220-5299 (Fax)

**ATTORNEYS FOR DEFENDANTS
HALLETT & PERRIN, P.C.
AND JULIE A. SMITH**

## <u>CERTIFICATE OF SERVICE</u>

On November 3, 2021, I electronically submitted the foregoing document with the Clerk of the  Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Edward P. Perrin, Jr.*

Edward P. Perrin, Jr.
