UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), Directly and Derivatively on Behalf of ACET GLOBAL, LLC and BAYMARK ACET HOLDCO, LLC

and

ACET GLOBAL, LLC,

*Plaintiffs*,

v.

BAYMARK PARTNERS, LP; BAYMARK PARTNERS MANAGEMENT, LLC; SUPER G CAPITAL, LLC; SG CREDIT PARTNERS, INC.; BAYMARK ACET HOLDCO, LLC; BAYMARK ACET DIRECT INVEST, LLC; BAYMARK PARTNERS; DAVID HOOK; TONY LUDLOW; MATT DENEGRE; WILLIAM SZETO; MARC COLE; STEVEN BELLAH; ZHEXIAN "JANE" LIN; DANA MARIE TOMERLIN; PADASAMAI VATTANA; PAULA KETTER; VANESSA TORRES; WINDSPEED TRADING, LLC; HALLETT & PERRIN, P.C.; and JULIE A. SMITH,

*Defendants*.

CIVIL CAUSE NO. 3:21-CV-01171-B

**DEFENDANT BAYMARK ACET HOLDCO, LLC'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
**AND BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES . . . . . . . . . . ii

SUMMARY OF ARGUMENT . . . . . . . . . . 1

APPLICABLE STANDARDS . . . . . . . . . . 2

I. Rule 12(b)(1) . . . . . . . . . . 2

II. Rule 23.1 . . . . . . . . . . 3

ARGUMENT AND AUTHORITIES . . . . . . . . . . 4

I. The FAC's Failure to Satisfy Rule 23.1's Pleading Requirements . . . . . . . . . . 4

II. D&T's Lack of Standing to Assert Claims on Behalf of Either Holdco or ACET Global . . . . . . . . . . 5

A. Holdco . . . . . . . . . . 5

B. ACET Global . . . . . . . . . . 6

1. D&T is not a member of ACET Global . . . . . . . . . . 6

2. Even if D&T were a member of ACET Global, it would still lack standing to assert any claims on behalf of ACET Global . . . . . . . . . . 8

II. D&T's Failure to Meet the Rule 23.1 Adequacy of Representation Standard . . . . 9

PRAYER . . . . . . . . . . 12

CERTIFICATE OF SERVICE . . . . . . . . . . 13

# INDEX OF AUTHORITIES

## Cases

*American Res. Techs., Inc. v. Oden*, Civil Action No. 3:13-CV-04419-B, 2015 WL 11120534 (N.D. Tex. Apr. 13, 2015) . . . . . 3, 5

*Domain Vault LLC v. McNair*, Civil Action No. 3:14-CV-1126-L, 2015 WL 5695519 (N.D. Tex. Sept. 28, 2015) . . . . . 2

*Elgohary v. Steakley*, Civil Action No. 4:17-CV-01534, 2017 WL 5514373 (S.D. Tex. Oct. 10, 2017), *report and recommendation adopted*, 2017 WL 5514708 (S.D. Tex. Nov. 16, 2017) . . . . . 10

*I Love Omni, LLC v. Omnitrition Int'l*, Civil Action No. 3:16-CV-2410-G, 2017 WL 1036662 (N.D. Tex. Mar. 17, 2017) . . . . . 2

*Kane v. National Union Fire Ins. Co.*, 535 F.3d 380 (5th Cir. 2008) (per curiam) . . . . . 9

*Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, Civil Action No. 3:16-CV-1217-B, 2018 WL 2323243 (N.D. Tex. Mar. 26, 2018), *report and recommendation adopted*, 2018 WL 2323471 (N.D. Tex. May 2, 2018) . . . . . 8

*Qatalys, Inc. v. Mountain Med. Techs., Inc.*, Civil Action No. 3:14-cv-1784-L, 2015 WL 1401220 (N.D. Tex. Mar. 27, 2015) . . . . . 5

*Roman Catholic Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406 (N.D. Tex. 2013) . . . . . 2, 3

*Smith v. Ayres*, 977 F.2d 946 (5 th Cir. 1992) . . . . . 9, 10

*Sunset Mgm't, LLC v. American Realty Investors, Inc.*, No. Civ. A. 3:04-CV-2162-K, 2005 WL 1164181 (N.D. Tex. May 16, 2005) . . . . . 11

