**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| D&T PARTNERS LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 3:21-CV-01171-B |
| | § | |
| BAYMARK PARTNERS LP, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS SUPER G CAPITAL LLC'S AND STEVEN BELLAH'S**
**BRIEF IN SUPPORT OF THEIR**
<u>**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

Respectfully submitted,

DUNN SHEEHAN LLP

By: */s/ John David Blakley*
    John David Blakley
    State Bar No. 24069388
    jdblakley@dunnsheehan.com
    William D. Dunn
    State Bar No. 24002023
    ddunn@dunnsheehan.com

    3400 Carlisle Street, Suite 200
    Dallas, Texas 75204
    Phone: 214-866-0077
    Fax: 214-866-0070

**ATTORNEYS FOR SUPER G CAPITAL**
**LLC and STEVEN BELLAH**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on November 3, 2021, this brief was filed with the Court *via* its Electronic Case Filing (ECF) system and duly served in accordance with FED.R.CIV.P. 5, by electronic mail, on counsel for all parties of record, including Plaintiff's counsel Jason B. Freeman of FREEMAN LAW, PLLC, at jason@freemanlaw.com.

    */s/      John David Blakley*
    John David Blakley

## TABLE OF CONTENTS

CERTIFICATE OF SERVICE……………………………………….…..………………i

TABLE OF CONTENTS…………………………………………………….…..…… ii

TABLE OF AUTHORITIES…………………………………...…………….……iii

I.  INTRODUCTION……………………………………………………………..1

   A.  Summary of the Motion…………………………………………...……… 1

   B.  Procedural Background…………………………………………………... 2

II.  ARGUMENT & AUTHORITIES …………………………….…………... 3

   A. Legal Standards…………………………………………………….... 3

     1.  Rules 8(a) and 12(b)(6)……………………………………………... 3

     2.  Rule 9(b)………………………………………………………………4

   B.  Plaintiff's Attempt to Assert Claims on Behalf of ACET Global and Holdco….6

   C.  Plaintiff's RICO Claims Against Super G and Bellah (Counts I-III)……………7

     1.  Predicate Acts, Pattern of Racketeering, and Enterprise….……………....7

     2.  RICO "Persons"……………………………………………………..8

     3.  Reliance and Proximate Causation…………………………………….11

     4.  Conspiracy..………………………………………………………….12

   D.  Plaintiff's State Law Claims Against Super G and Bellah (Counts IV, VI-IX)………………………………………………………………...13

     1.  Count IV: Common Law Fraud (Against Super G Only)…………………..13

     2.  Count VI: Aiding and Abetting Breach of Fiduciary Duties………………..19

     3.  Count VII: Texas Uniform Fraudulent Transfer Act…………………… 22

     4.  Count VIII: Civil Conspiracy…………………………………………24

     5.  Count IX: Respondeat Superior and/or Agency Liability…………………..25

III.  CONCLUSION…………………………………………………………25

# TABLE OF AUTHORITIES

## Cases

*Ahmed v. Mbogo*, No. 05-17-00457-CV, 2018 WL 3616887 (Tex.App.—Dallas July 30, 2018, pet. denied)……………………………………………………………………………18

*Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742 (S.D.Tex. Jan. 31, 2008)……………..11

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas Inc.*, 590 S.W.3d 471 (Tex.2019)……………17

*Bouaziz v. AZT Corp.*, No. 3:10-CV-053-B, 2010 WL 2730594 (N.D.Tex. July 9, 2010)…….15

*Brodsky v. Match.com LLP*, No. 3-09-CV-2066-F-BD, 2010 WL 3895513 (N.D.Tex.2010)….17

*Bunch v. Mollabashy*, No. 3:13-CV-1075-G-BH, 2016 WL 7638143 (N.D.Tex. Dec. 12, 2016)………………………………………………………………………………...19

*Burleson State Bank v. Plunkett*, 27 S.W.3d 605 (Tex.App.—Waco 2000, pet. denied)………...........................................................................................15

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614 (1988)…………………………13

*Coastal Corp. v. Atlantic Richfield Co.*, 852 S.W.2d 714 (Tex.App.—Corpus Christi-Edinburg 1993, no writ)……………………………………………………………………………..18

*Crescendo Invs. v. Brice*, 61 S.W.3d 465 (Tex.App.—San Antonio 2001, pet. denied)……….25

*Crowe v. Henry*, 43 F.3d 198 (5th Cir.1995)………………………………………………8, 9

*Delta Truck & Tractor Inv. v. J.I. Case Co.*, 855 F.2d 241 (5th Cir.1998), *cert. denied*, 489 U.S. 1079 (1989)………………………………………………………………………...8, 9

*Dorsey v. Portfolio Equities Inc.*, 540 F.3d 333 (5th Cir.2008)…………………………………5

*Douglas v. Wells Fargo Bank N.A.*, 4:19-CV-00737-ALM-CAN, 2020 WL 6588598 (E.D.Tex. Oct. 21, 2020)……………………………………………………………………16, 19

*Drake v. Costume Armour Inc.*, 736 Fed.Appx. 505 (5th Cir.2018)……………………………13

*Ebert v. Gustin*, No. 4:14-CV-00225-O, 2016 WL11663164 (N.D.Tex. May 12, 2016)………20

*Everett Fin. Inc. v. Primary Residential Mortg. Inc.*, No. 3:14-CV-1028-D, 2016 WL 7378937 (N.D.Tex. Dec. 20, 2016)…………………………………………………………………24

*Express Working Capital LLC v. One Word Cuisine Grp. LLC*, No. 3:15-CV-3792-S, 2018 WL 4214349 (N.D.Tex. Aug. 16, 2018)……………………………………………………..8, 9

*Florida Dept. of Ins. v. Chase Bank of Tex. N.A.*, No. CIV-A-399CV1254-G, 2001 WL 124951 (N.D.Tex. Feb. 9, 2001)……………………………………………………………………17, 19

*Garcia v. Lion Mexico Consol. LP*, No. 5:15-CV-1116-DAE, 2018 WL 6427350 (W.D.Tex. Sept. 14, 2018)……………………………………………………………………………12

*Garza v. DHI Mortg. Co.*, No. 4:19-CV-00780-SDJ-CAN, 2020 WL 7700620 (E.D.Tex. Nov. 12, 2020)…………………………………………………………………………..5, 14, 16, 19

*H.C. Oil & Gas Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 3:96-CV-2923-D, 2005 WL 265166 (N.D.Tex. Feb. 2, 2005)……………………………………………16, 17

*Immobiliere Jeuness Establissement v. Amegy Bank N.A.*, 525 S.W.3d 875 (Tex.App.—Houston [14th Dist.] 2017, no pet.)……………………………………………………………...20

*Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323 (Tex.2011)…………………14, 15

*Jackson v. Speer*, 974 F.2d 676 (5th Cir.1992)…………………………………………..17

*Juhl v. Airington*, 936 S.W.2d 640 (Tex.1996)…………………………………………20

*Lee & Lee Int'l Inc. v. Lee*, 261 F.Supp.2d 665 (N.D.Tex.2003)………………………15

*Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015 (5th Cir.1996)……………………..16

*Moore v. Carrington Mortg. Servs. LLC*, No. 3:17-CV-3132-G-BN, 2018 WL 3853711 (N.D.Tex. July 17, 2018)……………………………………………………4, 5, 6, 14

*Muhammad v. Ocwen Loan Serv. Inc.*, No. 3:15-CV-3805-M-BK, 2016 WL 2857509 (N.D.Tex. Apr. 14, 2016)…………………………………………………………………...5, 16

*Mullins v. TestAmerica Inc.*, 564 F.3d 386 (5th Cir.2009)…………………………...24

*Paul v. Aviva Life & Annuity Co.*, No. 3:09-CV-1490-B, 2010 WL 5105925 (N.D.Tex. Dec. 14, 2010)………………………………………………………………………...13

*Puente v. CitiMortg., Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997 (N.D.Tex. Aug. 29, 2012)………………………………………………………………………………4

*Rabbani v. Timberlake*, No. 01-95-01126-CV, 1996 WL 434212 (Tex.App.—Houston [1st Dist.] Aug. 1, 1996, no writ)………………………………………………15, 16

*Ray v. Recovery Healthcare Corp.*, No. 3:19-CV-3055-G, 2021 WL 1102081 (N.D.Tex. Mar. 22, 2021)…………………………………………………………………...8

*Ream v. City of Heath*, No. 3:14-CV-4338-B, 2015 WL 4393307 (N.D.Tex. July 16, 2015)…....3

*Renate Nixdor GmbH & Co. KG v. TRA Midland Props. LLC*, No. 05-17-00577-CV, 2019 WL 92038 (Tex.App.—Dallas Jan. 3, 2019, pet. denied)…………………………………………..19

