**SRK**
Kronengold Law Offices

Phone: 972-8-9360999, Fax: 972-8-9366000
Oppenheimer 7, Rabin Science Park, Rehovot, Israel
www.kronengold.com

December 9, 2018

*Without Prejudice*

VIA E-MAIL AND REGISTERED MAIL

Baymark Partners, L.P. and ACET Global LLC
Granite Park II
5700 Granite Parkway, Suite 435
Plano, Texas 75024
Attn: David Hook
Email: dhook@baymarkpartners.com

Hallett & Perrin, P.C.
1445 Ross Avenue, Suite 2400
Dallas, Texas 75202
Attention: Gordon T. Foote II
Email: gfoote@hallettperrin.com

Re:   Event of Default Notice; Demand for Immediate Payment

Dear Mr. Hook:

We are writing to you on behalf of our client, D&T Partners LLC f/k/a ACET Venture Partners LLC (the "Holder").

As you know, ACET Global LLC (the "Maker") entered into an Amended and Restated Secured Promissory Note in December 2017 (the "Note"), with an issuance date of July 20, 2017 (the "Issuance Date"), pursuant to which the Maker promised to pay the Holder the principal sum of Two Million Eight Hundred Eighty-Eight Thousand Four Hundred Twenty-Five and No/100 Dollars ($2,888,425.00) (the "Principal"), whether upon the payment dates (set forth in the Note), acceleration, prepayment or otherwise (in each case in accordance with the terms of the Note) and to pay interest ("Interest") on any outstanding Principal from the Issuance Date at the rate of fifteen percent (15%) per annum, compounded annually ("Interest Rate"), until the same becomes due and payable, whether upon each of the payment dates, or upon acceleration, prepayment or otherwise (in each case in accordance with the terms of the Note).

The Maker is in default under the Note since the Maker has failed to pay to the Holder the amount of Principal and Interest when and as due under the Note.

The Holder hereby declares the entire unpaid balance of Principal and accrued, unpaid Interest upon the Note to be immediately due and payable.

If full payment of the Principal and Default Interest (as defined in the Note) is not received within ten (10) days, we will pursue all available legal rights and remedies under the Note and applicable law, including foreclosing or otherwise exercising the Holders' rights pursuant to the Security Agreement entered into by and between Baymark ACET Holdco, LLC and the Holder.

This demand is made without waiver of any of the Holder's rights or remedies

Very truly yours,

Steve Kronengold

cc:  Baymark ACET Holdco, LLC
Granite Park II
5700 Granite Parkway, Suite 435
Plano, Texas 75024
Attn: David Hook
Email: dhook@baymarkpartners.com

Sarit Molcho
S. Friedman & Co.
Amot Investments Tower
2 Weizmann St, P.O.Box 33123
Tel-Aviv 64239   Israel
Email: saritm@friedman.co.il

**EXHIBIT 2**

## 0788 CUBESMART TX DALLAS COIT ROAD
**17613 Coit Road**
**Dallas, TX 75252**

## MOVE-OUT COMPLETE
PRINTED: 11/16/2018

**Account Number:**
**1004081114**

### Dana Tomerlin
3701 Lamesa Dr.
Garland, TX 75041
(972) 977-6357

| MOVE-OUT DATE | UNIT |
|---|---|
| 11/16/2018 | 146 |

CASE NO. DC-19-09828

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), | § § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § | DALLAS COUNTY, TEXAS |
| ACET GLOBAL, LLC<br>BAYMARK ACET HOLDCO, LLC,<br>BAYMARK ACET DIRECT INVEST, LLC,<br>BAYMARK MANAGEMENT, LLC,<br>BAYMARK PARTNERS,<br>DAVID HOOK, TONY LUDLOW, and<br>WINDSPEED TRADING, LLC, | § § § § § § § § | |
| Defendants. | § | 116TH JUDICIAL DISTRICT |

## DEFENDANT WINDSPEED TRADING, LLC'S ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

TO:   Plaintiff D&T Partners, LLC (successor in interest to ACET Venture Partners, LLC), by and through its attorney of record, Jason B. Freeman, Freeman Law, PLLC, 2595 Dallas Parkway, Suite 420, Frisco, Texas 75034.

