UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), Directly and Derivatively on Behalf of ACET GLOBAL, LLC and BAYMARK ACET HOLDCO, LLC | § § § § § § | |
| and | § § | |
| ACET Global, LLC, | § § | |
| **Plaintiffs,** | § § | |
| v. | § § | CIVIL CAUSE NO. 3:21-cv-01171-B |
| BAYMARK PARTNERS, LP; BAYMARK PARTNERS MANAGEMENT, LLC; SUPER G CAPITAL, LLC; SG CREDIT PARTNERS, INC.; BAYMARK ACET HOLDCO, LLC; BAYMARK ACET DIRECT INVEST, LLC; et al., | § § § § § § § § § | |
| **Defendants.** | § | |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO SUPER G CAPITAL, LLC AND STEVEN BELLAH'S MOTION TO DISMISS AND BRIEF IN SUPPORT

Jason B. Freeman
 TX Bar No. 24069736

**FREEMAN LAW, PLLC**
7011 Main Street
Frisco, Texas 75034
Telephone: 214.984.3410
Fax: 214.984.3409
Jason@freemanlaw.com

**ATTORNEY FOR PLAINTIFFS**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................................................ ii

**TABLE OF AUTHORITIES** .................................................................................................. iii

**I.**   **BACKGROUND.** ......................................................................................................... 1

**II.**   **RELEVANT FACTS.** .................................................................................................. 1

    A.   ACET GLOBAL PURCHASES THE ASSETS OF ACET VENTURE PARTNERS, LLC. ..................... 1
    B.   THE SUPER G COLLATERAL ASSIGNMENT. .................................................................... 2
    C.   DAMIT'S TERMINATION. ................................................................................................ 2
    D.   SZETO AND WINDSPEED TRADING, LLC. ...................................................................... 3
    E.   THE "WIND DOWN" OF GLOBAL. ................................................................................... 3
    F.   WINDSPEED. .................................................................................................................. 4
    G.   THE COVER UP AND FAKE FORFEITURE NOTICE. ........................................................... 5
    H.   THE PURPORTED FORECLOSURE SALE. .......................................................................... 5
    I.   THE FRAUDULENT BANKRUPTCY FILING AND CONTRADICTORY TAX FILINGS. .................. 5
    J.   STATE COURT LITIGATION. ............................................................................................ 6

**III.**   **STANDARD OF REVIEW UNDER RULE 12(B)(6).** ................................................ 7

**IV.**   **ARGUMENTS AND AUTHORITIES.** ....................................................................... 8

    A.   OBJECTION TO INCORPORATION AND OTHER PROCEDURAL DEFICIENCIES ......................... 8
        1.   *Incorporation.* ....................................................................................................... 8
        2.   *Failure to Conference.* .......................................................................................... 9
    B.   RICO CLAIMS. .............................................................................................................. 9
        1.   *Defendants' Motion.* .............................................................................................. 9
        2.   *Plaintiffs' 18 U.S.C. § 1962(c) Claims.* ............................................................... 10
        3.   *Defendants are RICO "Persons".* ....................................................................... 11
        4.   *Predicate Acts.* .................................................................................................... 11
        5.   *Reliance and Proximate Cause.* ......................................................................... 13
        6.   *Plaintiffs have Properly Pled an Association-in-Fact.* ....................................... 13
        7.   *Plaintiffs have Properly Pled the Defendants' Involvement in the RICO Pattern of Racketeering.* ......... 14
        8.   *Plaintiffs' 18 U.S.C. § 1962(d) Claims.* ............................................................. 16
    C.   STATE LAW CLAIMS. .................................................................................................... 17
        1.   *Common Law Fraud.* ........................................................................................... 17
        2.   *Aiding and Abetting Breach of Fiduciary Duties.* ............................................... 17
        3.   *Texas Uniform Fraudulent Transfer Act.* ........................................................... 17
        4.   *Civil Conspiracy.* ................................................................................................ 18

**V.**   **PRAYER.** ................................................................................................................... 18

**CERTIFICATE OF SERVICE** ............................................................................................ 20

## TABLE OF AUTHORITIES

### Cases

*Bank of Mongolia v. M&P Global Fin.,*
  2010 WL 11549711 (S.D. Fla., Sept. 3, 2020) ............................................12, 15
*Black Cat Exploration & Production, LLC v. MWW Capital Limited, et al.,*
  2015 WL 12731751 (Civil Action No. 1:15-cv-51-BL, n.3, April 29, 2015) ........................ 8
*Boyle v. U.S.,*
  556 U.S. 938 (2009) ...........................................10, 13, 14, 15
*Brunswick Corp., Mercury Marine Div. v. E.A. Doyle Mfg. Co.,*
  770 F.Supp. 1351 (E.D. Wis. 1991) ..........................................12
*Casperone v. Landmark Oil & Gas Corp,*
  819 F.2d 112 (5th Cir. 1987) ..........................................12, 14
*Chaney v. Dreyfus Serv. Corp.,*
  595 F.3d 219 (5th Cir. 2010) ..........................................16
*Collins v. Morgan Stanley Dean Witter,*
  224 F.3d 496 (5th Cir. 2000) ..........................................7
*Crowe v. Henry,*
  43 F.3d 198 (5th Cir. 1995) ..........................................11
*Cypress/Spanish Fort I, L.P. v. Professional Service Industries, Inc.,*
  814 F.Supp. 2d 698 (N.D. Tex., Aug. 29, 2011) ..........................................16
*Delta Truck & Tractor, Inc. v. J.I. Case Co.,*
  855 F.2d 241 (5th Cir. 1988) ..........................................9
*First Interstate Bank of Nevada, N.A. v. Nat'l Republic Bank of Chicago,*
  1985 WL 1118 (N.D. Ill. Mar.10, 1985) ..........................................12
*George v. Blue Diamond Petroleum, Inc.,*
  718 F.Supp. 539 (W.D. La., July 20, 1989) ..........................................12, 15
*H.J. Inc. v. Northwestern Bell Telephone Co.,*
  492 U.S. 229 (1989) ..........................................15
*Howell Petroleum Corp. v. Weaver,*
  780 F.2d 1198 (5th Cir. 1986) ..........................................7
*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
  623 F.Supp.2d 798 (S.D. Tex. 2009) ..........................................12
*In re Performance Nutrition, Inc.,*
  239 B.R. 93 (Bankr. N.D. Tex. 1999) ..........................................12
*Lowrey v. Texas A&M Univ. Sys.,*
  117 F.3d 242 (5th Cir. 1997) ..........................................7
*Pinkerton v. United States,*
  328 U.S. 640 (1946) ..........................................12
*Proctor & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,*
  879 F.2d 10 (2d Cir. 1989) ..........................................16
*Reeves v. Ernst & Young,*
  507 U.S. 170 (1993) ..........................................14
*Riddell v. Riddell Washington Corp.,*
  866 F.2d 1480 (D.C. Cir. 1989) ..........................................12

