**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| D&T PARTNERS, LLC, successor-in-interest | § | |
| to ACET Venture Partners, LLC, *et al* | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Cause: 3:21-CV-1171-B |
| v. | § | |
| | § | |
| BAYMARK PARTNERS, LP, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**WINDSPEED EMPLOYEES' REPLY IN SUPPORT OF MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

TO THE HON. JANE J. BOYLE;
UNITED STATES DISTRICT JUDGE:

COMES NOW in this cause defendants Ms. Zhexian Lin ("Lin"), Ms. Dana Marie Tomerlin ("Tomerlin"), Ms. Padasamai Vattana ("Vattana"); Ms. Paula Ketter ("Ketter"), Ms. Vanessa Torres ("Torres" and together with Szeto, Lin, Tomerlin, Vattana and Ketter the "Windspeed Employees"), and files this, their *Windspeed Employees' Reply in Support of Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6) and Brief in Support* (the "Reply"). In support of the Reply, the Windspeed Employees would respectfully show the Court as follows:

## I. SUMMARY

1.      Putting aside the vitriol and threats to counsel which populate much of *Plaintiffs' Response in Opposition to Windspeed Employees' Motion to Dismiss and Brief in Support*[1] (the "Response"), the Response suffers from three (3) glaring errors. First, the Reply is replete with authority which is either mis-cited or misrepresented. Second, the Response highlights the

---

[1] Given uncertainty as to whether Plaintiff D&T Partners, LLC ("Plaintiff") can properly assert claims on behalf of ACET Global, LLC ("ACET") and Baymark ACET Holdco, LLC ("Holdco"), Defendants will refer to Plaintiff in the singular for the purposes of this Reply.

inferential leaps which the First Amended Complaint (the "<u>Complaint</u>") relies on to allege both RICO and state law causes of actions against the Windspeed Employees.  Third, the Response lays out, somewhat, concisely the gaping holes in the Complaint's narrative which highlight why Plaintiff cannot plausibly allege RICO violations or state law causes of action against the Windspeed Employees.

2.      This Reply, along with the replies filed by other defendants in this matter, should succinctly put to rest any argument that Plaintiff's never-ending crusade warrants any further attention from this Court.

## II. ARGUMENTS AND AUTHORITY

*Plaintiff's Objections to Incorporation are Misplaced*

3.      As an initial matter, the Windspeed Employees take to task Plaintiff in its efforts to disregard arguments made by the Windspeed Employees by arguing there was wrongful incorporation of other defendants' arguments in their response.  Plaintiff relies on authority which is factually distinguishable and does not provide the absolute standard which Plaintiff claims it does.  Plaintiff relies on cases in which the court struck arguments incorporated from prior pleadings and submissions.  *See Black Cat Exploration & Prod., LLC v. MWW Capital Ltd.*, 2015 WL 127317551, at *2 (N.D. Tex. Apr. 29, 2015); *Saffran v. Boston Scientific Corp.*, 2008 WL 2716318, at *4 (E.D. Tex. July 9, 2008) (court also took issue with movant incorporating arguments by reference without specifically identifying them).  The practice of incorporation by reference is only discouraged if the purpose for the incorporation is to circumvent page limitations. *See LBS Innovations, LLC v. Apple Inc.*, 2020 WL 1433954, at *3 (E.D. Tex. Mar. 24, 2020).  The use of incorporation by reference in this case was not for the purpose of circumventing page limitations but for the purpose of avoiding unnecessary repetition of arguments, which would also

require unnecessary repetition of response by Plaintiff. Furthermore, the incorporation of other defendants' arguments by reference is warranted, given defendants were significantly impaired, at the outset, in trying to respond to Plaintiff's shotgun pleading. *See Langston v. Ethicon Inc.*, 2021 WL 6198218, at *3 (N.D. Tex. Dec. 31, 2021).

*Plaintiff's References to Authority Over-Generalize and are Misleading*

4.     Perhaps the most glaring omission by Plaintiff in its case law is its reliance on *Collins v. Morgan Stanley Dean Witter*, as though *Twombly/Iqbal* never happened. *See* 224 F.3d 496, 498 (5th Cir. 2000); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiff cannot avoid the "plausibility standard," which "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, the facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. *Twombly/Iqbal* does not allow Plaintiff to speculate regarding parties' knowledge or participation in racketeering activity.

