**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| D&T PARTNERS, LLC, successor-in-interest to ACET Venture Partners, LLC, *et al* § § § § *Plaintiff*, § § v. § § BAYMARK PARTNERS, LP, *et al.*, § § *Defendants*. § | Civil Cause: 3:21-CV-1171-B |

**WINDSPEED AND MR. SZETO'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

TO THE HON. JANE J. BOYLE;
UNITED STATES DISTRICT JUDGE:

COMES NOW in this cause defendants Windspeed Trading, LLC ("Windspeed") and William Szeto ("Mr. Szeto," and together with Windspeed, "Defendants"), and files this, their *Windspeed and Mr. Szeto's Reply in Support of Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6) and Brief in Support* (the "Reply"). In support of the Reply, Defendants would respectfully show the Court as follows:

**I. SUMMARY**

1. Putting aside the vitriol and animus which populates much of *Plaintiffs' Response in Opposition to Windspeed and Mr. Szeto's Motion to Dismiss and Brief in Support*[1] (the "Response"), the Response suffers from three (3) glaring errors. First, the Reply is replete with authority which either opts for the general or the incomplete and is often mis-cited. Second, the Response highlights the inferential leaps which the First Amended Complaint (the "Complaint")

---

[1] Given uncertainty as to whether Plaintiff D&T Partners, LLC ("Plaintiff") can properly assert claims on behalf of ACET Global, LLC ("ACET") and Baymark ACET Holdco, LLC ("Holdco"), Defendants will refer to Plaintiff in the singular for the purposes of this Reply.

relies on to allege both RICO and state law causes of actions against Defendants. Third, the Response lays out, somewhat, concisely the gaping holes in the Complaint's narrative which highlight why Plaintiff cannot plausibly allege RICO violations or state law causes of action against Defendants.

2. This Reply, along with the replies filed by other defendants in this matter, should succinctly put to rest any argument that Plaintiff's never-ending crusade warrants any further attention from this Court.

## II. ARGUMENTS AND AUTHORITY

*Plaintiff's Objections to Incorporation are Misplaced*

3. As an initial matter, Defendants take to task Plaintiff in its efforts to disregard many of the arguments made by Defendants by arguing there was wrongful incorporation of other defendants' arguments. Plaintiff relies on authority which is factually distinguishable and does not provide the absolute standard which Plaintiff claims it does. Plaintiff relies on cases in which the court struck arguments incorporated from prior pleadings and submissions. *See Black Cat Exploration & Prod., LLC v. MWW Capital Ltd.*, 2015 WL 127317551, at *2 (N.D. Tex. Apr. 29, 2015); *Saffran v. Boston Scientific Corp.*, 2008 WL 2716318, at *4 (E.D. Tex. July 9, 2008) (court also took issue with movant incorporating arguments by reference without specifically identifying them). The practice of incorporation by reference is only discouraged if the purpose for the incorporation is to circumvent page limitations. *See LBS Innovations, LLC v. Apple Inc.*, 2020 WL 1433954, at *3 (E.D. Tex. Mar. 24, 2020). The use of incorporation by reference in this case was not for the purpose of circumventing page limitations but for the purpose of avoiding unnecessary repetition of arguments, which would also require unnecessary repetition of response by Plaintiff. Furthermore, the incorporation of other defendants' arguments by reference is

warranted, given defendants were significantly impaired, at the outset, in trying to respond to Plaintiff's shotgun pleading.  *See Langston v. Ethicon Inc.*, 2021 WL 6198218, at *3 (N.D. Tex. Dec. 31, 2021).

*Plaintiff's References to Authority Over-Generalize and are Misleading*

4.  Perhaps the most glaring omission by Plaintiff in its case law is its reliance on *Collins v. Morgan Stanley Dean Witter*, as though *Twombly/Iqbal* never happened.  *See* 224 F.3d 496, 498 (5th Cir. 2000); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Plaintiff cannot avoid the "plausibility standard," which "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  To survive a motion to dismiss, the facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  *Twombly/Iqbal* does not allow Plaintiff to speculate regarding parties' knowledge or participation in racketeering activity.

