UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), Directly and Derivatively on Behalf of ACET GLOBAL, LLC and BAYMARK ACET HOLDCO, LLC<br><br>and<br><br>ACET GLOBAL, LLC,<br><br>  *Plaintiffs*,<br><br>v.<br><br>BAYMARK PARTNERS, LP;<br>BAYMARK PARTNERS MANAGEMENT, LLC;<br>SUPER G CAPITAL, LLC;<br>SG CREDIT PARTNERS, INC.;<br>BAYMARK ACET HOLDCO, LLC;<br>BAYMARK ACET DIRECT INVEST, LLC;<br>BAYMARK PARTNERS;<br>DAVID HOOK; TONY LUDLOW;<br>MATT DENEGRE; WILLIAM SZETO;<br>MARC COLE; STEVEN BELLAH;<br>ZHEXIAN "JANE" LIN;<br>DANA MARIE TOMERLIN;<br>PADASAMAI VATTANA; PAULA KETTER;<br>VANESSA TORRES;<br>WINDSPEED TRADING, LLC;<br>HALLETT & PERRIN, P.C.; and<br>JULIE A. SMITH,<br><br>  *Defendants*. | CIVIL CAUSE NO. 3:21-CV-01171-B |

**BAYMARK DEFENDANTS'
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.       Plaintiff's Improper "Shotgun" Pleading and Failure to Comply with Rule 8 . . . . 3

    II.      Plaintiff's Claims Under RICO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

           A.      Pattern . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

           B.      Predicate Acts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

                  1.       18 U.S.C. § 1503 (obstruction of justice) . . . . . . . . . . . . . . . . . . . 5

                  2.       18 U.S.C. §§ 1956, 1957 (money laundering) . . . . . . . . . . . . . . . 6

                  3.       18 U.S.C. §§ 152, 157 (bankruptcy fraud) . . . . . . . . . . . . . . . . . . 7

                  4.       18 U.S.C. §§ 1341, 1343 (mail/wire fraud) . . . . . . . . . . . . . . . . . 7

           C.      Causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           D.      18 U.S.C. § 1962(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    III.     Plaintiff's State-Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# INDEX OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Berman, Trustee for the Estate of Michael S. Goldberg, LLC v. LaBonte*,
622 B.R. 503 (Bankr. D. Conn. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Black Cat Exploration & Prod., LLC v. MWW Capital Ltd.*,
Civil Action No 1:15-CV-51-BL, 2015 WL 12731751 (N.D. Tex. Apr. 29, 2015). . . . . . . . . . . 2

*Drake v. Costume Armour, Inc.*, 736 F. App'x 505 (5th Cir. 2018) (per curiam) . . . . . . . . . . . 10

*Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Six Flags Entm't Corp.*,
524 F. Supp. 3d 501 (N.D. Tex. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Feld Entm't, Inc. v. American Soc'y for the Prevention of Cruelty to Animals*,
873 F. Supp. 2d 288 (D.D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*George v. Blue Diamond Petroleum, Inc.*, 718 F. Supp. 539
(W. D. La. 1989), *aff'd*, 922 F.2d 838 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Greb v. Singleton*, Civil Action No. 3:18-cv-01439-M,
Order Granting Motion to Dismiss and Requiring RICO Case Statement
(N.D. Tex. Sept. 30, 2019) (not available in Westlaw) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Green v. Innovis Data Solutions, Inc.*, Civil Action No. 3:20-CV-01614-L,
2021 WL 4244779 (N.D. Tex. Sept. 17, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Hughes v. City of Dallas, Tex.*, Civil Action No. 3:18-CV-1770-B,
2019 WL 3081654 (N.D. Tex. Jul. 15, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Marriott Bros. v. Gage*, 911 F.2d 1105 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, Civil Action No. 3:16-CV-1217-B,
2018 WL 2323243 (N.D. Tex. Mar. 26, 2018), *report and recommendation adopted*,
2018 WL 2323471 (N.D. Tex. May 2, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580 (5th Cir. 1992) . . . . . . . . . . 10

*Poe v. Bock*, EP-17-CV-00232-DCG,
2018 WL 4275839 (W.D. Tex. Sept. 7, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Saffran v. Boston Scientific Corp.*,
Civil Action No. 2-05-CV-547 (TJW), 2008 WL 2716318 (E.D. Tex. Jul. 9, 2008). . . . . . . . . . 2

