IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS LLC, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Case No. 3:21-CV-01171-B |
| § | | |
| BAYMARK PARTNERS LP, *et al.*, § | | |
| Defendants. § | | |

**REPLY IN SUPPORT OF DEFENDANTS SUPER G CAPITAL LLC'S AND STEVEN BELLAH'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Super G Capital LLC ("Super G") and Steven Bellah ("Bellah") file this reply in support of their *Motion to Dismiss Plaintiff's First Amended Complaint* (the "Motion" at Docs. 54-56), and in rebuttal to Plaintiff's *Response in Opposition to Super G Capital, LLC and Steven Bellah's Motion to Dismiss and Brief in Support* (the "Response," at Doc. 66).

When reminded by the Motion[1] that shotgun pleadings—*i.e.*, pleadings: "contain[ing] several counts within a complaint with each count incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions"[2]; "'set[ting] forth an excessive number o[f] facts' before alleging that all the provided facts support various counts in the complaint"[3]; ascribing singular acts to multiple defendants or otherwise "lumping together" defendants[4]; making "too vague or internally contradictory" allegations[5]; presenting "conclusory allegations, unwarranted deduction, or legal conclusions"[6]; burying "any allegations that are material …

---

[1] Motion, Doc. 55 at pp. 4-5.
[2] *Moore v. Carrington Mortg. Servs. LLC*, No. 3:17-CV-3132-G-BN, 2018 WL 3853711, at *3 (N.D.Tex. July 17, 2018) (Horan, J.) ("Such pleadings are subject to dismissal under Rule 12(b)(6).").
[3] *Zucker v. Farish*, No. 3:18-CV-01790-K, 2018 WL 6570867, at *3 (N.D.Tex. Dec. 12, 2018) (Kinkeade, J.).
[4] *Wilson v. Deutsche Bank Trust Co. Am.*, No. 3:18-CV-0854-D, 2019 WL 175078, at *7 (N.D.Tex. Jan. 10, 2019) (Fitzwater, J.); *Walker v. Beaumont Ind. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir.2019).
[5] *Wilson*, 2019 WL 175078, at *7.
[6] *Zucker*, 2018 WL 6570867, at *6.

beneath innumerable pages of rambling irrelevancies"[7]—are facially improper under the Rules, Plaintiff's Response is, simply, trust it: "The Complaint is replete with details … Each defendant played their part."[8] Presumably, it is up to each Defendant (and this Court) to wade through the Complaint's "innumerable pages of rambling irrelevancies" to determine whether any "allegations that are material [to a given Defendant] are buried beneath"[9]—just do not ask Plaintiff to do so.[10]

Super G and Bellah have taken the time to do the wading. And it is clear: despite Plaintiff's request that the Court simply take its word that adequately-pled claims are buried somewhere beneath the bunk, Plaintiff (again) fails to state facially-plausible claims to relief (and where applicable, to do so with particularity) against Super G and Bellah.

### A.   Plaintiff's procedural objection should be overruled.[11]

After filing a 157-page Complaint, Plaintiff complains that Super G/Bellah's incorporation of other Defendants' briefing contravenes the Court's page-limit restrictions.[12] Plaintiff relies on an inapposite case involving a party's incorporation of its *own* prior filings into a *reply* brief for purposes of rising new arguments *not contained in the original motion*—thus depriving the other party an opportunity to respond.[13] That is obviously not the case here where Super G and Bellah

---

[7] *Id.* at *3.
[8] Response, Doc. 66 at p. 18.
[9] *Zucker*, 2018 WL 6570867, at *6.
[10] For example, with respect to its state-law claims (Response, Doc. 66 at §C), Plaintiff cites to a grand total of *one* of the Complaint's 393 paragraphs when baldly asserting it has "more than adequately pled" *all* essential elements of its *four* state-law claims against Super G and Bellah.
[11] With respect to Plaintiff's "failure to conference" objection, Super G is separately (*via* correspondence between counsel) requesting Plaintiff's position as to the conditional motion to transfer the claims purportedly brought on ACET Global's behalf against Super G and will seek such conditional relief by separate motion.
[12] Response, Doc. 66 at p. 8.
[13] *See Black Cat Exploration & Prod. LLC v. MWW Capital Ltd.*, No. 1:15-CV-51-BL, 2015 WL 12731751, at *1-2 (N.D.Tex. Apr. 29, 2015) ("Defendants also take issue with Plaintiff's attempt to incorporate by reference its preliminary injunction reply … into its reply on motion for remand. Defendants argue that allowing Plaintiff to incorporate by reference the contents of other pleadings deprives them of the opportunity to respond to particularized arguments."). *Saffran v. Boston Sci. Corp.*, No. 2-05-CV-547, 2008 WL 2716318 (E.D.Tex. July 9, 2008), cited by the *Black Cat* court, likewise involved a party's incorporation of its *own* prior arguments "without specifically identifying them…leav[ing] the court to speculate which specific arguments [it] intended to incorporate."

