# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), Directly and Derivatively on Behalf of ACET Global, LLC and BAYMARK ACET HOLDCO, LLC | § § § § § | |
| | § | Civil Action No. 3:21-CV-01171-B |
| and | § § | |
| ACET GLOBAL, LLC | § § | |
| Plaintiffs, | § § | |
| | § | |
| v. | § § | |
| BAYMARK PARTNERS, LP; BAYMARK PARTNERS MANAGEMENT, LLC; SUPER G CAPITAL, LLC; SG CREDIT PARTNERS, INC.; BAYMARK ACET HOLDCO, LLC; BAYMARK ACET DIRECT INVEST, LLC; BAYMARK PARTNERS; DAVID HOOK; TONY LUDLOW; MATTHEW DENEGRE; WILLIAM SZETO; MARC COLE; STEVEN BELLAH: ZHEXIAN "JANE" LIN; DANA MARIE TOMERLIN; PADASAMAI VATTANA; PAULA KETTER; VANESSA TORRES; WINDSPEED TRADING, LLC; HALLETT & PERRIN, P.C.; and JULIE A. SMITH, | § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

---

**JOINT APPENDIX IN SUPPORT OF BAYMARK MANAGEMENT, LLC AND BAYMARK PARTNERS' MOTION TO SET ASIDE ENTRY OF DEFAULT AND BRIEF IN SUPPORT AND RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT AND FOR DEFAULT JUDGMENT AGAINST DEFENDANT BAYMARK PARTNERS, LP AND BRIEF IN SUPPORT**

---

| APP 001– 017 | Plaintiff's Second Amended Petition dated October 30, 2020 filed in Cause No. DC- 19-09828; *D&T Partners, LLC v. ACET Global, LLC et al*. |
|---|---|
| APP 018-047 | Baymark Defendants' First Amended Motion for Partial Summary Judgment and Brief in Support dated March 2, 2021 filed in Cause No. DC- 19-09828; *D&T Partners, LLC v. ACET Global, LLC et al*. |
| APP 048-101 | Plaintiff's Response to Baymark Defendant's First Amended Motion for Partial Summary Judgment and Brief in Support dated March 17, 2021 filed in Cause No. DC- 19-09828; *D&T Partners, LLC v. ACET Global, LLC et al*. |
| APP 102-118 | Baymark Defendants Reply in Support of their First Amended Motion for Partial Summary Judgment dated March 19, 2021 filed in Cause No. DC- 19-09828; *D&T Partners, LLC v. ACET Global, LLC et al*. |
| APP 119-120 | Order Partially Granting Defendants' First Amended Motion for Partial Summary Judgment dated April 8, 2021 filed in Cause No. DC- 19-09828; *D&T Partners, LLC v. ACET Global, LLC et al*.; |
| APP 121-123 | Certificate of Limited Partnership of Baymark Partners, L.P. filed July 23, 2008 from the Delaware Secretary of State |
| APP 124 | Certificate of Non Existence- Baymark Partners, L.P. dated June 2, 2021 from the Delaware Secretary of State |
| APP 125 | Certification of documents- Baymark Partners, L.P. dated January 6, 2022 from the Texas Secretary of State |
| APP 126-128 | Application for Registration of Foreign Limited Partnership of Baymark Partners, L.P. filed September 2, 2008 from the Texas Secretary of State |
| APP 129 | Statement of Change of Address of Registered Agent- Baymark Partners, L.P. dated April 19, 2010 from the Texas Secretary of State |
| APP 130 | Forfeiture pursuant to Section 171.309 of the Texas Tax Code of Baymark Partners, L.P. dated August 13, 2010 from the Texas Secretary of State |
| APP 131-132 | Affidavit of David Hook dated January 24, 2022 |
| APP 133-135 | Affidavit of Edward P. Perrin, Jr. dated January 26, 2022 |
| APP 136-140 | Email correspondence among J. Freeman, B. Hard-Wilson, and E. Perrin dated May 28, 2021 through June 2, 2021. |

Respectfully submitted,

**HALLETT & PERRIN, P.C.**


By: */s/ Edward P. Perrin, Jr.*
  **EDWARD P. PERRIN, JR.**
  State Bar No. 15796700
  eperrin@hallettperrin.com
  **JENNIFER R. POE**
  State Bar No. 00794470
  jpoe@hallettperrin.com
  **ELIZABETH A. FITCH**
  State Bar No. 24075777
  efitch@hallettperrin.com
  1445 Ross Avenue, Suite 2400
  Dallas, TX  75202
  Telephone: (214) 953-0053
  Facsimile: (214) 922-4142

  **ATTORNEYS FOR  DEFENDANTS**
  **BAYMARK PARTNERS MANAGEMENT, LLC;**
  **BAYMARK ACET HOLDCO, LLC;**
  **BAYMARK ACET DIRECT INVEST, LLC;**
  **BAYMARK PARTNERS; DAVID HOOK;**
  **TONY LUDLOW; AND MATTHEW DENEGRE**


## CERTIFICATE OF SERVICE

On January 26, 2022, I electronically submitted the foregoing document with the Clerk of the Court for the U.S.  District Court, Northern District of Texas, using the electronic  case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

  */s/ Edward P. Perrin, Jr.*
  Edward P. Perrin, Jr.

4858-4212-8907, v. 1

FILED
10/30/2020 6:52 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Jeremy Jones DEPUTY

CAUSE NO. DC-19-09828

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), | § § § | |
| Plaintiff, | § § | IN THE DISTRICT COURT |
| v. | § § § | DALLAS COUNTY, TEXAS |
| ACET GLOBAL, LLC<br>BAYMARK ACET HOLDCO, LLC,<br>BAYMARK ACET DIRECT INVEST, LLC;<br>BAYMARK MANAGEMENT, LLC;<br>BAYMARK PARTNERS;<br>DAVID HOOK; TONY LUDLOW; and<br>WINDSPEED TRADING, LLC. | § § § § § § § § | 116th JUDICIAL DISTRICT |
| Defendants. | § § | |

## PLAINTIFF'S SECOND AMENDED PETITION

NOW COMES D&T Partners, LLC (successor in interest to ACET Venture Partners, LLC), Plaintiff, and files this its Second Amended Petition complaining of ACET Global, LLC; Baymark ACET Holdco, LLC; Baymark ACET Direct Invest, LLC; Baymark Management, LLC; Baymark Partners; David Hook; Tony Ludlow; and Windspeed Trading, LLC, Defendants, and states as follows:

### I.  DISCOVERY CONTROL PLAN

1.  D&T Partners, as Plaintiff, intends to conduct discovery under Level 2 of the Texas Rules of Civil Procedure.

### II.  CLAIM FOR RELIEF

2.  D&T Partners seeks monetary relief over $1,000,000, but not more than $5,000,000.



EXHIBIT
A

### III. PARTIES

3.  Plaintiff, D&T Partners, LLC (successor in interest to ACET Venture Partners, LLC), is a limited liability company formed in the state of Texas.

4.  Defendant, ACET Global, LLC, is a limited liability company formed in the state of Texas and may be served with process at 5700 Granite Parkway, Suite 435, Plano, Texas 75024, or wherever it may be found.

5.  Defendant, Baymark ACET Holdco, LLC, is a limited liability company formed in the state of Texas and may be served with process at 5700 Granite Parkway, Suite 435, Plano, Texas 75024, or wherever it may be found.

6.  Defendant, ACET Direct Invest, LLC, is a limited liability company formed in the state of Texas and may be served with process at 5700 Granite Parkway, Suite 435, Plano, Texas 75024, or wherever it may be found.

7.  Defendant, Baymark Management, LLC, is a limited liability company formed in the state of Texas and may be served with process at 5700 Granite Parkway, Suite 435, Plano, Texas 75024, or wherever it may be found.

8.  Defendant, Baymark Partners, is on information and belief, a private equity firm operating as a partnership with its principal place of business at 5700 Granite Parkway, Suite 435, Plano, Texas 75024.

9.  Defendant, Windspeed Trading, LLC, is a limited liability company formed in the state of Texas and may be served with process at 2711 N. Haskell Ave., Suite 2400, Dallas, Texas 75024, or wherever it may be found.

10. Defendant, David Hook, is an individual and a managing director of Baymark Partners at all times relevant to this complaint. He can be served with process at his office at Baymark Partners, 5700 Granite Parkway, Suite 435, Plano, Texas 75024.

11. Defendant, Tony Ludlow, is an individual and managing director of Baymark Partners at all times relevant to this complaint. He can be served with process at his office at Baymark Partners, 5700 Granite Parkway, Suite 435, Plano, Texas 75024.

## IV. VENUE

12. Pursuant to Texas Civil Practice and Remedies Code § 15.002(a)(1)-(2), venue for this case is proper in Dallas County, Texas, because all or a substantial part of the events or omissions giving rise to the claim occurred in Dallas County, Texas.  Venue is further proper by consent.

## V. FACTS

13. Pursuant to an Asset Purchase Agreement (the "APA") dated July 14, 2017, ACET Global, LLC purchased the assets of ACET Venture Partners, LLC.  ACET Global, LLC was wholly owned and controlled by Baymark ACET Holdco, LLC.

14. Prior to the APA, Baymark ACET Holdco, LLC was wholly owned and controlled by Baymark ACET Direct Invest, LLC, which was controlled by Anthony Ludlow and David Hook.  ACET Direct Invest, LLC remained the majority member of Baymark ACET Holdco, LLC after the APA. Ludlow and Hook ultimately controlled Baymark ACET Direct Invest and, by extension, also controlled Baymark ACET Holdco and ACET Global, LLC.  Ludlow and Hook also ultimately exercised control over Baymark Management, as well as Baymark Partners.  Baymark ACET Holdco, LLC; Baymark ACET Direct Invest, LLC; Baymark Management, LLC; Baymark Partners; Anthony Ludlow; and David Hook, are collectively referred to herein as the "Baymark parties."  At all times described herein, the Baymark parties acted in concert under the control of Ludlow and Hook.

15. Under the APA, ACET Global agreed to (1) pay $850,000 to ACET Venture Partners, subject to certain adjustments; (2) provide a subordinated secured promissory note in the amount of $3,230,000

in favor of ACET Venture Partners (the "Note"); and (3) to provide ACET Venture Partners with a 25% common membership interest in Baymark ACET Holdco, LLC.

16. Hook and Ludlow, through Baymark ACET Direct Invest, LLC and ACET Global, LLC, induced ACET Venture Partners to enter into the APA by, in part, providing a 25% membership interest in Baymark ACET Holdco, LLC. That interest was never registered with the Securities Exchange Commission or Texas State Securities Board.

17. As part of the transaction, ACET Global, LLC entered into a Promissory Note with ACET Venture Partners, memorializing the $3,230,000 payable to ACET Venture Partners. The first installment payment was to come due in October of 2018.

18. Separately, Baymark ACET Holdco, LLC entered into a Security Agreement (the "Security Agreement") with ACET Venture Partners. Under the Security Agreement, Baymark ACET Holdco, LLC granted a security interest to ACET Venture Partners in 59% of the membership interest of ACET Global, LLC. That interest was never registered with the Securities & Exchange Commission or Texas State Securities Board.

19. Irrespective of any agreement, the principals for the Baymark parties, Hook and Ludlow, ensured Tomer Damti that he would be the CEO of ACET Global and that Damti would maintain managerial authority and discretion. Mr. Damti's presence as CEO would, given his knowledge of the business, operations, and industry, safeguard Plaintiff's interest in the transaction and was a substantial inducement to enter into the transaction. In reality, Hook and Ludlow did not actually intend to keep Damti as the CEO or to provide him with managerial authority or discretion. Hook and Ludlow refused to allow him authority to function as a CEO and then Ludlow improperly terminated and removed him.

20. Following the APA, David Hook then caused ACET Global to enter into a Collateral Assignment of Rights Under Acquisition Transaction Documents and Subordination Agreement (the "Collateral

Assignment") with Super G Capital, LLC, which provided that Super G Capital, LLC would provide a term loan facility of up to $1,000,000. The Collateral Assignment contemplated that ACET Venture Partners's security interest under the Security Agreement would be subordinated to the lien held by Super G Capital. ACET Venture Partners agreed to subordinate its security interest to Super G Capital, LLC and accept a 25% common membership interest in Baymark ACET Holdco, LLC with the understanding that Damti would maintain managerial authority and discretion and that ACET Global did not intend (and that Hook and Ludlow did not intend to cause it) to default on the loan to ACET Venture Partners or default on the loan from Super G Capital. As a result, Hook and Ludlow, on false pretenses, induced ACET Venture Partners to subordinate its security interest pursuant to the Collateral Assignment.

21. Following the APA, Baymark ACET Direct Invest controlled ACET Global through ACET Holdco, LLC. In effect, however, the Baymark parties (and ultimately Ludlow and Hook) controlled, whether directly or indirectly, Baymark ACET Direct Invest and ACET Holdco, LLC. Ludlow and Hook, through Baymark ACET Direct Invest and ACET Holdco, LLC, caused ACET Global to fail to pay vendors, carriers, and others. Baymark ACET Direct Invest and ACET Holdco deliberately took steps designed and intended to cause ACET Global to fail financially and to default on its Notes.

22. In fact, its principals never intended to fulfill the Note to ACET Ventures Partners. Hook, by consummating the transaction, fraudulently misrepresented that he intended to cause ACET Global, LLC to fulfill the Note, and thereby induced ACET Venture Partners to enter into the Note and related documents, such as the Collateral Assignment. The subsequent actions of the Baymark parties, as described in paragraphs 23 and 24, further demonstrates the intent to defraud ACET Ventures Partners. Ludlow and Hook made further fraudulent misrepresentations pertaining to their intent and ability to continue to run the business with respect to which the assets that were the subject of the APA were attributable; their intent to invest additional amounts into the

underlying business associated with the assets; that Baymark Management, LLC would provide services or services justifying any management fee; that ACET Global would maintain Tomer Damti as the CEO of ACET Global; that funds from the Super G loan would be used to build the business; and regarding their intent to fulfill their obligations under the Note.  Baymark ACET Direct Invest's actions directly harmed the value of ACET Venture Partners's security and the Note.

23. Baymark ACET Direct Invest and ACET Holdco and its principals drained ACET Global of its funds and assets to their enrichment and to ACET Global's detriment.  Hook and Ludlow exercised direct control over Baymark ACET Direct Invest and ACET Holdco.  Pursuant to section 5.3 of Baymark ACET Holdco's Company Agreement, Baymark ACET Holdco was to pay a quarterly management fee (the "Management Fee") of no more than the greater of $150,000 or 5% of ACET Global's EBIDTA to Baymark Management, LLC.   On information and belief, Baymark Management, LLC was owned by Tony Ludlow and David Hook.  Thus, Ludlow and Hook acted as both the managers of Baymark Management, LLC and exercised control over ACET Global and Baymark ACET Holdco.  Ludlow and Hook had planned to and were successful in utilizing this Management Fee to drain ACET Global and Baymark ACET Holdco of all of their assets and capital, whether from a cash flow perspective or in terms of its balance sheet based on accrued/owed liabilities that deliberately placed it in an insolvent position.  On information and belief, even after ACET Global became insolvent, Hook and Ludlow continued to drain it of its assets through a Management Fee.  They paid or accrued recurring "management fees" to Baymark ACET Holdco and/or Baymark Management, LLC, which did not correspond to services or value provided, and caused improper management fees to be paid or owed even as ACET Global and Baymark ACET

Holdco became insolvent.  The management fee was also used as a device to cause ACET Global to appear to be financially unsound.

24. Within approximately a year—and before the Note came due—Hook and Ludlow caused the creation of a new and separate entity, Windspeed Trading, LLC.  Ludlow and Hook caused the transfer of substantially all of the assets of ACET Global to Windspeed Trading, LLC, thereby removing all of the value of ACET Global, which served as security for the Note and further decreased the value of Baymark ACET Holdco, LLC.  This act, or series of acts, was in violation of the Secured Promissory Note and related Security Agreement.  It also evidenced that Hook and Ludlow fraudulently caused Plaintiff to enter into the related transaction in the first place.

25. Such omissions, misrepresentations, and acts furthered a scheme to defraud, and did defraud, the Plaintiff in connection with the sale of a security interest in ACET Holdco, LLC.

26. Under the existing Amended and Restated Seller Note, ACET Global, LLC was to make payments to D&T Partners, LLC (the successor-in-interest to ACET Venture Partners) on October 31, 2018. ACET Global failed to make the payment due on October 31, 2018 and has failed to make any payment thereafter.  ACET Global has indicated that it will not make any payments under the Note.

## VI. CLAIMS

### Count I: Breach of Contract

### (ACET Global, LLC, Baymark ACET Holdco, LLC)

27. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-26 above as if set forth here in full.

28. ACET Global breached the APA and Note by, among other actions or inactions, defaulting on the installment payments due thereunder.  ACET Global breached the APA and Note when it failed to make installment payments to ACET Venture Partners beginning at least as

of October 31, 2018.  Its continued failure to satisfy the terms of the APA constitutes a breach of contract, causing the entire principal amount of $3,230,000 plus accrued interest to become due immediately.

**Count II: Breach of Contract (Security Agreement)**

**(ACET Global, LLC, BAYMARK ACET Holdco, LLC)**

29. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-26 above as if set forth here in full.

30. ACET Global and Baymark ACET Holdco breached the Security Agreement and Secured Promissory Note by engaging in a "Fundamental Transaction" without approval from ACET Venture Partners.  Section (4) of the Secured Promissory Note provides that "[t]he Maker shall not enter into or be a party to a Fundamental Transaction, unless . . . pursuant to written agreements in form and substance satisfactory to the Holder and approved by the Holder prior to such Fundamental Transaction . . . ."  Section 25(d) of the Secured Promissory Note defines a "Fundamental Transaction" as, among other things, "one or more related transactions . . . [that] sell, assign, transfer, convey or otherwise dispose of all of substantially all of the properties or assets of [ACET Global, LLC]."

31. On information and belief, ACET Global caused the transfer of substantially all of its assets, including goodwill and intangible assets, to Windspeed Trading, LLC.  This act, or series of acts, breached the Security Agreement and Secured Promissory Note.

**Count III: Declaratory Judgment**

**(Windspeed Trading, LLC)**

32. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-26 above as if set forth here in full.

33. Plaintiff seeks a declaratory Judgment that Windspeed Trading, LLC has assumed all obligations under the Note and Security Agreement.  Section (4) of the Security Agreement provides that "[u]pon any Fundamental Transaction, the successor entity to such Fundamental Transaction [here, Winspeed Trading, LLC] shall succeed to, and be substituted for . . . and shall assume all of the obligations of the Maker under this Note with the same effect as if such successor Person had been named as the Maker herein . . . ."

### Count IV: Fraudulent Inducement

### (ACET Global, Baymark ACET Direct Invest, ACET Holdco, Hook, Ludlow)

34. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-26 above as if set forth here in full.

35. ACET Global, Baymark ACET Direct Invest, ACET Holdco, and its principals, specifically including Hook and Ludlow, fraudulently induced ACET Venture Partners to enter into the APA and related documents.  ACET Global, Baymark ACET Direct Invest, ACET Holdco and Hook and Ludlow made numerous representations to Plaintiff, all of which were material representations pertaining to their intent and ability to continue to run the business with respect to which the assets that were the subject of the APA were attributable; their intent to invest additional amounts into the underlying business associated with the assets; that Baymark Management, LLC would provide services or services justifying any management fee; that ACET Global and that Hood and Ludlow would maintain Tomer Damti as the CEO of ACET Global and that they would provide him with authority to operate the business; that funds from the Super G loan would be used to build the business; and their intent to fulfill their obligations under the Note.  At the time Defendants made these representations, Defendants knew the representations were false or were made recklessly, as positive assertions and without knowledge of their truth. Defendants made the representations with the intent that Plaintiff

act on them. Relying on the representations made by Defendants as set out above, Plaintiff entered into the APA.   Plaintiff relied on these representations and would not have entered into the APA had it not believed the representations and relied on them.

### Count V: Common Law Fraud

### (Hook, Ludlow)

36. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if set forth here in full.

37. Ludlow and Hook made material false representations to Plaintiff with the knowledge of their falsity or with reckless disregard of the truth with the intention that such representations be acted upon by Plaintiff, and that Plaintiff relied on these representations to its detriment. As a proximate result of such fraud, Plaintiff sustained the damages described more fully herein.

### Count VI: Breach of Fiduciary Duty

### (ACET Global, LLC, Baymark ACET Holdco, LLC)

38. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-26 above as if set forth here in full.

39. ACET Global and Baymark ACET Holdco, the controlling member of ACET Global, had a fiduciary relationship with, and owed a fiduciary duty to, ACET Venture Partners.  ACET Global and Baymark ACET Holdco breached its duties to ACET Venture Partners. During the period since ACET Global became insolvent or was in the zone of insolvency, ACET Global and Baymark ACET Holdco owed a fiduciary duty of care to preserve the assets of ACET Global for the benefit of its creditors, including Plaintiff.  ACET Global and Baymark ACET Holdco breached its fiduciary duty by willfully and/or through gross negligence (i) allowing the business and assets to waste, (ii) failing to cause ACET Global to pay under the Note, and (iii) failing to cause ACET Global to otherwise comply with the terms of the Note.

Baymark ACET Holdco's breaches resulted in injury to Plaintiff, and also significant benefit to Defendants.

40. During the relevant time, ACET Global did not make any payments to Plaintiff.  Instead, Baymark ACET Holdco caused ACET Global to remit revenues and/or accrued payments to the ultimate benefit of Baymark Management, LLC in the form of Management Fees.  As ACET Global's financial conditions declined, Baymark ACET Holdco continued to allow ACET Global to make payments and/or accrue payments to Baymark Management, LLC.  These payments constituted improper self-dealing transactions.  The improper payments and neglect/waste of the business were the proximate cause of the damages suffered by Plaintiff.

41. The conduct of Baymark ACET Holdco was intentional, willful, and/or grossly negligent.  As such, it is liable for exemplary and/or punitive damages.

**Count VII: Aiding and Abetting Breach of Fiduciary Duties to Plaintiff**

**(Hook, Ludlow, Baymark Management, LLC)**

42. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if set forth here in full.

43. Hook and Ludlow aided and abetted ACET Global **and** Baymark ACET Holdco in breaching the duties of care and loyalty they owed to Plaintiff.

44. Ludlow and Hook knew or should have known that ACET Global was insolvent, and because it was insolvent, ACET Global owed a fiduciary duty to manage its assets for the benefit of its creditors, including Plaintiff.  Ludlow and Hook directly controlled Baymark Management, LLC and its operations inured to their personal benefit.  Baymark Management, LLC, Hook, and Ludlow knowingly participated in self-dealing described above by accepting payments or obligations for management fees from (directly or indirectly) ACET Global while Baymark Management, LLC, Hook, and Ludlow had actual knowledge that ACET Global was

insolvent.  Baymark Management, LLC's acceptance, through the efforts of Hook and Ludlow, of payments from ACET Global aided and abetted ACET Global in breaching the fiduciary duties owed to Plaintiff.  The actions of Baymark Management, LLC and Ludlow and Hook in aiding and abetting such acts were materially and substantially detrimental to Plaintiff and caused substantial damages to Plaintiff.  Moreover, Hook and Ludlow breached their fiduciary duties, causing damages to Plaintiff.

### Count VIII: Texas Uniform Fraudulent Transfer Act

### (Hook, Ludlow, ACET Global, Windspeed Trading, LLC)

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-26 above as if set forth here in full.

46. Hook, Ludlow, ACET Global, and Windspeed Trading, LLC violated the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Comm. Code 24.001 *et seq.*, by transferring substantially all of the assets of ACET Global to Windspeed Trading, LLC.  These transfers were made after or within a reasonable time before Plaintiff's claims arose.  These transfers and obligations are also fraudulent because Hood, Ludlow, and ACET Global made the transfers and obligations with actual intent to hinder, delay, or defraud Plaintiff.

### Count IX: Texas Securities Act 33A(2)

### (Hook, Ludlow, Baymark ACET Direct Invest, Baymark ACET Holdco, LLC)

47. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-26 above as if set forth here in full.

48. Hook, Ludlow, Baymark ACET Direct Invest and Baymark ACET Holdco, LLC sold securities, namely the interest in Baymark ACET Holdco, LLC, and/or a security interest in ACET Global, LLC, in violation of Texas Securities Act section 33A(2).  Baymark ACET Direct Invest and Baymark ACET Holdco, LLC offered and sold securities by means of an

untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made not misleading.

49. Texas Securities Act 33A(2) provides as follows:

> **(1) Untruth or Omission. —** A person who offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security. However, a person is not liable if he sustains the burden of proof that either (a) the buyer knew of the untruth or omission or (b) he (the offeror or seller) did not know, and in the exercise of reasonable care could not have known, of the untruth or omission. The issuer of the security (other than a government issuer identified in Section 5M) is not entitled to the defense in clause (b) with respect to an untruth or omission (i) in a prospectus required in connection with a registration statement under Section 7A, 7B, or 7C, or (ii) in a writing prepared and delivered by the issuer in the sale of a security.

Tex. Rev. Civ. Stat. Art. 581-33

50. Indeed, the use of fraud and fraudulent practices in connection with the offer for sale and sale of securities is prohibited by Sections 4F, 25-1, and 32A of the Securities Act. In Section 4F of the Securities Act, fraud is defined as follows:

> The term "fraud" or "fraudulent practice" shall include any misrepresentations, in any manner, of a relevant fact; any promise or representation or prediction as to the future not made honestly and in good faith, or an intentional failure to disclose a material fact; . . . provided, that nothing herein shall limit or diminish the full meaning of the terms "fraud," "fraudulent," and "fraudulent practice" as applied or accepted in courts of law or equity.

Tex. Rev. Civ. Stat. Art. 581-4

51. Moreover, under Section 33F(2) of the Securities Act:

> **(2)** A person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under Section 33A . . . jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer.

Tex. Rev. Civ. Stat. Art. 581-33

52. Hook, Ludlow, Baymark ACET Direct Invest and Baymark ACET Holdco, LLC are jointly and severally liable with ACET Global because of their direct control of ACET Global as the offeror or because of their material aid to ACET Global with the intent to deceive or defraud or with reckless disregard for the truth or the law.

53. Hook, Ludlow, Baymark ACET Direct Invest and Baymark ACET Holdco, LLC in the issuance, sale, promotion, negotiations, advertisement, or distribution of securities in the State of Texas, have engaged in fraud and fraudulent practices by misrepresenting material facts and intentionally failing to disclose material facts as outlined above.  Hook, Ludlow, Baymark ACET Direct Invest and Baymark ACET Holdco, LLC, with the intent to deceive or defraud or with reckless disregard for the truth or the law, have materially aided, and are materially aiding, one another in the fraudulent practices set forth herein.

### Count X: Texas Securities Act 33A(F)

### (Ludlow, Hook)

54. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-26 above as if set forth here in full.

55. Hook and Ludlow acted as control persons and aiders of ACET Global, within the meaning of section 33A(F) of the Texas Securities Act.  By virtue of their positions with ACET Global, and ultimate ownership of ACET Global and other relevant parties, Ludlow and Hook had the power and authority to cause ACET Global to engage in the conduct complained of herein and materially aided the seller in furthering the fraud. By reason of such conduct, Ludlow and Hook are jointly and severally liable pursuant to section 33A(F) of the Texas Securities Act.

### Count XI: Civil Conspiracy

56. Defendants, in combination with one another, agreed to accomplish for an unlawful purpose or a lawful purpose by unlawful means, one or more of the violations described above,

including to breach the fiduciary duties that ACET Global and/or ACET Holdco owed to Plaintiff. Defendants, ultimately by and through Ludlow and Hook, had a meeting of the minds on the object or course of action to divert Plaintiffs funds and property under the above causes of action. One or more of the Baymark parties, at the direction of Hook and Ludlow, committed an unlawful, overt act to further this object or course of action. Plaintiff has suffered a substantial injury as a proximate result of these wrongful acts.

### Count XII: Attorney's Fees

### (ACET Global)

57. Paragraph 13 of the Promissory Note provides as follows:

> If (a) this Note is placed in the hands of an attorney for collection or enforcement or is collected or enforced through any legal proceeding or the Holder otherwise takes action to collect amounts due under this Note or to enforce the provisions of this Note . . . then the Maker shall pay the costs incurred by the Holder for such collection, enforcement or action . . . including, but not limited to, reasonable attorneys' fees and disbursements.

### VII.   DAMAGES

58. Plaintiff seeks monetary relief over $1,000,000, but not more than $5,000,000, which is within the jurisdictional limits of this Court.

59. As a result of the foregoing causes of action, Plaintiff suffered the following damages:

   67.1. Direct and compensatory damages;

   67.2. Lost profits from the operation of its pre-existing business;

   67.3. Loss of Goodwill;

   67.4. Exemplary damages.

60. Plaintiff further specifically pleads for the remedy of rescission.

61. The conduct of the Defendants was intentional, willful, and/or grossly negligent.  As such, they are liable for exemplary and/or punitive damages.

## VIII.   JURY DEMAND

62. Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## IX. REQUEST FOR DISCLOSURE

63. Under Texas Rule of Civil Procedure 194, Plaintiff requests that the Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## PRAYER

WHEREFORE Plaintiff asks to be awarded a judgment against Defendants for actual damages, rescission, court costs, attorney's fees, and all other relief to which Plaintiff is entitled.

