UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS (successor in interest to ACET VENTURE PARTNERS LLC), Directly and Derivatively on Behalf of ACET GLOBAL LLC and BAYMARK ACET HOLDCO LLC, | § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-1171-B |
| BAYMARK PARTNERS LP; BAYMARK PARTNERS MANAGEMENT LLC; SUPER G CAPITAL LLC; SG CREDIT PARTNERS INC.; BAYMARK ACET HOLDCO LLC; BAYMARK ACET DIRECT INVEST LLC; BAYMARK PARTNERS; DAVID HOOK; TONY LUDLOW; MATTHEW DENEGRE; WILLIAM SZETO; MARC COLE; STEVEN BELLAH; ZHEXIAN "JANE" LIN; DANA MARIE TOMERLIN; PADASAMAI VATTANA; PAULA KETTER; VANESSA TORRES; WINDSPEED TRADING LLC; JULIE SMITH; and HALLETT & PERRIN P.C., | § § § § § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendants Windspeed Trading, LLC ("Windspeed") and William Szeto ("Szeto")'s (Doc. 46); Zhexian "Jane" Lin, Dana Marie Tomerlin, Padasamai Vattana, Paula Ketter, and Vanessa Torres (collectively, "Windspeed Employees")'s (Doc. 47); SG Credit Partners, Inc. ("SG Credit") and Marc Cole's (Doc. 48); Baymark Partners Management, LLC ("BP

Management"), Baymark ACET Direct Invest, LLC, Baymark Partners ("Baymark"), David Hook ("Hook"), Tony Ludlow ("Ludlow"), Matthew Denegre ("Denegre") (collectively, the "Baymark Defendants")'s (Doc. 49); Hallett & Perrin, P.C. ("Hallett & Perrin") and Julie Smith's (Doc. 51); Baymark ACET Holdco, LLC's (Doc. 52); and Super G Capital LLC ("Super G") and Steven Bellah ("Bellah")'s (Doc. 54) Motions to Dismiss. For the following reasons, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claims.

## I.

## BACKGROUND[1]

This is a business dispute between a former secured creditor and a newly formed company and its associated parties. The secured creditor, D&T, alleges that the Defendants executed a scheme to avoid liability from a $3.2 million loan by "fraudulently transferring" the assets from the foreclosed company, ACET Global, LLC ("ACET Global"), to the new company, Windspeed, through multiple acts of wire fraud, mail fraud, bankruptcy fraud, and obstruction of justice. Doc. 36, Am. Compl., ¶¶ 6–10.

In 2017, Baymark, a Texas-based "general partnership between Hook and Ludlow" of which Denegre is also a director, approached Tomer Damti ("Damti") of D&T to purchase ACET Venture Partners, LLC ("ACET Venture") because of its "successful e-commerce business." *Id.* at 2, ¶¶ 41–44, 56. Baymark purchased ACET Venture through a newly formed entity, ACET Global, on July 14, 2017. *Id.* ¶¶ 57–58. Hook and Ludlow represented that Damti would be the CEO of ACET Global (the "Damti representation"). *Id.* ¶¶ 56, 67. Under the Asset Purchase Agreement ("APA"), "ACET Global agreed to (1) pay $850,000 to D&T Partners, subject to certain adjustments;

---

[1] The facts are as alleged by Plaintiffs in the Amended Complaint.

(2) provide a subordinated secured promissory note in the amount of $3,230,000 in favor of D&T Partners [(the 'Note')]; and (3) to provide D&T Partners with a 25% common membership interest in Baymark ACET Holdco, LLC." *Id.* ¶ 64. The first payment for the Note was due in October 2018. *Id.* ¶ 65.

After the APA, "Hook caused ACET Global to enter into a Collateral Assignment of Rights Under Acquisition Transaction Documents and Subordination Agreement (the 'Collateral Assignment') with Super G"[2] in return for a $1,000,000 loan. *Id.* ¶ 68. As part of this agreement, D&T subordinated its security interest to Super G based on the Damti representation and ACET Global's representation that it did not intend to default on either loan. *Id.* ¶ 77.

