# SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Agreement") is dated and entered into as of July 20, 2017 by and between BAYMARK ACET HOLDCO, LLC, a Texas limited liability company ("Pledgor"), and ACET VENTURE PARTNERS LLC, a Texas limited liability company ("Secured Party").

## RECITALS

A.  Pledgor owns the Pledged Interests (as defined in Section 2 below) in ACET GLOBAL, LLC, a Texas limited liability company ("Borrower").

B.  Secured Party has made a loan to Borrower as evidenced by that certain Secured Promissory Note of even date herewith made by Borrower payable to the order of Secured Party (as amended, the "Note"); capitalized terms, which are used herein but not defined herein, shall have the meanings ascribed to them in the Note.

C.  As a condition to entering into the financing contemplated by the Note, Secured Party requires that Pledgor pledge in favor of Secured Party, and grant Secured Party a security interest in, all of the Pledged Interests and the other Collateral (as such terms are defined below).

D.  To induce Secured Party to make the financing contemplated by the Note, Pledgor is willing to enter into this Agreement with Secured Party.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed as follows:

1.  Obligations Secured. This Agreement and the security interest created hereby are given for the purpose of securing (i) Borrower's payment and performance obligations to Secured Party now or hereafter accruing under the Note; (ii) performance of each agreement of Pledgor contained in this Agreement, and (iii) any and all amendments, modifications, renewals and/or extensions of any of the foregoing, including but not limited to amendments, modifications, renewals or extensions which are evidenced by new or additional instruments, documents or agreements or which change the terms of any obligations secured hereby (all of the foregoing collectively referred to as the "Obligations").

2.  Grant of Security Interest. For valuable consideration and to secure full payment and performance of the Obligations, Pledgor hereby delivers, pledges and grants a continuing security interest to Secured Party in all of Pledgor's right, title and interest, whether now existing or hereafter arising, in and to the following (collectively, the "Collateral"):

    (a)  the Pledged Interests;

    (b)  any documents, certificates, negotiable or non-negotiable instruments and any other writing evidencing the Pledged Interests or by which any deposit, transfer, negotiation, roll over, renewal, substitution, withdrawal or other disposition may be made with respect to the Pledged Interests (the "Documents");

EXHIBIT
C

(c)     all rights to subscribe, stock splits, liquidating dividends, cash dividends, dividends paid in membership interests, new securities or other property of any kind, which Pledgor is or may hereafter be entitled to receive on account of the Pledged Interests, including without limitation any of the foregoing arising from that certain Company Agreement of Borrower (as may be amended or modified, the "Operating Agreement"); and

(d)     all proceeds of any sale, exchange or disposition of the property described in subparagraphs (a), (b) or (c) above, whether such disposition is voluntary or involuntary, including, without limitation, all rights to payment and returned premiums with respect to any insurance relating to any of the foregoing.

For the purposes of this Agreement:

(i)     "Pledged Interests" means all rights to receive dividends, distributions, capital accounts, cash flow, profits, surplus, liquidation distributions or proceeds, sums due or owing as distributions of cash or property, whether or not such distributions are in the nature of profits, reimbursements, repayments, return of capital, return on capital, or fees in the Membership Interest; excluding, however, any management, consent, approval, disapproval, or voting rights, or the equity interest in the Membership Interest; and

(ii)     "Membership Interest" means fifty-nine percent (59%) of the membership interest in Borrower.

3.     Delivery of Documents; Priority. If necessary to perfect Secured Party's security interest therein, and except as otherwise provided in this Agreement, all Documents, how or hereafter evidencing any Collateral, shall be delivered into the possession of Secured Party so that Secured Party may perfect its security interest therein, and shall contain such endorsements or assignments as Secured Party may in its sole, but reasonable, discretion deem necessary or advisable. For so long as any of the Obligations remain outstanding: (i) Pledgor shall not sell, assign, transfer, exchange, or otherwise dispose of the Collateral without Secured Party's prior written consent; and (ii) Secured Party is hereby irrevocably authorized and appointed as agent and attorney in fact of Pledgor, which appointment is coupled with an interest, to sign and deliver, if applicable, such documents, endorsements and instruments, including, but not limited to the Documents, and to take all such action in the name of Pledgor or Secured Party, as Secured Party may in its sole, but reasonable, discretion deem necessary or advisable to perfect, preserve or enforce its interest in and lien on the Collateral, in the event Pledgor fails to do so promptly following Secured Party's request or if an Event of Default then exists. Notwithstanding the foregoing or anything else to the contrary herein, Secured Party acknowledges and agrees that for so long as the Borrower's obligations to Super G Capital, LLC, a Delaware limited liability company (with its successors and assigns, "Senior Lender") under that certain Business Loan and Security Agreement by and between the Borrower and Senior Lender dated as of the date hereof (as it may be amended from time to time, the "Senior Loan Agreement") remain outstanding, the priority of the lien and security interest granted hereunder will be subordinate to the lien in favor of Senior Lender evidenced by that certain Pledge Agreement between Pledgor and Senior Lender dated as of the date hereof (as it may be amended from time to time, the "Senior Pledge Agreement").

