UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), *et al*., | § § § | |
| **Plaintiffs,** | § § | |
| | § | CIVIL CAUSE NO. 3:21-CV-01171-B |
| v. | § § | |
| BAYMARK PARTNERS, LP; *et al.* | § § | |
| **Defendants.** | § § | |

**DEFENDANTS SG CREDIT PARTNERS, INC.'S AND MARC COLE'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

Andrea Levin Kim
State of Texas Bar No. 00798327
Northern District Bar No. 00798327
**DANIELS TREDENNICK, PLLC**
6363 Woodway Dr., Ste 700
Houston, Texas 77057
Telephone: (713) 917-0024
Fax: (713) 917-0026
Email: andrea.kim@dtlawyers.com

Rachel Williams
State of Texas Bar No. 24067175
Northern District Bar No. 24067175
**WILLIAMS LAW, PC**
10300 N. Central Expy., Ste. 544
Dallas, Texas 75231
Telephone: (214) 550-2858
Fax: (214) 550-2856
Email: rachel@williamslawtx.com

COUNSEL TO DEFENDANTS SG CREDIT
PARTNERS, INC. and MARC COLE

# TABLE OF CONTENTS

I.   TABLE OF AUTHORITIES ..................................................................................III

II.  FACTUAL BACKGROUND .................................................................................1

III. ARGUMENT ......................................................................................................4

    A.  Pursuant to Rule 12(b)(6), implausible claims must be dismissed....................................4

    B.  Each of the claims asserted against Credit Partners fails to plausibly allege any involvement on the part of Credit Partners and therefore must be dismissed....................5

    C.  Claims brought on behalf of Plaintiffs other than D&T must fail. ....................................9

    D.  The SAC fails to allege plausible RICO violations against Credit Partners and Cole. ......10

        1.  Plaintiffs do not allege the core RICO elements as to any defendant. .......................10

        2.  Neither Credit Partners nor Cole is a RICO "person" subject to liability..................11

        3.  Plaintiffs do not plausibly allege that Credit Partners or Cole operated or managed any alleged RICO enterprise in violation of § 1962(c)..............................13

        4.  Plaintiffs' § 1962(a) claim against Credit Partners fails to allege cognizable injury...............................................................................15

        5.  Plaintiffs' § 1962(d) conspiracy claim fails as to Credit Partners and Cole. ..............16

        6.  Plaintiffs fail to allege causation for its § 1962(c) and (d) RICO claims. .................17

    E.  The Court should dismiss Plaintiffs' State Law Claims. .................................................18

        1.  The State Law Fraud Claims are subject to Rule 9(b)'s heightened pleading standard. ........................................................................19

        2.  Plaintiffs fail to plead a basis of liability against Cole or Credit Partners. ................20

        3.  The State Law Claims All Fail. ...............................................................................21

            i.   Count IV: Plaintiffs fail to state a fraud claim against Cole. ..............................21

            ii.  Count VI: Plaintiffs fail to state a claim of aiding and abetting breach of fiduciary duty against Credit Partners or Cole. ..................................................22

            iii. Count VII: Plaintiffs fail to state a TUFTA claim against Credit Partners or Cole....................................................................................23

iv.  Count VIII: Plaintiffs fail to allege civil conspiracy against Credit Partners or Cole. ...........................................................................................................24

F.  If the RICO claims are dismissed, then there is no basis to exercise personal jurisdiction over Credit Partners, and the remaining claims against it should be dismissed under Rule 12(b)(2). .....................................................................................24

IV. CONCLUSION .............................................................................................................25

# I.   TABLE OF AUTHORITIES

**Cases**

*7-Eleven Inc. v. Puerto Rico-7 Inc.*,
   2008 WL 4951502 (N.D. Tex. Nov. 19, 2008) ....................................................................19

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ...........................................................................................................17

*Armendiarz v. Chowaiki*,
   2016 WL 8856919 (W.D. Tex. Mar. 31, 2016) ...................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .....................................................................................................*passim*

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................................5

*Castillo v. First City Bancorporation of Texas, Inc.*,
   43 F.3d 953 (5th Cir. 1994) ................................................................................................19

*Chaney v. Dreyfus Serv. Corp.*,
   595 F.3d 219 (5th Cir. 2010) ..............................................................................................16

*Chau v. Aviva Life & Annuity Co.*,
   2011 WL 1990446 (N.D. Tex. May 20, 2011) ................................................. 19, 20, 22, 23

*Com. Metals Co. v. Chazanow*,
   2009 WL 3853704 (N.D. Tex. Nov. 17, 2009)....................................................................12

*Cortis, Inc. v. Cortislim Int'l, Inc.*,
   2016 WL 6330579 (N.D. Tex. July 22, 2016) ......................................................................8

*Crowe v. Henry*,
   43 F.3d 198 (5th Cir. 1995) ................................................................................. 10, 12, 16

*Davis-Lynch, Inc. v. Moreno*,
   667 F.3d 539 (5th Cir. 2012) .......................................................................................13, 15

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*,
   855 F.2d 241 (5th Cir. 1988) ..............................................................................................11

*Ebert v. Gustin*,
   2016 WL 11663164 (N.D. Tex. May 12, 2016) ...................................................... 19, 22, 24

*Fernandez-Lopez v. Hernandez*,
   2020 WL 9396523 (W.D. Tex. Oct. 1, 2020)......................................................................14

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) ........................................................................................12

*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992) ........................................................................................17

*Hunt v. Calfrac Well Services Corp.*,
  2016 WL 8849824 (W.D. Tex. Jul. 29, 2016) ........................................................8

*In re NE 40 Partners, Ltd.*,
  411 B.R. 352 (Bankr. S.D. Tex. 2009) ................................................................19

*Kan v. OneWest Bank, FSB*,
  823 F. Supp. 2d 464 (W.D. Tex. 2011) ................................................................5

*Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*,
  901 F.2d 404 (5th Cir. 1990) ............................................................................12

*Miller v. SS Hosp. Grp., LLC*,
  2018 WL 3054691 (N.D. Tex. 2018) ....................................................................3

*Norfolk S. Ry. Co. v. Trinity Indus., Inc.*,
  2009 WL 362437 (N.D. Tex. Feb. 13, 2009) ........................................................9

*Oblio Telecom, Inc. v. Patel*,
  711 F. Supp. 2d 668 (N.D. Tex. 2008) ..............................................................25

*Parker & Parsley Petroleum Co. v. Dresser Indus.*,
  972 F.2d 580 (5th Cir. 1992) ............................................................................18

*Quadvest, L.P. v. San Jacinto River Auth.*,
  7 F.4th 337 (5th Cir. 2021) ................................................................................3

*Ranieri v. AdvoCare Int'l, L.P.*,
  336 F. Supp. 3d 701 (N.D. Tex. 2018) ........................................................13, 16

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ........................................................................................13

*Rojero v. El Paso Cty.*,
  226 F. Supp. 3d 768 (W.D. Tex. 2016) ..............................................................20

*Saeed v. Bennett-Fouch Assocs., LLC*,
  2012 WL 13026741 (N.D. Tex. Aug. 28, 2012) ..............................20, 21, 22, 23

*SSP Partners v. Gladstrong Invs. (USA) Corp.*,
  275 S.W.3d 444 (Tex. 2008) ..............................................................................8

*St. Paul Mercury Ins. Co. v. Williamson*,
    224 F.3d 425 (5th Cir. 2000) ............................................... 15

