UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), Directly and Derivatively on Behalf of ACET GLOBAL, LLC and BAYMARK ACET HOLDCO, LLC | § § § § § § | |
| and | § § | |
| ACET GLOBAL, LLC, | § § | |
| *Plaintiffs*, | § § | |
| v. | § § | |
| BAYMARK PARTNERS, LP; BAYMARK PARTNERS MANAGEMENT, LLC; SUPER G CAPITAL, LLC; SG CREDIT PARTNERS, INC.; BAYMARK ACET HOLDCO, LLC; BAYMARK ACET DIRECT INVEST, LLC; BAYMARK PARTNERS; DAVID HOOK; TONY LUDLOW; MATT DENEGRE; WILLIAM SZETO; MARC COLE; STEVEN BELLAH; ZHEXIAN "JANE" LIN; DANA MARIE TOMERLIN; PADASAMAI VATTANA; PAULA KETTER; VANESSA TORRES; WINDSPEED TRADING, LLC; HALLETT & PERRIN, P.C.; and JULIE A. SMITH, | § § § § § § § § § § § § § § § § § § § | CIVIL CAUSE NO. 3:21-CV-01171-B |
| *Defendants*. | § § | |

**DEFENDANTS HALLETT & PERRIN, P.C. AND JULIE A. SMITH'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
AND BRIEF IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

APPLICABLE STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    III.   Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.     Plaintiff's Improper "Shotgun" Pleading and Failure to Comply with Rule 8 . . . . 6

    II.    Plaintiff's Claims Under RICO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          A.    18 U.S.C §1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          B.    18 U.S.C. § 1962(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          C.    18 U.S.C. § 1962(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    III.   Plaintiff's State-Law Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

          A.    Attorney Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          B.    Common-Law Fraud (Count IV) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

          C.    Breach of Fiduciary Duty/Aiding and Abetting Breach of Fiduciary Duty (Counts V, VI). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

          D.    Texas Uniform Fraudulent Transfer Act (Count VII). . . . . . . . . . . . . . 21

          E.    Civil Conspiracy (Count VIII) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# INDEX OF AUTHORITIES

## Cases

*7-Eleven, Inc. v. Puerto Rico-7 Inc.*, Civil Action No. 3:08-CV-00140-B,
2008 WL 4951502 (N.D. Tex. Nov. 19, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Azrielli v. Cohen Law Offices*, 21 F.3d 512 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Baumer v. Pachl*, 8 F.3d 1341 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015). . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Chau v. Aviva Life & Annuity Co.*, Civil Action no. 3:09-CV-2305-B,
2011 WL 1990446 (N.D. Tex. May 20, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Clapper v. American Realty Investors, Inc.*, Civil Action No. 3:14-CV-2970-D,
2015 WL 3504856 (N.D. Tex. Jun. 3, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Drake v. Costume Armour, Inc.*, 736 F. App'x 505 (5th Cir. 2018) (per curiam) . . . . . . . . . . . 16

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
565 F.3d 200 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Gabriel v. Outlaw*, Case No. 3:20-CV-60-E-BK, 2021 WL 1030157
(N.D. Tex. Mar. 1, 2021), *report and recommendation adopted*,
2021 WL 27201939 (N.D. Tex. Jun. 30, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65 (Tex. 2021) . . . . . . . . . . . . . . . . . . 17, 18

*Hidden Values, Inc. v. Wade*, Civil Action No. 3-11-CV-1917-L,
2012 WL 1836087 (N.D. Tex. May 18, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Highland Capital Mgmt., LP v. Looper Reed & McGraw, P.C.*, No. 05-15-00055-CV,
2016 WL 164528 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) (mem. op.) . . . . . . . . . . . . . 18

*Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732 (5th Cir. 2014) (per curiam) . . . . . . . . . . 3

*Howley v. Bankers Standard Ins. Co.*, Civil Action No. 3:19-CV-2477-L,
2021 WL 913290 (N.D. Tex. Mar. 10, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832 (N.D. Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . 6

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
Civil Action No. 3:12-cv-3515-B, 2014 WL 5460450 (N.D. Tex. Oct. 27, 2014) . . . . . . . . . . . . 7

*In re Taxable Mun. Bond Sec. Litig.*, Civ. A. Nos. 90-4714, 90-4718,
1993 WL 534035 (E.D. La. Dec. 13, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759 (5th Cir. 2019) . . . . . . . . . . . 4, 17

*Jaser v. AT&T Servs. Inc.*, Civil Case No. 3:18-CV-3429-B-BH,
2020 WL 1329151 (N.D. Tex. Mar. 23, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8

*Jessen v. Duvall*, No. 14-16-00869-CV, 2018 WL 1004659
(Tex. App.—Houston [14th Dist.] Feb. 22, 2018, no pet.) (mem. op.) . . . . . . . . . . . . . . . . . . . . 21

*Johnson v. Ashmore*, 681 F. App'x 345 (5th Cir. 2017) (per curiam) . . . . . . . . . . . . . . . . . . . . . 19

*JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*, No. 06 Civ. 6095(JGK),
2007 WL 1159637 (S.D.N.Y. Apr. 18, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Maynard v. PayPal, Inc.*, Civil Action No. 3:18-CV-0259-D,
2019 WL 3552432 (N.D. Tex. Aug. 5, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 20

*Miller v. SS Hospitality Group, LLC*, No. 4:17-cv-00847-O, 2018 WL 3054691
(N.D. Tex. Jun. 5, 2018), *report and recommendation adopted*,
2018 WL 3046260 (N.D. Tex. Jun. 20, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Muskegan Hotels, LLC v. Patel*, 986 F.3d 692 (7th Cir. 2021) . . . . . . . . . . . . . . . . . . . . 10, 11, 15

*Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355 (N.D. Tex. 2019) . . . . . . . . . . . . 8

*Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580 (5th Cir. 1992) . . . . . . . . 14, 16

*Paul v. Aviva Life & Annuity Co.*, Civil Action No. 3:09-CV-1490-B,
2010 WL 5105925 (N.D. Tex. Dec. 14, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Poe v. Bock*, EP-17-CV-00232-DCG, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018) . . . . . . . . 16

*Qatalys, Inc. v. Mountain Med. Techs., Inc.*, Civil Action No. 3:14-cv-1784-L,
2015 WL 1401220 (N.D. Tex. Mar. 27, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337 (5th Cir. 2021). . . . . . . . . . . . . . . . . . . . . 3

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Roe v. Johnson Cty., Tex.*, No. 3:18-c-2497-B-BN,
2019 WL 5031357 (N.D. Tex. Jul. 29, 2019),
*report and recommendation adopted*, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019) . . . . . . . 5, 8

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
682 F.3d 1043 (D.C. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Scarbrough v. JPMorgan Chase Bank, N.A.*, Civil Action No. 4:21-CV-3760,
2022 WL 2373725 (S.D. Tex. Jun. 2, 2022), *report and recommendation adopted*,
2022 WL 2359645 (S.D. Tex. Jun. 30, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*South Avis Realty, Inc. v. Neece*, Civil Action No. 1:19-CV-206,
2020 WL 3542272 (S.D. Tex. Jun. 30, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425 (5th Cir. 2000). . . . . . . . . . . . . . . . . . 14

*Taylor v. Academic P'ships LLC*, No. 3:19-cv-1764-K-BN,
2020 WL 5127791 (N.D. Tex. Jun. 17, 2020),
*report and recommendation adopted*, 2020 WL 5110370 (N.D. Tex. Aug. 29, 2020) . . . . . . . . . 7

