## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS, LLC, successor-in-interest to ACET Venture Partners, LLC, | § § § | |
| *Plaintiff*, | § § | Civil Cause: 3:21-CV-1171-B |
| v. | § § | |
| BAYMARK PARTNERS, LP, *et al*., | § § | |
| *Defendants*. | § § | |

## WINDSPEED EMPLOYEES' BRIEF IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT CLAIMS PURSUANT TO RULE 12(B)(6)

Jason T. Rodriguez
   Texas State Bar No. 24042827
   *Attorney-In-Charge*
Timothy P. Woods
   Texas State Bar No. 21965500

HIGIER ALLEN & LAUTIN, P.C.
2711 N. Haskell Ave., Suite 2400
Dallas, Texas 75204
Telephone: (972) 716-1888
Facsimile: (972) 716-1899
jrodriguez@higierallen.com
twoods@higierallen.com

ATTORNEYS FOR WINDSPEED TRADING, LLC, MR. WILLIAM SZETO, MS. ZHEXIAN LIN, MS. DANA MARIE TOMERLIN, MS. PADASAMAI VATTANA; AND MS. VANESSA TORRES

TABLE OF CONTENTS

**I. SUMMARY**………………………………………………………………………….... 1

**II. BACKGROUND**……………………………………………………………….. 3

  A. Procedural Background…………………………………………………………… 3

    *i.The State Case*…………………………………………………………………… 3

    *ii.   This Federal Case*…………………………………………………………… 3

  B. Summary of Averments in the Complaint…………………………………………… 5

    *i. The Windspeed Employees*……………………………………..……………………… 7

    *ii. Foreclosure Sale is the Alleged Racketeering Activity*………………………….. 9

**III. ARGUMENTS AND AUTHORITIES** ……………………………………….... 10

  A. Rule 12(b)(6) Standard ……………………………………………………… 10

  B. Plaintiff Fails to Establish Elements Common to All RICO Causes of Action ……... 11

  C. Plaintiff has Not Alleged an Association-in-Fact as a Matter of Law with the Windspeed Employees …………………………………………............................ 13

    *i. The Windspeed Employees Were Acting in the Course and Scope of Their Employment and Thus Not Distinct from the Alleged Enterprise-in-Fact* …………... 15

  D. 1962(c) – Count I ……………………………………………………… 16

  E. 1962(a) – Count II ……………………………………………………… 17

  F. 1962(d) – Count III ……………………………………………….……….. 18

    *i.Plaintiff Fails to Meet Heightened Pleading Standard and Establish Intent for Conspiracy*.....………………………………………………………. 19

  G. State Law Causes of Action………………………………..…………………… 20

    *i. Plaintiff Fails to Establish Aiding and Abetting a Breach of Fiduciary Duty* ...…….. 20

    *ii. Plaintiff Fails to Show Elements to Establish TUFTA*…………………………… 22

  H. Civil Conspiracy....……………………………………………………………. 23

**IV. CONCLUSION** ....…………………………………………………………. 23

**V. PRAYER**....……………………………………………………………… 24

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007)…………………………………….. 21

*Armendariz v. Chowaiki*, 2016 WL 8856919, at *9 (W.D. Tex. Mar. 31, 2016)………. 19

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)……………………………………………… 15

*Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993)……………………………………... 23

*Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 439–40 (5th Cir. 1987)………. 19

*Atkinson*, 808 F.2d at 441………………………………………………………………… 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)………………………………….. 15

*Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F.Supp. 995, 1005 (S.D. Tex. 1995)….. 23

*Bonton*, 889 F.Supp. at 1004……………………………………………………………… 23

*Boyle v. United States*, 556 U.S. 938 (2009) …………………………………………… 20

*Burzynski*, 989 F.2d at 742-43…………………………………………………………… 25

*Brunig v. Clark*, 2007 WL 9712119, at *8 (S.D. Tex. Sept. 24, 2007)………………… 19

*Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953, 961 (5th Cir. 1994) … 28

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)………… 15

*Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 239 (5th Cir. 2010)……………........ 24

*Chazanow*, 2009 WL 3853704, at *4……………......……………......……………...... 23

*Clark v. Nat'l Equities Holdings, Inc.*, 561 F. Supp. 2d 632, 639 (E.D. Tex. 2006), *remanded in part on other grounds*, 229 F. App'x 314 (5th Cir. May 30, 2007)………. 19

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000)… 15

*Commercial Metals Co. v. Chazanow*, No. 3:09-CV-0808-B, 2009 WL 3853704, at *4 (N.D. Tex. Nov. 7, 2009)…………………………………………………………………... 17

*Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995)……………………………………… 21

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir.1988), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989)……………………...… 17

*DePuy Orthopaedics*, 888 F.3d at 781-82……………....……………………....………. 26

*Ebert v. Gustin*, 2016 WL 11663164, at *8 (N.D. Tex. May 12, 2016)……………….... 25

*Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)……………………………………. 19

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017)…………………………………………………………………………………………… 26

*GFRS Equipment Leasing Fund II LLC v. Nguyen*, No. 3:18-cv-2250-L, 2019 WL 3530421, at *4 (N.D. Tex. Aug. 1, 2019)……………………………………………………… 16

*Henkel v. Emjo Invs., Ltd.*, 480 S.W.3d 1 (Tex.App.—Houston [1st Dist.] 2016, no pet.) ..... 28

*H.J. Inc. v. Northwestern Bell Te. Co.*, 492 U.S. 229, 241 (1989)…………....……….... 16

*H.J. Inc.*, 492 U.S. at 241…………………………………………………....……... 17

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781-82 (5th Cir. 2018)………………………………………………………… 26

*In re Burzynski, 989 F.2d 733, 741 (5th Cir.1993)* ………………………………… 16

*In re Sunpoint Sec.*, Inc., 350 B.R. 741, 747 (Bankr. E.D. Tex. 2006)…………....…… 22

*Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (Rule 9(b)) ……………………………………………………………………………… 23, 24

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)………………… 25

*Nguyen, 2019 WL 3530421, at \*4*…………………………………………………… 17

*Oblio Telecom, Inc. v. Patel*, 2009 WL 1650481, at \*7 (N.D. Tex. June 10, 2009)…….. 19

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)……………………………… 16

*Murex, LLC v. GRC Fuels, Inc.*, No. 3:15-CV-3789-B, 2016 WL 4207994, at \*2 (N.D. Tex. Aug. 10, 2016)……………………………………………………………... 15

*Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993)…………………………………… 20

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2nd Cir. 1994)………………………………………………………………………….... 19

*Salinas v. United States*, 522 U.S. 52, 65 (1997)…………………………………….... 24

*Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B, 2007 WL 9711726, at \*6 (N.D. Tex. May 9, 2007)……………………………………………………………… 17

*Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B, 2007 WL 9711726, at \*8 (N.D. Tex. May 9, 2007) …………………………………………………………… 19, 21, 22

*Sharif v. Wellness Int'l Network, Ltd.*, 2007 WL 9711726, at \*10 (N.D. Tex. May 9, 2007) 19

*Singh*, 480 F.3d at 357 (quoting *Crowe*, 43 F.3d at 206………………………………… 24

*Snow Ingredients Incorporated v. SnoWizard Incorporated*, 833 F.3d 512, 526 (5th Cir. 2016)……………………………………………………………………………….. 16

*SnoWizard Incorporated*, 833 F.3d at 524……………………………….……………… 24

*Taylor v. Rothstein Kass & Company, PLLC*, 2020 WL 554583, at *5 (N.D. Tex. Feb. 4, 2020)……………………………………………………………………….. 26

*Taylor*, 2020 WL 554583, at *5……………………………………………………… 26

*United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978) ……………………… 20

*United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir 1998)……………………….. 24

*United States v. Sutherland*, 656 F.2d 1181, 1187 (5th Circuit 1981)…………………... 23

*Vanderbilt Mortg. and Finance, Inc. v. Flores*, 735 F.Supp.2d 679, 700 (S.D. Tex. 2010)……………………………………………………………………………….. 22

*Whelan v. Winchester Prod. Co*., 319 F.3d 225, 228–29 (5th Cir. 2003)……………...... 17

*Whelan*,  319 F.3d at 230 ………………………………………………………… 19

*Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)………………………………………………………………………... 17

*Zastrow v. Hous. Auto Imprts. Greenway, Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015)……. 18

*Zastrow*, 789 F.3d at 561……………………………………………………………… 25

Statutes

18 U.S.C. § 1961(5)……………………………………………………………….. 17

18 U.S.C. § 1962(a)-(c)………………………………………………….………. 16

Rules

FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)……………………………………… 15

To the Hon. Jane J. Boyle;
United States District Judge:

COME NOW defendants Ms. Zhexian Lin ("Lin"), Ms. Dana Marie Tomerlin ("Tomerlin"), Ms. Padasamai Vattana ("Vattana"), Ms. Vanessa Torres ("Torres" and together with, Lin, Tomerlin and Vattana the "Windspeed Employees")[1] and file this, their *Windspeed Employees' Brief in Support of Motion to Dismiss Second Amended Complaint Claims Pursuant to Rule 12(b)(6)* (the "Brief"). This Brief is filed in support of the *Windspeed Employees' Motion to Dismiss Second Amended Complaint Claims Pursuant to Rule 12(b)(6)* (the "Motion"). In support of the Motion and Brief, the Windspeed Employees would respectfully show this Court as follows:

## I. SUMMARY

1. Plaintiffs' live Second Amended Complaint[2] is their third, and most recent attempt to turn a UCC1 sale[3] into a RICO action. The prior First Amended Complaint was dismissed by this Court by the Court's entry of its prior Opinion, which sets forth in great detail why Plaintiffs' RICO claims fail.

2. At the conclusion of the Court's Opinion, the Court granted Plaintiffs a chance to replead their claims. The Second Amended Complaint followed - but does nothing to fix the deficiencies in the First Amended Complaint. Principal among the deficiencies cited by the Court in the Opinion was the Plaintiffs' failure to "continuity" in either the closed or open sense.

---

[1]    Ms. Paula Ketter was previously represented by the undesigned Firm, but has now obtained separate counsel.

[2]    Capitalized terms not defined in the Summary section shall have the meaning ascribed in the body.

[3]    In the Second Amended Complaint, the Plaintiffs refer to the UCC1 sale as a "foreclosure" which is technically was not. In the interest of continuity of terms, movants will use "foreclosure" to describe the UCC1 sale for the remainder of the Brief.

3. The Second Amended Complaint does not plead anything new which would overcome the prior problems. Rather, like an accordion, Plaintiffs have stretched out the previously alleged predicate acts which, when viewed rationally, fit within those acts the Court has already found to be insufficient in the Opinion. This is because the Second Amended Complaint does not include any new alleged purpose. The only stated and alleged goal of the alleged "scheme" is, was, and always will be the foreclosure sale which was concluded years ago.

4. RICO was promulgated to reduce organized crime, not foreclosure of collateral and the sale thereafter. For all its bluster, the Second Amended Complaint asserts RICO because a senior secured lender – to which Plaintiff voluntarily subordinated its interest – foreclosed on its collateral. As the Court states in the Opinion, alleged garden variety fraud will not give rise to RICO liability.

5. Specifically with regard to the Windspeed Employees, the Second Amended Complaint adds nothing new. The only times they are mentioned is describing them working in furtherance of their normal duties as employees of a going concern. In this regard, there is nothing to suggest that the Windspeed Employees are distinct RICO persons which are separate and apart from the RICO entities which Plaintiff alleges form an association-in-fact enterprise. Nor has Plaintiffs shown any knowledge or control over the alleged racketeering activities.

6. More generally, the Second Amended Complaint fails to show any enterprise existed for the purposes of RICO liability.

7. For all of these reasons, the Second Amended Complaint should be dismissed. This time with prejudice.

## II. BACKGROUND

A. Procedural Background

8.     This civil action (the "Federal Lawsuit") was commenced on May 21, 2021 by Plaintiffs filing their *Original Complaint*. [**Docket No. 1**].

9.     At the time the Federal Lawsuit was filed by plaintiff D&T Partners, LLC ("D&T"), D&T was in the midst of prosecuting claims against most of the existing defendants in State court (the "State Court Lawsuit").[4]  The State Court Lawsuit brings essentially the same claims as the Federal Lawsuit, except for the RICO claims.  The State Court case is still ongoing.  This action appears to be an attempt to improperly circumvent the pleading amendment deadline in the state court action, which prevented Plaintiff from asserting the claims it now asserts.

10.     On August 9, 2021, the Windspeed Employees, and the other defendants, each filed respective motions to dismiss the Original Complaint.[5]  Rather than address the motions to dismiss, Plaintiffs filed their *First Amended Complaint* on September 30, 2021.  [**Docket No. 36**].