## Statutes and Rules

Tex. Bus. Org. Code § 101.463(b) . . . . . 4

Tex. Bus. Org. Code § 101.463(c) . . . . . 4

Fed. R. Civ. P. 23.1(a) . . . . . 3, 8

Fed. R. Civ. P. 23.1(b) . . . . . 3

Defendant Baymark ACET Holdco, LLC ("Holdco") files this Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support pursuant to Rules 12(b)(1) and 23.1 (as well as Rules 12(b)(6), 9(b), and 8[1]) and in support thereof would respectfully show the Court as follows:

## SUMMARY OF ARGUMENT

One of the few changes Plaintiff D&T Partners, LLC ("D&T") made when it filed its First Amended Complaint ("FAC") was to attempt to add additional "Plaintiffs" (both derivative and direct). However, this Court lacks subject matter jurisdiction over such new "Plaintiffs'" claims. Not only does the FAC completely ignore all of Rule 23.1's pleading requirements for derivative actions, but it also fails to show that D&T actually has standing to assert "derivative" claims on behalf of either ACET Global, LLC or Baymark ACET Holdco, LLC. First and foremost, D&T does not own any interest in either Holdco or ACET Global, LLC ("ACET Global"). Moreover, because of ACET Global's bankruptcy, any "claims" belonging to ACET Global belong exclusively to the bankruptcy estate. Finally, with the filing of the FAC, D&T has made abundantly clear that, even if it did have technical standing to sue on behalf of Holdco and ACET Global, it is not an "adequate representative" for either entity. All claims the FAC purports to assert on behalf of Holdco and ACET Global must be dismissed for lack of jurisdiction.

---

[1]Holdco hereby adopts the arguments set forth in the Baymark Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support, which arguments are directed to the numerous ways in which Plaintiff's First Amended Complaint (the "FAC") fails to comply with Rules 12(b)(6), 9(b), and 8. Holdco further adopts the arguments set forth in the following briefs filed by the other Defendants to the extent the arguments raised in such briefs apply equally to Holdco: Defendants Hallett & Perrin, P.C. and Julie A. Smith's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support; Defendants SG Credit Partners, Inc.'s and Marc Cole's Memorandum of Law in Support of Motion to Dismiss Plaintiff's First Amended Complaint; Defendants Super G Capital, LLC's and Steven Bellah's Brief in Support of Their Motion to Dismiss Plaintiff's First Amended Complaint, Windspeed Employees' Brief in Support of Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6), and Windspeed and Szeto's Brief in Support of Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6).

## APPLICABLE STANDARDS

### I. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to challenge a court's subject matter jurisdiction over a plaintiff's claims. Standing is a required element of subject matter jurisdiction and is, therefore, properly challenged on a Rule 12(b)(1) motion to dismiss.[2] "The standing inquiry is a threshold jurisdictional issue and focuses on the ability of a particular party to bring claims before a federal court."[3]

A party moving for dismissal under Rule 12(b)(1) may bring either a "facial" or "factual" attack on the existence of subject matter jurisdiction.[4] In a "facial" attack, the moving party relies only on its motion, "and the court's determination of the motion is based on the sufficiency of the plaintiff's pleadings, which must be accepted as true."[5] In contrast, a "factual" attack "challenges the facts on which jurisdiction depends" and can raise matters outside of the pleadings."[6] With a "factual" attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."[7] Regardless of the type of attack,"[i]t is the party invoking jurisdiction, and

---

[2]*E.g.*, *Roman Catholic Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 415 (N.D. Tex. 2013).

[3]*Id.*; *see also I Love Omni, LLC v. Omnitrition Int'l*, Civil Action No. 3:16-CV-2410-G, 2017 WL 1036662, at *2 (N.D. Tex. Mar. 17, 2017) (recognizing that "standing is perhaps the most important of [the jurisdictional] doctrines") (alteration in original).

[4]*E.g.*, *Domain Vault LLC v. McNair*, Civil Action No. 3:14-CV-1126-L, 2015 WL 5695519, at *2 (N.D. Tex. Sept. 28, 2015).