*Richards v. JRK Prop. Holdings*, No. 3:09-CV-1561, 2010 WL 11619394 (N.D.Tex. Jan. 5, 2010)……………………………………………………………………………………………3, 4

*Roehrs v. Conesys Inc.*, No. 3:05-CV-829-M, 2005 WL 3454015 (N.D.Tex. Dec. 14, 2005)….24

*S.E.C. v. Cook*, No. 3:00-CV-272-R, 2001 WL 256172 (N.D.Tex. Mar. 8, 2001)……………..23

*Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396 (Tex.2014)……………………17

*Sharif v. Wellness Int'l Network Ltd.*, No. 3:05-CV-01367-B, 2007 WL 971126 (N.D.Tex. May 9, 2007)………………………………………………………………………………………...12

*Smith v. HSBC Bank*, No. 3:15-CV-00094-P, 2015 WL 12911463 (N.D.Tex. Aug. 6, 2015)….24

*Smith v. KNC Optical*, 296 S.W.3d 807 (Tex.App.—Dallas 2009, no pet.)……………………17

*Smith v. Wellness Int'l Network Ltd.*, No. 3:05-CV-01367-B, 2007 WL 971126, at *9 (N.D.Tex. May 9, 2007)………………………………………………………………………………………...12

*Snow Ingredients Inc. v. SnoWizard Inc.*, 833 F.3d 512 (5th Cir.2016)…………………9, 10, 11

*Sourcing Mgmt. Inc. v. Simclar Inc.*, 118 F.Supp.3d 899 (N.D.Tex. 2015)……………………24

*Stewart v. GMAC Mortg. LLC*, No. 2:10-CV-00149, 2011 WL 1296887 (S.D.Miss. Mar. 31, 2011)………………………………………………………………………………………...10

*Stiehl v. Heritage Numismatic Auctions Inc.*, No. 3:17-CV-02086-M, 2019 WL 12095440 (N.D.Tex. Jan. 23, 2019)……………………………………………………………8, 9, 10

*Super Future Equities Inc. v. Wells Fargo Bank Minn. N.A.*, No. 3:06-CV-0271-B, 2007 WL 9717366 (N.D.Tex. Aug. 2, 2007)……………………………………………………...8, 11

*Telephone Equip. Network Inc. v. TA/Westchase Place Ltd.*, 80 S.W.3d 601 (Tex.App.—Houston [1st Dist.] 2002, no pet.)……………………………………………………...23

*Thompson v. Origin Tech. in Bus. Inc.*, No. 3:99-CV-2077-L, 2001 WL 1018748 (N.D.Tex. Aug. 20, 2001)………………………………………………………………………………19

*Thrower v. Brownlee*, 12 S.W.2d 184 (Tex.Comm.App.1929)……………………………..18

*Tow v. Amegy Bank N.A.*, 498 B.R. 757 (S.D.Tex. 2013)………………………………………23

*Tri v. J.T.T.*, 162 S.W.3d 552 (Tex.2005)………………………………………………………25

*Triplex Comms. Inc. v. Riley*, 900 S.W.2d 716 (Tex.1995)……………………………………25

*Triumph Aerostructures LLC v. Lockheed Martin Corp.*, No. 3:10-CV-2030, 2011 WL 1336399 (N.D.Tex. Apr. 6, 2011)……………………………………………………………………....4

*U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir.2009)…………………………….5

*U.S. ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-0371, 2014 WL 3353247 (N.D.Tex. July 9, 2014)……………………………………………………………………………………...13

*U.S. v. Elliot*, 571 F.2d 880 (5th Cir.1978)…………………………………………………..13

*U.S. v. Phipps*, 595 F.3d 243 (5th Cir.2010)…………………………………………………10

*U.S. v. Rosenthal*, 805 F.3d 523 (5th Cir.2015)………………………………………………8

*UST-Mamiya Inc. v. True Sports Inc.*, 441 F.Supp.3d 382 (N.D.Tex. 2020)………………..3, 14

*Varela v. Gonzales*, No. 3:13-CV-1278-B, 2014 WL 1284985 (N.D.Tex. Mar. 31, 2014)…7, 11

*Vernon v. City of Dallas*, No. 3:08-CV-1068-B, 2009 WL 2486033 (N.D.Tex. Aug. 13, 2009)...3

*Walker v. Beaumont Ind. Sch. Dist.*, 938 F.3d 724 (5th Cir.2019)……………………………4, 8

*Washington v. Bank of Am. NA*, No. 4:15-CV-001, 2015 WL 2013687 (N.D.Tex. 2015)………………………………………………………………………………………....25

*Waste Mgmt. Inc. v. AIG Specialty Ins. Co.*, No. H-16-3676, 2017 WL 3431816 (S.D.Tex. Aug. 9, 2017)…………………………………………………………………………………...5, 15

*Wilson v. Deutsche Bank Trust Co. Am.*, No. 3:18-CV-0854-D, 2019 WL 175078 (N.D.Tex. Jan. 10, 2019)………………………………………………………………………………………...4

*Yokogawa Corp. of Am. v. Skype Int'l Holdings Inc.*, 159 S.W.3d 266 (Tex.App.—Dallas 2005, no pet.)………………………………………………………………………………………23

*Zucker v. Farish*, No. 3:18-CV-01790-K, 2018 WL 6570867 (N.D.Tex. Dec. 12, 2018)…4, 5, 9

**Statutes and Rules**

Fed.R.Civ.P. 5…………………………………………………………………………………..i

Fed.R.Civ.P. 8(a)……………………………………………………………………………..3, 5

Fed.R.Civ.P. 9(b)…………………………………………...2, 4, 5, 7, 10, 14, 15, 16, 17, 20, 24, 25

Fed.R.Civ.P. 12(b)(6)………………………………………...…………………...3, 4, 5, 6, 14

Fed.R.Civ.P. 23.1…………………………………………………………………………………6

18 U.S.C. §1962……………………………………………..…………………………7, 12

28 U.S.C. §1404…………………………………………..…………………………………..6

Tex.Bus. & Com. Code §9.601……………………………..………………………………23

Tex.Bus. & Com. Code §24.001……………………………..………………………………22

Tex.Bus. & Com. Code §24.002………………………………………………………………23

Tex.Bus. & Com. Code §24.005………………………………………………………………23

Tex.Bus. & Com. Code §24.009………………………………………………………………23

Tex.Bus. & Com. Code §101.452………………………..………………………………...6

Tex.Bus. & Com. Code §101.453………………………..………………………………...6

Defendants Super G Capital LLC ("Super G") and Steven Bellah ("Bellah") file this brief in support of their *Motion to Dismiss Plaintiff's First Amended Complaint*. Plaintiff D&T Partners, LLC's ("Plaintiff") *First Amended Complaint* (the "Complaint" at Doc. 36) fails to state any claim upon which relief may be granted and, accordingly, should be dismissed.

## I.     INTRODUCTION

### A.     Summary of the Motion.

Plaintiff's shotgun Complaint—weighing in at 157 pages and 393 paragraphs—is comprised mostly of allegations not attributed to either Super G or Bellah, *e.g.*, that other Defendants committed or solicited perjury in the overlapping state court case; "false pretenses" on which Plaintiff purportedly relied in agreeing to subordinate its security interest in ACET Global LLC ("ACET Global") to that of Super G; the "draining" of ACET Global's assets *via* "Manager Fees"; Tomer Damti's employment and termination; ACET Global's bookkeeping and accounts; overlap in counsel retained by certain other Defendants for certain transactions; ACET Global's bankruptcy filings; purported "backdating" of documents by other Defendants; and on and on. Even the sporadic allegations regarding Super G and Bellah constitute little more than extraneous noise, *e.g.*, assertions about the size of Super G ("a small, unorthodox outfit"); its purportedly "rudimentary record-keeping system"; and its internal processes for approving investments.

After treading through all these "rambling irrelevancies" like a modern-day Rocinante, one finds the crux of Plaintiff's complaint against Super G and its employee Bellah: Super G's lawful exercise (pursuant to Article 9 of the TEXAS BUSINESS AND COMMERCE CODE) of its contractual right to foreclose on ACET Global's collateral, to which Super G held a valid security interest senior to that of Plaintiff's—seniority that Plaintiff contemporaneously "acknowledge[d]" and "consent[ed] to" in the Subordination Agreement attached to the Complaint. While Plaintiff baldly deems the contractual foreclosure sale a "theft," there are no allegations that it was not in

accordance with Super G's contractual rights (to which Plaintiff agreed) or law. Plaintiff attempts to make hay out of Super G's warrant options in Windspeed Trading LLC ("Windspeed"), a spot on its board, and rights regarding transfer of its ownership—none of which Plaintiff shows to be more than Super G protecting its investment in the company.