NOW COMES, Windspeed Trading, LLC (herein "Windspeed"), one of the Defendants in the above entitled and numbered cause, acting pursuant to Rule 197 of the Texas Rules of Civil Procedure, and serves the following Answers to Plaintiff's Second Set of Interrogatories ("Interrogatories").

## I.
## GENERAL OBJECTIONS TO INSTRUCTIONS & DEFINITIONS

1.   Windspeed objects to the Interrogatories as a whole to the extent that they call for the disclosure of information protected by the attorney-client privilege, the attorney work product privilege, the parties' communications privilege and the investigative privilege.

2.   Windspeed objects to the Instructions and Definitions to the extent they seek to impose obligations upon Windspeed in excess of those permitted by the Texas Rules of Civil

Procedure.

## II.
## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 6**: Who paid for the drafting of the Amended and Restated Company Agreement of Windspeed Trading, LLC?

**ANSWER:**

Subject to and without waiving the General Objections, Windspeed was represented by its own legal counsel in the negotiation and preparation of the Amended and Restated Company Agreement. Windspeed paid its own legal fees. Super G Capital, LLC and Baymark Partners Management, LLC were represented by separate legal counsel. Windspeed does not know who paid their legal fees.

**INTERROGATORY NO. 7**: Who paid the filing fees for the Certificate of Formation of Windspeed Trading, LLC.

**ANSWER:**

Subject to and without waiving the General Objections, Windspeed.

**INTERROGATORY NO. 8**: List all persons who provided input with respect to the provisions or terms of the Amended and Restated Company Agreement of Windspeed Trading, LLC?

**ANSWER:**

Windspeed incorporates its General Objections and further objects to Interrogatory No. 8 as vague and ambiguous and would require Windspeed to speculate as to what information would be responsive. Subject to and without waiving the foregoing, William Szeto with the assistance of its counsel. Windspeed did not negotiate the agreement directly with Baymark and Super G. It was negotiated between their relative counsel.

**INTERROGATORY NO. 9**: Who made the decision to hire William Szeto?

**ANSWER:**

Windspeed incorporates its General Objections and further objects to Interrogatory No. 9 as vague and ambiguous and would require Windspeed to speculate as to the "where" and "when" the decision to hire Mr. Szeto was made. Subject to and without waiving the foregoing, Matt Denegre at Baymark was the person who appointed Mr. Szeto as CEO of ACET Global, but Mr. Szeto does not have any direct knowledge of who made the decision to appoint him. As for Windspeed, Mr. Szeto made that decision, because he owns Windspeed.

**INTERROGATORY NO. 10**: List all persons who paid for the drafting of any original or prior company agreement that preceded the Amended and Restated Company Agreement of Windspeed Trading, LLC?

**ANSWER:**

Subject to and without waiving the General Objections, Windspeed.

**INTERROGATORY NO. 11**: List all persons who provided input with respect to any original or prior company agreement that preceded the Amended and Restated Company Agreement of Windspeed Trading?

**ANSWER:**

Windspeed incorporates its General Objections and further objects to Interrogatory No. 11 as vague and ambiguous and would require Windspeed to speculate as to what information would be responsive. Subject to and without waiving the foregoing, William Szeto with the assistance of counsel.

**INTERROGATORY NO. 12**: Explain the qualifications of William Szeto to serve in a management role or as CEO with respect to Windspeed Trading, LLC.