*Saffran v. Boston Sci. Corp.,*
    2008 U.S. Dist. LEXIS 52557 (E.D. Tex. July 9, 2008) ........................................ 8
*Salinas v. U.S.,*
    522 U.S. 52 (1997) ........................................................................................ 16
*Sedima v. Imrex Co., Inc.,*
    473 U.S. 479 (1985) ...................................................................................... 9
*Swierkiewicz v. Sorema N. A.,*
    534 U.S. 506 (2002) ...................................................................................... 7
*U.S. v. Elliott,*
    571 F.2d 880 (5th Cir. 1978) ....................................................................... 14
*U.S. v. Maltos,*
    985 F.2d 743 (5th Cir. 1992) ....................................................................... 16
*U.S. v. Posada-Rios,*
    158 F.3d 832 (5th Cir. 1998) ....................................................................... 16
*United States v. Hurley,*
    63 F.3d 1 (1st Cir. 1995) .............................................................................. 12
*Varela v. Gonzales,*
    2013 WL 5658606 (N.D. Tex. Oct. 17, 2013) ............................................. 9

## Statutes

18 U.S.C. § 1961(1) ................................................................................................. 10
18 U.S.C. § 1961(3) ................................................................................................. 10
18 U.S.C. § 1961(4) ................................................................................................. 10
18 U.S.C. § 1961(5) ................................................................................................. 10
18 U.S.C. § 1962(a) .............................................................................................. 9, 16
18 U.S.C. § 1962(b) ................................................................................................. 16
18 U.S.C. § 1962(c) ......................................................................................... 9, 10, 16
18 U.S.C. § 1962(d) ............................................................................................. 9, 16
18 U.S.C. § 1964(c) ................................................................................................... 9

## Rules

Fed. R. Civ. P. 9(b) ................................................................................................ 7, 8
Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 7

## Other Authorities

L.R. 7 (N.D. Tex.) ................................................................................................... 8, 9

Plaintiffs, by and through counsel, file this *Plaintiffs' Response in Opposition to Motion to Dismiss and Brief in Support* (the "**Response**") in response to the motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "**Motion**") filed by Defendants Super G Capital, LLC ("**Super G**") and Steven Bellah ("**Bellah**") (Super G and Bellah collectively "**Defendants**").

For the reasons set forth below, Plaintiffs respectfully request that this Court deny the Motion.

## I.   Background.

Plaintiffs' Amended Complaint (the "**Complaint**") alleges causes of action against the Defendants under the Racketeer Influenced and Corrupt Organizations Act ("**RICO**").  In addition to the RICO claims, the Complaint alleges causes of action under Texas law for:  (i) aiding and abetting breach of fiduciary duties; (ii) claims under the Texas Uniform Fraudulent Transfer Act; and (iii) civil conspiracy.  The 157-page Complaint is well pled.  Taken together, the Complaint alleges that the Defendants engaged in a pre-conceived and concerted effort to effectively steal and misappropriate all of the assets from an existing business, D&T Partners, LLC ("**D&T Partners**"), through the fraudulent guise of what the Defendants now attempt to label as a lawful foreclosure and/or sale.

## II.   Relevant Facts.

### A.   ACET Global Purchases the Assets of ACET Venture Partners, LLC.

In the summer of 2017, Baymark Partners, LP ("**Baymark**") and its principals, David Hook ("**Hook**"), Tony Ludlow ("**Ludlow**"), and Matthew Denegre ("**Denegre**") approached Tomer Damti ("**Damti**"), seeking to purchase the assets of ACET Ventures, LLC ("**ACET**"), an e-commerce business in which Damti owned.  (Dkt. No. 36, ¶ 56).  To facilitate the purchase of assets, Baymark formed another entity, ACET Global ("**Global**").  (*Id.*, ¶ 57).  And, through an Asset Purchase Agreement, dated July 14, 2017 (the "**APA**"), Global purchased all of the assets of ACET.  (*Id.*, ¶ 58).