5.     Plaintiff cites to a potpourri of federal cases for its general conclusion that RICO was intended by Congress to have a broad outreach. *See* Response, pgs. 11-12, and 15. Plaintiff wants to stop the analysis there and find that RICO can touch any of the facts alleged and parties involved in this case. It would be an understatement to say that Plaintiff oversimplifies its analysis. Plaintiff heavily relies on *Sedima v. Imrex Co., Inc.*, 473 U.S. 479 (1985), which provides that RICO is to "be liberally construed to effectuate its remedial purposes." *See id.* at 498. What are those "remedial purposes"? Specifically, the remedial purposes of RICO are to combat long-term criminal conduct. *See GFRS Equipment Leasing Fund II LLC v. Diane Trang Nguyen*, 2019 WL 3530421, at *4 (N.D. Tex. Aug. 1, 2019 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). Though Plaintiff would wish to place all alleged bad deeds under the guise of

RICO, there is a significant caveat to that approach: "RICO [is not] a surrogate for garden-variety fraud actions properly brought under state law." *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (quoting *Tabas v. Tabas*, 47 F.3d 1280, 1310 (3d Cir. 1995)). Plaintiff's federal suit is exactly that, a garden-variety fraud suit vastly inflated to look like a RICO suit.

6.      As to conspiracy to commit RICO, Plaintiff cites to the general standard that a plaintiff need only allege facts from which it may be inferred that a party had knowledge and agreed to participate in the scheme. *See* Response, pg. 19; *U.S. v. Posada-Rios*, 158 F.3d832, 857 (5th Cir. 1998). However, Plaintiff leaves out the inconvenient qualifier that "close association with conspirators, standing alone, will not support an inference of participation in the conspiracy." *U.S. v. Maltos*, 985 F.2d 743, 746 (5th Cir. 1992) (conspiracy may not be proven by placing defendant in "a climate of activity that reeks of something foul"). Furthermore, a defendant's knowledge of or participation in a conspiracy "will not be lightly infer[red]." *Id.* (citing *U.S. v. Jackson*, 700 F.2d 181, 185 (5th Cir. 1983). Plaintiff does not bother to allege facts which would plausibly show the Windspeed Employees had knowledge of a conspiracy to commit RICO acts. Without allegations that do more than place the Windspeed Employees in an environment of alleged suspicious activity, Plaintiff cannot establish that they had knowledge.

7.      Plaintiff even misrepresents the reach of RICO, particularly in its analysis of the *Reves v. Ernst & Young*[2] and *Posada-Rios* cases. 507 U.S. 170 (1993); *United States v. Posada-Rios*, 158 F.3d 832 (5th Cir. 1998). Plaintiff represents that the *Reves* and *Posada-Rios* opinions implicitly hold that a RICO person need not exercise an iota of control or supervisory authority over an enterprise. *See* Response, pgs. 19-21. This was not the standard in 1993 and 1998, and it is certainly not the standard now. In the Fifth Circuit, *Reves* does not grant plaintiffs leave to

---

[2] To avoid confusion, Plaintiff inadvertently refers to *Reves* as "Reeves" in the Response. *See* Response, pg. 15.

attach liability to all individuals within earshot of racketeering activity, but rather, those individuals must have supervisory involvement in the enterprise. *See Ranieri v. AdvoCare International, L.P.*, 336 F. Supp.3d 701, 717 (N.D. Tex. 2018). To satisfy the "conduct or participate" requirement for a RICO person, the "plaintiff must set forth facts plausibly establishing that the defendant 'participated in the operation or management of the enterprise itself,' meaning that the defendant had 'some part in directing the enterprise's affairs." *Id.* (quoting *Reves*, 507 U.S. at 179, 183). In other words, the "proper RICO defendant must have some sort of supervisory involvement." *Id.* (citing *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015)). Plaintiff tries to convince the Court to misread *Reves* and its progeny because the holdings of those cases foreclose placing liability on the Windspeed Employees.