5.  Plaintiff cites to a potpourri of federal cases for its general conclusion that RICO was intended by Congress to have a broad outreach.  *See* Response, pgs. 11-12, and 15.  Plaintiff wants to stop the analysis there and find that RICO can touch any of the facts alleged and parties involved in this case.  It would be an understatement to say that Plaintiff oversimplifies the analysis.  Plaintiff heavily relies on *Sedima v. Imrex Co., Inc.*, 473 U.S. 479 (1985), which provides that RICO is to "be liberally construed to effectuate its remedial purposes." *See id.* at 498.  What are those "remedial purposes"?  Specifically, the remedial purposes of RICO are to combat long-term criminal conduct.  *See GFRS Equipment Leasing Fund II LLC v. Diane Trang Nguyen*, 2019 WL 3530421, at *4 (N.D. Tex. Aug. 1, 2019 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989)).  Though Plaintiff would wish to place all alleged bad deeds under the guise of RICO, there is a significant caveat to that approach: "RICO [is not] a surrogate for garden-

variety fraud actions properly brought under state law." *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (quoting *Tabas v. Tabas*, 47 F.3d 1280, 1310 (3d Cir. 1995)); *Delta Truck & Tractor, Inc.v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988) (RICO was not "intended to extend to fraudulent commercial transactions affecting interstate commerce"). Plaintiff's federal suit is exactly that, a garden-variety fraud suit vastly inflated to look like a RICO suit.

6. As to conspiracy to commit RICO, Plaintiff cites to the general standard that a plaintiff need only allege facts from which it may be inferred that a party had knowledge and agreed to participate in the scheme. *See* Response, pg. 19; *U.S. v. Posada-Rios*, 158 F.3d832, 857 (5th Cir. 1998). However, Plaintiff leaves out the inconvenient qualifier that "close association with conspirators, standing alone, will not support an inference of participation in the conspiracy." *U.S. v. Maltos*, 985 F.2d 743, 746 (5th Cir. 1992) (conspiracy may not be proven by placing defendant in "a climate of activity that reeks of something foul"). Furthermore, a defendant's knowledge of or participation in a conspiracy "will not be lightly infer[red]." *Id.* (citing *U.S. v. Jackson*, 700 F.2d 181, 185 (5th Cir. 1983). Plaintiff does not plausibly allege that Defendants had actual knowledge of a conspiracy to defraud Plaintiff. Rather, Plaintiff leans into Defendants' close affiliations with other defendants to ask the Court to infer that Defendants agreed to conspire in this scheme. The Court cannot infer knowledge or an agreement in this instance.

7. Plaintiff, seeking to over-state/misrepresent the elasticity of RICO, also relies on the *Reves v. Ernst & Young*[2] opinion. 507 U.S. 170 (1993). Plaintiff represents that the *Reves* opinion holds that any person could be liable as a RICO person, regardless of whether or not they exercised any supervisory authority over the enterprise or scheme. *See* Response, pg. 15. This was not the standard in 1993, and it is certainly not the standard now. In the Fifth Circuit, *Reves*

---

[2] To avoid confusion, Plaintiff inadvertently refers to *Reves* as "Reeves" in the Response. *See* Response, pg. 15.

is not interpreted to hold that any party could be a RICO person, but rather, the party must have supervisory involvement in the enterprise. *See Ranieri v. AdvoCare International, L.P.*, 336 F. Supp.3d 701, 717 (N.D. Tex. 2018). To satisfy the "conduct or participate" requirement for a RICO person, the "plaintiff must set forth facts plausibly establishing that the defendant 'participated in the operation or management of the enterprise itself,' meaning that the defendant had 'some part in directing the enterprise's affairs." *Id.* (quoting *Reves*, 507 U.S. at 179, 183). In other words, the "proper RICO defendant must have some sort of supervisory involvement." *Id.* (citing *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015)). This is precisely what Defendants have argued is missing in the Complaint. In fact, the Complaint argues the opposite: that Mr. Szeto was a "puppet" doing the will of others.

8. Yet another example of Plaintiff's half-truths is its use of case law to argue that a plaintiff does not need to prove that a defendant personally committed a predicate act in order to sufficiently allege the defendant is a RICO person. *See* Response, pgs. 15-16 (citing *Simmons v. Jackson*, No. 3:15-cv-01700-S-BT, 2019 WL 3043927, at *3 (N.D. Tex. June 7, 2019)). Plaintiff ignores that it does, however, need to plausibly allege that the defendant helped plan/direct the scheme for which the predicate acts were committed and, if the defendant is a "lower rung participant," that it did so "under the direction of upper management." *See Ranieri*, 336 F. Supp.3d at 717 (plaintiffs allegations fail to show certain defendants "had the power to direct the enterprise's affairs or had any kind of supervisory involvement" and that they "were acting under the direction of anyone . . ."). Importantly, "RICO liability does not arise from promoting an enterprise in the course of conducting one's own affairs." *Id.* (citing *Reves*, 507 U.S. at 185). Given the full and accurate picture of what the law states, Plaintiff has not plausibly alleged that Defendants "conducted or participated" in the racketeering scheme.