*United States v. Crispo*, 306 F.3d 71 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. Davis*, 752 F.2d 963 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. McBride*, 362 F.3d 360 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. Williams*, 874 F.2d 968 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wilkins v. Duncanville I.S.D.*, Case No. 3:20-CV-1404-E-BK, 2021 WL 1111162
(N.D. Tex. Mar. 8, 2021), *report and recommendation adopted*,
2021 WL 1102167 (N.D. Tex. Mar. 23, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Defendants Baymark Partners Management, LLC; Baymark ACET Direct Invest, LLC; Baymark Partners; David Hook; Tony Ludlow; and Matthew Denegre ("Baymark Defendants") file this Reply in Support of Their Motion to Dismiss Plaintiff's First Amended Complaint ("Baymark Defendants' Motion") as follows:

## ARGUMENT AND AUTHORITIES

Before focusing on certain specific arguments Plaintiff makes (or attempts to make) in its Response in Opposition to the Baymark Defendants' Motion to Dismiss and Brief in Support (the "Response"), the Baymark Defendants note several generally applicable points. First, Plaintiff fails to respond to several arguments raised in the Baymark Defendants' Motion. Such failure waives any response and effectively concedes the Baymark Defendants' arguments.[1] Second, in its Response, Plaintiff refers to matters not set forth in its First Amended Complaint ("FAC").[2] However, "all relevant facts and claims must be alleged in a complaint, not for the first time in response to a motion to dismiss."[3] Third, Plaintiff argues that the Baymark Defendants improperly incorporate arguments set forth in other Defendants' Briefs.[4] In support of this proposition, Plaintiff relies on two cases in

---

[1] *See, e.g.*, *Green v. Innovis Data Solutions, Inc.*, Civil Action No. 3:20-CV-01614-L, 2021 WL 4244779, at *5 n.4 (N.D. Tex. Sept. 17, 2021) ("Plaintiff has not addressed this assertion in his pleadings or response to Defendant's motion. Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (internal quotation marks omitted); *Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Six Flags Entm't Corp.*, 524 F. Supp. 3d 501, 525 (N.D. Tex. 2021) ("Failure to respond to arguments made in a motion to dismiss results in waiver of opposition."). Plaintiff cannot complain that it did not have enough room in its Response to address all of the Baymark Defendants' arguments. Plaintiff sought and received permission to exceed the Court's page limit with respect to its Response.

[2] *See, e.g.*, Response [Docket No 68] at 19 (referring to an exhibit attached to one of Plaintiff's other motion to dismiss Responses [Docket No. 63] but not referenced in the FAC); *id.* at 27 (discussing "theft of trade secrets," which is not referenced in the FAC).

[3] *Hughes v. City of Dallas, Tex.*, Civil Action No. 3:18-CV-1770-B, 2019 WL 3081654, at *2 (N.D. Tex. Jul. 15, 2019); *see also Wilkins v. Duncanville I.S.D.*, Case No. 3:20-CV-1404-E-BK, 2021 WL 1111162, at *3 (N.D. Tex. Mar. 8, 2021) ("[T]o the extent Plaintiff attempts to allege new facts against the Mansfield Defendants in her response, the Court cannot consider them in the context of the motion to dismiss.") (internal citation omitted), *report and recommendation adopted*, 2021 WL 1102167 (N.D. Tex. Mar. 23, 2021).

[4] Response [Docket No. 68] at 1 n.2.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FAC— Page 1**

which a party attempted to incorporate by reference its own prior briefing on a separate matter.[5] The procedural posture in this case is entirely different. On motions to dismiss, there are arguments that necessarily apply to a complaint as a whole, regardless of the defendant. In this case, for example, if Plaintiff lacks standing to assert derivative claims (which it does) or fails to allege the continuity necessary to state a claim under RICO (which it also does), such defects exist as to all the Defendants.[6] For Plaintiff to suggest that the Baymark Defendants must restate arguments that are fully examined in another Defendants' briefing would be to demand redundancy and elevate form over substance.[7]