specifically identify and incorporate coinciding arguments into a *motion* from their co-Defendants' contemporaneously-filed *motions* addressing deficiencies within a 157-page Complaint that lumps all 21 Defendants together in asserting nine overlapping and intersecting theories of liability. Unlike the objecting party in *Black Cat*, Plaintiff has been provided ample notice of the arguments made by Super G and Bellah with ample opportunity to respond.[14] Plaintiff fails to explain any prejudice caused by Super G and Bellah's incorporation of certain of other Defendants' corresponding arguments. Thus, Plaintiff's objection should be overruled.

**B.     Plaintiff's RICO claims should be dismissed.**

Plaintiff's improper attempt to "lump together" all Defendants is made apparent by its Response to the Motion to dismiss the RICO claims against Super G/Bellah. For example, Plaintiff asserts that Super G and Bellah were "indirectly involved" in the "predicate acts" of "bankruptcy fraud, money laundering, and obstruction of justice."[15] But, as made clear by the Complaint itself, the alleged bankruptcy fraud and money laundering involve "Concealment of Assets, False Oaths" purportedly made by certain Baymark Defendants to "a trustee or officer of the court" in the ACET Global bankruptcy proceeding.[16] There are no allegations in the Complaint that Super G or Bellah had anything to do with the bankruptcy, much less committed criminal concealment or deception therein. Likewise, Plaintiff's obstruction-of-justice allegations solely involve alleged perjury committed by other Defendants in the Overlapping State Case.[17] The Complaint is devoid of any

---

[14] Before filing its Response (Doc. 66), Plaintiff possessed Super G's and Bellah's original motion to dismiss (Docs. 31-32)—which contained the same incorporations at issue—for 137 days. Defendants agreed to a 30-day extension for Plaintiff to file its Response to the Motion. *See* Docs. 59-60. And Plaintiff was afforded a collective 175 pages to respond to Defendants' seven motions to dismiss by the Local Rules, plus another 19 pages by Court order. *See* Docs. 65, 70. Indeed, Plaintiff moved for excess pages to respond to the Baymark Defendants' motion based explicitly on their use of incorporation. Doc. 65 at ¶4. Plaintiff did not ask for additional pages to respond to the Motion (due to incorporation or otherwise) and, in fact, did not use the 25 pages afforded by the Local Rules. *See* Doc. 66 (19 pages).
[15] Response, Doc. 66 at pp. 11-12.
[16] *See* Complaint, Doc. 36 at ¶¶361-62; *see also* Motion, Doc. 55 at p. 9.
[17] *See* Complaint, Doc. 36 at ¶¶360; *see also* Motion, Doc. 55 at p. 9 & n.15.

allegations that Super G or Bellah (who did not even testify) committed perjury—much less any particulars as to the time, place, or contents thereof.[18]

When arguing that it adequately pleads instances of Super G/Bellah predicate acts of wire fraud, Plaintiff incredibly sets forth a string-cite to several paragraphs of the Complaint—the majority of which do not include communications or representations by either Super G or Bellah, and none of which involve communications or representations by Super G or Bellah to Plaintiff.[19] Nowhere in the Complaint does Plaintiff "identify any particular content in [these wires] or explain how such content was fraudulent"[20]—particularly with respect to Super G and Bellah.