Respectfully submitted,

By: /s/ Jason Freeman
Jason B. Freeman
TX Bar No. 24069736
Ryan C. Dean
TX Bar No. 24109798
Freeman Law, PLLC
2595 Dallas Parkway, Suite 420
Frisco, Texas 75034
Telephone: 214.984.3410
Fax: 214.984.3409
Jason@freemanlaw-pllc.com

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 30th day of October, 2020, a true and correct copy of the foregoing document was served via the court's e-file system, upon:

Edward P. Perrin, Jr.
Hallett & Perrin
1445 Ross Ave., Suite 2400
Dallas, TX 75202
(214) 922-4132 (Telephone)
(214) 922-4142 (Fax)
EPerrin@hallettperrin.com

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jason Freeman
Bar No. 24069736
jason@freemanlaw-pllc.com
Envelope ID: 47704469
Status as of 11/3/2020 8:18 AM CST

Associated Case Party: D&T PARTNERS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jason Freeman | | jason@freemanlaw-pllc.com | 10/30/2020 6:52:27 PM | SENT |

Associated Case Party: ACET GLOBAL, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Veronica Jamaica | | vjamaica@hallettperrin.com | 10/30/2020 6:52:27 PM | SENT |
| Edward P.Perrin | | eperrin@hallettperrin.com | 10/30/2020 6:52:27 PM | SENT |
| Jennifer R.Poe | | jpoe@hallettperrin.com | 10/30/2020 6:52:27 PM | SENT |
| Michelle Shriro | | mshriro@singerlevick.com | 10/30/2020 6:52:27 PM | SENT |

Associated Case Party: WINDSPEED TRADING, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Timothy Woods | | twoods@higierallen.com | 10/30/2020 6:52:27 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jim Bradbury | | jim@bradburycounsel.com | 10/30/2020 6:52:27 PM | SENT |
| Courtney CoxSmith | | ccox@bradburycounsel.com | 10/30/2020 6:52:27 PM | SENT |
| Jason Freeman | 24069736 | jason@freemanlaw-pllc.com | 10/30/2020 6:52:27 PM | SENT |
| Michelle E.Shriro | | mshriro@singerlevick.com | 10/30/2020 6:52:27 PM | SENT |

FILED
3/2/2021 7:39 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Jeremy Jones DEPUTY

Case 3:21-cv-01171-B   Document 84   Filed 01/26/22   Page 21 of 143   PageID 3485

CAUSE NO. DC-19-09828

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § | |
| ACET GLOBAL, LLC; BAYMARK ACET HOLDCO, LLC; BAYMARK ACET DIRECT INVEST, LLC; BAYMARK MANAGEMENT, LLC; BAYMARK PARTNERS; DAVID HOOK; TONY LUDLOW; and WINDSPEED TRADING, LLC, | § § § § § § § § | 116TH JUDICIAL DISTRICT |
| Defendants. | § | DALLAS COUNTY, TEXAS |

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY JUDGMENT EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.      No-Evidence Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.     Traditional Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.      Count VIII—Plaintiff's Fraudulent Transfer Claim . . . . . . . . . . . . . . . . . . . . . . . 10

        A.      No-Evidence Grounds for Summary Judgment . . . . . . . . . . . . . . . . . . . . . 10

        B.      Traditional Grounds for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . 11

II.     Counts I and II—Plaintiff's Breach of Contract Claims . . . . . . . . . . . . . . . . . . . . 12

        A.      No-Evidence Grounds for Summary Judgment . . . . . . . . . . . . . . . . . . . . . 13

        B.      Traditional Grounds for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . 14

III.    Counts IV, V, IX, and X—Plaintiff's Claims Based on "Fraud" . . . . . . . . . . . . . . . . 16

        A.      No-Evidence Grounds for Summary Judgment . . . . . . . . . . . . . . . . . . . . . 16

                1.      Plaintiff's claims for fraudulent inducement/common-law fraud . . . . . . . 16

                2.      Plaintiff's claims under the Texas Securities Act . . . . . . . . . . . . . . . . . 17

        B.      Traditional Grounds for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . 18

                1.      Intent not to perform . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

2.     Justifiable reliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

3.     Continued ownership of the securities . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.    Counts VI and VII—Plaintiff's Claims Based on "Breach of Fiduciary Duty" . . . . . . . . 21

    A.    No-Evidence Grounds for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . 22

    B.    Traditional Grounds for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . 22

V.    Counts XI—Plaintiff's Conspiracy Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    A.    No-Evidence Grounds for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . 23

    B.    Traditional Grounds for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . 24

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# INDEX OF AUTHORITIES

## Cases

*Ahmed v. Mbogo*, No. 05-17-00457-CV, 2018 WL 3616887
(Tex. App.—Dallas July 30, 2018, pet. denied) (mem. op.). . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*AKB Hendrick, LP v. Musgrave Enterprises, Inc.*, 380 S.W.3d 221
(Tex. App.—Dallas 2012, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP*,
599 S.W.3d 618 (Tex. App. —Dallas 2020, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Equity Industrial Ltd. Partnership IV v. Southern Worldwide Logistics, LLC*,
No. 14-14-00750-CV, 2016 WL 1267848
(Tex. App.—Houston [14th Dist.] Mar. 31, 2016, no pet.) (mem. op.) . . . . . . . . . . . . . . . . . . . 10

*Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*,
349 S.W.3d 258 (Tex. App.— Dallas 2011, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 16

*In re Bentley*, 531 B.R. 671 (Bankr. S.D. Tex. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Jessen v. Duvall*, No. 14-16-00869-CV, 2018 WL 1004659
(Tex. App.—Houston [14th Dist.] Feb. 22, 2018, no pet.) (mem. op.). . . . . . . . . . . . . . 22, 23, 24

*Wyrick v. Business Bank of Tex., N.A.*, 577 S.W.3d 336
(Tex. App.—Houston [14th Dist.] 2019, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Yokogawa Corp. of Am. v. Skye Int'l Holdings, Inc.*, 159 S.W.3d 266
(Tex. App.—Dallas 2005, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## Statutes

TEX. BUS. & COM. CODE § 24.005(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

TEX. REV. CIV. STAT. art. 581-33(A)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21

Tex. Rev. Civ. Stat. art. 581-33(F)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TEX. REV. CIV. STAT. art. 581-33(F)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Defendants ACET Global, LLC; Baymark ACET Holdco, LLC; Baymark ACET Direct Invest, LLC; Baymark Management, LLC; Baymark Partners; David Hook ("Hook"), and Tony Ludlow ("Ludlow") (collectively, the "Baymark Defendants"[1]) file this First Amended Motion for Partial Summary Judgment and Brief in Support ("First Amended MSJ"[2]), and in support thereof would respectfully show the Court as follows:

## SUMMARY OF ARGUMENT

Plaintiff asserts numerous claims against the Baymark Defendants, including claims for fraudulent transfer, breach of contract, fraudulent inducement/common-law fraud, violations of the Texas Securities Act, breach of fiduciary duty/aiding and abetting breach of fiduciary duty, and conspiracy. The Baymark Defendants seek summary judgment—on both no-evidence and traditional summary judgment grounds—on those claims asserted against them that are addressed herein. The First Amended MSJ is based, in part, on the fact that Plaintiff has no evidence with respect to practically all of the elements necessary to support its various claims. The First Amended MSJ is also based on the evidence submitted herewith by the Baymark Defendants, which further

---

[1] In Plaintiff's Second Amended Petition ("Petition"), Plaintiff D&T Partners, LLC (successor in interest to ACET Venture Partners, LLC) ("Plaintiff") purports to identify the particular defendants against which it is asserting each of its claims. However, at times there is ambiguity in Plaintiff's allegations such that it is not entirely clear which claims Plaintiff actually intends to assert against which Defendants. Accordingly, with respect to those of Plaintiff's claims addressed herein, *each* of the Baymark Defendants is seeking summary judgment on each of Plaintiff's claims to the extent Plaintiff purports to assert such claims against them, regardless of any language in the Petition to the contrary. In other words, in responding to this Motion, Plaintiff must separately address each challenged claim as to each of the Baymark Defendants. **Any failure by Plaintiff to attempt to provide evidence that connects a particular Baymark Defendant to any specific claim must be considered an admission by Plaintiff that it is not, in fact, asserting such claim against that Baymark Defendant.**

[2] On February 10, 2021, Defendants ACET Global, LLC, Hook, and Ludlow filed their Motion for Partial Summary Judgment on Plaintiff's Fraudulent Transfer Claim and Brief in Support (the "Original MSJ"). The Original MSJ is currently set for hearing on March 24, 2021 at 10:00 a.m. By way of this Amended Motion for Partial Summary Judgment and Brief in Support, the Original MSJ is being amended to add the remaining Baymark Defendants as Movants and to add challenges to certain of Plaintiff's other claims.

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION
FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 1**

independently demonstrates the numerous ways in which Plaintiff's claims lack merit. For the reasons set forth more fully below, the Baymark Defendants seek partial summary judgment in their favor dismissing those of Plaintiff's claims specifically challenged below.

## SUMMARY JUDGMENT EVIDENCE

In support of their First Amended MSJ, the Baymark Defendants rely on the pleadings on file in this matter, as well as the following evidence submitted herewith in their Appendix:

| | | |
|---|---|---|
| Exhibit 1 | Declaration of Marc Cole ("Cole Decl.") | App. 031-033 |
| Exhibit 1A | Business Loan and Security Agreement entered into by and between Super G Capital, LLC and ACET Global, LLC (the "Loan Agreement") (Exh. "A" to the Cole Decl.) | App. 034-062 |
| Exhibit 1B | Collateral Assignment of Rights Under Acquisition Transaction Documents and Subordination Agreement entered into by and between Super G Capital, LLC and ACET Global, LLC ("Subordination Agreement") and related Acknowledgement by ACET Venture Partners, LLC ("Acknowledgement") (Exh. "B" to the Cole Decl.) | App. 063-071 |
| Exhibit 1C | Notice of Disposition and Sale of Collateral Dated January 31, 2019 ("Notice") (Exh. "C" to the Cole Decl.) | App. 072-085 |
| Exhibit 2 | Declaration of Matt Denegre ("Denegre Decl.") | App. 086-089 |
| Exhibit 2A | Asset Purchase Agreement by and among ACET Global, LLC (Buyer), ACET Venture Partners LLC (Seller) and Tomer Damti (Owner) (without Exhibits) ("APA") (Exh. "A" to the Denegre Decl.) | App. 090-140 |
| Exhibit 2B | Secured Promissory Note issued by ACET Global, LLC as Maker to ACET Venture Partners LLC as Holder (the "Note") (Exh. "B" to the Denegre Decl.) | App. 141-152 |
| Exhibit 2B1 | Amended and Restated Seller Note Dated December 22, 2017 (the "Amended Note") (Exh. "B1" to the Denegre Decl.) | App. 153-165 |

| Exhibit 2C | Security Agreement by and between Baymark ACET Holdco, LLC and ACET Venture Partners LLC (the "Security Agreement") (Exh. "C" to the Denegre Decl.) | App. 166-176 |
| Exhibit 2D | Employment Agreement by and between ACET Global, LLC and Tomer Damti (the "Employment Agreement") (Exh. "D" to the Denegre Decl.) | App. 177-185 |
| Exhibit 2E | Company Agreement of ACET Global, LLC (the "ACET Global Company Agreement") (Exh. "E" to the Denegre Decl.) | App. 186-196 |
| Exhibit 2F | Limited Liability Company Agreement of Baymark ACET Holdco, LLC (the "Baymark ACET Holdco Company Agreement") (Exh. "F" to the Denegre Decl.) | App. 197-257 |
| Exhibit 2G | Flow of Funds (Exh. "G" to the Denegre Decl.) | App. 258 |
| Exhibit 3 | Declaration of Gordon T. Foote II ("Foote Decl.") | App. 259-262 |
| Exhibit 3A | E-mail exchange dated June 11-12, 2017 (Exh. "A" to the Foote Decl.) | App. 263-267 |
| Exhibit 3B | E-mail exchange dated June 22, 2017 (Exh. "B" to the Foote Decl.) | App. 268-271 |
| Exhibit 3C | E-mail dated June 22, 2017 (Exh. "C" to the Foote Decl.) | App. 272 |
| Exhibit 3C1 | Draft Employment Agreement attached to the June 22, 2017 e-mail (Exh. "C1" to the Foote Decl.) | App. 273-281 |
| Exhibit 3D | E-mail dated June 23, 2017 (Exh. "D" to the Foote Decl.) | App. 282-283 |
| Exhibit 3D1 | Revised draft Employment Agreement attached to the June 23, 2017 e-mail (Exh. "D1" to the Foote Decl.) | App. 284-292 |
| Exhibit 3E | E-mail dated June 23, 2017 (Exh. "E" to the Foote Decl.) | App. 293 |
| Exhibit 3E1 | Redline of the further revised Employment Agreement attached to the June 23, 2017 e-mail (Exh. "E1" to the Foote Decl.) | App. 294-303 |
| Exhibit 3F | E-mail dated June 20, 2017 (Exh. "F" to the Foote Decl.) | App. 304 |
| Exhibit 3F1 | Draft of the Baymark ACET Holdco Company Agreement attached to the June 20, 2017 e-mail | App. 305-366 |

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 3**

| Exhibit 3G | E-mail dated July 11, 2017 (Exh. "3G" to the Foote Decl.) | App. 367-368 |
| Exhibit 3H | E-mail dated July 9, 2017 (Exh. "3H" to the Foote Decl.) | App. 369-370 |
| Exhibit 3H1 | Redline of the revised draft Baymark ACET Holdco Company Agreement attached to the July 9, 2017 e-mail (Exh. "3H1" to the Foote Decl.) | App. 371-432 |
| Exhibit 3I | E-mail dated July 16, 2017 (Exh. "I" to the Foote Decl.) | App. 433 |
| Exhibit 3I1 | Business Loan and Security Agreement attached to the July 16, 2017 e-mail (Exh. "I1" to the Foote Decl.) | App. 434-460 |
| Exhibit 3I2 | Collateral Assignment of Rights Under Acquisition Transaction Document and Subordination Agreement attached to the July 16, 2017 e-mail (Exh. "I2" to the Foote Decl.) | App. 461-468 |
| Exhibit 3J | E-mail dated June 28, 2017 (Exh. "J" to the Foote Decl.) | App. 469-470 |
| Exhibit 3K | E-mail dated July 19, 2017 (Exh. "K" to the Foote Decl.) | App. 471 |
| Exhibit 3L | E-mail dated July 20, 2017 (Exh. "L" to the Foote Decl.) | App. 472 |
| Exhibit 3M | E-mail exchange dated July 20, 2017 (Exh. "M" to the Foote Decl.) | App. 473-475 |
| Exhibit 3N | E-mail dated July 21, 2017 (Exh. "N" to the Foote Decl.) | App. 476 |

In addition to the above-referenced Exhibits, the Baymark Defendants also rely on the Exhibits submitted by Defendant Windspeed Trading, LLC with its Amended Traditional and No Evidence Motion for Summary Judgment filed on December 29, 2020 ("Windspeed's MSJ").[3]

## STATEMENT OF RELEVANT FACTS

ACET Global, LLC purchased substantially all of Plaintiff's assets effective July 20, 2017.[4] This asset purchase (the "Transaction") was accomplished through and/or required a number of

---

[3]References herein to Windspeed's Exhibits shall be indicated as "Windspeed Exh. __ at W. APP. __."

[4]*See, e.g.*, Denegre Decl. Exh. "A," APA, App. at 090-140; *see also* Foote Decl. ¶ 10 & Exh. "N," App. at 262, 476.

related agreements, including: **(1)** the Asset Purchase Agreement by and among ACET Global, LLC (Buyer), ACET Venture Partners LLC (Seller) and Tomer Damti (Owner) (the "APA")[5]; **(2)** the Secured Promissory Note issued by ACET Global, LLC as Maker to ACET Venture Partners LLC as Holder (the "Note")[6]; **(3)** the Security Agreement by and between Baymark ACET Holdco, LLC and ACET Venture Partners, LLC (the "Security Agreement")[7]; **(4)** the Employment Agreement by and between ACET Global, LLC and Tomer Damti (the "Employment Agreement"), pursuant to which Tomer Damti ("Damti") was engaged as ACET Global, LLC's Chief Executive Officer[8]; **(5)** the Company Agreement of ACET Global, LLC (the "ACET Global Company Agreement")[9]; and **(6)** the Limited Liability Company Agreement of Baymark ACET Holdco, LLC (the "Baymark ACET Holdco Company Agreement").[10]

During the negotiations leading up to the consummation of the Transaction, Plaintiff was represented by its own counsel, including three different attorneys.[11] Plaintiff's counsel was provided

---

[5] Denegre Decl. Exh. "A," APA, App. at 090-140.

[6] Denegre Decl. Exh. "B," Note, App. at 141-152. On December 22, 2017, the Note was amended and restated to reflect a lower principal amount. Denegre Decl. ¶ 4, App. at 087; Denegre Decl. Exh. "B1," Amended Note, App. at 153-165.

[7] Denegre Decl. Exh. "C," Security Agreement, App. at 166-176.

[8] Denegre Decl. Exh. "D," Employment Agreement, App. at 177-185.

[9] Denegre Decl. Exh. "E," ACET Global Company Agreement, App. at 186-196.

[10] Denegre Decl. Exh. "F," Baymark ACET Holdco Company Agreement, App. at 197-257.

[11] Foote Decl. ¶ 2, App. at 259; Foote Decl. Exh. "A," App. at 263-267; *see also* Foote Decl. Exh. "B," App. at 268-271; Foote Decl. Exh. "C," App. at 272; Foote Decl. Exh. "D," App. at 282-283; Foote Decl. Exh. "E," App. at 293; Foote Decl. Exh. "F," App. at 304; Foote Decl. Exh. "G," App. at 367-368; Foote Decl. Exh. "H," App. at 369-370; Foote Decl. Exh. "I" App. at 433; Foote Decl. Exh. "K," App. at 471; Foote Decl. Exh. "L," App. at 472; Foote Decl. Exh. "M," App. at 473-475; Foote Decl. Exh. "N," App. at 476.

draft documents related to the Transaction, and Plaintiff's counsel requested and suggested revisions to such documents during the negotiations.[12]

The Transaction specifically contemplated and required third-party financing.[13] Thus, on or about July 20, 2017, Super G Capital, LLC ("Super G") loaned ACET Global, LLC a total of $750,000.00.[14] This loan was made in connection with ACET Global, LLC's purchase of substantially all of Plaintiff's assets.[15] By virtue of its loan to ACET Global, LLC, Super G received a security interest in all of ACET Global, LLC's assets.[16] Plaintiff was provided copies of documents related to Super G's loan prior to the closing of the Transaction.[17] Moreover, Plaintiff expressly acknowledged and agreed that Super G's security interest would be *superior to* any security interest that Plaintiff had.[18]

---

[12]*See, e.g.*, Foote Decl. Exhs. "C" & "C1," App. at 272, 273-281; Foote Decl. Exhs. "D" & "D1," App. at 282-283, 284-292; Foote Decl. Exhs. "E" & "E1," App. at 293, 294-303; Foote Decl. Exhs. "F" & "F1," App. at 304, 305-366; Foote Decl. Exhs. "H" & "H1," App. at 369-370, 371-372.

[13]*See, e.g.*, Denegre Decl. Exh. "B," Note § 9(a), App. at 144; *see also* Denegre Decl. Exh. "A," APA § 2.2(a)(ii) (referring to "a *subordinated* secured promissory note") (emphasis added), App. at 107; Foote Decl. Exh. "B," App. at 269 (including a statement by Plaintiff's counsel that: "Understood that the Bank will have a senior secured interest in the assets of the Buyer . . . .").

[14]Cole Decl. ¶ 3, App. at 031 *see also* Cole Decl. Exh. "A," App. at 034-062.

[15]*See* Cole Decl. Exh. "B," Subordination Agreement at 1 (describing the "Acquisition Transaction"), App. at 063; *see also* Cole Decl. Exh. "A," Loan Agreement § 10.13(a) (defining "Acquisition Transaction Documents"), App. at 051; Cole Decl. Exh. "A," Loan Agreement Addendum 2 ¶ B(4) (listing as a condition to funding "[t]he execution of definitive Acquisition Transaction Documents, which includes a non-compete covenant by the Seller Parties"), App. at 058.

[16]*See* Cole Decl. Exh. "A," Loan Agreement § 3 ("Security Interest in Collateral"), App. at 037-038 *see also id.* § 8 ("Remedies Upon Default"), App. at 047-048.

[17]Foote Decl. ¶ 8 & Exhs. "I," "I1," and "I2," App. at 261, 433, 434-460, 461-468.

[18]Cole Decl. Exh. "B," Acknowledgement at 1 ("The Seller Parties agree that . . . Lender's security interest in the Collateral shall constitute first priority liens in such property to secure the Obligations and shall be superior to any lien or other interest of the Seller Parties in the same property arising pursuant to the Acquisition Transaction Documents, by operation of law or otherwise."), App. at 070.

BAYMARK DEFENDANTS' FIRST AMENDED MOTION
FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 6

Part of the consideration provided for the Transaction was a cash component provided to Plaintiff as the Seller.[19] The distribution of this cash component of the Transaction was memorialized in a Flow of Funds executed by both Plaintiff and ACET Global, LLC.[20] Also as part of the consideration provided for the Transaction, Damti received twenty-five percent of the membership interests in Baymark ACET Holdco, LLC, which in turn was the sole member in ACET Global, LLC.[21] Damti continues to own this membership interest in Baymark ACET Holdco, LLC.[22]

As contemplated by the Transaction, Damti became CEO of ACET Global, LLC, and he retained this position until February 12, 2018.[23] During the time Damti was CEO of ACET Global, LLC, he received over $100,000.00 (pre-taxes) in compensation from ACET Global, LLC, including two quarterly bonuses of $10,000.00 each.[24]

In addition to the funds ACET Global, LLC received by virtue of the Super G loan, ACET Global, LLC also received a $400,000.00 capital contribution from Baymark ACET Direct Invest, LLC through Baymark ACET Holdco, LLC.[25] ACET Global, LLC also received additional capital contributions through Baymark ACET Holdco, LLC and Baymark ACET Direct Invest, LLC

---

[19]*See* Denegre Decl. Exh. "A," APA § 2.2(a)(i), App. at 107.

[20]Denegre Decl. ¶ 9 & Exh. "G," App. at 088, 258.

[21]*See* Denegre Decl. Exh. "F," Baymark ACET Holdco Company Agreement at 58, App. at 256; Denegre Decl. Exh. "E," ACET Global Company Agreement at 1, App. at 186 (reflecting Baymark ACET Holdco, LLC as the sole member of ACET Global, LLC).

[22]Denegre Decl. ¶ 10, App. at 088.

[23]Denegre Decl. ¶ 11, App. at 088.

[24]Denegre Decl. ¶ 11, App. at 088; *see also* Denegre Decl. Exh. "D," Employment Agreement § 5(c), App. at 178.

[25]Denegre Decl. ¶ 8, App. at 087; *see also* Denegre Decl. Exh. "F," Baymark ACET Holdco Company Agreement at 58, App. at 256.

totaling $116,000.00 between December of 2017 and August of 2018.[26] Despite these capital contributions, by at least March of 2018, ACET Global, LLC was in default of its obligations under its Loan Agreement with Super G, including its obligation to make the payments that were required by the Loan Agreement.[27] ACET Global, LLC did not cure its defaults under the Loan Agreement with Super G.[28]

In light of ACET Global, LLC's defaults, Super G decided to exercise its rights as a secured creditor with respect to the collateral secured by the Loan Agreement.[29] On or about January 31, 2019, Super G sent ACET Global, LLC a Notice of Disposition and Sale of Collateral.[30] In this Notice, Super G demanded that ACET Global, LLC "immediately surrender to Lender possession of the collateral described in the attached Exhibit A" and indicated that such collateral would be "disposed of in a commercially reasonable manner by private sale on or after the 11th day after the date of this letter."[31] ACET Global, LLC owed Super G over $500,000.00 as of the date of the Notice.[32]

---

[26]Denegre Decl. ¶¶ 12-13, App. at 088. Neither Baymark ACET Holdco, LLC nor Baymark ACET Direct Invest, LLC, nor any of the members in Baymark Direct Invest, LLC recovered any of the capital contributions that ultimately went into ACET Global, LLC because ACET Global, LLC ultimately failed and filed for bankruptcy. *Id.* ¶ 14, App. at 088.

[27]Cole Decl. ¶ 5, App. at 032.

[28]*Id.*

[29]Cole Decl. ¶ 6, App. at 032.

[30]*Id.*; *see also* Cole Decl. Exh. "C," Notice, App. at 072-085.

[31]Cole Decl. Exh. "C," Notice at 1, App. at 072. Super G also sent a copy of the Notice to Tomer Damti, the owner of Plaintiff. *See id.*, Notice at 3, App. at 074; *see also* Cole Decl. ¶ 7, App. at 032.

[32]Cole Decl. ¶ 7, App. at 032.

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 8**

After Super G foreclosed on ACET Global, LLC's assets through the Notice, Super G sold certain of those assets to Windspeed.[33]

## SUMMARY JUDGMENT STANDARD

### I.    No-Evidence Motions for Summary Judgment

"After adequate time for discovery, a party may (without presenting summary judgment evidence) move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial."[34] The Court must grant such a no-evidence motion for summary judgment unless the non-movant "produces evidence raising a material issue of fact as to each of the challenged elements."[35]

### II.    Traditional Motions for Summary Judgment

A movant for traditional summary judgment "has the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law."[36] The movant may do this either by negating at least one essential element of the non-movant's claim or by proving all essential elements of an affirmative defense.[37] Once the movant has established a right to summary

---

[33]Cole Decl. ¶ 8, App. at 032; *see also* Windspeed Exh. A, Affidavit of Willaim C. Szeto ¶¶ 5-8, W. APP. at 17; Windspeed Exh. A-3, Bill of Sale, W. APP. at 61-72; Windspeed Exh. A-4, Foreclosure Sale Agreement, W. APP. at 74-126.

[34]*Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 266 (Tex. App.—Dallas 2011, pet. denied) (citing TEX. R. CIV. P. 166a(i)). Plaintiff filed this case on July 12, 2019, and the case is currently set for trial on May 17, 2021. An adequate time for discovery has passed.

[35]*Id.* at 266.

[36]*Id.*

[37]*See id.*

BAYMARK DEFENDANTS' FIRST AMENDED MOTION
FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 9

judgment, the non-movant "has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment."[38]

## ARGUMENT AND AUTHORITIES

**I.      Count VIII—Plaintiff's Fraudulent Transfer Claim**

**A.      No-Evidence Grounds for Summary Judgment**

TUFTA provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation:
>
> (1)  with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation . . . .[39]

Thus, one of the necessary elements of any fraudulent transfer claim under TUFTA is a transfer or obligation.[40] Plaintiff has no evidence of this element of its claim under TUFTA. Further, Plaintiff has no evidence that any of the Baymark Defendants had any "actual intent to hinder, delay, or defraud" any of ACET Global, LLC's creditors, and Plaintiff has no evidence that ACET Global, LLC did not receive a reasonably equivalent value in exchange for any transfer or obligation. Finally, Plaintiff also has no evidence that it was damaged by any purportedly fraudulent transfer.[41]

---

[38]*Id.*

[39]TEX. BUS. & COM. CODE § 24.005(a).

[40]*See, e.g.*, *Equity Industrial Ltd. Partnership IV v. Southern Worldwide Logistics, LLC*, No. 14-14-00750-CV, 2016 WL 1267848, at *4 (Tex. App.—Houston [14th Dist.] Mar. 31, 2016, no pet.) (mem. op.) ("[A]n essential element of each of Equity's fraudulent transfer claims is a transfer of one or more of Southern Logistics's assets.").

[41]*See, e.g.*, *id.* (recognizing the need for an "assessment of the value of the assets" allegedly transferred).

For all of these reasons, the Baymark Defendants are entitled to summary judgment on Plaintiff's claim against them under TUFTA.

## B.    Traditional Grounds for Summary Judgment

Plaintiff incorrectly claims that Hook, Ludlow, and ACET Global, LLC "transferr[ed] substantially all of the assets of ACET Global to Windspeed Trading, LLC."[42] However, none of the Baymark Defendants transferred anything to Windspeed. What actually happened in this case is that a secured creditor with a lien superior to Plaintiff's foreclosed on the assets of ACET Global, LLC, and then that secured creditor sold those assets to Windspeed.[43] As a matter of law, this cannot give rise to a "fraudulent transfer" claim under TUFTA. As the Dallas Court of Appeals explained in a case that also involved a foreclosure and a purported claim under TUFTA:

> We agree that the foreclosure and subsequent transfer of assets to Skye Delaware *are not covered by TUFTA*. A secured party is entitled to foreclose on its security interest in the event of default. *Moore and Trojan's enforcement of its security interest upon Skye International's default does not constitute a voidable transfer*. Nor is the subsequent transfer of the assets from the foreclosure sale actionable under TUFTA. Under TUFTA, "transfer" means disposing of or parting with an asset. *Property encumbered by a valid lien is not an asset under TUFTA*. Because the property Moore and Trojan purchased at the foreclosure sale was encumbered by a valid lien, *TUFTA is inapplicable*.[44]

---

[42] Petition ¶ 45.

[43] *See* Cole Decl. ¶¶ 5-8, App. at 032; Cole Decl. Exh. "C," Notice, App. at 072-085; *see also* Windspeed Exh. A, Affidavit of Wiliam C. Szeto ¶¶ 5-8, W. APP. at 17; Windspeed Exh. A-3, Bill of Sale, W. APP. at 61-72; Windspeed Exh. A-4, Foreclosure Sale Agreement, W. APP. at 74-126.

[44] *Yokogawa Corp. of Am. v. Skye Int'l Holdings, Inc.*, 159 S.W.3d 266, 269 (Tex. App.—Dallas 2005, no pet.) (emphasis added, internal citations omitted).

Plaintiff agreed that Super G would have a superior interest in ACET Global, LLC's assets.[45]

ACET Global, LLC defaulted under the Loan Agreement with Super G.[46] Thereafter, Super G had

every right to foreclose on ACET Global, LLC's assets, and it did so.[47] It was Super G, and not any

of the Baymark Defendants, that then "transferred" ACET Global, LLC's assets to Windspeed after

Windspeed purchased those assets from Super G.[48] Under these indisputable facts, as a matter of law,

there was no fraudulent transfer, and Plaintiff's claim under TUFTA is without merit. For this reason

as well, the Baymark Defendants are entitled to summary judgment on Plaintiff's claim against them

under TUFTA.

## II.   Counts I and II—Plaintiff's Breach of Contract Claims

In its Petition, Plaintiff sets forth two separate breach of contract claims. The first relates to

the failure of ACET Global, LLC "to make installment payments" due under the Note.[49] Plaintiff

purports to assert this claim against both ACET Global, LLC and Baymark Holdco, LLC.[50] The

second breach of contract claim complains of a purported "'Fundamental Transaction' without

---

[45]Cole Decl. Exh. "B," Acknowledgement at 1 ("The Seller Parties agree that . . . Lender's security interest in the Collateral shall constitute first priority liens in such property to secure the Obligations and shall be superior to any lien or other interest of the Seller Parties in the same property arising pursuant to the Acquisition Transaction Documents, by operation of law or otherwise."), App. at 070.

[46]Cole Decl. ¶ 5, App. at 032.

[47]Cole Decl. ¶ 6, App. at 032; Cole Decl. Exh. "C," Notice, App. at 072-085; *see also* Cole Decl. Exh. "A," Loan Agreement § 3 ("Security Interest in Collateral"), App. at 037-038; *id.* § 8 ("Remedies Upon Default"), App. at 047-048.

[48]Cole Decl. ¶ 8, App. at 032; Windspeed Exh. A, Affidavit of William C. Szeto ¶¶ 5-8, W. APP. at 17; Windspeed Exh. A-3, Bill of Sale, W. APP. at 61-72; Windspeed Exh. A-4, Foreclosure Sale Agreement, W. APP. at 74-126.