In February 2018, Denegre, director of Baymark, terminated Damti as CEO of ACET Global. *Id.* ¶¶ 44, 79–80. Szeto then became CEO of ACET Global. *Id.* ¶¶ 45, 82. The following month, ACET Global defaulted on its note to Super G. *Id.* ¶ 85. Because of the default, in April 2018 ACET Global and Super G entered into a forbearance agreement to waive loan payments "until October 25, 2018—just days before the D&T Note payments would become due." *Id.* ¶¶ 85–86. ACET Global also defaulted on payments to other vendors. *Id.* ¶ 87.

Approximately five months later, "Szeto filed a Certificate of Formation for a Limited Liability Company for Windspeed . . . at the behest of Baymark." *Id.* ¶ 122. Windspeed's company agreement, drafted by Hallett & Perrin, provided for an ownership split where BP Management—a shell entity controlled by Ludlow and Hook—and Super G each owned 40% and Szeto—the CEO—owned the

---

[2] Super G "engaged in unorthodox investments and practices—seeking high-risk, high-return investments" and approved of investments—largely at the discretion of Chief Financial Officer Marc Cole—with a "'thumbs up or thumbs down' type of process." *Id.* at 2, ¶¶ 46, 70–71, 74. When Cole transitioned to SG Credit, the Collateral Assignment also transferred to SG Credit from Super G. *Id.* ¶ 76.

remaining 20%. *Id.* ¶¶ 59, 124–25, 148, 152, 157, 163. Super G funded Windspeed, an asset less company, with an initial $200,000 loan. *Id.* ¶¶ 144, 156, 172–73.

In September 2018, ACET Global, through Denegre and Szeto, executed a "wind down" plan to transfer its assets to a newly formed company, Windspeed (the "fraudulent transfer"). *Id.* ¶¶ 100–16. During the "wind down" in late October 2018, ACET Global transferred all assets, business operations, and employees to Windspeed. *Id.* ¶ 176. In September 2018, an employee of ACET Global rented a temporary storage unit to store ACET Global's physical assets and inventory and later moved these assets and inventory into Windspeed's new office and warehous. *Id.* ¶¶ 191–93, 201. On October 9, 2018, Szeto emailed ACET Global employees retroactively terminating their employment for ACET Global as of September 28, 2018. *Id.* ¶ 179. Szeto also instructed Jane Lin, Windspeed's accountant, "to maintain 'two sets of books[,]'" one set for ACET Global and one for Windspeed. *Id.* ¶¶ 181, 184. Because of the legal risks associated with a possible fraudulent transfer of assets, Baymark discussed this issue with its legal counsel, Hallett & Perrin, P.C., in December 2018, who also discussed the issue with Super G's counsel. *Id.* ¶¶ 118–19.

At the same time, Windspeed assumed ACET Global's business operations as its own. *Id.* ¶¶ 194–207. "Windspeed's website was a carbon copy of the . . . ACET Global website" and Windspeed sold "the inventory with the same customer marketplaces and the same software used at ACET Global." *Id.* ¶¶ 194, 197–98. Windspeed continued ACET Global's business operations, "pocket[ed] the revenues" from the sale of ACET Global's unsegregated inventory, closed ACET Global's bank accounts, and assumed ACET Global's other accounts. *Id.* ¶¶ 201, 203–11.

"On October 31, 2018, the first monthly installment under the D&T Note became due[,]" but "ACET Global failed to pay." *Id.* ¶ 223.

"On January 31, 2019, Super G . . . issued a Notice of Forfeiture" and Baymark sought to move forward with the foreclosure. *Id.* ¶¶ 226, 228–29. Hallett & Perrin drafted the foreclosure sale agreements, backdated to March 1, 2019, and "ensure[d] that Windspeed . . . did not assume the liability" of the D&T Note. *Id.* ¶¶ 242–45. Under the agreement, Super G sold ACET Global's assets to Windspeed "for a loan in the amount of $514,144.86," which closely matched the $514,515 amount due on the ACET Global loan from Super G. *Id.* ¶ 249. During the Super G foreclosure sale agreement, Hallett & Perrin represented Baymark, BP Management, ACET Global, and Windspeed—parties with competing interests. *Id.* ¶¶ 213–15.