4. <u>Adjustments and Dividends</u>. If during the term of this Agreement, any non-cash dividend, reclassification, readjustment or other change is declared or made in the capital structure of Borrower or any option included within the Collateral is exercised, or both, all new, substituted and additional membership interests, or other securities or property, issued to Pledgor by reason of any such change or exercise shall be pledged and/or delivered to and held by Secured Party under the terms of this Agreement in the same manner as the Collateral originally pledged hereunder. During the term of this Agreement, any other dividend or other distribution made on account of the Collateral will be included as "Collateral" pledged hereunder.

5. <u>Warrants and Rights</u>. If during the term of this Agreement, subscription warrants or any other rights or options shall be issued in connection with the Collateral, such warrants, rights and options shall be immediately assigned by Pledgor to Secured Party to be held under the terms of this Agreement in the same manner as the Collateral originally pledged hereunder.

6. <u>Voting Rights; Taxes and Other Charges; Power of Attorney</u>.

(a) Pledgor will not exercise any voting or consensual rights or powers relating to any Collateral in a manner that materially impairs Secured Party's rights with respect to the Collateral. Pledgor shall pay prior to delinquency all taxes, charges, liens and assessments against any of the Collateral and, upon Pledgor's failure to do so, Secured Party may, at its option, pay such charges and shall be the sole judge of the legality and validity thereof and the amount so paid shall become an obligation of Pledgor due hereunder upon demand. During the term of this Agreement, Pledgor will agree not to amend the Operating Agreement in any way that materially adversely affects the Pledged Interests or the security interest granted hereunder, without the prior written consent of Secured Party, which may be withheld in its sole discretion.

(b) Pledgor agrees that, except as otherwise provided in this Agreement, Secured Party may, while any uncured Event of Default exists, upon notice to Pledgor, either in Secured Party's name or in the name of Pledgor (i) notify the issuer of any Collateral, or any securities intermediary, to make payment to Secured Party of any amounts now or hereafter due or distributable on or in respect of any Collateral, (ii) enforce collection of any Collateral, whether by legal proceedings or otherwise, and endorse, receive and acknowledge receipt for all proceeds, dividends, interest, principal and other sums so collected, (iii) make any compromise or settlement Secured Party deems desirable or proper with respect to any Collateral, (iv) participate in any recapitalization, reclassification, reorganization, consolidation, redemption, stock split, merger or liquidation of any issuer of any Collateral and, in connection therewith, deposit or surrender control of any Collateral, accept money or other property in exchange for any Collateral, and take such other actions as Secured Party deems proper in connection therewith, (v) apply to the Obligations, in such order of application as Secured Party shall determine, in its sole discretion, any money or other property received on or in respect of, or in exchange for, any Collateral, or hold the same in a non-interest bearing account as additional or substitute Collateral pursuant to the provisions of this Agreement, (vi) cause all or any portion of the Collateral to be transferred into Secured Party's name or into the name of Secured Party's nominee, and (viii) exercise as to the Collateral all rights, powers and remedies of the owner thereof. Pledgor irrevocably appoints Secured Party, or any officer of Secured Party, as Pledgor's true and lawful attorney-in-fact, which appointment is coupled with an interest, with full power of substitution, to sign or endorse any instrument, document or other writing necessary or desirable to transfer title or other rights to or

in any of the Collateral, and to do all acts necessary or incidental to assert, protect and enforce Secured Party's rights in the Collateral and under this Agreement.