*Tassio v. Onemain Fin., Inc.*,
    2016 WL 7799626 (E.D. Tex. Oct. 28, 2016) ..................... 14

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ............................................... 19

*U.S. v. Americus Mort. Corp.*,
    2013 WL 4829284 (S.D. Tex. Sept. 10, 2013) ...................... 8

*U.S. v. Vista Hospice Care, Inc.*,
    2014 WL 12580020 (N.D. Tex. Aug. 4, 2014) ...................... 8

*Umbrella Inv. Group, L.L.C. v. Wolters Kluwer Fin. Servs., Inc.*,
    972 F.3d 710 (5th Cir. 2020) ....................................... 20, 23

*United Healthcare Servs., Inc. v. Next Health, LLC*,
    2021 WL 764035 (N.D. Tex. Feb. 26, 2021) ...................... 15

*VeroBlue Farms USA, Inc. v. Wulf*,
    465 F. Supp. 3d 633 (N.D. Tex. 2020) ............................... 25

*Walker v. Beaumont Ind. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ................................................. 6

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ............................... 18, 19, 22

*Wilson v. Deutsche Bank Trust Co. Americas*,
    2019 WL 175078 (N.D. Tex. Jan. 10, 2019) ........................ 6

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*,
    90 F.3d 118 (5th Cir. 1996) ............................................... 14

*Zucker v. Farish*,
    2018 WL 6570867 (N.D. Tex. Dec. 12, 2018) ...................... 5

## Statutes

Tex. Bus. Orgs. Code § 101.463(b) ......................................... 10

## Rules

FED. R. CIV. P. 9 ..................................................................... 22

Pursuant to Rules 12(b) and 9(b) of the Federal Rules of Civil Procedure, Defendants SG CREDIT PARTNERS, INC. ("Credit Partners") and MARC COLE ("Cole") hereby submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint ("SAC") filed by Plaintiffs D&T PARTNERS, LLC ("D&T"), *et al.* (collectively, "Plaintiffs").

## II.  FACTUAL BACKGROUND

This is now Plaintiffs' *third* attempt to assert claims against Credit Partners, Cole and other persons and entities under the guise of a civil RICO claim in an untenable effort to expand Plaintiffs' attempts to collect a debt from ACET Global, LLC ("ACET") and others via an action still pending in the Texas state court (*D&T Partners, LLC vs. ACET Global, LLC, et al.*, No. DC-19-09828 District Court, Dallas County, 116th Jud. District ("Collection Action")), in which extensive discovery has taken place and trial is imminent. Despite having already attempted twice to plead their claims sufficiently in this Court, having previously been denied a continuance to add Cole and others as defendants in the Collection Action, and further having been afforded one more chance to amend their pleadings in light of the deficiencies noted in this Court's May 9, 2022, Memorandum Opinion and Order (Doc. 89, the "Dismissal Order") dismissing Plaintiffs' First Amended Complaint (Doc. 36, the "FAC"), the SAC adds *no* new factual allegations to support Plaintiffs' claims against Credit Partners and Cole. Rather, a redlined comparison of the FAC against the SAC, attached as **Exhibit A** hereto, reveals that the SAC merely recasts the same underlying transaction as a series of schemes over a period of time to fraudulently transfer ACET's assets. (*See, e.g.*, Exhibit A, SAC, ¶¶ 14, 19, 81, 180, 231, 236, 315, 327.) However Plaintiffs attempt to dress up their allegations, the SAC's sparse allegations against Credit Partners and Cole lack any cogent articulation of a claim against either, much less any plausible claims under Rule 12.

The SAC still alleges nothing more than, as this Court described in its Dismissal Order, "a business dispute between a former secured creditor and a newly formed company [Windspeed Trading, LLC ("Windspeed")] and its associated parties." (Dismissal Order, at 3.) The salient allegations of the SAC are unchanged (apart from the paragraph numbers, which are cross-referenced in Exhibit A) from the recitation set forth in the Court's Dismissal Order, with which the Court is presumed to be familiar.

The SAC contains *no* new factual allegations against Credit Partners or Cole. As in the FAC, the SAC contains almost no reference to Credit Partners, and only limited, passing references to Cole solely as having acted on behalf of Super G Capital, LLC ("Super G"). Indeed, Credit Partners is conspicuously absent from the events, and in particular the allegedly fictitious foreclosure sale and workout transaction described in the SAC. The entirety of the factual allegations involving Credit Partners in the SAC are as follows:

**31.** Likewise, the Court has personal jurisdiction over Defendant SG Credit because it has purposefully directed actions at this forum to obtain benefits from the scheme. SG Credit assumed a contract with an entity domiciled in and doing business in Texas (*i.e.*, ACET Global); had an employee in Texas (*i.e.*, Steven Bellah); assumed ownership of, and a board member seat of, a Texas-based entity (Windspeed); and conspired with Texas-based persons.
**41.** footnote 28. According to the sworn testimony of Marc Cole, the "SG" in SG Credit Partners is an acronym that stands for "Super G"—that is, "Super G" Credit Partners, LP.
**50.** Defendant Cole is an individual and the Managing Director of SG Credit and CFO of Super G at all times relevant to this complaint. …
**51.** Defendant Bellah is an individual and senior executive of SG Credit and Super G at all times relevant to this complaint. …
**76.** Super G had a rudimentary record-keeping system, maintaining its records on Dropbox. All the records related to the transactions at issue were also stored in Super G's Dropbox folder. Although Cole maintains that he has moved from Super G to SG Credit, he still maintains access to all of Super G's records via its Dropbox account. …
**80.** Nonetheless, when Cole "transitioned" to SG Credit, he and his associates maintained access to the records from their group's loan clients, **including ACET Global**. … Indeed, Cole was the Super G corporate representative and agent in 2021. The ACET Global transaction was transferred to Cole and SG Credit, and Cole and his associates oversaw and handled the ACET matter—continuing the fraudulent scheme in the same manner.
**315.** The Baymark Defendants … conspired with Super G, SG Credit, Cole, Bellah,

Windspeed, Szerto, Lin, Tomerlin, Vattana, Kettter, Torres, Hallett & Perrin, and Smith (collectively the "RICO Enterprise") to carry out a series of interrelated schemes to fraudulently siphon off ACET Global's trade secrets and assets for their own benefit; transfer assets out of the reach of ACET's creditors, including D&T; and to hide and conceal their fraudulent acts as well as obfuscate the assets available to satisfy creditors.

**316.** The RICO Enterprise had a clearly ascertainable structure. … Hook, Ludlow, and Denegre conspired from the beginning to defraud Plaintiffs and other creditors, closely colluding with Super G, SG Credit, Cole, Bellah, Windspeed, Szeto, Hallett & Perrin, and Smith—the RICO Enterprise's mid-level conspirators.