*Taylor v. Bettis*, 976 F. Supp. 2d 721 (E.D.N.C. 2013),
*aff'd*, 693 F. App'x 190 (4th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076 (S.D.N.Y. 1994),
*aff'd sub nom. Tribune Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . 12

*Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Posada-Rios*, 158 F.3d 832 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Rosenthal*, 805 F.3d 523 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Varela v. Gonzales*, Civil Action No. 3:13-CV-1278-B,
2013 WL 5658606 (N.D. Tex. Oct. 17, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Walter v. Drayson*, 538 F.3d 1244 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Williams v. WMX Techs., Inc.*, 112 F.3d 175 (5th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wilson v. Deutsche Bank Trust Co. Americas*, Civil Action No. 3:18-CV-0854-D, 2019 WL 175078 (N.D. Tex. Jan. 10, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553 (5th Cir. 2015) . . . . . . . . . . . 11

*Zucker v. Farish*, Civil Action No. 3:18-CV-01790-K, 2018 WL 6570867 (N.D. Tex. Dec. 12, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

## **Statutes**

18 U.S.C. § 1962(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 1962(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Bus. & Comm. Code § 24.009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Defendants Hallett & Perrin, P.C. ("H&P") and Julie A. Smith ("Smith") (referred to collectively herein as the "Attorney Defendants") file this Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rules 12(b)(6), 9(b), and 8 (as well as Rules 12(b)(1) and 23.1[1]) and Brief in Support, and in support thereof would respectfully show the Court as follows:

## SUMMARY OF ARGUMENT

In the face of the Court's May 9, 2022 Memorandum Opinion & Order dismissing its claims, Plaintiff chose to replead without remedying any of the numerous previously identified defects in its First Amended Complaint ("FAC"). Rather, Plaintiff decided it would just increase the length of its already excessively long pleading without adding any meaningful substance to its allegations. The end result is that Plaintiff's purported "claims" in the Second Amended Complaint ("SAC") against the Attorney Defendants (to the extent they can be deciphered from Plaintiff's unbelievably verbose "shotgun" pleading) fare no better than Plaintiff's "claims" against the Attorney Defendants in the FAC. Simply put, the SAC again fails spectacularly under Rules 12(b)(6), 9(b), and 8.

Plaintiff's RICO claims (the only basis for federal jurisdiction) are deficient for a variety of reasons. However, a particularly glaring defect in the RICO section 1962(c) claim against the Attorney Defendants continues to be Plaintiff's complete inability to allege any facts that would suggest that the Attorney Defendants come anywhere close to satisfying the "operation-or-management" requirement for stating such a claim. Instead, the allegations in the SAC still describe

---

[1]The Attorney Defendants hereby adopt and incorporate by reference the arguments set forth in Defendant Baymark ACET Holdco, LLC's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support regarding Plaintiff's lack of standing to assert any "derivative" claims on behalf of either ACET Global, LLC or Baymark ACET Holdco, LLC and Plaintiff's failure to comply with Federal Rule of Civil Procedure 23.1. In the Court's May 9, 2022 Memorandum Opinion and Order ("Order"), the Court expressly sanctioned such cross-adoption of other parties' briefs and arguments. Order at 8 ("Equitable reasons support allowing the arguments applicable to one defendant to apply to all similarly situated defendants.").

ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 1

only run-of-the-mill legal services provided by the Attorney Defendants to their clients. The SAC also fails to plead basic facts necessary for any claim under RICO section 1962(a), and its RICO conspiracy claim under section 1962(d) necessarily falls with the other two RICO claims.

As for Plaintiff's state law claims (which the Court has indicated that it will not reach once federal jurisdiction vanishes with Plaintiff's nonexistent RICO claims), it remains clear from the express allegations in the SAC that they are all barred by the defense of attorney immunity. Even if that were not the case, Plaintiff also continues to fail to plead coherent facts that could support the required elements of its state law claims.

The SAC does not identify any "misrepresentations" by the Attorney Defendants that could support any claim for common-law fraud. It neither describes any fiduciary breaches by the Attorney Defendants nor points to facts suggesting the type of "unlawful intent" necessary for a claim for aiding and abetting any other Defendant's purported breach of fiduciary duty. It also does not explain how the Attorney Defendants could possibly be proper defendants under the Texas Uniform Fraudulent Transfer Act when there are no allegations that the Attorney Defendants received or benefitted from any "fraudulently transferred" assets. Finally, the SAC does not plead any facts that would support a "reasonable inference" that the Attorney Defendants participated in any "conspiracy."

## APPLICABLE STANDARDS

### I.     Rule 12(b)(6)

To satisfy the requirements of Federal Rule of Civil Procedure 12(b)(6), a plaintiff must set forth the "grounds for [its] entitlement to relief," and doing so "requires more than labels and

conclusions."[2] "[A] formulaic recitation of the elements of a cause of action will not do."[3] Instead, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[4] To have the necessary "facial plausibility," the complaint must include "factual content" that would allow the Court to draw the "reasonable inference" that the defendants are "liable for the misconduct alleged."[5] "[C]onclusory allegations, unwarranted deductions, [and] legal conclusions" will *not* satisfy the requirement for "factual content," and the Court should not accept them as true.[6]

In considering a motion to dismiss, the Court may consider documents attached to a plaintiff's complaint or incorporated into the complaint by reference, as well as matters of which the Court may take judicial notice.[7] Moreover, as the Fifth Circuit has expressly recognized, "[i]f an attached exhibit contradicts a factual allegation in the complaint, then indeed the exhibit and not the allegation controls."[8]

---

[2]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

[3]*Id.*

[4]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

[5]*Id*. In drawing "reasonable" inferences, the Court should not, however, "strain to find inferences favorable to the plaintiff." *Hidden Values, Inc. v. Wade*, Civil Action No. 3-11-CV-1917-L, 2012 WL 1836087, at *2 (N.D. Tex. May 18, 2012).

[6]*Hidden Values*, 2012 WL 1836087, at *2.

[7]*Varela v. Gonzales*, Civil Action No. 3:13-CV-1278-B, 2013 WL 5658606, at *2 (N.D. Tex. Oct. 17, 2013); *see also Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 209 n.6 (5th Cir. 2009) ("Appellants fail to acknowledge that because they attached the letter to their complaint . . . it is relevant for the purposes of evaluating a motion to dismiss.").

[8]*Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021) (internal quotation marks omitted); *see also Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732, 737 (5th Cir. 2014) (per curiam) ("Hollingshead's conclusory allegation that Aetna improperly 'denied' his benefits is insufficient to survive dismissal because it is contradicted by the documents attached to his first amended complaint."); *Maynard v. PayPal, Inc.*, Civil Action No. 3:18-CV-0259-D, 2019 WL 3552432, at *10 (N.D. Tex. Aug. 5, 2019) ("To accept plaintiffs' (continued...)