11.     On November 3, 2021, the Windspeed Employees, and the other defendants, each filed respective motions to dismiss the First Amended Complaint.[6]  This was followed by responses by the Plaintiffs and replies by the Defendants, including the Windspeed Employees.

12.     The Court considered the motions to dismiss the First Amended Complaint on submission and, on May 5, 2022, entered its *Memorandum Opinion & Order* (the "Opinion"). [**Docket No. 89**].

---

[4]     On July 12, 2019, Plaintiff filed its Plaintiff's *Original Petition* initiating the civil action styled *D&T Partners, LLC v. ACET Global, LLC, et al*., pending in the 116th District Court, Dallas County, Texas.

[5]     The Windspeed Employee's first motion to dismiss was filed at **docket no. 28**.

[6]     The Windspeed Employee's second motion to dismiss was filed at **docket no. 47**.

13.     Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), the Opinion dismissed the First Amended Complaint because, *inter alia*, "The Court agrees with Defendants that the Amended Complaint fails to adequality plead a pattern." Opinion at p. 11.  RICO was (and is) the only basis for Federal jurisdiction.  As such, the Court declined to exercise supplement jurisdiction over the state law claims and dismissed those as well.  Opinion p. 16.  Finally, the Court granted the Plaintiffs leave to amend.  *Id.*

14.     On June 8, 2022, Plaintiffs filed their *Second Amended Complaint*.  [**Docket No. 91**].  The claims in the Second Amended Complaint remain:

      a.   Count I – Violations of 18 U.S.C. § 1962(c),[7]
      b.   Count II – Violations of 18 U.S.C. § 1962(a),[8]
      c.   Count III – Violations of 18 U.S.C. § 1962(d),[9]
      d.   Count IV – Common Law Fraud,[10]
      e.   Count V – Breach of Fiduciary Duty,[11]
      f.   Count VI – Aiding and Abetting Breach of Fiduciary Duties,[12]
      g.   Count VII – Texas Uniform Fraudulent Transfer Act,[13]
      h.   Count VIII – Civil Conspiracy,[14]
      i.   Count VIX [sic] – Respondeat Superior and / or Agency Liability.[15]

15.     While the sprawling Second Amended Complaint added new parties, it did nothing to address the deficiencies which render it subject to dismissal pursuant to Rule 12(b)(6).

---

[7]     Second Amended Complaint p. 154.

[8]     Second Amended Complaint p. 181.

[9]     Second Amended Complaint p. 184.

[10]    Second Amended Complaint p. 188.

[11]    Second Amended Complaint p. 189.

[12]    Second Amended Complaint p. 190.

[13]    Second Amended Complaint p. 191.

[14]    Second Amended Complaint p. 192.

[15]    Second Amended Complaint p. 192.

16.     The Motion and this Brief are filed seeking dismissal of the live Second Amended
Complaint with prejudice.

B. Summary of Averments in the Complaint

17.     The factual background forming the basis of Plaintiffs' 194 page complaint can be
fairly summarized as follows.  ACET Global operated as e-commerce business and was formed to
purchase the assets, *etc*. of ACET Venture Partners, LLC (n/k/a/ D&T).[16]  Plaintiff D&T
voluntarily subordinated its loan to ACET Global, LLC ("ACET Global").[17]   ACET Global
obtained senior secured financing from Super G Capital, LLC ("Super G").[18]   ACET Global
defaulted on its obligations to D&T[19] and Super G[20].   Super G then took its collateral and
transferred it to Windspeed Trading, LLC ("Windspeed").[21]   During the course of this process,
Plaintiffs allege all manner for bad acts by the Defendants leading up to the foreclosure and transfer
of Super G's collateral to Windspeed.  Most germane to this Brief, Plaintiffs assert RICO liability
as to all Defendants because of their alleged role in this process.  All Defendants deny these claims.

18.     Plaintiffs claim they are damaged because "[s]pecifically, the Defendants violations
of these [RICO] statutes resulted in the failure to pay millions of dollars owed to Plaintiff."  Second
Amended Complaint at p. 181, ¶ 406.  In short, Plaintiffs allege that the transfer of Super G's
collateral to Windspeed damaged the Plaintiffs because at that point ACET Global was no longer

---

[16]     Second Amended Complaint p. 22, ¶¶ 60 & 61.

[17]     Second Amended Complaint p. 32, ¶ 81.

[18]     Second Amended Complaint p. 29, ¶ 72.  Plaintiff alleges that its loan to ACET Global preceded Super G's
secured loan.  *See id.* at pg. 29.  However, that is obviously false, as the loan documents between Super and
ACET Global make it obvious that Super G is the entity which funded the purchase of assets by ACET
Global. *See id.*, Ex. 12.

[19]     Second Amended Complaint p. 105, ¶ 228.

[20]     Second Amended Complaint p. 35, ¶ 89.

[21]     Second Amended Complaint pp. 105-106, ¶ 230.

able to use (the encumbered collateral) to repay D&T's subordinated debt.  According to Plaintiff, this was all part of an elaborate scheme to wind down ACET Global and transfer its business and assets to Windspeed Trading, LLC to the determinant of D&T.

19.     The process of shutting down ACET Global's operations and the transfer of ACET Global's assets is referred to as the "Wind Down".  Second Amended Complaint p. 41, ¶ 105.  The wind down and transition were orchestrated, so Plaintiff surmises, in order to fabricate a default and foreclosure on the assets of ACET Global by Super G.  Second Amended Complaint p. 39, ¶ 100.

20.     In the Second Amended Complaint, the earliest date mentioned is "summer 2017" when "Baymark and its principals …approached Tomer Damti ("Damti") seeking to acquire the assets of [D&T]."  Second Amended Complaint p. 21, ¶ 60.

21.     The "critical steps of the ACET Global 'wind down' plan [occurred] during the weeks of September 17th and 22nd during 2018—roughly a month before the $3.2 million D&T Note was to come due."  Second Amended Complaint p. 41, ¶ 104.

22.     The notice of Super G's foreclosure is dated January 31, 2019.  Second Amended Complaint p. 104, ¶ 231.

23.     The foreclosure sale agreement which sold the ACET Global assets to Windspeed was dated March 1, 2019, but was backdated.  Second Amended Complaint p. 110, ¶ 242.