[5]*Id.*

[6]*Id.*

[7]*Id.*; *see also I Love Omni*, 2017 WL 1036662, at *2 ("On a Rule 12(b)(1) motion, . . . the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.") (internal quotation marks omitted).

not the party moving for dismissal, who bears the burden to establish the court's subject matter jurisdiction."[8]

## II. Rule 23.1

Federal Rule of Civil Procedure 23.1 expressly addresses both the procedural and substantive requirements for derivative actions.[9] First, any complaint seeking to assert derivative claims must be verified.[10] A derivative complaint must also "allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law."[11] Moreover, the complaint must state "with particularity" the following: "(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."[12] Finally, a derivative action "may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association."[13]

---

[8] *Roman Catholic Diocese of Dallas*, 927 F. Supp. 2d at 415.

[9] *See American Res. Techs., Inc. v. Oden*, Civil Action No. 3:13-CV-04419-B, 2015 WL 11120534, at *2 (N.D. Tex. Apr. 13, 2015) (acknowledging the "heightened pleading requirements" contained in Rule 23.1).

[10] Fed. R. Civ. P. 23.1(b).

[11] Fed. R. Civ. P. 23.1(b)(1).

[12] Fed. R. Civ. P. 23.1(b)(3).

[13] Fed. R. Civ. P. 23.1(a).

## ARGUMENT AND AUTHORITIES

Initially, this action did not purport to assert any derivative claims—the only named plaintiff was D&T Partners, LLC.[14] However, in the First Amended Complaint, D&T purported to add "derivative" claims on behalf of two other entities: ACET Global and Holdco.[15] D&T's FAC does not comply with the requirements of Rule 23.1. Moreover, D&T lacks standing to assert any "derivative" claims on behalf of either ACET Global or Holdco.[16] Accordingly, all claims in the FAC on behalf of Holdco and ACET Global must be dismissed.

### I. The FAC's Failure to Satisfy Rule 23.1's Pleading Requirements

The FAC falls short of Rule 23.1's pleading requirements in every respect. It is not verified. It does not allege that D&T was a member of either ACET Global or Holdco at the time of any of the transactions complained of.[17] It does not state with particularity either any efforts D&T has taken to obtain the desired action or the reasons for not obtaining the action or not making the effort.[18] In

[14] *See generally* Plaintiff's Original Complaint [Docket No. 1].

[15] *See* FAC at 1-2; *id.* ¶¶ 33, 38.

[16] The FAC also purports to add ACET Global as a Plaintiff. *See* FAC ¶ 33 & n.28. For the same reason that D&T has no standing to sue derivatively on behalf of ACET Global, it also lacks the ability to act directly as ACET Global. *See infra* section II(B).

[17] D&T does not claim to have become a "member" in ACET Global until ***March 31, 2021***, long after the purported "fraudulent transfer" of ACET Global's assets in 2018. *See* FAC at 5 n.8.

[18] It appears that D&T is attempting to rely on section 101.463(c) of the Texas Business Organizations Code to justify its failure to take the steps required before a derivative action can be instituted. *See* FAC ¶ 393. However, D&T reads this section too broadly. First, the Texas statute cannot overcome a Federal Rule of Civil Procedure. Moreover, section 101.463(b) exempts only certain specific derivative actions from the statutory requirements for derivative actions brought on behalf of limited liability companies, namely derivative actions "against a governing person, member, or officer of the limited liability company." Tex. Bus. Org. Code § 101.463(b) ("In the event the claim or derivative proceeding is also made against a person who is not that governing person, member, or officer, this subsection *only applies to the claim or derivative proceeding against the governing person, member, or officer*.") (emphasis added). The FAC clearly asserts claims against persons who are not "governing persons, members, or officers." *See* FAC ¶¶ 36-37, 46-55. Accordingly, D&T cannot rely on section 101.463(c) to escape its obligation to take specific required actions, much less its obligation to plead required facts. *See* Tex. Bus. Org. Code § 101.463(c) (stating that it applies only "[i]f

short, the FAC simply (and improperly) ignores Rule 23.1's existence altogether. Any one of these failures requires dismissal of any purported "derivative" claims alleged in the FAC.