For all Plaintiff's bluster, none of its allegations amount to tortious (much less criminal) conduct by either Super G or Bellah—which is why Plaintiff cannot state any plausible claim for relief against them. As a gating matter, Plaintiff D&T Partners LLC failed to comply with multiple prerequisites to asserting claims on behalf of either ACET Global or Baymark ACET Holdco LLC ("Holdco"). Even assuming, *arguendo*, Plaintiff possessed such standing, Super G and ACET Global have agreed that any dispute between them shall be tried exclusively in California— accordingly, to the extent this Court denies dismissal of Plaintiff's claims on ACET Global's behalf, Super G conditionally moves for a transfer to the parties' agreed-upon venue. Counts I-III should be dismissed as Plaintiff fails to adequately state multiple essential elements of its Racketeer Influenced and Corrupt Organizations Act ("RICO") claims—much less meet Rule 9(b)'s heightened standard. The Court should decline jurisdiction over the remaining state-law claims; regardless, Counts IV and VI-IX should be dismissed as Plaintiff, again, fails to plausibly plead essential elements, falls far short of Rule 9(b)'s standard where applicable, and cannot succeed on Counts VI and VIII-IX given its failure to adequately plead the underlying claims.

**B.    Procedural Background.**

On July 12, 2019, Plaintiff filed suit in the 116th District Court, Dallas County, Texas, numbered DC-19-09828 and styled *D&T Partners LLC v. ACET Global LLC*, *et al*. (the "Overlapping State Case"), against many of the same Defendants[1] named in this action. The

---

[1] Specifically, Holdco, Baymark ACET Direct Invest LLC, Baymark Management LLC, Baymark Partners, David Hook, Tony Ludlow, and ACET Global. Plaintiff later added Windspeed as a defendant on October 2, 2019. Neither

Overlapping State Case—still pending and set for trial on February 14, 2022—arises from the same set of transactions and facts as this action, and asserts every cause of action that is (re)asserted herein—except the sole federal (RICO) claims. This action—filed almost two years later, on May 21, 2021—appears to be a gambit by Plaintiff to get a "do-over" of the Overlapping State Case.

## II.     ARGUMENT & AUTHORITIES

### A.    Legal Standards.

#### 1.    Rules 8(a) and 12(b)(6).

Under the Rules, "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Richards v. JRK Prop. Holdings*, No. 3:09-CV-1561, 2010 WL 11619394, at *1 (N.D.Tex. Jan. 5, 2010) (Boyle, J.). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *UST-Mamiya Inc. v. True Sports Inc.*, 441 F.Supp.3d 382, 387 (N.D.Tex. 2020) (Boyle, J.). "Determining whether a complaint states a plausible claim for relief is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ream v. City of Heath*, No. 3:14-CV-4338-B, 2015 WL 4393307, at *2 (N.D.Tex. July 16, 2015) (Boyle, J.). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Vernon v. City of Dallas*, No. 3:08-CV-1068-B, 2009 WL 2486033, at *1 (N.D.Tex. Aug. 13, 2009) (Boyle, J.). "Where the facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has stopped

---

Super G nor Bellah is a party to the Overlapping State Case, but not for lack of Plaintiff trying—the state trial court denied Plaintiff's request for a continuance to belatedly add Super G and others.

short of showing that the pleader is entitled to relief." *Triumph Aerostructures LLC v. Lockheed Martin Corp.*, No. 3:10-CV-2030, 2011 WL 1336399, at *1 (N.D.Tex. Apr. 6, 2011) (Lynn, J.).

"[A] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Richards*, 2010 WL 11619394, at *1. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Puente v. CitiMortg., Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *2 (N.D.Tex. Aug. 29, 2012) (Godbey, J.). "The court will not strain to find inferences favorable to the plaintiffs and the court will not accept conclusory allegations, unwarranted deduction, or legal conclusions." *Zucker v. Farish*, No. 3:18-CV-01790-K, 2018 WL 6570867, at *6 (N.D.Tex. Dec. 12, 2018) (Kinkeade, J.).

"As opposed to the 'short and plain statement' requirement contemplated by Rule 8, shotgun pleadings contain several counts within a complaint with each count incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions." *Moore v. Carrington Mortg. Servs. LLC*, No. 3:17-CV-3132-G-BN, 2018 WL 3853711, at *3 (N.D.Tex. July 17, 2018) (Horan, J.). "Such pleadings are subject to dismissal under Rule 12(b)(6)." *Id.*

Claims are "deficient" if they "ascribe singular acts" to multiple defendants, thereby failing "to plead a plausible claim against either defendant in particular," or are "otherwise too vague or internally contradictory to provide notice." *Wilson v. Deutsche Bank Trust Co. Am.*, No. 3:18-CV-0854-D, 2019 WL 175078, at *7 (N.D.Tex. Jan. 10, 2019) (Fitzwater, J.). With respect to RICO claims in particular, a plaintiff "must plead the specified facts as to each defendant. It cannot lump together the defendants." *Walker v. Beaumont Ind. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir.2019).

2.      Rule 9(b).

Rule 9(b) provides in relevant part: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED.R.CIV.P. 9(b). "A dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim." *Waste Mgmt. Inc. v. AIG Specialty Ins. Co.*, No. H-16-3676, 2017 WL 3431816, at *4 n.7 (S.D.Tex. Aug. 9, 2017). "The Fifth Circuit strictly construes Rule 9(b) and requires the plaintiff pleading fraud in federal court 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Garza v. DHI Mortg. Co.*, No. 4:19-CV-00780-SDJ-CAN, 2020 WL 7700620, at *5 (E.D.Tex. Nov. 12, 2020); *see also U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir.2009) (Fifth Circuit "appl[ies] Rule 9(b) to fraud complaints with 'bite' and 'without apology'"). In the Fifth Circuit, pleading fraud with particularity also requires identifying "what [the speaker] obtained thereby." *Muhammad v. Ocwen Loan Serv. Inc.*, No. 3:15-CV-3805-M-BK, 2016 WL 2857509, at *4 (N.D.Tex. Apr. 14, 2016) (Fitzwater, J.). In other words, "Rule 9(b) requires the complaint to set forth 'the who, what, when, where, and how' of the events at issue.'" *Dorsey v. Portfolio Equities Inc.*, 540 F.3d 333, 339 (5th Cir.2008).

"Rule 9(b)'s demand for particularity works in tandem with Rule 8(a)'s insistence upon 'simple, concise, and direct allegations.'" *Zucker*, 2018 WL 6570867, at *3.

> "A complaint can be long-winded, even prolix, without pleading with particularity." A lengthy complaint that incorporates by reference all preceding paragraphs as it progresses through multiple counts, often referred to as "shotgun pleading," is an example of this issue. Complaints of this type "set forth an excessive number or [*sic*] facts" before alleging that all the provided facts support various counts in the complaint, "with the result that 'each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.'"

*Id.*, quoting *Moore*, 2018 WL 3853711, at *3-4. Accordingly, shotgun pleadings (like the Complaint here) do not meet the heightened pleadings requirements of Rule 9(b)—in addition to

being subject to dismissal under Rule 12(b)(6). *Id.*; *Moore*, 2018 WL 3853711, at *3.

**B.      Plaintiff's Attempt to Assert Claims on Behalf of ACET Global and Holdco.**

Super G and Bellah hereby adopt and incorporate the arguments contained in the Baymark Defendants'[2], Holdco's[3], Windspeed's and William Szeto's[4], the Windspeed Employees'[5], SG Credit Partners Inc.'s and Marc Cole's[6], and Hallett & Perrin PC and Julie A. Smith's[7] respective briefs in support of their motions to dismiss claims asserted by Plaintiff D&T Partners LLC purportedly on behalf of ACET Global and Holdco. In particular:

- D&T Partners lacks standing to sue on either entity's behalf—derivatively or directly;

- Plaintiff fails to verify the Complaint (*see* FED.R.CIV.P. 23.1(b));

- Plaintiff fails to plausibly allege membership in either entity (*see* FED.R.CIV.P. 23.1(b)(1); TEX.BUS.&COM. CODE §101.452(a)); instead, its own pleading shows lack of membership;

- Plaintiff fails to state with particularity that Plaintiff asked or demanded either entity's management to bring the subject claims against either Super G or Bellah, both third parties (*see* FED.R.CIV.P. 23.1(b)(3); TEX.BUS.&COM. CODE §101.453(a) and §101.453(b));

- Plaintiff fails to plead with sufficient specificity to differentiate what claims (and factual basis therefor) are asserted on behalf of ACET Global, or Holdco, or D&T Partners LLC.