**ANSWER:**

Windspeed incorporates its General Objections and further objects to Interrogatory No. 12 as vague and ambiguous and would require Windspeed to speculate as to what information would be responsive. Subject to and without waiving the foregoing, William Szeto is a 28-year veteran of Sprint where he was a senior manager focusing on the company's optical networking directions. Mr. Szeto was instrumental in the development and implementation of Sprint's DWDM system and was responsible for the development of the technology needed to interface IP routers directly over wavelengths. Prior to focus his work on fiber optics, Mr. Szeto was responsible for the design of both AC, DC and standby power plants for Sprint. He was a licensed electrical inspector for the state of Ohio, and an emergency electrical inspector for Richland County, Ohio. He left Sprint in 1999 to become the Chief Technology Officer for Monterey Networks and Principal Technologist for the Core Optical Transport Business Unit for Cisco Systems. During the Monterey/Cisco period, he was a member of the Board of Directors for the Optical Internetworking Forum (OIF). From 2000 to 2001, Mr. Szeto was President and CEO of Iris Labs from 2000 through 2001. In 2001, Mr. Szeto founded Ceterus Networks and served as President and CEO through 2003 and Chief Technology Officer until its acquisition in 2009. From 2011 to 2016, Mr. Szeto served as CTO, Terrestrial Network systems for Xtera Communications. Mr. Szeto has also provided consulting services to various venture capital companies working with and assisting their portfolio companies and evaluating prospective investment opportunities. Mr. Szeto remains active with a number of telecommunications and electrical standards communities. He previously served as Vice Chair of ATIS's OPTXS OHI committee and was a member of the board for ATIS. He is also a member of IEEE responsible for developing electrical and safety standards as part of the National Fire and Safety Protection Code. He currently is a member of Code-Making Panel 3 for the National Electrical Code, which develops the National Electrical Code (NEC) for the US and the World. Mr. Szeto is a co-author of "Delivering Carrier Ethernet" published by McGraw Hill in 2007. He holds a B.S. in Electrical Engineering and an MBA from the Ohio State University and is a registered professional engineer in the state of Ohio and Kansas.

**INTERROGATORY NO. 13**: When did Windspeed Trading, LLC first begin to receive revenue or funds?

**ANSWER:**

Subject to and without waiving the General Objections, Windspeed first received funds on October 18, 2018 from the $200,000 Super G loan.

**INTERROGATORY NO. 14**: List all bank accounts owned or controlled by Windspeed, LLC since its 2018 formation.

**ANSWER:**

Subject to and without waiving the General Objections, Windspeed has the following bank accounts:

Texas Capital Bank Account No. ------7475

Texas Capital Bank Account No. ------3770

**INTERROGATORY NO. 15**: Explain Windspeed Trading, LLC's relationship with Super G Capital, LLC.

**ANSWER:**

Windspeed incorporates its General Objections and further objects to Interrogatory No. 15 as vague and ambiguous and would require Windspeed to speculate as to what information would be responsive. Windspeed further objects to said Interrogatory in that it is overly broad, unduly burdensome and harassing. Subject to and without waiving the foregoing, on October 18, 2018, Super G Capital made a loan of $200,000 to Windspeed. On that same date, Super G Capital executed a Warrant Purchase Agreement with Windspeed to purchase a Warrant to acquire up to a 40% membership interest in Windspeed. In connection with the Warrant Purchase Agreement, Windspeed granted Super G Capital a right to appoint one person to Windspeed's Board of Managers. Super G Capital elected to appoint Steven Bellah as its designee to Windspeed's Board of Managers. On March 1, 2019, Windspeed entered into a Foreclosure Sale Agreement with Super G Capital to purchase certain assets that Super G Capital had acquired upon foreclosure of its lien on ACET Global's assets. As consideration for the purchase of those assets, Windspeed assumed $516,844.86 in debt owed by ACET Global to Super G Capital, which was evidenced by an Amended and Restated Business Loan & Security Agreement between Super G Capital and Windspeed.

**INTERROGATORY NO. 16**: Provide a list of each and every payment that Windspeed Trading, LLC has made to Super G Capital, LLC.

**ANSWER:**

Subject to and without waiving the General Objections, Windspeed refers to the document produced herewith, which lists entries from October 19, 2019 through November 18, 2020, showing

debits and credits from/to Super G.

**INTERROGATORY NO. 17**: Explain why in 2018 Windspeed Trading, LLC's website posted inventory for sale that was owned at that time by ACET Global, LLC?