Under the APA, Global agreed to:  (1) pay $850,000 to D&T Partners, subject to certain adjustments; (2) provide a subordinated secured promissory note in the amount of $3,230,000 in favor

of D&T Partners; and (3) provide D&T Partners with a 25% common membership interest in Baymark ACET Holdco, LLC ("**Baymark Holdco**"). (*Id.*, ¶ 64). As part of the transaction, Global executed a promissory note with D&T Partners, memorializing the $3,230,000 payable to D&T Partners (the "**D&T Note**"). (*Id.* ¶ 65). The D&T Note required a first installment payment to D&T Partners on October 31, 2018. (*Id.*). That first installment payment was never made. (*Id.* ¶85) Separately, Baymark Holdco entered into a security agreement with D&T Partners. (*Id.*, ¶ 66).

### B.  The Super G Collateral Assignment.

After the APA, Hook caused Global to enter into a Collateral Assignment of Rights Under Acquisition Transaction Documents and Subordination Agreement (the "**Collateral Assignment**") with Super G Capital, LLC ("**Super G**"), whose senior executive at all times relative to the Complaint, was Defendant Bellah. The Collateral Assignment provided that Super G would provide a term loan facility of up to $1 million (the "**Super G Note**"). (Id., ¶ 68).

D&T Partners subordinated its security interest to Super G based on Hook, Ludlow, and Baymark's representations in June and July of 2017 that:  (1) Damti would maintain managerial authority and discretion; and (2) Global did not intend (and that Baymark, Hook, and Ludlow did not intend to cause it) to default on the loan to D&T Partners or default on the loan from Super G. (*Id.*, ¶ 77).

### C.  Damti's Termination.

On February 12, 2018, Denegre, purporting to represent Ludlow and Baymark, informed Damti that he was terminating Damti's employment with Global. (*Id.*, ¶ 79). Although Denegre, who was not an employee or agent of Global, stated that the termination was based on poor performance, at the time of the February termination, January 2018 revenues for Global were 248.26% more than those in January 2017. (*Id.*, ¶¶ 79-80).

### D.  Szeto and Windspeed Trading, LLC.

When the APA was entered into, Baymark had not yet formed Windspeed.  (*Id.*, ¶ 63). Curiously, however, Denegre had a recurring weekly call scheduled on his calendar for "Windspeed" **that began roughly a month prior to the closing date of the APA**.  (*Id.*).

On or around February 14, 2018, Szeto became the CEO of Global.  (*Id.*, ¶ 81).  According to Hook, Szeto "work[ed] for free" with no financial promise made to him or expectation of a financial award.  (*Id.*, ¶ 82).

Although Baymark was in compliance with the Super G Note in February 2018, or the month in which Damti was terminated, Global, as part of its plan created and agreed to by Baymark, Super G and Bellah, "defaulted" on its note to Super G shortly after Szeto was named CEO of Global.  (*Id.*, ¶¶ 84-85).  At the time of the default, "Global had millions of dollars of assets and an ongoing business operation."  (*Id.*, ¶ 224).

Because of the "default," Baymark and Super G entered into a Forbearance Agreement in April of 2018, which provided for a forbearance period until October 25, 2018.  (*Id.*, ¶86). Significantly, the forbearance period ended just days before the D&T Note payments would become due to D&T Partners.  (*Id.*).  Pursuant to the Forbearance Agreement, Global would "wind down" and transfer its assets and business operations to a newly-formed entity:  Windspeed.  (*Id.*).  Super G relied on Baymark to "come up with [the] plan" and Baymark and its principals offered the restructuring plan to Super G.  (*Id.*, ¶ 115).  Super G and Bellah were more than happy to go along, because it was clear that, by virtue of the plan, they would take over the assets of ACET Global while avoiding the debt to D&T Partners.

### E.  The "Wind Down" of Global.

In April of 2018, Baymark began to set the stage to execute their "wind down" plan.  (*Id.*, ¶ 96).  Szeto, while serving as the CEO of Global, worked closely with Denegre and Ludlow to fine

tune the "wind down" plan and, ultimately, to put the plan into action.  (*Id.*). According to an email written by Ludlow, the parties expressly wanted to ensure that Global did not "default on Tomer [Damti's] debt and have [Damti] regain the company."  (*Id.*, ¶ 111).

On September 27, 2018, while he was still CEO of Global, Szeto filed a Certificate of Formation Limited Liability Company for Windspeed.  (*Id.*, ¶ 122).  Szeto continued to serve as CEO of both Global and Windspeed at the same time. (*Id.*).

### F.   Windspeed.

On October 18, 2018, or two weeks before the D&T Note payment would become due on October 31, 2018, Szeto, on behalf of Windspeed; Ludlow, on behalf of BP Management; and Cole, on behalf of Super G, executed an Amended and Restated Company Agreement of Windspeed ("**Company Agreement**").  (*Id.*, ¶ 152).  Under the Company Agreement, they became business partners with the following beneficial ownership: BP Management (40%), Super G (40%), and Szeto (20%).  (*Id.*, ¶¶ 152, 157).  The Company Agreement provided Super G and BP Management with perpetual authority to appoint and control a board member of Windspeed's three-person board, in addition to the right to replace those board members.  (*Id.*, ¶ 164).  Under the Company Agreement, the board members managed all of the business and affairs of Windspeed by majority—*i.e.*, Super G and BP Management maintained complete control.  (*Id.*).

In October of 2018, Szeto began serving as the CEO of Windspeed.  (*Id.*, ¶ 177).  Later, every employee of Global was transferred to Windspeed after the "wind down" was executed.  (*Id.*, ¶ 178).  Specifically, each employee was notified on October 9, 2018, via email that they had been terminated from Global effective September 28, 2018, and that their employment with Windspeed had become effective thereafter. (*Id.*, ¶ 179).