8. Yet another example of Plaintiff's half-truths is its use of case law to argue that a plaintiff does not need to prove that a defendant personally committed a predicate act in order to sufficiently allege the defendant is a RICO person. *See* Response, pg. 24 (citing *Simmons v. Jackson*, No. 3:15-cv-01700-S-BT, 2019 WL 3043927, at *3 (N.D. Tex. June 7, 2019)). Similar to its analysis of *Reves*, Plaintiff fails to advise the Court that it must still plausibly allege that the defendant helped plan/direct the scheme for which the predicate acts were committed and, if the defendant is a "lower rung participant," that it did so "under the direction of upper management." *See Ranieri*, 336 F. Supp.3d at 717 (plaintiffs allegations fail to show certain defendants "had the power to direct the enterprise's affairs or had any kind of supervisory involvement" and that they "were acting under the direction of anyone . . ."). Importantly, "RICO liability does not arise from promoting an enterprise in the course of conducting one's own affairs." *Id.* (citing *Reves*, 507 U.S. at 185). As discussed below, the Complaint's allegations of the Windspeed Employees' conduct in relation to a RICO enterprise is just that; the conducting of one's own affairs.

9.      Plaintiff misleads as to the holdings of the cases which it cites.  For example, Plaintiff cites *Boyle v. U.S.* to argue that a RICO person need not practice any control over an association-in-fact because an enterprise does not require a "hierarchical structure or "chain of command."  *See* Response, pg.  17; 556 U.S. 938 (2009).  Plaintiff asks the Court to accept that it has sufficiently labeled the Windspeed Employees as RICO persons by alleging they "acted in a manner outside the scope of their purpose or employment . . . ."  *See* Response, pg. 17.  However, Plaintiff misrepresents the relevance of *Boyle*'s holding.  *Boyle* stands for the principal that the "structure" of an association-in-fact enterprise need not require a "hierarchical structure" or "chain of command."  *See* 556 U.S. at 939.  The opinion in *Boyle* does not conclude that a RICO person need not practice any control or take a supervisory role in the racketeering scheme.  What *Boyle* **does** confirm is that any RICO person must have the "common purpose of engaging in a course of conduct" to be affiliated with an enterprise.  *See id.* at 939.  In this instance, Plaintiff seeks to manufacture support for its belief that the Windspeed Employees need not exercise any control or supervision over the enterprise to be considered RICO persons.  Plaintiff will find no support for its manufactured legal theories in *Boyle*, nor elsewhere.

*Plaintiff Makes Inferential Leaps to Allege RICO Liability*

10.      In the Response, Plaintiff's efforts to highlight what it believes to be its best argument for liability against the Windspeed Employees end up putting the frivolity of Plaintiff's case against the Windspeed Employees on full display.  Plaintiff's allegations are such: (1) two employees who worked in fulfillment "assisted" the enterprise by renting a temporary storage unit to store assets of ACET and put the unit under a personal name in order to "conceal their fraud;" (2) one employee took the ACET website and made it into the Windspeed website and closed/diverted bank accounts for ACET; and (3) the employee accountant executed a request to

be the new account owner for an ACET account and listed herself as the new account owner . . . while using her Windspeed e-mail address.  *See* Response, pgs. 16-18.  There are numerous assumptions made which lead Plaintiff to the conclusion that the Windspeed Employees are RICO persons, but missing from these allegations is any explanation as to how these employees knew about the fraudulent scheme or that they knew about Plaintiff itself.  In fact, the testimony from the Windspeed Employees that is incorporated into the Complaint[3] shows they knew practically nothing of the parties and the entities which constituted the alleged enterprise.  *See* Doc. No. 47, pg. 6.[4]

      11.    Plaintiff's short but not-so-sweet allegations against the Windspeed Employees require an extreme degree of speculation to find that the actions taken were not just the fulfillment of their daily duties but were part of a greater enterprise to defraud Plaintiff.  For example, Plaintiff expects the Court to accept its allegation that the fulfillment employees rented a storage unit under a personal name in order to "conceal their fraud."  Plaintiff cannot point to a single allegation in the entire 157-page Complaint that even remotely supports the inference that these employees acted with knowledge that they were supporting a fraudulent scheme.  The words from the Northern District in *Ranieri* ring clear in this context: promoting an enterprise in the course of conducting one's own affairs does not make a party a participant in a fraudulent scheme.  336 F. Supp.3d at 717.

      12.    With regards to the requisite continuity of a racketeering scheme, Plaintiff makes more inferential leaps.  As is well established, there must be continuity in a fraudulent scheme in

---

[3] Any allegations which suggest the Windspeed Employees had knowledge of the scheme are entitled to no weight because, "[i]f an attached exhibit contradicts a factual allegation in the complaint, then indeed the exhibit and not the allegation controls." *Quadwest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021); *see Miller v. SS Hosp. Grp., LLC*, 2018 WL 3054691, at *4 (N.D. Tex. 2018).