9. Plaintiff misleads as to the holdings of the cases which it cites. For example, Plaintiff cites *Boyle v. U.S.* to argue that a RICO person need not practice any control over an association-in-fact because an enterprise does not require a "hierarchical structure or "chain of command." *See* Response, pg. 17; 556 U.S. 938 (2009). Plaintiff asks the Court to accept that it has sufficiently labeled Defendants as RICO persons by alleging they "acted in a manner outside the scope of their purpose or employment . . . ." *See* Response, pg. 17. However, Plaintiff misrepresents the relevance of *Boyle*'s holding. *Boyle* stands for the principal that the "structure" of an association-in-fact enterprise need not require a "hierarchical structure" or "chain of command." *See* 556 U.S. at 939. The opinion in *Boyle* does not conclude that a RICO person need not practice any control or take a supervisory role in the racketeering scheme. What *Boyle* **does** confirm is that any RICO person must have the "common purpose of engaging in a course of conduct" to be affiliated with an enterprise. *See id.* at 939. In this instance, Plaintiff seeks to manufacture support for its belief that Defendants need not exercise any control or supervision over the enterprise to be considered RICO persons. Plaintiff will find no support for its manufactured legal theories in *Boyle*, nor elsewhere.

*Plaintiff Makes Inferential Leaps to Allege RICO Liability*

10. In the Response, Plaintiff enumerates the list of allegations which it insists show Defendants were sufficiently connected to the fraudulent scheme alleged in the Complaint. *See* Response, pgs. 16-17. The allegations are summarized as such: Defendant William Szeto ("Mr. Szeto") was involved in the "wind-down" of ACET Global, LLC ("ACET") and the formation of Windspeed Trading, LLC ("Windspeed"), as well as the transferal of assets from ACET to Windspeed and the foreclosure of those assets. *See id.* Missing from the list of allegations, as well as the Complaint, is any allegation that Defendants orchestrated the wind-down or the

formation of a new entity **in order to** defraud a secured creditor. Furthermore, any conclusory allegation that Defendants knew about the secured claim is contradicted by Mr. Szeto's own deposition testimony[3], attached as evidence to the Complaint. *See* Doc. No. 36, pg. 36.[4]

11. Plaintiff's long-winded allegations that Defendants were involved in the wind-down, formation, and transfer of assets fail to sufficiently allege association with the enterprise when there is only an unfounded inference that Defendants participated in the enumerated actions in the Response **in order to** carry out a conspiracy to defraud Plaintiff. As the Northern District in *Ranieri* made clear, promoting an enterprise in the course of conducting one's own affairs does not make a party a participant in a fraudulent scheme. 336 F. Supp.3d at 717.

12. With regards to the requisite continuity of a racketeering scheme, Plaintiff makes more inferential leaps. As is well established, there must be continuity in a fraudulent scheme in order for it to fall under RICO, and that continuity can be established by either alleging a "closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'" *Zastrow v. Houston Auto Imports Greenway, Ltd.*, 789 F.3d 553, 561 (5th Cir. 2015). Plaintiff fails to state with any clarity in the Complaint whether it alleges that the required continuity is either closed or open-ended. Based on the reading of the Complaint and the implication that Defendants continued defense of this suit is a form of a predicate act, Plaintiff appears to treat the continuity of the alleged fraudulent scheme as open-ended.

13. Continuity over an open period requires "a threat of continued racketeering activity." *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)). This may be

---

[3] The conclusory allegations are entitled to no weight because, "[i]f an attached exhibit contradicts a factual allegation in the complaint, then indeed the exhibit and not the allegation controls." *Quadwest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021); *see Miller v. SS Hosp. Grp., LLC*, 2018 WL 3054691, at *4 (N.D. Tex. 2018).