Finally, Plaintiff's Response fails to address the proper standard under a Rule 12(b)(6) motion to dismiss. Plaintiff expressly relies on the "no set of facts" standard of pleading.[8] This standard was expressly "retired" by the Supreme Court in *Bell Atlantic Corporation v. Twombly* (which Plaintiff's Response fails to cite).[9] The standard established by *Twombly* almost fifteen years

---

[5]*See Black Cat Exploration & Prod., LLC v. MWW Capital Ltd.*, Civil Action No 1:15-CV-51-BL, 2015 WL 12731751, at *2 (N.D. Tex. Apr. 29, 2015) (considering a plaintiff's motion to remand and noting that "Defendants also take issue with Plaintiff's attempt to incorporate by reference its preliminary injunction reply into its reply on motion for remand") (internal citation omitted); *Saffran v. Boston Scientific Corp.*, Civil Action No. 2-05-CV-547 (TJW), 2008 WL 2716318, at *4 (E.D. Tex. Jul. 9, 2008) (considering a post-trial motion for judgment as a matter of law into which the defendant incorporated arguments from its earlier motion for summary judgment).

[6]In fact, when the Court concludes that Plaintiff lacks standing to assert derivative claims, *all* such claims in the FAC will have to be dismissed, whether or not a particular Defendant raised or adopted the standing arguments in its own briefing. The same is true for other generally applicable bases for dismissing the FAC.

[7]Unlike the situation in the cases on which Plaintiff relies, in which the non-movant was limited in its ability to respond to the movant's adopted arguments because it was having to file a single response to what amounted to multiple motions, Plaintiff had every opportunity to respond in full to all of the "adopted" arguments as it was able to submit a response to each motion to dismiss filed by the Defendants.

[8]Response [Docket No. 68] at 9.

[9]550 U.S. 544, 562-63 (2007) ("*Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . The phrase is best forgotten . . . .").

ago is one of "facial plausibility."[10] Because Plaintiff's Response does not even acknowledge this standard, it fails to analyze any of the Baymark Defendants' arguments in the context of whether the FAC provides "factual content" that would allow the Court to draw the "reasonable inference" that the Baymark Defendants are "liable for the misconduct alleged."[11]

## I. Plaintiff's Improper "Shotgun" Pleading and Failure to Comply with Rule 8

The Baymark Defendants' Motion seeks dismissal of the First Amended Complaint ("FAC") because it represents the quintessential example of improper "shotgun" pleading and because it fails to comply with Rule 8's express requirements.[12] Plaintiff's Response makes no attempt to explain why the FAC should not be considered improper "shotgun" pleading, nor does it offer any analysis as to how the FAC could possibly comply with Rule 8. By failing to provide any substantive response to the Baymark Defendants' arguments on these issues, Plaintiff has waived any response.[13]

## II. Plaintiff's Claims Under RICO

### A. Pattern

Plaintiff's Response spends several pages purporting to address the RICO "pattern" element, but it does so without ever actually addressing (or even acknowledging) the Baymark Defendants' specific argument.[14] The Baymark Defendants challenged Plaintiff's ability to demonstrate the necessary RICO pattern in this case because "schemes involving a single, narrow purpose and one

---

[10] *See Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009).

[11] *Id.*

[12] Baymark Defendants' Motion [Docket No. 49] at 6-7.

[13] *See supra* note 1.

[14] *See* Response [Docket No. 68] at 2-6, 10-19. Plaintiff also argues in its Response that a RICO defendant is not required to have personally committed each predicate act. *Id.* at 7-9. The Baymark Defendants did not argue to the contrary in their Motion. Accordingly, it is unclear why this issue is presented in Plaintiff's Response.

or few participants directed toward a single victim do not satisfy the RICO requirement of closed or open pattern continuity."[15] In support of this fundamental premise, the Baymark Defendants cited over a dozen cases.[16] Notably, Plaintiff's Response does not cite *any* of them, much less offer any basis for concluding that the rationale of these cases should not apply to the facts at issue here.[17] Because Plaintiff's Response offers no analysis of the *relevant* issue, Plaintiff has waived its opposition.[18]

---

[15] *Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, Civil Action No. 3:16-CV-1217-B, 2018 WL 2323243, at *10 (N.D. Tex. Mar. 26, 2018), *report and recommendation adopted*, 2018 WL 2323471 (N.D. Tex. May 2, 2018) (quoted in Baymark Defendants' Motion [Docket No. 49] at 10).