When arguing that it adequately pleads instances of Super G/Bellah predicate acts of mail fraud, Plaintiff attempts to make two mailings out of one, calling the same notice (exhibit 17 to the Complaint, at Doc. 36-17) two different names ("Notice of Forfeiture/Notice of Foreclosure" and "Notice of Disposition and Sale of Collateral") and deeming it two "[i]nstances of mail fraud."[21] Such transparent attempt to tie "two or more"[22] predicate acts to Super G and/or Bellah is plainly belied by the Complaint itself. In any event, Plaintiff fails to describe how the notice—relating to Super G's exercise of rights pursuant to its "acknowledge[d]" and "consent[ed] to"[23] superior lien[24]—constitutes a criminal act, much less one that amounts to or poses a threat of

---

[18] *See Gabriel v. Outlaw*, No. 3:20-CV-60-E, 2021 WL 1030157, at *2 (N.D.Tex. Mar. 1, 2021) (Tolliver, J.) ("Plaintiffs' complaint does not plausibly allege the necessary elements of a RICO claim on many fronts, including that it is absent of any factual allegations demonstrating a pattern of racketeering behavior. Plaintiffs allege in conclusory fashion that [Defendant] committed various criminal acts—such as perjury, obstruction of justice, and conspiracy—but the mere invocation of such crimes is insufficient to state a claim. Plaintiffs must plead plausible facts that show [Defendant] committed such predicate offenses, and they have wholly failed to do so.").
[19] Response, Doc. 66 at p. 11.
[20] *See Stiel v. Heritage Auctions Inc.*, No. 3:17-CV-02068-M, 2019 WL 12095440, at *4 (N.D.Tex. Jan. 23, 2019).
[21] Response, Doc. 66 at p. 11.
[22] *See Stiel*, 2019 WL 12095440, at *4 ("A RICO action requires a plaintiff to allege 'two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity.'").
[23] Complaint, Doc. 36 at pp. 29-30 and Doc. 36-24 (ex. 24) at App. 070-71.
[24] *See Breitling v. LNV Corp.*, No. 3:15-CV-0703-B, 2016 WL 852963, at *4 (N.D.Tex. Mar. 4, 2016) (Boyle, J.) ("A plaintiff alleging a RICO violation must plead the elements of the predicate offenses in addition to the elements of the RICO violation itself.").

continued criminal activity. Instead, Plaintiff's Response—like its Complaint—nakedly asserts "there is a continued threat of repetition of such conduct," without explanation or any citation to any supporting allegations in the Complaint. Is the continued threat that Super G (or, even more far-fetched, Bellah) will try to somehow notice foreclosure again?[25]

With respect to reliance and proximate cause, Plaintiff simply asserts that "[r]eliance and proximate cause are established throughout" the Complaint, adding: "While the Complaint is admittedly long, its length does not excuse a simple failure to read it."[26] Equally true is that a gratuitously long Complaint does not excuse a simple failure to plausibly (or particularly) plead one's claims.[27] Put plainly, Plaintiff wholly fails to identify a "direct"[28] link between Super G's and/or Bellah's purported predicate acts (to the extent they are even adequately pleaded as such) and Plaintiff's purported injury, *i.e.*, "the failure to pay million of dollars owed to Plaintiff."[29] As explained in the Motion, any harm to Plaintiff would be attenuated and contingent, at best.[30]

The Complaint is devoid of any allegation that Super G or Bellah exercised some control or supervision over the purported RICO enterprise.[31] To the contrary, the Complaint pleads Super G/Bellah as mere pawns of the Baymark Defendants.[32] Plaintiff's Response does nothing to explain, much less alleviation, this pleading contradiction.

---

[25] *See Zastro v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 561 (5th Cir.2015) ("To establish continuity, plaintiffs must prove 'continuity of racketeering activity, or its threat' … '[W]here alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a pattern of racketeering activity has not been shown.'").
[26] Response, Doc. 66 at p. 13.
[27] *Zucker*, 2018 WL 6570867, at *3 ("A complaint can be long-winded … without pleading with particularity.").
[28] *Varela v. Gonzales*, No. 3:13-CV-1278-B, 2014 WL 1284985, at * 3 (N.D.Tex. Mar. 31, 2014) (Boyle, J.)("Supreme Court 'precedents make clear that in the RICO context, the focus' of the proximate cause analysis 'is on the directness of the relationship between the conduct and the harm … Thus, to establish RICO standing, Plaintiffs must show 'some direct relation between the injury asserted and the injurious conduct alleged' … Where the 'link' between the alleged injury and predicate acts 'is too remote, purely contingent, or indirect,' the RICO claim should be dismissed.").
[29] Complaint, Doc. 36 at ¶¶324, 337.
[30] *See* Motion, Doc. 55 at pp. 11-12.
[31] For a concise explanation of how Plaintiff misinterprets *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (and other authority) with respect to the "conduct or participate" requirement for pleading a RICO "person," *see* Doc. 76 at ¶¶5-9 and Doc. 77 at ¶¶7-9.
[32] *See* Motion, Doc. 55 at n.18.