[49]Petition ¶ 28 (referencing both the Note and the APA).

[50]Petition at 7.

BAYMARK DEFENDANTS' FIRST AMENDED MOTION
FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 12

approval from ACET Venture Partners" and references both the Note and the Security Agreement.[51] The Baymark Defendants challenge aspects of both of Plaintiff's breach of contract claims.

### A.    No-Evidence Grounds for Summary Judgment

The elements necessary to prove a breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) a breach of the contract by the defendant; and (4) damages resulting from the breach.[52] To the extent Plaintiff is asserting any breach of contract claim against any of the Baymark Defendants other than ACET Global, LLC or Baymark ACET Holdco, LLC, the Baymark Defendants assert that Plaintiff has no evidence of any of the above-referenced elements.

With respect to Plaintiff's first breach of contract claim, to the extent it is asserted against Baymark ACET Holdco, LLC, Plaintiff has no evidence of any of the above-referenced elements.

With respect to Plaintiff's second breach of contract claim, to the extent it is asserted against ACET Global, LLC under the Note, Plaintiff has no evidence of the following elements: breach of contract by ACET Global, LLC and damages resulting from the breach.

With respect to Plaintiff's second breach of contract claim, to the extent it is asserted against Baymark ACET Holdco, LLC under the Note, Plaintiff has no evidence of any of the elements required to support a breach of contract claim.

---

[51] Petition ¶ 30. Plaintiff also purports to assert this claim against both ACET Global, LLC and Baymark ACET Holdco, LLC. *Id.* at 8.

[52] *See, e.g.*, *Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP*, 599 S.W.3d 618, 625 (Tex. App. —Dallas 2020, no pet.).

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 13**

With respect to Plaintiff's second breach of contract claim, to the extent it is asserted against ACET Global, LLC under the Security Agreement, Plaintiff also has no evidence of any of the elements required to support a breach of contract claim.

With respect to Plaintiff's second breach of contract claim, to the extent it is asserted against Baymark ACET Holdco, LLC under the Security Agreement, Plaintiff has no evidence of the following elements: breach of contract by Baymark ACET Holdco, LLC and damages resulting from the breach.

For these reasons, the Court should grant summary judgment in favor of Baymark ACET Holdco, LLC on Plaintiff's first breach of contract claim, in favor of both Baymark ACET Holdco, LLC and ACET Global, LLC on Plaintiff's second breach of contract claim, and in favor of the other Baymark Defendants on both of Plaintiff's breach of contract claims.

**B.      Traditional Grounds for Summary Judgment**

With respect to Plaintiff's first breach of contract claim, which Plaintiff purports to assert under both the Note and the APA, Plaintiff can have no claim against Baymark ACET Holdco, LLC. Baymark ACET Holdco, LLC is not a party to either the Note or the APA.[53] Similarly, to the extent Plaintiff's second breach of contract claim against Baymark ACET Holdco, LLC is based on the Note, Plaintiff can have no claim against Baymark ACET Holdco, LLC.

With respect to Plaintiff's second breach of contract claim, which Plaintiff purports to assert under both the Note and the Security Agreement, Plaintiff can have no claim against ACET Global, LLC under the Security Agreement. ACET Global, LLC is not a party to the Security

---

[53] Denegre Decl. Exh. "B," Note, App. at 141-152; Denegre Decl. Exh. "A," APA, App. at 090-140.

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 14**

Agreement.[54] With respect to Plaintiff's second breach of contract claim against ACET Global, LLC based on the Note, the express terms of the Note make clear that there was no "Fundamental Transaction" when Super G *foreclosed on* and *took* ACET Global, LLC's assets.[55]

The Note expressly acknowledges that it is "subordinate to the indebtedness of the Maker to Senior Lender under the Senior Loan Agreement."[56] Moreover, the Note's definition of "Fundamental Transaction" clearly contemplates some sort of *voluntary* action by ACET Global, LLC.[57] In this case, a secured lender—one that Plaintiff expressly agreed would have a lien with priority over Plaintiff's—foreclosed upon ACET Global, LLC's assets, as it had every right to do. There was no voluntary act by ACET Global, LLC, so there could be no "Fundamental Transaction." This was no more a "transfer" by ACET Global, LLC than there would have been if the government had seized ACET Global, LLC's assets for some reason.

Plaintiff's second breach of contract claim fails for these reasons as well.

---

[54] Denegre Decl. Exh. "C," Security Agreement, App. at 166-176.

[55] For a discussion of the significance of the foreclosure by Super G, *see supra* notes 42-48 and surrounding text.

[56] Denegre Decl. Exh. "B," Note § 9(a), App. at 144; *see also id.* §§ 25(h), 25(i) (defining "Senior Lender" and "Senior Loan Agreement"), App. at 148.

[57] Denegre Decl. Exh. "B," Note § 25(d) ("'Fundamental Transaction' means that the Maker shall, directly or indirectly, in one or more related transactions . . . (ii) sell, assign, transfer, convey or otherwise dispose of all or substantially all of the properties or assets of the Maker to another Person . . . ."), App. at 148; *see also id.* § 7 ("The Maker hereby covenants and agrees that Maker will not, by amendment of constitutional documents or through any reorganization, transfer of assets, consolidation, merger, scheme of arrangement, dissolution, issue or sale of securities, *or any other voluntary action* . . . avoid or seek to avoid the observance or performance of any of the terms of the Note . . . .") (emphasis added), App. at 143.

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 15**

## III.    Counts IV, V, IX, and X—Plaintiff's Claims Based on "Fraud"

### A.    No-Evidence Grounds for Summary Judgment

*1.    Plaintiff's claims for fraudulent inducement/common-law fraud.*—Plaintiff's claims

for fraudulent inducement and common-law fraud require proof of the following elements: (1) a false

material representation, (2) made with knowledge of its falsity or made recklessly without knowledge

of its truth, and (3) intending that the misrepresentation would be acted on by the other party, where

(4) the other party acts in justifiable reliance on the misrepresentation, and (5) thereby suffers

injury.[58] Moreover, when a fraud claim is based upon a "promise of future performance," the promise

must have been made "with no intention of performing *at the time it was made*."[59]

In this case, Plaintiffs have no evidence of the following elements necessary to prove their

fraud claims: (1) that any Baymark Defendant made any false material representation; (2) that any

Baymark Defendant made a representation with knowledge of its falsity or recklessly without

knowledge of its truth; (3) that any Baymark Defendant intended for Plaintiff to act upon any

misrepresentation; (4) that Plaintiff justifiably relied on any misrepresentation by any Baymark

Defendant; (5) that Plaintiff suffered any injury as a result of its justifiable reliance on any

misrepresentation by any Baymark Defendant; and (6) that any Baymark Defendant made a promise

to perform in the future while having no intention to perform such promise.

---

[58]*Wyrick v. Business Bank of Tex., N.A.*, 577 S.W.3d 336, 348 n.8 (Tex. App.—Houston [14th Dist.] 2019, no pet.). The only difference between fraudulent inducement and common-law fraud is that with a fraudulent inducement claim, the elements of fraud must be shown to "relate to an agreement between the parties." *Id.* It is not clear what, if any, difference there is between Plaintiff's "fraudulent inducement" and "common-law fraud" claims.

[59]*AKB Hendrick, LP v. Musgrave Enterprises, Inc.*, 380 S.W.3d 221, 233 (Tex. App.—Dallas 2012, no pet.) (emphasis added); *see also Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 272 (Tex. App.— Dallas 2011, pet. denied) ("We cannot agree with Forney that appellees' subsequent conduct in terminating the agreement establishes that the earlier statements about the agreement were fraudulent when made."). Moreover, "the mere failure to perform, without more, is no evidence of the necessary intent." *AKB Hendrick*, 380 S.W.3d at 233.

*2.    Plaintiff's claims under the Texas Securities Act.*—Section 33(A)(2) of the Texas Securities Act provides for liability when a person "offers or sells a security . . . by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements made . . . not misleading."[60] The statute also provides that a buyer can only recover damages for a violation of Section 33(A)(2) "if the buyer no longer owns the security."[61]

In this case, Plaintiff has no evidence of any untrue statement of material fact or any omission to state a material fact, and Plaintiff has no evidence that it no longer owns the security in question.

Section 33(F) of the Texas Securities Act provides for both "control person" and "aider" liability.[62] For a person to be held liable as a "control person" under the Act, there must first be an underlying violation of the Act.[63] For a person to be held liable as an "aider" under the Act, that person must have had an "intent to deceive" or a "reckless disregard for the truth or the law" and must "materially aid[]" the party committing the underlying violation of the Act.[64]

In this case, Plaintiff has no evidence of any underlying violation of the Act. Plaintiff also has no evidence either that any of the Baymark Defendants had any "intent to deceive" or "reckless disregard for the truth or the law" or that any of the Baymark Defendants "materially aid[ed]" anyone who committed any underlying violation of the Act.

---

[60]TEX. REV. CIV. STAT. art. 581-33(A)(2). As with a fraud claim generally, for a promise of future performance to constitute an untrue statement of material fact, there must be "proof that the defendant had no intention of performing the promise at the time it was made." *In re Bentley*, 531 B.R. 671, 693 (Bankr. S.D. Tex. 2015).

[61]TEX. REV. CIV. STAT. art. 581-33(A)(2).

[62]TEX. REV. CIV. STAT. art. 581-33(F)(1)-(2).

[63]TEX. REV. CIV. STAT. art. 581-33(F)(1).

[64]TEX. REV. CIV. STAT. art. 581-33(F)(2).

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 17**

### B.     Traditional Grounds for Summary Judgment

It has been somewhat difficult to pin Plaintiff down regarding what "misrepresentations" or "untrue statements" actually form the basis for its fraud-based claims. However, it appears that Plaintiff is primarily complaining about two purported misrepresentations by one or more of the Baymark Defendants: (1) that ACET Global "would maintain Tomer Damti as the CEO of ACET Global," and (2) that one or more of the Baymark Defendants would "invest additional amounts into the underlying business associated with the assets."[65] The evidence presented negates any fraud-based claim based on any such "misrepresentations."

*1.     Intent not to perform.*—Both of the above-referenced "misrepresentations" alleged by Plaintiff involve alleged promises of future performance. As such, there would have to be evidence that a Baymark Defendant made such promises while at that time having no intention of performing.[66] In fact, the evidence in this case negates any suggestion that any promise was made with such an intent not to perform because, to the extent any "promises" were actually made, they were kept.

First, the evidence shows that Damti retained his position as CEO of ACET Global, LLC for over six months until February 12, 2018.[67] Even more significantly, during the time he was ACET Global, LLC's CEO, Damti was paid over $100,000.00, including two bonus payments of

---

[65] Petition ¶ 35.

[66] *See AKB Hendrick, LP v. Musgrave Enterprises, Inc.*, 380 S.W.3d 221, 233 (Tex. App.—Dallas 2012, no pet.) (discussing a common-law fraud claim); *In re Bentley*, 531 B.R. 671, 693 (Bankr. S.D. Tex. 2015) (discussing a claim under the Texas Securities Act).

[67] Denegre Decl. ¶ 11, App. at 088.

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION
FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 18**

$10,000.00.[68] If any of the Baymark Defendants intended to terminate Damti even before the Transaction closed, it makes no sense that they would wait to terminate him until after he had been paid such significant sums.

Second, the evidence also shows that additional capital contributions *were* made to fund ACET Global, LLC.[69] If any of the Baymark Defendants never intended to contribute additional capital to ACET Global, LLC, they would not have made the capital contributions that they did.

Because the evidence presented by the Baymark Defendants demonstrates that they made no promises with an intent not to perform them, the Baymark Defendants are entitled to summary judgment on Plaintiff's fraud claims for this reason as well.

    *2.    Justifiable reliance.*—Plaintiff's reliance on any purported "misrepresentation" must be "justifiable."[70] Texas courts have repeatedly held that "a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms."[71] In this case, express language in the documents related to the Transaction negates any possibility that Plaintiff could have justifiably relied on the misrepresentations Plaintiff claims the Baymark Defendants made to it.[72]

---

[68]*Id.*

[69]Denegre Decl. ¶¶ 12-13, App. at 088.

[70]*See, e.g.*, *Wyrick v. Business Bank of Tex., N.A.*, 577 S.W.3d 336, 347 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

[71]*Wyrick*, 577 S.W.3d at 348 (quoting *National Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424-25 (Tex. 2015) (per curiam); *see also id.* at 349 ("A party may not rely justifiably on a fraudulent misrepresentation when he knows that it is false or its falsity is obvious to him.") (internal quotation marks omitted).

[72]Notably, the relevant Transaction documents also contain language indicating that the agreements memorialized *and superseded* "all prior agreements and understandings, oral or written, between the parties with respect to such subject matter." *See, e.g.*, Denegre Decl. Exh. "A," APA § 8.6, App. at 135.

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 19**

First, with respect to the purported representation that ACET Global "would maintain Tomer Damti as the CEO of ACET Global," the Employment Agreement expressly provides that Damti could be terminated, not only for cause, but also *for no reason at all*.[73] Damti was in no way guaranteed employment for any particular length of time, and any reliance by Plaintiff on any purported representation to the contrary could not have been justifiable. Moreover, in negotiating the terms of the Employment Agreement, Plaintiff's counsel actually attempted to limit the "with notice" termination provision in the Employment Agreement to being effective *only* after the initial five-year term, but ACET Global, LLC *rejected* this change.[74] This express rejection by ACET Global, LLC of limitations on its ability to terminate Damti further demonstrate that Plaintiff could not justifiably rely on any purported representation that Damti would be allowed to remain as CEO of ACET Global, LLC.

Second, with respect to the purported representation that one or more of the Baymark Defendants would "invest additional amounts into the underlying business associated with the assets," both the ACET Global Company Agreement and the Baymark ACET Holdco Company Agreement expressly provide that the members had no obligation to make any additional capital contributions to either entity.[75] Accordingly, any reliance by Plaintiff on any purported representation

---

[73]Denegre Decl. Exh. "D," Employment Agreement §§ 8(c) & 8(b), App. at 180-181.

[74]Foote Decl. Exhs. "D" & "D1" at 5, App. at 282-283, 284-292; Foote Decl. Exhs. "E" & "E1" at 5, App. at 293, 294-303. Moreover, counsel for ACET Global, LLC and the other Buyer-related parties to the Transaction stated to Plaintiff's counsel that "Baymark is not willing to cede control of management decisions through number of board seats or the required consent." Foote Decl. Exh. "G," App. at 367.

[75]*See* Denegre Decl. Exh. "E," ACET Global Company Agreement § 3.2, App. at 187; Denegre Decl. Exh. "F," Baymark ACET Holdco Company Agreement § 3.2, App. at 215. Before the Transaction closed, Plaintiff also acknowledged, through its counsel and Damti, that it was "assumed that Holdco does not have any assets or operations that create a substantially certain and predictable stream of income." Foote Decl. Exh. "J" at 2, App. at 470.

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 20**

by any of the Baymark Defendants that additional capital contributions would be made also could not have been justifiable.

In the absence of any justifiable reliance, Plaintiff's claims for fraudulent inducement and common-law fraud fail as a matter of law, and the Baymark Defendants are entitled to summary judgment on such claims for this reason as well.

   3.   *Continued ownership of the securities.*—As noted above, Plaintiff cannot recover any damages for any purported violation of the Texas Securities Act if it continues to hold the securities in question.[76] As part of the Transaction, Damti received a membership interest in Baymark ACET Direct Invest, LLC.[77] He continues to own this membership interest.[78] Thus, even if Plaintiff were able to show that any of the Baymark Defendants actually violated the Texas Securities Act in some way, the only remedy available would be recision, not recovery by Plaintiff of any damages.

## IV.   Counts VI and VII—Plaintiff's Claims Based on "Breach of Fiduciary Duty"

Plaintiff purports to assert a claim for breach of fiduciary duty against ACET Global, LLC and Baymark ACET Holdco, LLC.[79] It then purports to assert a claim for "aiding and abetting" breach of fiduciary duties against Hook, Ludlow, and Baymark Management, LLC.[80]

---

[76] TEX. REV. CIV. STAT. art. 581-33(A)(2).

[77] *See* Denegre Decl. Exh. "A," APA § 2.2(a)(iii), App. at 107; Denegre Decl. Exh. "F," Baymark ACET Holdco Company Agreement at 58, App. at 256.

[78] Denegre Decl. ¶ 10, App. at 088.

[79] *See* Petition ¶¶ 38-41. Plaintiff also asserts, under the heading of its "aiding and abetting breach of fiduciary duties" claim, that "Hook and Ludlow breached their fiduciary duties." *Id.* ¶ 44.

[80] Petition ¶¶ 42-44.

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 21**

### A.    No-Evidence Grounds for Summary Judgment

The elements Plaintiff must prove to succeed on its breach of fiduciary duty claim are: "(1) a fiduciary relationship existed between plaintiff and the defendant; (2) the defendant breached his fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant."[81] Plaintiff has no evidence of any of these three required elements. Accordingly, the Baymark Defendants are entitled to summary judgment on Plaintiff's breach of fiduciary duty claim.

"Aiding and abetting is a dependent claim which is premised on an underlying tort."[82] Thus, there must be evidence of the underlying tort to support a claim for aiding and abetting.[83] Further, a plaintiff must also have evidence of the following elements to support a claim for aiding and abetting: (1) the defendant had an unlawful intent and (2) the defendant substantially assisted and encouraged the wrongdoer in the wrongdoer's tortious act.[84] Plaintiff has no evidence of any of the required elements for its aiding and abetting breach of fiduciary duty claim. Thus, the Baymark Defendants are also entitled to summary judgment on this claim.

### B.    Traditional Grounds for Summary Judgment

Plaintiff bases both its breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims primarily on purported payments that were made by ACET Global, LLC to Baymark

---

[81]*Ahmed v. Mbogo*, No. 05-17-00457-CV, 2018 WL 3616887, at *11 (Tex. App.—Dallas July 30, 2018, pet. denied) (mem. op.).

[82]*Jessen v. Duvall*, No. 14-16-00869-CV, 2018 WL 1004659, at *7 (Tex. App.—Houston [14th Dist.] Feb. 22, 2018, no pet.) (mem. op.).

[83]*See id.*

[84]*Id.*

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 22**

Management, LLC.[85] However, ACET Global, LLC *never made any payments to Baymark Management, LLC.*[86]

The evidence also shows that far from "benefitting" from any aspect of ACET Global, LLC's purchase of substantially all of Plaintiff's assets, the Baymark Defendants *lost* their entire investment, which was in excess of $500,000.00.[87]

Thus, the evidence demonstrates that Plaintiff's breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims fail as a matter of law, and the Baymark Defendants are entitled to summary judgment on such claims on this basis as well.

## V.  Count XI—Plaintiff's Conspiracy Claim

### A.  No-Evidence Grounds for Summary Judgment

To succeed on a claim for conspiracy, a plaintiff must provide proof of the following elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages."[88] In this case, Plaintiff has no evidence of the following required elements: a meeting of the minds on the object or course of action; one or more unlawful over acts; and damages.

For this reason, the Baymark Defendants are entitled to summary judgment in their favor on Plaintiff's conspiracy claim.

---

[85]*See* Petition ¶¶ 40, 44.

[86]Denegre Decl. ¶ 15, App. at 089.

[87]Denegre Decl. ¶¶ 8, 12-14, App. at 087, 088.

[88]*Jessen*, 2018 WL 1004659, at *5.

**B.** **Traditional Grounds for Summary Judgment**

"A claim of civil conspiracy necessarily implicates liability for an underlying tort."[89] Thus, if summary judgment is proper as to the underlying tort on which the purported "conspiracy" is based, summary judgment must also be granted as to a claim for conspiracy.[90] As set forth above, the Baymark Defendants are entitled to summary judgment on all of Plaintiff's tort claims. Accordingly, the Baymark Defendants are also entitled to summary judgment on Plaintiff's conspiracy claim for the same reasons previously discussed.

## PRAYER

For all the reasons set forth above, the Baymark Defendants are entitled to partial summary judgment on Plaintiff's claims on both no-evidence and traditional summary judgment grounds. Accordingly, the Baymark Defendants pray that the Court grant their First Amended Motion for Partial Summary Judgment and dismiss those of Plaintiff's claims that are addressed herein as a matter of law.

---

[89]*Id.*

[90]*Id.*

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 24**

Respectfully submitted,


*/s/ Edward P. Perrin, Jr.*

Edward P. Perrin, Jr.
State Bar No. 15796700
Jennifer R. Poe
State Bar No. 00794470
HALLETT & PERRIN, PC
1445 Ross Ave., Suite 2400
Dallas, TX 75202
Telephone: (214) 953-0053
Facsimile: (214) 922-4142
eperrin@hallettperrin.com
jpoe@hallettperrin.com

**ATTORNEYS FOR DEFENDANTS
ACET GLOBAL, LLC, BAYMARK
ACET HOLDCO, LLC, BAYMARK
ACET DIRECT INVEST, LLC,
BAYMARK MANAGEMENT, LLC,
BAYMARK PARTNERS, DAVID HOOK,
AND TONY LUDLOW**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing instrument was served as indicated below on the 2nd day of March 2021:

| | | |
|---|---|---|
| Jason B. Freeman | [ ] | U.S. Mail |
| Ryan C. Dean | [ ] | Hand Delivery |
| Matthew L. Roberts | [ ] | Overnight Delivery |
| F. Edward Corts, Jr. | [ ] | Certified |
| FREEMAN LAW, PLLC | [ ] | Fax |
| 2595 Dallas Parkway, Suite 420 | [x] | Electronic Delivery via E-Filing |
| Frisco, Texas 75034 | | |
| Jason@freemanlaw-pllc.com | | |
| Rdean@freemanlaw.com | | |
| Mroberts@freemanlaw.com | | |
| Ecorts@freemanlaw-pllc.com | | |

| | | |
|---|---|---|
| Timothy Woods | [ ] | U.S. Mail |
| Brenda A. Hardin-Wilson | [ ] | Hand Delivery |
| HIGIER ALLEN & LAUTIN, P.C. | [ ] | Overnight Delivery |
| 2711 N. Haskell Ave., Suite 2400 | [ ] | Certified |
| Dallas, Texas 75204 | [ ] | Fax |
| twoods@higierallen.com | [x] | Electronic Delivery via E-Filing |
| bhard-wilson@higierallen.com | | |

*/s/ Edward P. Perrin, Jr.*
Edward P. Perrin, Jr.

**BAYMARK DEFENDANTS' FIRST AMENDED MOTION
FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 26**

CAUSE NO. DC-19-09828

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § § | |
| ACET GLOBAL, LLC; | § | DALLAS COUNTY, TEXAS |
| BAYMARK ACET HOLDCO, LLC; | § | |
| BAYMARK ACET DIRECT INVEST, LLC; | § | |
| BAYMARK MANAGEMENT, LLC; | § | |
| BAYMARK PARTNERS; | § | |
| DAVID HOOK; TONY LUDLOW; and | § | |
| WINDSPEED TRADING, LLC, | § § | |
| Defendants. | § | 116th JUDICIAL DISTRICT |

## PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

D&T Partners, LLC (successor in interest to ACET Venture Partners, LLC) ("D&T Partners") files this response to the Baymark Defendants' First Amended Motion for Partial Summary Judgment and Brief in Support (the "Motion") and requests that the Court deny the Baymark Defendants' Motion for the reasons set forth herein.

## I.   INTRODUCTION

The Court has already rejected most of the arguments presented by the Baymark Defendants,[1] given that Windspeed put forward the same arguments in its own motion for summary judgment. The Court denied that motion, and it should do the same here.

---

[1] "Baymark Defendants" refers to Defendants ACET Global, LLC ("ACET Global"); Baymark ACET Holdco, LLC ("Baymark ACET Holdco"); Baymark ACET Direct Invest, LLC ("Baymark ACET Direct Invest"); Baymark Management, LLC ("Baymark Management"); Baymark Partners; David Hook; and Tony Ludlow. For sake of clarity, Plaintiff asserts each of its claims against each of the Baymark Defendants. Any non-specific discussion regarding each Baymark Defendant should not be interpreted as an admission and is not intended as an admission. It is a reference to each and every Baymark Defendant. The Baymark Defendants cite no authority—and Plaintiff is not aware of any authority—that such a reference is an admission, as the Baymark Defendants maintain in footnote one of their MSJ. As reflected herein, Hook and Ludlow were the controlling officers in every Baymark entity at issue here. In one entity, a co-conspirator, Matthew Denegre was also an officer. Denegre has provided an affidavit on their behalf.

**PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**                    Page 1 of 54

**APP 048**

The Baymark Defendants[2] and Windspeed have orchestrated a sophisticated fraud. It reads more like an indictment than a civil complaint. As the Court is aware, the Baymark Defendants; Super G Capital, LLC; and William Szeto formed Windspeed in 2018. They discreetly hid the ownership and involvement of the Baymark Defendants and Super G Capital, LLC. The Baymark Defendants controlled and "owned" 40%; Super G, 40%; and Szeto, 20%. Together, Baymark and Super G Capital exercised complete control and accrued all economic gain.

At the time Windspeed was formed, Szeto was the CEO of ACET Global, LLC. ACET Global owed a note to Plaintiff in the amount of $3.2 million that was secured by the inventory and assets of ACET Global and the membership interests in ACET Global. The parties had valued ACET Global at $3.2 million just months before. The Baymark Defendants fraudulently induced Plaintiff to allow Super G Capital, LLC to obtain a lien on the assets of ACET Global in exchange for a million-dollar line of credit. The Baymark Defendants specifically represented that the transaction was an arm's-length transaction. It was not.

The Baymark Defendants contributed precisely **$516,000** into ACET Global. Baymark Motion, Exhibit 2, ¶¶ 8, 12, 13 (App., pp. 87-88). They siphoned more than $300,000 from ACET Global to Super G Capital during 2017 alone (in the few months after a $750,000 loan was made by Super G Capital). The payments were part of their effort to create a pretext for ACET Global's destruction.

In 2018, almost immediately after Szeto; the Baymark Defendants; and Super G Capital formed Windspeed, Szeto began serving as the CEO of Windspeed (while he simultaneously maintained his position as CEO of ACET Global, LLC). In 2018, Windspeed expropriated ACET

---

[2] Although the Baymark Defendants (particularly the individual defendants) repeatedly attempt to distance themselves from ACET Global, LLC and Baymark ACET Holdco LLC, the Court should not take the bait. Numerous examples herein demonstrate why. Several examples demonstrate the connection on their face. For example, David J. Hook formed ACET Global LLC and represented himself to be the sole member of ACET Global LLC. Exhibit I (App., p. 132). He even made such a representation to the IRS. Hook also represented himself to be the sole member of Baymark ACET Holdco LLC. Exhibit J (App., p. 134). Again, he even made such a representation to the IRS.

**PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**                    Page 2 of 54

**APP 049**

Global's website and began to close its bank accounts and divert its payment accounts. In 2018, Windspeed began to hold ACET Global's inventory out for sale on its website. Months later, in the following year (2019), the Defendants orchestrated a foreclosure by Super G Capital against ACET Global. Super G Capital then purportedly sold the assets of ACET Global to Windspeed for $514,844.86—after miscellaneous costs/fees, virtually the exact amount ($516,000) to the penny that the Baymark Defendants had "contributed" to (i.e., circularly routed through) ACET Global. The precise number is no coincidence.

In an arm's-length transaction, one would expect that $516,000 was the value placed on the assets in the transaction. But, of course, this was not an arm's-length transaction, as the Baymark Defendants had represented. Notably, as set out in detail herein, they did not actually even execute foreclosure sale documents—it turns out that they have instead inserted falsified signature pages from another, different document into a set of foreclosure sale documents and submitted the package to this Court in an attempt to carry out their fraud.

Indeed, the Baymark Defendants would later admit facts, under oath in federal court, completely contrary to their position that it was an arm's-length transaction. In 2019, the Baymark Defendants (Tony Ludlow, and David Hook, signing on behalf of Baymark ACET Holdco, LLC) filed a bankruptcy petition on behalf of ACET Global. They expected that bankruptcy would get rid of this case. In their sworn statement, they acknowledged that Plaintiff had a valid $3.2 million claim against them and disclosed it, judicially admitting the fact (and thereby disposing of several grounds in their now-filed MSJ). In that bankruptcy petition, they also informed the bankruptcy court of the precise value of the assets that ACET Global had transferred to Super G Capital: $30,000. That seems more than a bit odd, though, given that Windspeed paid Super G Capital $514,844.46 for those assets. At any rate, the bankruptcy court rejected their request for discharge.

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 3 of 54

APP 050

Super G Capital and Marc Cole, its CFO, have been quite cooperative with the Baymark Defendants and Windspeed, providing them with affidavits in support of their efforts. As set out above, clearly much was hidden and not disclosed about that relationship. Indeed, Super G Capital continues to mislead. In part of an effort to obtain the deposition of Super G Capital and Marc Cole, undersigned counsel received the following, odd email from Super G Capital's counsel:

**From:** Tim Silvestre <tsilvestre21@gmail.com>
Date: Wednesday, March 10, 2021 at 7:59 PM
To: Ryan Dean <rdean@freemanlaw.com>, Jason Freeman <Jason@freemanlaw.com>, Zach Montgomery <zmontgomery@freemanlaw.com>, Evan J. Davis <davis@taxlitigator.com>
Subject: Super G Capital, LLC

Gentlemen, with respect to the operational status of Super G Capital, LLC (the "***Company***"), I have been informed as follows:

· The Company is no longer in business, has no employees or operations and is the process of liquidating all assets/covering remaining liabilities;

· Marc Cole is not an employee of the Company and has been simply assisting its founder, on an unpaid basis, in this wind down process;

· The Company's founder suffers from a terminal illness and is not functional at this time;

· Mr. Cole may have access to a portion of the written documents addressed in your production subpoena but he is no longer on the Company's email server.

Regards, Tim

Exhibit F (App., p. 122). Like a ghost, Super G Capital purportedly disappeared, and its founder succumbed to some mysterious "terminal illness" rendering him "not functional." The email and representations appear to demonstrate a continued effort to mislead Plaintiff and add to the irregularity. It is also contrary to the Form LLC-12 filed by Darrin Ginsberg, the "founder" of the company, approximately a month before the email above. That Form LLC-12 represents to the state of California that Super G Capital was engaged in the business of "Business to Business Lending" as of February 4, 2021.