On October 23, 2019, ACET Global filed a Voluntary Petition for Bankruptcy that listed the $3,200,000 D&T liability, $30,000 in transferred property, and included multiple false representations to the bankruptcy court about the attributes of ACET Global. *Id.* ¶¶ 252, 261–292. The bankruptcy court closed the case on January 29, 2020, without discharging ACET Global. Order Closing the Case, *In re ACET Global, LLC*, No. 19-42878 (Bankr. E.D. Tex. Jan. 29, 2020).

Since the "fraudulent transfer," Defendants have attempted to obstruct and cover the alleged fraud. In March 2021, counsel for Super G and Cole emailed D&T's counsel stating that Super G "is no longer in business" and was in "the process of liquidating all assets." *Id.* ¶ 295. Several individual Defendants stonewalled or changed their testimony after presented with conflicting evidence during depositions in another related case. *Id.* ¶¶ 97–98, 105–09, 112–14, 241, 248, 255, 297–301. Shortly after defaulting on the D&T Note, Szeto and Baymark deliberately "caused the loss and destruction of" ACET Global's emails and electronic records. *Id.* ¶¶ 302–03. Windspeed also deleted its website. *Id.* ¶ 304.

D&T, as the successor in interest to ACET Venture Partners, LLC, brings its claims on behalf of ACET Global[3] and Baymark ACET Holdco, LLC. *Id.* at 1–2. D&T brings claims for civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), common law fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duties, violation of the Texas Uniform Fraudulent Transfer Act, civil conspiracy, and respondeat superior and/or agency liability. *Id.* ¶¶ 310–84. Defendants filed seven separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). *See* Doc. 46, Windspeed & Szeto's Mot.; Doc. 47, Windspeed Emps.' Mot.; Doc. 48, SG Credit & Cole's Mot.; Doc. 49, Baymark's Mot.; Doc. 51, Hallett & Perrin & Smith's Mot.; Doc. 52, Baymark ACET Holdco, LLC's, Mot.; Doc. 54, Bellah and Super G's, Mot. The motions are fully briefed and ripe for review.

## II.

## LEGAL STANDARD

*A.    Rule 12(b)(6) Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

---

[3] D&T is the "sole manager of ACET Global" and has "legal ownership" of ACET Global. Doc. 36, Am. Compl., 5 n.8.

In order to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III.

## ANALYSIS

The Court first addresses D&T's procedural objection to Defendants Windspeed and Szeto's, Windspeed Employees', SG Credit's, and Super G and Bellah's incorporation by reference of Baymark and Windspeed's arguments into their respective briefs. *See* Doc. 46-1, Windspeed & Szeto's Br., 4 n.3 ("adopt[ing] and incorporate[ing] the motions to dismiss . . . as well as the arguments incorporated into their respective briefs in support"); Doc. 47-1, Windspeed Emps.' Br., 4 n.2 (same); Doc. 48-1, SG Credit & Cole's Br., 10–11 ("adopt[ing] and incorporate[ing] by reference the arguments in the other defendants' motion papers"); Doc. 55, Super G & Bellah's Br., 7 ("adopt[ing] and incorporat[ing] the arguments contained in [the other Defendants'] respective motions to dismiss"). D&T contends that such an incorporation violates L.R. 7.1(c), which sets a twenty-five-page limit on briefs. Doc. 62, Pls.' Resp. Windspeed and Szeto's Mot., 10–11 (citing *Black Cat Expl. & Prod., LLC v. MWW Cap. Ltd.*, 2015 WL 12731751 (N.D. Tex. Apr. 29, 2015)); Doc. 63, Pls.' Resp. Windspeed Emps.' Mot., 11–12; Doc. 66, Pls.' Resp. Super G & Bellah's Mot., 8; Doc. 67, Pls.'

Resp. SG Credit & Cole's Mot., 9. Defendant SG Credit responds that incorporation by reference serves judicial economy and the Federal Rules of Appellate Procedure allow for incorporation. Doc. 78, SG Credit's Reply, 1–2.