7. <u>Representations and Warranties</u>. For so long as any Obligations remain outstanding, Pledgor represents and warrants that: (a) Pledgor shall have full power, authority and legal capacity to enter into and perform this Agreement and has taken all necessary action to authorize the execution, delivery and performance of this Agreement; (b) Pledgor owns the Membership Interest; (c) this Agreement constitutes the legal, valid and binding obligation of Pledgor, enforceable in accordance with its terms, subject to bankruptcy, insolvency or other similar laws affecting the rights of creditors generally; (d) the execution, delivery and performance of this Agreement will not violate any law, treaty or regulation applicable to Pledgor, any order or decree of any court, arbitrator or governmental agency, or any contractual undertaking to which Pledgor is a party or by which Pledgor may be bound; (e) no consents, licenses, approvals or authorizations of, exemptions by or registrations or declarations with, any governmental authority are required with respect to this Agreement; (f) all of the Pledged Interests have been duly authorized and validly issued and are fully paid and non-assessable; (g) Pledgor has good title to the Collateral free and clear of all liens and encumbrances except the interests created hereby and the first priority lien in favor of Senior Lender evidenced by the Senior Pledge Agreement, and the pledge of the Pledged Interests hereunder creates a valid lien on, and a security interest in, the Pledged Interests and the proceeds thereof; and (h) while any Event of Default exists, Secured Party shall have the absolute and unqualified right to sell, at public or private sale, or otherwise dispose of the Collateral, in whole or in part, without restriction, contingent only upon the conditions set forth in this Agreement and otherwise under applicable law.

8. <u>Further Assurances</u>. Pledgor covenants and agrees that: (i) it will execute and deliver, or cause to be executed and delivered, all such powers, proxies, instruments and documents as Secured Party may reasonably request from time to time in order to carry out the provisions and purposes hereof; (ii) it will take all such other action as Secured Party may reasonably request from time to time in order to carry out the provisions and purposes hereof; (iii) it will defend the right, title and security interest of Secured Party in and to the Pledged Interests and the proceeds thereof, maintain and preserve the lien and security interest provided for by this Agreement against the claim and demands of all third parties, and the Collateral will remain free and clear of all security interests and liens (other than in favor of Secured Party and in favor of Senior Lender under the Senior Pledge Agreement) throughout the term hereof; and (iv) it will forward to Secured Party, immediately upon receipt, copies of any material information or documents received by Pledgor in connection with the Collateral. Pledgor warrants and represents that none of the Collateral constitutes margin securities for the purposes of Regulations T, U or X.

9. <u>Events of Default</u>. At Secured Party's option, it shall be an "<u>Event of Default</u>" under this Agreement upon:

(a) The breach by Pledgor of any representation, warranty, covenant or provision hereof, which breach (if reasonably susceptible to cure) is not cured within fifteen (15) calendar days after the earlier of written notice from Secured Party or the date on which Pledgor had actual knowledge of such breach; or

(b) The occurrence of any Event of Default (as defined in the Note).

4

**App. 169**

10. <u>Remedies Upon Default</u>. In addition to the other remedies provided for herein, in the Note or otherwise available under applicable law, upon and after the occurrence of an Event of Default:

(a) Secured Party may:

(i) Exercise in respect of the Collateral any one or more of the rights and remedies available under the Texas Uniform Commercial Code and other applicable law;

(ii) Sell or otherwise assign, give an option or options to purchase or dispose of and deliver the Collateral (or contract to do so), or any part thereof, in one or more parcels at public or private sale or sales, at any exchange, broker's board or at any of the Secured Party's offices or elsewhere upon such terms and conditions as it may deem advisable and such prices as it may deem best, for cash, on credit or for future delivery without assumption of any credit risk, free of any claim or right of whatsoever kind (including any right or equity of redemption) of Pledgor, which claim, right and equity are hereby expressly waived and released. Secured Party shall have the right to the extent permitted by applicable law, upon any such sale or sales, public or private, to purchase the whole or any part of the Collateral so sold. In case of any sale of all or any part of the Collateral on credit or for future delivery, the Collateral so sold may be retained by Secured Party until the selling price is paid by the purchaser thereof, but Secured Party shall incur no liability in case of the failure of such purchaser to pay for the Collateral so sold and, in case of such failure, the Collateral may again be sold as herein provided.

(b) Any notice required by applicable law to be given by Secured Party of a sale of the Collateral, or any part thereof, or of any other intended action by Secured Party, which occurs not less than ten (10) days prior to such proposed action, shall constitute commercially reasonable and fair notice to Pledgor thereof. No notification need be given to the Pledgor if it has signed, after the occurrence of an Event of Default, a statement renouncing or modifying any right to notification of sale or other intended disposition.