(SAC ¶¶ 31, 41 n.28, 50-51, 76, 80, 315 & 316 (footnotes omitted, emphasis in original).)[1]

The SAC does not allege that Credit Partners actually *did* anything in connection with the alleged scheme—notably, Credit Partners is not identified anywhere in the extensive list of predicate acts allegedly forming the RICO enterprise (*see* SAC ¶¶ 317, 335-404)—and, although Bellah (inaccurately) and Cole are alleged to be employed by Credit Partners, the SAC does not allege that either Bellah or Cole took any action on Credit Partners' behalf. Likewise, the allegations concerning Cole's conduct involve actions Cole purportedly took on behalf of Super G in connection with the claimed foreclosure sale of ACET's assets. The SAC does not allege that Cole took any action on behalf of Credit Partners, ACET, Windspeed, or any of the Baymark entities and agents named as defendants.[2]  Plaintiffs allege that Cole approved the original ACET loan *on behalf of Super G*; that *Super G*, through Cole, knew that Windspeed was involved in the ACET loan workout; and that Cole, *on behalf of Super G*, executed the Amended and Restated

---

[1] The exhibits Plaintiff attached to the SAC flatly contradict several of these allegations. For example, Cole did not testify that "SG" in SG Credit Partners, Inc. is an acronym for "Super G"—in fact, he testified that "SG" "doesn't stand for anything, but it pays tribute to where we came from, which is Super G Capital." (SAC, Ex. 8 (Cole 3/29/2021 Tr.) at 70:4-19.) He also testified that Bellah was never employed by Credit Partners. (*Id.* at 148:6-18.) Furthermore, Cole clearly and unequivocally testified that Credit Partners did not purchase either the original ACET loan or the subsequent Windspeed loan and that neither loan was "transferred" to Credit Partners. (SAC, Ex. 9 (Cole 4/1/21 Tr.) at 269:1-15.) Plaintiffs have no basis to assert otherwise, and their assertions are directly contradicted by Cole's deposition testimony incorporated into the SAC. *See Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021) ("If an attached exhibit contradicts a factual allegation in the complaint, then indeed the exhibit and not the allegation controls.") (internal quotation marks omitted); *Miller v. SS Hosp. Grp., LLC*, 2018 WL 3054691, at *4 (N.D. Tex. 2018) (same).

[2] The "Baymark Defendants" are Baymark Partners, LP; Baymark Partners Management, LLC; Baymark Management, LLC; Baymark ACET Holdco, LLC; Baymark ACET Direct Invest, LLC; and Baymark Partners.

Company Agreement of Windspeed and the Warrant Purchase Agreement with Windspeed, transferred additional capital to Windspeed pursuant thereto, and also took over Bellah's Windspeed board member position after Bellah resigned from Super G. (SAC ¶¶ 72, 75, 79, 119-120, 156, 299 & 317.)  Plaintiffs further allege that Cole, *on behalf of Super G*, executed the Foreclosure Sale Agreement by which Windspeed purchased all of ACET's assets that Super G purportedly had foreclosed upon in exchange for Windspeed's execution of a loan agreement in the amount of $514,144.86 in favor of Super G. (SAC ¶¶ 237 & 254, Exs. 17, 18, & 24.)  Those actions, each of which is expressly alleged to have been taken or was indisputably taken *on behalf of Super G* as a counterparty to the workout transaction described in the SAC, are the sum total of what Cole is alleged to have done.

In reliance on the foregoing allegations, the SAC asserts the following claims against Credit Partners and/or Cole: violation of 18 U.S.C. § 1962(c) against Credit Partners, Cole, and others (Count I); violation of 18 U.S.C. § 1962(a) against Credit Partners and others (not Cole) (Count II); violation of 18 U.S.C. § 1962(d) against Credit Partners, Cole, and others (Count III); common law fraud against Credit Partners, Cole, and others (Count IV); aiding and abetting breach of fiduciary duties against Credit Partners, Cole, and others (Count VI); violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA") against Credit Partners, Cole, and others (Count VII); civil conspiracy against Credit Partners, Cole, and others (Count VIII), and respondeat superior/agency liability apparently against all entity defendants (Count VIX[sic]).

## III. ARGUMENT

### A.  Pursuant to Rule 12(b)(6), implausible claims must be dismissed.

To pass muster under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. … A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 678-79. Only factual allegations push a claim beyond "the line between possibility and plausibility of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks omitted). "The court will not strain to find inferences favorable to the plaintiffs and the court will not accept conclusory allegations, unwarranted deduction, or legal conclusions." *Zucker v. Farish*, 2018 WL 6570867, at *6 (N.D. Tex. Dec. 12, 2018) (internal quotation marks omitted).

**B. Each of the claims asserted against Credit Partners fails to plausibly allege any involvement on the part of Credit Partners and therefore must be dismissed.**

As a threshold matter, the SAC utterly fails to plausibly allege any conduct on the part of Credit Partners whatsoever.  Having failed to do so, under any conceivable pleading standard, Plaintiff literally fails to state a claim against Credit Partners, through agency principles or otherwise, and such claims must be dismissed.

Moreover, Plaintiffs do not plead any connection between Credit Partners and the wrongful conduct alleged. Under *Twombly*, "factual allegations must be placed in a context plausibly suggesting (not merely consistent with) each required element of the claim against each defendant." *Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 469 (W.D. Tex. 2011). Claims are

5

"deficient" if such claims "ascribe singular acts" to multiple defendants, thereby failing "to plead a plausible claim against either defendant in particular," or are "otherwise too vague or internally contradictory to provide notice." *Wilson v. Deutsche Bank Trust Co. Americas*, 2019 WL 175078, at *7 (N.D. Tex. Jan. 10, 2019). With respect to RICO claims in particular, a plaintiff "must plead the specified facts as to each defendant. It cannot lump together the defendants." *Walker v. Beaumont Ind. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019) (internal quotation marks omitted). Stripped of legal conclusions and superfluous discussions of caselaw and statutes (*see, e.g.*, SAC ¶¶ 322, *et seq.*), the SAC does not allege that Credit Partners did anything in connection with the alleged scheme, and, although Bellah (inaccurately) and Cole are alleged to now be employed by Credit Partners, the SAC does not allege that either Bellah or Cole took any action on Credit Partners' behalf.

Rather than plead actions taken by Credit Partners, Plaintiffs attribute actions to Credit Partners that Plaintiffs expressly allege were taken on behalf of Super G. Plaintiffs allege that Credit Partners "assumed a contract with an entity domiciled in and doing business in Texas (*i.e.*, ACET Global); had an employee in Texas (*i.e.*, Steven Bellah); assumed ownership of, and a board member seat of, a Texas-based entity (Windspeed); and conspired with Texas-based persons," (SAC ¶ 31). The allegations that actually describe the foregoing actions, however, attribute each of those actions to *Super G* only. (*See* SAC ¶¶ 72, 75, 79, 119-120, 156, 237, 254, 299 & 317.) The allegation that Credit Partners assumed a contract with ACET is supported only by the vague and wholly conclusory claim that "[t]he ACET Global transaction was transferred to Cole and SG Credit," (SAC ¶ 80), without providing any factual basis for this allegation at all.  Moreover, the vague reference to a contract could not have been the loan agreement between Super G and ACET or the loan agreement between Super G and Windspeed, because as indicated in Exhibit 9 to the

SAC, incorporated by reference thereto, Cole expressly testified that neither the ACET nor subsequent Windspeed loans were transferred from Super G to Credit Partners. (SAC, Ex. 9 (Cole 4/1/2021 Tr.) at 268:22-269:16.) Overall, Plaintiffs fail to assert how *Credit Partners* is plausibly implicated in any of the alleged actionable conduct.