The Court may also consider a defendant's affirmative defense in the context of a Rule 12(b)(6) motion to dismiss, so long as the facts required to establish such affirmative defense appear on the face of the complaint.[9]

## II.    Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires parties alleging fraud to meet a heightened pleading standard, one in which the "circumstances constituting fraud" are stated "with particularity."[10] In particular, the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[11] Moreover, "simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b). The claimant must still allege specific facts that support an inference of fraud."[12]

---

[8](...continued)
contention would be to ignore the first page of the user agreement . . . ."); *Miller v. SS Hospitality Group, LLC*, No. 4:17-cv-00847-O, 2018 WL 3054691, at *4 (N.D. Tex. Jun. 5, 2018) ("However, in the context of a motion to dismiss, exhibits attached to a complaint control over allegations in a complaint, and the Court is not required to accept the plaintiff's interpretation of those exhibits."), *report and recommendation adopted*, 2018 WL 3046260 (N.D. Tex. Jun. 20, 2018); *Qatalys, Inc. v. Mountain Med. Techs., Inc.*, Civil Action No. 3:14-cv-1784-L, 2015 WL 1401220, at *5 (N.D. Tex. Mar. 27, 2015) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.") (quoting *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013)).

[9]*See, e.g.*, *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019).

[10]Rule 9(b) applies to "RICO claims resting on allegations of fraud, such as when the RICO predicate act alleged involves wire or mail fraud." *Varela*, 2013 WL 5658606, at *3.

[11]*Flaherty*, 565 F.3d at 206. "A dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim." *Id.*

[12]*7-Eleven, Inc. v. Puerto Rico-7 Inc.*, Civil Action No. 3:08-CV-00140-B, 2008 WL 4951502, at *2 (N.D. Tex. Nov. 19, 2008) (internal citation omitted); *see also id.* ("[T]his Court applies Rule 9(b) with force and without apology.") (internal quotation marks omitted).

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 4**

III.    **Rule 8**

"The underlying purpose of Rule 8 is to eliminate prolixity in pleading and to achieve brevity, simplicity, and clarity."[13] Thus, Federal Rule of Civil Procedure 8(a)(2) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct." Further, "Rule 9(b)'s demand for particularity works in tandem with Rule 8(a)'s insistence upon simple, concise, and direct allegations."[14]

Claims presented in a "shotgun" fashion—that is, with each claim beginning with some variation of "Plaintiff realleges as if set forth fully herein" all of the preceding paragraphs—"lack substantive plausibility."[15] The Fifth Circuit has denounced "shotgun" pleading that does not comply with the requirements of Rule 8.[16]  "Shotgun" complaints typically "set forth an excessive number [of] facts," with the result that "each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath

---

[13]*Jaser v. AT&T Servs. Inc.*, Civil Case No. 3:18-CV-3429-B-BH, 2020 WL 1329151, at *4 (N.D. Tex. Mar. 23, 2020) (internal quotation marks and alteration omitted).

[14]*Zucker v. Farish*, Civil Action No. 3:18-CV-01790-K, 2018 WL 6570867, at *3 (N.D. Tex. Dec. 12, 2018) (internal quotation marks omitted).

[15]*Howley v. Bankers Standard Ins. Co.*, Civil Action No. 3:19-CV-2477-L, 2021 WL 913290, at *9 (N.D. Tex. Mar. 10, 2021); *see also Roe v. Johnson Cty., Tex.*, No. 3:18-c-2497-B-BN, 2019 WL 5031357, at *4-5 (N.D. Tex. Jul. 29, 2019) ("Shotgun pleadings are subject to dismissal under Rule 12(b)(6)."), *report and recommendation adopted*, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019).

[16]*Howley*, 2021 WL 913290, at *9 (quoting *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788-89 (5th Cir. 1986) as criticizing "shotgun" pleadings that exist when "the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick").

innumerable pages of rambling irrelevancies."[17] As one court in this District has explained, the "shotgun" approach to pleading claims is

> discouraged by courts because it interferes with a district court's ability to manage its docket, unnecessarily impedes the orderly and efficient disposition of disputes, and wastes scarce judicial resources by causing courts to engage in the onerous task of sifting through a myriad of irrelevant allegations in ruling on the sufficiency of a claim, making it difficult to know which factual allegations were intended to support which claims for relief.[18]

## ARGUMENT AND AUTHORITIES[19]

### I.  Plaintiff's Improper "Shotgun" Pleading and Failure to Comply with Rule 8

This Court has previously recognized that "[w]hen a complaint does not meet the pleading requirements of Rule 8, Rule 12(b)(6) authorizes dismissal of a civil action."[20] The SAC, which consists of more than 476 paragraphs[21] and takes up 194 pages (not including the hundreds of pages of attached exhibits[22]), is the exact opposite of the "short and plain" and "simple, concise, and direct"

---

[17]*Zucker*, 2018 WL 6570867, at *3 (internal citations and quotation marks omitted).

[18]*Howley*, 2021 WL 913290, at *9; *see also In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 857-58 (N.D. Tex. 2005) (rejecting "puzzle pleading" because "assembling puzzles is not the duty of the Court" and stating "it is the parties' burden to present succinct pleadings which clearly lay out the elements").

[19]As permitted by the Court's Order, the Attorney Defendants hereby adopt the arguments set forth in the following briefs filed by the other Defendants to the extent the arguments raised in such briefs apply equally to the Attorney Defendants: Defendants David Hook and Tony Ludlow's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support; Baymark Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support; Defendants SG Credit Partners, Inc.'s and Marc Cole's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Second Amended Complaint; Defendants Super G Capital, LLC's and Steven Bellah's Brief in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint; Windspeed Employees' Brief in Support of Motion to Dismiss Second Amended Complaint Claims Pursuant to Rule 12(b)(6); and Windspeed and Mr. Szeto's Brief in Support of Motion to Dismiss Second Amended Complaint Claims Pursuant to Rule 12(b)(6).

[20]*Jaser*, 2020 WL 1329151, at *4.

[21]The SAC includes four pages of unnumbered paragraphs. SAC at 2-5.

[22]Plaintiff makes the following statement about the *46 exhibits* attached to its SAC: "All exhibits hereto are adopted and incorporated by reference in this First *[sic]* Amended Complaint for all purposes as if set forth herein in full." SAC at 6 n.3.

pleading required by Rule 8.[23] Moreover, the SAC is a perfect example of improper "shotgun" pleading and why such style of pleading is so likely to create "unnecessary confusion."[24]

Plaintiff cannot blame the particularity requirements of Rule 9(b) for its ridiculously verbose SAC. In fact, even with its hundreds of paragraphs, the SAC still fails to plead its claims sounding in fraud with the required particularity.  "A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for the absence of detail."[25]

In the absence of the required "straightforward" pleading, both the Court and the Attorney Defendants are left to "try to fish a gold coin from a bucket of mud."[26] Making things even "muddier" and more confusing, the SAC purports to assert "derivative claims" on behalf of two additional "Plaintiffs"—ACET Global, LLC ("ACET Global") and Baymark ACET Holdco, LLC, ("Holdco"), both clients of the Attorney Defendants.[27] However, the SAC frequently fails to

---

[23]Even the SAC's "Executive Summary" consists of 25 paragraphs and covers over 10 pages of the SAC. *See* SAC ¶¶ 1-25.

[24]*See Howley*, 2021 WL 913290, at *9. This Court has also previously considered "contradictory" allegations to factor into the Court's motion to dismiss analysis. *See In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, Civil Action No. 3:12-cv-3515-B, 2014 WL 5460450, at *5 (N.D. Tex. Oct. 27, 2014); *see also Wilson v. Deutsche Bank Trust Co. Americas*, Civil Action No. 3:18-CV-0854-D, 2019 WL 175078, at *7 n.14 (N.D. Tex. Jan. 10, 2019) (finding the complaint to be "internally contradictory as well as vague—providing an additional reason to dismiss the claim"). The SAC offers a number of contradictory allegations. For example, was Defendant William Szeto a "puppet" of the Windspeed board, *see* SAC ¶¶ 159, 175, or was the board a "sham" that "took no action," *see* SAC ¶¶ 173-74? Were there "two sets of books," *see id.* ¶ 185, or was there "no effort to separately account for [ACET Global's] inventory," *see id.* ¶ 205?