24.     The sale of the ACET Global's assets to Windspeed closed in late March 2019.  Second Amended Complaint p. 119, ¶ 255.

25.     After March 2019, litigation concerning the foreclosure sale ensured.

*i. The Windspeed Employees*

26.     Plaintiff names six employees as defendants in this matter who both worked for ACET Global and for Windspeed.  *See id.* at pg. 12.  Other than frequently citing to their deposition testimony in the body of the Complaint, practically no factual allegations are made regarding the roles these Windspeed Employees played at either ACET Global or Windspeed, save and except for Mr. Szeto.  Apparently, Plaintiff expects the dearth of allegations regarding Ms. Lin, Ms. Tomerlin, Ms. Vattana, and Ms. Torres to create RICO-person designations out of thin air.

a.  Other than references in deposition transcripts, Ms. Lin is factually referenced as follows:

   i.  "Lin is an individual and Accountant for Windspeed and ACET Global…" p. 21, ¶ 52.
   ii.  Denegre had regular communications with Ms. Lin regarding ACET Global's finances and taxes and "[s]pecifically, Denegre directed Windspeed, Szeto, and Lin with respect to ACET Global's 2018 federal tax obligations and sale and use tax audit initiated by the Texas Comptroller against ACET Global." p. 85, ¶ 195.
   iii.  Ms. Lin's ACET Global email account was used when obtained a storage unit for inventory. p. 87, ¶ 198.
   iv.  Ms. Lin requested that she be a new account holder for an account of ACET Global. p. 97, ¶ 214.
   v.  Ms. Lin is alleged to have maintained books and records of ACET Global. p. 125, ¶¶ 269, 271 & 273.

b.  Other than references in deposition transcripts, Ms. Tomerlin is factually referenced as follows:

   i.  "Tomerlin is an individual and fulfillment center employee at Windspeed and ACET Global…" p. 21, ¶ 53; p. 87, ¶ 199; p. 92, ¶ 206.
   ii.  Ms. Tomerlin helped move the inventory from ACET Global to Windspeed and used her name for the storage facility. p. 87, ¶ 198.
   iii.  Ms. Tomerlin fulfilled ACET Global orders "well into 2019". p. 94, ¶ 209.
   iv.  "Tomerlin, who packed and shipped all of ACET Global's and Windspeed's inventory, was never even made aware of any purported foreclosure." p. 111, ¶ 243.
   v.  "Tomerlin execut[ed] a DHL shipment on behalf of Windspeed with respect to ACET Global products." p. 150.

    c.   Other than references in deposition transcripts, Ms. Vattana is factually referenced as follows:

        i.   Ms. Vattana was the sales manager for Windspeed and ACET Global. p. 21, ¶ 54.

        ii.   Ms. Vattana would also fulfill orders.  p. 94, ¶ 209.

        iii.   Ms. Vattana fulfilled a "Zulily purchase order" which shipped ACET Global "products" on for Windspeed.  p. 150.

    d.   Other than references in deposition transcripts, Ms. Torres is factually referenced as follows:

        i.   Ms. Torres was an "employee" of Windspeed and ACET Global.  p. 21, ¶ 56.

        ii.   Ms. Torres, in some undescribed way, "expropriated" the ACET Global website in December 2018 and closed undisclosed bank accounts of ACET Global.  p. 88, ¶ 202.

27.    In a complaint with 476 paragraphs spanning 194 pages, these averments are threadbare at best.  With considering these averments are all that Plaintiffs provide to support RICO liability to ordinary employees of a company, they wholly fail to support the claims asserted by Plaintiffs.

28.    The Windspeed Employees named in this suit were not officers or managers of ACET Global an Windspeed.  Their duties for ACET Global and Windspeed were substantially similar.  Ms. Tomerlin handled fulfillment, which entails printing, packing, and shipping orders.  Ms. Lin was an accountant for ACET Global and Windspeed.  Ms. Vattana was a sales manager for ACET Global and Windspeed.

29.    At least three of the Employees have testified that they had no knowledge of any alleged foreclosure of ACET Global, of a debt owed to Plaintiff or Super G; or of any plans to cause ACET Global to fail in order to transfer assets to Windspeed.  *See* Second Amended Complaint, Ex. 4, pg. 19; Second Amended Complaint, Ex 5, pg. 19; Second Amended Complaint

Ex. 10, pg. 23.  Furthermore, they have testified that they did not know Defendants David Hook, Anthony Ludlow, Marc Cole, and Steven Bellah, and they barely knew Defendant Matthew Denegre beyond exchanges of mere pleasantries.  *See* Ex. 4, pgs. 5-6; Ex. 5, pg. 9; Ex. 10, pg. 8. They also testified that they either had no knowledge of the Baymark and Super G defendants, or they were vaguely aware of their existence.  *See id.*  These five non-executive Windspeed Employees had no connection to, nor significant knowledge of, most of the alleged members of this so-called "criminal enterprise" which Plaintiff so desperately wants to believe existed.

*ii. Foreclosure Sale is the Alleged Racketeering Activity*

30.     In the Complaint, Plaintiff alleges that numerous predicate acts giving rise to RICO claims occurred, such as (i) wire fraud, (ii) mail fraud, (iii) obstruction of justice, (iv) bankruptcy fraud, and (v) money laundering.  However, all these alleged predicate acts are tied to a single alleged racketeering activity, the foreclosure sale and transfer of ACET Global's assets to Windspeed by a secured creditor.  The alleged formation of the "enterprise" of Defendants, its collaboration, and its later alleged efforts to obstruct were all related to the disposition of assets owned by ACET Global.  No allegation is made in the Second Amended Complaint that Defendants (let alone the Windspeed Employees) have any plans to orchestrate another foreclosure sale or transfer of assets.  In fact, the Complaint alleges the "critical steps" of the scheme were achieved in the fall of 2018.  Second Amended Complaint p. 8, ¶ 8.  The objective of the alleged racketeering activity was achieved in March 2019 when the Foreclosure Sale Agreement completed the transfer of assets from ACET Global to Windspeed.  Second Amended Complaint p. 119, ¶ 254.

31.     The Complaint alleges that Defendants have either engaged in perjury or committed tax/bankruptcy fraud in other to hide the evidence of defrauding Plaintiff.  Beyond the alleged

efforts to obstruct pending litigation initiated by Plaintiff, the Complaint does not allege that the Defendants have continued their alleged racketeering activity against Plaintiff or against anyone.