## II. D&T's Lack of Standing to Assert Claims on Behalf of Either Holdco or ACET Global[19]

### A. Holdco[20]

"A derivative action permits an individual shareholder [or member] to bring suit to enforce a *corporate* cause of action against officers, directors, and third parties."[21] Nowhere in the FAC does D&T even claim to be a member of Holdco. This is hardly surprising as D&T is *not* a member of Holdco. Holdco only has two members: Baymark ACET Direct Invest, LLC (75%) and Tomer Damti (25%).[22] Exhibit 20 to the FAC, the 2019 Limited Liability Company Return for Baymark ACET Holdco, confirms this fact in several places.[23]

---

Sections 101.452-101.460 do not apply because of Subsection (b) and if justice requires").

[19]Holdco is making a factual attack regarding D&T's standing to assert claims by or on behalf of Holdco and/or ACET Global. Accordingly, Holdco is submitting herewith its Appendix in Support of Its Motion to Dismiss, which Appendix is incorporated herein. References herein to the Exhibits contained in such Appendix shall be designated "App. at __, Exh. __ at __"

[20]The FAC characterizes Holdco as a "nominal defendant." FAC ¶ 38. However, the FAC also expressly asserts its "breach of fiduciary duty" claim against Holdco. *See* FAC at 151 (listing the Defendants against which Count V is directed). Moreover, the FAC also specifically mentions Holdco by name and characterizes it as one of the "Fiduciary Claim Defendants." *Id.* ¶ 371. One cannot reconcile such express allegations *against* Holdco with its purported status as only a "nominal" defendant.

[21]*American Res. Techs.*, 2015 WL 11120534, at *2 (emphasis in original, internal quotation marks omitted).

[22]*See* Limited Liability Company Agreement of Baymark ACET Holdco, LLC Dated as of July 20, 2017, App. at 004, Exh. 1 at 58; *see also id.* App. at 004, Exh. 1 at 1 (Recital C: "In conjunction with the closing of the ACET Purchase Agreement, Seller distributed Seller's Common Interests to Mr. Tomer Damti, the sole owner of Seller. As a result, this Agreement shows Mr. Tomer Damti as the holder of such Common Interests and all references to 'Seller Member' in this Agreement refer to Mr. Tomer Damti.").

[23]*See* FAC Exh. 20 at 2 of 25, 5 of 25, 14 of 25, 23 of 25. "If a document relied on in the complaint contradicts allegations in the complaint, the document, and not the allegations, control, and the court need not accept the allegations in the complaint as true." *Qatalys, Inc. v. Mountain Med. Techs., Inc.*, Civil Action No. 3:14-CV-1784-L, 2015 WL 1401220, at *5 (N.D. Tex. Mar. 27, 2015) (quoting *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013)).

Because D&T is not a member of Holdco, it has no right to sue derivatively on Holdco's behalf. With D&T's lack of standing to sue on behalf of Holdco, this Court lacks subject matter jurisdiction over any purported "derivative" claims asserted in the name of Holdco. Accordingly, any such "derivative" claims must be dismissed.

**B. ACET Global**

*1. D&T is not a member of ACET Global.*—Holdco is the sole member of ACET Global.[24] D&T claims that on March 31, 2021, it "exercise[d] its rights (pursuant to section 6(b)(vi) of the Security Agreement dated July 20, 2017) to effect the transfer of 59% of the Membership Interests of ACET Global, LLC."[25] However, the Security Agreement does not provide D&T with any right to ownership of the actual "membership interests" of ACET Global, LLC.[26] They remain owned 100% by Holdco.

The Security Agreement is between Holdco (as "Pledgor") and ACET Venture Partners LLC (as the "Secured Party").[27] It states that Holdco "hereby delivers, pledges, and grants a continuing

---

[24]*See* Company Agreement of ACET Global, LLC, App. at 067, Exh. 3 at 1 (identifying Holdco as the "sole Member" of ACET Global, LLC).