To the extent this Court disagrees, determines that Plaintiff has the requisite standing (it does not) and has adequately pleaded claims on behalf of ACET Global (it did not), or otherwise denies Defendants' motions to dismiss such claims, Super G conditionally moves, pursuant to 28 U.S.C. §1404, for the transfer of such claims to the courts of Orange County, California, as Super G and

---

[2] *See* Doc. 49, *Baymark Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support* ("Baymark's Brief").
[3] *See* Doc. 52, *Defendant Baymark ACET Holdco LLC's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support* ("Holdco's Brief").
[4] *See* Doc. 46-1, *Windspeed and Mr. Szeto's Brief in Support of Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6)* ("Windspeed's and Szeto's Brief").
[5] *See* Doc. 47-1, *Windspeed Employees' Brief in Support of Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6)* ("Windspeed Employees' Brief").
[6] *See* Doc. 48-1, *Defendants SG Credit Partners Inc.'s and Marc Cole's Memorandum of Law in Support of Motion to Dis miss Plaintiffs' First Amended Complaint* ("SG Credit's and Cole's Brief").
[7] *See* Doc. 51, *Defendants Hallett & Perrin PC and Julie A. Smith's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support* ("Hallett & Perrin's Brief").

ACET Global agreed in their July 20, 2017 Business Loan and Security Agreement that all disputes between them shall be litigated exclusively in that county.[8] To be clear, such removal of ACET Global's claims against Super G (again, assuming such claims and the other claims included in the Complaint survive dismissal) will result in this matter being litigated in *three* separate forums.

**C.    Plaintiff's RICO Claims Against Super G and Bellah[9] (Counts I-III).**

1.    Predicate Acts, Pattern of Racketeering, and Enterprise.

Super G and Bellah hereby adopt and incorporate the arguments contained in Baymark's Brief (Doc. 49), Holdco's Brief (Doc. 52), Windspeed and Szeto's Brief (Doc. 46-1), Windspeed Employees' Brief (Doc. 47-1), SG Credit's and Cole's Brief (Doc. 48-1), and Hallett & Perrin's Brief (Doc. 51), in support of their respective motions to dismiss Plaintiff's RICO claims for failure to state the essential and foundational RICO elements, which this Court has synopsized as follows:

> To establish a *prima facie* civil RICO claim, a plaintiff must allege: (1) a substantive predicate violation of 18 U.S.C. § 1962; (2) injury to his business or property; and (3) a causal connection between the racketeering activity and the injury. For the first prong—a § 1962 violation—a plaintiff must adequately plead three common elements: (1) a person who engages in (2) a patten of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.

*Varela v. Gonzales*, No. 3:13-CV-1278-B, 2014 WL 1284985, at *1 and n.3 (N.D.Tex. Mar. 31, 2014) (Boyle, J.) (internal quotations omitted). In particular:

- Plaintiff fails to allege—including with the level of particularity required by Rule 9(b)— predicate acts sufficient to form the basis of an alleged pattern of racketeering activity;

- Plaintiff fails to allege a plausible pattern of racketeering activity and continuity because the conduct alleged in the Complaint amounts to a single, lawful transaction with no threat of continuing illegal conduct; and

- Plaintiff fails to allege the existence of an enterprise by association-in-fact with its own structure and purpose apart from the alleged commission of the racketeering activities.

---

[8] *See Appendix in Support of Defendants Super G Capital LLC's and Steven Bellah's Motion to Dismiss Plaintiff's First Amended Complaint* ("Super G Appx.") at ex. 1, APPX 18-19.
[9] Bellah is not named in "Count II: Violations of 18 U.S.C. § 1962(a) (Civil RICO)." Complaint, Doc. 36 at p. 145.

While, as set forth in those briefs, Plaintiff fails to allege sufficient factual matter to state a RICO claim against Defendants *in toto*, allegations against Super G and Bellah are especially inadequate.

2.    "RICO Persons."

"A 'person' is the defendant in a RICO action and must be alleged to have committed racketeering acts." *Ray v. Recovery Healthcare Corp.*, No. 3:19-CV-3055-G, 2021 WL 1102081, at *15 (N.D.Tex. Mar. 22, 2021) (Fish, J). "The Fifth Circuit has stated that 'the RICO person must be one that either poses or has posed a continuous threat of engaging in acts of racketeering,' and this 'requirement may not be satisfied if no more is pled than that the person has engaged in a limited number of predicate racketeering acts.'" *Express Working Capital LLC v. One Word Cuisine Grp. LLC*, No. 3:15-CV-3792-S, 2018 WL 4214349, at *10 (N.D.Tex. Aug. 16, 2018) (Ramirez, J.), citing *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir.1995) and *Delta Truck & Tractor Inv. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir.1998), *cert. denied*, 489 U.S. 1079 (1989). Additionally, to be a RICO "person," "a defendant must have 'participated in the operation or management of the enterprise itself.'" *U.S. v. Rosenthal*, 805 F.3d 523, 532 (5th Cir.2015). "In other words, 'some part in directing the enterprise's affairs is required.'" *Id.*

Neither Super G nor Bellah[10] is a distinct RICO "person." Instead, Plaintiff vaguely and improperly lumps together all of "the Defendants or someone associated with the scheme"[11] in setting forth alleged predicate acts.[12] As explained below, Plaintiff has not adequately pleaded that either Super G or Bellah committed such acts—much less "more … than that the person has

---

[10] Bellah **is not even mentioned** in the paragraphs setting forth the RICO claim. *See* Complaint, Doc. 36 at ¶¶310-67.
[11] *See, e.g.*, Complaint, Doc. 36 at ¶¶354-56 (mail fraud) and 349-59 (wire fraud). Where a RICO claim is predicated on allegations of fraud, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Super Future Equities Inc. v. Wells Fargo Bank Minn. N.A.*, No. 3:06-CV-0271-B, 2007 WL 9717366, at *4 (N.D.Tex. Aug. 2, 2007) (Boyle, J); *see also Walker*, 938 F.3d at 738 ("cannot lump together the defendants" in asserting RICO).
[12] "A RICO action requires a plaintiff to allege 'two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity.'" *Stiehl v. Heritage Numismatic Auctions Inc.*, No. 3:17-CV-02086-M, 2019 WL 12095440, at *4 (N.D.Tex. Jan. 23, 2019) (Lynn, J.).

engaged in a limited number of predicate racketeering acts." *See Express Working Capital*, 2018 WL 4214349, at *10; *Crowe*, 43 F.3d at 204; *Delta Truck*, 855 F.2d at 243.

Plaintiff alleges five categories of crimes[13] as predicates for its RICO claim: obstruction of justice, bankruptcy fraud, money laundering, wire fraud, and mail fraud. The obstruction-of-justice predicate is premised on alleged perjury, or solicitation of perjury, by certain Defendants during deposition in the Overlapping State Case.[14] However, Bellah did not give testimony in that case; and, while Cole appeared for deposition as Super G's corporate representative, the Complaint is devoid of any allegedly false testimony given (or solicited) by him.[15] The bankruptcy-fraud and money-laundering predicates relate to "Concealment of Assets, False Oaths" purportedly made by certain Baymark Defendants to "a trustee or creditor or other office of the court" in the context of ACET Global's bankruptcy petition.[16] There are no allegations that either Super G or Bellah was involved with the bankruptcy, much less concealed anything from, or made any false oaths to, any officer therein. With respect to the mail and wire fraud predicates, Plaintiff vaguely alleges that:

> The Defendants or someone associated with the scheme used the mails or "caused" the mails to be used. For instance, on or around January 31, 2019, the Defendants caused the mailing the Notice of Forfeiture. The use of the mails was for the purpose of executing the scheme … The Defendants or someone associated with the scheme used wires for the purpose of executing the scheme. For example, the Defendants communicated extensively via email and over the internet.[17]

When pleading RICO claims, "[a] complaint must … identify a particular instance of wire fraud, explain the defendant's relationship to the wire fraud, and describe when or how the fraud occurred and why a particular act was fraudulent." *Zucker*, 2018 WL 6570867, at *3. The same goes for

---

[13] Civil RICO liability does not exist unless the pleadings allege actual criminal activity. *See Snow Ingredients Inc. v. SnoWizard Inc.*, 833 F.3d 512, 526 (5th Cir.2016) ("[T]he obstructive acts Southern Snow alleges are not criminal conduct. Therefore, they cannot act as a predicate offense for a civil-RICO claim.").

[14] *See* Complaint, Doc. 36 at ¶360.

[15] To the contrary, Plaintiff consistently uses Cole's testimony as a sword against other Defendants. *See, e.g.*, Complaint, Doc. 36 at ¶248.

[16] *See* Complaint, Doc. 36. at ¶¶361-62.

[17] Complaint, Doc. 36. at ¶¶356, 359.

pleading mail fraud as a predicate act. *See U.S. v. Phipps*, 595 F.3d 243, 245 (5th Cir.2010) ("Mail and wire fraud are both specific intent crimes that require the Government to prove that a defendant knew the scheme involved false representations."); *Stiehl*, 2019 WL 12095440, at *4 ("Where a plaintiff alleges mail or wire fraud violations as the predicate acts in a RICO claim, Federal Rule of Civil Procedure 9(b)'s particularity requirements apply.").