**ANSWER:**

Subject to and without waiving the General Objections, Windspeed did not maintain a website in 2018 and has never offered or sold any products on or through any website that it maintained or operated for itself.

Vanessa Torres, a former Windspeed employee, registered a domain at windspeedtradingllc.com in October 2018 without Mr. Szeto's authorization or knowledge. Windspeed believes that Ms. Torres modified or copied a website that was previously used by ACET Global, LLC at www.koolulu.com. The products shown on the windspeedtradingllc.com website were products previously shown on the koolulu.com website. However, the windspeedtradingllc.com website did not have ecommerce functionality enabled, which meant that products could not be ordered or sold directly from that website.

**INTERROGATORY NO. 18**: Provide a list of each and every payment that Windspeed Trading, LLC has made to any defendant in this case, including ACET GLOBAL, LLC; BAYMARK ACET HOLDCO, LLC; BAYMARK ACET DIRECT INVEST, LLC; BAYMARK MANAGEMENT, LLC; BAYMARK PARTNERS; DAVID HOOK; TONY LUDLOW.

**ANSWER:**

Subject to and without waiving the General Objections, Windspeed has never made any payment to any defendant in this case.

**INTERROGATORY NO. 19**: Who paid for the drafting of the Amended and Restated Company Agreement of Windspeed Trading, LLC?

**ANSWER:**

See Windspeed's response to Interrogatory No. 6.

**INTERROGATORY NO. 20**: Who paid the filing fees for the Certificate of Formation of Windspeed Trading, LLC.?

**ANSWER:**

See Windspeed's response to Interrogatory No. 7.

Respectfully submitted,

**HIGIER ALLEN & LAUTIN, P.C.**


By: */s/ Brenda A. Hard-Wilson*
     **Timothy P. Woods**
     State Bar No. 21965500
     twoods@higierallen.com
     **Brenda A. Hard-Wilson**
     State Bar No. 24059893
     bhard-wilson@higierallen.com
     The Tower at Cityplace
     2711 N. Haskell Ave., Suite 2400
     Dallas, Texas 75204
     (972) 716-1888
     (972) 716-1899 Telecopy

ATTORNEYS FOR DEFENDANT WINDSPEED TRADING, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on the _31st_ day of March 2021, a true and correct copy of the above and foregoing document was served via e-service to:

Jason B. Freeman
Ryan C. Dean
Freeman Law, PLLC
2595 Dallas Parkway, Suite 420
Frisco, Texas 75034
E-Mail: Jason@freemanlaw-pllc.com
ATTORNEY FOR PLAINTIFF

Edward P. Perrin, Jr.
Hallett & Perrin
1445 Ross Avenue, Suite 2400
Dallas, TX 75202
E-Mail: EPerrin@hallettperrin.com
ATTORNEY FOR DEFENDANTS
ACET GLOBAL, LLC,
BAYMARK ACET HOLDCO, LLC
BAYMARK ACET DIRECT INVEST, LLC,
BAYMARK MANAGEMENT, LLC,
BAYMARK PARTNERS, DAVID HOOK,
AND TONY LUDLOW

/s/ *Brenda A. Hard-Wilson*
Brenda A. Hard-Wilson

## **VERIFICATION**

STATE OF TEXAS §
§
COUNTY OF COLLIN §

    Before me, the undersigned notary public, on this date personally appeared William Szeto, the Manager, CEO and President of Windspeed Trading, LLC, known to me, who after being by me first duly sworn upon his oath, deposed and stated that he has read the above and foregoing Answers to Second Set of Interrogatories, and each and every statement of fact contained therein is within his/her personal knowledge and is true and correct.

_____
William Szeto
Manager, CEO and President
Windspeed Trading, LLC

SUBSCRIBED AND SWORN TO BEFORE ME, this 27th day of March 2021.

_____
Notary Public in and for the State of Texas



TANIA SARKER
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-04-21
Notary ID # 12958330-6