### G. **The Cover Up and Fake Forfeiture Notice.**

Many months after the purported transfer of Global's assets to Windspeed and the wind-down of Global, on January 31, 2019, Super G (in coordination with Baymark) issued a Notice of Forfeiture ("**Forfeiture Notice**").  (*Id.*, ¶ 226; Complaint Ex. 17).  The Forfeiture Notice was sent to the attention of Hook at his Baymark address (not the old Global address).  (*Id.*).  Moreover, the Forfeiture Notice was issued well after all parties had full knowledge that the assets at issue (*i.e.*, Global's assets) had already been transferred months before to Windspeed, an entity that was beneficially owned and controlled by Super G, BP Management, and Szeto.  (*Id.*, ¶ 227).  Because Global had already transferred all of its assets and operations to Windspeed several months before, there was no physical foreclosure sale as Windspeed continued those operations and sold off the inventory.  (*Id.*, ¶ 233).

### H. **The Purported Foreclosure Sale.**

The parties executed a Foreclosure Sale Agreement that reflected a sales date of March 1, 2019.  (*Id.*, ¶ 242).  However, the parties executed and completed the sale after March 1, 2019.  (*Id.*, ¶ 249).  Indeed, the parties purposely backdated the Foreclosure Sale Agreement to make it appear as if the sale had occurred earlier.  (Id.).  In addition, according to the Foreclosure Sale Agreement, the "purchase price" (*i.e.*, the amount Windspeed agreed to "pay" to Super G) equaled the exact amount that was owed under the Super G Note.  (*Id.*, ¶ 246).

### I. **The Fraudulent Bankruptcy Filing and Contradictory Tax Filings.**

On October 23, 2019, Global filed a Voluntary Petition for Non-Individuals Filing for Bankruptcy with the Eastern District of Texas seeking relief under Chapter 7 of the Bankruptcy Code.  (Dkt. No. 36, ¶ 252; Complaint Ex. 19).  Ludlow signed the petition on behalf of Global.  (*Id.*)  In the petition, Global acknowledged that it owed ACET Ventures Partners, LLC $3,230,000. (*Id.*)  Global also asserted that it had transferred within one year $30,000 of property to Super G on "01/2019" and that it had no significant assets. (*Id.*)

The bankruptcy petition contained a multitude of false statements designed to conceal assets from the bankruptcy trustee and from D&T Partners, the latter of which had filed a lawsuit against Global, Windspeed, and Baymark and its parties in the District Court of Dallas County.  (Dkt. No. 36, ¶ 15).  For example, the petition requested information as to whether "inventories of the debtor's property . . . [had] been taken within 2 years before filing this case?" (Dkt. No. 36, ¶ 269-270).  Ludlow and Global answered "No".  (*Id.*, ¶ 270).  In deposition testimony in the state court action, the Global parties admitted that this answer was wrong and that only days prior to the bankruptcy filing they had reviewed Global's purported inventory.  (*Id.*, ¶¶ 270-274).  In addition, the petition requested Global to "[l]ist any property kept in storage units or warehouses within one year before filing this case." (*Id.*, ¶ 281).  Ludlow and Global answer "None".  (*Id.*).  However, CubeSmart records indicate that Tomerlin, Ketter, and/or Windspeed moved Global's inventory into storage at least as of October 25, 2018 and moved such inventory from storage on or about November 16, 2018.  The bankruptcy petition contained other fraudulent representations.  (*Id.*, ¶ 15).

Significantly, the federal tax returns of the relevant entity, Baymark ACET Holdco, LLC, which held Global's membership interests, represented that Global's assets were significantly more than Global reported on the bankruptcy petition.  (Dkt. No. 36, ¶ 14).  More specifically, on its 2018 IRS Form 1065, *U.S. Return of Partnership Income*, Baymark ACET Holdco, LLC represented that it had $3,023,970 of total assets as of December 31, 2018. (*Id.*, ¶ 17). In addition, the 2019 IRS Form 1065, *U.S. Return of Partnership Income*, for Baymark ACET Holdco, LLC reported that the entity had received $2,907,290 in "proceeds" from the "foreclosure sale" of Global's assets.  (*Id.*, ¶ 18).

**J.   State Court Litigation.**

During the state court litigation, the defendants attempted to further the RICO enterprise through more deceit and strong-arm tactics.  For example, during the deposition of Denegre, after Plaintiffs' counsel asked an important question regarding the foreclosure sale at issue, Ludlow stated:

"Matthew [Denegre], shut the fuc* up." (Dkt. No. 36, ¶ 1). Thereafter, taking his cue from Ludlow, Denegre refused to answer the question. (*Id.*). Szeto, as the boss of the Windspeed Actors, also instructed his employees prior to their scheduled deposition testimonies on how to answer certain questions that may be asked by Plaintiffs' attorneys.

### III.   Standard of Review Under Rule 12(b)(6).

In the Fifth Circuit, motions to dismiss for failure to state a claim under Rule 12(b)(6) are "viewed with disfavor and . . . [are] rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Collins*, 224 F.3d at 498. Accordingly, the district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* The relevant question in determining whether a motion to dismiss should be granted is "whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Id.*

According to Rule 9(b), "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b)'s heightened particularly requirement with respect to claims of fraud is a limited exception to Rule 8's notice pleading standard. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. . . . This Court, however, has declined to extend such exceptions to other contexts."). Accordingly, Rule 9(b) requires the Plaintiffs to plead the wire, mail, and bankruptcy fraud predicates with particularity; however, Rule 9(b) is inapplicable to all other RICO elements. *See, e.g., Howell Petroleum Corp. v. Weaver*, 780 F.2d 1198, 1199 (5th Cir. 1986) (holding that pleading RICO elements is governed by the "liberal notice-pleading procedure of the Federal

Rules of Civil Procedure).  To the extent the Defendants attempt to broaden Rule 9(b)'s application to non-fraud elements, they are mistaken, and only the Rule 8 pleading standard should apply.