[4] Incredibly, Plaintiff even admits that at least one employee, Dana Tomerlin, was not made aware of the foreclosure sale; the very sale that the enterprise allegedly orchestrated to pull off the fraud.  *See* Doc. 36, pg. 109.

order for it to fall under RICO, and that continuity can be established by either alleging a "closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'" *Zastrow v. Houston Auto Imports Greenway, Ltd.*, 789 F.3d 553, 561 (5th Cir. 2015).   Plaintiff fails to clearly state in the Complaint whether it alleges that the required continuity is either closed or open-ended.   Based on the reading of the Complaint and the implication that Defendants continued defense of this suit is a predicate act, Plaintiff appears to treat the continuity of the alleged fraudulent scheme as open-ended.

13.     Continuity over an open period requires "a threat of continued racketeering activity."  *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)).   This may be established if it is plausibly alleged that the predicate acts "themselves involve a distinct threat of long-term racketeering activity" or "are part of an ongoing entity's regular way of doing business." *Id.* (quoting *H.J., Inc.*, 492 U.S. at 242-43).   It initially appeared from the Complaint that Plaintiff alleged that false testimony and perceived threats during a deposition were the predicate acts for its obstruction of justice claim.   Upon review of the Response, Plaintiff is now arguing that it is "bad faith litigation" plus "corruption" that constitute his obstruction of justice claim, without further elucidation.  *See* Response, pg. 21.  Plaintiff makes a huge inferential leap, without any explanation why, that there exists a distinct threat of long-term racketeering activity.   Perhaps Plaintiff desires to argue that the Windspeed Employees continued defense of this case is, in and of itself, a threat of long-term racketeering activity.  Such an argument does not pass muster.

14.     Assuming Plaintiff is arguing for a closed-end continuity, it still has to make certain undue inferences to establish continuity.  Plaintiff would have to assume, though it is not alleged, that the Windspeed Employees were involved in the filing and preparation of the bankruptcy petition; that the Windspeed Employees were involved in the preparation of tax returns for an

entity related to Global; and that the Windspeed Employees intended to extend a racketeering enterprise by giving false testimony in depositions.  At best, Plaintiff's allegations assume that the Windspeed Employees supported a RICO enterprise through their actions as employees with regards to the wind-down, which took place within a limited timeframe.  *See Zastrow*, 789 F.3d at 561 (continuity over closed period requires "a series of related predicates extending over a substantial period of time").  Whether open or closed continuity, the Court must infer the continued involvement of the Windspeed Employees in the enterprise in order to find the requisite continuity because Plaintiff fails to allege the continued involvement in the Complaint.

*Plaintiff's Theory of Liability Suffers From Irreparable Gaps*

15.     The wealth of case law regarding the requisite participation needed to make a RICO person makes its abundantly clear that liability cannot be had against the Windspeed Employees. As much as Plaintiff argues that ordinary employees can be participants in racketeering activity because RICO is applied "broadly," the standard given by *Reves*, *Boyle*, and *Ranieri* makes it clear that you cannot have a RICO person within a degree of control or supervision over the enterprise. Plaintiff's arguments for the reach of RICO betray the fact that it knows that the Windspeed Employees never knowingly participated in some scheme to defraud Plaintiff.

16.     Plaintiff unconvincingly tries to argue its position that the Windspeed Employees can be RICO persons, as the employees of an enterprise.  But Plaintiff leaves it unclear as to what enterprise he is referring to.  As is argued in the Reply for Defendants Windspeed Trading, LLC ("Windspeed") and William Szeto, Plaintiff impermissibly seeks to argue that an enterprise can be both an association-in-fact AND a legal enterprise, such as Windspeed.  *See Allstate Insurance Company v. Benhamou*, 190 F. Supp.3d 631, 649 (S.D. Tex. 2016) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 n. 16 (5th Cir. 2000)).  Plaintiff cannot do so, and, to the

extent Plaintiff opts to argue for an association-in-fact, as opposed to Windspeed or Baymark, Plaintiff fails to allege in the Complaint that the Windspeed Employees were acting as employees of the entire association.