[4] It bears repeating that Plaintiff acknowledges the possibility that Mr. Szeto was never informed about Plaintiff's alleged secured loan. *See* Doc. No. 36, pg. 123, fn 71.

established if it is plausibly alleged that the predicate acts "themselves involve a distinct threat of long-term racketeering activity" or "are part of an ongoing entity's regular way of doing business." *Id.* (quoting *H.J., Inc.*, 492 U.S. at 242-43).  It initially appeared from the Complaint that Plaintiff was alleging that alleged false testimony and perceived threats during a deposition were the predicate acts for its obstruction of justice claim.  Upon review of the Response, Plaintiff is now arguing that it is "bad faith litigation" plus "corruption" that constitute his obstruction of justice claim, without further elucidation.  *See* Response, pg. 21.  It is clear Plaintiff makes a huge inferential leap, without explanation, that there exists a distinct threat of long-term racketeering activity.  Perhaps Plaintiff desires to argue that Defendants continued defense of this case is, in and of itself, a threat of long-term racketeering activity.  Such an argument does not pass muster.

14. Assuming Plaintiff is arguing for closed-end continuity, certain undue inferences are still made to establish continuity, especially with regards to an association-in-fact.  *See Delta Truck*, 855 F2d at 244 (an enterprise must not briefly flourish and fade but "function[] as a continuing unit").  Plaintiff assumes that the enterprise continued as a flourishing unit because some of the defendants allegedly filed fraudulent bankruptcy and tax information after the foreclosure sale and because Mr. Szeto allegedly instructed Windspeed employees on deposition questions.  Plaintiff infers that the enterprise was operating as a continuing unit after the foreclosure sale based on alleged isolated incidents which did not involve a majority of the alleged persons in the RICO enterprise.  Whether open or closed continuity, Plaintiff relies on inference to extend an alleged one-time event of fraud into a continuing racketeering activity.

*Plaintiff's Theory of Liability Suffers From Multiple Defects*

15. Fifth Circuit jurisprudence on RICO liability and the unjustifiable inferences made by Plaintiff underscore the fatal flaws in its theory of liability.  For instance, Plaintiff seeks to have

its cake and eat it too by arguing that Windspeed is BOTH a RICO enterprise and a RICO defendant. *See* Doc. 36, pg. 143. As the Fifth Circuit has noted, such a practice is roundly criticized. *See Allstate Insurance Company v. Benhamou*, 190 F. Supp.3d 631, 649 (S.D. Tex. 2016) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 n. 16 (5th Cir. 2000)). On the one hand, Plaintiff seeks to emphasize that Windspeed was created for the purpose of perpetrating a fraud, yet also desires to treat Windspeed as a spoke in the wheel of an association-in-fact. The Fifth Circuit does not allow such tactics, and Plaintiff has effectively pled Windspeed out as a plausible RICO "person," since there is effectively no distinction between the RICO person and the RICO enterprise. *Id.* (citing *St. Paul Mercury Ins.*, 224 F.3d at 446-447).

16.     Again, Plaintiff seeks to have its cake and eat it too by arguing, on the one hand, that Mr. Szeto is merely an autonomic puppet of other masters in the RICO enterprise while, on the other hand, arguing that it has sufficiently alleged that Mr. Szeto is a RICO person. Based on the proper standards which Plaintiff ignores, there must be an allegation from Plaintiff that Mr. Szeto exercised some control or supervision over the enterprise. Such allegations are nowhere to be found in the Complaint. *See* Doc. 36, pg. 67 (the parties "stripped Szeto of any actual control").

17.     Plaintiff seeks to establish a series of racketeering activity occurred by focusing in on an otherwise lawful commercial event and alleging multiple acts of fraud that were part and parcel of this lawful commercial event. Such allegations do not amount to a RICO claim. *See Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1462 (5th Cir. 1991); *see also Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118 (5th Cir. 1996); *Delta Truck*, 855 F.2d at 243-44. The otherwise lawful commercial event is the foreclosure sale of ACET's assets and the purchase by Windspeed. The fact that Plaintiff alleges the foreclosure sale was actually product of a fraudulent scheme does not suddenly bring the sale within the realm of RICO,

especially when the foreclosure sale, and the alleged defrauding of Plaintiff's secured loan, was ultimately a "single, short-term goal." *See id.*

18. Furthermore, Plaintiff cannot allege that the RICO association served a purpose beyond its stated goal of defrauding Plaintiff's secured claim. Once the assets of ACET were removed and left Plaintiff with no recourse, the goal of the association was attained, and the association would presumably "disband upon attainment of that goal." *See Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988). Accordingly, there is nothing linking the members of the association other than the alleged commission of the predicate criminal acts. *See id.*; *see also Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 433-34 (5th Cir. 1990) (once the result was obtained and follow-up actions taken, the enterprise ceased to exist, meaning no RICO association existed in fact).