[16] *See* Baymark Defendants' Motion [Docket No. 49] at 10-12. Another case can be added to the Baymark Defendants' list of cases—one cited *by Plaintiff* in its Response in Opposition to Hallett & Perrin, P.C. and Julie A. Smith's Motion to Dismiss and Brief in Support [Docket No. 61] ("Response to Attorney Defendants' Motion"). In *Feld Entertainment, Inc. v. American Society for the Prevention of Cruelty to Animals*, the District Court for the District of Columbia expressly recognized: "The D.C. Circuit has also found that if a plaintiff alleges only a single scheme, a single injury and few victims it is *virtually impossible for plaintiffs to state a RICO [pattern] claim*." 873 F. Supp. 2d 288, 311 (D.D.C. 2012) (emphasis added, internal quotation marks omitted, alteration in original) (cited in Response to Attorney Defendants' Motion at 8).

[17] In fact, Plaintiff's Response further reinforces why there can be no pattern under the facts alleged by Plaintiff. *See* Response [Docket No. 68] at 10 ("The acts . . . were an interrelated series of events with a common purpose: to loot a company in order to defraud a creditor."); *id.* at 11 (reiterating the allegation in the FAC that "the Baymark Defendants transferred *all of ACET Global's assets and operations* to Windspeed in October 2018") (emphasis added). As noted in the Baymark Defendants' Motion, the "scheme" that Plaintiff alleges was complete in October of 2018 because there was "nothing left to loot" after that time. *See* Baymark Defendants' Motion [Docket No. 49] at 11.

[18] *See, e.g.*, *Green*, 2021 WL 4244779, at *5 n.4 (recognizing that "the failure to respond to arguments constitutes abandonment or waiver of the issue" as well as that "inadequately briefed issues are considered waived"). The Baymark Defendants also noted in their Motion that the absence of the RICO "pattern" element with respect to a "scheme" that is "inherently terminable" cannot be fixed through repleading. Baymark Defendants' Motion [Docket No. 49] at 20. Plaintiff's Response also fails to address this argument.

Instead of providing any *substantive* argument, Plaintiff attempts to rely on the fact that Ludlow and Hook are associated with "a mind-numbing number of other entities." *See* Response [Docket No. 68] at 5-6, nn.4, 5. Plaintiff cites no authority to suggest that being associated with a lot of entities makes a person a "racketeer." Further, Plaintiff's reference to another RICO lawsuit involving Baymark Partners, Hook, and Ludlow is equally unavailing. *See id.* What Plaintiff fails to note is the fact that the prior RICO lawsuit against these Defendants was dismissed for failure to state a claim. *See Greb v. Singleton*, Civil Action No. 3:18-cv-01439-M, Order Granting Motion to Dismiss and Requiring RICO Case Statement (N.D. Tex. Sept. 30, 2019) (not available in Westlaw). Obviously, any plaintiff can file a lawsuit and make unsubstantiated allegations. The fact that multiple plaintiffs do so does not magically provide substance to the allegations.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FAC— Page 4**

B.  **Predicate Acts**

In light of the page limitations applicable to this Reply, the Baymark Defendants cannot address everything wrong with the arguments in Plaintiff's Response about the various purported predicate acts alleged in the FAC. However, some of the more glaring problems are set forth below.

1.  *18 U.S.C. § 1503 (obstruction of justice).*—The primary thrust of the Baymark Defendants' argument as to why Plaintiff cannot rely on "obstruction of justice" as a predicate act is that 18 U.S.C. § 1503 only applies if a federal proceeding is involved.[19] As a result, Plaintiff's favorite allegation regarding Ludlow's utterance during a state-court deposition is simply irrelevant as regards to any alleged RICO predicate act.[20] Plaintiff's Response does not offer any authority to support its claim that purportedly wrongful actions taken in relation to a state-court proceeding can give rise to a federal obstruction of justice claim.[21] Plaintiff's Response also offers no authority for the proposition that bankruptcy "fraud" can also give rise to a section 1503 claim. One of the cases cited by Plaintiff in its Response involved a conviction for "unlawful threats" directed at a

---

[19]Baymark Defendants' Motion [Docket No. 49] at 12 (citing cases).