Lastly, "[a] RICO conspiracy claim requires one additional element—there must be an agreement between the conspirators to specifically commit the alleged predicate acts." *Gabriel*, 2021 WL 1030157, at *2. As with the underlying elements, this too is absent from the Complaint.

**C.   Plaintiff's state law claims should be dismissed.**

Glaringly absent from the Response is any argument that, upon the dismissal of Plaintiff's RICO claims, this Court should not apply the Fifth Circuit's "general rule … to dismiss state claims when the federal claims to which they are pendent are dismissed." *Drake v. Costume Armor Inc.*, 736 Fed.Appx. 505, 506 (5th Cir.2018). Plaintiff provides no reason, argument, or authority that this is anything but the "usual case" in which "once all federal claims have been dismissed from an action, the[] [28 U.S.C. §1367(c)] factors counsel in favor of remanding the remaining state-law claims." *Porter v. City of Dallas*, No. 3:20-CV-0999-B, 2021 WL 2255902, at *1 (N.D.Tex. June 3, 2021) (Boyle, J.). Particularly given the early (pleading) stage of this case, there is no reason to except from the general rule and make "needless decisions of state law" if this Court dismisses the sole federal-law claims.[33] Regardless, Plaintiff's Response fails to address its Complaint's failure to state plausible state-law claims against Super G or Bellah, *to wit*:

1.   *Common Law Fraud.*

First, in the less-than-half-page that Plaintiff dedicates to this claim, it addresses what it deems "Bellah's fraudulent misrepresentation."[34] Yet, as highlighted in the Motion[35], Bellah is not named in this count of Plaintiff's Complaint[36]:

---

[33] *See Porter*, 2021 WL 2255902, at *1 (common-law factors of judicial economy, convenience, fairness, and comity all weigh in favor of remanding state-law claims where, as here, "at the time the federal claims were deleted hardly any federal judicial resources, let alone a significant amount of resources, had been devoted to the district court's consideration of the Texas state-law claims" and the "federal and state courts are … located within a few blocks of one another in downtown Dallas").
[34] Response, Doc. 66 at p. 17.
[35] Motion, Doc. 54 at n. 5; Motion, Doc. 55 at nn. 21, 26.
[36] Complaint, Doc. 36 at p. 151.

**SUPER G & BELLAH'S REPLY
IN SUPPORT OF MOTION TO DISMISS**                                                                                              6

**Count IV: Common Law Fraud**
(Baymark Partners; Denegre; Szeto; Super G Capital; Cole; Ludlow; Denegre; and Hook;
Julie A. Smith; Hallett & Perrin)

Second, Plaintiff's Response confirms what Super G concluded after "[c]ombing the 157-page Complaint for what Plaintiff conceivably could be alleged as a misrepresentation by Super G to Plaintiff"[37]: that Plaintiff's fraud claim against Super G hinges solely on an early-2019 statement by Bellah to Tamti that "he [Bellah] was unaware of Windspeed."[38] However, Plaintiff fails to identify any portion of the Complaint setting forth—much less with the particularity required by Rule 9(b)—multiple essential elements of fraud[39] with respect to such statement, including:

- materiality, *i.e.*, the Bellah statement somehow induced Plaintiff to act (the Complaint fails to identify a single act Plaintiff was induced to take based on Bellah's statement);

- fraudulent intent, *i.e.*, Super G intended Plaintiff to somehow act upon the Bellah statement and that Super G somehow obtained something thereby (the Complaint is devoid of any allegations of Super G's intent, how Super purportedly intended Plaintiff to act in response, or what Super G "obtained thereby");

- actual reliance, *i.e.*, that Plaintiff somehow detrimentally relied on the Bellah statement (there are no pleaded facts that Plaintiff did anything in response to Bellah's statement);

- justifiable reliance (there can be no justifiable reliance absent actual reliance); and

- pecuniary loss directly traceable to and which resulted from the purported misrepresentation (the Complaint wholly fails to trace directly any of its purported damages (*e.g.*, non-payment of the D&T Note) to the Bellah statement).

Plaintiff's common-law fraud claim against Super G should be dismissed.