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 4 of 54

**APP 051**

And finally, Baymark ACET Holdco LLC and the Baymark Defendants made yet another admission. In 2019, they reported to the IRS that they received "Proceeds (sales price)" of "$2,907,290" from a "SALE FROM FORECLOSURE" for a transaction in 2019 on assets that were "acquired" on "07/21/17" (the date of the Asset Purchase Agreement). Interestingly, though, the Baymark Defendants stringently argue to the Court here that Baymark ACET Holdco LLC was not a part of the transactions at issue and that they did not see a return of funds.

The Baymark Defendants perpetrated a fraud. The evidence supports this. Indeed, a rundown of the entities at issue in this case paints an informative picture:

| Entity | Owner/Director/Relationship |
|---|---|
| **Baymark Partners, L.P.** | **David Hook**, Managing Director<br>**Tony Ludlow**, Managing Director<br>Matt Denegre, Director |
| **Baymark Management, LLC** | **David Hook**, Managing member<br>**Tony Ludlow**, Managing member |
| **Baymark ACET Direct Invest, LLC** | **David Hook**, Managing member<br>**Tony Ludlow**, Managing member<br>Matt Denegre, Managing member |
| **Baymark ACET Holdco, LLC** | **David Hook**, Managing member<br>**Tony Ludlow**, Managing member |
| **ACET Global, LLC** | Baymark ACET Holdco, LLC, Sole Managing member |
| **Windspeed Trading, LLC** | **Tony Ludlow**, Board Manager for Baymark Partners Management, LLC<br>Steven Bellah, Board Manager for Super G Capital, LLC<br>William Szeto, Board Manager |
| **Baymark Partners Management, LLC** | **David Hook**, Managing member<br>**Tony Ludlow**, Managing member |

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 5 of 54

**APP 052**

| Super G Capital, LLC | Related to either **David Hook** or **Tony Ludlow**;[3] a warrantholder in Windspeed Trading, LLC, entitling Super G Capital to a 40% ownership interest upon exercise |
| --- | --- |

Additionally, with respect to the Baymark Defendants' transfer of ACET Global's assets to Windspeed, **multiple facts** based on the admissions of the Defendants show that the Baymark Defendants (and Windspeed) perpetrated a fraud:

- **2017 - 2018** – Matt Denegre represented in his Declaration that Baymark ACET Direct Invest and Baymark ACET Holdco collectively contributed **$516,000.00** to ACET Global. Baymark Motion, Exhibit 2, ¶¶ 8, 12, 13 (App., pp. 87-88).

- **January 1, 2019** – Baymark ACET Holdco represented on its 2019 Form 1065 that ACET Global owed **$403,345.79** to Super G Capital as of January 1, 2019. Exhibit H-2, Schedule L (App., p. 172).[4]

- **January 31, 2019** – Marc Cole represented in his Declaration that as of the date of the Notice of Disposition (January 31, 2019) ACET Global owed over **$500,000** to Super G Capital. Baymark Motion, Exhibit 1, ¶ 6 (App., p. 32).

- **March 1, 2019** – The Foreclosure Sale Agreement between Super G Capital and Windspeed stated that ACET Global owed **$516,844.86** to Super G Capital. Windspeed Motion, Exhibit A-4 (App., p. 74).

---

[3] The Baymark Defendants have not been forthcoming regarding Super G Capital, LLC's relationship to David Hook and Tony Ludlow. As addressed in prior pleadings and discussed below, Matt Denegre represented that Super G Capital, LLC was a related party to either David Hook or Tony Ludlow. This relationship is confirmed by the fact that the Baymark Defendants filed amended federal income tax returns to reflect that relationship with Super G Capital, LLC.

[4] Specifically, Schedule L states that Baymark ACET Holdco (truly ACET Global) had total long-term liabilities of $3,291,771, as of January 1, 2019. This figure is composed of two figures—the amount owed to Super G Capital ($403,345.79) and the amount owed to ACET Venture Partners ($2,888,425.00).

**PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**                              Page 6 of 54

**APP 053**

- **March 1, 2019** – Super G Capital executed the Amended and Restated Business Loan & Security Agreement with Windspeed for a loan in the amount of **$514,144.86**. Windspeed Motion, Exhibit A-5 (App., p. 128).

- **October 23, 2019** – ACET Global filed its federal bankruptcy petition and stated that in January 2019 Super G Capital foreclosed on ACET Global's property worth **$30,000.00**. Exhibit G (App., p. 141).

Consequently, D&T Partners poses the following question to this Court: **Why would a "third-party company" in a supposed "arms-length" transaction purchase $30,000 worth of property from Super G Capital in a foreclosure sale with a loan in the amount of $514,144.86?** It would not, and it did not.

Moreover, Baymark ACET Holdco reported Super G Capital's foreclosure on ACET Global's property and assets on its 2019 federal income tax return in yet another conflicting way. Baymark ACET Holdco reported that Super G Capital's foreclosure occurred on January 1, 2019—creating a conflict with Marc Cole's declaration and the Notice of Disposition and Sale of Collateral, dated January 31, 2019. Exhibit H-2, Form 8949 (App., p. 177). Additionally, Baymark ACET Holdco reported that it (and ACET Global by extension) received "Proceeds (sales price)" of $2,907,290 as a result of Super G Capital's foreclosure, which happened to be ACET Global's exact basis in the foreclosed assets. *Id.* A screenshot of ACET Holdco's federal reporting of the foreclosure is depicted below:

**PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**                    Page 7 of 54

**APP 054**

| Form 8949 (2019) | | | Attachment Sequence No. **12A** | | | | Page **2** |
|---|---|---|---|---|---|---|---|
| Name(s) shown on return. Name and SSN or taxpayer identification no. not required if shown on page 1 BAYMARK ACET HOLDCO LLC | | | | | | **Social security number or taxpayer identification no.** | |

Before you check Box D, E, or F below, see whether you received any Form(s) 1099-B or substitute statement(s) from your broker. A substitute statement will have the same information as Form 1099-B. Either will show whether your basis (usually your cost) was reported to the IRS by your broker and may even tell you which box to check.

**Part II  Long-Term.** Transactions involving capital assets you held more than 1 year are generally long-term (see instructions). For short-term transactions, see page 1.
**Note:** You may aggregate all long-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS and for which no adjustments or codes are required. Enter the totals directly on Schedule D, line 8a; you aren't required to report these transactions on Form 8949 (see instructions).

**You must check Box D, E, or F below. Check only one box.** If more than one box applies for your long-term transactions, complete a separate Form 8949, page 2, for each applicable box. If you have more long-term transactions than will fit on this page for one or more of the boxes, complete as many forms with the same box checked as you need.

- ☐ **(D)** Long-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS (see **Note** above)
- ☒ **(E)** Long-term transactions reported on Form(s) 1099-B showing basis **wasn't** reported to the IRS
- ☐ **(F)** Long-term transactions not reported to you on Form 1099-B

| 1 | **(a)** Description of property (Example: 100 sh. XYZ Co.) | **(b)** Date acquired (Mo., day, yr.) | **(c)** Date sold or disposed of (Mo., day, yr.) | **(d)** Proceeds (sales price) | **(e)** Cost or other basis. See the **Note** below and see *Column (e)* in the instructions | Adjustment, if any, to gain or loss. If you enter an amount in column (g), enter a code in column (f). See instructions. **(f)** Code(s) | **(g)** Amount of adjustment | **(h)** Gain or (loss). Subtract column (e) from column (d) & combine the result with column (g) |
|---|---|---|---|---|---|---|---|---|
| | SALE FROM FORECLOSURE | 07/21/17 | 01/01/19 | 2907290. | 2907290. | | | 0. |

*Id.*

Further, the timeline established by the Defendants' own "evidence" is informative:

- On October 18, 2018, William Szeto; Tony Ludlow, on behalf of Baymark Partners Management, LLC; and Marc Cole, on behalf of Super G Capital, executed the Amended and Restated Company Agreement of Windspeed Trading, LLC. *See* Windspeed Motion, Exhibit A-2 (App., pp. 23-59). They became business partners in Windspeed.

  - William Szeto claims that he is the 100% owner of Windspeed and has complete control over it, but Windspeed's formation documents demonstrate that **Szeto is merely the puppet** of Super G Capital and the Defendants. For example, the Company Agreement imbues Super G Capital and Baymark Partners Management, LLC with perpetual authority (so long as they are warrant holders or members of Windspeed) to appoint and control a board member of Windspeed's three-person board (and retain the right to replace such board member). Windspeed Motion, Exhibit A-2 § 3.4 (App., p. 35). Under the Agreement, the board members manage **all** of the business and

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 8 of 54

**APP 055**

affairs of Windspeed by majority—Super G and Baymark Partners maintain complete control. Windspeed Motion, Exhibit A-2 § 3.1 (App., p. 34). The Agreement even provides a heading that reads as follows: "**No Control by Members**." *Id.* at § 3.2 (App., p. 34). . It provides that "No Member [Szeto claims to be the sole member] . . . will participate in or have any control over the Company business or will have any authority or right to act for or bind the Company." *Id.* (App., p. 34). Even further, both Super G Capital and Baymark Partners Management, LLC own warrants with respect to 80% of the membership interests of Windspeed. *Id.* (App., pp. 23, 59). The Agreement prohibits Szeto from transferring his "ownership" in Windspeed to any person without the consent of Super G Capital and Baymark Partners Management (begging the question as to why two purported non-owners can prohibit Szeto from transferring his claimed "owner[ship]"). *Id.* at § 9.1 (App., p. 47). In fact, Super G Capital and Baymark Partners Management are granted authority under the Agreement to even force Szeto to sell all of his interest in "his" company without his consent. *Id.* at §§ 3.1, 9.1, 9.6 (App., pp. 34, 41, 49). The Agreement also requires that Szeto provide the "Baymark Manager" and "Super G Manager" a power of attorney to engage in virtually any act with unfettered discretion on his behalf with respect to Windspeed—even amend the company agreement of Windspeed without his consent. *Id.* at § 11.3 (App., p. 54). Szeto and Windspeed may call it "ownership"—indeed, they do, repeatedly—but that does not make it so: Actions speak much louder than words. Baymark owns Windspeed. Super G helped Baymark acquire it.

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 9 of 54

APP 056

- **On December 5, 2018,** Windspeed Trading, LLC took ownership and control over an ACET Global payment account, using a Windspeed email address.

- As of at least **December 12, 2018,** Windspeed's website was a virtual carbon copy of the former ACET Global website. *See* Exhibit B, ¶¶ 14-16, 20 (App., pp. 60-62); Exhibit B-6 (App., pp. 91-92); Exhibit B-7 (App., pp. 93-94). The Windspeed website included postings holding out for sale hundreds of products—distinct and unique products (such as the Tear of a Fairy Bracelet) that were in fact one and the same as those reflected on ACET Global's inventory of items in the Foreclosure Sale Agreement *Id*; Windspeed Motion, Exhibit A-4 (App., p. 94) (a foreclosure sale that would not, supposedly, take place until the following year when it, according to Windspeed and Baymark, then gave Windspeed ownership over the inventories, including the Tear of a Fairy Bracelet).

- **On January 10, 2019,** William Szeto, <u>the CEO of both ACET Global and Windspeed,</u> issued a memo on behalf of Windspeed and on Windspeed letterhead, directing the closure of "three accounts under ACET Global LLC", effective immediately.

- **On March 1, 2019,** William Szeto, on behalf of Windspeed, and Marc Cole, on behalf of Super G Capital, executed a Foreclosure Sale Agreement by which Windspeed purported to purchase all of ACET Global, LLC's inventory (the inventory that Windspeed had already been advertising and selling for many months). ACET Global, LLC purportedly owed Super G Capital $403,345.79. Windspeed did not pay out of pocket; instead, Super G Capital "sold" Windspeed the inventory for a loan in the amount of $514,144.86. Super G, of course, had warrants to 40% of the membership of Windspeed. Baymark Partners Management had warrants to another 40% of the membership. Again, though, Szeto and Windspeed repeatedly lambast Plaintiff for its

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 10 of 54

APP 057

"baseless allegations" and "ill-founded contentions," characterizing the transaction as an "arm's-length" transaction. It was just a "good faith" purchaser, it claims, when it accepted the hundreds of thousands of dollars' worth of inventory from its owner/controlling-board member—without paying a penny in exchange, no less.

- Throughout 2018, including in January 2018 and each month thereafter, ACET Global received bank deposits that were wrongly diverted from ACET Ventures Partners into an account that William Szeto, on Windspeed letterhead, later directed Chase Bank to close down, as he would conduct all operations through Windspeed from that point forward.

- In 2019, an IRS Form 1099-K was issued reporting that Windspeed Trading, LLC had received revenue in every month of 2018. (This, despite Windspeed's efforts to paint a picture here that it did not own or sell any of the inventory until after the March 1, 2019 "foreclosure sale.").

- In September of 2020, Matt Denegre, Director of Baymark Partners, emailed Tomer Damti and informed him that Super G Capital was a "related party." Rather than an unaffiliated, third-party lender engaging in arm's-length lending, Super G Capital was related to Baymark Partners Management, LLC and Windspeed. Only recently, however, did Windspeed inform Plaintiffs that Super G Capital was actually a partner of Baymark and Szeto. This, of course, is entirely contrary to the discovery responses that Baymark has provided to date.

- Thus, at the end of the day, a company (Windspeed) controlled by Super G Captial (40%); Baymark Partners Management, LLC (40%); and Szeto (20%), "foreclosed" (a collusive foreclosure) on the inventory of ACET Global, LLC. ACET Global was owned by the Baymark parties. The Baymark parties had purchased (on a $3.2 million

Plaintiff's Response to Baymark Defendants' First Amended Motion for
Partial Summary Judgment and Brief in Support                                    Page 11 of 54

APP 058

note) all of the assets of D&T Partners in 2017, and induced D&T Partners to subordinate its interest therein in order to allow Super G Capital to finance ACET Global, which took a lien in all assets. The Defendants induced D&T Partners to so subordinate by representing that they (i) were not related to Super G Capital and (ii) that they would maintain Mr. Damti as ACET Global's CEO throughout the time that any of the $3.2 million note was outstanding. Both representations failed: Baymark Partner's Director Matt Denegre admitted to Tomer Damti that Super G Capital is, in fact, a "related" party. And Defendants, through Ludlow, fired Mr. Damti in February of 2018 and replaced him with none other than William Szeto. William Szeto then served as the CEO for ACET Global and, at the same time, (for many months) the CEO of Windspeed. He is also a member of Windspeed's three-person board, along with perpetual members appointed by Baymark Partners Management, LLC and Super G Capital. Super G Capital later "sold" Windspeed all of ACET Global's former assets for, amazingly, *more* than ACET Global had even owed it at the time it collusively "foreclosed" on ACET Global.

Indeed, contrary to Szeto's sworn representations, not only are the other named Defendants involved in the operation of Windspeed, but they actually control it. Szeto, the **current** CEO of Windspeed, was the **previous** CEO of ACET Global—and worked in both capacities at the same time. Baymark and Super G Capital control Windspeed's board of managers. Baymark and Super G Capital can prevent Szeto from transferring any membership interest. That is an unusual arrangement for businesses that are "not related."

Furthermore, the evidence demonstrates that the Defendants effectively "copied" ACET Global over to Windspeed—vendors, product descriptions, and numerous other items are literal

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 12 of 54

**APP 059**

carbon copies of ACET Global. Furthermore, tax documents issued by Defendants indicate that the lender, Super G Capital, is not an "uninterested third-party," but is related to named Defendants.

Despite the evidence against them, Defendants—and even the Baymark Parties' counsel (who, as a critical fact witness who just so happens to have represented Windspeed in the transactions)—have continued to deny that any relationship exists between Super G Capital and any of the Defendants. The denials have been obstructionist and have made a mockery of the judicial system and discovery process. For example, when asked about the relationship between Super G Capital and any Defendant (including Windspeed), David Hook defied the question to the extent it would reveal the full relationship between the Defendants and Super G Capital.[5] Exhibit B-9 (App., p. 98).

> **INTERROGATORY NO. 1:** Explain, in detail, the legal relationship between Super G Capital and any defendant, including any interest that any defendant has or has had during the past five years in Super G Capital, LLC or that Super G Capital, LLC has with respect to any defendant.
>
> **OBJECTIONS AND RESPONSE:** Hook objects to Interrogatory No. 1 as being vague and ambiguous through its use of the terms "legal relationship" and "any interest." Hook further objects to Interrogatory No. 1 as it requires Hook to respond with respect to the "legal relationship[s]" and "interest[s]" of Defendants other than Hook.
>
> Consistent with and without waiving the above-stated Objections, Hook will provide information regarding any ownership interest Hook has in Super G Capital, LLC.
>
> Hook has no ownership interest in Super G Capital, LLC.

The Baymark Parties' counsel has echoed his clients' misrepresentations:

I am also attaching for your reference publicly available documents related to the management of Super G. Further information about Super G can be found on Super G's website: https://www.supergcapital.com/about/ I trust you will agree that this

---

[5] The Defendants have a duty to respond to "any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery **or the claim or defense of any other party.**" Tex. R. Civ. P. 192.3 (emphasis added). Despite the question being relevant to the claims of the Defendants that they are unrelated to Windspeed, improper objections were made to the question in an effort to hide the truth. Windspeed and the other Defendants all knew that Windspeed was related to not just the other Defendants, but also Super G Capital.

**PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**                    Page 13 of 54

**APP 060**

documentation/information confirms what we discussed last week, namely that Super G is wholly independent from any of the Defendants named in Plaintiff's lawsuit.

Exhibit D (App., p. 110) (Email from Edward Perrin on September 26, 2019 to Jason B. Freeman).

These misrepresentations by the Baymark Parties and their counsel/agent have been formally repeated well more than ten times to Plaintiff and its counsel. Such obstructionist behavior has only been emboldened by the Baymark Parties' counsel's glaring conflicts.[6]

---

[6] Edward Perrin, through Hallet & Perrin (collectively, "Perrin"), represented **ACET Holdco, LLC**, drafting its LLC Company Agreement dated July 14, 2017. That Agreement was an integral part of the transaction at issue in this litigation. ACET Holdco, LLC's members were: **ACET Venture Partners LLC (Owned by Tomer Damti)** and **Baymark ACET Direct Invest, LLC (with David J. Hook** signing). Perrin represented **ACET Global, LLC** in drafting its Asset Purchase Agreement with ACET Venture Partners LLC (predecessor of D&T Partners) and in drafting and obtaining a Collateral Assignment of Rights and Subordination Agreement from Tomer Damti (owner of ACET Venture Partners LLC), all in favor of Super G Capital. Perrin also represented **Windspeed Trading, LLC** in its Foreclosure Sale Agreement entered into with Super G. Perrin is literally a walking casebook study in conflicts of interest. Because D&T Partners (successor to ACET Venture Partners LLC and owned by Tomer Damti) was a member in ACET Holdco, LLC, and because Perrin represented the parties in drafting the ACET Holdco Operating Agreement, Perrin had or arguably had fiduciary duties that ran to D&T Partners (the plaintiff in this action).

Mr. Perrin has gone to exceptional lengths to unequivocally represent to undersigned counsel that Super G is unrelated to, and has no relationship with, any defendant in this case. (E.g., Email dated September 26, 2019 from Edward Perrin to Jason B. Freeman, stating "I trust you will agree that this documentation/information confirms what we discussed last week, **namely that Super G is wholly independent from any of the Defendants named in Plaintiff's lawsuit**." Exhibit D.) It has now come to light that not only was Super G "related" to the Baymark parties, it was also a partner with them *in Windspeed*, the very company that is accused of wrongfully receiving the assets at issue in a collusive foreclosure process. *See* Windspeed Motion, Exhibit A-2 (App., pp. 23-59).

Despite Perrin's continued and repeated representations that he knew "all of the facts" and that Windspeed had no relationship whatsoever to any of the defendants to this suit, undersigned counsel continued to insist that Super G appeared to have a relationship to certain defendants in this case. Perrin continued to engage in obstructive behavior in response to counsel's attempts to learn about the relationship between Super G Capital and Perrin's then-clients: Windspeed, ACET Holdco, LLC and the Baymark parties—he thumbed his nose at a validly-issued subpoena; he engaged in obstructionist discovery responses; he repeatedly chastised counsel; and he even instituted federal bankruptcy proceedings (premised on the representation that Super G Capital, Windspeed, ACET Global, and Baymark were not related) in an attempt to have the liabilities at issue here discharged, although the bankruptcy court refused to discharge the debt. **But it is now undeniable that Perrin was aware of (and participated in) the very agreement making them all business partners in Windspeed, which was dated October 18, 2018**. *See* Windspeed Motion, Exhibit A-2 (App., pp. 23-59).

Eventually, Matthew Denegre, a Director of Baymark Partners, contacted Tomer Damti and informed him and admitted that Super G was actually a "related party" to the Baymark defendants. Shortly after that, the Baymark defendants caused amended K-1s to be issued to Tomer Damti (for the 2017 and 2018 years and precise activity at issue here) to reflect a new tax-reporting position that was required because of the fact that Super G was a "related party." In other words, Denegre had little choice but to inform Damti of the close relationship because he would find out from the required tax forms in a matter of days. On September 15, 2020, after learning of the amended K-1s that Perrin's client caused to be issued, undersigned counsel (growing in frustration from Perrin's continued obstructionist behavior), emailed Perrin to ask for an explanation of his client's issuance of the K-1s to Mr. Damti during the middle of this litigation for the exact years and transactions at issue in this litigation. (Notably, those K-1's reporting Perrin's client's (a defendant in this case) new tax-reporting position, **attributed $365,824 of income to Damti from Baymark ACET Holdco LLC** (and away from

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 14 of 54

**APP 061**

## II.  GENERAL TIMELINE OF EVENTS

- **July 14, 2017** – Tomer Damti, on behalf of Plaintiff, and David Hook, on behalf of ACET Global, executed the Asset Purchase Agreement.

- **July 2017** – Tomer Damti, on behalf of Plaintiff, and David Hook, on behalf of ACET Global, executed the Secured Promissory Note.

- **July 2017** – Tomer Damti, on behalf of Plaintiff, and David Hook, on behalf of Baymark ACET Holdco, LLC, executed the Security Agreement.

---

the Baymark Parties) – nearly two years after Damti had had any business engagement with the Baymark parties. (His last business engagement with them was in October of 2018 when they caused ACET Global, LLC to default on the $3.23 million it owed to Damti.).

With respect to undersigned counsel's email to Perrin, Perrin responded asking if I was asking "for an explanation of what an IRS K-1 Form is." Exhibit E. I responded by informing him that "you can safely assume I know what a K-1 is. What I don't understand is why one is being sent to my client from yours on a basis that appears to be directly contrary to representations you have made to me and, if recollection holds, the court." *Id.* I subsequently put the inquiry as simply as possible:

> **Please inform me of the reason for the issuance of the amended K-1's, which together reported hundreds of thousands of dollars of income to my client.**
>
> **Please inform me of the relationship between the lender and any members of ACET Global, LLC. That is, explain how they are related.**

*Id.* (September 18, 2020 Email from Jason B. Freeman to Edward Perrin) (bolding added).

Perrin, true to form, responded with several rants:

> Again, your communication is pretty opaque and fairly impossible to respond to, particularly without any indication what "representation" you are saying I made to you, and possibly the court, that is somehow directly contradicted by some unidentified something in an unspecified K-1. Since you won't identify what you are referencing, I understandably can't say if I'm aware of it or not. But your unwillingness to straightforwardly identify what is purportedly at issue, or ask a direct question in order to endeavor to obtain what may possibly be a simple explanation, only serves to raise questions as to any valid or viable basis (and anything approximating reasonable diligence or investigation necessary) for any such threatened action.

*Id.* (Email from Edward Perrin to Jason Freeman).

> Again, your email tellingly avoids answering the question. Nothing below answers my simple question in response to your direct accusation - what, if any, representation do you claim was made to you and the Court, that is "revealed," *i.e.,* shown to be false, by those K-1's? You have crossed a bright ethical line by making such a serious accusation, so be specific, back it up it up with facts, or stop your unbecoming and hollow posturing. Your failure to do so will only confirm your inability to do so.

*Id.* (Email from Edward Perrin to Jason Freeman).

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                              Page 15 of 54

**APP 062**

- **July 20, 2017** – David Hook, on behalf of ACET Global, Marc Cole, on behalf of Super G Capital, and Tomer Damti, on behalf of Plaintiff, executed the Collateral Assignment of Rights.

- **February 12, 2018** – Tony Ludlow issued Tomer Damti a letter, terminating Mr. Damti's employment with ACET Global.

- **February 14, 2018** – Around this date, William Szeto became acting CEO of ACET Global.

- **June 2018** – William Szeto told Monica Plaskett that ACET Global had a high amount of debt and that he was going to "start another business." William Szeto also suggested he "had friends," and that if ACET Global went bankrupt, Mr. Szeto would continue the operations with a new company.

- **September 27, 2018** – William Szeto filed the Certificate of Formation Limited Liability Company for Windspeed.

- **September 30, 2018** – ACET Global's balance sheet reflected a long-term liability owed to Super G Capital in the amount of $403,345.79.

- **October 18, 2018** – William Szeto, on behalf of Windspeed; Tony Ludlow, on behalf of Baymark Partners Management, LLC; and Marc Cole, on behalf of Super G Capital, LLC, executed the Amended and Restated Company Agreement of Windspeed Trading, LLC. They became business partners in Windspeed. The Agreement was drafted by Hallett & Perrin.

- **October 31, 2018** – The first monthly installment owed by ACET Global to Plaintiff under the Secured Promissory Note became due. ACET Global failed to pay Plaintiff.

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 16 of 54

**APP 063**

- **December 5, 2018** – Jane Lin, a former employee of ACET Global, executed the Authorize.Net Request for a New Account Owner to be the new account owner of an ACET Global account (using her Windspeed email address).

- **December 10, 2018** – Windspeed's website reflected numerous products for sale— unique products that were in fact one and the same as those reflected on ACET Global's inventory of items in the Foreclosure Sale Agreement (that would, supposedly not take place until the following year).

- **January 1, 2019** – ACET Global's balance sheet reflected a long-term liability owed to Super G Capital in the amount of $403,345.79.

- **January 10, 2019** – William Szeto, on behalf of Windspeed, issued a memo instructing that "three accounts under ACET Global LLC" be closed, effective immediately.

- **January 31, 2019** – Marc Cole, on behalf of Super G Capital, issued the Notice of Disposition and Sale of Collateral to ACET Global (ATTN: David Hook).

- **March 1, 2019** – William Szeto, on behalf of Windspeed, and Marc Cole, on behalf of Super G Capital, executed the Foreclosure Sale Agreement by which Windspeed purported to purchase all of the inventory from Windspeed (the inventory it had already been advertising and selling for many months).

- **March 1, 2019** - William Szeto, on behalf of Windspeed, and Marc Cole, on behalf of Super G Capital, executed the Amended and Restated Business Loan & Security Agreement for a loan in the amount of $514,144.86.

- **July 12, 2019** – Plaintiff filed its Original Petition.

- **October 23, 2019** – ACET Global filed its Voluntary Petition for Bankruptcy, stating, among other things, that Super G Capital foreclosed on ACET Global's property with a value of $30,000.

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 17 of 54

**APP 064**

- **August 14, 2020** – Matt Denegre, Director of Baymark Partners, emailed Andy Waltman, Director of Baymark Partners, and stated: "The last balance sheet for ACET is from September 2018 when the company was foreclosed on by Super G."

- **September 14-15, 2020** – Matt Denegre, Director of Baymark Partners, emailed Tomer Damti and admitted that Super G Capital was a related party to the partners of Baymark ACET Holdco LLC.

### III.   FACTUAL BACKGROUND

On July 14, 2017, Plaintiff entered into an Asset Purchase Agreement with Defendant ACET Global (hereafter, the "APA"). *See* Plaintiff's Second Amended Petition (hereafter, "Petition"), ¶ 13. Under the APA, ACET Global purchased the assets of Plaintiff. *Id.* In exchange, ACET Global agreed to pay Plaintiff the following purchase price: (1) $850,000.00 in cash via wire transfer at closing; (2) a subordinated secured promissory note in the original principal amount of $3,230,000.00; (3) a 25% common membership interest in Defendant Baymark ACET Holdco, LLC; and (4) ACET Global's assumption of the Assumed Liabilities. *Id.*, ¶ 15.

Pursuant to the APA, ACET Global entered into a Promissory Note with Plaintiff in July 2017, memorializing the $3,230,000.00 payable to Plaintiff (hereafter, the "Note"). *See* Exhibit H-1 (App., p. 156). According to the terms of the Note, the first installment payment was to come due in October 2018, the fifteenth month after the Note was issued. *Id.* According to the APA, Plaintiff provided its assets to ACET Global. Moreover, ACET Global paid Plaintiff $850,000.00 in cash, granted Plaintiff a 25% common membership interest in ACET Global, and assumed the "Assumed Liabilities" under the APA. Petition, ¶¶ 15-17.

Separately, Baymark ACET Holdco, LLC entered into a Security Agreement (the "Security Agreement") with ACET Venture Partners. *See* Petition, ¶ 18. Under the Security Agreement, Baymark

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 18 of 54

**APP 065**

ACET Holdco, LLC granted a security interest to ACET Venture Partners in 59% of the membership interest of ACET Global, LLC. *Id.*

Following the APA, David Hook then caused ACET Global to enter into a Collateral Assignment of Rights Under Acquisition Transaction Documents and Subordination Agreement (the "Collateral Assignment") with Super G Capital, LLC, which provided that Super G Capital, LLC would provide a term loan facility of up to $1,000,000. *See* Petition, ¶ 20. The Collateral Assignment contemplated that ACET Venture Partners' security interest under the Security Agreement would be subordinated to the lien held by Super G Capital. *Id.* ACET Venture Partners agreed to subordinate its security interest to Super G Capital, LLC and accept a 25% common membership interest in Baymark ACET Holdco, LLC with the understanding that Damti would maintain managerial authority and discretion and that ACET Global did not intend (and that Hook and Ludlow did not intend to cause it) to default on the loan to ACET Venture Partners or default on the loan from Super G Capital. *Id.*

Within approximately a year—and before the Note came due—a new and separate entity, Windspeed Trading, LLC, was formed. *See* Petition, ¶ 24. Ludlow and Hook caused the transfer of substantially all of the assets of ACET Global to Windspeed Trading, LLC, thereby removing all of the value of ACET Global, which served as security for the Note and further decreased the value of Baymark ACET Holdco, LLC. *Id.* This act, or series of acts, was in violation of the Secured Promissory Note and related Security Agreement. *Id.*

## IV.    STATEMENT REGARDING SUMMARY JUDGMENT EVIDENCE

Pursuant to Tex. R. Civ. P. 166a(d), D&T Partners intends to use discovery products that are not currently on file as evidentiary proof. Specifically, D&T Partners relies on the following competent summary judgment evidence and incorporates such products herein as if set forth in full:

**Exhibit A:** Affidavit of Monica Plaskett, dated February 24, 2021.

**Exhibit B:** Declaration of Tomer Damti, dated February 25, 2021.

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 19 of 54

APP 066

**Exhibit B-1:** Memo from William C. Szeto, dated January 10, 2019.

**Exhibit B-2:** Authorize.Net Request for a New Account Owner, dated December 5, 2018.

**Exhibit B-3:** Super G Capital, LLC's Notice of Disposition and Sale of Collateral, dated January 31, 2019.

**Exhibit B-4:** Emails between Matt Denegre and Tomer Damti, dated September 14-15, 2020.

**Exhibit B-5:** Windspeed Trading, LLC's website, as of December 12, 2018.

**Exhibit B-6:** ACET Global's Jewelry webpage, as of August 25, 2018.

**Exhibit B-7:** Windspeed Trading, LLC's Jewelry webpage, as of December 12, 2018.

**Exhibit B-8:** 2018 Form 1099-K issued by Group, Inc. to Windspeed Trading LLC.

**Exhibit B-9:** David Hook's Objections and Responses to Plaintiff's First Set of Interrogatories, dated November 6, 2020.