The Court agrees with Defendants. Equitable reasons support allowing the arguments applicable to one defendant to apply to all similarly situated defendants. *Foxx v. My Vintage Baby, Inc.*, 624 F. App'x 318, 319 (5th Cir. 2015) ("Because [one defendant] established that [plaintiff] failed to state a cause of action [under Rule 12(b)(6) and Rule 9(b)], that defense inures to the benefit of the [other] defendants where [plaintiff] offers only bare assertions to the contrary." (citing *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001)).[4] Requiring Defendants to individually raise an argument successfully raised by a co-Defendant and applicable to all would waste judicial resources.

A.   RICO

D&T brings three RICO claims for violations of 18 U.S.C. § 1962(a), (c), and (d). Doc. 36, Am. Compl., ¶¶ 310–67. The claims under subsections (c) and (d) are against all Defendants, while the claim under subsection (a) is against Baymark, Ludlow, Hook, Denegre, Super G, SG Credit, BP Management, Smith, and Hallett & Perrin. *See id.* Because there are common elements in each subsection, *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995), the Court will analyze the RICO claims together.

All four subsections of § 1962 have three common elements: "1) a person who engages in 2) a pattern of racketeering activity, 3) connected to the acquisition, establishment, conduct, or control

---

[4] For this same reason, the Court need not address Baymark ACET Holdco's arguments regarding the application of Federal Rule of Civil Procedure 23.1 and standing. Doc. 52, Baymark ACET Holdco, LLC's Mot., 1. "[I]t would be 'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants." *Lewis*, 236 F.3d at 768. The Court applies the successfully raised pattern argument by the other Defendants to Baymark ACET Holdco, LLC.

of an enterprise." *Crowe*, 43 F.3d at 204 (emphasis omitted). The statute broadly defines "person" to include "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3); *Boyle v. United States*, 556 U.S. 938, 944 (2009) ("The term 'any' ensures that the definition has a wide reach . . . ."). "To establish th[e] pattern [element], a plaintiff must show both a relationship between the predicate offenses . . . and the threat of continuing activity." *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016). "[A]n enterprise . . . 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Boyle*, 556 U.S. at 945 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

The Defendants argue that D&T fails to plausibly plead the second element—a pattern of racketeering activity.[5] Doc. 49, Baymark's Mot., 9–12; Doc. 48-1, SG Credit & Cole's Br., 10–12; Doc. 55, Super G & Bellah Br., 7, 10–11; Doc. 46-1, Windspeed's & Szeto's Br., 4 n.3 (adopting and incorporating by reference); Doc. 47-1, Windspeed Emps.' Br., 4 n.2 (same);.

D&T responds that multiple predicate acts, including mail fraud, wire fraud, lying under oath, bankruptcy fraud, obstruction of justice, concealment, and money laundering, establish a continuous pattern of racketeering activity. Doc. 62, Pls.' Resp. Windspeed & Szeto's Mot., 20–22; Doc. 63, Pls.' Resp. Windspeed Emps.' Mot., 19–23; Doc. 67, Pls.' Resp. SG Credit & Cole's Mot., 18–19; Doc. 68, Pls.' Resp. Baymark's Mot., 20–32. D&T identifies[6] the following specific—mostly

---

[5] Several Defendants also attack whether Plaintiffs sufficiently pleaded the claims to survive Rule 9(b). Doc. 46-1, Windspeed & Szeto's Br., ¶¶ 27, 45; Doc. 48-1, SG Credit & Cole's Br., 11; Doc. 49, Baymark's Br., 18; Doc. 51, Hallett & Perrin & Smith's Mot., 6–7; Doc. 55, Super G & Bellah's Br., 7. However, the Court need not address this issue because Plaintiffs failed to establish the elements of RICO regardless of whether they pleaded with the particularity required by Rule 9(b).

[6] The Court takes nearly all these predicate acts from Plaintiff's Response to the Windspeed Employees' Motion to Dismiss. *See* Doc. 63, Resp. Windspeed Emps.' Mot., 19 n.11. Plaintiff's Amended Complaint does not clearly identify the alleged predicate acts, which alone justifies dismissing the RICO

mail and wire fraud[7]—predicate acts:

- Wire/mail fraud for the September 27, 2018 Windspeed Certificate of Formation. Doc. 36, Am. Compl., ¶ 7, Doc. 36-13, Ex. 13.