(c) Secured Party shall not be obligated to make any sale or other disposition of the Collateral or any part thereof unless the terms thereof shall, in its sole discretion, be satisfactory to it. Secured Party may, if it deems it reasonable, postpone or adjourn the sale of any of the Collateral or any part thereof, from time to time by an announcement at the time and place of such sale or by announcement at the time and place of such postponed or adjourned sale, without being required to give a new notice of sale. Pledgor agrees that Secured Party has no obligations to preserve rights against prior parties to the Collateral.

(d) Pledgor acknowledges and agrees that Secured Party may comply with limitations or restrictions in connection with any sale of the Collateral in order to avoid any violation of applicable law or in order to obtain any required approval of the sale or of the purchase thereof by any governmental regulatory authority or official and, without limiting the generality of the foregoing, Pledgor acknowledges and agrees that Secured Party may be unable to effect a public sale of any or all of the Collateral by reason of certain prohibitions contained in the federal securities laws and applicable state securities laws, but may be compelled to resort to one or more private sales thereof to a restricted group of purchasers who will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the

distribution or resale thereof. Pledgor acknowledges and agrees that any such private sale may result in prices and other terms less favorable to the seller than if such sale were a public sale. Notwithstanding any such circumstances, Pledgor acknowledges and agrees that such compliance shall not result in any such private sale for such reason alone being deemed to have been made in a commercially unreasonable manner. Secured Party shall not be liable or accountable to Pledgor for any discount allowed by reason of the fact that the Collateral is sold in compliance with any such limitation or restriction. Secured Party shall not be under any obligation to delay a sale of any of the Collateral for the period of time necessary to permit the issuer of such securities to register such securities for public sale under the federal securities laws, or under applicable state securities laws, even if the issuer desires, requests or would agree to do so.

(e) Any cash held by Secured Party as Collateral and all cash proceeds received by the Secured Party in respect of any sale of, collection from, or other realization upon all or any part of the Collateral may, in the discretion of the Secured Party, be held by Secured Party as Collateral for the Obligations and/or then or at any time thereafter applied, without any marshalling of rights, remedies or assets, and after payment of any amounts payable to Secured Party hereunder and, after deducting all reasonable costs and expenses of every kind in connection with the care, safekeeping, collection, sale, delivery or otherwise of any or all of the Collateral or in any way relating to the rights of Secured Party hereunder (including reasonable attorneys' fees and costs), to the payment of reduction of the Obligations. Pledgor agrees to pay on demand all such costs and expenses. Any surplus of such cash or cash proceeds held by Secured Party and remaining after payment in full of all the Obligations shall be paid over to Pledgor or to whomsoever may be lawfully entitled to receive such surplus.

Notwithstanding the foregoing or anything to the contrary herein, Secured Party acknowledges and agrees that so long as Borrower's obligations to Senior Lender under the Senior Loan Agreement remain outstanding, Secured Party's rights and remedies hereunder are subject to that certain Collateral Assignment of Rights Under Acquisition Transaction Documents and Subordination Agreement, dated as of the date hereof, between Senior Lender and the Borrower and acknowledged by Secured Party and its sole owner.

11. <u>Special Covenants</u>.

(a) <u>Waivers</u>. Pledgor hereby waives: (i) except as otherwise expressly provided in this Agreement, presentment for payment, demand, protest, and notice thereof as to any instrument, and all other notices and demands to which Pledgor might be entitled, including without limitation notice of all of the following: the acceptance hereof; the creation, existence, or acquisition of any Obligations; the amount of the Obligations from time to time outstanding; any adverse change in the Borrower's financial position; any other fact which might increase Pledgor's risk or liability; any default, partial payment or non-payment of all or any part of the Obligations; any and all agreements and arrangements between Secured Party and the Borrower and any changes, modifications, or extensions thereof; (ii) any right to require Secured Party to institute suit against, or to exhaust its rights and remedies against, the Borrower or any other person, or to exercise any other right or power, or pursue any other remedy Secured Party may have; (iii) any defense arising by reason of any disability or other defense of the Borrower or any endorser, guarantor, co-maker or other person, or by reason of the cessation from any cause whatsoever of any liability of the Borrower or any endorser, guarantor, co-maker or other person, with respect to

6

all or any part of the Obligations; and (iv) until the Obligations have been finally paid and performed in full, all rights of subrogation, reimbursement, and indemnity whatsoever, and all rights of recourse to or with respect to any assets or property of the Borrower and any collateral or security for any or all of the Obligations.