Any attempt to establish a connection between Super G and Credit Partners through Cole or Bellah, by agency principles or otherwise, fares no better. Plaintiff pleads that Cole transitioned from Super G to Credit Partners but continued to act in some capacity as an agent of Super G. (SAC ¶¶ 76 & 80.) That connection between Credit Partners and Cole lacks any relationship to the other factual allegations concerning the purported wrongdoing alleged in the SAC. Cole's retention of copies of loan files from Super G, which files included the ACET transaction (*Id.*), does not amount to any involvement (let alone wrongdoing) in that transaction by Credit Partners. Cole's alleged actions as an agent of Super G cannot possibly be a basis to state plausible claims against Credit Partners. A plausible connection between Super G and Credit Partners cannot be established through Bellah either. The conclusory allegation that Bellah is a senior executive of Credit Partners is demonstrably inaccurate because Cole testified simply and clearly at his deposition that Bellah *did not* work for Credit Partners. (SAC, Ex. 8 (Cole 3/29/2021 Tr.) at 148:6-18.) Notwithstanding that conclusory (and inaccurate) allegation, the SAC alleges that Bellah acted on behalf of Super G only (*see, e.g.*, SAC ¶ 73), and nowhere does the SAC allege that Bellah took any actions on behalf of Credit Partners. Again, there is no connection to Credit Partners regarding Cole's or Bellah's actions, and a claim devoid of any factual support is by definition implausible.

In addition to failing to plead a plausible factual basis connecting Credit Partners to any of the conduct alleged through agency principles, the SAC fails to identify any viable legal theory to hold Credit Partners liable for the actions of any other defendant. Indeed, even if one were identified,

there is no viable legal theory upon which Plaintiffs could possibly rely. Successor liability under Texas law generally is not recognized, *U.S. v. Vista Hospice Care, Inc.*, 2014 WL 12580020, *1 (N.D. Tex. Aug. 4, 2014), absent the alleged successor expressly agreeing to assume liability or where the acquisition was a fraudulent conveyance, *U.S. v Americus Mort. Corp.*, 2013 WL 4829284, *4 (S.D. Tex. Sept. 10, 2013). Regarding the latter exception, the successor company must have had had notice of the relevant claim prior to acquiring the assets, the predecessor can no longer satisfy the claim, and there is "a continuity of operations and the work force of the successor and predecessor employers." *Hunt v Calfrac Well Services Corp.*, 2016 WL 8849824, *2 (W.D. Tex. Jul. 29, 2016) (dismissing complaint). Plaintiffs have not pled that (1) there was any kind of transaction between Credit Partners and Super G that could render Credit Partners a successor to Super G;[3] (2) Credit Partners had notice of these allegations or lawsuits; (3) Super G is unable to provide the relief sought; or (4) there is "a continuity of operations and the work force" of Super G and Credit Partners, which is fatal to any possible claims against Credit Partners. Thus, the unpled legal theory of successor liability is unavailable to Plaintiffs even if it were pled.

The unpled theory of piercing the corporate veil is also not an option for Plaintiffs even if it were pled. "Creation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008). In addition to the requisite interrelationship, in order to pierce the corporate veil there must also be evidence of abuse or injustice and inequity, which is shown "when the corporate structure has been abused to perpetrate a fraud, evade an existing obligation, achieve or perpetrate a monopoly, circumvent a statute, protect a crime, or justify wrong." *Cortis, Inc. v. Cortislim Int'l, Inc.*, 2016 WL 6330579, at *4 (N.D. Tex. July 22, 2016) (internal quotation marks

---

[3] Again, Cole unequivocally testified at his deposition that Credit Partners *did not* purchase the ACET or Windspeed loans from Super G. (SAC, Ex. 8 (Cole 3/29/2021 Tr.) at 269:6-15.)

omitted). Even if Plaintiffs had pled a veil piercing theory (which they have not), the SAC contains no factual allegations that could possibly state a plausible basis to hold Credit Partners liable for the actions of Super G under such a theory, much less the particularized showing required under Rule 9(b). *Norfolk S. Ry. Co. v. Trinity Indus., Inc.*, 2009 WL 362437, at *5 (N.D. Tex. Feb. 13, 2009) (holding that veil piercing "requires a particularized pleading of fraud under Rule 9(b)").

Lacking any plausible factual allegations against Credit Partners itself, or any legal or factual basis to hold Credit Partners liable for any of the alleged conduct of others, each of the claims asserted in the Complaint against Credit Partners (Counts I-III & VI-VIX[sic]) fail to state a claim upon which relief may be granted and must be dismissed.

### C. Claims brought on behalf of Plaintiffs other than D&T must fail.

As set forth in detail in the motion papers submitted by the Baymark Defendants, Hook and Ludlow, Hallett & Perrin, P.C. and Julie A. Smith, which are adopted and incorporated herein by reference,[4] the assertion of the same claims by all named Plaintiffs raises a host of dispositive defects.  <u>First</u>, Plaintiffs make absolutely no effort to differentiate which claims they seek to bring derivatively, directly, or otherwise and provide no framework for doing so, which is cause for dismissal.  <u>Second</u>, any purported direct claims by any of the Plaintiffs as a member of ACET and Baymark ACET Holdco, LLC ("Holdco") and any claims purportedly brought by ACET in its own name also fail due to a lack of membership and lack of authorization. <u>Third</u>, to the extent Plaintiffs attempt to plead derivative claims on behalf of ACET and Holdco, Plaintiffs make no effort to comply with the procedural or substantive requirements of Fed. R. Civ. P. 23.1, which expressly applies to derivative actions, and Texas law because: (1) the SAC is unverified; (2) the SAC does not plausibly allege that any named Plaintiff is a member of either Holdco or ACET; and (3) the

---

[4] The Court in its Dismissal Order confirmed that "[e]quitable reasons support allowing the arguments applicable to one defendant to apply to all similarly situated defendants." Dismissal Order, at 8.

SAC lacks any allegation of a demand that the management of either ACET or Holdco bring an action in the name of the company against a third party, such as Credit Partners and Cole, as required under Tex. Bus. Orgs. Code § 101.453.

On this final point, Plaintiffs fail to account for the express provisions of Tex. Bus. Orgs. Code § 101.463(b), which limits application of the leeway afforded to closely held corporations to claims against "against a governing person, member, or officer of the limited liability company" and ***not*** to claims against third parties such as Credit Partners and Cole. Pleading that their derivative claims should be considered direct claims under § 101.463(c) (SAC, ¶476) in an attempt to avoid the mandatory demand requirement, Plaintiffs fail to account for the conditional language of that subsection expressly limiting its application to only claims to which § 101.463(b) applies. Tex. Bus. Orgs. Code § 101.463(c) (allowing a derivative claim to be deemed direct only "[i]f Sections 101.452-101.460 do not apply because of Subsection (b) and if justice requires"). Because Plaintiffs' claims against Credit Partners and Cole are derivative, and are claims against third parties to the entities, demand is not excused, and Plaintiffs' failure to plead compliance with the demand requirement is fatal to the derivative claims against Credit Partners and Cole.

**D. The SAC fails to allege plausible RICO violations against Credit Partners and Cole.**

*1. Plaintiffs do not allege the core RICO elements as to any defendant.*

In addition to the prerequisites of standing and causation, "any RICO claim necessitates 1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*." *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995). Despite being given the opportunity to correct the numerous deficiencies of Plaintiffs' RICO claim identified in the Dismissal Order and defendants' prior briefing, the SAC still fails to allege any of the required elements for such claim. The redlined comparison of the FAC against

the SAC, attached as **Exhibit A** hereto, reveals that the SAC alleges no new factual bases for Plaintiffs' claim, particularly with respect to Credit Partners and Cole, and instead adds a "Summary" section that only makes passing reference to Credit Partners and Cole and merely recharacterizes the same underlying transaction. (*See, e.g.*, Exhibit A, SAC, ¶¶ 315-321.)[5] Credit Partners and Cole hereby adopt and incorporate by reference the arguments in the other defendants' motion papers concerning the overall RICO pleading deficits as if fully set forth herein. Additionally, SG Credit and Cole make the following arguments with respect to the RICO pleading deficiencies as relating to SG Credit and Cole specifically.