[25]*Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

[26]*Taylor v. Academic P'ships LLC*, No. 3:19-cv-1764-K-BN, 2020 WL 5127791, at *7 (N.D. Tex. Jun. 17, 2020) (quoting *Hall v. Civil Air Patrol, Inc.*, 193 F. App'x 298, 299-300 (5th Cir. 2006) (per curiam)), *report and recommendation adopted*, 2020 WL 5110370 (N.D. Tex. Aug. 29, 2020).

[27]*See* SAC at 1-2, ¶¶ 37, 42. As noted above, the Attorney Defendants adopt and incorporate by reference the arguments set forth in Defendant Baymark ACET Holdco, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support, which address the impropriety of the SAC's "derivative" claims. *See supra* note 1.

differentiate or explain which claims are being brought derivatively and which claims are being asserted directly by the original Plaintiff, D&T Partners, LLC ("D&T").[28] Without an analytical framework provided in the SAC, the inclusion of purported "derivative" claims and Plaintiffs exponentially compounds the Rule 8 and Rule 9(b) deficiencies in the SAC. The Attorney Defendants (along with the Court and all of the other Defendants) are left to try and decipher for themselves which claims are being asserted against them by whom and upon what basis.[29]

This Court has previously dismissed a complaint for being "far too lengthy" as well as "overly repetitive" and "difficult to follow."[30] The SAC is all of these things, and it should be dismissed on the basis of its Rule 8 violations alone.[31] Nevertheless, the Attorney Defendants also address below several more specific reasons why the SAC has failed to state any claim against them, all of which also require dismissal of Plaintiff's claims.

---

[28]To make things even more ambiguous, the SAC defines D&T, Holdco, and ACET Global collectively as a singular "Plaintiff," SAC at 1-2, but then often refers to the plural "Plaintiffs" in the SAC, *see, e.g., id.* ¶ 423 ("Each Defendant violated RICO, and Plaintiffs were injured as a result."). The SAC even refers to *both* "Plaintiffs" and "Plaintiff" in a single sentence with no explanation for the distinction. *See* SAC ¶ 459 ("The actions of the Aiders and Abettors in aiding and abetting such acts were materially and substantially detrimental to Plaintiffs and caused substantial damages to Plaintiff.").

[29]The SAC also consistently refers to "Defendants" generally, with no attempt to identify any particular Defendant's conduct or explain what allegations relating to any specific Defendant's conduct satisfy the elements of any specific claim. *See, e.g.,* SAC ¶ 452 ("The Defendants made materially false representations to Plaintiff . . . ."). As this Court has previously recognized, "group pleading" that "does not distinguish the conduct of the individual Defendants" is improper. *Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355, 369 (N.D. Tex. 2019).

[30]*Jaser*, 2020 WL 1329151, at *5. The SAC is certainly repetitious. For example, the SAC is filled with needlessly duplicative deposition excerpts. *See, e.g.,* SAC ¶ 119 (quoting from the deposition of Marc Cole); *id.* ¶ 120 (quoting the same deposition testimony of Marc Cole); *id.* ¶ 204 (quoting from the deposition of William Szeto); *id.* ¶ 211 (quoting the same deposition testimony of William Szeto); *see also id.* ¶ 187 (quoting from the deposition of Matt Denegre, including reading from an excerpt of an October 19, 2018 e-mail); *id.* ¶ 188 (presenting a screen shot of the same October 19, 2018 e-mail); *id.* ¶ 220 (discussing a March 2019 e-mail exchange between Smith and counsel for Super G Capital, LLC and including a screen shot of such e-mail exchange); *id.* ¶ 227 (discussing the same March 2019 e-mail exchange and, again, including a screen shot of the exchange).

[31]*See Roe*, 2019 WL 5031357, at *5 (discussing the plaintiff's "shotgun pleading" and that "[t]his pleading deficiency is reason enough to grant all eight Rule 12(b)(6) motions to dismiss").

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 8**

## II.        Plaintiff's Claims Under RICO

Plaintiff asserts three RICO claims against the Attorney Defendants in the SAC: a claim under 18 U.S.C. § 1962(c), a claim under 18 U.S.C. § 1962(a), and a claim under 18 U.S.C. § 1962(d).[32] However, as set forth below, Plaintiff has failed to plead any *facts* that would support any of these claims against the Attorney Defendants.[33]

### A.        18 U.S.C. § 1962(c)

Section 1962(c) makes it unlawful

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to *conduct* or participate, directly or indirectly, in the *conduct* of such enterprise's affairs through a pattern of racketeering activity . . . .[34]

In *Reves v. Ernst & Young*, the Supreme Court expressly interpreted this language to "require[] an element of direction."[35] Particularly with respect to the Attorney Defendants, it is this "element of direction" that is wholly absent from the SAC.

---

[32] SAC ¶¶ 322-407 (Count I); ¶¶ 408-21 (Count II); ¶¶ 422-50 (Count III).

[33] In its Order, the Court focused on Plaintiff's failure "to adequately plead a [RICO] pattern." Order at 11. The SAC's failure to plead the pattern element necessary for any RICO claim is the focus of Defendants David Hook and Tony Ludlow's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support. Accordingly, the Attorney Defendants will not reiterate those arguments herein as the Attorney Defendants have adopted Hook and Ludlow's arguments by reference. *See supra* note 19.

[34] 18 U.S.C. § 1962(c) (emphasis added).

[35] 507 U.S. 170, 178 (1993); *see also id.* at 179 ("In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs."); *id.* at 185 ("[W]e hold that 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must participate in the operation or management of the enterprise itself.") (internal citation omitted).

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 9**

In *Reves*, the Supreme Court considered whether the actions of an accounting firm that merely provided audit reports to a Co-op's board gave rise to liability under section 1962(c).[36] Specifically, the plaintiff in *Reves* complained about the accounting firm's failure to tell the board about certain of the firm's conclusions and that, without those conclusions, the Co-op was actually insolvent.[37] After the Co-op filed for bankruptcy, the bankruptcy trustee sued a number of defendants, including the accounting firm, under RICO.[38] The district court granted summary judgment in favor of the accounting firm, and the D.C. Circuit affirmed.[39] The Supreme Court agreed with the lower courts that the accounting firm's actions in merely providing accounting services to the Co-op were not sufficient to give rise to liability under section 1962(c).[40]

Since *Reves*, courts have considered whether attorneys that simply provide legal services to an alleged RICO enterprise meet the "operation-or-management requirement" necessary to state a claim under section 1962(c). They have concluded that a complaint "that does no more than allege that a law firm performed legal work for an enterprise fails to state a violation."[41] This is the case

---

[36]*See id.* at 186. Thus, the question before the Supreme Court in *Reves* was one of a "horizontal" relationship between a service provider and its client, not a "'vertical' question of how far RICO liability may extend 'down an organizational ladder.'" *United States v. Posada-Rios*, 158 F.3d 832, 856 (5th Cir. 1998). Similarly, Plaintiff's RICO claims against the Attorney Defendants must be evaluated using a "horizontal" analysis.

[37]*See Reves*, 507 U.S. at 174-75 (describing the accounting firm's actions).

[38]*Id.* at 175.

[39]*Id.* at 176-77.