## III. ARGUMENTS AND AUTHORITIES

32.     This Motion seeks dismissal with prejudice under Rule 12(b)(6) of counts I, II, and III of the Complaint which assert claims under 18 U.S.C. § 1962(a), (c), and (d) of the Racketeer Influenced and Corrupt Organization Act ("RICO").  With the dismissal of these federal claims, the Windspeed Employees request the Court decline supplement jurisdiction and dismiss the remaining state court claims, or, in the alternative dismiss them on pursuant to Rule 12(b)(6) with prejudice.

A. Rule 12(b)(6) Standard

33.     If a plaintiff's complaint fails to state such a claim, Rule 12(b)(6) allows a defendant to file a motion to dismiss.  *Murex, LLC v. GRC Fuels, Inc.*, No. 3:15-CV-3789-B, 2016 WL 4207994, at *2 (N.D. Tex. Aug. 10, 2016)

34.     To survive a motion to dismiss pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) ("Rule 12(b)(6)"), the factual allegations in a complaint must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. It also "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

35.     In assessing claims on a motion to dismiss, the Court may consider documents attached to the plaintiff's complaint or a motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet,*

*Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); see also *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).

B. Plaintiff Fails to Establish Elements Common to All RICO Causes of Action

36.    18 U.S.C. § 1962 provides for the prohibited actions under the RICO statute set forth in four subsets.   18 U.S.C. § 1962(a), (b), (c), and (d).   In order to state a claim for damages under RICO, a plaintiff must allege (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.   18 U.S.C. § 1962(a)-(c); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).   RICO was created by Congress in order to combat long-term criminal conduct.   *GFRS Equipment Leasing Fund II LLC v. Nguyen*, No. 3:18-cv-2250-L, 2019 WL 3530421, at *4 (N.D. Tex. Aug. 1, 2019) (citing *H.J. Inc. v. Northwestern Bell Te. Co.*, 492 U.S. 229, 241 (1989)).   Civil RICO liability does not exist unless the pleadings allege actual criminal activity.   *Snow Ingredients Incorporated v. SnoWizard Incorporated*, 833 F.3d 512, 526 (5th Cir. 2016)

37.    "Reduced to plain English" the statute mandates that: "(a) a person who has received income from a pattern of racketeering cannot invest that income in an enterprise; (b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering; (c) a person who is employed by or associated with an enterprise cannot conduct the enterprise's affairs through a pattern of racketeering; (d) a person cannot conspire to violate subsections (a), (b), or (c)." *Whelan v. Winchester Prod. Co*., 319 F.3d 225, 229 (5th Cir. 2003)) citing *In re Burzynski*, 989 F.2d 733, 741 (5th Cir.1993) (quote reformatted from bullets to string)).

38.     Plaintiff has asserted that all defendants violated the following subsections of section 1962:

    a.   18 U.S.C. § 1962(c) – Count I,

    b.   18 U.S.C. § 1962(a)[22] – Count II, and

    c.   18 U.S.C. § 1962(d) – Count III.

39.     Elements common to all four sub-sections are: (1) a person who engages in (2) a pattern of racketeering activity[23] (3) connected to the acquisition, establishment, conduct or control of an enterprise. *Whelan v. Winchester Prod. Co*., 319 F.3d 225, 228–29 (5th Cir. 2003) citing *Delta Truck & Tractor, Inc. v. J.I. Case Co*., 855 F.2d 241, 242 (5th Cir.1988), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989).  A "pattern of racketeering" requires at least two predicate acts of racketeering activity under 18 U.S.C. § 1961(1) that has occurred within ten years of each other.  18 U.S.C. § 1961(5).  These predicate acts must be related, and they must amount to or pose a threat of continued criminal activity.  *Nguyen*, 2019 WL 3530421, at *4 (citing *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)).

40.     It is not enough that the predicate acts are merely related, but they must be sufficiently continuous to assure a federal cause of action.  *Commercial Metals Co. v. Chazanow*, No. 3:09-CV-0808-B, 2009 WL 3853704, at *4 (N.D. Tex. Nov. 7, 2009) (quoting *Burzynski*, 989 F.2d at 742).  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement . . . ."  *Id.* (citing *H.J. Inc.*, 492 U.S. at 241).

---

[22]     The heading for Count II in the Complaint does not list the Windspeed Employees. However, the averments in Count II refer to "All Defendants".  Complaint at p. 181, ¶ 409.

[23]     "'Racketeering activity'" includes certain state and federal offenses listed in § 1961(1). [citation omitted]  The individual acts of racketeering are commonly described as the "predicate" acts or offenses." *Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B, 2007 WL 9711726, at *6 (N.D. Tex. May 9, 2007)

Liability in a RICO action "depends on whether the threat of continuity is demonstrated." *Id.* (citing *H.J. Inc.*, 492 U.S. at 241).

41.     Each of these elements in and of itself is a term of art. *Cadle Co. v. Schultz*, 779 F. Supp. 392, 396 (N.D. Tex. 1991). The failure of establish any one of these elements will result in the failure to state claim and thus dismissal under Rule 12(b)(6). *See Whelan*, 319 F.3d at 230.

42.     In addition to the reasons below, the Plaintiffs still have not plead either form of "continuity". In the Opinion, the Court held that the Plaintiffs had neither met the pleading burden of showing closed period continuity or open-ended continuity. Opinion pp. 12-15.

43.     The purpose of the alleged RICO activity remains the singular goal of transferring ACET Global assets to Windspeed. At best, there is the averment that Baymark may, at some point in the future, foreclose on collateral again in another transaction. There is simply nothing in the Second Amended Complaint which would indicate that the Windspeed Employees, Windspeed, or Mr. Szeto will at any time be involved with D&T, Baymark or Super G ever again.

44.     This reason alone requires dismissal.

C. Plaintiff has Not Alleged an Association-in-Fact as a Matter of Law with the Windspeed
   Employees

45.     There are several types of defined "enterprises" which will satisfy the requirements of section 1962. The only one pled by the Plaintiff, except in Count III, is association-in-fact. *See* Doc. No. 1, pg. 133. Thus, in order to meet the requirement of the existence of an enterprise for the purposes of section 1962, Plaintiff must properly allege the existence of an association-in-fact, as the term is used in the statute.