[25]FAC at 5 n.8. D&T also claims that it "terminate[d] the services of Hallett & Perrin as counsel [for ACET Global]." *Id.* In light of such claim, it is quite remarkable that almost *six weeks after* "firing" Hallett & Perrin, D&T's counsel jointly submitted a Status Report with Hallett & Perrin to the court in *Tomer Damti v. ACET Global, LLC*; Cause No. DC-18-04365. Status Report (incorrectly dated March 21, 2021, but file-stamped May 21, 2021), App. at 064. In that Status Report the parties acknowledged that they "have informed *their clients* . . . of the new trial date" and that "[t]he *parties' counsel* will confer as to any dates provided and work with the mediator to schedule mediation." *Id.* (emphasis added).

[26]The Security Agreement is attached to the FAC as Exhibit 11.

[27]FAC Exh. 11, Security Agreement at 1. D&T claims to be the "successor in interest to ACET Venture Partners, LLC." FAC ¶ 32 Contrary to the allegations in the FAC, the Security Agreement did not give D&T any security interest in the assets of ACET Global. *Compare* FAC ¶ 4 *with* FAC Exh. 11, Security Agreement § 2 (expressly defining the "Collateral" being provided by Holdco, *not* ACET Global) *and* FAC Exh. 12, Secured Promissory Note at 1 ("The obligations under this Note are secured by the collateral described in the Security Agreement executed as of the date hereof by Holdco and Holder.").

security interest to Secured Party in all of Pledgor's right, title and interest, whether now existing or hereafter arising, in and to the following (collectively the 'Collateral'): (a) the Pledged Interests . . . ."[28] In turn, the "Pledged Interests" are defined in the Security Agreement as follows:

> (i) "Pledged Interests" means all rights to receive dividends, distributions, capital accounts, cash flow, profits, surplus, liquidation distributions or proceeds, sums due or owing as distributions of cash or property, whether or not such distributions are in the nature of profits, reimbursements, repayments, return of capital, return on capital, or fees in the Membership Interest; ***excluding, however,*** *any management, consent, approval, disapproval, or voting rights,* ***or the equity interest in the Membership Interest*** . . . .[29]

Thus, by its clear and express terms, the Security Agreement did not give the "Secured Party" any security interest in any equity or membership interest in ACET Global, nor did it give the "Secured Party" any right to manage or control ACET Global.

The parties knew how to provide the broader security interest that D&T now wants to claim was created by the Security Agreement. In an earlier draft of the Security Agreement, the "Pledged Interests" were defined more broadly as 59% "OF OWNERSHIP OF [ACET ACQUISITION, LLC]."[30] Similarly, in the Pledge Agreement between Holdco and Super G Capital, LLC (the "Super G Pledge Agreement"), the "Pledged Interests" securing, in part, the debt owed by ACET Global to Super G Capital, LLC were defined broadly as follows:

---

[28]FAC Exh. 11, Security Agreement § 2. The remaining items defined as "Collateral" are not relevant to the analysis of whether D&T actually owns any ACET Global "membership interests."

[29]FAC Exh. 11, Security Agreement § 2(i) (emphasis added). The Security Agreement defines "Membership Interest" as meaning "fifty-nine percent (59%) of the membership interest in [ACET Global, LLC]." *Id.* § 2(ii).

[30]Draft Security Agreement dated June 30, 2017, App. at 100, Exh. 4 at Schedule I.

> ***All of Pledgor's [Holdco's] right, title, and interest*** in and to the following membership interests (the 'Pledged Interests'), whether directly or beneficially owned, whether now owned or hereafter acquired, in ACET GLOBAL, LLC, a Texas limited liability company, owned as follows: Baymark ACET Holdco, LLC 100%.[31]

D&T could not seize and does not own any percentage of ACET Global, and its overly broad interpretation of the Security Agreement is simply not supported by the language of that Agreement.[32] Without any ownership interest in ACET Global itself, D&T has no right to sue "derivatively" on ACET Global's behalf.[33] Similarly, D&T has no right to make ACET Global a direct Plaintiff in this action.

Because D&T lacks standing to sue either derivatively or directly on behalf of ACET Global, this Court lacks subject matter jurisdiction over any claims asserted in the name of ACET Global, and any such claims must be dismissed.