In other words, "Rule 9(b), which applies to RICO claims predicated upon mail or wire fraud, requires allegations of 'the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Stewart v. GMAC Mortg. LLC*, No. 2:10-CV-00149, 2011 WL 1296887, at *3 (S.D.Miss. Mar. 31, 2011). Here, Plaintiff fails to identify *any* specific wire transaction purportedly constituting wire fraud. Plaintiff cryptically and passingly mentions that "the Defendants caused the mailing the Notice of Forfeiture," but there are no allegations of any particular content therein or how such content was fraudulent, Super G and/or Bellah's relationship thereto, or what either "obtained thereby." *See Stiehl*, 2019 WL 12095440, at *4 ("Plaintiff does not identify any specific material that was mailed and does not identify any particular content in this material or explain how such content was fraudulent. Plaintiff also does not identify any specific wire transactions or describe how such actions were fraudulent. Additionally, Plaintiff provides no detail whatsoever regarding how the Individual Defendants participated in the allegedly fraudulent mailing or wiring of funds. Without more, the Court cannot find that Plaintiff has pled the necessary predicate acts, and Plaintiff's RICO claims against the Individual Defendants also fail for this reason."). Even taking, *arguendo*, the "mailing the Notice of Forfeiture" as somehow constituting a predicate act, Plaintiff does not explain how "**two or more** predicate criminal acts … are (1) related and (2) amount to or pose a threat of continued criminal activity." *Id*. (emphasis supplied); *see also Snow*

*Ingredients*, 833 F.3d at 524. Nor has Plaintiff alleged that Super G or Bellah was involved in "directing" the alleged RICO enterprise. To the contrary, Plaintiff pleads Super G as a mere pawn of the Baymark Defendants.[18]

 3. Reliance and Proximate Causation.

"In addition, when a civil RICO claim is based on fraud, a plaintiff is also required to establish reliance on the fraud." *Super Future Equities*, 2007 WL 9717366, at *4. As with its common-law fraud claim (*see infra* Section II.D.1), Plaintiff fails to plead reliance on any of the purported predicate acts—including as relates to the mailing of the "Notice of Forfeiture." *See Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, at *13 (S.D.Tex. Jan. 31, 2008) ("[T]he plaintiffs' allegations that 'the wire and mail fraud included 'electronic banking transactions and interstate telephone calls to the Plaintiffs to and from Texas, Arizona, Colorado, and Florida'' were not sufficient because 'the plaintiffs does not plead that they relied on particular communications, causing injury. Rather they allege that many of the acts they challenge and the injuries they allege occurred after Riley was no longer working for Alpert.").

Additionally, "Supreme Court 'precedents make clear that in the RICO context, the focus' of the proximate cause analysis 'is on the directness of the relationship between the conduct and the harm.'" *Varela*, 2014 WL 1284985, at *3. "Thus, to establish RICO standing, Plaintiff must show 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id*. "Where the 'link' between the alleged injury and predicate acts 'is too remote, purely contingent, or indirect,' the RICO claim should be dismissed." *Id.* Here, Plaintiff fails to directly connect the purported predicate acts (*e.g.*, mailing of the "Notice of Forfeiture") and its purported injury (*i.e.*,

---

[18] *See, e.g.,* Complaint, Doc. 36 at ¶¶78, 228, 230, 380 and n.66 ("Baymark Partners is the party that sought the subordination agreement. In fact, Super G has testified that it did not draft the subordination agreement that Baymark required …"; "Baymark … repeatedly urged Super G … to move forward with the foreclosure"; "Super G did not even draft the Notice" of foreclosure; "[The foreclosure] was done at the behest of Baymark" …).

that "the Defendants' violations of these statutes resulted in the failure to pay millions of dollars owed to Plaintiff"). One glaringly absent "link" between the pleaded predicate acts and the claimed injury (namely, non-payment of the so-called "D&T Note") is ACET Global itself—as explained above in Section II.B, Plaintiff fails to adequately plead any claims on ACET Global's behalf for myriad reasons, leaving ACET Global absent from this action. Plaintiff pleads that Defendants acted "for the common and continuing purpose of fraudulently transferring the assets out of the reach of Plaintiff."[19] But assuming, *arguendo*, any impropriety in the foreclosure sale, any *direct* harm would be to ACET Global; Plaintiff, as a junior lienholder, would only be—at most—*indirectly* affected. And any harm to Plaintiff would be attenuated and contingent, as it assumes ACET Global's ability to pay off the D&T Note irrespective of the foreclosure transaction. *See Garcia v. Lion Mexico Consol. LP*, No. 5:15-CV-1116-DAE, 2018 WL 6427350, at *8 (W.D.Tex. Sept. 14, 2018) ("Additionally, the presence of intervening factors breaks the causal chain between predicate acts and injury, thereby precluding a proximate cause finding."). Another missing "link" is the actual holder of the so-called "D & T Note": ACET Venture Partners LLC.[20] While Plaintiff nakedly calls itself "successor in interest" to such entity, Plaintiff pleads no basis for such position.

    4.   <u>Conspiracy</u>.

Because Plaintiff fails to state a claim for relief under 18 U.S.C. §§1962(a)-(c), its §1962(d) conspiracy claim must necessarily fail. *See Sharif v. Wellness Int'l Network Ltd.*, No. 3:05-CV-01367-B, 2007 WL 971126, at *9 (N.D.Tex. May 9, 2007) (Boyle, J.). Regardless, and with respect to Super G and Bellah especially, Plaintiff fails to "specifically plead" an agreement to commit predicate acts, *i.e.* "words or actions [that] … objectively manifested an agreement to participate,

---

[19] Complaint, Doc. 36 at ¶315.
[20] *See* Complaint, Doc. 36-12 (ex. 12) at App. 141-52 (copy of the so-called "D & T Note" showing ACET Venture Partners LLC as "Holder" and with no mention whatsoever of Plaintiff D&T Partners LLC).

directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes." *Paul v. Aviva Life & Annuity Co.*, No. 3:09-CV-1490-B, 2010 WL 5105925, at *6 (N.D.Tex. Dec. 14, 2010) (Boyle, J.), quoting *U.S. v. Elliot*, 571 F.2d 880, 903 (5th Cir.1978).

**D.**     **Plaintiff's State Law Claims Against Super G and Bellah[21] (Counts IV, VI-IX).**

As a gating matter, the Fifth Circuit's "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Drake v. Costume Armour Inc.*, 736 Fed.Appx. 505, 506 (5th Cir.2018), citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 619 (1988) ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction."); *see also U.S. ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-0371, 2014 WL 3353247, at *8 (N.D.Tex. July 9, 2014) (Boyle, J.) (citing the Fifth Circuit's "general rule," noting that "the Supreme Court has for nearly half a century cautioned federal courts to avoid 'needless decisions of state law,'" and exercising the Court's "wide discretion" to dismiss pendent state law claims upon dismissal of the underlying federal-law claim where, "[g]iven that this case is only at the pleadings/motion to dismiss stage, the Court has a sound reason not to exercise jurisdiction over [the] pendent state law claim").

Because, as explained above, Plaintiff has failed to plead viable RICO claims against Super G and Bellah, this Court should apply the general rule and dismiss Plaintiff's pendent state law claims, particularly given the early (pleading) stage of this case. In any event, and as explained below, Plaintiff fails to state any plausible state-law claims of relief against Super G and Bellah.

1.     Count IV: Common Law Fraud (Against Super G Only).

A Texas common-law fraud claim requires that Plaintiff show: (1) Super G made a material

---

[21] Neither Super G nor Bellah is named in "Count V: Breach of Fiduciary Duty." Complaint, Doc. 36 at pp. 151-53. Bellah is not named in "Count IV: Common Law Fraud." Complaint, Doc. 36 at p. 151.

representation; (2) it was false; (3) when made, Super G knew it was false or made it recklessly without knowledge of the truth and as a positive assertion; (4) Super G made the representation inteding that Plaintiff act on it; (5) Plaintiff acted in reliance on the representation, (6) thereby causing injury. *See Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex.2011).

Plaintiff does not meet the heightened pleadings requirements of Rule 9(b).[22] Under the heading of "Count IV: Common Law Fraud," Plaintiff merely recites the elements of common-law fraud and, in conclusory fashion, paints all Defendants with the same broad brush:

> Plaintiff repeats and realleges each and every allegation contained in the [357] paragraphs above as is set forth here in full … The Defendants made materially false representations to Plaintiff with the knowledge of their falsity or with reckless disregard of the truth with the intention that Plaintiff act on those representations, and Plaintiff relied on these misrepresentations to its detriment. As a proximate result of this fraud, Plaintiff sustained the damages described more fully herein.[23]

As set forth above, such shotgun pleading does not meet Rule 9(b)'s heightened pleading requirements and subjects these claims to dismissal under Rule 12(b)(6)—against all Defendants. *Id.*; *Moore*, 2018 WL 3853711, at *3.