**IV.**  <u>**Arguments and Authorities.**</u>

    **A.**  <u>**Objection to Incorporation and other Procedural Deficiencies**</u>

        **1.**  <u>**Incorporation.**</u>

At the outset, Plaintiffs object to Defendants' attempt to incorporate six (6) separate filings in this litigation.  The Northern District has held it is improper to incorporate by reference arguments from other legal filings in the same litigation.  *See Black Cat Exploration & Production, LLC v. MWW Capital Limited, et al.*, 2015 WL 12731751 (Civil Action No. 1:15-cv-51-BL, n.3, April 29, 2015) (citing *Saffran v. Boston Sci. Corp.*, No. 2-05-cv-548, 2008 U.S. Dist. LEXIS 52557, n. 5 (E.D. Tex., July 9, 2008) in holding that "allowing a party to incorporate multiple arguments by reference into its motion without obtaining prior leave of court procedurally 'eviscerates the court's page limit restriction'"). For these reasons, the Court should only consider the issues specifically raised in Defendants' Motion.

Plaintiffs further object to Defendants' reference to or attempted incorporation of any other materials not specifically included in their appendix, as required by L.R. 7.1(i)(1).

Plaintiffs further move to strike any and all attempts to incorporate other documents or filings that are not specifically laid out in Defendants' Motion.[1]

---

[1] This includes the following:  (1) "Super G and Bellah hereby adopt and incorporate the arguments contained in the Baymark Defendants', Holdco's, Windspeed's and William Szeto's, the Windspeed Employees', SG Credit Partners Inc.'s and Marc Cole's, and Hallett & Perrin PC and Julie A. Smith's respective briefs in support of their motions to dismiss claims asserted by Plaintiff D&T Partners LLC purportedly on behalf of ACET Global and Holdco." (Defendants' Motion, p. 6); (2) "Super G and Bellah hereby adopt and incorporate the arguments contained in Baymark's Brief (Doc. 49), Holdco's Brief (Doc. 52), Windspeed and Szeto's Brief (Doc. 46-1), Windspeed Employees' Brief (Doc. 47-1), SG Credit's and Cole's Brief (Doc. 48-1), and Hallett & Perrin's Brief (Doc. 51), in support of their respective motions to dismiss Plaintiff's RICO claims for failure to state the essential and foundational RICO elements. (*Id.*, at p. 7) (3) "So Super G and Bellah hereby adopt and incorporate the arguments contained in the "Fiduciary Claim Defendants" respective briefs in support of their motions to dismiss Plaintiff's [*sic*] underlying breach-of-fiduciary-duty claims" (*Id.*, at p. 20); (4) "Because any conspiracy claim falls with the dismissal of the underlying claims, Super G and Bellah hereby adopt and incorporate the arguments made by the other Defendants for dismissal of Plaintiff's underlying claims."

2. **Failure to Conference.**

Pursuant to the Motion, Defendant Super G "conditionally moves" to transfer venue of claims for which this Court denies its motion to dismiss.  However, Super G failed to conference on such relief, as is required by L.R. 7.1(a).  Therefore, this Court should not consider the alternative relief requested.

B. **RICO Claims.**

"The Racketeer Influence and Corrupt Organization Act, originally passed to target mobsters and organized crime, has been interpreted to reach even 'respected and legitimate' businesses that violate the Act's prohibitions." *Varela v. Gonzales*, 2013 WL 5658606 (N.D. Tex. Oct. 17, 2013) (citing *Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985)).  Accordingly, 18 U.S.C. § 1964(c) provides a private civil action and treble damages for those who are injured by violations of RICO's substantive provisions, including 18 U.S.C. § 1962(c) and (d).  *Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 481 (1985). Plaintiffs have brought claims against Defendant Super G under 18 U.S.C. § 1962(a), (c) and (d), and Defendant Bellah under 18 U.S.C. § 1962(c) and (d). (Dkt. No. 36, ¶¶ 310-324; 325-338; and 339-367).

Under both 18 U.S.C. § 1962(c) and (d), three threshold elements must be met:  (1) a person must engage in (2) a pattern of racketeering activity; (3) connected to the acquisition, establishment, conduct, or control of an enterprise.  *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988).  "RICO is to be read broadly" and "liberally construed to effectuate its remedial purposes." *Sedima*, 473 U.S. at 497-98.

1. **Defendants' Motion.**

Defendants' Motion appears to allege three distinct, albeit somewhat vague, deficiencies in Plaintiffs' Amended Complaint that warrant the filing of their Motion, as follows:

> (1) That Plaintiffs fail to allege with sufficient particularity the predicate acts sufficient to form the basis of an alleged pattern of racketeering activity;

(2) That Plaintiffs fail to allege a plausible pattern of racketeering activity and continuity because the conduct amounts to a "single, lawful transaction" with no threat of continuing illegal conduct; and

(3) That Plaintiffs fail "to allege the existence of an enterprise by association in fact with its own structure and purpose apart from the alleged commission of the racketeering activities.

*See* Motion, p. 7.