17.     Based on the scant allegations brought by Plaintiff to connect the Windspeed Employees to the alleged RICO conspiracy, it appears that Plaintiff's argument against the Windspeed Employees must rest on a "collective knowledge" theory.  In the context of a RICO conspiracy cause of action, where "an essentially subjective state of mind is an element of a cause of action," the Fifth Circuit has declined to allow the element of state of mind to be met by a corporation's collective knowledge but must be met by showing the state of mind "actually exists" in the individual.  *See Chaney v. Dreyfus Service Corp.*, 595 F.3d 219 (5th Cir. 2010).  This failure transitions smoothly into Plaintiff's failure to plausibly allege scienter in the actions of the Windspeed Employees with regards to the predicate acts.  To show scienter, a plaintiff must plead that the defendant "act[ed] knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself."  *Ranieri*, 336 F. Supp.3d at 718.  Furthermore, the pleadings must give rise to a strong inference of fraudulent intent.  *Marriott Bros. v. Gage*, 704 F. Supp. 731, 740 (N.D. Tex. 1988).

18.     As is alleged in both the Motion to Dismiss and this Reply, the Court will be hard-pressed to find any allegation in the Complaint which plausibly alleges that the Windspeed Employees exercised any control or supervision over a RICO enterprise, much less that the control or supervision was exercised with a specific intent to harm Plaintiff.  No matter how much Plaintiff may wish to bully or threaten the Windspeed Employees and their counsel into backing off their defense against the Complaint, such a frivolous display of retribution towards individuals whose only fault was showing up to work and doing their job must be vigorously opposed.

### III. CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, the Windspeed Employees respectfully pray this Court grant the Motion and dismiss with prejudice all causes of action asserted by Plaintiff in its First Amended Complaint. The Windspeed Employees further respectfully request any additional relief to which they may be justly entitled.

Dated: January 18, 2022
Dallas, Texas

HIGIER ALLEN & LAUTIN, PC

By: */s/ Gordon W. Green*
Jason T. Rodriguez
   Texas State Bar No. 24042827
   *Attorney-In-Charge*
Timothy P. Woods
   Texas State Bar No. 21965500
Gordon W. Green
   Texas State Bar No. 24083102
HIGIER ALLEN & LAUTIN, P.C.
2711 N. Haskell Ave., Suite 2400
Dallas, Texas 75204
Telephone: (972) 716-1888
Facsimile: (972) 716-1899
jrodriguez@higierallen.com
twoods@higierallen.com
ggreen@higierallen.com

**ATTORNEYS FOR WINDSPEED TRADING, LLC, MR. WILLIAM SZETO, MS. ZHEXIAN LIN, MS. DANA MARIE TOMERLIN, MS. PADASAMAI VATTANA; MS. PAULA KETTER, MS. VANESSA TORRES**

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of January 2022, a true and correct copy of the foregoing document was served *via* the Court's ECF system and by email to the following parties.

| | |
|---|---|
| Jason B. Freeman<br>Freeman Law, PLLC<br>2595 Dallas Parkway, Suite 420<br>Frisco, Texas 75034<br>jason@freemanlaw-pllc.com<br><br>**Counsel for Plaintiff** | Edward P. Perrin, Jr.<br>Jennifer R. Poe<br>HALLETT & PERRIN, P.C.<br>1445 Ross Ave., Suite 2400<br>Dallas, Texas 75202<br>eperrin@hallettperrin.com<br>jpoe@hallettperrin.com<br><br>**Counsel for Baymark Defendants** |
| John David Blakley<br>William D. Dunn<br>DUNN SHEEHAN, LLP<br>3400 Carlisle Street, Suite 200<br>Dallas, Texas 75204<br>jdblakley@dunnsheehan.com<br><br>**Counsel for Super G Capital, LLC and Steven Bellah** | Andrea Levin Kim<br>DANIELS TREDENNICK, PLLC<br>6363 Woodway Dr., Ste. 700<br>Houston, Texas 77057<br>andrea.kim@dtlawyers.com<br><br>Rachel Williams<br>WILLIAMS LAW, PC<br>10300 N. Central Expry., Ste. 544<br>Dallas, Texas 75231<br><br>**Counsel for SG Credit Partners, Inc. and Marc Cole** |

*/s/ Gordon W. Green*
Gordon W. Green