19. Finally, and most glaringly, the above-referenced defects in Plaintiff's allegations underscore that Plaintiff has not established the continuity element of a RICO enterprise. According to Plaintiff, the various co-conspirators of the RICO enterprise set out to do one thing: denude the assets of ACET in order to defraud one of its secured creditors, Plaintiff. This was accomplished, according to Plaintiff, by transferring the assets of ACET over a few months into Windspeed and then making the transfer official by way of a back-dated foreclosure sale. Once the foreclosure sale took place and the assets were now the property of Windspeed, the mission was accomplished under Plaintiff's theory. If Plaintiff wishes to cast Defendants' defense of pending litigation as an attempt to further defraud Plaintiff, such alleged actions are being committed as part of an "otherwise lawful" defense and do not indicate a threat of continued criminal acts, which are necessary to show continuity. *See Zastrow*, 789 F.3d at 561. Therefore, the Complaint fails to sufficiently allege RICO claims against Defendants.

## III. CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully pray this Court grant the Motion and dismiss with prejudice all causes of action asserted by Plaintiff in its First Amended Complaint. Defendants further respectfully request any additional relief to which they may be justly entitled.

Dated: January 18, 2022
Dallas, Texas

                                        HIGIER ALLEN & LAUTIN, PC

                                        By: */s/ Gordon W. Green*
                                        Jason T. Rodriguez
                                            Texas State Bar No. 24042827
                                            *Attorney-In-Charge*
                                        Timothy P. Woods
                                            Texas State Bar No. 21965500
                                        Gordon W. Green
                                            Texas State Bar No. 24083102
                                        HIGIER ALLEN & LAUTIN, P.C.
                                        2711 N. Haskell Ave., Suite 2400
                                        Dallas, Texas 75204
                                        Telephone: (972) 716-1888
                                        Facsimile: (972) 716-1899
                                        jrodriguez@higierallen.com
                                        twoods@higierallen.com
                                        ggreen@higierallen.com

                                        **ATTORNEYS FOR WINDSPEED TRADING, LLC, MR. WILLIAM SZETO, MS. ZHEXIAN LIN, MS. DANA MARIE TOMERLIN, MS. PADASAMAI VATTANA; MS. PAULA KETTER, MS. VANESSA TORRES**

## **CERTIFICATE OF SERVICE**

   I hereby certify that on the 18th day of January 2022, a true and correct copy of the foregoing document was served *via* the Court's ECF system and by email to the following parties.

| | |
|---|---|
| Jason B. Freeman<br>Freeman Law, PLLC<br>2595 Dallas Parkway, Suite 420<br>Frisco, Texas 75034<br>jason@freemanlaw-pllc.com<br><br>**Counsel for Plaintiff** | Edward P. Perrin, Jr.<br>Jennifer R. Poe<br>HALLETT & PERRIN, P.C.<br>1445 Ross Ave., Suite 2400<br>Dallas, Texas 75202<br>eperrin@hallettperrin.com<br>jpoe@hallettperrin.com<br><br>**Counsel for Baymark Defendants** |
| John David Blakley<br>William D. Dunn<br>DUNN SHEEHAN, LLP<br>3400 Carlisle Street, Suite 200<br>Dallas, Texas 75204<br>jdblakley@dunnsheehan.com<br><br>**Counsel for Super G Capital, LLC and Steven Bellah** | Andrea Levin Kim<br>DANIELS TREDENNICK, PLLC<br>6363 Woodway Dr., Ste. 700<br>Houston, Texas 77057<br>andrea.kim@dtlawyers.com<br><br>Rachel Williams<br>WILLIAMS LAW, PC<br>10300 N. Central Expry., Ste. 544<br>Dallas, Texas 75231<br><br>**Counsel for SG Credit Partners, Inc. and Marc Cole** |

               */s/ Gordon W. Green*_____
                Gordon W. Green