[20]Plaintiff repeatedly references Ludlow's statement during Denegre's deposition whether it is relevant to the issue at hand or not. *See, e.g.*, Response [Docket No. 68] at 1 of 50; *id.* at 24. Of course, Plaintiff always fails to mention that Ludlow did not intend to be heard as he thought he was on mute. *See* FAC, Exhibit 3, Ludlow Depo. at 260:3-261:25.

[21]The cases Plaintiff cites in support of its obstruction of justice argument all involve federal proceedings. *See Unites States v. McBride*, 362 F.3d 360, 372 (6th Cir. 2004) (upholding a conviction under 18 U.S.C. § 1503 when the defendant "acted with the intent to intimidate [federal] Judge Marbley as the latter prepared to sentence [the defendant's girlfried]" in a federal tax evasion case); *United States v. Crispo*, 306 F.3d 71, 78 (2d Cir. 2002) (considering a conviction under "the court-officer clause" of section 1503 and concluding that the conduct charged, unlawful threats directed at a bankruptcy trustee, were covered by this clause); *United States v. Williams*, 874 F.2d 968, 976 (5th Cir. 1989) (recognizing that "[s]ection 1503 was enacted to protect individuals involved in federal judicial proceedings" and discussing the defendants' conduct in giving false testimony to a federal grand jury); *United States v. Davis*, 752 F.2d 963, 967 (5th Cir. 1985) ("The obstruction of justice counts involved Davis' failure to produce documents requested pursuant to a federal grand jury subpoena and Davis' alleged attempts to interfere with a witness in the proceeding against him.") (all cited in Plaintiff's Response [Docket No. 68] at 23-24).

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FAC— Page 5**

bankruptcy trustee under the "court-officer clause" of section 1503.[22] In the other case on which Plaintiff relies, although a "fraudulent involuntary bankruptcy petition" was involved, what made the conduct actionable under section 1503 was the fact that such petition was filed "with the intent to intimidate" a federal judge.[23]

    2.    *18 U.S.C. §§ 1956, 1957 (money laundering).*—Plaintiff's Response spends five pages discussing its allegations of "money laundering."[24] Despite this fact, Plaintiff still fails to offer a clear explanation of the basis for its claims under sections 1956 and 1957. For example, Plaintiff seems to believe that it is sufficient for it to identify *any* "transaction." In this regard, Plaintiff points to the loan from co-Defendant Super G Capital, LLC ("Super G").[25] As noted in the Baymark Defendants' Motion, for a "transaction" to be actionable as "money laundering," it must *use* the "proceeds" of "specified unlawful activity."[26] The FAC pleads no facts to suggest that Super G made any loan with the "proceeds" of any "unlawful activity." Similarly, although Plaintiff's Response points to a "management fee," the FAC contains no allegations that the funds used to pay such management fee were the "proceeds" of any "unlawful activity."[27] In short, nothing Plaintiff offers in its Response demonstrates that the FAC has pleaded the facts necessary to support any predicate act of money laundering by the Baymark Defendants.

---

[22] *Crispo*, 306 F.3d at 74, 78 (cited in Plaintiff's Response [Docket No. 68] at 24).

[23] *McBride*, 362 F.3d at 372.

[24] Response [Docket No. 68] at 25-29.

[25] *Id.* at 28.

[26] Baymark Defendants' Motion [Docket No. 49] at 14 (discussing section 1956).

[27] *See* Response [Docket No. 68] at 29.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FAC— Page 6**

    3.    *18 U.S.C. §§ 152, 157 (bankruptcy fraud).*—Plaintiff finally concedes that it cannot rely on 18 U.S.C. § 157 as a RICO predicate act.[28] With respect to 18 U.S.C. § 152, Plaintiff's Response fails to point to any factual allegations in the FAC that would explain *how* the various "misrepresentations" allegedly contained in ACET Global's bankruptcy filing can be considered "material." Plaintiff merely makes the conclusory allegation that the various "false statements" were "designed to hide" the "fraud."[29] According to Plaintiff, the "fraud" was the fraudulent transfer of ACET Global's assets in October of 2018. However, as noted in the Baymark Defendants' Motion, the bankruptcy filing actually *disclosed* the existence of Plaintiff's state-court "fraudulent transfer" lawsuit.[30] Plaintiff does not acknowledge this disclosure or offer any explanation as to how the other purported "misrepresentations" could possibly serve to "hide" what was expressly disclosed.