2. *Aiding and Abetting Breach of Fiduciary Duties.*

After conceding that "if the underlying claim for breach of fiduciary duty fails, then the aiding and abetting such breach must fail as well"[40], Plaintiff sweepingly asserts that "Defendants herein [Super G and Bellah] knowingly participated and aided those [Fiduciary Claim]

---

[37] Motion, Doc. 55 at p. 14.
[38] Response, Doc. 66 at p. 17; *see also* Complaint, Doc. 36 at ¶294.
[39] For authority setting forth the essential elements of common-law fraud, *see* Motion, Doc. 55 at pp. 13-14.
[40] Response, Doc. 66 at p. 17. As explained in the Motion (Doc. 54 at n.6; Doc. 55 at n.21), neither Super G nor Bellah is named in "Count V: Breach of Fiduciary Duty." *See* Complaint, Doc. 36 at pp. 151-53.

**SUPER G & BELLAH'S REPLY
IN SUPPORT OF MOTION TO DISMISS** 7

[D]efendants in carrying out the scheme that has been described in great detail herein and in the Complaint."[41] But, as with its fraud claim, Plaintiff fails to identify any portion of the Complaint setting forth multiple essential elements of this claim[42], including:

- knowledge, *i.e.*, that Super G or Bellah were aware that the Fiduciary Claim Defendants' conduct constituted a breach of their fiduciary duties to Plaintiff (the Complaint does not allege that either Super G or Bellah was even aware of the Fiduciary Claim Defendants' conduct involving payment of Management Fees, much less that such conduct was tortious);

- intent, *i.e.*, that Super G or Bellah intended to assist the Fiduciary Claim Defendants (again, the Complaint does not allege Super G or Bellah were even aware of the purportedly breaching conduct, much less that they intend to assist such conduct);

- assistance or encouragement from Super G or Bellah to the Fiduciary Claim Defendants (again, the Complaint does not allege Super G or Bellah were even aware of the purportedly breaching conduct, much less assisted or encouraged such conduct);

- causation, *i.e.*, that Super G's or Bellah's conduct was a substantial factor in causing the breach of fiduciary duty (again, there are no allegations of what Super G's or Bellah's "conduct" is supposed to have been with respect to the subject Management Fees, much less how such non-existent conduct could conceivably be a substantial factor in causing the breach).

Tellingly, Plaintiff fails to cite a single case or *even a single allegation within its 157-page Complaint* to support its Response that it adequately pleaded its aiding-and-abetting claim against Super G and Bellah. This claim should be dismissed.

3.   *Texas Uniform Fraudulent Transfer Act.*

With respect to its TUFTA claim against Super G and Bellah, Plaintiff again fails to provide any legal support or to cite *any* portion of its Complaint to support its sweeping assertion that "the claim against Defendants for violation of the Texas Uniform Fraudulent Transfer Act has been adequately pled."[43] It is difficult to imagine Plaintiff conjuring a broader, less-meaningful argument than its Response: "Defendants herein knowingly participated and aided[44] all other

---

[41] Response, Doc. 66 at p. 17.
[42] For authority setting forth the essential elements of aiding-and-abetting claims, *see* Motion at p. 20.
[43] Doc. 66 at p. 18.
[44] To be clear, Plaintiff's Complaint does not include a claim against Super G or Bellah (or any Defendant) for aiding or abetting the purported TUFTA violation.

**SUPER G & BELLAH'S REPLY**
**IN SUPPORT OF MOTION TO DISMISS**                                                         8

defendants in carrying out the fraudulent transfer scheme that has been described in great detail herein and in the Complaint."[45]

The Complaint does not even mention Bellah in the paragraphs (Doc. 36, ¶¶377-80) setting forth the TUFTA claim. Super G is improperly lumped together with nine other Defendants referred to as the "Transfer Defendants" whom Plaintiff collectively labels "a sham to perpetrate a fraud" "caused" by Baymark "primarily for Baymark's direct personal benefit"[46]—without tying any TUFTA elements or factors[47] to Super G and without anything resembling rational explanation. For example, under TUFTA, "the claim must be brought by a *creditor* … against a *debtor*, and would require the *debtor* Defendants to have made the fraudulent transfer." *Thomas v. Hopkins*, No. 3:20-CV-576-S, 2021 WL 4268483, at *3 *N.D.Tex. Aug. 26, 2021) (Toliver, J.). But there is no dispute, as pleaded by Plaintiff[48], that Super G was ACET Global's *creditor*, and ACET Global was Super G's *debtor* (and that Bellah is neither pleaded as a creditor nor a debtor in this matter). Plaintiff wholly fails to address this "flaw in the pleadings." *Id.*

Furthermore, Plaintiff's Response fails to address the other evident impediments to its TUFTA claim set forth in the Motion[49], *e.g.*, that: TUFTA excludes "assets" encumbered by a valid lien[50] (here, Plaintiff does not allege that Super G's superior lien was invalid and, instead, "acknowledge[d]" and "consent[ed] to" subordination of its own lien thereto[51]); Plaintiff concedes that ACET Global was in default on Super G's loan months prior to the foreclosure[52]; and Plaintiff does not plead a disparity between Super G's secured debt and the value of ACET Global's assets.