**Exhibit B-10:** Koolulu's Official Logo.

**Exhibit C:** Declaration of Paul Knutson.

**Exhibit C-1:** Emails between Matt Denegre, Andy Waltman, and Howard CPAs, dated August 13-14, 2020.

**Exhibit D:** Email from Edward P. Perrin, Jr. to Jason Freeman, dated September 26, 2019.

**Exhibit E:** Emails between Edward P. Perrin, Jr. and Jason Freeman, dated September 15-22, 2020.

**Exhibit F:** Emails between Tim Silvestre and Jason Freeman, dated March 10-16, 2021.

**Exhibit G:** ACET Global, LLC's Voluntary Petition for Non-Individuals Filing for Bankruptcy (Cause No. 19-42878), filed October 23, 2019.

**Exhibit H:** Declaration of Tomer Damti, dated March 17, 2021.

**Exhibit H-1:** Secured Promissory Note between ACET Global, LLC and ACET Venture Partners, LLC, effective July 20, 2017.

Plaintiff's Response to Baymark Defendants' First Amended Motion for Partial Summary Judgment and Brief in Support                    Page 20 of 54

**APP 067**

**Exhibit H-2:** Baymark ACET Holdco, LLC's Form 1065, *U.S. Return of Partnership Income*, for the tax year ending December 31, 2019.

**Exhibit I:** Internal Revenue Service Notice to ACET Global, LLC, dated July 5, 2017.

**Exhibit J:** Internal Revenue Service Notice to Baymark ACET Holdco, LLC, dated July 6, 2017.

## V.   ARGUMENT AND AUTHORITIES

### A.  Summary Judgment Standard.

The moving party is entitled to summary judgment when the party conclusively demonstrates that the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a. A party is entitled to judgment as a matter of law if there are (1) no genuine issues of material fact and the movant's summary judgment evidence establishes an entitlement to judgment as a matter of law; or (2) there is no evidence of one or more essential elements of a claim or defense on which the adverse party has the burden of proof. *See id.* But the Texas Supreme Court has held that the summary judgment procedure is not intended, and should not be used, to deprive litigants of their right to a full hearing on the merits of any real issue of fact. *In re Estate of Price*, 375 S.W.2d 900, 904 (Tex. 1964); *Mariner Financial Group v. H.G. Bossley*, 79 S.W.3d 30, 32–33 (Tex. 2002).

A genuine issue of material fact exists when "if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence." *Transcon. Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685 (Tex. App.—Houston [14th Dist.] 2010, no pet.). But in examining the existence of a genuine issue of material fact, evidence favorable to the non-movant must be taken as true, and any doubts must be resolved in the non-movant's favor. *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 549 (Tex. 1985) (emphasis added).

### B.  No-Evidence Summary Judgment Standard.

Plaintiff's Response to Baymark Defendants' First Amended Motion for Partial Summary Judgment and Brief in Support                    Page 21 of 54

**APP 068**

A no-evidence summary judgment is essentially a pretrial directed verdict. *See, e.g., Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 350 (Tex. App.—Houston [1st Dist.] 2001, no pet.). A no-evidence point must be reviewed in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). "A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Id.* (citation omitted).

A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact; less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983) (citation omitted). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms.*, 953 S.W.2d at 711.

### C.  Texas Uniform Fraudulent Transfer Act

The Baymark Defendants implore the Court to believe their *story*: "What actually happened in this case is that a secured creditor with a lien superior to Plaintiff's foreclosed on the assets of ACET Global, LLC, and then that secured creditor sold those assets to Windspeed." *See* Baymark Motion (App., p. 11). But that description overlooks some relatively important details. For example, what actually happened is this: "a secured creditor [Super G Capital] with a lien superior to Plaintiff's [because that lien was fraudulently obtained through misrepresentations] foreclosed on the assets of ACET Global, LLC [interestingly, approximately 4 months after Windspeed had already been advertising the assets], and then that secured creditor [Super G Capital] sold those assets to Windspeed [an entity that was formed by Super G Capital and Anthony Ludlow/Baymark Defendant months

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                        Page 22 of 54

**APP 069**

before the foreclosure sale, and in which Super G owned and controlled 40%, and that was also owned and controlled (i) 40% by Baymark Partners and (i) 20% by the former CEO of ACET Global, LLC who was compensated by Baymark]." Contrary to the Baymark Defendants' contention that "[a]s a matter of law, this cannot give rise to a 'fraudulent transfer' claim," in fact, as a matter of law, it can and does.

The "foreclosure sale" was not an arms-length transaction made in the ordinary course of business.[7] For example, the evidence demonstrates as follows:

- Baymark Partners Management, LLC owns a "warrant" with respect to a 40% interest in Windspeed—making it a business partner in Windspeed;

- Baymark Partners Management, LLC has the right to appoint a director to Windspeed's board of directors, and Anthony Ludlow is Baymark Partners Management, LLC's appointee to the board of Windspeed. Super G Capital also has the right to appoint, and has appointed, a board member for Windspeed. Additionally, Windspeed's company agreement that no member has control over any aspect of Windspeed. Indeed, the board of directors, by majority (which is controlled together between Baymark Partners Management, LLC and Super G Capital), can even force Szeto to sell his entire "interest" in Windspeed;

- William Szeto, the former CEO of ACET Global and current CEO of Windspeed, stated to a former employee of ACET Global that "he was going to 'start another business.'" According to that employee, "[Szeto] suggested he 'had friends,' and that if ACET Global went bankrupt, [Szeto] could continue the operations with a new company." Website screenshots demonstrate that Windspeed copied ACET Global's website and product descriptions, even down to the exact same typographical error made on ACET Global's website;

- William Szeto formed Windspeed on September 27, 2018—while he was still CEO of ACET Global. Szeto served as CEO for ACET Global and Windspeed **at the same time**;

- The Baymark Defendants were already transferring ACET Global's business to Windspeed prior to foreclosure and sale agreements signed on March 1, 2019, and internal documentation uncovered by D&T Partners (which was not provided in discovery by Windspeed) demonstrates that Windspeed was marketing and selling

---

[7] Given new information and information directly contradicting statements and representations made by Mr. Perrin, counsel for the Baymark Parties, D&T Partners intends to file a suit naming Super G Capital and potential other persons. Notably, Mr. Perrin's firm prepared the documents at issue **and even represented Windspeed** in the transactions.

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 23 of 54

**APP 070**

assets specifically listed in the foreclosure and sale agreement months before the "sale" actually occurred.

- The foreclosing lender, **Super G, is also a warrant holder of Windspeed** and holds the right to appoint a manager to Windspeed's board of directors, demonstrating that this was not an arms-length transaction. In other words, Windspeed purchased assets in a "foreclosure sale" from **a business partner**;

- Prior to the foreclosure, ACET Global owed Super G Capital $403,345.79, but Windspeed took a loan for $514,144.86 from Super G Capital to fund its "purchase" of ACET Global's assets—demonstrating that the Baymark Defendants, Windspeed, and Super G Capital essentially moved the loan over to Windspeed in order to avoid the note owed to D&T Partners, which also raises questions regarding the legitimacy of ACET Global being "bankrupt" (an inference supported by the dismissal of ACET Global's bankruptcy petition without discharge); and

- Matt Denegre, a manager at Baymark Partners, sent an email to ACET Global's CPA in August 2020 that the foreclosure of ACET Global occurred in **September 2018** (well before the actual foreclosure), which coincides precisely with the formation of Windspeed.

The purpose of the Texas Uniform Fraudulent Transfer Act ("TUFTA") is "to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach." *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016). And that is precisely why the Baymark Defendants and Windspeed were named as defendants in this matter—Windspeed played an important role in helping the other Defendants illegally transfer assets out of the reach of D&T Partners, a creditor of ACET Global. Specifically, Windspeed, an entity in which other named Defendants, and even Super G Capital, have an interest, served as the "target" for the asset transfer precisely because it was not a party to the agreements. This way, the Baymark Defendants could attempt to avoid their duties to D&T Partners under the agreements.

Under TUFTA, a transfer made with actual or constructive intent to defraud any creditor may be avoided to the extent necessary to satisfy the creditor's claims.

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 24 of 54

**APP 071**

(1)  with actual intent to hinder, delay, or defraud any creditor of the debtor;  or

(2)  without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

>   (A)  was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;  or
>
>   (B)  intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Tex. Bus. & Comm. Code § 24.005(a). Transfers made with the intent to hinder, delay, or defraud a creditor are not voidable "against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." Tex. Bus. & Comm. Code § 24.009(a). There is no definition of "good faith" provided under TUFTA, but a party takes for "reasonably equivalent value" "if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, **<u>noncollusive foreclosure sale</u>** or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust, or security agreement." Tex. Bus. & Comm. Code § 24.004(b) (emphasis added).

This was not an arms-length transaction made in the ordinary course of business. Indeed, the evidence indicates that this was a collusive foreclosure sale between Windspeed, Super G Capital, and the Baymark Defendants. Specifically, the evidence provided herein demonstrates that an inference must be made in favor of D&T Partners that, not only was the transfer made to hinder, delay, or defraud D&T Partners, but the Baymark Defendants—and Windspeed took—the assets as part of a **<u>collusive</u>** foreclosure sale, which is precisely the type of conduct that TUFTA prohibits.

For example, William Szeto, the **<u>former</u>** CEO of **<u>ACET Global</u>** and **<u>current</u>** CEO of **<u>Windspeed</u>** admitted that Baymark Partners Management, LLC is a business partner of Windspeed,

**Plaintiff's Response to Baymark Defendants' First Amended Motion for Partial Summary Judgment and Brief in Support**                    Page 25 of 54

**APP 072**

and he also admitted that Tony Ludlow exerts control over Windspeed as a member of the board

directors. Specifically, Szeto admitted as follows:

> Baymark Partners Management, LLC owns a warrant to purchase a 40% interest in
> Windspeed, which it has not exercised. Baymark Partners Management, LLC has a
> right to appoint a manager to Windspeed's board of managers. Anthony Ludlow is
> Baymark Partners Management, LLC's appointee to the board. However, I am the
> 100% owner in Windspeed and there are a total of three managers on Windspeed's
> board.

Windspeed Motion, Exhibit A, ¶ 4 (App., p. 16). Notably, after the execution of the APA, Defendants

Tony Ludlow and David Hook controlled Defendant Baymark ACET Direct Invest, LLC. In turn,

Baymark ACET Direct Invest, LLC controlled Baymark ACET Holdco, LLC and ACET Global. *See*

Petition, ¶ 14; Baymark Motion, Exhibit 2, ¶ 2 (App., p. 86). Thus, Tony Ludlow, who ultimately

controlled ACET Global alongside David Hook, is a **current manager** on Windspeed's three-person

board. While this alone raises a genuine issue of material fact as to whether this was a noncollusive

foreclosure sale—precluding summary judgment for the Baymark Defendants—the other evidence

discussed *infra* makes it even clearer; this was a sham foreclosure sale between related parties.

Szeto, who served as CEO of ACET Global after Mr. Damti's termination at the behest of

the Baymark Defendants, even admitted to a former employee and manager of ACET Global that the

Windspeed "foreclosure sale" is a sham. Specifically, Ms. Plaskett recalls the following interaction with

William Szeto in June of 2018 (only three months before the formation of Windspeed):

> In June 2018, [Szeto] called me into his office and mentioned that ACET Global had
> a high amount of debt and that **he was going to "start another business." He
> suggested he "had friends," and that if ACET Global went bankrupt, [Szeto]
> could continue the operations with a new company.**

Exhibit A, ¶ 10 (App., p. 57) (emphasis added). This creates a clear inference that the Baymark

Defendants and Windspeed acted in concert to evade the note owed to D&T Partners by fraudulently

transferring the assets out of ACET Global to Windspeed, and this raises a genuine issue of material

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 26 of 54

**APP 073**

fact as to whether Windspeed did indeed take the assets of ACET Global in good faith and for reasonably equivalent value.

Additionally, as stated above, William Szeto, or his representative, formed Windspeed September 27, 2018. *See* Windspeed Motion, Exhibit A-1 (App., p. 20). Szeto also admits that he is the "President & Chief Executive Officer" of Windspeed, and he "was involved in the formation of Windspeed and [is] the 100% owner in Windspeed." *See* Windspeed Motion, Exhibit A, ¶¶ 2, 3 (App., p. 16). Effectively, William Szeto was the CEO of both ACET Global and Windspeed when the transfer of ACET Global's assets occurred, which, again, raises a genuine issue of material fact as to whether this was indeed an arms-length, noncollusive transaction. It was neither.

The evidence also suggests that the **Baymark Defendants were already transferring ACET Global's business and assets to Windspeed prior to foreclosure and sale agreements signed on March 1, 2019**. Specifically, on January 10, 2019, **nearly two months before the "foreclosure sale,"** Szeto issued a memo on Windspeed letterhead in his capacity as President & CEO of Windspeed, requesting that "three accounts under ACET Global LLC" be closed effective immediately—suggesting that Szeto was already transferring assets of ACET Global to Windspeed prior to any "sale" cited by Windspeed. *See* Exhibit B-1 (App., p. 63). Additionally, Jane Lin, a former employee of ACET Global, executed an Authorize.Net Request for a New Account Owner on December 5, 2018. Using her **Windspeed email address**, Jane Lin listed herself as the "New Account Owner" for **an account held in ACET Global's name**. *See* Exhibit B-2 (App., p. 64). The agreements executed between Windspeed and Super G Capital did not occur until **March 1, 2019**, but a snapshot of Windspeed's website on **December 12, 2018** shows that Windspeed was **already marketing inventory items included in Super G Capital, LLC's Notice of Disposition and Sale of Collateral and the Bill of Sale executed between Super G Capital and Windspeed**. *See* Exhibit B-5 (App., p. 87); Exhibit B-3 (App., p. 66); Windspeed Motion, Exhibit A-3 (App., pp. 64-69). Such

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                          Page 27 of 54

**APP 074**

items include, but are not limited to, the "Iphone 6/6 Plus Sport Armband," "Mini Portable USB Rechargeable Battery Clip Fan," and "Bye Bye Clog." *Id.* To be clear, Windspeed copied ACET Global's website and product descriptions, **even down to an exact product description typographical error**. *Compare* Exhibits B-6 and B-7 (App., pp. 91–94). This is no coincidence.

Additionally, Super G Capital is a related party to either Tony Ludlow or David Hook based on the representations of Matt Denegre. On September 14, 2020, Matt Denegre emailed Tomer Damti a copy of his 2019 Schedule K-1 issued by Baymark ACET Holdco LLC. *See* Exhibit B-4 (App., p. 80). The K-1 reported a disturbing amount of cancellation of debt income, and Damti requested an explanation from Matt Denegre multiple times. *Id.* Matt Denegre provided the following responses:

> The company had loans from Super G and ACET Venture Partners (Seller Note) . . . . Because we have a recourse lender, i.e. **the lender is a related party to one of the partners** . . . **There is recourse because the lender is a related party to one of the partners** . . . .

*Id.* (emphasis added). Thus, based on Matt Denegre's responses, Super G Capital was a related party to either Tony Ludlow or David Hook. If Tony Ludlow is the "partner" that Matt Denegre spoke of, then Mr. Ludlow is a related party to all three entities involved in the transfer of ACET Global's assets—ACET Global, Super G Capital, and Windspeed. The Baymark Defendants do not dispute this point. Furthermore, Matt Denegre sent an email to ACET Global's CPA in August 2020, in which he stated that the foreclosure of ACET Global occurred in **September of 2018** (well before the actual foreclosure in March 2019), **which coincides perfectly with the formation of Windspeed in September of 2018**. *See* Exhibit C-1 (App., p. 106); Windspeed Motion, Exhibit A-1 (Windspeed Motion App., p. 20). This further confirms that the Windspeed "foreclosure sale" was a total sham.

In fact, other evidence further demonstrates that **Super G Capital even has an interest in, and exerts control over, Windspeed**. Windspeed's company agreement provides that Super G Capital holds warrants to purchase an interest in Windspeed, and Super G Capital elected a board member of Windspeed, and can replace the appointee to such board seat. *See* Windspeed Motion,

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                      Page 28 of 54

**APP 075**

Exhibit A-2 (App., pp. 35, 50, 57). Szeto, as the purported owner of Windspeed, has no control actual of Windspeed as a member/owner. Windspeed Motion, Exhibit A-2 § 3.2 (App., p. 34). Together, Super G Capital and Baymark Partners Management, LLC own warrants to purchase a total of 80% of the membership interests of Windspeed. *Id.* (App., pp. 23, 59). Furthermore, Super G Capital and Baymark Partners Management, LLC, via their appointees, have unilateral control of Szeto's ability to transfer his ownership of Windspeed, and they even force Szeto to sell all of his interest in "his" company without his consent. *Id.* at §§ 3.1, 9.1, 9.6 (App., pp. 34, 41, 49). Szeto has also given these board members a power of attorney to do essentially anything on his behalf, even amend the company agreement of Windspeed without his consent. *Id.* at § 11.3 (App., p. 54). This alarming evidence shows that Szeto and Windspeed are merely puppets of the Baymark Defendants and Super G Capital. Even further, Super G Capital foreclosed on a loan of $403,345.79 owed by ACET Global, only for Super G Capital to then provide a loan of $514,144.86 to Windspeed in order to fund its "purchase" of ACET Global's assets. Baymark Motion, Exhibit 1, ¶ 6 (App., p. 32); Windspeed Motion, p. 4. Moreover, ACET Global via Tony Ludlow represented on its federal bankruptcy petition that Super G Capital foreclosed on ACET Global's property worth $30,000. Exh. G (App., p. 141). The Baymark Defendants and Super G Capital essentially transferred the ACET Global loan to Windspeed, and they did so in order to avoid the loan obligation to D&T Partners. Again, this all raises clear inferences that this was a collusive foreclosure sale that was not an arms-length transaction made in the ordinary course of business.

The evidence also suggests that the transition from ACET Global to Windspeed was no mere transfer of assets, but was a full assumption of ACET Global's business under the name "Windspeed." As noted above, Windspeed had the same CEO as ACET Global, conducted the same business as ACET Global, involved Tony Ludlow (an ultimate owner of ACET Global), and took over the assets of ACET Global and marketed such assets before the "foreclosure." Even one of ACET Global's

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 29 of 54

**APP 076**

previous vendors noticed a striking similarity between Windspeed and ACET Global, and he informed Monica Plaskett of this: "Windspeed was selling the same products, using the same product descriptions, and using the same vendor and customer contacts as ACET Global when I worked there." *See* Exhibit A, ¶ 12 (App., p. 57).

There is clear evidence that creates an inference in favor of D&T Partners that Windspeed is related to the Baymark Defendants, and that the "foreclosure" was a sham not made in good faith and for reasonably equivalent value. Indeed, William Szeto essentially admitted this to Monica Plaskett, and the timing of each transaction—particularly when viewed under the lens of the relationships between Windspeed and the Baymark Defendants—demonstrates that there is a genuine issue of material fact with respect to the Baymark Defendants' arguments. Furthermore, there is sufficient evidence to sustain the TUFTA cause of action against the Baymark Defendants.

### D.  Breach of Contract

Although it claims here that there is no evidence of a contract (Baymark Motion, p. 12-13) to pay Plaintiff or the obligation at issue, ACET Global has already judicially admitted to the liability and failure to pay it. Exhibit G (App., p. 133). On October 23, 2019, Tony Ludlow, David Hook, and Baymark ACET Holdco executed and caused ACET Global to file a Voluntary Petition for Bankruptcy. *Id.* (containing multiple signatures and disclosures by Tony Ludlow, as President of ACET Global and Baymark ACET Holdco). Although the federal court ultimately *rejected* their attempt to fraudulently discharge their liability, ACET Global listed one secured creditor: ACET Venture Partners, LLC (the named Plaintiff here). *Id.*, Schedule D (App., p. 133). Schedule D of Federal Form 206D of the Federal Bankruptcy Petition executed by Tony Ludlow, David Hook, and Baymark ACET Holdco lists the following self-described "Seller note" and the "Amount of claim:" $3,200,000. *Id.* That amount, of course, precisely matches the amount of the Note.

**PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**                                      Page 30 of 54

**APP 077**

As such, ACET Global and the principals (Tony Ludlow and David Hook) of every Baymark
Defendant swore under penalty of perjury that there was in fact a binding note in the amount of
$3,200,000. Given that the Baymark Defendants listed the outstanding amount of the liability as the
original outstanding principal amount that came due on installment payments in October of 2018,
they also judicially admitted and swore under penalty of perjury that no payments had been made to
credit against the outstanding liability. *Id.* Their admission also establishes damages in favor of the
Plaintiff in the amount of at least $3,200,000.

Moreover, Tomer Damti, President of D&T Partners, LLC (successor in interest to ACET
Global, LLC) avers that ACET Global executed a promissory note with ACET Global in the amount
of $3,200,000. *See* Exhibit H, ¶ 10 (App., p. 154). Damti further avers that ACET Global did not make
a single payment that was required under the note. *Id.* As such, ACET Global breached the contract.

Moreover, the Baymark Defendants argue for dismissal because, they claim, "Plaintiff can
have no claim against Baymark ACET Holdco, LLC [because] Baymark ACET Holdco, LLC is not a
party to either the Note or the APA." Baymark Motion, p. 14. However, Baymark ACET Holdco was
specifically listed in the Note (Exhibit H-1 (App., pp. 156, 163); was specifically defined as "Holdco"
in the document; was contractually obligated not to engage in any "reorganization, transfer of assets,
consolidation, merger, scheme of arrangement, dissolution, . . . or any other voluntary action . . . [to]
avoid or seek to avoid the observance or performance of any of the terms of th[e] Note" (*Id.* (App.,
p. 156)); and its President signed the Note. For example, the note provided:

> NON-CIRCUMVENTION. The Maker hereby covenants and agrees that the Maker
> will not, by amendment of constitutional documents or through any reorganization,
> transfer of assets, consolidation, merger, scheme of arrangement, dissolution, issue or
> sale of securities, or any other voluntary action -- and shall ensure that none of the
> above actions is taken by Holdco [Baymark ACET Holdco, LLC] – avoid or seek to
> avoid the observance or performance of any of the terms of this Note, and will at all
> times in good faith carry out all of the provisions of this Note and take all action as
> may be reasonably requested by Holder from time to time to protect the rights of the
> Holder of this Note.

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                              Page 31 of 54

**APP 078**

*Id.* This provision placed a contractual duty upon both ACET Global and Baymark ACET Holdco to act "at all times in good faith" and to ensure that they did not undertake to effect any "transfer of assets," "scheme of arrangement," or "other voluntary action" that would avoid or seek to avoid the performance of the note, which was defined as including all of the transaction documents, including the associated security agreement. *Id.* (App., p. 156, 158). Nonetheless, Baymark ACET Holdco, through its principals Ludlow and Hook, effectuated a "transfer of assets" to an entity (Windspeed) that they owned and controlled (in conjunction with Super G Capital) through a fraudulent "scheme of arrangement" and then, in an effort to seal the fraud and carry out the effort to circumvent the Note, took a voluntary action—i.e., filed a frivolous *voluntary* bankruptcy petition (executed by Baymark ACET Holdco and Tony Ludlow) that was denied by the federal court.

Moreover, Baymark ACET Holdco was and is a party to the Security Agreement, which is also expressly made a part of the transaction documents (the Note documents). *See* Baymark Motion, Exhibit 2-C (App., p. 166). Indeed, Baymark ACET Holdco was and is the "Pledgor" under the Security Agreement, which was executed by Baymark ACET Holdco; David J. Hook; and Plaintiff. Among other things, that Security Agreement imposed the obligation upon Baymark ACET Holdco "not [to] exercise any voting or consensual rights or powers relating to any Collateral in a manner that materially impairs [Plaintiff's] rights with respect to the Collateral [all assets of ACET Global, LLC]." *Id.* (App., p. 168). The collateral under the Security Agreement included "all rights to receive dividends, distributions . . . proceeds, sums due or owing . . . repayments, return of capital . . . in the Membership Interest [*of ACET Global*]." *Id.* (App., p. 167). Thus, not only did Baymark ACET Holdco breach the contract by violating the contractually imposed duties not to take actions to "transfer the assets" of (or take other actions with respect to) ACET Global, but its exercise of powers related to the collateral in a manner that stripped that Collateral (i.e., the membership interests in ACET Global or its ability to pay amounts out) breached the Security Agreement.

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 32 of 54

**APP 079**

Baymark ACET Holdco appears to have underscored and admitted to the fact that it engaged in such improper actions when it executed and filed a Bankruptcy Petition (signed by Baymark ACET Holdco and Ludlow under penalty of perjury) informing the federal court and bankruptcy trustee that, contrary to what it and Windspeed have told this Court, it caused ACET Global to transfer only "$30,000" of property to Super G Capital. Exhibit G, Form 207, Pt. 2 (App., p. 141). Given that the Baymark Defendants and Windspeed have also informed this Court that Windspeed inherited more than $500,000 of assets through this scheme, Baymark Acet Holdco; Tony Ludlow; David Hook; and ACET Global have, in effect, judicially admitted that they caused the improper transfer of at least $470,000-plus in assets.

### E.  Fraud

The Baymark Defendants begin their arguments on the fraud causes of action by telling this Court that "the evidence in this case negates any suggestion that any promise was made with such an [fraudulent] intent not to perform because, *to the extent any 'promises' were actually made, they were kept*." Baymark Motion (App., p. 18) (italics added). Notably, they admit that promises were made. The "keeping"-them part is where they go wrong.  In a case involving a $3.2 million *promissory* note—that is, a note that memorializes a "promise" to pay $3.2 million—indeed, a promissory note that the Baymark parties themselves represented to a bankruptcy court existed, was owed, and was not paid, the Baymark parties somehow now tell this Court that Plaintiff's claim should be dismissed because the defendants kept all of their promises. The Court should reject that argument.

The Baymark Defendants fraudulently induced the underlying transactions by either making false representations or remaining silent with respect to important facts. Where they remained silent, the Baymark Defendants breached their duty to disclose facts to the Plaintiff.  Omissions constitute false representations when the circumstances impose a duty to speak. *Spoljaric v. Percival Tours, Inc.,* 708

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 33 of 54

APP 080

S.W.2d 432, 435 (Tex.1986); *1994 Land Fund II v. Ramur, Inc.*, No. 05-98-00074-CV, 2001 WL 92696, at *6 (Tex. App.—Dallas Feb. 5, 2001).

A duty to disclose may arise in numerous circumstances: (1) when there is a special or fiduciary relationship; (2) when one party voluntarily discloses partial information, but fails to disclose the whole truth; (3) when one party makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression. *Hoggett v. Brown,* 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).

**Fraudulent Inducement**

"Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations." *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998). And Texas law recognizes that "when one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud." *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d 41, 46 (Tex. 1998). Of course, the mere failure to perform, standing alone, is not itself evidence of fraud, but where there is evidence of an "intent to deceive and . . . no intention of performing as represented," Texas law recognizes an action for fraudulent inducement.

In fact, the failure to perform is itself a relevant circumstance where there is some other circumstance in addition to the failure. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986) ("Failure to perform, standing alone, is no evidence of the promisor's intent not to perform when the promise was made. However, that fact is a circumstance to be considered with other facts to establish intent."). The Texas Supreme Court has recognized that even the mere denial of having made a promise is a fact that that provides a basis from which to infer fraudulent intent when the alleged promise was made. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986) ("Courts have held

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 34 of 54

**APP 081**

a party's denial that he ever made a promise is a factor showing no intent to perform when he made the promise.  (citing *Stone v. Williams,* 358 S.W.2d 151, 155 (Tex. App.—Houston 1962, writ ref'd n.r.e.); *O'Boyle,* 462 S.W.2d at 272. (Denial of a promise coupled with failure to perform the promise is some evidence of fraudulent intent)  Likewise, no pretense of performance by the defendant has also been held to be a factor showing lack of intent. *Id.* (citing *Titterington,* 19 S.W. at 474)

Since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence.  *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986).  Indeed, even "'[s]light circumstantial evidence' of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent."  *Id.*  And, of course, "[w]hile a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made."  *Id.* at 34 (citing *Chicago, T. & M.C. Ry. Co. v. Titterington,* 84 Tex. 218, 223 (1892); *Smith v. Jungkind,* 252 S.W.2d 596, 599 (Tex. App.—Austin 1952, writ ref'd)). Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony. *Id.* (citing *Benoit v. Wilson*, 150 Tex. 273, 281 (1951)).

The Texas Supreme Court has applied this doctrine in the context of commercial transactions:

> Spoljaric, Balestrieri, and Upchurch tacitly agreed to parts of a bonus plan in December, 1979; but, no plan was implemented by October, 1980, the date Spoljaric left the agency. Eight months passed from the time Spoljaric gave Upchurch a draft of the bonus plan for his approval. Over this period, Spoljaric and Balestrieri made inquiries whether Upchurch was going to approve the proposed plan. Upchurch told them that his New York lawyers were reviewing it. This testimony conflicts with Lisle's testimony that Upchurch had approved an "amended" plan shortly after receiving Spoljaric's draft of a bonus plan. Upchurch had a duty to tell Spoljaric and Balestrieri that he had approved an amended plan. When the particular circumstances impose on a person a duty to speak and he deliberately remains silent, his silence is equivalent to a false representation. *Smith v. National Resort Communities, Inc.,* 585 S.W.2d 655, 658 (Tex.1979). These circumstances are consistent with Upchurch's lack of intent to keep his promise and no pretense of implementing a bonus plan.

*Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986).

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 35 of 54

**APP 082**

Here, the surrounding circumstances provide more than an inference of fraud—more than in inference that this was not a mere failure to perform the contract. To the contrary, here, there is evidence of a pre-meditated and orchestrated effort to transfer substantial assets out of ACET Global and to Windspeed—an entity "owned" and controlled by Baymark (40%); Super G Capital (40%); and William Szeto (20%). Szeto was the CEO of ACET Global at the time of Windspeed's formation in 2018. Tony Ludlow (on behalf of Baymark), Super G Capital, and Szeto executed a company agreement with respect to Windspeed in 2018—some four months before any purported "foreclosure" on ACET Global's assets and some six months before Windspeed (on behalf of Super G Capital and Baymark) purportedly acquired those assets in a purported "foreclosure sale." (As described and demonstrated below, the "foreclosure sale" documents that were submitted to the Court by Windspeed and the Baymark Defendants were not ever executed; instead, they clearly inserted fraudulent signature pages.). All of this is particularly significant because Windspeed—through Szeto—was marketing those assets six months before supposedly acquiring them; diverted ACET Global's bank accounts and payment accounts in 2018 and before any foreclosure; and expropriated an exact copy of ACET Global's website and utilized its customer and vendor lists in 2018 and before any foreclosure. Indeed, Szeto made an admission to an employee that he and his "friends" were planning to start a new company. They subsequently also filed a bankruptcy petition with notable false representations that provide still further corroboration and grounds for inferring fraudulent intent.

These facts, themselves, which are already evidenced in the record, provide substantial grounds for concluding that the false representations were made with intent to deceive. For example, Tony Ludlow (on behalf of at least, himself; ACET Global; and Baymark ACET Holdco) representations indicated that the Baymark parties had no affiliation or relationship with Super G Capital and that there was no intent to default and extract the value of ACET's assets for the benefit

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 36 of 54

**APP 083**

of an entity owned by and for the benefit of the Baymark Defendants. *See* Exhibit H (App., p. 152–155). That representation induced the entire transaction at issue. In addition, Tony Ludlow also represented the intent to maintain Damti as CEO and to provide him with authority. *Id.* (App., p. 152–155). Immediately after the transaction, Ludlow and the Baymark parties stripped Damti of his authority and subsequently terminated him in February 2018. *Id.* (App., p. 152–155). This, despite the fact that ACET Global, LLC's revenue level in January 2018 (the month before Damti's termination) was 253% of what it was in January of 2017. *Id.* (App., p. 154). The Baymark Defendants kept Mr. Damti on just long enough to create a façade; they intended to terminate him as soon as they had laid the ground work to execute their plan.

Plaintiff relied upon the Baymark Defendant's misrepresentations. Exh. H, ¶ 6 (App., pp 153). Under the circumstances, that was more than reasonable.  *Id.*

The Baymark Defendant's fraudulent acts resulted in significant damages to Plaintiff.  Exh. H, ¶¶ 13-15 (App., pp 154-5). For one thing, it caused the Plaintiff to part with assets worth $3.2 million in exchange for a worthless fraudulent promise.  *Id.*  As part of the transaction, Plaintiff received interests in ACET Global, LLC and Baymark ACET Holdco, LLC.  *Id.* As a result of the Baymark Defendants' fraudulent acts, those interests in each of those entities became worthless.  *Id.*

**Common Law Fraud**

For much the same reasons, the facts and circumstances also give rise to a clear inference of common-law fraud—indeed, the inference of common-law fraud is even more compelling.

It is hard to imagine a more material misrepresentation than the one here: an indication that Super G Capital, the entity that would be taking a senior lien, was not related or affiliated with the Baymark Defendants and that they did not have an intention to siphon off assets to a separate entity.

Clearly the representations were false and make with knowledge and intent.  Matt Denegre has admitted that the parties are related. *See* Exhibit C-1 (App., p. 106).  On September 14, 2020, Matt

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 37 of 54

**APP 084**

Denegre emailed Tomer Damti a copy of his 2019 Schedule K-1 issued by Baymark ACET Holdco LLC. *See* Exhibit B-4 (App., p. 80). The K-1 reported a disturbing amount of cancellation of debt income, and Damti requested an explanation from Matt Denegre multiple times. *Id.* Matt Denegre provided the following responses:

> The company had loans from Super G and ACET Venture Partners (Seller Note) . . . . Because we have a recourse lender, i.e. **the lender is a related party to one of the partners** . . . **There is recourse because the lender is a related party to one of the partners** . . . .

*Id.* (emphasis added).

The fact that the foreclosure sale was a sham provides a further basis to infer fraudulent intent and falsity.  Szeto, who served as CEO of ACET Global after Mr. Damti's termination at the behest of the Baymark Defendants admitted to a former employee and manager of ACET Global that the Windspeed "foreclosure sale" is a sham. Specifically, Ms. Plaskett recalls the following interaction with William Szeto in June of 2018 (only three months before the formation of Windspeed):

> In June 2018, [Szeto] called me into his office and mentioned that ACET Global had a high amount of debt and that **he was going to "start another business." He suggested he "had friends," and that if ACET Global went bankrupt, [Szeto] could continue the operations with a new company.**

Exhibit A, ¶ 10 (App., p. 55) (emphasis added). This creates a clear inference that the Baymark Defendants had a pre-conceived plan or scheme—a fact that implies falsity, knowledge, and intent.

Additionally, William Szeto and the Baymark Defendants formed Windspeed in 2018. *See* Windspeed Motion, Exhibit A-1 (App., p. 20). Szeto also admits that he is the "President & Chief Executive Officer" of Windspeed, and he "was involved in the formation of Windspeed." *See* Windspeed Motion, Exhibit A, ¶¶ 2, 3 (App., p. 16). Effectively, William Szeto was the CEO of both ACET Global and Windspeed when the transfer of ACET Global's assets occurred, which, again, raises a genuine issue of material fact as to whether this was indeed an arms-length, noncollusive transaction. It was neither.

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 38 of 54

**APP 085**

The evidence also demonstrates that the **Baymark Defendants were already transferring ACET Global's business and assets to Windspeed prior to the purported foreclosure and sale agreements that were purportedly signed on March 1, 2019**. Specifically, on January 10, 2019, **nearly two months before the "foreclosure,"** Szeto issued a memo on Windspeed letterhead in his capacity as President & CEO of Windspeed, requesting that "three accounts under ACET Global LLC" be closed effective immediately—suggesting that Szeto was already transferring assets of ACET Global to Windspeed prior to any "sale" cited by Windspeed. *See* Exhibit B-1 (App., p. 63). Additionally, Jane Lin, a former employee of ACET Global, executed an Authorize.Net Request for a New Account Owner on December 5, 2018. Using her **Windspeed email address**, Jane Lin listed herself as the "New Account Owner" for **an account held in ACET Global's name**. *See* Exhibit B-2 (App., p. 64). The agreements executed between Windspeed and Super G Capital did not occur until **March 1, 2019**, but a snapshot of Windspeed's website on **December 12, 2018** shows that Windspeed was **already marketing inventory items included in Super G Capital, LLC's Notice of Disposition and Sale of Collateral and the Bill of Sale executed between Super G Capital and Windspeed**. *See* Exhibit B-5 (App., p. 87); Exhibit B-3 (App., p. 66); Windspeed Motion, Exhibit A-3 (App., pp. 64-69). Such items include, but are not limited to, the "Iphone 6/6 Plus Sport Armband," "Mini Portable USB Rechargeable Battery Clip Fan," and "Bye Bye Clog." *Id.* To be clear, Windspeed copied ACET Global's website and product descriptions, **even down to an exact product description typographical error**. *Compare* Exhibits B-6 and B-7 (App., pp. 91-94). This is no coincidence.

Plaintiff relied upon the Baymark Defendant's misrepresentations. Exh. H, ¶ 6 (App., pp 153). Under the circumstances, that was more than reasonable. *Id.*

The Baymark Defendant's fraudulent acts resulted in significant damages to Plaintiff. Exh. H, ¶¶ 13-15 (App., pp 154-5). For one thing, it caused the Plaintiff to part with assets worth $3.2 million

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 39 of 54

**APP 086**

in exchange for a worthless fraudulent promise. *Id.* As part of the transaction, Plaintiff received interests in ACET Global, LLC and Baymark ACET Holdco, LLC. *Id.* As a result of the Baymark Defendants' fraudulent acts, those interests in each of those entities became worthless. *Id.*

### F. Breach of Fiduciary Duty

D&T Partners was a creditor of ACET Global. *See* Baymark Motion, Exhibit 2-B (App., p. 141); Exhibit G (App., p. 123). According to the sworn statement of Baymark ACET Holdco; Tony Ludlow; and ACET Global, D&T Partners (and its predecessor, ACET Venture Partners, LLC) was the single largest creditor of ACET Global—by a magnitude of perhaps 50. *See* Exhibit G (App., p. 123). The Baymark Defendants, here, repeatedly maintain that ACET Global was financially distressed, insolvent, and unable to satisfy its obligations. As a result of these admissions that ACET Global was in the zone of insolvency or had long since passed across it, ACET Global and its controlling officers, managers, and under the circumstances, members, had a fiduciary duty to protect the interests of creditors—here, the largest secured creditor: D&T Partners/ACET Venture Partners, LLC. *Tigrett v. Pointer*, 580 S.W.2d 375, 383 (Tex. App.—Dallas 1978), *writ refused NRE* (1979).

As the Fifth Court of Appeals has recognized, an insolvent entity in the type of distress that the Baymark Defendants and Windspeed claim owes its fiduciary duties to its creditors, rather than its members:

> Its assets then become a trust fund for the benefit of all its creditors; consequently, its stockholders have no right, directly or indirectly through the managing officers, to pay or secure some of the creditors at the expense of others. *Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co.*, 86 Tex. 143, 24 S.W. 16, 23 (1893). In this situation, all the directors become trustees with the duty to see that the assets are devoted to the payment of corporate debts, without preferring one creditor over another.

*Id.* This proposition is not a novel one. Indeed, the string of authorities upon which the Dallas Court of Appeals precedent rests traces back more than a century—and then some. As the Texas Supreme Court long ago recognized:

**PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**                                    Page 40 of 54

**APP 087**

> The assets of an insolvent corporation is [sic.] a fund subject to the claims of creditors, and upon which they have an equitable lien for the payment of their demands. The property is chargeable in the hands of the directors as trust, for the preservation of which they are bound to good faith and fair dealings in the management and disposition thereof. They are the agents and trustees of the corporation, and when they deal with its important interests they are charged with the utmost fairness, ***and will not be permitted to reap benefits to the injury of the corporation and its creditors***. ***The law will not permit the directors to participate in acts relative to the corporate property that will result in their personal and private advantage***, to the injury of the corporation, when their duty requires them to use all reasonable efforts to the accomplishment of results that will benefit the corporation, and the creditors and stockholders thereof. The law will not permit a director of an insolvent corporation to purchase all of its assets, or by his purchase of all the assets render the incorporation insolvent, at execution sale to which he is not a party, for a less consideration than the value of the property, without requiring him to account for the property or its value. When a director so purchases the property, and refuses to account for the same or its value, he is chargeable with the property or its value, with the profits or interest accruing therefrom, as a trust fund for the use and benefit of the corporation, its creditors and stockholders.

*Tobin Canning Co. v. Fraser*, 81 Tex. 407, 413 (Tex. 1891) (string citing numerous cases) (emphasis added). *See also Cardwell v. Gurley*, 2018 WL 3454800, at *4 (Tex. App.—Dallas 2018) (fiduciary duties owed with respect to LLC); *Prostok v. Browning*, 112 S.W.3d 876, 913–14 (Tex. App.—Dallas 2003), aff'd in part, rev'd in part, 165 S.W.3d 336 (Tex. 2005) ("if management of a debtor-in-possession breaches the fiduciary duties owed to creditors, those creditors can sue management for the damages caused by the breach.") But again, here the Baymark Defendants arranged a scheme in which they created a façade (or, on their account, truly) insolvent entity (ACET Global) under the control of its principals, Ludlow and Hook, and its manager Baymark ACET Holdco, which was under the control of *its* principals, Ludlow and Hook, and its manager—a chain that goes all the way up in similar fashion to Ludlow and Hook personally. The then-CEO (William Szeto) of that purportedly (or, on their account, truly) insolvent company (ACET Global) formed a new entity (Windspeed) with the assistance of, and that was paid for by, the Baymark Defendants and Super G Capital.

While he continued as the CEO of ACET Global and was being paid by Ludlow and Hook, Szeto also took on the role of CEO of Windspeed. Windspeed, notably was "owned" and controlled

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 41 of 54

**APP 088**

by Baymark (40%); Super G Capital (40%); and Szeto (20%). Windspeed began to steal ACET Global's intellectual property, expropriating its website (Exhibits B-5, B-6, and B-7 (App., pp. 87, 91, 93)), transferring its bank and payment accounts to its benefit (Exhibit B-1 (App., p. 63)), and holding its assets out for sale (Exhibits B-5, B-6, and B-7 (App., pp. 87, 91, 93))—all of this beginning in 2018. Then, months later in 2019, the parties orchestrated the would-be coup d'etat of their scheme, transferring all of ACET Global's assets to their newly-formed entity, Windspeed (in effect, transferring the assets away from the benefits of creditors and to themselves). Unfortunately for them, they left behind a trail of their efforts to siphon off ACET Global's assets many months before any purported foreclosure sale. Notably, Windspeed; ACET Global; and Baymark ACET Holdco were all represented by Perrin in the transactions. Indeed, Perrin was even a notice party for Windspeed in its Foreclosure Sale Agreement with Super G Capital. *See* Windspeed Motion, Exhibit A-4 (App., p. 84). And in a subsequent effort to continue to mislead and hide the prior fraud and breaches, Perrin, who knew all of the relationships among the parties, including the relationship between Super G Capital and Windspeed (a defendant and also its client), made the following representation to undersigned counsel:

> I trust you will agree that this documentation/information confirms what we discussed last week, namely that Super G is wholly independent from any of the Defendants named in Plaintiff's lawsuit.

Exhibit D (App., p. 110). None of the Baymark Defendants' counsel has ever attempted to correct the outright false and misleading statements that were in furtherance of, and were designed to hide and cover up, the prior violations. Those statements and that failure, however, are still further evidence of the fraud, the breach of fiduciary duty, and the conspiracy.

Several additional points warrant discussion. After the events above, the Baymark Defendants voluntarily placed ACET Global into bankruptcy and falsely informed the federal court and bankruptcy trustee that they had only transferred "$30,000" of assets to Super G Capital, all in an

Plaintiff's Response to Baymark Defendants' First Amended Motion for
Partial Summary Judgment and Brief in Support                                    Page 42 of 54

**APP 089**

effort to hide the frauds and violations. They also conspicuously failed to disclose their interest in those assets or Windspeed, or their transfer of those assets for the benefit of Super G Capital.

And to top it all off, the "foreclosure sale" documents that the Baymark Defendants and Windspeed have tendered to this Court were never even executed. The purported "foreclosure sale," in other words, never actually occurred. The Defendants have tendered a "Foreclosure Sale Agreement" to the Court (Windspeed Motion, Exhibit A-4, (App., p. 74)) purportedly transferring the assets at issue from Super G Capital to Windspeed Trading in exchange for a designated "purchase price" and note for $516,844.86. *Id.* Under that "Foreclosure Sale Agreement," all notices to Windspeed were required to be sent to Perrin on its behalf and to William Szeto. *Id.* (App., p. 84). But while what is *in* the document is notable, what is more remarkable is what is *not* in the document. The "signature pages" that the Baymark Defendants and Windspeed have tendered to this Court are not actually signature pages of the Foreclosure Sale Agreement; instead, they are denoted as signature pages of a wholly-separate document: the Asset Purchase Agreement. *Id.* (App., pp. 87-88). A screen shot of the "signature page" that they have submitted to this Court in furtherance of their argument that a "foreclosure sale" took place is below:

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 43 of 54

APP 090



The false signature pages are glaringly obvious, given the fact that the "Foreclosure Sale Agreement" pages that precede them are numbered consecutively up to "Page 13." *Id.* (App., p. 86). That numbering, however, ceases and does not exist on the purported "signature pages." The falsity is further underscored by the fact that the exhibits to the purported "Foreclosure Sale Agreement" contain documents with sequential page numberings in the lower left-hand corner that continue on to the signature pages—and the signature pages of those exhibits specifically reference the document

Plaintiff's Response to Baymark Defendants' First Amended Motion for
Partial Summary Judgment and Brief in Support                    Page 44 of 54

APP 091

to which they attach. For example, Exhibit B to the purported "Foreclosure Sale Agreement" is an "Assignment and Assumption Agreement," and the lower-left-hand corner references "ASSIGNMENT AND ASSUMPTION AGREEMENT – PAGE 1," "ASSIGNMENT AND ASSUMPTION AGREEMENT – PAGE 2," and the signature page references ASSIGNMENT AND ASSUMPTION AGREEMENT – PAGE 3." Windspeed Motion, Exhibit A-4 (App., p. 106). Likewise, Exhibit A of the purported "Foreclosure Sale Agreement" is a "Bill of Sale." *Id.* (App., p. 91). The bottom-left-hand corner references the following: "BILL OF SALE – PAGE 1," "BILL OF SALE – PAGE 2," and the signature page states: "SIGNATURE PAGE – BILL OF SALE." Notably, both of these supposedly executed documents were <u>unsigned</u>. These conspicuous internal inconsistencies—even with documents they have put forward to this Court—give the lie to their frauds.

Notably, throughout the transactions at issue, ACET Global; Baymark ACET Holdco; Ludlow; and Hook, were agents with respect to the Plaintiff. As has been referenced above, the Security Agreement and Note placed obligations upon them to safeguard both the value of ACET Global and its assets and placed them in a position of agency. As a result, fiduciary obligations arose out of agency law as well. They certainly were not entitled to breach a duty of loyalty by engaging in a self-dealing transaction that accrued to their benefit and resulted in harm to the ACET Global's largest secured creditor—the Plaintiff.

Likewise, ACET Global; Baymark ACET Holdco; Ludlow; Hook; and the remaining Baymark Defendants owed informal fiduciary duties to Plaintiff. They were placed in a position of trust and confidence with respect to the Plaintiff's interests. They exercised all control over ACET Global. They controlled its financial affairs. They controlled (and shutdown and diverted) its bank accounts and payment accounts. They exercised possession of its assets. They maintained the (undisclosed) relationships with key parties: Super G Capital and Windspeed. Indeed, they exercised ownership and

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 45 of 54

**APP 092**

control over Windspeed and orchestrated a transfer of assets among these key parties. As discussed elsewhere, they made representations upon which the Plaintiff relied. They were experienced and sophisticated deal makers. Plaintiff's principal, Tomer Damti, was not. Exhibit H, ¶ 4 (App., p. 152). As such, against the background presented in this case, they owed informal fiduciary duties to Plaintiff. They were obligated to place Plaintiff's interests above their own. And they were certainly not entitled to engaged in self-dealing by siphoning off ACET Global's assets to a newly- and discretely-formed entity run by ACET Global's CEO for their benefit and to the detriment of the Plaintiff.

### G.  Texas Securities Act

The Baymark Defendants cannot prevail on their Motion for Summary Judgment with respect to Plaintiff's claims under the Texas Securities Act. First, the Baymark Defendants contend that no evidence exists with respect to any "untrue statement of material fact or any omission to state a material fact, and . . . [there is] no evidence that [Plaintiff] no longer owns the security in question." Baymark Motion (App., p. 21). Additionally, the Baymark Defendants argue that "Plaintiff has no evidence of any underlying violation of that Act. Plaintiff also has no evidence either that any of the Baymark Defendants had any 'intent to deceive' or 'reckless disregard for the truth or the law' or that any of the Baymark Defendants 'materially aid[ed]' anyone who committed any underlying violations of the Act." Baymark Motion (App., p. 21). Otherwise, the Baymark Defendants argue that it is unclear which "'misrepresentations' or 'untrue statements' actually form the basis for its fraud-based claims[,]" and they focus on irrelevant facts, such as ACET Global paying Mr. Damti a salary. Baymark Motion (App., p. 22). But Plaintiff's allegations could not be clearer, the Baymark Defendants, with the intent to deceive, failed to disclose their true intentions to Plaintiff—to defraud Plaintiff by defaulting on the loan owed to Plaintiff (the main consideration for the transaction) through the use of a fraudulent "foreclosure sale" between related parties.

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 46 of 54

**APP 093**

With respect to untrue statements or omissions made by the Baymark Defendants, Plaintiff has provided a myriad of evidence that demonstrates that the Baymark Defendants failed to disclose their intent to defraud Plaintiff and failed to disclose, and continue to affirmatively misrepresent, the true nature of the relationship between Super G Capital, Windspeed, and the other Baymark Defendants. Indeed, the Baymark Defendants paint a misleading picture of the story in their Motion: "[w]hat actually happened in this case is that a secured creditor with a lien superior to Plaintiff's foreclosed on the assets of ACET Global, LLC, and then that secured creditor sold those assets to Windspeed." *See* Baymark Motion (App., p. 11). But the evidence demonstrates otherwise.

Indeed, the evidence demonstrates that the misstatements (or omissions) made regarding the relationship of the Baymark Defendants to Windspeed and Super G Capital were material to the transaction in question, as Plaintiff only accepted ownership of the membership interests at issue with the understanding that the loan transactions (and subrogation) were not fraudulent and that the Baymark Defendants would honor their obligations to repay Plaintiff's note. Exhibit H, ¶ 7 (App., pp. 158-9). And that evidence "**should be given the widest possible scope**" under the Texas Securities Act. *Tex. Capital Sec., Inc. v. Sandefer*, 58 S.W.3d 760, 775 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (emphasis added). Furthermore, under the applicable statute, "[a]n omission or misrepresentation is material 'if there is a substantial likelihood that a reasonable investor would consider it important in deciding to invest.'" *Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 480 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (quoting *Tex. Capital Sec., Inc. v. Sandefer*, 58 S.W.3d 760, 776 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)).

No reasonable investor would ever have entered into this series of transactions (including the sale of the membership interests at issue) had he or she known that the Baymark Defendants would orchestrate a scheme to default on their obligations to pay under the guise of a fraudulent transfer to Windspeed, an entity in which they had beneficial ownership. Specifically, the evidence demonstrates,

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                        Page 47 of 54

**APP 094**

and at least gives rise to an inference, that the Baymark Defendants always intended to divest ACET Global's assets in order to avoid the Baymark Defendants' financial obligations to Plaintiff (obligations that Plaintiff relied upon in entering into the original transaction, including the sale of the membership interests at issue). Indeed, the membership interests at issue were worthless after the "foreclosure sale" occurred. Specifically, based on William Szeto, Tony Ludlow, David Hook, and Marc Cole's involvement with the Baymark Defendants and Windspeed, as well as Windspeed's actions in assuming ACET Global's business operations prior to Super G Capital's "foreclosure sale," enough evidence exists to raise a genuine fact issue with respect to whether such conduct was a material misstatement or omission by the Baymark Defendants. *See generally* Exhibits A-C-1 (App., p. 106); Baymark Motion, Exhibit 2, ¶¶ 2-5 (App., p. 86-87); Windspeed Motion, Exhibit A, ¶¶ 2-4 (App., p. 16). For example, as set forth in the TUFTA section, the "foreclosure sale" was not an arms-length transaction made in the ordinary course of business, but was a premeditated act managed by the Baymark Defendants (a fact, that if disclosed to Plaintiff at the outset, would have prevented the entire transaction):

- Baymark Partners Management, LLC owns a "warrant" with respect to a 40% interest in Windspeed—making it a business partner in Windspeed. Windspeed Motion, Exhibit A, ¶ 4 (App., p. 16);

- Baymark Partners Management, LLC has the right to appoint a director to Windspeed's board of directors, and Anthony Ludlow is Baymark Partners Management, LLC's appointee to the board of Windspeed. Super G Capital also has the right to appoint, and has appointed, a board member for Windspeed. Additionally, Windspeed's company agreement that no member has control over any aspect of Windspeed. Indeed, the board of directors, by majority (which is controlled together between Baymark Partners Management, LLC and Super G Capital), can even force Szeto to sell his entire "interest" in Windspeed. Windspeed Motion, Exhibit A, ¶ 4 (App., p. 16);

- William Szeto, the former CEO of ACET Global and current CEO of Windspeed, stated to a former employee of ACET Global that "he was going to 'start another business.'" According to that employee, "[Szeto] suggested he 'had friends,' and that if ACET Global went bankrupt, [Szeto] could continue the operations with a new company." Website screenshots demonstrate that Windspeed copied ACET Global's

**PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**                                         Page 48 of 54

**APP 095**

website and product descriptions, even down to the exact same typographical error made on ACET Global's website. Exhibit A, ¶ 10 (App, p. 57);

- William Szeto formed Windspeed on September 27, 2018—while he was still CEO of ACET Global. Szeto served as CEO for ACET Global and Windspeed **at the same time**. Windspeed Motion, Exhibit A, ¶¶ 2-3 (App., p. 16).

- The Baymark Defendants were already transferring ACET Global's business to Windspeed prior to foreclosure and sale agreements signed on March 1, 2019, and internal documentation uncovered by D&T Partners (which was not provided in discovery by Windspeed) demonstrates that Windspeed was marketing and selling assets specifically listed in the foreclosure and sale agreement months before the "sale" actually occurred. Exhibits B-1, B-3, B-5 (App., pp. 63, 66, 87);

- The foreclosing lender, **Super G Capital, is also a warrant holder of Windspeed** and holds the right to appoint a manager to Windspeed's board of directors, demonstrating that this was not an arms-length transaction. In other words, Windspeed purchased assets in a "foreclosure sale" from **a business partner**. Windspeed Motion, Exhibit A-2 (App., p. 23, 34, 35, 41, 49, 50, 57, 59);

- Prior to the foreclosure, ACET Global owed Super G Capital $403,345.79, but Windspeed took a loan for $514,144.86 from Super G Capital to fund its "purchase" of ACET Global's assets—demonstrating that the Baymark Defendants, Windspeed, and Super G Capital essentially moved the loan over to Windspeed in order to avoid the note owed to D&T Partners, which also raises questions regarding the legitimacy of ACET Global being "bankrupt" (an inference supported by the dismissal of ACET Global's bankruptcy petition without discharge). Windspeed Motion (App., p. 4); and

- Matt Denegre, a manager at Baymark Partners, sent an email to ACET Global's CPA in August 2020 that the foreclosure of ACET Global occurred in **September 2018** (well before the actual foreclosure), which coincides precisely with the formation of Windspeed. Windspeed Motion, Exhibit A-1 (App., p. 20); Exhibit C-1 (App., p. 108).

And not only did the Baymark Defendants fail to advise Plaintiff of their intentions and these facts (facts that would scare even the most novice of investors and prevent investment), but counsel for the Baymark Defendants has **continued to affirmatively misrepresent** that Super G Capital (and Windspeed) is unrelated to the Baymark Defendants despite evidence to the contrary. *See* Exhibit D (App., p. 110) ("I trust you will agree that this documentation/information confirms what we discussed last week, namely that Super G is wholly independent from any of the Defendants named in Plaintiff's lawsuit.").

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 49 of 54

**APP 096**

Thus, it is clear that Windspeed and Super G Capital were not "unrelated" parties to the Baymark Defendants, and this misstatement and/or omission was material to the transactions at issue. Again, no reasonable investor would have accepted the membership interests at issue, as part of the entire transaction, had he or she known that these related parties would work together to void the Baymark Defendants' loan obligations while keeping the assets of ACET Global under a new entity, Windspeed. This matter is not one of an angry investor trying to rescind a bad deal, but is a clear scheme to defraud Plaintiff through the Baymark Defendants' actions and omissions. Additionally, the Baymark Defendants even failed to disclose that the company in which Plaintiff took a 59% membership interest, ACET Global, would have an outstanding liability, much less a liability of over $700,000. *See* Baymark Motion, Exhibit 2-C (App., p. 166). This only further demonstrates the lengths to which the Baymark Defendants were willing to go to avoid detection of this scheme.

And while it is true that Plaintiff still owns the securities in question, recission would require the Court to rescind **the entire transaction**. *See* Tex. Civ. Statutes Art. 581-33(D)(1) ("On rescission, a buyer shall recover (a) **the consideration he paid for the security** plus interest thereon . . . less (b) the amount of any income he received on the security.") Transfer of the membership interests at issue was only a small part of this large transaction, as the consideration paid for the security included accepting a loan in lieu of cash from the Baymark Defendants, subrogating the loan to Super G Capital, and giving up control and management of ACET Venture Partners' assets. To properly "rescind" the transactions under the Texas Securities Act, the Baymark Defendants would need to rescind the entire deal and provide the assets back to Plaintiff—an act they purportedly cannot carry out if they are indeed "unrelated" to Windspeed and Super G Capital.

Additionally, the same evidence cited above also establishes an inference that the Baymark Defendants intended to deceive Plaintiff. In Texas, a court may consider "**all the facts and circumstances in evidence**" to determine the existence of the requisite intent. *Manziel v. Williams*,

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 50 of 54

APP 097

262 S.W.2d 437, 438 (Tex. Civ. App.—Texarkana 1953, no writ) (emphasis added). This would include evidence of any acts that occurred **after** entering any contract regarding the sale of a security. Again, these facts demonstrate, or at least create an inference, that the Baymark Defendants intended to deceive Plaintiff, and they materially aided one another in committing underlying violations of the Texas Securities Act (as stated in previous sections, the Baymark Defendants are hardly distinguishable from one another). The Court's denial of Windspeed's Motion for Summary Judgment, on similar grounds, also demonstrates a fact issue regarding the intent of the Baymark Defendants and the existence of an underlying violation of the Texas Securities Act for the purpose of "aider" liability. The Baymark Defendants references to salary paid to Mr. Damti and other "capital infusions" are a red herring intended to distract from the actual fraudulent scheme that the Baymark Defendants planned from the outset.

### H. Civil Conspiracy

The Baymark Defendants should also not prevail on their Motion for Summary Judgment with respect to Plaintiff's civil conspiracy claim. The Baymark Defendants suggest that Plaintiff "has no evidence of the following required elements: a meeting of the minds on the object or course of action; one or more unlawful [sic] over acts; and damages." Baymark Motion (App., p. 23). Consequently, the Baymark Defendants concede that Plaintiff has evidence of the first two elements of conspiracy—(1) two or more persons, and (2) an object to be accomplished. Plaintiff can establish each of the remaining elements of civil conspiracy based on the evidence provided above, as well as the factfinder drawing inferences in favor of the Plaintiff.