- Mail fraud for the letter dated February 12, 2018 firing Damti. Doc. 36-25, Ex. 25.

- Wire fraud for September 10, 2018 emails with the Wind down plan. Doc. 36-28, Ex. 28.

- Wire fraud for the Wind Down Plan September 29, 2018 email. Doc. 36, Am. Compl., ¶ 103.

- Wire fraud for the October 8, 2018 email discussing ownership breakdown. Doc. 36-34, Ex. 34.

- Wire fraud for the retroactive employee termination email on October 9, 2018. Doc. 36, Am. Compl., ¶¶ 179–80.

- Wire fraud for the Windspeed Transaction Documents October 18, 2018 email. *Id.* ¶ 153; Doc. 36-33, Ex. 33.

- Wire fraud for Denegre's email about two sets of books on October 19, 2018. Doc. 36, Am. Compl., ¶¶ 183–84; Doc. 36-30, Ex. 30.

- Wire fraud for the October 23, 2018 email from Denegre to Bellah seeking to discuss foreclosure. Doc. 36, Am. Compl., ¶ 228; Doc. 36-40, Ex. 40.

- Wire fraud for the email exchange between Szeto, Bellah, and Denegre about foreclosure on November 2, 2018. Doc. 36, Am. Compl., ¶ 240.

- Wire/mail fraud for Baymark ACET Holdco LLC and the Baymark Defendants 2019 IRS filing of a sale from foreclosure form for assets acquired on July 21, 2017. *Id.* ¶ 296.

- Wire fraud for emails between Godinez at Super G and Denegre about finalizing foreclosure on January 29, 2019. *Id.* ¶ 231.

- Mail fraud for mailing the Notice of Forfeiture on or around January 31, 2019. *Id.* ¶¶ 12, 226–27, 356; Doc. 36-17, Ex. 17.

---

claims. *See* Fed. R. Civ. P. 8(a).

[7] The Court notes that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000). It is the unusual frauds which help to distinguish the ordinary business dispute from viable RICO claims. *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001) (listing cases).

- Bankruptcy fraud for providing false information for the bankruptcy on October 23, 2019. Doc. 36, Am. Compl., ¶¶ 261–93; Doc. 36-19, Ex. 19.

- Wire/mail fraud and money laundering for the IRS tax filing dated September 10, 2020, and the K-1 to Damti (undated). Doc. 36, Am. Compl., ¶¶ 305–09, 330; Doc. 36-20, Ex. 20; Doc. 36-21, Ex. 21.

- Obstruction of justice for the Windspeed Employees' false testimony under the instruction of Szeto on March 26, 2021, and April 5, 2021. Doc. 36, Am. Compl., ¶ 315; Doc. 36-4, Ex. 4; Doc. 36-5, Ex. 5; Doc. 36-10, Ex. 10.

- Obstruction of justice for Szeto's false testimony on April 2, 2021. Doc. 36, Am. Compl., ¶¶ 139, 145, 159; Doc. 36-2, Ex. 2.

- Obstruction of justice for Denegre's false testimony about the foreclosure on April 8, 2021 and Ludlow's interjection. Doc. 36, Am. Compl., ¶¶ 241, 297; Doc. 36-1, Ex. 1.

These predicate acts range from emails, to letters, to petitions for bankruptcy, to deposition testimony. D&T further argues that the Defendants "continue[] the scheme to this day." Doc. 67, Pls.' Resp. SG Credit & Cole's Mot., 17.

The Court agrees with Defendants that the Amended Complaint fails to adequately plead a pattern. Civil RICO claims are meant to address "long term criminal conduct," not "garden-variety fraud actions properly brought under state law[.]" *Malvino*, 840 F.3d at 231 (quoting *Tabas v. Tabas*, 47 F.3d 1280, 1310 (3d Cir. 1995)). "A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009). "[P]redicate criminal acts can be violations of either state or federal law." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 524 (5th Cir. 2016). Specifically, the Court finds that D&T failed to adequately plead the continuity prong and addresses it below.