(b) <u>Consents</u>. Pledgor hereby consents and agrees that, without notice to or further consent by Pledgor and without affecting or impairing in any way Secured Party's rights hereunder, Secured Party may do any one or more of the following: (i) accelerate, accept partial payments of, compromise or settle, renew, extend the time for the payment, discharge, or performance of, refuse to enforce, and release all or any parties to, any or all of the Borrower's Obligations under the Note; (ii) accept, release, waive, surrender, enforce, exchange, modify, impair, or extend the time for the performance, discharge, or payment of, any and all property, real, personal, or mixed, tangible or intangible, securing any or all of the Borrower's Obligations, or on which Secured Party at any time may have a lien, or refuse to enforce its rights or make any compromise or settlement or agreement therefor in respect of any or all of such property; (iii) release, substitute or add any one or more endorsers or guarantors of all or any part of the Borrower's Obligations, including, without limitation one or more parties to this Agreement; (iv) amend, alter or change in any respect whatsoever any term or provision relating to any or all of the Borrower's Obligations, including any rate of interest thereon; and (v) exercise any right or remedy Secured Party may have with respect to any or all of the Borrower's Obligations or any property, real, personal or mixed, tangible or intangible, securing any or all of such Obligations or any guaranty thereof, including but not limited to judicial foreclosure, exercise of a power of sale, and taking a deed, assignment or transfer in lieu of foreclosure as to any such property, and no such action or proceeding shall affect Secured Party's rights hereunder notwithstanding the effect of any such action or proceeding upon any of Pledgor's rights, including without limitation, any destruction of Pledgor's right of subrogation against the Borrower.

(c) <u>Financial Condition of the Borrower</u>. Pledgor is fully aware of the financial condition of the Borrower and is executing and delivering this Agreement based solely upon its own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representation or statement of Secured Party with respect thereto. Pledgor represents and warrants that Pledgor is in a position to obtain, and Pledgor hereby assumes full responsibility for obtaining, any additional information concerning the Borrower's financial condition and any other matter pertinent hereto as Pledgor may desire, and Pledgor is not relying upon or expecting Secured Party to furnish to Pledgor any information now or hereafter in Secured Party's possession concerning the same or any other matter. Pledgor shall have no right to require Secured Party to obtain or disclose any information with respect to the Borrower's Obligations, the financial condition or character of the Borrower, the existence of any other collateral for any or all of the Borrower's Obligations, any action or non-action on the part of the Secured Party, the Borrower, or any other person, or any other matter, fact, or occurrence.

(d) <u>Additional Waivers</u>. The obligations of Pledgor hereunder shall be enforceable without regard to the validity, regularity or enforceability of any of the Borrower's Obligations or any of the documents related thereto, any guaranty of such Obligations or any collateral security documents securing any of such Obligations or securing any guaranty of such Obligations. No exercise by Secured Party of, and no omission of Secured Party to exercise, any power or authority recognized herein and no impairment or suspension of any right or remedy of

Secured Party against the Borrower, any other guarantor, maker or endorser or any collateral security shall in any way suspend, discharge, release, exonerate or otherwise affect any of Pledgor's obligations hereunder or any collateral security furnished by Pledgor or give to Pledgor any right of recourse against Secured Party.

(e) <u>Waiver of Marshalling</u>. Pledgor waives any right it may now or hereafter have to require Secured Party to marshal assets, to exercise rights or remedies in a particular manner, or to forbear from exercising such rights and remedies in any particular manner or order.

12. <u>Term</u>. This Agreement shall remain in full force and effect until all of the Obligations have been finally satisfied and paid and performed in full. At the expiration of the term of this Agreement, Secured Party shall, at Pledgor's reasonable cost, return to Pledgor all membership interest certificates and other documents relating to this Agreement, together with any further documents necessary to establish that the within pledge is terminated.

13. <u>Notices</u>. Any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, telecopied, emailed or sent by United States mail or courier service and shall be deemed to have been given when delivered in person, receipt of facsimile or email, or three (3) Business Days after depositing it in the United States mail, registered or certified, with postage prepaid and properly addressed. Notices shall be sent to the addresses set forth below the signature of each party (until notice of a change thereof is delivered as provided in this <u>Section 13</u>).