### 2. *Neither Credit Partners nor Cole is a RICO "person" subject to liability.*

Neither Credit Partners nor Cole is a "person" under RICO and therefore cannot be liable under any RICO cause of action. "The object of all civil and criminal RICO actions is the RICO 'person,' the defendant." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988). In order to be a proper "person" or defendant in a RICO action, the person "must be either one that poses or has posed a continuous threat of engaging in acts of racketeering. … The continuous threat requirement may not be satisfied if no more is pled than that the person has engaged in a limited number of predicate racketeering acts." *Id.* "In most cases, pleading the existence of a 'pattern of racketeering activity' will supply this element of continuity to the RICO person," *i.e.*, evidence that a person engaged in a pattern of racketeering activity also may establish a continuous threat, but the requirement that a person has posed or poses a continuous threat to engage in such activity remains independent of the "pattern of racketeering activity" requirement and must be plausibly pled as to each particular defendant. *Id.*; *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*,

---

[5] While the SAC purports to set forth "at least 100 predicate acts", (SAC ¶ 318), and identifies several alleged statutory violations as predicate acts, (SAC ¶¶ 335-404, which notably nowhere mention Credit Partners or Cole), the SAC relies upon the same underlying alleged factual conduct as set forth in the FAC, which this Court already found to be deficient. (*See* Dismissal Order, at 8-15.)

901 F.2d 404, 426 (5th Cir. 1990) (holding that the plaintiffs "have not alleged that [the defendant] constitutes or has constituted a continuing threat—it is not a RICO person"); *see also H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (holding that a pattern depends on the acts themselves and that in order to "prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity"). Mere "isolated and sporadic" actions, even if such actions could be considered predicate acts, do not support a finding that the individual in question was a RICO person. *Crowe*, 43 F.3d at 204 (affirming dismissal of law firm that engaged in three potential predicate acts).

That distinction is critical here as to Credit Partners and Cole, because there is no allegation that Credit Partners or Cole on his own behalf engaged in any of the predicate acts allegedly constituting a pattern of racketeering activity. "Where, as here, multiple defendants are alleged to have contributed to the fraudulent predicate acts, a plaintiff must plead with sufficient particularity attribution of the alleged misrepresentations or omissions to each defendant; the plaintiff is obligated to distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud." *Com. Metals Co. v. Chazanow*, 2009 WL 3853704, at *4 (N.D. Tex. Nov. 17, 2009) (noting that predicate acts must be pled with particularity under Rule 9(b)) (internal quotation marks omitted). As discussed in the preceding sections, there is no allegation that Credit Partners did anything in connection with the alleged scheme, much less committed a predicate act. With respect to Cole, any action he was alleged to have taken was alleged or indisputably taken on behalf of Super G as a counterparty to the workout transaction described in the SAC, and to the extent any property was transferred, it was done by Super G and not Cole. As such, the allegations against Credit Partners and Cole do not even rise to the level of "isolated and sporadic" actions, which actions are legally insufficient to form a basis for civil RICO liability. Similarly, there is no

allegation that Credit Partners or Cole are involved in any alleged ongoing criminal activity. (*See* SAC ¶¶ 320-321 (alleging, without any factual basis, threat of expansion of Windspeed's operations and its continued utilization of ACET's trade secrets).) Credit Partners and Cole are the paradigmatic example of individuals who, having undertaken no racketeering activity whatsoever, necessarily pose no continuous threat of racketeering activity, and Counts I through III must be dismissed as to both Credit Partners and Cole.

> 3. *Plaintiffs do not plausibly allege that Credit Partners or Cole operated or managed any alleged RICO enterprise in violation of § 1962(c).*

Plaintiffs have also failed to plausibly allege that Credit Partners or Cole were participants in the conduct of the alleged RICO enterprise. "To 'participate, directly or indirectly, in the conduct of such enterprise's affairs' [pursuant to § 1962(c)], an individual must have some part in the operation or management of the enterprise itself." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012). "[O]ne must have some part in directing those affairs. Of course, the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, … but some part in directing the enterprise's affairs is required." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). In order to state a plausible claim, Plaintiffs must allege that each defendant, including but not limited to Credit Partners or Cole, participated in the operation of the enterprise or had some supervisory authority within the enterprise. *Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 701, 717 (N.D. Tex. 2018) (dismissing RICO claim). The SAC does not satisfy this requirement with respect to Credit Partners or Cole.

Plaintiffs allege that the RICO enterprise consisted of all defendants who conspired "to carry out a series of interrelated schemes to fraudulently siphon off ACET Global's trade secrets and assets for their own benefit; transfer assets out of the reach of ACET's creditors, including D&T; and to hide and conceal their fraudulent acts as well as obfuscate the assets available to satisfy

creditors." (SAC ¶ 315; *see also* SAC ¶ 327.) Plaintiffs allege that Credit Partners and Cole, together with Super G, Bellah, Windspeed, Szeto, Hallett & Perrin, and Smith, were the RICO enterprise's "mid-level conspirators". (SAC ¶ 316.) Alternatively, Plaintiffs allege that Baymark Partners, Windspeed, Super G "and/or" Credit Partners, or Hallett & Perrin constituted separate RICO enterprises. (SAC ¶¶ 428-432.) The precise composition of the RICO enterprise, however, matters not for the present purpose because, as to any possible enterprise, the SAC is entirely devoid of any allegation concerning Credit Partners' or Cole's role in operating or managing the RICO enterprise. Specifically, as to Credit Partners, there are no allegations that Credit Partners did anything at all in connection with the alleged scheme, and such a lack of allegations cannot possibly establish that Credit Partners operated or managed a RICO enterprise. At best, the SAC alleges that Cole, on behalf of Super G, knew of and ultimately approved the parts of the workout transaction, but that level of participation falls well short of alleging that Cole took part in any enterprise engaging in acts of racketeering. Well-established Fifth Circuit precedent makes "clear that where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996); *Fernandez-Lopez v. Hernandez*, 2020 WL 9396523, at *12 (W.D. Tex. Oct. 1, 2020) (dismissing RICO claim where "in addition to the short duration of time, the facts alleged in the complaint constitute nothing more than multiple acts that are part of a single legal transaction"); *Armendiarz v. Chowaiki*, 2016 WL 8856919, at * 11 (W.D. Tex. Mar. 31, 2016) (dismissing RICO claim where the "hundreds of acts comprising the RICO pattern "all arise out of the same lawful transaction."); *Tassio v. Onemain Fin., Inc.*, 2016 WL 7799626, at *4 (E.D. Tex. Oct. 28, 2016) (dismissing RICO claim alleging conduct "part of a single loan transaction"). Additionally, "[c]ourts will not find a RICO pattern if the allegations

involve a single, narrow purpose and one or few participants directed towards a single victim." *United Healthcare Servs., Inc. v. Next Health, LLC*, 2021 WL 764035, at *11 (N.D. Tex. Feb. 26, 2021). Because the only activity in which Cole is alleged to have participated is a "single, otherwise lawful transaction," *i.e.* the UCC foreclosure of the collateral securing the Super G loan, Cole's doing so cannot possibly amount to the operation or management of a RICO enterprise, and Plaintiffs's § 1962(c) claim (Count I) must be dismissed as to Credit Partners and Cole.