[40]*Id.* at 186 ("Thus, we could only conclude that Arthur Young participated in the operation or management of the Co-op itself if Arthur Young's failure to tell the Co-op's board that the plant should have been given its fair market value constituted such participation. We think that Arthur Young's failure in this respect is not sufficient to give rise to liability under § 1962(c)."

[41]*Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 699 (7th Cir. 2021); *see also Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) ("In sum, the pleadings show that Temple and her firm were part of the enterprise but fail to show that she or her firm had 'some part in directing its affairs.' One can be 'part' of an enterprise without having a role in its management and operation. Simply performing services for the enterprise does not rise to the level of direction, whether one is 'inside' or 'outside.'") (internal citation omitted); *Azrielli v. Cohen Law Offices*, 21 F.3d 512,

(continued...)

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 10**

even if the attorneys had "knowledge of the client's unlawful activities"[42] and regardless of whether the attorneys "rendered [their] services well or poorly, properly or improperly."[43]

> *Performance of legal services that facilitate operation of an enterprise does not represent participation in the "operation or management" of the enterprise*. This is so even when the defendant has substantial persuasive power to induce certain action by the enterprise, or, as part of its professional services offers consultation on important management decisions.[44]

In this case, there is no RICO "enterprise."[45] Even if there were, however, the SAC does not allege that the Attorney Defendants did anything other than perform legal work, such as drafting agreements, corresponding with other parties' counsel, and defending their clients in pending

---

[41](...continued)
521-22 (2d Cir. 1994) (rejecting a § 1962(c) claim against an attorney when he only represented other alleged RICO defendants and the structure of the deal about which the plaintiffs complained had been presented to him by his clients "as a *fait accompli*"); *Gabriel v. Outlaw*, Case No. 3:20-CV-60-E-BK, 2021 WL 1030157, at *2 (N.D. Tex. Mar. 1, 2021) ("[T]he specific acts [Plaintiffs] attribute to Nation are merely those of legal counsel related to and done during the course of litigation. Thus, *they cannot support a RICO claim*.") (emphasis added), *report and recommendation adopted*, 2021 WL 27201939 (N.D. Tex. Jun. 30, 2021); *Taylor v. Bettis*, 976 F. Supp. 2d 721, 735 (E.D.N.C. 2013) ("Since the *Reves* decision, most courts have held that an outside professional, such as an attorney, does not conduct an enterprise's affairs through run-of-the-mill provision of professional services.") (internal quotation marks omitted), *aff'd*, 693 F. App'x 190 (4th Cir. 2017).

[42]*Muskegan Hotels*, 986 F.3d at 699.

[43]*Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (concluding that the attorney's role "was limited to providing legal services to the limited partnership and EPA" and that, as a result, it did not satisfy the *Reves* test for liability under § 1962(c)).

[44]*In re Taxable Mun. Bond Sec. Litig.*, Civ. A. Nos. 90-4714, 90-4718, 1993 WL 534035, at *4 (E.D. La. Dec. 13, 1993) (emphasis added); *see also Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 561 n.7 (5th Cir. 2015) (recognizing that "[t]he circuit courts of appeals have declined to extend RICO liability under § 1962(c) to an attorney's provision of routine legal services") (quoting *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051 n.7 (D.C. Cir. 2012)); *Bettis*, 976 F. Supp. 2d at 736 (concluding that "accepting money in exchange for providing these traditional legal services" would not support a RICO claim under § 1962(c)).

[45]In what can only be characterized as a throw-away line, the SAC repeats the naked allegation that: "Alternatively, Hallett & Perrin constitutes a separate enterprise within the meaning of 18 U.S.C. § 1961(4)." SAC ¶ 432. Like the FAC, the SAC makes no attempt whatsoever to explain *how* H&P is (or even could be) an "enterprise" for purposes of RICO. The Court should ignore Plaintiff's unsupported and blatantly conclusory allegation that H&P is, itself, an "enterprise." *See, e.g.*, *Hidden Values*, 2012 WL 1836087, at *2 (stating that "conclusory allegations, unwarranted deductions, [and] legal conclusions" will not satisfy the requirement to plead "factual content").

litigation (with D&T).[46] The SAC contains no allegations that would even suggest that the Attorney Defendants were "directing" any of the actions about which Plaintiff complains.[47]

In fact, Plaintiff's own allegations demonstrate that the Attorney Defendants were not "directing anything." For example, the SAC states that "[t]he Baymark Defendants had Hallett & Perrin draft Windspeed's company agreement."[48] Plaintiff attached Smith's entire deposition transcript as an Exhibit to the SAC and "adopted and incorporated" it as part of the SAC.[49] In her testimony, Smith stated that she was merely following the lead of the parties, including her client: "The business points were primarily resolved *before the attorneys got involved*. I don't know which party was the one that set up the capital structure."[50] The SAC even quotes Smith's testimony regarding the reason why Windspeed's purchase price for ACET Global's assets was equal

---

[46]*See, e.g.*, SAC ¶ 128 ("Despite the fact that Hallett & Perrin drafted the company agreement for Windspeed . . . and, more importantly, drafted the warrant purchase agreement . . . ."); *id.* ¶ 152 ("Baymark tasked its law firm, Hallett & Perrin, with drafting the transactional documents."); *id.* ¶ 167 ("Julie Smith acknowledges that she and Hallett & Perrin helped Baymark set up a structure that would allow BP Management to both control Windspeed and to have ownership of 40% of its membership interests for a nominal exercise price of $100."); *id.* ¶ 223 ("Hallett & Perrin corresponded directly with Vanderwoude (Super G's counsel)."); *id.* ¶ 235 ("Hallett & Perrin attorneys discussed the Notice [of Foreclosure] with Super G's counsel before Hallett & Perrin's client received the Notice."); *id.* ¶¶ 128-31 (describing discussions between Plaintiff's counsel and H&P in connection with Plaintiff's "pending lawsuit against several parties").

[47]*Compare JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*, No. 06 Civ. 6095(JGK), 2007 WL 1159637, at *9 (S.D.N.Y. Apr. 18, 2007) (allowing a RICO claim to proceed against an accountant who was alleged to be "an 'architect' of some of the money laundering activities" and who was alleged to have "devised and managed the scheme to use a chain of single-use entities to carry out real estate transactions"); *Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076, 1099 (S.D.N.Y. 1994) (noting the plaintiffs' allegations that the attorney defendants "helped devise the fraudulent scheme, played an integral role in managing the scheme and directed others to act in furtherance of the scheme"), *aff'd sub nom. Tribune Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995).

[48]SAC ¶ 394. The Attorney Defendants deny that there was anything wrong in this, or any other, instruction from their clients.

[49]*See* SAC at 6 n.3; SAC Exh. 6.

[50]*See* SAC Exh. 6, Smith Depo. at 49:1-4 (emphasis added); *see also id.* at 50:19-22 ("It was my understanding that Windspeed Trading was an existing company and that we were revising the company agreement to reflect the business deal among the parties.").

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 12**

to the amount of the ACET loan: "I think that was the agreement between the parties."[51] There are simply no allegations in the SAC that would even suggest that the Attorney Defendants were doing anything more than providing run-of-the-mill legal services to their clients as their clients requested.