46.     An "association in fact" enterprise "must have an ongoing organization or be a continuing unit, such that the enterprise has an existence that can be defined apart from the commission or the predicate acts." *Murex*, 2016 WL 4207994, at *10 (quoting *Zastrow v. Hous.*

*Auto Imprts. Greenway, Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015)).  "The enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it engages." *Whelan*, 319 F.3d at 229.  In other words, "[t]he enterprise must be 'an entity separate and apart from the pattern of activity in which it engages.'" *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 439–40 (5th Cir. 1987); *see also Zastrow*, 789 F.3d at 562 (if the alleged enterprise is one "created by the alleged racketeering activity itself" it is not an association in fact).

47.     Failure to plausibly establish an association-in-fact enterprise demands dismissal of the entire RICO claim. *Whelan*,  319 F.3d at 230 (affirming dismissal of RICO claim for failure to demonstrate an enterprise); *Oblio Telecom, Inc. v. Patel*, 2009 WL 1650481, at *7 (N.D. Tex. June 10, 2009); *Sharif v. Wellness Int'l Network, Ltd.*, 2007 WL 9711726, at *10 (N.D. Tex. May 9, 2007); *Armendariz v. Chowaiki*, 2016 WL 8856919, at *9 (W.D. Tex. Mar. 31, 2016); *Brunig v. Clark*, 2007 WL 9712119, at *8 (S.D. Tex. Sept. 24, 2007); *Clark v. Nat'l Equities Holdings, Inc.*, 561 F. Supp. 2d 632, 639 (E.D. Tex. 2006), *remanded in part on other grounds*, 229 F. App'x 314 (5th Cir. May 30, 2007).

48.     "Company officers and employees not associated other than through the activities of the company do not constitute an enterprise for purposes of § 1962(c)." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 230 (5th Cir. 2003).  "The fact that officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation." *Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B, 2007 WL 9711726, at *8 (N.D. Tex. May 9, 2007) citing *Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989); *Whelan*, 319 F.3d at 229; further citing *Atkinson*, 808 F.2d at 441 (concluding that bank, holding company, and three bank employees did not exist separately

apart from the bank); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2nd Cir. 1994) ("[B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented.").

49.      Furthermore, each defendant alleged to be a RICO person must "have some part in directing" the affairs of the RICO enterprise, directly or indirectly. *Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993). The word "conduct" under the statute "require[s] some degree of direction and the word 'participate' [] require[s] some part in that direction." *Id.* When the plaintiff alleges the defendants formed an association-in-fact, the plaintiff must plead "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938 (2009).

      i.   *The Windspeed Employees Were Acting in the Course and Scope of Their Employment and Thus Not Distinct from the Alleged Enterprise-in-Fact*

50.      Based on the wealth of deposition testimony provided by Plaintiffs in the Second Amended Complaint, there is no logical conclusion which can be rendered in this matter other than the Windspeed Employees were merely acting within the course and scope of their employment. The Second Amended Complaint clearly shows that the Windspeed Employees were only performing their routine functions as a sales manager, an accountant, working in fulfillment, or providing customer service and does not provide any allegations to suggest otherwise. To the extent they committed predicate acts while performing their employment duties, Plaintiff provides no evidence of allegations that these employees directed any control over the planning of the predicate acts, nor does Plaintiff assert any allegations that they knew or were in agreement to participate in the RICO enterprise. *See United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978)

(plaintiff must indicate that the defendants, by their "words or actions . . . objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes.").

51.     For these reasons, all of the RICO claims against the Windspeed Employees must be dismissed.

52.     As to allegations that Mr. Szeto directed the Employees to give "demonstrably false testimony during depositions," and they "coordinated" with Szeto to "provide misleading and false information to carry out the frauds of the enterprise," the deposition testimony of the Windspeed Employees clearly evidences the opposite of Plaintiff's conclusory allegations.  *See* Second Amended Complaint Ex. 4, pg. 3; Second Amended Complaint Ex. 5, pg. 3; Second Amended Complaint Ex. 10, pg. 3.  As shall be discussed later in the Brief, even assuming those allegations in the Complaint are true, allegations of false testimony when defending litigation do not qualify as a predicate act for the purposes of establishing racketeering activity.  Accordingly, the Windspeed Employees are not adequately alleged to be distinct RICO-persons within the alleged association-in-fact.

D. 1962(c) – Count I

53.     Subsection (c) of RICO prohibits any "'person employed by or associated with any enterprise' from participating in or conducting the affairs of the enterprise through a pattern of racketeering activity."  18 U.S.C. § 1962(c); *see also Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (quoting *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995)).  "Under § 1962(c), the RICO 'person' and the RICO 'enterprise' must be distinct...[t]his required distinction is based on a textual reading of § 1962(c), which speaks of 'person[s] who are 'employed by or associated

with' the 'enterprise.'" *Sharif v. Wellness Int'l Network, Ltd*., No. 3:05-CV-01367-B, 2007 WL 9711726, at *8 (N.D. Tex. May 9, 2007).

54.     The Windspeed employees are not mentioned specifically at any point in Count 1. As detailed above in this Motion, the Complaint fails to explain what role the Windspeed Employees had in the enterprise beyond fulfilling their duties as employees. Rather, Plaintiff uses the broader term "Defendants" for the majority of the averments, even when describing activities that even Plaintiffs admit the Windspeed Employees had no part in, or as testimony shows had no knowledge of.

55.     The only allegations related to the Windspeed Employees are that they were employees of ACET Global and then Windspeed and performed their assigned duties for each respectively. That means the Windspeed Employees were not distinct from the alleged RICO enterprise, as they did not act outside of the scope of their employment in these entities which are alleged to have been a part of the enterprise. Accordingly, Count I fails to state a claim upon which relief can be granted.

E. 1962(a) – Count II

56.     "With respect to § 1962(a), a plaintiff must allege "that its injury flows from the use or investment of racketeering proceeds, rather than from the underlying predicate racketeering acts." *Sharif v. Wellness Int'l Network, Ltd*., No. 3:05-CV-01367-B, 2007 WL 9711726, at *8 (N.D. Tex. May 9, 2007) citing *In re Sunpoint Sec*., Inc., 350 B.R. 741, 747 (Bankr. E.D. Tex. 2006). Courts within the Fifth Circuit have generally rejected claims under section 1962(a) which assert that the plaintiff was injured by the reinvestment of proceeds by the defendants into its business "for purposes of perpetuation or expansion." *Vanderbilt Mortg. and Finance, Inc. v. Flores*, 735 F.Supp.2d 679, 700 (S.D. Tex. 2010).