2. *Even if D&T were a member of ACET Global, it would still lack standing to assert any claims on behalf of ACET Global.*—As expressly noted in the FAC, ACET Global filed for bankruptcy in 2019.[34] As a result, any claims that ACET Global had against anyone became property

---

[31]Super G Pledge Agreement dated July 20, 2017, App. at 139, Exh. 5 at Schedule I (emphasis added).

[32]"Courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract. To the extent possible, the court should harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, Civil Action No. 3:16-CV-1217-B, 2018 WL 2323243, at *3 (N.D. Tex. Mar. 26, 2018) (internal alteration, citations, and quotation marks omitted), *report and recommendation adopted*, 2018 WL 2323471 (N.D. Tex. May 2, 2018).

[33]*See* Fed. R. Civ. P. 23.1(a) ("This rule applies when one or more shareholders or *members* of a corporation or unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce.") (emphasis added).

[34]*See* FAC ¶ 243; FAC Exh. 19 (ACET Global's bankruptcy filing).

of the bankruptcy estate.[35] The Trustee of the estate "is the *only party with standing* to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed."[36] This is the case even if the claims were not scheduled as assets of the estate.[37]

The FAC is clear that any "claims" belonging to ACET Global that it purports to bring in this case would necessarily have existed when ACET Global filed for bankruptcy. Thus, those "claims" belong to the bankruptcy estate, and ACET Global (whether directly or derivatively) has no ability to bring such claims in this case.

## III. D&T's Failure to Meet the Rule 23.1 Adequacy of Representation Standard

Even if D&T could show that it somehow technically had legal standing to sue on behalf of ACET Global, its claims would still be improper because D&T cannot meet Rule 23.1's adequacy of representation standard. A plaintiff in a derivative action on behalf of an entity owes that entity "his undivided loyalty" and "must not have ulterior motives and must not be pursuing an external personal agenda."[38] D&T entirely fails this test.

The Court may consider various factors in evaluating D&T's ability to be an "adequate representative" of ACET Global, including "other litigation pending between [D&T] and

---

[35] *See, e.g., Kane v. National Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (per curiam) ("Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition.").

[36] *Id.* (emphasis added).

[37] *Id.* No claims belonging to ACET Global were listed as assets of the estate in ACET Global's bankruptcy. *See generally* FAC Exh. 19.

[38] *Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir. 1992).

[ACET Global], and whether the derivative action may be leveraged in the other suit."[39] The Court may also consider D&T's "vindictiveness toward the defendant[s]."[40] Both of these factors weigh against D&T's ability to be an adequate representative for ACET Global.

First, D&T and its sole owner Tomer Damti are currently involved in other litigation *against* ACET Global. There is the "ongoing state court proceeding" that Plaintiff references in the FAC.[41] In that case, D&T is suing ACET Global (and Holdco).[42] There is also what remains of an action brought by Tomer Damti against ACET Global in state court.[43] After Damti nonsuited his claims, ACET Global asked the court to find that ACET Global was the "prevailing party" in the action and, therefore, entitled to an award of attorneys' fees.[44] Following the entry of the Order finding ACET Global to be the prevailing party, Mr. Damti's counsel submitted a letter to the court in which he "expresse[d] the intent" to refile Mr. Damti's claims against ACET Global.[45] Mr. Damti is also pursuing an interlocutory appeal against ACET Global related to the denial of his Motion to Dismiss Pursuant to the Texas Anti-SLAPP Statute.[46] D&T (and its counsel) should not be allowed to

[39] *Elgohary v. Steakley*, Civil Action No. 4:17-CV-01534, 2017 WL 5514373, at *6 (S.D. Tex. Oct. 10, 2017), *report and recommendation adopted*, 2017 WL 5514708 (S.D. Tex. Nov. 16, 2017).

[40] *Smith*, 977 F.2d at 949.

[41] FAC at 3 n.3.

[42] Plaintiff's Second Amended Complaint, App. at 144-159. Notably, D&T asserts claims for "fraudulent inducement" and "breach of fiduciary duty" against ACET Global (and Holdco) in this ongoing case. *See id.*, App. at 151, 152-53, Exh. 6 ¶¶ 34-35, 38-41.