Plaintiff's pleading is all the more insufficient as to Super G specifically, as Plaintiff fails to state any plausible theory of multiple elements of fraud[24], much less with the particularity required by Rule 9(b). Combing the 157-page Complaint for what Plaintiff conceivably could be alleging as a misrepresentation by Super G to Plaintiff (a task which, under the pleading Rules, neither Super G nor this Court should have to do), the closest one comes is a set of allegations at pages 134-135, under the heading "Super G's Attempt to Cover Up the Fraud":

> In early 2019, Damti called Bellah to inform Bellah that Baymark had started Windspeed, thinking Damti's and Super G's interests were aligned (*i.e.*, not knowing of the collusive

---

[22] "When claiming fraud in federal court, the claim must also satisfy the heightened pleading set out in Federal Rule of Civil Procedure 9(b)." *Garza*, 2020 WL 7700620, at *5.

[23] Complaint, Doc. 36 at ¶¶368-69.

[24] "The Fifth Circuit has held that dismissal is appropriate 'if the complaint lacks an allegation regarding a required element necessary to obtain relief.'" *UST-Mamiya, Inc.*, 441 F.Supp.3d at 387.

fraud). Bellah, however, stated that he was unaware of Windspeed—despite the fact that Bellah was already serving as Super G's board manager of Windspeed. He indicated that Super G had no interest in pursuing any action against Baymark. His statements were designed to deliberately mislead Damti, the principal of D&T Partners.[25]

(the "2019 Bellah Statement").[26] Plaintiff also pastes an image of a March 10, 2021 email between Plaintiff's counsel and Super G's then-counsel (exchanged during the Overlapping State Case), regarding Super G's operational status and its founder's physical health as of that date (the "2021 Attorney Email"), followed by the general allegation: "[t]he highly irregular and untrue claims underscore the Defendant's obstructionist efforts and further evidence the fraud."[27]

First, "[a] representation must be material to the transaction at issue to support a claim for fraud." *Rabbani v. Timberlake*, No. 01-95-01126-CV, 1996 WL 434212, at *4 (Tex.App.—Houston [1st Dist.] Aug. 1, 1996, no writ). "Material means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Italian Cowboy*, 341 S.W.3d at 337; *see also Bouaziz v. AZT Corp.*, No. 3:10-CV-053-B, 2010 WL 2730594, at *3 (N.D.Tex. July 9, 2010) (Boyle, J.) ("A statement is material if a reasonable person would find it important and induced to act on it."), citing *Lee & Lee Int'l Inc. v. Lee*, 261 F.Supp.2d 665, 675 (N.D.Tex.2003) ("A representation is 'material' if it is important to the party to whom it is made in making a decision regarding the particular transaction.") (Lindsay, J.), in turn citing *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 613 (Tex.App.—Waco 2000, pet. denied). That is, "[a] representation is material **if it induces another**

---

[25] Complaint, Doc. 36 at ¶294.

[26] As mentioned above (*see supra* note 21), Bellah is not among the Defendants named in Plaintiff's common law fraud claim. To the extent Plaintiff is attempting to impute the 2019 Bellah Statement on Super G, it fails to plead any such theory of agency with the requisite particularity. *See Waste Mgmt. Inc.*, 2017 WL 343186, at *4 n.7 ("When agency is an element of a fraud claim, agency must be pleaded with particularity required under Rule 9(b)."). Plaintiff's newly-pleaded generalized allegation of "Respondeat Superior and/or Agency Liability" (Count IX)—with no specific mention of Super G or Bellah, much less any particular actions or omissions by either—obviously does not cut it. *See* Complaint, Doc. 36 at ¶384. Regardless, Plaintiff fails to plead requisite allegations to base its fraud claim on the 2019 Bellah Statement, whether imputed to Super G or not, for the myriad reasons described below.

[27] Complaint, Doc. 36 at ¶295.

**to act**." *Rabbani*, 1996 WL 434212, at *4 (emphasis supplied).

Here, the Complaint is completely devoid of any allegations as to how either the 2019 Bellah Statement or the 2021 Attorney Email were in any way material. In addition to Plaintiff's complete failure to identify any action or decision Plaintiff was induced to take or make with respect to such alleged representations, its own pleading belies any conceivable importance the alleged representations could have had to Plaintiff. Plaintiff pleads that, at the time of the 2019 Bellah Statement, Plaintiff already knew about Windspeed—indeed, such knowledge was the impetus for Plaintiff's call in the first place.[28] At the time of the 2021 Attorney Email, Plaintiff was already 20 months into the Overlapping State Case complaining of Windspeed's formation.[29]

Second, "[a] plaintiff will not survive a Rule 9(b) motion to dismiss on the pleading by simply alleging that a defendant had fraudulent intent." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir.1996). Instead, "'[t]o prove fraud under Texas law, [Plaintiff] must demonstrate, *inter alia*, that 'the speaker made the representation with the intent that the other party should act upon it.'" *H.C. Oil & Gas Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 3:96-CV-2923-D, 2005 WL 265166, at *9 (N.D.Tex. Feb. 2, 2005) (Fitzwater, J.). Further, and as mentioned above, Rule 9(b) requires the pleader to identify "what [the speaker of the alleged misrepresentation] obtained thereby." *Muhammad*, 2016 WL 2857509, at *4. Nowhere in the Complaint does Plaintiff allege that either the 2019 Bellah Statement or the 2021 Attorney Email was made with any intent that Plaintiff should act upon it—much less what Super G or Bellah "obtained thereby." *See Garza*, 2020 WL 7700620, at *5 (where plaintiff fails to identify how the misrepresentation was "made with intent of Plaintiff to act upon it," "Plaintiff's allegations are insufficient to satisfy a claim for fraud by misrepresentation"); *Douglas v. Wells Fargo Bank N.A.*,

---

[28] Complaint, Doc. 36 at ¶294.
[29] Complaint, Doc. 36 at n.3.

4:19-CV-00737-ALM-CAN, 2020 WL 6588598, at *8 (E.D.Tex. Oct. 21, 2020) ("In her allegations, Plaintiff fails to state…that the Defendant made a false material representation with the intent that Plaintiff act upon it … Plaintiff asserts nothing more than conclusory allegations of 'fraud.'"); *H.C. Oil & Gas Corp.*, 2005 WL 265166, at *9 ("HC does not allege that Martin intended Robinette to rely on his statements concerning the Account. Thus HC has not pleaded its fraud claim as required under Rule 9(b).").

Third, "[i]t is well-settled that actual reliance is a necessary element of common law fraud under Texas law." *Brodsky v. Match.com LLP*, No. 3-09-CV-2066-F-BD, 2010 WL 3895513, at *2 (N.D.Tex.2010) (Kaplan, J.). That is, "[t]o establish the [reliance] element, 'the plaintiff must show that it actually relied on the defendant's representation.'" *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas Inc.*, 590 S.W.3d 471, 497-98 (Tex.2019); *see also Smith v. KNC Optical*, 296 S.W.3d 807, 812 (Tex.App.—Dallas 2009, no pet.) ("[Plaintiff] also had to prove that it acted in reliance on the material misrepresentation."). In other words, "[u]nder Texas law, 'detrimental reliance' is an essential element of a claim for fraud or misrepresentation." *Florida Dept. of Ins. v. Chase Bank of Tex. N.A.*, No. CIV-A-399CV1254-G, 2001 WL 124951, at *4 (N.D.Tex. Feb. 9, 2001) (Fish, J.), citing *Jackson v. Speer*, 974 F.2d 676, 679 (5th Cir.1992) ("**No fraud has been perpetuated until the claimant has acted in reliance upon false representations**.") (emphasis supplied).

Plaintiff makes no allegation that it actually relied on either the 2019 Bellah Statement or the 2021 Attorney Email (on any other Super G representation), *i.e.,* there are no pleaded facts that Plaintiff did something, refrained from doing something, changed its behavior, or in any way acted to its detriment in response to any purported Super G (or Bellah) representation.

Fourth, "[t]o recover for fraud, one must prove justifiable reliance on a material misrepresentation." *Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 401 (Tex.2014).

17

To that end, "[a] party with actual knowledge of the falsity of a representation cannot establish the reliance element of a fraud claim." *Ahmed v. Mbogo*, No. 05-17-00457-CV, 2018 WL 3616887, at *10 (Tex.App.—Dallas July 30, 2018, pet. denied), citing *Koral Indus. Inc. v. Security-Connecticut Life Ins. Co.*, 788 S.W.2d 136, 146 (Tex.App.—Dallas 1990, writ denied) ("[A]ctual knowledge is inconsistent with the claim that the allegedly defrauded party has been deceived, and it negatives the essential element of reliance upon the truth of the representations.") and *Coastal Corp. v. Atlantic Richfield Co.*, 852 S.W.2d 714, 720 (Tex.App.—Corpus Christi-Edinburg 1993, no writ) ("A finding of fraud requires proof that a party believed a deceitful representation and, relying on it, contracted or acted to its detriment."), in turn citing *Thrower v. Brownlee*, 12 S.W.2d 184, 186 (Tex.Comm.App.1929) ("Where false representations or promises are made to induce another to act, and, before such other does act, he learns of the falsity of such representations or promises, it cannot of course be said that he relied upon them believing them to be true, for, knowing their falsity, he has not been deceived.").