### 2. Plaintiffs' 18 U.S.C. § 1962(c) Claims.

18 U.S.C. § 1962(c) provides that it is "unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." A RICO "person" is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). A RICO "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *see also Boyle v. U.S.*, 556 U.S. at 994 ("This enumeration of included enterprises is obviously broad, encompassing any . . . group of individuals associated in fact."). "Racketeering activity" is defined under RICO to mean certain proscribed acts, *see* 18 U.S.C. § 1961(1), and a "pattern of racketeering activity" means "at least two acts of racketeering activity . . . which occurred within ten years . . . after the commission of a prior act of racketeering activity," *see* 18 U.S.C. § 1961(5).

Here, Plaintiffs have identified 21 RICO "persons" under 18 U.S.C. § 1961(3). (Dkt. No. 36). In addition, Plaintiffs have alleged that Baymark Partners is an entity enterprise within the meaning of 18 U.S.C. § 1961(4). (Dkt. No. 36, at ¶31). Plaintiffs have also alternatively pled that the Defendants, represent an association-in-fact enterprise under 18 U.S.C. § 1961(4). (Dkt. No. 36, at ¶315).

### 3. **Defendants are RICO "Persons".**

Contrary to Defendants' assertions, Defendants are both clearly RICO "persons" under 18 U.S.C. § 1961(3).  As noted above, a RICO "person" is simply "any individual or entity capable of holding a legal or beneficial interest in property."  The Fifth Circuit has recognized that "[t]his is a very broad definition.  *Crowe v. Henry*, 43 F.3d 198 (5ᵗʰ Cir. 1995).

The facts outlined in Plaintiffs' Complaint clearly establish Bellah and Super G as persons subject to a civil RICO claim.  Super G and Bellah, with Bellah acting as Super G's senior executive, both were actively and continuously involved in the secret plan to steal the assets of ACET Global and place them outside of the reach of Plaintiffs.  Accomplishing this ultimate goal required Defendants to engage in multiple predicate acts – some of which they participated directly, others indirectly.  Effecting the illegal foreclosure required the direct involvement of Defendants in engaging in wire and mail fraud, of which they were directly involved.  *See* Complaint, ¶¶ 12, 226, 319, 357-359. Defendants were also indirectly involved in other predicate acts, including bankruptcy fraud, money laundering, and obstruction of justice that were all part of the "master plan" required to pull off Defendants' heist. *See* Complaint, ¶ ¶ 320, 360-362.

In addition to the continuous nature of the multiple acts required in order to effect the Defendants' ultimate goal, the conduct involved began at least as early as 2018 and is continuing to the present, and there is a continued threat of repetition of such conduct.

### 4. **Predicate Acts.**

The Complaint identified multiple predicate acts of wire fraud and mail fraud committed on the part of Defendants.  Instances of mail fraud include the mailing of a Notice of Forfeiture/Notice of Foreclosure (Complaint, ¶¶226, 356), and a Notice of Disposition and Sale of Collateral (Complaint, ¶¶12, 198).  Instances of wire fraud are represented by repeated communications in implementing the fraudulent plan.  *See, e.g.,* Complaint, ¶¶107, 153, 179, 215, 218, 219, 222, 228, 245, 295.

Defendants herein were also indirectly involved in the bankruptcy fraud, money laundering, and obstruction of justice that was all a part of the overall plan to fraudulently transfer the assets of ACET Global and avoid the debt of Plaintiffs.

Moreover, the Fifth Circuit has recognized that associates in an associate-in-fact enterprise may be liable under RICO even if they do not commit two or more predicate acts themselves. *See Casperone v. Landmark Oil & Gas Corp*, 819 F.2d 112 (5th Cir. 1987) ("Under RICO, a defendant need not personally commit the predicate acts provided that the evidence is sufficient to connect him to the fraudulent scheme."); *see also Bank of Mongolia v. M&P Global Fin. Svs.* No. 08-60623, 2010 WL 11549711, at *4 (S.D. Fla., Sept. 3, 2020) (same); *George v. Blue Diamond Petroleum, Inc.*, 718 F.Supp. 539, 550 (W.D. La., July 20, 1989) (same).

In addition, in *Pinkerton v. United States*, 328 U.S. 640, 647 (1946), the Supreme Court held that, "acts in furtherance of [a] conspiracy are ... attributable to the other[ ] [co-conspirators] for the purpose of holding them responsible for the substantive offense." *Pinkerton v. United States,* 328 U.S. 640, 646-47, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). See also *United States v. Hurley,* 63 F.3d 1, 22 (1st Cir. 1995) (applying *Pinkerton* liability to co-conspirators in determining criminal penalties for RICO violations); *Riddell v. Riddell Washington Corp. .,* 866 F.2d 1480, 1493 (D.C. Cir. 1989) (holding that acts of fraudulent concealment could be imputed to all co-conspirators; *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 623 F.Supp.2d 798, 834 (S.D. Tex. 2009) (*citing In re Performance Nutrition, Inc.,* 239 B.R. 93, 99, 113 (Bankr. N.D. Tex. 1999)) ("Once a civil conspiracy is found, each coconspirator is responsible for any action in furtherance of the conspiracy performed by other conspirators. In other words, each action in a civil conspiracy is imputed to each coconspirator regardless of who actually performed the acts."); *Brunswick Corp., Mercury Marine Div. v. E.A. Doyle Mfg. Co.,* 770 F.Supp. 1351, 1371-72 (E.D. Wis. 1991) (stating that a RICO defendant is "responsible for offenses committed by his fellow conspirators"); *First Interstate Bank of Nevada, N.A. v. Nat'l Republic Bank of Chicago,* No. 80-

C-6401, 1985 WL 1118, at *8 (N.D. Ill. Mar.10, 1985) (applying co-conspirator liability to meet predicate act requirement in civil RICO claim).