    4.    *18 U.S.C. §§ 1341, 1343 (mail/wire fraud)*.—Plaintiff does not dispute in its Response that claims of mail fraud and wire fraud require "a scheme to defraud *by means of false or fraudulent representation*."[31] Instead, Plaintiff argues issues that the Baymark Defendants did not raise in their Motion, such as the fact that a defendant need not personally handle the mail at issue and that a plaintiff need not have relied on the mailing/wiring at issue.[32] The point made in the Baymark Defendants' Motion about the alleged predicate acts of mail and wire fraud is that the

---

[28]Response [Docket No. 68] at 20.

[29]*Id.* at 22.

[30]Baymark Defendants' Motion [Docket No. 49] at 16-17.

[31]*Compare* Baymark Defendants' Motion [Docket No. 49] at 17-18 *with* Response [Docket No. 68] at 30-32.

[32]*See* Response [Docket No. 68] at 30, 31.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FAC— Page 7**

"scheme" Plaintiff alleges is not one carried out "by means of" false or fraudulent representations; rather, it is a "scheme" involving the "looting" of a company.[33]

As noted in the Baymark Defendants' Motion, RICO claims of mail and wire fraud must be "particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."[34] Plaintiff's RICO claims of mail and wire fraud cannot withstand such scrutiny.

### C.   Causation

The Baymark Defendants' Motion raised two causation problems with respect to the FAC. First, the Motion points out that Plaintiff's injury must have been caused by the various predicate acts alleged.[35] Plaintiff's Response makes no attempt to explain how Plaintiff was specifically harmed by, for example, any alleged "bankruptcy fraud" or "money laundering" by the Baymark Defendants. Thus, Plaintiff has waived its opposition to this issue.[36] Moreover, Plaintiff's Response acknowledges that Plaintiff was harmed by the "deplet[ion] of *all* of [ACET Global's] assets."[37] Thus, once the assets were gone, there was no more harm to be done.

The second causation argument raised by the Baymark Defendants in their Motion is the fact that Plaintiff has an ongoing attempt to collect its debt through its state-court proceeding, which

---

[33] It is useful to compare the facts at issue in one of the cases cited in the Response. In *George v. Blue Diamond Petroleum, Inc.*, the "scheme" was one involving securities fraud in which the defendants sent out misleading circulars to investors and prospective investors. 718 F. Supp. 539, 550 (W. D. La. 1989), *aff'd*, 922 F.2d 838 (5th Cir. 1990) (cited in Plaintiff's Response [Docket No. 68] at 30). The fraudulent representations were used to get the investors to invest. In contrast, the supposed "looting" of ACET Global's assets did not require any "fraudulent representations."

[34] *Poe v. Bock*, EP-17-CV-00232-DCG, 2018 WL 4275839, at *4 (W.D. Tex. Sept. 7, 2018).

[35] Baymark Defendants' Motion [Docket No. 49] at 15, 17. "The causal nexus between the alleged predicate acts and the [plaintiff's] injury must be direct." *Marriott Bros. v. Gage*, 911 F.2d 1105, 1108 (5th Cir. 1990).

[36] *See supra* note 1.

[37] Response [Docket No. 68] at 32 (emphasis in original).

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FAC— Page 8**

alleges claims for fraudulent transfer.[38] If Plaintiff were correct about what happened (which it is not), this effort by Plaintiff to collect on its debt could succeed, and if it did, Plaintiff would not have suffered any RICO damages. Plaintiff's Response does not directly address the merits of this causation issue. Instead, Plaintiff merely takes issue with how the Baymark Defendants' Motion described one of the cases cited in its causation argument.[39] Other cases support this proposition, however, including one cited in Plaintiff's Response. In *Berman, Trustee for the Estate of Michael S. Goldberg, LLC v. LaBonte*, a bankruptcy court granted a defendant's motion to dismiss a "loss debt" claim because the plaintiff's "actual lost debt damages are speculative for trebling purposes under RICO because the collateral actions to collect the judgment remain pending."[40] The court in that case cast the issue as one of "ripeness," but the end result is the same.[41]

### D.   18 U.S.C. § 1962(a)

As noted in the Baymark Defendants' Motion, a claim under RICO section 1962(a) requires a plaintiff to plead that it has suffered injury specifically *from the use* of "racketeering income."[42] Further, to state a claim under section 1962(a), the FAC would have to plead facts regarding "income" that was "derived . . . from a pattern of racketeering activity" as well as facts regarding the

---

[38] Baymark Defendants' Motion [Docket No. 49] at 18-19.