---

[45] Doc. 66 at p. 18.
[46] Doc. 36, Complaint at ¶¶379-80.
[47] For authority setting forth the TUFTA elements and factors, *see, e.g.*, *Thomas*, 2021 WL 4268483, at *2.
[48] *See* Complaint, Doc. 36 at ¶¶68, 77.
[49] Motion, Doc. 55 at pp. 23-24.
[50] TEX. BUS. & COM. CODE §24.002(2)(A); *see also Tow v. Amegy Bank NA*, 498 B.R. 757, 769 (S.D.Tex.2013) ("A TUFTA transfer is the disposition of an 'asset.' An 'asset' does not include property subject to a valid lien.").
[51] Complaint, Doc. 36 at pp. 29-30 and Doc. 36-24 (ex. 24) at App. 070-71.
[52] Complaint, Doc. 36 at ¶¶80-81.

    4.    *Civil Conspiracy.*

Toward the end of its Complaint, Plaintiff broadly asserts that every Defendant somehow conspired with each and every other Defendant with respect to each and every "violation described above" in the prior 381 paragraphs.[53] Plaintiff's Response does nothing to hone this shotgun blast. There are (again) no citations to any portion of the Complaint to specify the conspiracy claim as to Super G or Bellah. Instead, Plaintiff vaguely asserts that "[t]he Complaint is replete with details regarding the conspiracy between and among all of the defendants," neglecting to unbury these purported details. Such failure is not surprising, as the Complaint itself fails to plausibly or particularly[54] plead beyond a speculative level: that Super G/Bellah conspired with one or more of the other Defendants; the supposed object to be accomplished thereby; a "meeting of minds" with Super G/Bellah as to such an object; that Super G/Bellah had knowledge of any such object or purpose of the purported conspiracy; that Super G/Bellah had specific intent as to any such object or purpose; or that there was some agreement with Super G/Bellah to inflict a wrong on Plaintiff.[55]

**D.    Plaintiff's request for leave to (again) replead should be denied.**

Plaintiff asks for another chance to amend its Complaint. Setting aside the Overlapping State Case[56], Plaintiff filed its *Amended* Complaint after having 52 days to consider Defendants' first round of motions to dismiss and still failed to remedy the deficiencies raised therein. Instead, it added a new deficiency in the form of its improper attempt to assert claims on behalf of ACET Global and Holdco.[57] After multiple shots, and hundreds of pages, it is clear that Plaintiff cannot remedy its pleading deficiencies and its request for leave to amend again should be denied.

---

[53] Doc. 155 at ¶382.
[54] *See Smith v. HSBC Bank*, No. 3:15-CV-00094-P, 2015 WL 12911463, at *4 (N.D.Tex. Aug. 6, 2015) ("Where the alleged conspiracy sounds in fraud, the complaint must satisfy the heightened pleading standards in Rule 9 ...").
[55] For authority setting forth the essential elements of conspiracy, *see* Motion at pp. 24-25.
[56] *See* Motion, Doc. 55 at §I.B (Procedural Background).
[57] *See id.* at §II.B (Plaintiff's Attempt to Assert Claims on Behalf of ACET Global and Holdco), which Plaintiff leaves unaddressed in its Response.

**SUPER G & BELLAH'S REPLY**
**IN SUPPORT OF MOTION TO DISMISS**    10

Respectfully submitted,

DUNN SHEEHAN LLP

By: */s/ John David Blakley*
    John David Blakley
    State Bar No. 24069388
    jdblakley@dunnsheehan.com
    William D. Dunn
    State Bar No. 24002023
    ddunn@dunnsheehan.com

    5910 Central Expressway, Suite 1310
    Dallas, Texas 75206
    Phone: 214-866-0077
    Fax: 214-866-0070

**ATTORNEYS FOR DEFENDANTS**
**SUPER G CAPITAL LLC**
**and STEVEN BELLAH**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record by e-service on this 18th day of January 2022.

*/s/    John David Blakley*
    John David Blakley