The elements of civil conspiracy are (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result. *Anderton v. Cawley*, 378 S.W.3d 38, 60 (Tex. App.—Dallas 2012). A

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                                    Page 51 of 54

**APP 098**

reasonable person could conclude that each of the elements occurred based on the evidence offered above.

- **Two or more persons.** Multiple parties were involved in the transfer of ACET Global's assets, including, but not limited to: Windspeed, William Szeto, ACET Global, Tony Ludlow, David Hook, and Super G Capital. *See* Baymark Motion, Exhibit 2, ¶ 2 (App., p. 86); Windspeed Motion, Exhibit A, ¶¶ 2-7 (App., pp. 16-17); Exhibit B-3 (App., p. 12).

- **An object to be accomplished.** Here, the object to be accomplished was the Defendants' divestiture of ACET Global's assets in order to avoid the Defendants' financial obligations to Plaintiff. Based on William Szeto, Tony Ludlow, David Hook, and Marc Cole's involvement with the Baymark Defendants and Windspeed, as well as Windspeed's actions in assuming ACET Global's business operations prior to Super G Capital's "foreclosure sale," enough evidence exists to raise a genuine fact issue on this element. *See generally* Exhibits A-C-1 (App., p. 106); Baymark Motion, Exhibit 2, ¶¶ 2-5 (App., p. 86-87); Windspeed Motion, Exhibit A, ¶¶ 2-4 (App., p. 16).

- **A meeting of the minds on the object or course of action.** A reasonable person could conclude that a meeting of the minds occurred between Windspeed and the other Defendants. Specifically, in June 2018, William Szeto stated he would "start another business" and "continue the operations with a new company." *See* Exhibit A, ¶ 10 (App., p. 55). William Szeto, Tony Ludlow, David Hook, and Marc Cole's involvement in both the Baymark Defendants and Windspeed, and the fact that Super G Capital was a related party, further suggests a meeting of the minds occurred. *See* Exhibit B-4 (App., p. 80); Baymark Motion, Exhibit 2, ¶ 2 (App., p. 86); Windspeed Motion Exhibit A, ¶¶ 2-4 (App., p. 16).

Plaintiff's Response to Baymark Defendants' First Amended Motion for Partial Summary Judgment and Brief in Support                          Page 52 of 54

APP 099

- **One or more unlawful, overt acts.** Again, based on the evidence above, William Szeto did "start another business" in the form of Windspeed, and the Defendants noted above orchestrated the unlawful divestiture of ACET Global's assets. *See generally* Exhibits A-C-1 (App., pp. 106); Baymark Motion, Exhibits 1, 2 (App., pp. 31, 86); Windspeed Motion, Exhibit A (App., p. 16).

- **Damages as a proximate result.** The Defendants' actions, including the Baymark Defendants' actions, unlawfully divested ACET Global of its assets, leaving Plaintiff with a worthless ownership interest and no compensation pursuant to the Note and Security Agreement. *See* Baymark Motion, Exhibits 1, 2 (App., pp. 31, 86); Windspeed Motion, Exhibit A (App., p. 16); Petition, ¶¶ 25-26.

As a result, the Baymark Defendants' motion for partial summary judgment with respect to the claim for civil conspiracy should be denied.

## VI.   <u>PRAYER</u>

The Court should deny the Baymark Defendants' First Amended Motion for Partial Summary Judgment and Brief in Support. More than a scintilla of evidence exists to raise an issue of material fact. Moreover, Mr. Denegre's self-serving testimony regarding the causes of action at issue precludes summary judgment in the Baymark Defendants' favor.

WHEREFORE, D&T Partners requests that this Court deny the Baymark Defendants' First Amended Motion for Partial Summary Judgment and Brief in Support and award any further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: March 17, 2021                                 Respectfully submitted,

By: <u>/s/ Jason B. Freeman</u>
Jason B. Freeman
TX Bar No. 24069736

**PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**                                 Page 53 of 54

**APP 100**

Zach Montgomery
Ryan C. Dean
TX Bar No. 24109798
Matthew L. Roberts
Texas Bar No. 24098330

**FREEMAN LAW, PLLC**
7011 Main Street
Frisco, Texas 75034
Telephone: 214.984.3410
Fax: 214.984.3409
Jason@freemanlaw.com

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on this 17th day of March, 2021, a true and correct copy of the foregoing document was served via electronic filing upon all counsel of record.

By: /s/ Jason B. Freeman

PLAINTIFF'S RESPONSE TO BAYMARK DEFENDANTS' FIRST AMENDED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT                    Page 54 of 54

**APP 101**

FILED
3/19/2021 5:02 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Darling Tellez DEPUTY

Case 3:21-cv-01171-B   Document 84   Filed 01/26/22   Page 105 of 143   PageID 3569

CAUSE NO. DC-19-09828

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § | |
| ACET GLOBAL, LLC; | § | 116TH JUDICIAL DISTRICT |
| BAYMARK ACET HOLDCO, LLC; | § | |
| BAYMARK ACET DIRECT INVEST, LLC; | § | |
| BAYMARK MANAGEMENT, LLC; | § | |
| BAYMARK PARTNERS; | § | |
| DAVID HOOK; TONY LUDLOW; and | § | |
| WINDSPEED TRADING, LLC, | § § | |
| Defendants. | § | DALLAS COUNTY, TEXAS |

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR
FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      Plaintiff's Improper Attempt to Treat All of the Baymark Defendants as One  . . . . . . . . 2

II.     Plaintiff's Failure to Cite to Evidence to Support Its Claims . . . . . . . . . . . . . . . . . . . . . . . 3

III.    Plaintiff's Failure to Dispute Certain Legally Significant Facts . . . . . . . . . . . . . . . . . . . . . 4

IV.     Plaintiff's Failure to Point the Court to Evidence Supporting the Challenged Elements of its
        Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Plaintiff Does Not Provide *Any* Evidence of the Primary "Misrepresentation" It
                Claims Was Made Before the Consummation of the Transaction . . . . . . . . . . . . 6

        B.      Plaintiff Does Not Provide *Any* Evidence of a "Transfer" Cognizable Under TUFTA
                or any "Damages" Caused by Any "Transfer" . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        C.      Plaintiff Offers No Response to the Baymark Defendants' Argument as to Why the
                Transaction Documents Negate *Justifiable* Reliance as a Matter of Law. . . . . . . . 9

        D.      Other Arguments Raised in Plaintiff's Response Are Similarly Unavailing . . . . 10

                1.      Breach of fiduciary duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                2.      Texas Securities Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## INDEX OF AUTHORITIES

**Cases**

*Burke v. Insurance Auto Auctions Corp.*, 169 S.W.3d 771
(Tex. App.—Dallas 2005, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*EM Building Contractors Servs., LLC v. Byrd Building Servs., LLC*,
No. 05-19-00153-CV, 2020 WL 4592791
(Tex. App.—Dallas Aug. 11, 2020, no pet.) (mem. op.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Equity Industrial Ltd. Partnership IV v. Southern Worldwide Logistics, LLC*,
No. 14-14-00750-CV, 2016 WL 1267848
(Tex. App.— Houston [14th Dist.] Mar. 31, 2016, no pet.) (mem. op.). . . . . . . . . . . . . . . . . . . . 7

*Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*,
349 S.W.3d 258 (Tex. App. — Dallas 2011, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Givens v. Midland Mortgage Co.*, 393 S.W.3d 876 (Tex. App.—Dallas 2012, no pet.) . . . . . . . . 4

*Great Hans, LLC v. Liberty Bankers Life Ins. Co.*, No. 05-17-01144-CV,
2019 WL 1219110 (Tex. App.— Dallas Mar. 15, 2019, no pet.) (mem. op.) . . . . . . . . . . . . . . 10

*Heritage Gulf Coast Properties, Ltd. v. Sandalwood Apartments, Inc.*,
416 S.W.3d 642 (Tex. App.—Houston [14th Dist.] 2013, no pet.) . . . . . . . . . . . . . . . . . . . . . . . 10

*Selinger v. City of McKinney* No. 05-19-00545-CV, 2020 WL 3566722
(Tex. App.—Dallas July 1, 2020, no pet.) (mem. op.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Spates v. Office of Attorney General, Child Support Div.*, 485 S.W.3d 546
(Tex. App.—Houston [14th Dist.] 2016, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Wyrick v. Business Bank of Tex., N.A.*, 577 S.W.3d 336
(Tex. App.—Houston [14th Dist.], no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Yokogawa Corp. of Am. v. Skye Int'l Holdings, Inc.*, 159 S.W.3d 266
(Tex. App.—Dallas 2005, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Statutes**

TEX. REV. CIV. STAT. art. 581-33(A)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Defendants ACET Global, LLC; Baymark ACET Holdco, LLC; Baymark ACET Direct Invest, LLC; Baymark Management, LLC; Baymark Partners; David Hook ("Hook"), and Tony Ludlow ("Ludlow") (collectively, the "Baymark Defendants") file this Reply in Support of Their First Amended Motion for Partial Summary Judgment ("First Amended MSJ"), and in support thereof would respectfully show the Court as follows:

## SUMMARY OF ARGUMENT

Plaintiff responds to the First Amended MSJ with a fifty-three-page brief that is long on over-the-top indignation but extremely short on evidence that actually pertains to any of the claims at issue. Plaintiff makes numerous accusations and casts even the most innocuous of circumstances (like an incorrect footer on a document) as a vast conspiracy. The reason Plaintiff does this is simple. The legally significant facts and the law demonstrate that those of Plaintiff's claims challenged by the Baymark Defendants in their First Amended MSJ have no merit and should be dismissed as a matter of law. Therefore, Plaintiff can only attempt to distract the Court from what really matters by railing incessantly about what does not.[1] The Court should decline Plaintiff's invitation to travel down innumerable rabbit trails to nowhere and instead focus on the simple and straightforward reasons why Plaintiff has failed to meet its summary judgment burden. With that proper focus, it is clear that the Baymark Defendants' First Amended MSJ should be granted in all respects.

---

[1] Because much of what Plaintiff asserts (often without citation to any admissible evidence) in its Response to Baymark Defendants' First Amended Motion for Partial Summary Judgment and Brief in Support ("Plaintiff's Response") is not relevant to the issues raised in the First Amended MSJ, the Baymark Defendants will not attempt herein to address each and every accusation lodged by Plaintiff in its Response. Rather, the Baymark Defendants focus herein on the most obvious and fundamental reasons why Plaintiff's Response is inadequate to overcome the First Amended MSJ. The Baymark Defendants will be happy to address at the hearing any of Plaintiff's unsupported and irrelevant invective not specifically mentioned herein to the extent the Court has any questions regarding same.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT— Page 1**

## ARGUMENT AND AUTHORITIES

I.   **Plaintiff's Improper Attempt to Treat All of the Baymark Defendants as One**

Despite the express allegations in Plaintiff's Second Amended Petition (the "Petition"), Plaintiff is now claiming that it is asserting "each of its claims against each of the Baymark Defendants."[2] This means that Plaintiff has to provide *evidence* regarding *each* of its claims as to *each* of the Baymark Defendants.[3] Instead, what Plaintiff appears to be doing is claiming that if Hook or Ludlow did something, then that alone somehow constitutes an act by *any entity with which they have any association* and/or that if any entity with which these individuals have an association did something, then that somehow constitutes an act by them.[4] Plaintiff cites no authority whatsoever for such a remarkable proposition. In fact, Texas law is clear that "[a] limited liability company is a legal entity *separate from its members*."[5]

Plaintiff cannot simply rely on purported "evidence" as to one Baymark Defendant as being "evidence" as to all. Because each of the Baymark Defendants is considered to be legally separate from the others, to meet its summary judgment burden, Plaintiff must address each of the Baymark

---

[2]Plaintiff's Response at 1 n.1. In contrast, in the Petition, Plaintiff purported to identify which claims it was asserting against which specific Defendants. *See, e.g.*, Petition at 7 (describing the Count I claim for breach of contract as being against ACET Global, LLC and Baymark ACET Holdco, LLC).

[3]For example, for Plaintiff to have a breach of contract claim against Baymark Management, LLC, Plaintiff would have to identify a contract *between itself and Baymark Management, LLC*, a breach of that contract by Baymark Management, LLC, and damages resulting from that breach.

[4]*See* Plaintiff's Response at 1 n.1 ("Hook and Ludlow were the controlling officers in every Baymark entity at issue here.").

[5]*Selinger v. City of McKinney* No. 05-19-00545-CV, 2020 WL 3566722, at *11 (Tex. App.—Dallas July 1, 2020, no pet.) (mem. op.) (emphasis added); *see also Spates v. Office of Attorney General, Child Support Div.*, 485 S.W.3d 546, 550-51 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("A limited liability company is considered a separate legal entity from its members.").

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT— Page 2**

Defendants separately with respect to each of its claims. It has not even attempted to do so. For example, Plaintiff's Response makes no attempt whatsoever to connect *any* of its claims to Baymark Management, LLC. Plaintiff does not identify a contract between itself and Baymark Management, LLC. Plaintiff does not offer evidence that would suggest that Baymark Management, LLC could possibly owe any fiduciary duty to Plaintiff or that Baymark Management, LLC in any way "aided" in any other Defendant's breach of fiduciary duty. Plaintiff does not identify any "misrepresentation" by Baymark Management, LLC, nor does Plaintiff even attempt to explain how Baymark Management, LLC purportedly "transferred" any of ACET Global, LLC's assets. In short, Plaintiff's Response *completely ignores* Baymark Management, LLC. Plaintiff similarly fails to provide evidence connecting other Baymark Defendants to some or all of its claims.

Each of the Baymark Defendants moved for no-evidence summary judgment on each of Plaintiff's claims challenged in the First Amended MSJ. Plaintiff's failure to provide evidence that would raise a material issue of fact as to each of the challenged elements of its claims specifically with respect to any particular individual Baymark Defendant requires that the Court grant summary judgment in favor of that Baymark Defendant on that claim.[6]

## II.   Plaintiff's Failure to Cite to Evidence to Support Its Claims

Plaintiff makes numerous assertions in its Response, but Plaintiff often fails to cite to *any* evidence in support of such assertions.[7] For example, Plaintiff repeatedly alleges that William Szeto

---

[6]*See, e.g., Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 266 (Tex. App. — Dallas 2011, pet. denied).

[7]*See, e.g.*, Plaintiff's Response at 1-6, 11-12. Often, when Plaintiff does actually cite to "evidence" in its Response, that evidence is not actually admissible. The Baymark Defendants will address their numerous objections to Plaintiff's evidence in a separate filing specific to that purpose.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT— Page 3**

continued to be the CEO of ACET Global while at the same time acting as the CEO of Windspeed Trading, LLC.[8] However, Plaintiff cites no evidence whatsoever to support this allegation.[9] Moreover, even when Plaintiff does cite to something in its Response, Plaintiff often merely cites the *allegations* in its Petition.[10] Allegations are not evidence.[11]

Plaintiff's summary judgment burden was to bring forward evidence, not speculation and unsupported assertions.[12] The Court should, therefore, ignore any statement in Plaintiff's Response that does not attempt to cite to evidence to support such statement.

### III.    Plaintiff's Failure to Dispute Certain Legally Significant Facts

Notably, Plaintiff's Response does not dispute numerous legally significant facts that are supported by the evidence submitted by the Baymark Defendants with their First Amended MSJ. In particular, Plaintiff does not dispute the following:

- Plaintiff was represented by its own counsel, including three different attorneys, during the negotiations leading up to the consummation of the transaction.[13]

---

[8]*See, e.g.*, Plaintiff's Response at 2 ("In 2018, . . . Szeto began serving as the CEO of Windspeed (while he simultaneously maintained his position as CEO of ACET Global, LLC."); *id.* at 10 ("On January 10, 2019, William Szeto, the CEO of both ACET Global and Windspeed, issued a memo . . . .").

[9]Moreover, Plaintiff's Response fails to explain how this, or any of Plaintiff's many other unsupported allegations, could actually create a material fact issue that would in any way preclude summary judgment in favor of the Baymark Defendants.

[10]*See, e.g.*, Plaintiff's Response at 18-19 (citing repeatedly to various paragraphs in the Petition).

[11]*See, e.g.*, *Givens v. Midland Mortgage Co.*, 393 S.W.3d 876, 884 n.8 (Tex. App.—Dallas 2012, no pet.) ("Pleadings simply outline the issues; they are not evidence, even for summary judgment purposes.") (quoting *Hidalgo Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 543 (Tex. 1971)).

[12]*See, e.g.*, *EM Building Contractors Servs., LLC v. Byrd Building Servs., LLC*, No. 05-19-00153-CV, 2020 WL 4592791, at *19 (Tex. App.—Dallas Aug. 11, 2020, no pet.) (mem. op.) ("Conclusory assertions and speculation are insufficient to raise a genuine issue of material fact precluding summary judgment.") (quoting *Cox v. Galena Park Indep. Sch. Dist.*, 895 S.W.2d 745, 748 (Tex. App.—Corpus Christi-Edinburg 1994, no writ)).

[13]*See, e.g.*, Foote Decl. ¶ 2, App. at 259; Foote Decl. Exh. "A," App. at 263-267.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT— Page 4**

- During the negotiations, Plaintiff's counsel was aware that the Transaction contemplated third-party financing and that the lender providing such financing would "have a senior secured interest in the assets of the Buyer."[14]

- During the negotiations, Plaintiff's counsel was aware that ACET Global, LLC had *rejected* Plaintiff's request for the Employment Agreement to include language preventing Damti's termination (except for cause) for the first five years after the consummation of the Transaction.[15]

- During the negotiations, Plaintiff's counsel was aware that Plaintiff's request that the Buyer "cede control of management decisions" had been rejected.[16]

- Super G Capital, LLC ("Super G") loaned ACET Global, LLC a total of $750,000.00 on or about July 20, 2017 in connection with the closing of the Transaction.[17]

- By virtue of its loan to ACET Global, LLC, Super G was granted a security interest in all of ACET Global, LLC's assets.[18]

- Plaintiff expressly agreed that Super G's security interest would be superior to Plaintiff's.[19]

- ACET Global, LLC defaulted on its obligations to Super G, including by failing to make the payments required under the Super G loan.[20]

- Damti continues to own the membership interests in Baymark ACET Holdco, LLC.[21]

---

[14]Foote Decl. Exh. "B," App. at 269; *see also* Foote Decl. ¶ 8, Foote Decl. Exhs. "I," "I1," & "I2," App. at 261, 433, 434-460, 461-468.

[15]Foote Decl. Exhs. "D" & "D1" at 5, App. at 282-283, 288; Foote Decl. Exhs. "E" & "E1" at 5, App. at 293, 298.

[16]Foote Decl. Exh. "G," App. at 367.

[17]Cole Decl. ¶ 3, App. at 031; *see also* Cole Decl. Exh. "A," Loan Agreement, App. at 034-062; Cole Decl. Exh. "B," Subordination Agreement at 1 (describing the "Acquisition Transaction"), App. at 063.

[18]*See* Cole Decl. Exh. "A," Loan Agreement § 3 ("Security Interest in Collateral"), App. at 037-038; *see also id.* § 8 ("Remedies Upon Default"), App. at 047-048.

[19]*See* Cole Decl. Exh. "B," Acknowledgement at 1, App. at 070; *see also* Denegre Decl. Exh. "A," APA § 2.2(a)(ii) (referring to "a *subordinated* secured promissory note") (emphasis added), App. at 107.

[20]Cole Decl. ¶ 5, App. at 032.

[21]Denegre Decl. ¶ 10, App. at 088.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT— Page 5**

With this facts standing as undisputed, as set forth more fully below, Plaintiff has failed to demonstrate the existence of a material fact issue that would allow its various claims to survive summary judgment.

## IV.   Plaintiff's Failure to Point the Court to Evidence Supporting the Challenged Elements of its Claims

### A.   Plaintiff Does Not Provide *Any* Evidence of the Primary "Misrepresentation" It Claims Was Made Before the Consummation of the Transaction.

As is made clear in Plaintiff's Response, Plaintiff is now primarily basing its claims for "fraud" on the purported representation—made *before* the consummation of the Transaction—"that there was no relation or affiliation between the Baymark Defendants and Super G Capital."[22] Yet, Plaintiff offers no evidence at all that this representation, to the extent it was made, was not *true at the time.*[23] In other words, for the representation about which Plaintiff is now complaining to be false (as is necessary to support all of Plaintiff's fraud-based claims), there would have to have been some "relation or affiliation" in July of 2017, when the Transaction closed. Plaintiff has pointed to no evidence even to suggest that there was such a "relation or affiliation" back then. All Plaintiff points to as "evidence" is some supposed "relation or affiliation" that was *created over a year later* when Super G and *non-Defendant* Baymark Partners Management, LLC both became warrant holders in

---

[22]*See* Plaintiff's Exh. "H," Damti Decl. ¶ 6, Plaintiff's App. at 153; *see also* Plaintiff's Response at 37 ("It is hard to imagine a more material misrepresentation than the one here: an indication that Super G Capital, the entity that would be taking a senior lien, was not related or affiliated with the Baymark Defendants . . . .").

[23]For purposes of their First Amended MSJ only, the Baymark Defendants are not challenging whether such a representation was actually made.

Windspeed Trading, LLC.[24] It is axiomatic that none of the Baymark Defendants could have made a "misrepresentation" in 2017 about a "fact" that did not come into existence until 2018. Plaintiff cites no authority that would suggest otherwise.

It is Plaintiff's burden to produce evidence to support its claim that it was told something that was not true before it consummated the Transaction in July of 2017. To the extent that it is relying on a "misrepresentation" about a "relation or affiliation" between Super G and the Baymark Defendants *at that time*, it has completely failed to meet its burden. All claims that rely in any way on such purported "misrepresentation" fail as a matter of law.

**B.    Plaintiff Does Not Provide *Any* Evidence of a "Transfer" Cognizable Under TUFTA or any "Damages" Caused by Any "Transfer."**

In its Response, Plaintiff spends so much time trying to cast aspersions on the propriety of what Super G did with ACET Global, LLC's foreclosed assets that it misses the point entirely.[25] Plaintiff does not, and cannot, dispute that *Super G had a valid security interest in the assets of ACET Global, LLC*. As the Dallas Court of Appeals stated in *Yokogawa Corporation of America v. Skye International Holdings, Inc.*, "property encumbered by a valid lien *is not an asset under TUFTA*."[26] Thus, the ACET Global, LLC assets that Plaintiff complains were "transferred"

---

[24]Although Plaintiff likes to refer generally to "Baymark Partners" to refer to any number of separate entities, it must be noted that Baymark Partners Management, LLC is a separate legal entity that has *never* been a party in this case.

[25]*See, e.g.*, Plaintiff's Response at 43-45 (discussing an "inconsistent" footer that Plaintiff speculates means that the Foreclosure Sale Agreement between Super G and Windspeed Trading, LLC was "never even executed").

[26]159 S.W.3d 266, 269 (Tex. App.—Dallas 2005, no pet.) (emphasis added); *see also Equity Industrial Ltd. Partnership IV v. Southern Worldwide Logistics, LLC*, No. 14-14-00750-CV, 2016 WL 1267848, at *4 (Tex. App.—Houston [14th Dist.] Mar. 31, 2016, no pet.) (mem. op.) ("[T]he summary-judgment evidence must raise a genuine fact issue as to the existence of one or more transfers of Southern Logistics's property that *was unencumbered by a valid lien* . . . .") (emphasis added).

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR
FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT— Page 7**

were not "assets" as far as TUFTA is concerned. Plaintiff has identified no "transferred" assets that were not encumbered by Super G's lien, nor has Plaintiff provided any evidence that the value of the "transferred" assets in any way exceeded the amount of the debt owed by ACET Global, LLC to Super G.[27]

This failure by Plaintiff also demonstrates that Plaintiff has no evidence of any damages caused by any purported "breach of fiduciary duty" by any of the Baymark Defendants. Although in its Petition, Plaintiff complained of a "breach of fiduciary duty" by virtue of supposed payments by ACET Global, LLC to Baymark Management, LLC, Plaintiff has abandoned that complaint in its Response.[28] Instead, Plaintiff reiterates its claims that ACET Global, LLC's assets were improperly "transferred" to Windspeed Trading, LLC.[29] The *only* way that Plaintiff could have been "damaged" by any such "transfer" was if the value of the assets "transferred" exceeded the amount of the debt owed to Super G. Plaintiff has presented no evidence that such was the case.[30]

Similarly, as to any "breach of contract," other than ACET Global, LLC's failure to pay on the Note, Plaintiff can point to no damage that it has sustained *that was caused by* such "breach."

---

[27]Plaintiff offers no evidence as to the value of any "transferred" assets.

[28]*Compare* Petition ¶ 40 ("Baymark ACET Holdco caused ACET Global to remit revenues and/or accrued payments to the ultimate benefit of Baymark Management, LLC in the form of Management Fees. . . . These payments constituted improper self-dealing transactions.") *with* Plaintiff's Response at 40-46 (discussing the "transfer" of ACET Global, LLC's assets to Windspeed).

[29]Plaintiff's Response at 40-46.

[30]Plaintiff has also presented no evidence of any "benefit" to any of the Baymark Defendants as a result of the "transfer" of ACET Global, LLC's assets. At most, Plaintiff points to evidence that non-Defendant Baymark Partners Management, LLC has received a warrant to purchase an interest in Windspeed Trading, LLC, which *has not been exercised*.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT— Page 8**

Super G had every right to foreclose on ACET Global, LLC's assets.[31] That foreclosure, and not any "breach of contract," caused ACET Global, LLC to be without assets. Plaintiff has offered no other explanation, much less *any* admissible evidence, as to how it was "damaged" by any other "breach of contract."

### C.    Plaintiff Offers No Response to the Baymark Defendants' Argument as to Why the Transaction Documents Negate *Justifiable* Reliance as a Matter of Law.

As noted in the First Amended MSJ, under Texas law, Plaintiff's "reliance" on any "misrepresentation" must have been justifiable.[32] Further, "a party to a written contract *cannot justifiably rely* on oral misrepresentations regarding the contract's unambiguous terms."[33] In their First Amended MSJ, the Baymark Defendants point out how terms in the Transaction documents directly contradict certain "misrepresentations" identified by Plaintiff.[34] Plaintiff's Response does not directly address this argument at all. Instead, Plaintiff's Response offers only the conclusory statements that "Plaintiff relied upon the Baymark Defendant's misrepresentations" and "[u]nder the circumstances, that was more than reasonable."[35]

Plaintiff also offers no evidence to contradict the Baymark Defendants' evidence as to what *Plaintiff's counsel knew* prior to the consummation of the Transaction. "[K]nowledge acquired by

---

[31]As set forth in the First Amended MSJ, such foreclosure could not have been a "Fundamental Transaction."

[32]*See, e.g.*, *Wyrick v. Business Bank of Tex., N.A.*, 577 S.W.3d 336, 347 (Tex. App.—Houston [14th Dist.], no pet.).

[33]*Id.* at 348 (emphasis added).

[34]*See* First Amended MSJ at 19-21 (discussing the two purported "misrepresentations" previously identified by Plaintiff: (1) that ACET Global, LLC "would maintain Tomer Damti as CEO of ACET Global" and (2) that one or more of the Baymark Defendants would "invest additional amounts into the underlying business associated with the assets").

[35]Plaintiff's Response at 37.

or notice to an attorney during the existence of the attorney-client relationship, and while the attorney is acting within the scope of his authority, is imputed to the client."[36] Plaintiff cannot simply turn a blind eye to what it knew, both by virtue of the Transaction documents themselves and by virtue of the knowledge of its counsel at the time, and claim to have "justifiably" relied on "misrepresentations" directly counter to such knowledge. Plaintiff's fraud claims fail on this basis as well.

### D.   Other Arguments Raised in Plaintiff's Response Are Similarly Unavailing.

*1.   Breach of fiduciary duty.*—In its Response, Plaintiff argues that the Baymark Defendants owed "informal fiduciary duties to Plaintiff."[37] Plaintiff cites no authority for the creation of such "informal" fiduciary duties. In fact, "an informal fiduciary relationship will not be created lightly."[38]   Moreover, it is not proper to find an informal fiduciary relationship in a business transaction unless there is evidence that "a relationship of trust and confidence existed before, and apart from, the transaction."[39] Plaintiff has presented no such evidence in this case, so Plaintiff's

---

[36]*Burke v. Insurance Auto Auctions Corp.*, 169 S.W.3d 771, 777-78 (Tex. App.—Dallas 2005, pet. denied); *see also Great Hans, LLC v. Liberty Bankers Life Ins. Co.*, No. 05-17-01144-CV, 2019 WL 1219110, at *8 (Tex. App.—Dallas Mar. 15, 2019, no pet.) (mem. op.) (recognizing that while Great Hans may have been unaware that LBLIC did not hold legal title to the property at the time *[sic]* PSA was executed, it was aware (through its attorney) of that fact only days later and certainly weeks before it executed amendments to the PSA" and that "these same facts establish as a matter of law a lack of reliance on the representation by Great Hans").

[37]Plaintiff's Response at 45.

[38]*Heritage Gulf Coast Properties, Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 650 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("[M]ere subjective trust does not . . . transform arm's-length dealing into a fiduciary relationship.") (alterations in original) (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997)).

[39]*Heritage Gulf Coast Properties*, 416 S.W.3d at 651.

claim that any of the Baymark Defendants owed him any "informal" fiduciary duties must fail as a matter of law.

2.    *Texas Securities Act.*—As set forth above, Plaintiff has utterly failed to present evidence of any untrue statement of material fact or any omission to state a material fact. Even if Plaintiff could provide such evidence, however, Plaintiff would still not be entitled to any damages for any purported violation of the Texas Securities Act. Plaintiff does not dispute that Damti continues to own the membership interest in Baymark ACET Holdco, LLC. By the express terms of the Texas Securities Act, a buyer can only recover damages for a violation of Section 33(A)(2) "if the buyer no longer owns the security."[40]

Plaintiff complains that "[t]ransfer of the membership interests at issue was only a small part of this large transaction," but Plaintiff cites no authority that such fact could in any way negate the statutory limitation.[41] Accordingly, as a matter of law, Plaintiff cannot recover any damages under the Texas Securities Act.

## PRAYER

For all the reasons set forth above, as well as the reasons set forth in the First Amended MSJ, the Baymark Defendants are entitled to partial summary judgment on Plaintiff's claims on both no-evidence and traditional summary judgment grounds. Accordingly, the Baymark Defendants pray that the Court grant their First Amended Motion for Partial Summary Judgment and dismiss those of Plaintiff's claims that are addressed herein as a matter of law.

---

[40]TEX. REV. CIV. STAT. art. 581-33(A)(2).