Continuity can be established by "(1) a 'closed period of repeated conduct;' or (2) an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'"

*Malvino*, 840 F.3d at 231 (quoting *H.J. Inc.*, 492 U.S. at 241). Because Plaintiffs do not clearly plead one form of continuity or the other, the Court addresses both below.

### 1. Closed Period of Continuity

Closed periods of continuity require "a series of related predicates extending over a substantial period of time," *H.J. Inc.*, 492 U.S. at 242. These acts are commonly referred to as "repeated conduct." *United States v. Thompson*, 2001 WL 498430, at *9 (5th Cir. 2001). D&T pleads events "beginning at least as early as 2018 and continuing to the present." Doc. 36, Am. Compl., ¶¶ 321, 335. *But see* Doc. 67, Pls.' Resp. SG Credit & Cole's Mot., 17 (stating the events in "2017 and [are] continuing to the present").

These eighteen alleged predicate acts—chronologically listed above—span from September 27, 2018, to April 8, 2021, a span of just under eighteen months, and culminated with the allegedly fraudulent foreclosure sale (the impetus for all the allegedly fraudulent conduct). Eighteen months presumptively spans a "substantial period of time." *See H.J. Inc.*, 492 U.S. at 242; *Malvino*, 840 F.3d at 232 (listing cases finding that closed periods of less than twelve months were not a "substantial period," while four years was); *Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007) (finding two years sufficient for pleading a substantial period of time). But the acts do not demonstrate "repeated conduct" because only one fraudulent foreclosure sale occurred, according to the Amended Complaint. *See Boyle*, 556 U.S. at 949–50 (discussing the need to establish a pattern of similar and repeated conduct).

The Court finds the *Efron* case persuasive on this issue. *Efron*, 223 F.3d 12. In that case, a business dispute arose when certain partners in a joint hotel venture—through predicate acts of mail and wire fraud over a twenty-one-month span—caused the hotel to project losses to force out some

- 12 -

of the other partners. *Id.* at 13–14. The court focused its analysis on the continuity requirement and found it unsatisfied. *Id.* at 17–21. Significantly, the court found "highly relevant" "the fact that [the] defendant ha[d] been involved in only one scheme with a singular objective and a closed group of targeted victims." *Id.* at 18. This activity was "neither so extensive in reach nor so far beyond the minimum time period that common sense compel[led] a conclusion of continuity." *Id.* Further, the alleged predicate acts "d[id] not demonstrate the kind of broad or ongoing criminal behavior at which the RICO statute was aimed." *Id.* Even though the defendant committed "multiple related acts of deception," the "[plaintiffs] injury . . . resulted from a single set of alleged misdeeds and occurred at the same time." *Id.* In sum, "the finite nature of the racketeering activities alleged here, together with their occurrence over a relatively modest period of time, [could not], . . . support a jury finding of a RICO pattern under the 'closed' continuity approach." *Id.* at 19.

Similarly here, because the Defendants pursued a singular objective with a targeted victim, the eighteen-month span of alleged predicate acts does not "compel the conclusion of continuity." *See id.* at 18. Defendants sought to transfer assets from ACET Global to Windspeed, free and clear of any D&T Note—a narrowly focused alleged crime. The RICO statute is not meant to target such narrow crimes. *See Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1463 (5th Cir. 1991) ("Congress wrote RICO in broad, sweeping terms; it did not intend to extend RICO to every fraudulent commercial transaction."). Just like in *Efron*, the Court does not here find a pattern of predicate acts under the closed continuity approach from the finite acts over the modest eighteen-month period alleged in the Amended Complaint. *See Efron*, 223 F.3d at 19.

### 2.     Open-ended Continuity

Open-ended continuity consists of a "specific threat of repetition extending indefinitely into the future," or "that the predicates are a regular way of conducting [a] defendant's ongoing legitimate business." *H.J. Inc.*, 492 U.S. at 242–43. However, "[a] plaintiff cannot demonstrate open-ended continuity if the racketeering activity has a 'built-in ending point, and the case does not present the necessary threat of long-term, continued criminal activity.'" *U.S. Airline Pilots Ass'n v. Awappa, LLC (USAPA)*, 615 F.3d 312, 318 (4th Cir. 2010) (quoting *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001)).