14. <u>Successors and Assigns</u>. This Agreement shall be binding upon and shall inure to the benefit of the heirs, administrators, successors and assigns of Secured Party and Pledgor, provided, however, that Pledgor may not assign any of its rights or delegate any of the Obligations hereunder without the prior written consent of Secured Party. Secured Party may not sell, assign, transfer, participate, pledge or otherwise dispose of all or any part of the Obligations and/or the Collateral therefor without Pledgor's prior written consent, unless an Event of Default then exists, except to an assignee of the Note as permitted under Section 10 of the Note. In the event of such transfer, each and every immediate and successive purchaser, assignee, transferee, participant, pledgee or holder of all or any part of the Obligations and/or the Collateral (each, a "<u>Holder</u>") shall have the right to enforce this Agreement, by legal action or otherwise, for its own benefit as fully as if such Holder were herein by name specifically given such rights.

15. <u>Attorneys' Fees</u>. In the event any action or proceeding is commenced to enforce the terms and provisions of this Agreement, the prevailing party in such action or proceeding shall be entitled to recover from the losing party therein, such prevailing party's costs and expenses, including, without limitation, reasonable attorneys' fees and costs and court costs.

16. <u>Integrated Agreement</u>. This Agreement sets forth the entire understanding of the parties with respect to the within matters, and may not be modified except by a writing signed by all parties.

17. <u>Severability</u>. If any clause or provision herein contained operates or would prospectively operate to invalidate this Agreement in whole or in part, then such clause or

provision shall be held for naught as though not contained herein, and the remainder of this Agreement shall remain operative and in full force and effect.

    18.     <u>Interpretation</u>. The representations, warranties and covenants of each person or entity constituting Pledgor are joint and several. This Agreement has been reviewed and negotiated by each of the parties and their counsel and, therefore, cannot be construed against the drafter. Masculine and feminine terms shall include the neuter as applicable.

    19.     <u>Governing Law; Forum Selection; Consent to Jurisdiction</u>. Sections 20, 23 and 24 of the Note are hereby incorporated herein by this reference, with the names of the parties to this Agreement and the applicable documents being used instead of those in the Note.

    20.     <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original, and such counterparts will together constitute one and the same instrument. The signatures to this Agreement may be evidenced by facsimile or scanned email copies reflecting the party's signature hereto, and any such facsimile copy or scanned email copies will be sufficient to evidence the signature of such party as if it were an original signature. Any failure by either party to deliver original counterparts will not affect the validity or the delivery of this Agreement.

[Remainder of Page Is Intentionally Left Blank.<br>Signatures on Following Page.]

37606.17/497307v4

"PLEDGOR"

BAYMARK ACET HOLDCO, LLC,
a Texas limited liability company

By: _____
    David J. Hook, President

Address for notices:

Granite Park II
5700 Granite Parkway, Suite 435
Plano, Texas 75024
Attention: David Hook
Email: dhook@baymarkpartners.com

with a copy to:

Hallett & Perrin, P.C.
1445 Ross Avenue, Suite 2400
Dallas, Texas 75202
Attention: Gordon T. Foote II
Email: gfoote@hallettperrin.com

"SECURED PARTY"

ACET VENTURE PARTNERS LLC,
a Texas limited liability company

By: _____
    _____

Address for notices:

1501 10th Street, Suite 100
Plano, Texas 75074
Attention: Tomer Damti

Security Agreement
Signature Page

**App. 175**

"PLEDGOR"

BAYMARK ACET HOLDCO, LLC,
a Texas limited liability company

By: _____
    David J. Hook, President

Address for notices:

Granite Park II
5700 Granite Parkway, Suite 435
Plano, Texas 75024
Attention: David Hook
Email: dhook@baymarkpartners.com

with a copy to:

Hallett & Perrin, P.C.
1445 Ross Avenue, Suite 2400
Dallas, Texas 75202
Attention: Gordon T. Foote II
Email: gfoote@hallettperrin.com

"SECURED PARTY"

ACET VENTURE PARTNERS LLC,
a Texas limited liability company

By: _____
    Tomer Damti, President

Address for notices:

1501 10th Street, Suite 100
Plano, Texas 75074
Attention: Tomer Damti

Security Agreement
Signature Page

**App. 176**