### 4. *Plaintiffs' § 1962(a) claim against Credit Partners fails to allege cognizable injury.*

Plaintiffs do not plead any plausible claim of RICO money laundering against Credit Partners (and does not allege one at all against Cole). First, "[t]o establish a § 1962(a) violation, a plaintiff must prove 1) the existence of an enterprise, 2) the defendant's derivation of income from a pattern of racketeering activity, and 3) the use of any part of that income in acquiring an interest in or operating the enterprise." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000). There is no allegation in the SAC that Credit Partners derived any income whatsoever from a pattern of racketeering activity even assuming that there was such a pattern, and, therefore, Plaintiffs have failed to plead an essential element of this claim against Credit Partners. Second, "[t]o establish a claim under § 1962(a), a plaintiff must show that its injuries resulted from the investment or use of racketeering proceeds. In other words, injuries resulting from predicate acts of 'racketeering activity' themselves cannot form the basis of an investment injury for purposes of § 1962(a). Instead, the court must determine whether the injuries asserted were the result of the predicate acts or of the investment of racketeering proceeds into a RICO enterprise." *Davis-Lynch, Inc.*, 667 F.3d at 550 (footnotes omitted). To allege a plausible claim, Plaintiffs must "present facts regarding how these alleged racketeering proceeds … were then invested in any enterprise" and how they were "injured by the *investment* of the proceeds." *Id.* at 550-51 (holding that the standard

was not met in either respect). Even if Plaintiffs had pled that Credit Partners derived any income from racketeering activity, the SAC is again devoid of any allegation that the investment of such proceeds by Credit Partners harmed Plaintiffs. Absent any non-conclusory allegations to that effect, Plaintiffs' § 1962(a) claim against Credit Partners (Count II) fails to state a claim upon which relief may be granted and should be dismissed.

   5.   *Plaintiffs' § 1962(d) conspiracy claim fails as to Credit Partners and Cole.*

   As with the balance of its RICO claims, Plaintiffs' RICO conspiracy claim fails as a matter of law. A legally sufficient RICO conspiracy claim under § 1962(d) requires plausible allegations demonstrating "(1) that two or more people agreed to commit a substantive RICO offense and (2) that [the defendant] knew of and agreed to the overall objective of the RICO offense. A person cannot be held liable for a RICO conspiracy merely by evidence that he associated with other conspirators or by evidence that places the defendant in a climate of activity that reeks of something foul. A conspirator must at least know of the conspiracy and adopt the goal of furthering or facilitating the criminal endeavor." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010) (internal quotation marks, citation omitted). "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement" by alleging an "agreement to commit predicate acts of racketeering." *Crowe*, 43 F.3d at 206 (internal quotation marks, citation omitted).

   Plaintiffs' RICO conspiracy claim does not meet the foregoing standard for two independent reasons. First, for the reasons set forth above, Plaintiffs failed to plausibly plead any substantive RICO offense, and therefore no conspiracy to violate RICO could have existed. *See, e.g., Ranieri*, 336 F. Supp. 3d at 719 (dismissing RICO conspiracy claim for failure to allege a substantive RICO violation and failure to allege an agreement). Second, Plaintiffs do not plead how Credit Partners

16

or Cole agreed to participate in the predicate racketeering acts alleged in the SAC. Again, the SAC does not allege that Credit Partners did anything in connection with the alleged scheme, and does not allege that Cole did anything other than engage in a "single, otherwise lawful transaction" on behalf of Super G. Those allegations do not plausibly establish any agreement on the part of Credit Partners or Cole to engage in racketeering conduct, and Plaintiffs' § 1962(d) claim (Count III) should be dismissed.

6. *Plaintiffs fail to allege causation for its § 1962(c) and (d) RICO claims.*

Finally, Plaintiffs do not allege a plausible basis to conclude that the claimed injuries were caused by the alleged RICO violations. Plaintiffs claim that the alleged RICO violations "resulted in the failure to pay millions of dollars owed to [D&T]" by ACET. (SAC ¶ 420.) In order to state a RICO claim under § 1962(c) and (d), Plaintiffs must plausibly allege proximate causation. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). For example, in *Holmes*, the alleged RICO violations led to the financial collapse of a broker-dealer, which in turn led to the SIPC's derivative injury of having to make payments to the broker-dealer's customers, and the Supreme Court held that such injury was indirect and too remote to be the proximate cause of the alleged RICO misconduct. *Holmes*, 503 U.S. at 270-75. Here, the alleged injury, ACET's failure to pay the debt owed to D&T and other creditors, is remote and derivative of the harm caused by the alleged RICO violations because any misconduct involving the assets of ACET was necessarily suffered by *ACET* in the first instance, and not D&T. D&T's alleged harm is therefore too remote to have been proximately caused by the alleged looting of ACET, and

17

for that reason, Counts I and III must be dismissed.

**E.  The Court should dismiss Plaintiffs' State Law Claims.**[6]

If the Court (again) dismisses Plaintiffs' federal law claims (which it should), the Court should (again) decline to exercise jurisdiction over the State Law Claims under 28 U.S.C. § 1367(c)(3) and dismiss all such claims. (*See* Dismissal Order, at 15-16.) As this Court has already found, the balance of the factors courts consider when deciding whether to exercise pendent jurisdiction— "judicial economy, convenience, fairnesss and comity"—weigh heavily in favor of declining to exercise pendent jurisdiction in this matter. (*Id.* (citing *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 586-90 (5th Cir. 1992).) Upon the dismissal of the RICO claims, there is no reason to retain jurisdiction over the remaining claims, especially given the pending Collection Action against most of the defendants here. (SAC ¶ 1 n.5.)

Should the Court reach the substance of the State Law Claims, the SAC makes no substantive changes to the State Law Claims and cures none of the pleading defects from the FAC. The SAC's repetitive rambling dressed up as factual allegations utterly fail to meet Plaintiffs' burden to plead the State Law Claims with plausibility under *Twombly* or with particularity under Rule 9(b). "A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). Plaintiffs' newly added "Summary" paragraphs (SAC ¶¶ 315-321) only make passing reference to SG Credit and Cole and impermissibly rely on conclusory statements of "knowledge" and "agency" to try and pin liability on Credit Partners and Cole. As such, lacking any basis, Plaintiffs' Texas law claims against Credit Partners and Cole should be dismissed under Rules 12(b)(6) and 9(b).

---

[6] The "State Law Claims" refer to: Count IV, Common Law Fraud; Count VI, Aiding and Abetting Breach of Fiduciary Duty; Count VII, Texas Uniform Fraudulent Transfer Act; Count VIII, Civil Conspiracy; and Count VIX [sic].

*1.   The State Law Fraud Claims are subject to Rule 9(b)'s heightened pleading standard.*

As Plaintiffs recognized in their briefing in response to SG Credit's and Cole's earlier motion to dismiss, (Doc. 67, at 8-9), the State Law Claims based on an underlying allegation of fraud or mistake are subject to the heightened pleadings standard of Rule 9(b). *Iqbal*, 556 at 686–87; *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) (an allegation of conspiracy to commit fraud must plead both the conspiracy and the overt acts taken in furtherance thereof with particularity); *Ebert v. Gustin*, 2016 WL 11663164, at *10-*15 (N.D. Tex. May 12, 2016) (applying the 9(b) pleading standard to claims of fraud, conspiracy to commit fraud and aiding and abetting the breach of fiduciary duties). Because the underlying torts sound in fraud, Plaintiff's conspiracy allegations are subject to Rule 9(b)'s heightened pleading standard. *In re NE 40 Partners, Ltd.*, 411 B.R. 352, 365 (Bankr. S.D. Tex. 2009) (citing *Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953, 961 (5th Cir. 1994)); *see also Ebert*, 2016 WL 11663164, at *11. The Fifth Circuit "appl[ies] Rule 9(b) to fraud complaints with 'bite' and 'without apology.'" *Grubbs*, 565 F.3d at 185 (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)); *7-Eleven Inc. v. Puerto Rico-7 Inc.*, 2008 WL 4951502, at *2 (N.D. Tex. Nov. 19, 2008). "To satisfy the particularity standard of Rule 9(b), a plaintiff generally must plead the time, place, and contents of the false representation and the identity of the person making the representation," as well as "what that person obtained thereby." *Williams*, 112 F.3d at 177. In other words, "a complaint must allege the 'who, what, when, where, and how' of the alleged fraud, as well as why the statements or actions at issue were fraudulent." *Chau v. Aviva Life & Annuity Co.*, 2011 WL 1990446, at *4 (N.D. Tex. May 20, 2011). The Fifth Circuit consistently dismisses complaints under Rule 9(b) that are "nothing more than speculation" and a "conclusory description" of the purported fraud. *E.g.*, *Umbrella Inv. Group, L.L.C. v. Wolters Kluwer Fin.*

*Servs., Inc.*, 972 F.3d 710, 713 (5th Cir. 2020) (affirming 12(b)(6) dismissal). Furthermore, merely stating that someone had "knowledge" of a transaction is insufficient to show that person had knowledge that the transaction was fraudulent or sought to profit thereby. *See Iqbal*, 556 U.S. at 687 (Although "knowledge, and other conditions of a person's mind [may] be alleged generally," in the context of Rule 9, "it is to be compared to the particularity requirement applicable to fraud or mistake."); *Chau*, 2011 WL 1990446, at *4.

       2.   *Plaintiffs fail to plead a basis of liability against Cole or Credit Partners.*

Plaintiffs allege no individual wrongdoing by Cole; instead, the SAC only alleges culpability of Cole by virtue of his executive status with Super G. Similarly, Plaintiffs allege no wrongdoing by Credit Partners, and appear to rely upon pure conclusory allegations that Credit Partners should be vicariously liable for Super G's alleged actions, but Plaintiffs fail to allege facts supporting a basis for liability of either Cole or Credit Partners. Preliminarily, Count VIX[sic] alleging "respondeat superior and/or agency theory," is not itself a valid cause of action, *see, e.g.*, *Rojero v. El Paso Cty.*, 226 F. Supp. 3d 768, 772 (W.D. Tex. 2016) (dismissing respondeat superior claim as "theories of liability and not causes of action"), and any such liability theory rises or falls on the strength of the allegations pled. The claims against Cole rest solely on his status as CFO of Super G and alleged actions on its behalf. To "succeed in showing an alter ego liability against" Cole, the SAC "must allege and prove that [Cole] caused [the principal] to perpetuate an actual fraud on [Plaintiffs] primarily for his direct benefit." *Saeed v. Bennett-Fouch Assocs., LLC*, 2012 WL 13026741, at *2 (N.D. Tex. Aug. 28, 2012) (dismissing fraud claims against the shareholder-defendant under Rules 12(b)(6) and 9(b)). Plaintiffs allege no facts to show that Cole caused any other defendant to "perpetuate an actual fraud," much less "primarily" for Cole's "direct benefit." Plaintiffs merely assert that Cole was Super G's agent but goes no further. (SAC ¶ 80.)

The only place where Plaintiffs attempt to pin personal liability on Cole is in the conclusory, ambiguous statement: "Cole was engaged personally in many of the acts pled in this Complaint." (SAC ¶ 32.) This is simply insufficient under Rules 12(b)(6) and 9(b). *Saeed*, 2012 WL 13026741, at *2 (holding that the allegations that the individual shareholder-defendant "knew that these representations were false and continued performing services" were "conclusory and do not exhibit fraudulent intent"). The remainder of the SAC discusses Cole's actions as a representative of Super G only. The bare assertion of Cole's alleged agency is not enough to impute individual liability from a corporate defendant to Cole through agency principles or otherwise, and the State Law Claims against Cole must be dismissed in their entirety. *See id.*

As discussed above, Plaintiffs allege no action by Credit Partners connecting it with the complained-of conduct, nor do Plaintiffs allege any viable legal theory for imposing liability upon Credit Partners for the actions of Super G. As such, the State Law claims against Credit Partners must be dismissed in their entirety.

### 3. The State Law Claims All Fail.

Even if Plaintiffs could overcome the law precluding individual liability of Cole or vicarious liability of Credit Partners based on the facts pled (which they cannot), Plaintiffs have failed to sufficiently plead any of the State Law Claims against Cole or Credit Partners, and the State Law Claims should be dismissed on this additional ground.

#### i. Count IV: Plaintiffs fail to state a fraud claim against Cole.

Plaintiffs fail to plead a factual basis sufficient to support personal liability against Cole for fraud. Plaintiffs' claims against Cole are based solely upon the workout transaction involving the foreclosure sale of ACET's assets, which even if they were true, could not support a finding of fraud. Additionally, neither Cole nor Super G obtained any assets through the foreclosure itself, as

such assets were sold to Windspeed (SAC ¶ 229), or had any part in ACET's October 2019 bankruptcy filing (SAC ¶¶ 257-298). Plaintiffs identify no (1) misstatement or omission by Cole; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; or (5) which proximately caused the plaintiff's injury. *See Williams*, 112 F.3d at 177 (elements of common law fraud). Plaintiffs have thus not pleaded any of the elements of fraud as to Cole, much less with the particularity required by Rule 9(b). Instead, Plaintiffs only discuss Cole's limited role in the workout of the ACET loan, during which he allegedly only acted as Super G's agent, then conclude that Cole defrauded Plaintiffs. This conclusory leap is impermissible under Rule 9(b), *Saeed*, 2012 WL 13026741, at *2, and Plaintiffs' allegations fall woefully short of its duty to plead the "'who, what, when, where, and how' of the alleged fraud," *Chau*, 2011 WL 1990446, *4, or identify what Cole purportedly obtained thereby. *Williams*, 112 F.3d at 177.

      ii.   <u>Count VI: Plaintiffs fail to state a claim of aiding and abetting breach of fiduciary duty against Credit Partners or Cole.</u>

Plaintiffs fail to state sufficient facts to plead with particularity that Credit Partners or Cole aided and abetted a breach of a fiduciary duty. *See* Fed. R. Civ. P. 9(b). To plead a breach of fiduciary duty, a plaintiff must allege: (1) there existed a fiduciary relationship; (2) the defendants breached their fiduciary duty; and (3) the defendants' breach must have resulted in injury to the plaintiff or benefit to the defendants; the derivative claim of aiding and abetting a breach of fiduciary duty adds an important fourth element: (4) that the accused "party must be aware it was participating in the breach." *Ebert*, 2016 WL 11663162, at *8.

Plaintiffs' failure to plead with particularity is highlighted by its aiding and abetting claim: Plaintiffs lump all defendants together as "aiders and abettors," meaning that Plaintiffs are suing some defendants for aiding and abetting their own alleged breaches of fiduciary duty. (SAC ¶¶ 454, 458-459.) As to Credit Partners and Cole, Plaintiffs make no plausible allegations to show

that Credit Partners' or Cole's actions have satisfied any elements of aiding and abetting a breach of fiduciary duty. Other than the conclusory allegations contained within Count VI (SAC ¶ 459), Plaintiffs plead no specific facts (much less with the specificity required by Rule 9(b)) to support its claims therein. Plaintiffs give this Court no facts to show any "efforts" by Credit Partners or Cole that "aided and abetted" a breach of fiduciary duty by anyone. Plaintiffs merely assert that Cole "approved" the ACET workout transaction, but such a conclusory leap from knowledge of an action to guilty intent to breach a fiduciary duty is unacceptable under Rule 9(b). *See Iqbal*, 556 U.S. at 687; *Umbrella Inv. Group, L.L.C.*, 972 F.3d at 713; *Chau*, 2011 WL 1990446, at *4.

### iii. Count VII: Plaintiffs fail to state a TUFTA claim against Credit Partners or Cole.

Plaintiffs' TUFTA claim is facially deficient as to both Credit Partners and Cole. Plaintiffs allege that the transfer of assets from ACET into Windspeed was made "for the purpose of perpetuating and did perpetuate actual fraud (*i.e.*, fraudulent transfers) …." (SAC ¶¶ 462-463.) Nowhere in any of Plaintiff's TUFTA allegations, (SAC ¶¶ 460-463), is Cole mentioned, much less with any specificity as to his actions. And Cole cannot be liable as an agent of Credit Partners or Super G (or any entity) without specifically pleaded facts tying his action to those of his alleged principal. *Saeed*, 2012 WL 13026741, at *2.

Plaintiffs plead that the initial transfer complained of involves "… all of the assets transferred out of ACET Global [that] went into Windspeed…" (SAC ¶ 462.) So Plaintiffs' theory of liability against Credit Partners (and presumably Cole) and the other Defendants apparently rests on TEX. BUS. & COM. CODE § 24.009(b)(2), which permits claims against "subsequent transferees other than a good faith transferee who took for value or from any subsequent transferee." Yet, Plaintiffs make no specific allegations that either Cole or Credit Partners was a subsequent transferee (or indeed any kind of transferee) or had any role in the asset transfer from ACET to Windspeed. Plaintiffs simply do not plead how Credit Partners or Cole were responsible

23

for the complained-of transaction or were subsequent transferees capable of being liable for the alleged fraudulent transfer.

      iv.  <u>Count VIII: Plaintiffs fail to allege civil conspiracy against Credit Partners or Cole.</u>

Plaintiffs also fail to meet the heightened pleading standard of Rule 9(b) with respect to their civil conspiracy claim, as they have not alleged with particularity that Cole or Credit Partners participated in a civil conspiracy, which requires: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Ebert*, 2016 WL 11663164, at *11. As pleaded, Plaintiffs assert that Cole and Credit Partners conspired to (1) commit fraud; (2) breach fiduciary duties; (3) aid and abet the breach of fiduciary duties; and (4) violate TUFTA. (SAC ¶ 465.) As described above, each of the underlying claims against Credit Partners and Cole should be dismissed on their own merits and because there is no basis for individual liability of Credit Partners or Cole. Without any underlying causes of action, Plaintiffs' claim for conspiracy falls. But even if some causes of action were to survive, the conspiracy claims against Credit Partners and Cole should be dismissed because the SAC does not plead any facts to show that Credit Partners and/or Cole conspired with anyone or that there was some meeting of the minds between Credit Partners and/or Cole and any alleged co-conspirators to "to divert Plaintiff's funds and property" (the alleged objective, which is also not pled with sufficiency). Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678.

**F.  If the RICO claims are dismissed, then there is no basis to exercise personal jurisdiction over Credit Partners, and the remaining claims against it should be dismissed under Rule 12(b)(2).**

The SAC relies upon 18 U.S.C. § 1965, which purports to allow nationwide service of process

under the circumstances set forth therein, as the basis for personal jurisdiction over Credit Partners, but that basis crumbles if the RICO claims are dismissed under Rule 12(b)(6). *See Oblio Telecom, Inc. v. Patel*, 711 F. Supp. 2d 668, 676 (N.D. Tex. 2008) (stating that if the underlying RICO claim was dismissed, "then the court would not have personal jurisdiction over [defendant] pursuant to 18 U.S.C. § 1965"). Plaintiffs cannot establish personal jurisdiction over Credit Partners absent reliance on § 1965. Rule 12(b)(2) "authorizes a district court to dismiss an action for lack of personal jurisdiction. And on such a motion, the plaintiff bears the burden of establishing a prima-facie case for jurisdiction over the nonresident defendant." *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 660 (N.D. Tex. 2020) (internal quotation marks omitted).[7] To proceed under the specific jurisdiction theory, which is the only possible theory alleged in the SAC, Plaintiff "must show that this lawsuit arose from or directly relates to the contacts [the defendant] created with Texas, and that connection must be substantial." *Id.* at 663. There is no basis to allege personal jurisdiction over Credit Partners in Texas. Credit Partners is a Delaware company with a principal place of business in California. (SAC ¶ 41.) Plaintiffs do not plead any basis to conclude that Credit Partners conducted any activity in Texas or had any relevant contacts with Texas, much less the substantial connection required for the exercise of personal jurisdiction over Credit Partners in Texas. For that reason, this case should be dismissed under Rule 12(b)(2) as to Credit Partners.

## IV. CONCLUSION

WHEREFORE, for the reasons set forth herein, Defendants respectfully submit that the SAC in its entirety should be dismissed with prejudice.

---

[7] Because the applicable Texas long-arm statute "reaches to the limits of federal due process," personal jurisdiction "is satisfied when a defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Vero Blue Farms USA, Inc.*, 465 F. Supp. 3d at 661 (internal quotation marks omitted).

Respectfully submitted,

DANIELS TREDENNICK, PLLC

BY: */s/ Andrea L. Kim*
Andrea Levin Kim
State of Texas Bar No. 00798327
Northern District Bar No. 00798327
**DANIELS TREDENNICK, PLLC**
6363 Woodway Dr., Ste 700
Houston, Texas 77057
Telephone: (713) 917-0024
Fax: (713) 917-0026
Email: andrea.kim@dtlawyers.com

Rachel Williams
State of Texas Bar No. 24067175
Northern District Bar No. 24067175
**WILLIAMS LAW, PC**
10300 N. Central Expy., Ste. 544
Dallas, Texas 75231
Telephone: (214) 550-2858
Fax: (214) 550-2856
Email: rachel@williamslawtx.com

COUNSEL TO DEFENDANTS SG CREDIT
PARTNERS, INC. and MARC COLE

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 22, 2022, a copy of the foregoing was filed electronically by the EM/CMF System for the United States District Court for the Northern District of Texas and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ Andrea Levin Kim*
Andrea Levin Kim

27