Even the purported "backdating" to which Plaintiff repeatedly points is not alleged to have been anything "directed" by the Attorney Defendants.[52]  Rather, the SAC alleges that "the parties, with the assistance and blessing of their counsel," undertook the purported "backdating."[53]  In any event, the SAC offers no explanation whatsoever as to any possible legal significance of the difference between the "as of March 1, 2019" date and the date the Foreclosure Sale was actually executed, which was in late March.[54] Plaintiff alleges that the transfer of ACET Global's assets to Windspeed took place in *October of 2018*.[55] Had the Foreclosure Sale documents been "backdated" to a date in the fall of 2018, that might suggest some sort of nefarious motive, but March 1, 2019 and March 26, 2019 are equally far removed from the date of the alleged transfer of ACET Global's assets. It is clear that Plaintiff is just using the term "backdating" in an attempt to imply some sort of wrongdoing that the actual facts it alleges do not really support.

---

[51]SAC ¶ 251.

[52]*See, e.g.*, SAC ¶¶ 184, 221. What Plaintiff characterizes as "backdating" is the "as of March 1, 2019" date of the Foreclosure Sale Agreement that Plaintiff includes as Exhibit 18 to the SAC. Plaintiff attempts to distinguish the "as of" date from an "effective" date, but Smith's actual testimony was: "Q: When you say – you know, when you say many firms engage in backdating, are you referring to effective dating, or are you referring to backdating. A: *I see those as the same thing*." SAC Exh. 6, Smith Depo. at 36:10-16 (emphasis added); *see also id.* at 34:12-15 ("Q: When was this document actually signed? A: I believe the end of March, *to be effective as of March 1st*.") (emphasis added)

[53]SAC ¶ 247.

[54] *See* SAC Exh. 37 (March 26, 2019 e-mail from Smith forwarding executed signature pages).

[55]*E.g.*, SAC ¶ 11.

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 13**

The SAC pleads no facts to support any "element of direction" on the part of the Attorney Defendants. For this reason alone, Plaintiff has failed to state any section 1962(c) claim against the Attorney Defendants, and the claim must be dismissed.

**B.      18 U.S.C. § 1962(a)**

Section 1962(a) of RICO is specifically directed at those who 1) have received "income derived, directly or indirectly, from a pattern of racketeering activity" *and* 2) have "use[d] or invest[ed], directly or indirectly, any part of such income, or the proceeds of such income" in connection with an enterprise.[56] "[I]njuries due to predicate acts cannot form the basis of an investment injury for the purposes of § 1962(a)."[57] Instead, "for a viable § 1962(a) claim, any injury must flow *from the use or investment of racketeering income*."[58]

Plaintiff continues to make only the most conclusory allegations regarding its purported claim under section 1962(a): "The Defendants, either directly or indirectly received income from the pattern of racketeering activity through the fraudulent transfer (avoiding amounts payable to Plaintiff), and the proceeds were reinvested back into the enterprise."[59] The SAC pleads no specific facts regarding any "income" received by *any* of the Defendants, much less the Attorney Defendants specifically, nor does the SAC plead any specific facts regarding how any such "income" was

---

[56]18 U.S.C. § 1962(a).

[57]*St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 443 (5th Cir. 2000); *see also Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 550 (5th Cir. 2012) ("[I]njuries resulting from predicate acts of 'racketeering activity' themselves cannot form the basis of an investment injury for purposes of § 1962(a).").

[58]*St. Paul Mercury Ins.*, 224 F.3d at 441 (emphasis added); *see also Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir. 1992) ("Parker & Parsley's injury does not stem from the *investment* of the income from racketeering activity; therefore, it has pleaded no cause of action under section 1962(a).") (emphasis in original); *Paul v. Aviva Life & Annuity Co.*, Civil Action No. 3:09-CV-1490-B, 2010 WL 5105925, at *6 (N.D. Tex. Dec. 14, 2010) ("There are no well-pleaded facts to support that Plaintiffs have suffered an investment injury, as opposed to any injury arising from the predicate acts.").

[59]SAC ¶ 413.

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 14**

"reinvested" by the Attorney Defendants into the "enterprise."[60] Moreover, Plaintiff pleads no facts

to suggest that it was in any way "injured" by the use or investment of racketeering income. Instead,

it is clear from the SAC that the *only* injury it is claiming was complete once ACET Global had no

assets left.[61]

The Court should dismiss Plaintiff's section 1962(a) claim against the Attorney Defendants

for this reason as well as those generally applicable to all of Plaintiff's RICO claims.[62]

### C.    18 U.S.C. § 1962(d)

RICO section 1962(d) prohibits "conspir[ing] to violate any of the provisions of subsections

(a), (b), or (c)."[63] Similar to the analysis under section 1962(c), "[a]llegations that a law firm

provided legal representation to an enterprise do not, without more, suffice to state a RICO

conspiracy" under section 1962(d).[64] Rather, a complaint must provide *details* about the content of

the alleged agreement to violate RICO, when and where any such agreement arose, and what acts

of racketeering were purportedly agreed upon.[65] There are no such allegations in the SAC with

respect to the Attorney Defendants.

---

[60]Although it is not entirely clear against which Defendants Plaintiff is actually asserting its section 1962(a) claim, Plaintiff expressly lists both of the Attorney Defendants under the heading "Count II: Violations of 18 U.S.C. § 1962(a) (Civil RICO)." SAC at 181.

[61]*See, e.g.*, SAC ¶¶ 406, 420.

[62]*See supra* note 19 (adopting the RICO-related arguments for dismissal contained in the other Defendants' briefs).

[63]18 U.S.C. § 1962(d).

[64]*Muskegan Hotels*, 986 F.3d at 699; *see also RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051 (D.C. Cir. 2012) (finding the plaintiff failed to state a claim under § 1962(d) against attorneys when "the allegations of the complaint target[ed] Freshfields' services as attorneys, nothing more").

[65]*See Muskegan Hotels*, 986 F.3d at 700; *see also United States v. Rosenthal*, 805 F.3d 523, 530 (5th Cir. 2015) ("The elements of a RICO conspiracy under § 1962(d) are simply (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to *the overall objective* of the RICO offense.") (emphasis in original).

ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 15

Further, as this Court has previously recognized, in the absence of a viable substantive RICO claim, there can be no RICO "conspiracy" claim.[66] For the reasons stated herein as well as in the other Defendants' motions to dismiss, the SAC has, once again, failed to plead any RICO claim under either section 1962(c) or 1962(a). This failure dooms Plaintiff's RICO conspiracy claim as well.

The Court should also dismiss Plaintiff's section 1962(d) conspiracy claim against the Attorney Defendants for failure to state a claim.

## III.    Plaintiff's State Law Claims

As the Court recognized in its Order, the "general rule" in the Fifth Circuit is to dismiss pendent state claims when the federal claims giving rise to federal jurisdiction are dismissed.[67] As such, the Court has indicated that it will decline to exercise supplemental jurisdiction over Plaintiff's state law claims following the dismissal of Plaintiff's RICO claims.[68] For the reasons stated herein as well as in the other Defendants' motions to dismiss, Plaintiff has again failed to plead any viable claims under RICO, meaning the Court should dismiss the SAC in its entirety. Nevertheless, in an

---

[66]*See, e.g.*, *Paul*, 2010 WL 5105925, at *6 ("First, by its statutory terms, a RICO conspiracy claim is a conspiracy to violate one of the other subsections of § 1962. Because all other RICO claims have been dismissed, the RICO conspiracy claim must also be dismissed."); *see also Poe v. Bock*, EP-17-CV-00232-DCG, 2018 WL 4275839, at *8 (W.D. Tex. Sept. 7, 2018) ("If a plaintiff fails to plead the requisite elements of a RICO claim under §§ 1962(a)-(c), he is likewise unable to plead a conspiracy under § 1962(d) to violate those sections.").

[67]Order at 15; *see also Drake v. Costume Armour, Inc.*, 736 F. App'x 505, 506 (5th Cir. 2018) (per curiam) ("But here there are no good reasons for retaining the state law claims in this federal suit."); *Parker & Parsley Petroleum Co.*, 972 F.2d at 590 (concluding that "the district court . . . abused its discretion in retaining jurisdiction over the state law claims after it had dismissed the federal RICO claims.").

[68]Order at 16.

abundance of caution, the Attorney Defendants address below how Plaintiff has also failed to state its various claims against them under Texas law.[69]

## A.     Attorney Immunity

Under Texas law, attorney immunity is a "*comprehensive affirmative defense protecting attorneys from liability to non-clients*, stemming from the broad declaration . . . that attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages."[70] Thus, the doctrine of attorney immunity "generally insulates a lawyer from civil liability to a non-client for conduct performed as part of the discharge of the lawyer's duties to his client."[71] The focus relevant to a claim for attorney immunity is "on the kind—not the nature—of the attorney's conduct."[72] Moreover, the defense of attorney immunity "is properly characterized as a true immunity from suit" and is not merely "a defense to liability."[73]

---

[69] Plaintiff's state law claims are also addressed in various detail in the other Defendants' briefs, which the Attorney Defendants have adopted. *See supra* note 19.

[70] *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (emphasis added) (internal quotation marks omitted).

[71] *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019); *see also South Avis Realty, Inc. v. Neece*, Civil Action No. 1:19-CV-206, 2020 WL 3542272, at *5 (S.D. Tex. Jun. 30, 2020) (applying attorney immunity when the plaintiff's allegations "all demonstrate that Neece acted *solely as FGR's attorney* in connection with the purchase agreement") (emphasis added).

[72] *Ironshore Europe DAC*, 912 F.3d at 765 (quoting *Cantey Hanger*, 767 S.W.3d at 483-84); *see also Scarbrough v. JPMorgan Chase Bank, N.A.*, Civil Action No. 4:21-CV-3760, 2022 WL 2373725, at *9 (S.D. Tex. Jun. 2, 2022) (recognizing that "the dispositive question is whether the attorney's conduct was part of the discharge of his duties in representing a party"), *report and recommendation adopted*, 2022 WL 2359645 (S.D. Tex. Jun. 30, 2022); *South Avis Realty*, 2020 WL 3542272, at *5 ("The inquiry necessarily focuses on the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct.") (emphasis in original, internal quotation marks omitted).

[73] *Ironshore Europe DAC*, 912 F.3d at 763; *see also South Avis Realty*, 2020 WL 3542272, at *6 ("As entitlement to immunity is apparent from the face of SAR's complaint, Neece is not required to make an additional showing as to the scope of his representation to FGR; he is entitled to the defense of attorney immunity."); *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 79, (Tex. 2021) (recognizing that attorney immunity exists to "alleviat[e] in the mind of the attorney any fear that he or she *may be sued* or held liable to a non-client for providing

(continued...)

On the face of the SAC, it is clear that Plaintiff's "claims" against the Attorney Defendants are those of a "non-client" (D&T).[74]  Moreover, whatever "claims" the SAC purports to assert against the Attorney Defendants are based entirely upon conduct performed by the Attorney Defendants in their "unique lawyerly capacity," within the scope of their representation of their clients.[75] That is the only kind of conduct Plaintiff alleges. For example, the SAC describes Smith's role in drafting legal documents, including foreclosure-related documents.[76] It describes her advice to her clients about the foreclosure transaction.[77] It details communications between the Attorney Defendants and other parties' counsel regarding the various transactions.[78]

None of the Attorney Defendants' conduct described in the SAC is anything more than "conduct performed as part of the discharge of [their] duties to [their] client[s]."[79] Accordingly, the

---

[73](...continued)
zealous representation") (emphasis added).

[74]As noted above, the SAC purports to include additional "Plaintiffs" ACET Global and Holdco. *See* SAC at 1-2; *id.* ¶¶ 37, 42. As set forth in detail in Defendant Baymark ACET Holdco, LLC's Motion to Dismiss and Brief in Support, D&T lacks standing to assert claims on behalf of either of these entities in this case. However, even if either of these entities were properly a "Plaintiff" in this case, the SAC does not articulate with any coherence any purported basis for any claims on behalf of either of these "Plaintiffs" against the Attorney Defendants.

[75]*Haynes & Boone*, 631 S.W.3d at 77-78. In *Haynes & Boone*, the Texas Supreme Court also expressly affirmed what the Fifth Circuit had already concluded in *Troice v. Greenberg Traurig, L.L.P.*—that attorney immunity includes "the multitude of attorneys that routinely practice and advise clients in non-litigation matters." *Id.* at 78 (discussing *Troice*, 921 F.3d 501 (5th Cir. 2019)).

[76]*E.g.*, SAC ¶¶ 14, 127.

[77]*E.g.*, *id.* ¶ 19.

[78]*E.g.*, *id.* ¶¶ 128, 157, 220-24.

[79]*See Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 348 (5th Cir. 2016) ("These are classic examples of an attorney's conduct in representing his client. That some of it was allegedly wrongful, or that he allegedly carried out some of his responsibilities in a fraudulent manner, is no matter."); *see also Highland Capital Mgmt., LP v. Looper Reed & McGraw, P.C.*, No. 05-15-00055-CV, 2016 WL 164528, at *7 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) (mem. op.) (considering a defendant's successful invocation of attorney immunity and concluding that the trial court did not err in rejecting the plaintiff's claim for aiding and abetting breach of fiduciary duty because "the conduct providing the basis for [the plaintiff's] allegations is the type of conduct that falls within the scope of Looper Reed's representation of [its client]").

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 18**

Attorney Defendants are entitled to dismissal of all the state-law claims in the SAC based on the defense of attorney immunity.[80]

### B.        Common-Law Fraud (Count IV)

Despite Plaintiff's repeated generic references to "fraud" throughout the SAC, Plaintiff makes almost no attempt to identify any alleged "misrepresentations" with particularity.[81] Plaintiff certainly does not identify *any* actionable "misrepresentations" made *by the Attorney Defendants* to D&T, much less with the particularity required by Rule 9(b).[82] The closest Plaintiff comes is describing a purported "misrepresentation" by Ed Perrin of H&P to Plaintiff's counsel that there was "no relationship" between Super G Capital and any of the defendants in the state-court case also filed by D&T.[83]

Putting aside for the purpose of this Motion whether or not the facts described in the SAC would actually constitute a "misrepresentation," as a matter of law, even if they did, such "misrepresentation" cannot form the basis of any claim by D&T. Attorney immunity specifically "protects even allegedly fraudulent statements made to non-clients in connection with a legal representation."[84] Moreover, nowhere in the SAC is there any allegation that D&T in any way acted

---

[80]The Attorney Defendants address below additional reasons besides attorney immunity for the dismissal of Plaintiff's state law claims.

[81]*See, e.g.*, SAC  ¶¶ 17, 102, 136, 137, 145, 180, 187, 198, 202, 230, 240, 244, 265, 267, 271, 299, 300, 308.

[82]In contrast to the allegations in the FAC, the SAC clarifies that it is only D&T that is asserting a common-law fraud claim. *See* SAC ¶ 452 ("The Defendants made materially false representations to Plaintiff D&T Partners . . . with the intention that Plaintiff D&T Partners act on those representations, and Plaintiff D&T Partners relied on those representations . . . .").

[83]*See* SAC ¶¶ 128-31.

[84]*Johnson v. Ashmore*, 681 F. App'x 345, 346 (5th Cir. 2017) (per curiam); *see also Cantey Hanger*, 467 S.W.3d at 484 ("Fraud is not an exception to attorney immunity . . . .").

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 19**

in reliance on any purported "misrepresentation" made by the Attorney Defendants.[85] For this reason as well, Plaintiff has failed to state a claim for common-law fraud against the Attorney Defendants.

Because Plaintiff does not plead its common-law fraud claim against the Attorney Defendants with the particularity demanded by Rule 9(b), this claim must be dismissed.

## C.    Breach of Fiduciary Duty/Aiding and Abetting Breach of Fiduciary Duty (Counts V, VI)

As an initial matter, the SAC specifically names seven Defendants under its claim for breach of fiduciary duty, including the Attorney Defendants, but then asserts its claim for "aiding and abetting" breach of fiduciary duty against all Defendants.[86] This would appear to suggest that Plaintiff is attempting to sue some Defendants for "aiding and abetting" themselves. Clearly, this makes no sense.

Further, Plaintiff's "shotgun pleading" again makes it impossible to determine what specific conduct by what specific Defendant serves as the basis for either Plaintiff's breach of fiduciary duty or its aiding and abetting claims. The "facts" that Plaintiff does allege, however, make no sense as to the Attorney Defendants.

For example, the SAC alleges that the "Fiduciary Claim Defendants breached their fiduciary duty by willfully and/or through gross negligence (i) allowing the business and assets [of ACET Global, LLC] to waste, (ii) failing to cause ACET Global to pay under the D&T Note, and

---

[85]One of the necessary elements of a claim for fraud is a plaintiff's "action or inaction taken in justifiable reliance upon" a "false representation of material fact." *Maynard v. PayPal, Inc.*, Civil Action No. 3:18-CV-0259-D, 2019 WL 3552432, at *8 (N.D. Tex. Aug. 5, 2019).

[86]*See* SAC at 189 (asserting Count V against Ludlow, Szeto, Hook, Denegre, Baymark ACET Holdco, Hallett & Perrin, and Julie A. Smith); *id.* at 190 (asserting Count VI against "All Defendants").

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 20**

(iii) failing to cause ACET Global to otherwise comply with the terms of the D&T Note."[87] What is entirely missing from the SAC is any fact-based explanation that would even suggest how the Attorney Defendants were in any position to cause any "waste" of ACET Global, LLC's assets or how they could possibly have had the control over ACET Global, LLC to "cause" it to pay or not pay under the D&T Note.[88]

Similarly, to support any aiding and abetting claim, Plaintiff must plead *facts* that would show both that the Attorney Defendants in particular "had an unlawful intent" and that they "substantially assisted and encouraged the wrongdoer in the wrongdoer's tortious act."[89] The SAC includes no such facts with respect to the Attorney Defendants.[90] The Court should dismiss these claims against the Attorney Defendants as well.

### D.    Texas Uniform Fraudulent Transfer Act (Count VII)

Plaintiff purports to assert its TUFTA claim against all Defendants.[91] However, TUFTA only provides for recovery against the transferee of the assets or the person for whose benefit the transfer

---

[87]SAC ¶ 454.

[88]Plaintiff's other allegations of "breach of fiduciary duty" are similarly left completely unconnected to the Attorney Defendants. *See, e.g.*, SAC ¶ 454 (asserting that the "Fiduciary Claim Defendants also breached their fiduciary duty by . . . willfully diverting the assets of ACET Global in order to benefit themselves" without offering any facts to suggest either that the Attorney Defendants specifically had any ability to "divert[]" ACET Global, LLC's assets or that the Attorney Defendants were in any way "benefit[ed]" by such "diver[sion]" of ACET Global, LLC's assets.

[89]*Jessen v. Duvall*, No. 14-16-00869-CV, 2018 WL 1004659, at *7 (Tex. App.—Houston [14th Dist.] Feb. 22, 2018, no pet.) (mem. op.).

[90]In fact, Smith's deposition testimony, which Plaintiff incorporated in its entirety in the SAC, demonstrates the absence of any "unlawful intent" by Smith and H&P. For example, Smith testified that at the time of the foreclosure, she did not know that Windspeed was (allegedly) already in possession of ACET Global, LLC's assets. SAC Exh. 6, Smith Depo. at 18:8-20. She also testified that she did not believe that ACET Global, LLC had assets worth in excess of the Super G secured debt. *Id*. at 61:2-20.

[91]SAC ¶¶ 460-63.

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 21**

was made.[92] Plaintiff does not plead facts that would identify the Attorney Defendants as the transferee of any of ACET Global's assets, nor does Plaintiff explain how any "transfer" of ACET Global's assets was done to "benefit" the Attorney Defendants. Accordingly, Plaintiff has failed to state a claim against the Attorney Defendants under TUFTA, and the Court should dismiss this claim as well.

### E.    Civil Conspiracy (Count VIII)

It is unclear what Plaintiff claims the Defendants, including the Attorney Defendants, "conspired" to do. However, any claim for conspiracy necessarily relies on the underlying torts alleged by Plaintiff. Thus, the pleading defects in Plaintiff's state law claims necessarily impact Plaintiff's conspiracy claims as well. For example, to the extent Plaintiff is claiming a "conspiracy" to commit "fraud," Plaintiff must meet the particularity requirements of Rule 9(b), which as set forth above, it has not done.[93] For all the reasons set forth above, as well as in the other Defendants' briefs, Plaintiff's claim for civil conspiracy against the Attorney Defendants must be dismissed along with its other claims.

### PRAYER

WHEREFORE, Defendants Hallett & Perrin, P.C. and Julie A. Smith  respectfully request that the Court grant their Motion to Dismiss Plaintiff's Second Amended Complaint and dismiss all of Plaintiff's claims asserted therein, as well as for such other and further relief to which they may be justly entitled.

---

[92]Tex. Bus. & Comm. Code § 24.009; *see also Clapper v. American Realty Investors, Inc.*, Civil Action No. 3:14-CV-2970-D, 2015 WL 3504856, at *6 (N.D. Tex. Jun. 3, 2015) (stating that "TUFTA allows recovery against the debtor, the transferee, or the person for whose benefit the transfer was made.").

[93]*See, e.g.*, *Chau v. Aviva Life & Annuity Co.*, Civil Action no. 3:09-CV-2305-B, 2011 WL 1990446, at *10 (N.D. Tex. May 20, 2011) (dismissing a civil conspiracy claim for failure to comply with Rule 9(b)).

**ATTORNEY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT— Page 22**

Respectfully submitted,

*/s/ Daniel D. Tostrud*
**DANIEL D. TOSTRUD**
Texas Bar No. 20146160
dtostrud@cobbmartinez.com
**MATTHEW E. LAST**
Texas Bar No. 24054910
mlast@cobbmartinez.com
**COBB MARTINEZ WOODWARD PLLC**
1700 Pacific Avenue, Suite 3100
Dallas, TX 75201
(214) 220-5200
(214) 220-5299 (Fax)

**ATTORNEYS FOR DEFENDANTS**
**HALLETT & PERRIN, P.C.**
**AND JULIE A. SMITH**

## <u>CERTIFICATE OF SERVICE</u>

On July 22, 2022, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Daniel D. Tostrud*
Daniel D. Tostrud