57.     Though it is unclear from this Count II whether the Windspeed Employees are meant to be included under this count (their names are not listed among the specific defendants identified), it is clear that Count II fails to state a claim upon which relief can be granted.  The Complaint explicitly states that the basis for this cause of action is due to reinvestment of funds received from racketeering activities into the enterprise of the Defendants.  As case law has made clear, no injury can be derived from the RICO enterprise reinvesting illegally derived funds back into the enterprise.  Accordingly, Plaintiff has failed to state a claim with regards to Count II.

F. 1962(d) – Count III

58.     Count III of the Complaint asserts that all Defendants in this matter, including the Windspeed Employees, conspired to violate subsections (a), (b), and (c) of RICO, in violation of § 1962(d).  *See Word of Faith World Outreach Center Church, Inc.*, 90 F.3d at 121.  A claim for RICO conspiracy must allege "three elements: (1) knowledge by the defendant of the essential nature of the conspiracy; (2) the defendant's objective manifestation of an agreement to participate in the conduct of the affairs of an enterprise, and (3) an overt act, which need not be a crime, in furtherance of the conspiracy."  *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F.Supp. 995, 1005 (S.D. Tex. 1995) (citing *United States v. Sutherland*, 656 F.2d 1181, 1187 (5th Circuit 1981).

59.     If a plaintiff's claims fail under Section 1962(a)-(c), then there is no cause of action under Section 1962(d).  *Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B, 2007 WL 9711726, at *9 (N.D. Tex. May 9, 2007) citing *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993).  Because the claims against the Windspeed Employees fail, as set forth above, the claim for conspiracy under Section 1962(d) must also fail and should be dismissed with prejudice as to them.

i.     *Plaintiff Fails to Meet Heightened Pleading Standard and Establish Intent for Conspiracy*

60.     Furthermore, RICO claims grounded in predicate acts of fraud, such as mail fraud, wire fraud, and bank fraud, must meet Rule 9(b)'s heightened particularity pleading requirement. *Chazanow*, 2009 WL 3853704, at *4 (citing *Bonton*, 889 F.Supp. at 1004); *see also Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (Rule 9(b) applies to all allegations of fraudulent conduct, "whether part of a claim of fraud or not"). "[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Singh*, 480 F.3d at 357 (quoting *Crowe*, 43 F.3d at 206).

61.     A person cannot be held liable for a RICO conspiracy "merely by evidence that he associated with other . . . conspirators or by evidence that places the defendant in a climate of activity that reeks of something foul." *Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 239 (5th Cir. 2010 (quoting *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir 1998)). A conspirator must at least know of the conspiracy and "adopt the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65 (1997).

62.     Plaintiffs fail to include any allegations to suggest that the Windspeed Employees *agreed* to partake in an enterprise of racketeering activity. Not a single sentence in the entire Second Amended Complaint alleges that the Windspeed Employees ever expressed *consent* to partake in racketeering activity. In fact, the Second Amended Complaint alleges the opposite; the Windspeed Employees were carrying out their daily tasks or following orders in their roles within either ACET Global or Windspeed. In fact, the Windspeed Employees were not even aware acts taken by other defendants which Plaintiffs claim are critical to the wrongdoing. Based on the allegations in the Complaint, it is impossible to satisfy Rule 9(b) and sufficiently show a specific agreement to take part in racketeering activity.

63.     Additionally, Plaintiff includes vague allegations that the Windspeed Employees lied in their depositions in the referenced State Court matter.  Plaintiff cannot rely on litigation activity to support a claim for RICO.  *See SnoWizard Incorporated*, 833 F.3d at 524.  The reasoning behind this is that, if the alleged predicate acts took place in the context of defending a lawsuit, the unlawful conduct "did not constitute or threaten long-term criminal activity."  *Zastrow*, 789 F.3d at 561 (quoting *Burzynski*, 989 F.2d at 742-43).  Since early 2019, Plaintiff's allegations regarding predicate acts of an alleged enterprise have occurred in the context of defending against litigation from Plaintiff regarding the alleged fraudulent foreclosure sale.  Accordingly, there is no threat of long-term criminal activity, even if it were assumed that such a threat existed before March of 2019.  Obstruction of justice fails as a predicate act in this case.

G. State Law Causes of Action

64.     As in an initial matter, the Windspeed Employees respectfully request that the Court decline to extend supplemental jurisdiction over the state law claims in the event the RICO claims are dismissed for the reasons set forth in the Opinion.  If the RICO claims are not dismissed, or if the Court determines to retain jurisdiction of the state law claims for any reason, the Windspeed Employees respectfully request the state law claims be dismissed for the reasons below.

   i.  *Plaintiff Fails to Establish Aiding and Abetting a Breach of Fiduciary Duty*

65.     To plead a breach of fiduciary duty, a plaintiff must allege: (1) there existed a fiduciary relationship; (2) the defendants breached their fiduciary duty; and (3) the defendants' breach must have resulted in injury to the plaintiff or benefit to the defendants; the derivative claim of aiding and abetting a breach of fiduciary duty adds an important fourth element: (4) that the accused "party must be aware it was participating in the breach."  *Ebert v. Gustin*, 2016 WL

11663164, at *8 (N.D. Tex. May 12, 2016) (citing *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)).

66.     Regardless of which Plaintiff is asserting this aiding and abetting claim, the claim fails as a matter of law because the Fifth Circuit refuses to recognize the existence of a claim for aiding and abetting a breach of fiduciary duty. *See Taylor v. Rothstein Kass & Company, PLLC*, 2020 WL 554583, at *5 (N.D. Tex. Feb. 4, 2020) (citing *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781-82 (5th Cir. 2018)).  The reason for this is that the Supreme Court of Texas "has not expressly decided whether Texas recognizes a cause of action for aiding and abetting." *Taylor*, 2020 WL 554583, at *5 (citing *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017)).  Based on this, the Fifth Circuit has stated it would "exceed[] the bounds of its legitimacy in fashioning novel causes of action not yet recognized by state courts." *See DePuy Orthopaedics*, 888 F.3d at 781-82.  Based on the lack of recognition of this "novel" cause of action by the Fifth Circuit, the claim for aiding and abetting breach of fiduciary duty fails on its face.

67.     Furthermore, incorporating the analysis from the briefing of the other Defendants on this count, Plaintiff fails to state sufficient facts which would establish that the Windspeed Employees aided and abetted a breach of fiduciary duty.  At no single point in the Complaint does Plaintiff allege specifically that any of the Windspeed Employees engaged in aiding and abetting. The Second Amended Complaint only establishes that the Windspeed Employees were doing their jobs, not controlling entities and participating in self-dealing.  For the same reason that every single cause of action in this suit fails as a matter of law against the Windspeed Employees, this cause of action, too, must fail.

   *ii.   Plaintiff Fails to Show Elements to Establish TUFTA*

54.     The TEXAS UNIFORM FRAUDULENT TRANSFER ACT ("TUFTA") provides that "(a) [a] transfer or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonable equivalent value in exchange for the transfer or obligation, and the debtor: (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."  TEX. BUS. & COM. CODE § 24.005.

55.     The Windspeed Employees incorporate and rely on the arguments asserted by Defendants Windspeed Trading, LLC and William Szeto in their Motion to Dismiss regarding the lack of a transfer of "assets" when those assets are fully encumbered.  *See Defendants Windspeed and Mr. Szeto's Motion to Dismiss.*

55.     Again, the Windspeed Employees must endure more insufferably vague allegations from Plaintiff which appear to serve no greater intent than to harass the Windspeed Employees for having been employed by two of the Defendants.  Plaintiff conclusorily alleges that the "Defendants" transferred assets of ACET Global with the actual intent to defraud Plaintiff but does not name a single Windspeed Employee.  However, Defendant does name others, which Plaintiffs defined as "Transfer Defendants" despite the fact that Plaintiffs identify "All Defendants" as targets of their claim.  However, Plaintiffs do not allege facts which plausibly show that the Windspeed Employees even know who D&T is.  Plaintiffs have totally failed to allege any

particular facts which would show the Windspeed Employees had the specific intent to defraud. Accordingly, the TUFTA cause of action against the Windspeed Employees should be dismissed.

H. Civil Conspiracy

56.    A civil conspiracy claim consists of: (1) an agreement between two or more parties; (2) to commit an unlawful act or a lawful act by unlawful means; (3) the committing of some overt act in furtherance of the conspiracy; and (4) damage to plaintiff as a result of the acts performed in furtherance of the conspiracy.  *See Henkel v. Emjo Invs., Ltd.*, 480 S.W.3d 1 (Tex.App.—Houston [1st Dist.] 2016, no pet.).  Civil conspiracy to commit a tort that sounds in fraud must be pleaded with particularity in accordance with Rule 9(b).  *Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953, 961 (5th Cir. 1994).

57.    As a last desperate attempt at a grab-all cause of action against the Windspeed Employees, Plaintiff asserts a civil conspiracy cause of action to commit all the other asserted causes of actions in the Complaint.  Since there are no other underlying causes of action which have been plausibly asserted against the Windspeed Employees, this claim for civil conspiracy must also fail.  As Plaintiff failed to do with its RICO claims, nowhere is there any allegation that the Windspeed Employees agreed to conspire with any parties to commit unlawful acts or commit lawful acts by unlawful means.

## IV. CONCLUSION

58.    For the reasons stated in this Brief and the Motion, Plaintiffs have failed to state a claim upon which relief can be granted for all of its RICO and state law causes of action.  For the same reasons stated in the Opinion, the Second Amended Complaint RICO claims should be dismissed for a lack of showing either type of RICO continuity.  Plaintiffs have failed to allege acts to show that an actual RICO enterprise existed between the Defendants in this case which

carried out a purpose distinctive from the alleged racketeering activity.  Plaintiff pleads insufficient facts to establish that two or more predicate acts occurred to create a RICO offense.  Lastly, Plaintiff wholly fails to establish that the Windspeed Employees were acting outside of the scope of the employment duties and were distinctive RICO persons from the entity by which they were employed.  Failure to adequately assert these facts also warrants the dismissal of all state law claims against the Windspeed Employees.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, Windspeed Employees respectfully request that the Court dismiss with prejudice Counts I, II III, VI, VII, and VIII of the Complaint against them.  The Windspeed Employees further pray for any additional relief to which they may be justly entitled.

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

Dated: July 22, 2022
Dallas, Texas

HIGIER ALLEN & LAUTIN, PC

By: */s/ Jason T. Rodriguez*
Jason T. Rodriguez
    Texas State Bar No. 24042827
    *Attorney-In-Charge*

HIGIER ALLEN & LAUTIN, P.C.
2711 N. Haskell Ave., Suite 2400
Dallas, Texas 75204

Telephone: (972) 716-1888
Facsimile: (972) 716-1899
jrodriguez@higierallen.com
twoods@higierallen.com

**ATTORNEYS FOR WINDSPEED TRADING, LLC, MR. WILLIAM SZETO, MS. ZHEXIAN LIN, MS. DANA MARIE TOMERLIN, MS. PADASAMAI VATTANA; MS. VANESSA TORRES**

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of July 2022, a true and correct copy of the foregoing document was served *via* the Court's ECF system and by email to the following parties.

| | |
|---|---|
| Jason B. Freeman<br>Freeman Law, PLLC<br>2595 Dallas Parkway, Suite 420<br>Frisco, Texas 75034<br>jason@freemanlaw-pllc.com<br><br>**Counsel for Plaintiff** | Edward P. Perrin, Jr.<br>Jennifer R. Poe<br>HALLETT & PERRIN, P.C.<br>1445 Ross Ave., Suite 2400<br>Dallas, Texas 75202<br>eperrin@hallettperrin.com<br>jpoe@hallettperrin.com<br><br>**Counsel for Baymark Defendants** |
| John David Blakley<br>William D. Dunn<br>DUNN SHEEHAN, LLP<br>3400 Carlisle Street, Suite 200<br>Dallas, Texas 75204<br>jdblakley@dunnsheehan.com<br><br>**Counsel for Super G Capital, LLC and Steven Bellah** | Andrea Levin Kim<br>DANIELS TREDENNICK, PLLC<br>6363 Woodway Dr., Ste. 700<br>Houston, Texas 77057<br>andrea.kim@dtlawyers.com<br><br>Rachel Williams<br>WILLIAMS LAW, PC<br>10300 N. Central Expry., Ste. 544<br>Dallas, Texas 75231<br><br>**Counsel for SG Credit Partners, Inc. and Marc Cole** |

*/s/ Jason T. Rodriguez*
Jason T. Rodriguez