[43] *Tomer Damti v. ACET Global, LLC*, Cause No. DC-18-04365 in the 192nd District Court, Dallas County, Texas.

[44] *See* Order Granting Defendant's Motion to Declare ACET Global, LLC the Prevailing Party (signed September 1, 2021), App. at 160.

[45] Letter from Jason Freeman to Judge Williams dated September 1, 2021, App. at 162, Exh. 7 at 2.

[46] Notice of Appeal, App. at 164.

"represent" ACET Global in this case while simultaneously proceeding against ACET Global in other cases.[47]

Second, on its face, the FAC demonstrates an improper level of "vindictiveness" against the Defendants. It is filled with wholly unnecessary invective, including constantly referring to supposed "perjury."[48] It is also filled with ridiculous speculation about the supposed "motives" of Holdco's and ACET Global's counsel, who are also named as Defendants in this case.[49]

In particular, there really can be no other reason than a "vindictive" motive for Plaintiff to resurrect in the FAC allegations regarding the supposedly "knowingly false" representations of Hallett & Perrin attorney Ed Perrin to Plaintiff's counsel in the state court case.[50] Plaintiff and its counsel made these same baseless accusations to Judge Parker in the state court case, and Judge Parker expressly rejected them:

> THE COURT: . . . And so the reason I'm bringing that up is because when you go through the effort to suggest that there's malfeasance on the part of counsel with regard to their representations to the Court and then I go and look at the pleading and it turns out that the person who actually is overstating what the record shows is you, that concerns me.[51]

---

[47] *Sunset Mgm't, LLC v. American Realty Investors, Inc.*, No. Civ. A. 3:04-CV-2162-K, 2005 WL 1164181, at *1 (N.D. Tex. May 16, 2005) (rejecting a derivative suit when the plaintiff had "brought several other lawsuits that are still pending against the Defendants" and had a "personal agenda" that it was pursuing).

[48] *See, e.g.*, FAC ¶¶ 3, 16, 105, 239.

[49] *See, e.g.*, *id.* ¶ 20.

[50] *See* FAC ¶¶ 124-27.

[51] Transcript of Hearing on Non-Party Hallett & Perrin, PC's Motion for Protective Order and to Quash Plaintiff's Notice of Deposition to Edward P. Perrin, Jr., App. at 207, Exh. 10 at 43:8-14; *see also id.*, App. at 208, Exh. 10 at 44:21-23 (The Court: "You know that – you know that on this pleading, you could not get a judgment against Windspeed Trading, right?"); *id.*, App. at 209, Exh. 10 at 45:20-23 (The Court: "So when we're now here and I can't get you to just say to me flat out, Windspeed is not a defendant in this case as of this pleading, that – you can imagine the consternation that that causes me.").

The entire FAC exhibits vindictiveness toward the Defendants, and in particular, the Attorney Defendants. For this reason as well, the Court should reject D&T's claim to "derivative" status.

**PRAYER**

WHEREFORE, Defendant Baymark ACET Holdco, LLC respectfully requests that the Court grant its Motion to Dismiss Plaintiff's First Amended Complaint and dismiss all of Plaintiff's claims asserted therein, as well as for such other and further relief to which it may be justly entitled.

Respectfully submitted,

*/s/ Edward P. Perrin, Jr.*

Edward P. Perrin, Jr.
State Bar No. 15796700
Jennifer R. Poe
State Bar No. 00794470
HALLETT & PERRIN, PC
1445 Ross Ave., Suite 2400
Dallas, TX 75202
Telephone: (214) 953-0053
Facsimile: (214) 922-4142
eperrin@hallettperrin.com
jpoe@hallettperrin.com

**ATTORNEYS FOR DEFENDANTS BAYMARK PARTNERS MANAGEMENT, LLC; BAYMARK ACET HOLDCO, LLC; BAYMARK ACET DIRECT INVEST, LLC; BAYMARK PARTNERS; DAVID HOOK; TONY LUDLOW; AND MATTHEW DENEGRE**

**CERTIFICATE OF SERVICE**

On November 3, 2021, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Edward P. Perrin, Jr.*
Edward P. Perrin, Jr.