Here, there are no allegations to show Plaintiff actually relied on any purported misrepresentation by Super G—much less that Plaintiff was justified in doing so. And, again, the allegations that Plaintiff does put forward instead *negate* this element, *e.g.*, its pleading that when Damti (Plaintiff's principal) made the call involving the 2019 Bellah Statement, he did so already knowing that "Baymark had started Windspeed."[30] Even assuming the truth of Plaintiff's allegation that Bellah made statements falsely denying knowledge about Windspeed's existence (as alleged by Plaintiff), "it cannot of course be said that [Damti] relied upon them believing them to be true, for, knowing their falsity, he has not been deceived." *Thrower*, 12 S.W.2d at 186.

Fifth, "[i]n order to recover damages in a fraud cause of action, one must plead and prove

---

[30] Complaint, Doc. 36 at ¶294.

a pecuniary loss that is '**directly traceable to and which resulted from the false representation**' relied upon." *Thompson v. Origin Tech. in Bus. Inc.*, No. 3:99-CV-2077-L, 2001 WL 1018748, at *13 (N.D.Tex. Aug. 20, 2001) (Lindsay, J.) (emphasis supplied). Put another way, "the plaintiff must also prove that the alleged misrepresentation was the proximate cause of the damages that he or she is seeking to recover." *Florida Dept. of Ins.*, 2001 WL 124951, at *4.

Plaintiff fails to make any allegations to support the required element of proximate causation. As mentioned above, Plaintiff does not even plead that it *did* anything (or refrained from doing anything) in reliance on any alleged Super G misrepresentation—much less directly trace either the 2019 Bellah Statement or the 2021 Attorney Email to any purported damages (such as non-payment of the "D&T Note"). *See Garza*, 2020 WL 7700620, at *5 (where plaintiff fails to identify "how Plaintiff was injured" by alleged misrepresentation, "Plaintiff's allegations are insufficient to satisfy a claim for fraud by misrepresentation"); *Douglas*, 2020 WL 6588598, at *8 ("In her allegations, Plaintiff fails to state … how Plaintiff was injured as a result of her supposed reliance on the false material representation … Even construing the pleadings in a light most favorable to Plaintiff, Plaintiff asserts nothing more than conclusory allegations of 'fraud.'").

2.   Count VI: Aiding and Abetting Breach of Fiduciary Duties.

As an initial matter, "the Texas supreme court has specifically dealt with aiding and abetting … as a 'dependent' claim, which is 'premised on' an underlying tort. Thus, when an underlying tort fails, there can be … no aiding and abetting claim related to that failed tort." *Bunch v. Mollabashy*, No. 3:13-CV-1075-G-BH, 2016 WL 7638143, at *5 (N.D.Tex. Dec. 12, 2016) (Ramirez, J.); *see also Renate Nixdor GmbH & Co. KG v. TRA Midland Props. LLC*, No. 05-17-00577-CV, 2019 WL 92038, at *5 (Tex.App.—Dallas Jan. 3, 2019, pet. denied) ("Aiding and abetting is a dependent claim premised on an underlying tort; there can be no aiding and abetting claim related to an underlying tort claim that fails."). Accordingly, any "aiding and abetting"

19

claims against Super G and Bellah fall with the dismissal of the underlying breach-of-fiduciary-duty claims against the "Fiduciary Claim Defendants."[31] So, Super G and Bellah hereby adopt and incorporate the arguments contained in the "Fiduciary Claim Defendants'" respective briefs in support of their motions to dismiss Plaintiff's underlying breach-of-fiduciary-duty claim.[32]

"The elements for [Plaintiff's] aiding and abetting claim are: (1) the primary actor committed a tort; (2) the defendant had knowledge that the primary actor's conduct constituted a tort; (3) defendant had intent to assist the primary actor; (4) defendant gave the primary actor assistance or encouragement; and (5) defendant's conduct was a substantial factor in causing the tort." *Immobiliere Jeuness Establissement v. Amegy Bank N.A.*, 525 S.W.3d 875, 882 (Tex.App.—Houston [14th Dist.] 2017, no pet.), citing *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex.1996).

Although, as a general rule, breach-of-fiduciary-duty claims (and claims derivative thereof) are not fraud-based claims subject to Rule 9(b)'s heightened standard, "when the plaintiff's claims are premised on allegations of fraud, the standard under Rule 9(b) may be appropriate." *Ebert v. Gustin*, No. 4:14-CV-00225-O, 2016 WL11663164, at *15 (N.D.Tex. May 12, 2016) (O'Connor, J.). Plaintiff does not meet the heightened standard. Indeed, as explained below, it fails to plausibly plead multiple essential elements of the "aiding and abetting" claim.

Plaintiff alleges that "All Defendants"[33] aided and abetted the "Fiduciary Claim Defendants" in their alleged "self-dealing" in the form of payment of "Management Fees" to Baymark Management LLC, while "allowing the [ACET Global] business and assets to waste" and "failing to cause ACET Global to pay under the D&T Note," as "ACET Global became

---

[31] Defendants Tony Ludlow, William Szeto, David Hook, Matthew Denegre, Holdco, Julie A. Smith and Hallett & Perrin PC. *See* Complaint, Doc. 36 at ¶371.
[32] *See* Doc. 49, Baymark's Brief; Doc. 46-1, Windspeed's and Mr. Szeto's Brief; Doc. 52, Holdco's Brief; Doc. 51, Hallett & Perrin's Brief.
[33] Complaint, Doc. 36 at p. 153.

insolvent or was in the zone of insolvency." According to Plaintiff: "Baymark Management, LLC's acceptance, <u>through the efforts of the Aiders and Abettors</u>, of payments from ACET Global aided and abetted ACET Global in breaching the fiduciary duties owed to Plaintiff." Plaintiff goes as far as to broadly assert: "The Aiders and Abettors directly controlled Baymark Management, LLC and its operations inured to their personal benefit."[34]

Plaintiff's broad inclusion of "All Defendants" as "Aiders and Abettors" directly contradicts its more-specified allegations in its 120-plus page "FACTS" section[35] of the Complaint, wherein Plaintiff specifically names who purportedly controlled Baymark Management LLC and purportedly used payment of "Management Fees" to their personal benefit:

> **Baymark** and **Szeto** drained ACET Global of its funds and assets to their enrichment and to ACET Global's detriment. Section 5.3 of Baymark ACET Holdco's Company Agreement authorized **Baymark ACET Holdco** to pay a quarterly management fee (the "Management Fee") of the greater of $150,000 or 5% of ACET Global's EBIDTA to Baymark Management, LLC. Thus, **Ludlow** and **Hook** acted as both the managers of Baymark Management, LLC and exercised control over ACET Global and Baymark ACET Holdco. **Baymark** and **Szeto** had planned to, and were successful in, utilizing this Management Fee to drain ACET Global and Baymark ACET Holdco of all of their assets and capital from a cash flow perspective and in terms of ACET Global's balance sheet based on accrued/owed liabilities that deliberately placed ACET Global in an insolvent position… On information and belief, even after ACET Global became insolvent, **Hook** and **Ludlow** continued to drain it of its assets through Management Fee. They paid or accrued recurring 'management fees' to Baymark Management, LLC, which did not correspond to services or value provided, and caused improper management fees to be paid or owed even as ACET Global and Baymark ACET Holdco became insolvent.[36]

The Complaint is devoid of any non-conclusory allegations of how Super G or its employee Bellah had any "control" over any Baymark entity, or used it to participate or assist in the payment of "Management Fees" to other Baymark entities or persons, or "personal[ly] benefit[ed]" therefrom.

Moreover, Plaintiff wholly fails to plead multiple essential elements of liability against

---

[34] Complaint, Doc. 36 at p. 143 and ¶¶371-72, 376 (emphasis supplied).
[35] Complaint, Doc. 36 at pp. 19-142.
[36] Complaint, Doc. 36 at ¶¶89-90 and n.6 (emphasis supplied).

Super G or Bellah pursuant to an "aiding and abetting" theory, *to wit*, that Super G or Bellah: was aware of the "Fiduciary Claim Defendants'" conduct regarding payment of "Management Fees"; had knowledge that payment of such contractual fees constituted any tort; had any intent to assist the "Fiduciary Claim Defendants" in purportedly "draining" ACET Global (debtor to Super G) through payment of the "Management Fees"; or gave any assistance or encouragement to the "Fiduciary Claim Defendants" to do so—much less that such assistance or encouragement was a "substantial factor" in causing the alleged underlying breach-of-fiduciary-duty tort.[37]

    3.    <u>Count VII: Texas Uniform Fraudulent Transfer Act</u>.

    Plaintiff claims that "All Defendants" "violated the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Comm. Code 24.001 *et seq.* ["<u>TUFTA</u>"], by transferring substantially all of the assets of ACET Global to Windspeed."[38] Plaintiff's inappropriate broad-brush approach to accusing "All Defendants" collectively is particularly glaring here, as it immediately (in the very next paragraphs) narrows the claim's focus to the Baymark Defendants and their attorneys, *to wit*:

> **Hook** and **Ludlow** caused ACET Global to be used for the purpose of perpetuating and did perpetuate actual fraud (*i.e.*, fraudulent transfers) on D&T Partners primarily for one or both of Hook and Ludlow's direct personal benefit. **Hallett & Perrin** drafted and facilitated the transactional documents to carry out the fraud, including backdating those documents … **Baymark** caused ACET Global; Baymark Partners, LP; BP Management; Super G; SG Credit, Baymark ACET Holdco, LLC; Baymark ACET Direct Invest, LLC; Baymark Management, LLC; Baymark; and Windspeed … to be used for the purpose of perpetuating and did perpetuate actual fraud (*i.e.*, fraudulent transfers) on D&T Partners primarily for **Baymark's** direct personal benefit …Further, the transfers were primarily for the direct personal benefit of **Baymark** because all of the assets transferred out of ACET Global went into Windspeed, which was ultimately controlled by **Baymark**.[39]

Plaintiff does not plead adequate allegations to state a TUFTA claim against Super G (or Bellah,

---

[37] Even if these elements were pleaded (they are not), it makes zero sense that Super G (**ACET Global's creditor**) or its employee Bellah would assist or encourage—or intend to assist or encourage—the purported "draining" of ACET Global *via* payment of management fees to one or more of the Baymark Defendants.

[38] Complaint, Doc. 36 at ¶378.

[39] Complaint, Doc. 36 at ¶369-70 (emphasis supplied).

**who is not even mentioned** in ¶¶377-80 of the Complaint setting forth such claim).

"The purpose of [TUFTA] is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach." *Telephone Equip. Network Inc. v. TA/Westchase Place Ltd.*, 80 S.W.3d 601, 607 (Tex.App.—Houston [1st Dist.] 2002, no pet.). An otherwise fraudulent transfer is not voidable against a person who took in good faith and for reasonably equivalent value. *S.E.C. v. Cook*, No. 3:00-CV-272-R, 2001 WL 256172, at *3 (N.D.Tex. Mar. 8, 2001) (Buchmeyer, J.), citing TEX.BUS. & COM. CODE §24.009(a). Likewise, a transfer is not fraudulent if it was made for reasonably equivalent value. *Yokogawa Corp. of Am. v. Skype Int'l Holdings*, 159 S.W.3d 266, 269 (Tex.App.—Dallas 2005, no pet.), citing TEX.BUS. & COM. CODE §24.005(a)(2). "A TUFTA transfer is the disposition of an 'asset.'" *Tow v. Amegy Bank N.A.*, 498 B.R. 757, 769 (S.D.Tex. 2013). Under TUFTA, "asset" does not include "property to the extent that it is encumbered by a valid lien." TEX.BUS. & COM. CODE §24.002(2)(A).

Here, Plaintiff does not allege that Super G's superior lien was invalid; again, Plaintiff "acknowledge[d]" and "consent[ed] to" subordination of its lien.[40] And Plaintiff itself pleads that ACET Global was in default on Super G's loan as early as March 2018 (months prior to the foreclosure).[41] Of course, "a secured party is entitled to foreclose on its security interest in the event of default." *Tow*, 498 B.R. at 769, quoting *Yokogawa Corp.*, 159 S.W.3d at 269, in turn citing TEX.BUS. & COM. CODE §9.601(a)(1)). Accordingly, the foreclosure on (and subsequent transfer of) the collateral encumbered by a valid lien is "not a TUFTA transfer." *Id.*; *see also Yokogawa Corp.*, 159 S.W.3d at 269 ("We agree that the foreclosure and subsequent transfer of assets to [third party] are not covered by TUFTA … [Secured creditor's] enforcement of its security interest upon [debtor's] default does not constitute a voidable transfer. Nor is the

---

[40] *See* Complaint, Doc. 36 at pp. 29-30 and Doc. 36-24 (ex. 24) at App. 070-71.
[41] *See* Complaint, Doc. 36 at ¶¶80-81.

subsequent transfer of the assets from the foreclosure sale actionable under TUFTA."); *Mullins v. TestAmerica Inc.*, 564 F.3d 386, 415 (5th Cir.2009) (where proceeds were encumbered by "valid lien," they did not constitute an "'asset' within the meaning of TUFTA."). That is particularly the case here, where Plaintiff does not plead "a disparity between the amount of [Super G's] security debt and the value of [ACET Global]'s assets." *See Sourcing Mgmt. Inc. v. Simclar Inc.*, 118 F.Supp.3d 899, 916 (N.D.Tex. 2015) (Lindsay, J.).

    4.    <u>Count VIII: Civil Conspiracy.</u>

    As an initial matter, "[c]onspiracy is a derivative claim based on an underlying tort. Liability for conspiracy is impossible unless an underlying tort has been proved." *Everett Fin. Inc. v. Primary Residential Mortg. Inc.*, No. 3:14-CV-1028-D, 2016 WL 7378937, at *12 (N.D.Tex. Dec. 20, 2016) (Fitzwater, J.). Accordingly, "[t]o survive a motion to dismiss on his civil conspiracy … claim[], Plaintiff's pleading must contain underlying torts which survive dismissal." *Roehrs v. Conesys Inc.*, No. 3:05-CV-829-M, 2005 WL 3454015, at *7 (N.D.Tex. Dec. 14, 2005).

    Moreover, because each of Plaintiff's underlying claims sound in fraud, Plaintiff's derivative conspiracy claim is subject to Rule 9(b)'s heightened standard. *See Smith v. HSBC Bank*, No. 3:15-CV-00094-P, 2015 WL 12911463, at *4 (N.D.Tex. Aug. 6, 2015) (Solis, J.).

    Plaintiff appears to allege that Super G and Bellah somehow conspired with each and every other Defendant with respect to each and every claim asserted.[42] Because any conspiracy claim falls with the dismissal of the underlying claims, Super G and Bellah hereby adopt and incorporate the arguments made by the other Defendants for dismissal of Plaintiff's underlying claims.[43]

    Under Texas law, the elements of conspiracy include: "(1) two or more persons; (2) an

---

[42] Complaint, Doc. 36 at pp. 155.
[43] *See* Doc. 49, Baymark's Brief; Doc. 46-1, Windspeed's and Mr. Szeto's Brief; Doc. 47-1, Windspeed Employees' Brief; Doc. 48-1, SG Credit's and Cole's Brief; Doc. 52, Holdco's Brief; Doc. 51, Hallett & Perrin's Brief.

object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex.2005). "The meeting of minds requirement requires knowledge of the course of action and specific intent." *Crescendo Invs. v. Brice*, 61 S.W.3d 465, 473 (Tex.App.—San Antonio 2001, pet. denied), citing *Triplex Comms. Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex.1995) ("The gravamen of [respondents'] argument is that the tortfeasors needed only to intend to engage in the conduct that resulted in the injury. We disagree; civil conspiracy requires **specific intent**. For a civil conspiracy to arise, the parties must have been aware of the harm or wrongful conduct **at the inception of the combination or agreement**.") (emphasis supplied). In addition to failing Rule 9(b)'s heightened standard, Plaintiff fails to plead factual allegations above the speculative level to show: Super G and/or Bellah conspired with one or more of the other Defendants; the supposed object to be accomplished thereby; a "meeting of minds" with Super G and/or Bellah as to such an object; that Super G and/or Bellah had knowledge of any such object or purpose of the purported conspiracy; that Super G and/or Bellah had specific intent as to any such object or purpose; or that there was some agreement with Super G and/or Bellah to inflict a wrong on Plaintiff.

     5.    <u>Count IX: Respondeat Superior and/or Agency Liability</u>.

"[A]gency and respondeat superior are theories of liability and not causes of action." *Washington v. Bank of Am. NA*, No. 4:15-CV-001, 2015 WL 2013687, at *4 (N.D.Tex.2015). To the extent Plaintiff has asserted these as causes of action, they should be dismissed. *Id.*

## III.    CONCLUSION

Plaintiff has had multiple opportunities (Docs. 1 and 36) to adequately plead its claims— and has again failed. Super G and Bellah ask the Court to dismiss—without leave to amend—all claims asserted against them and grant them such further relief to which they may be entitled.