### 5. Reliance and Proximate Cause.

Defendants fairly miraculously claim that Plaintiffs have failed to plead reliance or proximate cause with regard to the predicate acts. While the Complaint is admittedly long, its length does not excuse a simple failure to read it. Reliance and proximate cause are established throughout. Put simply, Plaintiffs relied in fraudulent representations, which were all part of Defendants' overall plan, that Defendants' actions were intended to maximize the value of the debt to Plaintiffs. This included the fraudulently induced subordination agreement (Complaint, ¶¶77-78) – when Defendants never had any intent whatsoever to ever make a payment on the D&T Note (Complaint, ¶¶85). This was clearly evidenced by the timing of the Forbearance Agreement (Complaint, ¶86). The entire fraudulent scheme very clearly "proximately caused" Plaintiffs' damages in the failure to make even the very first payment on the D&T Note.

### 6. Plaintiffs have Properly Pled an Association-in-Fact.

Defendants argue that Plaintiffs fail "to allege the existence of an enterprise by association in fact with its own structure and purpose apart from the alleged commission of the racketeering activities." In doing so, however, Defendants ignore recent caselaw on the issue.

To establish an association-in-fact enterprise, a plaintiff must allege at least three structural features: (1) purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. U.S.*, 556 U.S. 938, 946 (2009). "If the alleged enterprise is an association-in-fact, the plaintiff must show evidence of an ongoing organization, formal or informal, that functions as a continuing unit." *Id.*, at 945.

The Defendants all had a common purpose – to fraudulently transfer the assets of ACET Global out of the reach of Plaintiffs. The Defendants herein had informal relationships that all contributed to the overall scheme. Defendants herein were primarily involved with planning and implementing the details of the "wind-down" plan whereby ACET Global would be artificially wound down and the assets of the entity simply transferred over to Windspeed, the new entity. Defendants were integrally involved in that process. Furthermore, an association-in-fact

> need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; . . .

*Boyle*, 556 U.S. at 948.

Defendants meet all of the required elements of an association-in-fact.

### 7. <u>Plaintiffs have Properly Pled the Defendants' Involvement in the RICO Pattern of Racketeering.</u>

Defendants are proper defendants in this action. Federal courts have reasoned that the RICO statute has broad reach: "[its] net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise." *U.S. v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978). The RICO statute also "makes clear that RICO liability is not limited to those with formal positions in the enterprise," nor does it require "primary responsibility" or "significant control." *Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Rather, all that is required is that a plaintiff plead sufficient facts to show that the defendants, by their "words or actions . . . objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate acts."

*U.S. v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978). A plaintiff need not show that all of the associates in an associate-in-fact enterprise committed the two predicate acts. *See Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112 (5th Cir. 1987) ("Under RICO, a defendant need not personally commit the predicate acts provided that the evidence is sufficient to connect him to the fraudulent scheme."); *Bank of Mongolia v. M&P Global Fin. Svs.*, No. 08-60623, 2010 WL 11549711, at *4 (S.D. Fla. Sept. 3, 2010) (same); *George v. Blue Diamond Petroleum, Inc.*, 718 F. Supp. 539, 550 (W.D. La. July 20, 1989) (same).

Here, the allegations in the Complaint are sufficient to demonstrate that the Defendants objectively manifested an agreement to participate in the affairs of the association-in-fact enterprise. Even to the extent that Defendants were not higher-level plays in the conduct is irrelevant for purposes of RICO liability. *See Boyle*, 556 U.S. at 946 (concluding that the relationships among those associated with the enterprise-in-fact need not involve a "hierarchical structure or 'chain of command'").

Defendants' allegations that the Complaint only alleges conduct amounting to a "single, lawful transaction" with no threat of continuing illegal conduct is without merit. As referenced above, the Complaint alleges multiple violations of federal statutes that have occurred over a substantial period of time and that are ongoing. The suggestion that stealing a company out from underneath an unwitting business owner amounts to a "single, lawful transaction" is preposterous. Committing mail fraud is not part of a single, lawful transaction. Committing wire fraud or bankruptcy fraud is not part of a single, lawful transaction. Committing perjury as part of obstruction of justice is not part of a single, lawful transaction.

The Fifth Circuit, citing to the Supreme Court's decision in *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229 (1989), explained the concept of a pattern of racketeering activity, pointing out that

> The element of relatedness is satisfied if the criminal conduct embraces criminal acts "**that have the same purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events**." Continuity may be established, *inter alia,* by a showing that the predicates "are a regular way of conducting defendant's ongoing legitimate business, or of conducting or participating in an ongoing RICO enterprise. [emphasis added]

Moreover, this Court has explicitly held that "[i]n order to establish a pattern of racketeering activity, a plaintiff need not demonstrate multiple schemes." *Cypress/Spanish Fort I, L.P. v. Professional Service Industries, Inc.*, 814 F.Supp. 2d 698 (N.D. Tex., Aug. 29, 2011) (citing *Proctor & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 16 (2d Cir. 1989).

### 8.   Plaintiffs' 18 U.S.C. § 1962(d) Claims.

18 U.S.C. § 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of . . . [18 U.S.C. § 1962(a), 18 U.S.C. § 1962(b), or 18 U.S.C. § 1962(c)]." Thus, to establish a conspiracy claim under 18 U.S.C. § 1962(d), a plaintiff must establish that:  (1) "two or more people agreed to commit a substantive RICO offense;" and (2) the defendant "knew of and agreed to the overall objective of the RICO offense." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010).  Due to the clandestine nature of conspiracies, a plaintiff may not be able to muster direct evidence, and, therefore, the agreement, knowledge of and participation in the conspiracy "may be inferred from the development and collocation of circumstances." *U.S. v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998) (quoting *U.S. v. Maltos*, 985 F.2d 743, 746 (5th Cir. 1992)).  Moreover, a conspirator need not know all of the details of the enterprise and identities or all of the co-conspirators as long as the evidence allows for the inference that each conspirator knowingly participated in some manner in the overall objective of the conspiracy.  *Id.* at 858.  But, "[a] conspirator must at least know of the conspiracy and adopt the goal of furthering or facilitating the criminal endeavor." *Chaney*, 595 F.3d at 239 (quoting *Salinas v. U.S.*, 522 U.S. 52, 65 (1997)).

### C.  State Law Claims.

#### 1.  Common Law Fraud.

In early 2019, after Damti called Bellah completely unaware that Bellah was in on the fraud against D&T, Bellah informed Damti that "he [Bellah] was unaware of Windspeed"—despite the fact that Bellah was already serving as Super G's board manager of Windspeed.  (FAC ¶ 294).  Bellah's fraudulent misrepresentation was designed to prevent Damti and D&T from learning about the fraud, preventing him from taking steps prior to their destruction of all of ACET's electronic records and emails and preventing D&T from recovering.  Damti confided his suspicions and even strategy to Bellah.  Bellah used this information to help carry out the fraud.

As set out in detail herein and in the multiple responses, Plaintiffs have more than adequately pled claims of fraud.

#### 2.  Aiding and Abetting Breach of Fiduciary Duties.

As to Plaintiffs' state-law claim for aiding and abetting breach of fiduciary duties, Defendants' primary argument is that, if the underlying claim for breach of fiduciary duty fails, then the aiding and abetting such breach must fail as well.  To that principle, Plaintiffs do not disagree. However, such argument adds little to a motion to dismiss.

Plaintiffs adequately pled breach of fiduciary duty on the part of multiple defendants and supported such claim with ample evidence.  The named defendants owed a fiduciary duty of care to preserve the assets of ACET Global for the benefit of its creditors, including Plaintiff, and they failed to satisfy that duty.

Defendants herein knowingly participated and aided those defendants in carrying out the scheme that has been described in great detail herein and in the Complaint.  Therefore, the claim for aiding and abetting breach of fiduciary duty has been adequately pled.

#### 3.  Texas Uniform Fraudulent Transfer Act.

Defendants want to paint a picture of innocence as it relates to the fraudulent transfer of the assets of ACET Global, but the facts, as well-laid out in the Complaint, paint a very different picture. Defendants were intimately involved in the scheme to steal the assets of ACET Global and avoid paying creditors including Plaintiffs.

Once again, Defendants herein knowingly participated and aided all other defendants in carrying out the fraudulent transfer scheme that has been described in great detail herein and in the Complaint.  Therefore, the claim against Defendants for violation of the Texas Uniform Fraudulent Transfer Act has been adequately pled.

### 4.  Civil Conspiracy.

Yet again, Defendants improperly seek to defend a civil conspiracy claim by simply incorporating motions filed by multiple other defendants.  The Court should reject and strike such attempt and focus solely on the Defendants' Motion, which fails to support any inadequate pleading as it relates to civil conspiracy.

The Complaint is replete with details regarding the conspiracy between and among all of the defendants, and role of Defendants herein is well described.  For Defendants to pretend that they were somehow not aware of the harm caused or of the wrongful conduct in which they were engaging is simply mind-boggling.  Defendants executed the plan that took the assets of one company – a company more than capable of paying its debts and which had substantial business – to another company with the goal of no longer paying the transferring company's debt.  And they didn't do it alone.  Each defendant played their part.

Plaintiffs have adequately pled a cause of action for civil conspiracy.

### V.    Prayer.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that the Court deny Super G and Bellah's Motion to Dismiss.  Moreover, to the extent that the Court intends to otherwise

grant any portion of their Motion, Plaintiffs hereby request leave to replead to remedy any purported deficiencies.  Finally, the Plaintiffs request that the Court grant Plaintiffs all other relief, at law or in equity, to which they may show themselves justly entitled.

Dated: December 24, 2021                    Respectfully submitted,

                                            */s/ Jason B. Freeman*
                                            Jason B. Freeman
                                            Texas Bar No. 24069736
                                            Matthew L. Roberts
                                            Texas Bar No. 24098330
                                            Thomas L. Fahring III
                                            Texas Bar No. 24074194
                                            Gregory W. Mitchell
                                            Texas Bar No. 00791285
                                            Zachary J. Montgomery (admission forthcoming)
                                            Texas Bar No. 24098130

                                            **FREEMAN LAW, PLLC**
                                            7011 Main Street
                                            Frisco, Texas 75034
                                            Telephone:  214.984.3410
                                            Fax:  214.984.3409
                                            jason@freemanlaw.com

                                            **ATTORNEYS FOR PLAINTIFF**

## <u>Certificate of Service</u>

On December 24, 2021, I filed the foregoing document with the clerk o court for the U.S. District Court, Northern District of Texas.  I hereby certify that I have served the document on all counsel and/or *pro se* parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).


By:  <u>*/s/ Jason B. Freeman*</u>
   Jason B. Freeman