[39] Response [Docket No. 68] at 33. For example, Plaintiff asserts that the Baymark Defendants did not disclose "that the quote was not a holding by the appellate court, but was a simple recitation of the district court's rationale." *Id.* However, in the Baymark Defendants' Motion, they expressly stated that the Second Circuit "recognized the District Court's conclusion." Baymark Defendants' Motion [Docket No. 49] at 18. There was no suggestion that the Second Circuit "adopted" or itself reached any "holding" similar to the District Court's analysis. Further, whether the issue is couched as "causation" or "ripeness" is merely a matter of semantics. *See* Response [Docket No. 68] at 33. The end result—the need for dismissal—is the same.

[40] 622 B.R. 503, 522 (Bankr. D. Conn. 2020) (cited in Plaintiff's Response at 21.

[41] *Id.* at 521.

[42] Baymark Defendants' Motion [Docket No. 49] at 19.

"use" or "investment" of such "income." Plaintiff's Response addresses its section 1962(a) claim in a single paragraph, citing no authority and providing no substantive analysis.[43] Plaintiff makes no attempt whatsoever to point to facts stated in the FAC that would even suggest an injury to Plaintiff from the use or investment of racketeering income. For these reasons, Plaintiff has waived its response and conceded this basis for dismissal of its section 1962(a) RICO claim.[44]

### III. Plaintiff's State Law Claims

In the Fifth Circuit, the "general rule" is to dismiss pendent state claims upon the dismissal of federal claims.[45] Plaintiff's Response does not dispute that if the Court dismisses its RICO claims, the Court should not retain jurisdiction over its state law claims.

With respect to the substance of Plaintiff's state law claims, the Baymark Defendants note (1) Plaintiff's failure to challenge the assertion in the Baymark Defendants' Motion that Plaintiff cannot have relied on the one "misrepresentation" that the FAC specifically identifies; (2) Plaintiff's failure to explain how the Baymark Defendants can be liable for *both* breach of fiduciary duty *and* "aiding and abetting" such breach; (3) Plaintiff's failure to identify specific facts pleaded in the FAC that explain what "substantial assistance" any of the Baymark Defendants allegedly provided to any breaching fiduciary; and (4) Plaintiff's failure to explain how it can have a TUFTA claim against the Baymark Defendants, who were neither transferees nor the beneficiaries of any "fraudulent transfer." Accordingly, Plaintiff has waived its opposition on these issues.

---

[43] Response [Docket No. 68] at 34.

[44] *See supra* note 1.

[45] *See, e.g., Drake v. Costume Armour, Inc.*, 736 F. App'x 505, 506 (5th Cir. 2018) (per curiam) ("But here there are no good reasons for retaining the state law claims in this federal suit."); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 590 (5th Cir. 1992) (concluding that "the district court . . . abused its discretion in retaining jurisdiction over the state law claims after it had dismissed the federal RICO claims.").

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FAC— Page 10**

Respectfully submitted,

*/s/ Edward P. Perrin, Jr.*
Edward P. Perrin, Jr.
State Bar No. 15796700
Jennifer R. Poe
State Bar No. 00794470
HALLETT & PERRIN, PC
1445 Ross Ave., Suite 2400
Dallas, TX 75202
Telephone: (214) 953-0053
Facsimile: (214) 922-4142
eperrin@hallettperrin.com
jpoe@hallettperrin.com

**ATTORNEYS FOR DEFENDANTS
BAYMARK PARTNERS MANAGEMENT, LLC;
BAYMARK ACET HOLDCO, LLC;
BAYMARK ACET DIRECT INVEST, LLC;
BAYMARK PARTNERS; DAVID HOOK;
TONY LUDLOW; AND MATTHEW DENEGRE**

## CERTIFICATE OF SERVICE

On January 18, 2022, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Edward P. Perrin, Jr.*
Edward P. Perrin, Jr.