[41]*See* Plaintiff's Response at 50.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT— Page 11**

Respectfully submitted,


*/s/ Edward P. Perrin, Jr.*
Edward P. Perrin, Jr.
State Bar No. 15796700
Jennifer R. Poe
State Bar No. 00794470
HALLETT & PERRIN, PC
1445 Ross Ave., Suite 2400
Dallas, TX 75202
Telephone: (214) 953-0053
Facsimile: (214) 922-4142
eperrin@hallettperrin.com
jpoe@hallettperrin.com

**ATTORNEYS FOR DEFENDANTS
ACET GLOBAL, LLC, BAYMARK
ACET HOLDCO, LLC, BAYMARK
ACET DIRECT INVEST, LLC,
BAYMARK MANAGEMENT, LLC,
BAYMARK PARTNERS, DAVID HOOK,
AND TONY LUDLOW**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing instrument was served as indicated below on the 19th day of March 2021:

| | | |
|---|---|---|
| Jason B. Freeman | [ ] | U.S. Mail |
| Ryan C. Dean | [ ] | Hand Delivery |
| Matthew L. Roberts | [ ] | Overnight Delivery |
| F. Edward Corts, Jr. | [ ] | Certified |
| FREEMAN LAW, PLLC | [ ] | Fax |
| 2595 Dallas Parkway, Suite 420 | [x] | Electronic Delivery via E-Filing |
| Frisco, Texas 75034 | | |
| Jason@freemanlaw-pllc.com | | |
| Rdean@freemanlaw.com | | |
| Mroberts@freemanlaw.com | | |
| Ecorts@freemanlaw-pllc.com | | |

| | | |
|---|---|---|
| Timothy Woods | [ ] | U.S. Mail |
| Brenda A. Hardin-Wilson | [ ] | Hand Delivery |
| HIGIER ALLEN & LAUTIN, P.C. | [ ] | Overnight Delivery |
| 2711 N. Haskell Ave., Suite 2400 | [ ] | Certified |
| Dallas, Texas 75204 | [ ] | Fax |
| twoods@higierallen.com | [x] | Electronic Delivery via E-Filing |
| bhard-wilson@higierallen.com | | |

/s/ Edward P. Perrin, Jr.
Edward P. Perrin, Jr.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT— Page 13**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Veronica Jamaica on behalf of Edward Perrin
Bar No. 15796700
vjamaica@hallettperrin.com
Envelope ID: 51658936
Status as of 3/22/2021 8:50 AM CST

Associated Case Party: D&T PARTNERS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jason Freeman | | jason@freemanlaw-pllc.com | 3/19/2021 5:02:34 PM | SENT |
| Edward Corts | | ECorts@freemanlaw-pllc.com | 3/19/2021 5:02:34 PM | SENT |
| Ryan Dean | | RDean@freemanlaw.com | 3/19/2021 5:02:34 PM | SENT |
| Matthew L. Roberts | | MRoberts@freemanlaw.com | 3/19/2021 5:02:34 PM | SENT |

Associated Case Party: ACET GLOBAL, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Veronica Jamaica | | vjamaica@hallettperrin.com | 3/19/2021 5:02:34 PM | SENT |
| Edward P.Perrin | | eperrin@hallettperrin.com | 3/19/2021 5:02:34 PM | SENT |
| Jennifer R.Poe | | jpoe@hallettperrin.com | 3/19/2021 5:02:34 PM | SENT |
| Michelle Shriro | | mshriro@singerlevick.com | 3/19/2021 5:02:34 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jason Freeman | 24069736 | jason@freemanlaw-pllc.com | 3/19/2021 5:02:34 PM | SENT |
| Zachary Montgomery | | zmontgomery@freemanlaw.com | 3/19/2021 5:02:34 PM | SENT |

Associated Case Party: WINDSPEED TRADING, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Timothy Woods | | twoods@higierallen.com | 3/19/2021 5:02:34 PM | SENT |
| Brenda AHard-Wilson | | bhard-wilson@higierallen.com | 3/19/2021 5:02:34 PM | SENT |

CAUSE NO. DC-19-09828

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | 116th JUDICIAL DISTRICT |
| ACET CLOBAL, LLC; BAYMARK ACET | § | |
| HOLDCO, LLC; BAYMARK ACET | § | |
| DIRECT INVEST, LLC; BAYMARK | § | |
| MANAGEMENT, LLC; BAYMARK | § | |
| PARTNERS; DAVID HOOK; TONY | § | |
| LUDLOW; and WINDSPEED TRADING, | § | DALLAS COUNTY, TEXAS |
| LLC, | | |

*Defendants.*

✓ Partially

**ORDER GRANTING DEFENDANTS' FIRST AMENDED
MOTION FOR PARTIAL SUMMARY JUDGMENT**

On this day came on to be considered the Baymark Defendants' First Amended Motion

for Partial Summary Judgment ("Motion"). The Court, having considered the Motion, Plaintiff's

Response, the Baymark Defendants' Reply in support of the Motion, any evidence properly

before the Court, and the arguments of counsel at the hearing, is of the opinion that the Motion is

well founded and should be GRANTED as follows:

~~The Motion is GRANTED with respect to all claims asserted by Plaintiff against~~

~~Defendant BAYMARK ACET DIRECT INVEST, LLC;~~

~~The Motion is GRANTED with respect to all claims asserted by Plaintiff against~~

~~Defendant BAYMARK ACET HOLDCO, LLC;~~

The Motion is GRANTED with respect to all claims asserted by Plaintiff against

Defendant BAYMARK MANAGEMENT, LLC;

✓ Partially

The Motion is GRANTED ~~with respect to all claims asserted by Plaintiff against~~

Defendant BAYMARK PARTNERS;

The Motion is GRANTED with respect to all claims asserted by Plaintiff against

Defendant DAVID HOOK;

The Motion is GRANTED with respect to all claims asserted by Plaintiff against

Defendant TONY LUDLOW;

The Motion is GRANTED with respect to those claims asserted by Plaintiff against

Defendant ACET GLOBAL, LLC that are addressed in the Motion.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Baymark

Defendants' First Amended Motion for Partial Summary Judgment is GRANTED ~~in all respects.~~
*to the extent stated above and otherwise Denied.*

SIGNED this __8th__ day of __April__, 2021.

_____
JUDGE PRESIDING

*‡ Partially*

ORDER GRANTING BAYMARK DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 2

**APP 120**



# Delaware

Page 1

The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "BAYMARK PARTNERS, L.P." AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF LIMITED PARTNERSHIP, FILED THE TWENTY-THIRD DAY OF JULY, A.D. 2008, AT 4:10 O`CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID LIMITED PARTNERSHIP, "BAYMARK PARTNERS, L.P.".

**EXHIBIT**

**B**



Jeffrey W. Bullock, Secretary of State

4578842   8100H
SR# 20220043810

Authentication: 202328774
Date: 01-06-22

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 04:53 PM 07/23/2008
FILED 04:10 PM 07/23/2008
SRV 080811584 - 4578842 FILE

## CERTIFICATE OF LIMITED PARTNERSHIP

### OF

### BAYMARK PARTNERS, L.P.

This Certificate of Limited Partnership of Baymark Partners, L.P. is being duly executed and filed by Baymark Management, LLC, as sole general partner, to form a limited partnership under the Delaware Revised Uniform Limited Partnership Act.

1.  **Name.**  The name of the Limited Partnership is Baymark Partners, L.P. (the "Limited Partnership").

2.  **Registered Office and Agent.**  The address of the registered office of the Limited Partnership in the State of Delaware is the Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, State of Delaware 19801, and the name of its registered agent at such address is The Corporation Trust Company.

3.  **General Partner.**  The name, the mailing address, and the street address of the sole general partner of the Limited Partnership is as follows:

<u>NAME</u>

<u>MAILING AND STREET ADDRESS</u>

Baymark Managment, LLC

Two Galleria Tower
13455 Noel Road #1670
Dallas, Texas 75240

*[Signature page follows.]*

DAL:0101961/00001:1787839v1

APP 122

**IN WITNESS WHEREOF**, the undersigned, constituting the sole general partner of the Limited Partnership, has caused this Certificate of Limited Partnership to be duly executed as of the 23rd day of July 2008.

GENERAL PARTNER

Baymark Management, LLC,
a Delaware limited liability company

By: _____

Name:  David Hook
Title:  Manager

DAL:0101961/00001:1787839v1



# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THAT THE CERTIFICATE OF LIMITED PARTNERSHIP OF "BAYMARK PARTNERS, L.P.", WAS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-THIRD DAY OF JULY, A.D. 2008.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID LIMITED PARTNERSHIP IS NO LONGER IN EXISTENCE AND GOOD STANDING UNDER THE LAWS OF THE STATE OF DELAWARE HAVING BECOME CANCELED THE FIRST DAY OF JUNE, A.D. 2012, BY REASON OF ITS NEGLECT, REFUSAL, OR FAILURE TO PAY ITS ANNUAL TAXES.



Jeffrey W. Bullock, Secretary of State

4578842  8420
SR# 20212324627

Authentication: 203342872

Date: 06-02-21

You may verify this certificate online at corp.delaware.gov/authver.shtml

APP 124

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



John B. Scott
Secretary of State

# Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

Baymark Partners, L.P.
Filing Number: 801024105

| | |
|---|---|
| Application for Registration | September 02, 2008 |
| Change of Name or Address by Registered Agent | April 19, 2010 |
| Tax Forfeiture | August 13, 2010 |

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on January 06, 2022.



John B. Scott
Secretary of State



EXHIBIT
C

*Come visit us on the internet at https://www.sos.texas.gov/*

Phone: (512) 463-5555
Prepared by: SOS-WEB

Fax: (512) 463-5709
TID: 10266

**APP 125**

Dial: 7-1-1 for Relay Services
Document: 1108799530003

**APPLICATION FOR REGISTRATION**
**OF**
**FOREIGN LIMITED PARTNERSHIP**
**BAYMARK PARTNERS, L.P.**

**FILED**
In the Office of the
Secretary of State of Texas

SEP 0 2 2008

**Corporations Section**

Pursuant to Section 9.001 of the Texas Business Organizations Code, the undersigned entity hereby submits this application for registration of a foreign entity to transact business in Texas:

**ARTICLE I: ENTITY NAME AND TYPE**

The entity is a foreign limited partnership. The name of the entity is Baymark Partners, L.P. The name of the foreign limited partnership is not available in Texas. The assumed name under which the foreign limited partnership will qualify and transact business in Texas is "ABaymark Partners, L.P."

**ARTICLE II: FEDERAL EMPLOYER IDENTIFICATION NUMBER**

The entity's federal tax identification number is 26-3034090.

**ARTICLE III: JURISDICTIONAL INFORMATION**

The entity was formed under the laws of Delaware, and the date of its formation in that jurisdiction is July 23, 2008.

**ARTICLE IV: CERTIFICATION OF EXISTENCE**

As of the date of filing, the undersigned certifies that the foreign entity currently exists as a valid limited partnership under the laws of the jurisdiction of its formation.

**ARTICLE V: PURPOSE**

The business and activities the entity proposes to pursue in Texas are any and all lawful business and activities which limited partnerships may pursue under the laws of the State of Texas; provided, that it shall not pursue any business or activities that it is not authorized to pursue under the laws of its jurisdiction of formation. The entity is authorized to pursue such business and activities under the laws of the entity's jurisdiction of formation.

**ARTICLE VI: COMMENCEMENT OF BUSINESS**

The date on which the entity began transacting business in Texas is August 29, 2008.

DAL:0101961/00001:1793239v1

**APP 126**

## ARTICLE VII: PRINCIPAL OFFICE

The address of the entity's principal office is 13455 Noel Road, Suite 1670, Dallas, TX 75240.

## ARTICLE VIII: REGISTERED AGENT AND OFFICE

The address of the entity's registered office in Texas is 350 N. St. Paul, Suite 2900, Dallas, TX 75201, and the name of its registered agent in Texas at such address is C T Corporation System.

## ARTICLE IX: APPOINTMENT OF SECRETARY OF STATE

The entity hereby appoints the Secretary of State of Texas as its agent for service of process under the circumstances set forth in Section 5.251 of the Texas Business Organizations Code.

## ARTICLE X: GOVERNING PERSONS

The name and address of the entity's general partner is as follows:

> Baymark Management, LLC
> 13455 Noel Road, Suite 1670
> Dallas, TX  75240

*[Signature Page Follows]*

IN WITNESS WHEREOF, the undersigned authorized person of the entity has executed this Application for Registration of a foreign entity on the <u>29th</u> day of August 2008.

**GENERAL PARTNER**:

BAYMARK MANAGEMENT, LLC,
a Delaware limited liability company

By:  _____

David Hook, Manager

 **Office of the Secretary of State**
**Corporations Section**
**P.O. Box 13697**
**Austin, Texas 78711-3697**
**(Form 408)**

**Filed in the Office of the**
**Secretary of State of Texas**
**Filing #: 801024105  04/19/2010**
**Document #: 304508736393**
**Image Generated Electronically**

---

## STATEMENT OF CHANGE OF
## ADDRESS OF REGISTERED AGENT

1. The name of the entity represented is
   Baymark Partners, L.P.

   The entity's filing number is   801024105

2. The address at which the registered agent has maintained the registered office address for such entity is: (Please provide street address, city, state and zip code presently shown in the records of the Secretary of State.)

   350 N. St. Paul St., Dallas, TX  75201

3. The address at which the registered agent will hereafter maintain the registered office address for such entity is: (Please provide street address, city, state and zip code.  The address must be in Texas.)

   350 N. St. Paul St., Ste. 2900, Dallas, TX  75201-4234

4. Notice of the change of address has been given to said entity in writing at least 10 business days prior to the submission of this filing.

Date:   04/19/2010

CT Corporation System

**Name of Registered Agent**

Kenneth Uva, Vice President

**Signature of Registered Agent**

**FILING OFFICE COPY**



Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

Hope Andrade
Secretary of State

# Forfeiture pursuant to Section 171.309 of the Texas Tax Code
## of
# Baymark Partners, L.P.

File Number : 801024105                Certificate / Charter forfeited :    August 13, 2010

The Secretary of State finds that:

1.  The Secretary has received certification from the Comptroller of Public Accounts under Section 171.302 of the Texas Tax Code indicating that there are grounds for the forfeiture of the taxable entity's charter, certificate or registration; and

2.  The Comptroller of Public Accounts has determined that the taxable entity has not revived its forfeited privileges within 120 days after the date that the privileges were forfeited.

Therefore, pursuant to Section 171.309 of the Texas Tax Code, the Secretary of State hereby forfeits the charter, certificate or registration of the taxable entity as of the date noted above and records this notice of forfeiture in the permanent files and records of the entity.



Hope Andrade
Secretary of State



**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), Directly and Derivatively on Behalf of ACET Global, LLC and BAYMARK ACET HOLDCO, LLC | § § § § § | |
| | § | Civil Action No. 3:21-CV-01171-B |
| and | § § | |
| ACET GLOBAL, LLC | § § | |
| Plaintiffs, | § § | |
| v. | § § § | |
| BAYMARK PARTNERS, LP; BAYMARK PARTNERS MANAGEMENT, LLC; SUPER G CAPITAL, LLC; SG CREDIT PARTNERS, INC.; BAYMARK ACET HOLDCO, LLC; BAYMARK ACET DIRECT INVEST, LLC; BAYMARK PARTNERS; DAVID HOOK; TONY LUDLOW; MATTHEW DENEGRE; WILLIAM SZETO; MARC COLE; STEVEN BELLAH: ZHEXIAN "JANE" LIN; DANA MARIE TOMERLIN; PADASAMAI VATTANA; PAULA KETTER; VANESSA TORRES; WINDSPEED TRADING, LLC; HALLETT & PERRIN, P.C.; and JULIE A. SMITH, | § § § § § § § § § § § § § § § § § | |
| Defendants. | § | |

---

**AFFIDAVIT OF DAVID HOOK**

---

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF COLLIN** | § |

    **BEFORE ME**, the undersigned notary, on this day personally appeared David Hook, the

affiant, a person whose identity is known to me.  After I administered an oath, affiant testified as

---

AFFIDAVIT OF DAVID HOOK                                                 PAGE 1

follows:

1.   My name is David Hook.  I am over the age of eighteen (18) years.  I have never been convicted of a felony or a crime involving moral turpitude, and I am competent to give this affidavit testimony.  The facts stated herein are within my personal knowledge and are true and correct.

2.   On July 23, 2008, a Certificate of Limited Partnership of Baymark Partners, L.P. (the "Certificate") was filed with the Delaware Secretary of State.  A true and correct copy of that Certificate is attached as Exhibit A hereto.  The Certificate was filed by Baymark Management, LLC, the sole general partner of Baymark Partners, L.P., and signed by me as Manager of Baymark Management, LLC.

3.   Baymark Partners, L.P. was formed in anticipation of raising money for a private equity fund by selling limited partnership interests in that entity.  However, no sales of any limited partnership interests sales were made, and Baymark Partners, L.P. never had any limited partners and did not conduct any business.  Baymark Partners, L.P. was not involved in any manner with any transactions related to ACET Global, LLC's acquisition of assets from ACET Venture Partners, LLC in 2017, nor any transactions involving those assets thereafter.

**FURTHER AFFIANT SAYETH NAUGHT**.

_____
David Hook

   **SUBSCRIBED AND SWORN TO** before me by David Hook on January 14th, 2022, to which witness my hand and official seal of office.

_____
Notary Public in and for the State of Texas

My commission expires:  3-27-23

604792

4883-0401-2554, v. 1



SUSAN CONROY
Notary ID #2069111
My Commission Expires
March 27, 2023

AFFIDAVIT OF DAVID HOOK                                                    PAGE 2



# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), Directly and Derivatively on Behalf of ACET Global, LLC and BAYMARK ACET HOLDCO, LLC<br><br>and<br><br>ACET GLOBAL, LLC<br><br>　　　　Plaintiffs,<br><br>v.<br><br>BAYMARK PARTNERS, LP; BAYMARK PARTNERS MANAGEMENT, LLC; SUPER G CAPITAL, LLC; SG CREDIT PARTNERS, INC.; BAYMARK ACET HOLDCO, LLC; BAYMARK ACET DIRECT INVEST, LLC; BAYMARK PARTNERS; DAVID HOOK; TONY LUDLOW; MATTHEW DENEGRE; WILLIAM SZETO; MARC COLE; STEVEN BELLAH: ZHEXIAN "JANE" LIN; DANA MARIE TOMERLIN; PADASAMAI VATTANA; PAULA KETTER; VANESSA TORRES; WINDSPEED TRADING, LLC; HALLETT & PERRIN, P.C.; and JULIE A. SMITH,<br><br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:21-CV-01171-B |

## AFFIDAVIT OF EDWARD P. PERRIN, JR.

| | |
|---|---|
| **STATE OF TEXAS** | §<br>§ |
| **COUNTY OF DALLAS** | § |

　　**BEFORE ME**, the undersigned notary, on this day personally appeared Edward P. Perrin,

Jr., the affiant, a person whose identity is known to me.  After I administered an oath, affiant

testified as follows:

1.  My name is Edward P. Perrin, Jr.  I am over the age of eighteen (18) years.  I have never been convicted of a felony or a crime involving moral turpitude, and I am competent to give this affidavit testimony.  The facts stated herein are within my personal knowledge and are true and correct.

2.  I am lead counsel representing Defendants Baymark Partners Management, LLC, Baymark ACET Holdco, LLC, Baymark ACET Direct Invest, LLC, Baymark Partners, Tony Ludlow, David Hook, and Matthew Denegre (collectively, the "Baymark Defendants") in the above-styled lawsuit filed by Plaintiff D&T Partners, LLC (successor in interest to ACET Venture Partners, LLC) ("Plaintiff").  I also represent non-party Baymark Management, LLC ("Baymark Management").

3.  On May 28, 2021, Plaintiff's counsel, Jason Freeman, sent an e-mail to me and to counsel for Windspeed and its employees (Defendants William Szeto, Zhexian Lin, Dana Marie Tomerlin, Padasamai Vattana, Paula Ketter, Vanessa Torres) inquiring whether we would agree to accept service on behalf of our respective clients.  Attached as Exhibit E-1 is a true and correct copy of the e-mail correspondence among J. Freeman, B. Hard-Wilson, and E. Perrin dated May 28, 2021 through June 2, 2021.

4.  I responded to Mr. Freeman's e-mail on May 28, 2021 and informed him that we would agree to waive service of summons for the Baymark Defendants pursuant to Federal Rule of Civil Procedure 4.  As to Baymark Management, however, I advised Mr. Freeman that it had not been named in the caption of the case and, therefore, Baymark Management was not properly named as a party pursuant to Federal Rule 10.  I further advised Mr. Freeman that I was not aware of the existence of an entity named "Baymark Partners, LP," but that I would contact my clients and further respond to Mr. Freeman's inquiry as to waiver of service for that entity.  *See* Exhibit E-1.

5.  On June 2, 2021, I sent a follow-up email to Mr. Freeman in which I advised him that Baymark Partners, LP was a Delaware entity formed in 2008, but that it "**ceased to exist in 2010** *[sic]*" and further pointed out there was "nothing to indicate that [Baymark Partners, LP] had *any* involvement in the subject matter of this suit, but there is simply no way that entity could have been involved, as it had not been in existence for well over five years prior to the APA transaction." *See* Exhibit E-1 (emphasis in original).  I also attached a certified copy of the Delaware Secretary of State records confirming Baymark Partners, LP's non-existence as of June 1, 2012. *Id.*  Because Baymark Partners, LP is a non-existent entity, I informed Mr. Freeman that I did not have authority to waive service on its behalf. *Id.*

6.  Additionally, I reminded Mr. Freeman that Baymark Management had not been properly named as a party in the caption of the Complaint, and suggested that Plaintiff could amend its Complaint to drop Baymark Partners, LP as a party and properly name Baymark Management at that time. *Id.*

7.    Mr. Freeman did not respond to my June 2, 2021 correspondence or otherwise provide any explanation for how Baymark Partners, LP could possibly be involved in the claims asserted or why it should be named as a party when it ceased to exist in 2012.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Edward P. Perrin, Jr.

**SUBSCRIBED AND SWORN TO** before me by Edward P. Perrin, Jr. on January 26, 2022, to which witness my hand and official seal of office.

_____
Notary Public in and for the State of Texas

My commission expires:  07/08/2023

4868-7731-8666

VERONICA JAMAICA
Notary Public, State of Texas
Comm. Expires 07-08-2023
Notary ID 125360713

| | |
|---|---|
| **From:** | Edward P. Perrin, Jr. |
| **To:** | Jason Freeman |
| **Cc:** | Kathy Donalds; Zach Montgomery; Timothy P. Woods; Jennifer R. Poe; Brenda A. Hard-Wilson; JD Blakley |
| **Subject:** | RE: D&T v. Baymark 21-cv-01171 |
| **Date:** | Wednesday, June 2, 2021 3:52:00 PM |
| **Attachments:** | image001.png |
| | image007.png |
| | BAYMARK PARTNERS LP-DE.pdf |

Jason,

Circling back from my email below with respect to "Baymark Partners, LP," that Delaware entity was formed in 2008 and **ceased to exist in 2010** (*see*, *e.g.* attached certified copy of the Delaware Secretary of State records). Therefore, not only is there nothing that indicates that entity had *any in*volvement in the subject matter of this suit, but there simply is no way that entity could have been involved, as it had not been existence for well over five years prior to the APA transaction.  Moreover, any claims against it for any actions taken while it was in existence would be long time barred.  Thus, there appears to be no valid basis for that entity to be named as a defendant in this suit, and it should be dismissed. In any event, I have no authority to waive service on behalf of this non-existent entity.

As also discussed below, Baymark Management, LLC has not been properly named as a party in your Complaint.  If you are planning to amend to correctly name Baymark Management, LLC as party, Baymark Partners LP could be dropped at that time.  If an amendment will be filed, then it appears to make the most sense to wait until after that amendment to serve the Rule 4(d)(1) Waivers of Service on all Defendants (including Baymark Management, LLC).  That way, all Defendants  would have the same responsive pleading date, and the Plaintiff the same response date to any motions filed.  If not, we agree to waive service of summons under Rule 4 for Baymark Partners Management, LLC, Baymark ACET Holdco, LLC, Baymark ACET Direct Invest, LLC, David Hook, Tony Ludlow, Matthew Denegre and Baymark Partners. Accordingly, please forward Rule 4(d)(1) Waivers of Service for these Defendants and we will execute and return.


Ed Perrin



EDWARD P. PERRIN, JR.

HALLETT&PERRIN

D 214.922.4132        M 214.914-5150

eperrin@hallettperrin.com

1445 Ross Ave., Suite 2400 | Dallas, Texas 75202

www.hallettperrin.com        Disclaimer

**Hallett & Perrin employees may be working remotely pursuant to State of Texas orders and other guidelines.  When that is the case, we will continue to communicate with you by email and telephone (I can also be reached directly at**

**214-914-5150). It is our pleasure and privilege to continue to serve your legal needs.  Thank you for your loyalty to our law firm and staff.**

---

**From:** Edward P. Perrin, Jr.
**Sent:** Friday, May 28, 2021 2:00 PM
**To:** Jason Freeman <Jason@freemanlaw.com>
**Cc:** Kathy Donalds <Kdonalds@freemanlaw.com>; Zach Montgomery <zmontgomery@freemanlaw.com>; Timothy P. Woods <twoods@higierallen.com>; Jennifer R. Poe <JPoe@hallettperrin.com>; 'Brenda A. Hard-Wilson' <bhard-wilson@higierallen.com>
**Subject:** RE: D&T v. Baymark 21-cv-01171

Jason,

In response to your request, on behalf of Baymark Partners Management, LLC, Baymark ACET Holdco, LLC, Baymark ACET Direct Invest, LLC, David Hook, Tony Ludlow and Matthew Denegre, we also agree to waive service of summons under FRCP Rule 4.

As to Baymark Management, LLC, it is not named in the caption of the case.  FRCP 10 requires that "[t]he title of the Complaint must name all parties;…."  Thus, it appears that Baymark Management, LLC has not properly been named as a party in this case.  If you disagree, please provide me with any contrary authority or how to otherwise address this issue.

As to "Baymark Partners, LP," not aware that such entity exists. Similarly, not aware of any general partnership entity "Baymark Partners."  But will contact my clients and get back to you on your request as to those entities as soon as possible after the holiday weekend.

Ed Perrin



EDWARD P. PERRIN, JR.
HALLETT&PERRIN
D 214.922.4132          M 214.914-5150
eperrin@hallettperrin.com
1445 Ross Ave., Suite 2400 | Dallas, Texas 75202
www.hallettperrin.com          Disclaimer

**Hallett & Perrin employees may be working remotely pursuant to State of Texas orders and other guidelines.  When that is the case, we will continue to communicate with you by email and telephone (I can also be reached directly at**

**214-914-5150). It is our pleasure and privilege to continue to serve your legal needs.  Thank you for your loyalty to our law firm and staff.**

.

---

**From:** Brenda A. Hard-Wilson <bhard-wilson@higierallen.com>
**Sent:** Friday, May 28, 2021 10:42 AM
**To:** Jason Freeman <Jason@freemanlaw.com>; Edward P. Perrin, Jr. <EPerrin@hallettperrin.com>
**Cc:** Kathy Donalds <Kdonalds@freemanlaw.com>; Zach Montgomery <zmontgomery@freemanlaw.com>; Timothy P. Woods <twoods@higierallen.com>
**Subject:** RE: D&T v. Baymark 21-cv-01171

Jason,

Will you be sending the notice and waivers under FRCP 4(d)?

We would agree to waive service for Windspeed and Windspeed's current employees.

Brenda A. Hard-Wilson
Associate Attorney
Higier Allen & Lautin, P.C.
The Tower at Cityplace | 2711 N. Haskell Ave. | Suite 2400 | Dallas, TX   75204
*main phone:* 972.716.1888 | *direct phone:* 972.371.2481 | *direct fax:* 469.375.3263
bhard-wilson@higierallen.com  |  www.higierallen.com
View my Bio. | Connect on LinkedIn.

Description: HAL_Logo_RGB_Sm2

**CONFIDENTIALITY NOTICE**
This e-mail and any files accompanying its transmission is intended only for the recipient to whom it is intended to be addressed. This transmission may contain confidential information protected by the attorney-client communication privilege, attorney-work product exemption or other legal privilege or confidentiality agreement.   If you have received this e-mail in error, please immediately reply and notify only the sender and delete the original transmission from your system. You are notified that any disclosure, copying, forwarding, or other distribution of this e-mail, including any attachments, or the taking of any action in reliance upon the information contained in this e-mail or attachments, is not authorized and is strictly prohibited.  Thank you for your cooperation.

---

**From:** Jason Freeman <Jason@freemanlaw.com>
**Sent:** Friday, May 28, 2021 7:59 AM
**To:** Edward P. Perrin, Jr. <EPerrin@hallettperrin.com>; Brenda A. Hard-Wilson <bhard-wilson@higierallen.com>
**Cc:** Kathy Donalds <Kdonalds@freemanlaw.com>; Zach Montgomery <zmontgomery@freemanlaw.com>
**Subject:** D&T v. Baymark 21-cv-01171

Ed and Brenda,

Good morning. Would you please let me know if you agree to accept service on behalf of your clients and, if so, list out which ones you are so agreeing for? We'll otherwise go ahead and move forward with service.

I remain open to a phone call to discuss the matter.

Thanks,

Jason

Jason B. Freeman, JD, CPA
Managing Member

7011 Main Street
Frisco, Texas 75034

Direct:        214.984.3410
Toll Free:     855.676.1040
Fax:           214.984.3409
http://www.FreemanLaw.com/

The message and information contained in or attached to this communication is privileged, confidential and intended only for the person or persons named above. If you are not the intended recipient of this transmission, you are hereby notified that any dissemination, distribution or copying of this communication to anyone other than the intended recipient or recipients is strictly prohibited. If you receive this communication in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then please delete this communication from your computer. Thank you.



# Delaware

The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THAT THE CERTIFICATE OF LIMITED PARTNERSHIP OF "BAYMARK PARTNERS, L.P.", WAS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-THIRD DAY OF JULY, A.D. 2008.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID LIMITED PARTNERSHIP IS NO LONGER IN EXISTENCE AND GOOD STANDING UNDER THE LAWS OF THE STATE OF DELAWARE HAVING BECOME CANCELED THE FIRST DAY OF JUNE, A.D. 2012, BY REASON OF ITS NEGLECT, REFUSAL, OR FAILURE TO PAY ITS ANNUAL TAXES.



Jeffrey W. Bullock, Secretary of State

4578842  8420
SR# 20212324627

Authentication: 203342872
Date: 06-02-21

You may verify this certificate online at corp.delaware.gov/authver.shtml

**APP 140**