The foreclosure sale marked the end point of the Defendants' alleged scheme and therefore precludes open-ended continuity. Defendants achieved their singular goal once all the assets from ACET Global were transferred to Windspeed and the foreclosure extinguished the D&T Note. *See USAPA*, 615 F.3d at 319. Even though Plaintiffs contend that "there is a continued threat of repetition of such conduct" because "Defendants have continued to operate the fraudulent enterprise," Doc. 36, Am. Compl., ¶¶ 321, 335, lawful activity—continuing to run a business—cannot form the basis of a RICO violation. *See Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988) ("[Plaintff] has attempted to state a RICO claim by alleging multiple acts of fraud that were part and parcel of a single, discrete and otherwise lawful commercial transaction. . . . [Plaintiff] has alleged as a pattern of racketeering activity nothing more than numerous predicate acts which were necessary segments of an otherwise legitimate and singular commercial endeavor. . . ."). Nor have Plaintiffs pleaded any continuous threat of similar actions by the Defendants that might extend into the future. Instead, the Defendants' extinction of the D&T Note created a finite ending point for the scheme and precludes repetition.

In sum, because there is no continuity, the Court **DISMISSES** the RICO claims.

B.     *State-law Claims*

Plaintiffs pleaded the Court's subject matter jurisdiction under 28 U.S.C. § 1331, granting the Court "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *See* Doc. 36, Am. Compl., 15. Because the Court dismissed Plaintiffs' federal law claims, the Court must now analyze whether to retain jurisdiction of the state-law claims through pendent or supplemental jurisdiction. May 2, 2022

"A district court has 'wide discretion' in deciding whether it should retain jurisdiction over state law claims once all federal claims have been eliminated." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011). The general rule in the Fifth Circuit "is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992). And "when the . . . federal-law claim[s] [are] eliminated at an 'early stage' of the litigation, the district court has 'a powerful reason to choose not to continue to exercise jurisdiction.'" *Id.* (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n.7 (1988)). In such a case, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to

exercise jurisdiction over the remaining state-law claims."[8] *Id.* at 586 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

The parties did not brief this issue, so the Court will only lightly touch upon it. All factors counsel this Court to decline supplemental jurisdiction over Plaintiffs' state-law claims:[9] the case is at the motion-to-dismiss stage, the parties can reuse any litigation work in the state court at little to no additional cost to the litigants, dismissal will not prejudice the parties, and state courts are more familiar with their respective jurisdictions' laws. *See Parker & Parsley*, 972 F.2d at 587–90. Accordingly, the Court declines to exercise supplement jurisdiction over the state-law claims and **DISMISSES** them.

C.     *Leave to Amend*

Given that this is the Court's first opportunity to assess the sufficiency of D&T's allegations, the Court deems it appropriate to provide it one chance to amend its pleadings in light of the deficiencies noted in this Order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). This second amended complaint shall be filed within **THIRTY (30)** days of the date of this Order.

---

[8] Under § 1367(c) the Court may decline supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Section 1367(c)(3) applies because the Court dismisses the RICO claims, leaving only state-law claims. *See* Doc. 36, Am. Compl.

[9] Plaintiffs bring claims for common law fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duties, violation of the Texas Uniform Fraudulent Transfer Act, civil conspiracy, and respondeat superior and/or agency liability. Doc. 36, Am. Compl., ¶¶ 368–84.

IV.

CONCLUSION

For the foregoing reasons, Windspeed and Szeto's (Doc. 46), Windspeed Employees' (Doc. 47), SG Credit & Cole's (Doc. 48), Baymark's (Doc. 49), and Super G and Bellah's (Doc. 54) Motions to Dismiss are **GRANTED** and Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**. Hallett & Perrin & Smith's (Doc. 51) and Baymark ACET Holdco, LLC's (Doc. 52) Motions to Dismiss are **MOOT**. Within **THIRTY (30)** days of the date of this order, Plaintiffs may file a second amended complaint as permitted in Part H, supra. From the date of Plaintiffs' filing, Defendants have twenty-one (21) days to file an answer or motion to dismiss pursuant to Federal Rule of Civil Procedure 12.

**SO ORDERED**.

**SIGNED: May 9, 2022.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE