**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| D&T PARTNERS, LLC, successor-in-interest to ACET Venture Partners, LLC, *et al* | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Cause: 3:21-CV-1171-B |
| v. | § | |
| | § | |
| BAYMARK PARTNERS, LP, *et al*., | § | |
| | § | |
| *Defendants*. | § | |

**WINDSPEED AND MR. SZETO'S BRIEF IN SUPPORT OF MOTION TO DISMISS
SECOND AMENDED COMPLAINT CLAIMS PURSUANT TO RULE 12(B)(6)**

Jason T. Rodriguez
    Texas State Bar No. 24042827
    *Attorney-In-Charge*
Timothy P. Woods
    Texas State Bar No. 21965500

HIGIER ALLEN & LAUTIN, P.C.
2711 N. Haskell Ave., Suite 2400
Dallas, Texas 75204
Telephone: (972) 716-1888
Facsimile: (972) 716-1899
jrodriguez@higierallen.com
twoods@higierallen.com


ATTORNEYS FOR WINDSPEED TRADING, LLC,
MR. WILLIAM SZETO, MS. ZHEXIAN LIN, MS.
DANA MARIE TOMERLIN, MS. PADASAMAI
VATTANA; MS. VANESSA TORRES

<u>TABLE OF CONTENTS</u>

**I. SUMMARY**……………………………………………………………….....  1

**II. BACKGROUND**……………………………………………………….…..  3

  A. <u>Procedural Background</u>……………………………………………….  3

  B. <u>Summary of Averments in the Complaint</u>……………………………  3

   *i. Windspeed Trading, LLC*…………………..…...…………....……..……….……...  3

   *ii. William Szeto*………………………………………………………………...  4

   *iii. Foreclosure Sale is the Alleged Racketeering Activity*……………………………...  5

**III. ARGUMENTS AND AUTHORITIES** ……………………………….....  6

  A. <u>Rule 12(b)(6) Standard</u> …………………………………………………  6

  B. Rule 9(b) Standard………………………………………………………  7

  C. <u>Plaintiff Fails to Establish Elements Common to All RICO Causes of Action</u> ……...  8

  D. <u>Plaintiff has Not Alleged an Association-in-Fact as a Matter of Law with Windspeed or Mr. Szeto</u> ……………………………....................…………  12

   *i. Plaintiff Fails to Establish Windspeed is a RICO "Person" or a Part of an Association-in-Fact Enterprise* …………..……………………………...................…  13

   *ii. Plaintiff Fails to Establish Mr. Szeto as a RICO Person*……………………………  15

  E. <u>Plaintiff Fails to Establish that Windspeed Itself is a Racketeering Enterprise</u>………  16

  F. <u>1962(c) – Count I</u> ………………………………………………………  16

  G. <u>1962(a) – Count II</u> ……………………………………………………….  17

  H. <u>1962(d) – Count III</u> …………………..……………………………….…..  18

   *i. Plaintiff Fails to Meet Heightened Pleading Standard and Establish Intent for Conspiracy*………………………………………………………………………  19

  G. <u>State Law Causes of Action</u>………………………………………….…….  19

   *i. Fraud*…………………………………………………..…..……...……..  20

   *ii. Breach of Fiduciary Duty and Aiding and Abetting*………………………………......  21

   *iii. Texas Uniform Fraudulent Transfer Act (TUFTA)*…………………………………  22

   *iv. Civil Conspiracy*………………………………………………………….  23

  H. <u>The Court Should Decline To Exercise Supplemental Jurisdiction Over State Law Claims</u>……………………………………………………………….  24

**VI. CONCLUSION**…………………………………………………………  25

**V. PRAYER**…………………………………………………………………  25

## TABLE OF AUTHORITIES

Cases

*Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007)………………………………….. 17

*Allstate Insurance Company v. Benhamou*, 190 F. Supp. 3d 631, 648 (S.D. Tex. 2016) 14

*Alufase USA LLC v. Palma*, 2016 WL 3911127, at *3 (S.D. Tex. May 6, 2016)……… 7

*Armendariz v. Chowaiki*, 2016 WL 8856919, at *9 (W.D. Tex. Mar. 31, 2016)………. 13

*Arruda v. Curves International, Inc.*, 2020 WL 4289380, at *3 (W.D. Tex. July 27, 2020)…………………………………………………………………………………. 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)……………………………………………… 7

*Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993)…………………………………….... 19

*Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 439–40 (5th Cir. 1987)………. 12

*Atkinson*, 808 F.2d at 441……………………………………………………………… 15

*Aubrey v. D Magazine Partners, L.P.*, No. 3:19-cv-0056-B, 2020 WL 619839, at *4 (N.D. Tex. Feb. 10, 2020)……………………………………………………………… …..…… 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)…………………………………… 7

*Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F.Supp. 995, 1005 (S.D. Tex. 1995)….. 18

*Brunig v. Clark*, 2007 WL 9712119, at *8 (S.D. Tex. Sept. 24, 2007)…………………. 13

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 619 (1988) ……… 24

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)………… 7

*Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 239 (5th Cir. 2010)…………………....... 19

*Clark v. Nat'l Equities Holdings, Inc.*, 561 F. Supp. 2d 632, 639 (E.D. Tex. 2006), *remanded in part on other grounds*, 229 F. App'x 314 (5th Cir. May 30, 2007)………. 13

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000)…………………………………………………………………………….. 7

*Commercial Metals Co. v. Chazanow*, No. 3:09-CV-0808-B, 2009 WL 3853704, at *4 (N.D. Tex. Nov. 7, 2009)………………………………………………………………... 11

*Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995)……………………………………… 17

*Cypress/Spanish Ft. I, L.P. v. Prof. Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 711 (N.D. Tex. 2011)……………………………………………………………………….. 8

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir.1988), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989)………………..…… …..…… 9, 11

*Drake v. Costume Armour Inc.*, 736 Fed.Appx. 505, 506 (5th Cir.2018), citing, *inter alia*, 24

*Ebert v. Gustin*, 2016 WL 11663164, at *8 (N.D. Tex. May 12, 2016)………………... 21

*Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)……………………………………. 15

*Ernst & Young, LLP v. Pac. Mut. Life Ins.*, 51 S.W.3d 573, 577 (Tex. 2001)..............  20

*Floyd v. Hefner*, No. CIV.A. H-03-5693, 2006 WL 2844245, at *11–12 (S.D. Tex. Sept. 29, 2006), on recons. in part, 556 F.Supp.2d 617 (S.D. Tex. 2008.............................  21

*Flores*, 746 F.Supp.2d at 842...............................................................................  11

*Garcia v. Lion Mexico Consolidated, L.P.*, 2017 WL 9479195, at *4 (W.D. Tex. Sept. 11, 2017)..........................................................................................  7

*GFRS Equipment Leasing Fund II LLC v. Nguyen*, No. 3:18-cv-2250-L, 2019 WL 3530421, at *4 (N.D. Tex. Aug. 1, 2019)..............................................................  8

*Harris County, Texas v. Eli Lilly and Company*, 2020 WL 5803483, at *16 (S.D. Tex. Sept. 29, 2020)....................................................................................... ......  20

*H.J. Inc. v. Northwestern Bell Te. Co.*, 492 U.S. 229, 241 (1989)....................……....  8

*In re Artho*, 587 B.R. 866, 885 (Bankr. N.D. Tex. 2018)......................................  23

*In re Burzynski*, 989 F.2d 733, 742 (5th Cir.1993)..…..................................  11

*Burzynski*, 989 F.2d at 742-43....................................................................  10

*In re Sunpoint Sec.*, Inc., 350 B.R. 741, 747 (Bankr. E.D. Tex. 2006)..............……  18

*Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998).....................  23

*Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016).........................  23

*Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)…….....…  21

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007).....................  21

*Murex*, 2016 WL 4207994, at *10 ...................................................................  12

*Oblio Telecom, Inc. v. Patel*, 2009 WL 1650481, at *7 (N.D. Tex. June 10, 2009)........  13

*Landry v. Air Line Pilots Ass'n Int'l, AFL–CIO*, 901 F.2d 404, 433 (5th Cir.1990)........  16

*Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 426 (5th Cir. 1987)....……....  16

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)................................  8

*Murex, LLC v. GRC Fuels, Inc.*, No. 3:15-CV-3789-B, 2016 WL 4207994, at *2 (N.D. Tex. Aug. 10, 2016)..........................................................................… ……...  7

*N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, No. 4:09-cv-2556, 2011 WL 5325785, at *7 (S.D. Tex. Nov. 3, 2011)..............................................  14

*Patel*, 711 F. Supp. 2d at 678.......................................................................  16

*Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993)...........................................  14

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2nd Cir. 1994)....................................................................................................  15

*Salinas v. United States*, 522 U.S. 52, 65 (1997).............................................  19

*Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B, 2007 WL 9711726, at *6 (N.D. Tex. May 9, 2007)…………………………………………………………… 19

*Snow Ingredients Incorporated v. SnoWizard Incorporated*, 833 F.3d 512, 524, 526 (5th Cir. 2016)………………………………………………………………………………. 8

*St. Germain v. Howard*, 556 F.3d 261, 263–64 (5th Cir. 2009)………………………… 24

*St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000)………….... 13

*Tow v. Amegy Bank, N.A.*, 498 B.R. 757, 770 (S.D. Tex. 2013)………………………… 22

*Troyer v. Boomtown*, LLC, 2004 WL 2984364, at *8 (E.D. La. Dec. 22, 2004)………... 16

*United States v. Humphrey*, 104 F.3d 65, 70 n.3 (5th Cir. 1997)……………………….... 10

*United States v. Martinez*, 921 F.3d 452, 476 (5th Cir. 2019)…………………………... 11

*United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir 1998)……………………….. 19

*United States v. Sutherland*, 656 F.2d 1181, 1187 (5th Circuit 1981)………………….. 18

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)………………………………………………………………………………….... 8

*Vanderbilt Mortg. and Finance, Inc. v. Flores*, 735 F.Supp.2d 679, 700 (S.D. Tex. 2010)………………………………………………………………………………………….. 18

*Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228–29 (5th Cir. 2003)……………....... 9

*Williams v. WMX-Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)……………………… 7

*Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 762 (Tex.App.—Houston [1st Dist. 2017, pet. denied)………………………………………………………………………… ……….. 24

*Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) 9

*Zastrow v. Hous. Auto Imprts. Greenway, Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015)……. 12

<u>Statutes</u>

Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ § 24.002(2)(A)…………………………………………....... 22

Tex. Bus. & Comm. Code § 24.005(a)(2)………………………………………………….. 23

18 U.S.C. § 1961(5)…………………………………………………………………....... 9

18 U.S.C. § 1962(a)-(c)…………………………………………………………….……... 8

<u>Rules</u>

FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) …………………………………………… 7

FEDERAL RULES OF CIVIL PROCEDURE 9 ………………………………………… 17

To the Hon. Jane J. Boyle;
United States District Judge:

COME NOW defendants Windspeed Trading, LLC ("Windspeed") and William Szeto ("Mr. Szeto," and together with Windspeed, "Defendants") and files this, its *Windspeed and Mr. Szeto's Brief in Support of Motion to Dismiss Second Amended Complaint Claims Pursuant to Rule 12(b)(6)* (the "Brief"). This Brief is filed in support of the *Windspeed and Mr. Szeto's Motion to Dismiss Second Amended Complaint Claims Pursuant to Rule 12(b)(6)* (the "Motion"). In support of the Motion and Brief, Defendants would respectfully show this Court as follows:

## I. SUMMARY

1. Plaintiffs' live Second Amended Complaint[1] is their third, and most recent attempt to turn a UCC1 sale[2] into a RICO action. The prior First Amended Complaint was dismissed by this Court by the Court's entry of its *Memorandum Opinion and Order* (the "Opinion")[3], which sets forth in great detail by Plaintiffs' RICO claims fail.

2. At the conclusion of the Court's Opinion, the Court granted Plaintiffs a chance to replead their claims. The Second Amended Complaint followed - but does nothing to fix the deficiencies in the First Amended Complaint. Principal among the deficiencies cited by the Court in the Opinion was the Plaintiffs' failure to "continuity" in either the closed or open sense.

3. The Second Amended Complaint does not plead anything new which would overcome the prior problems. Rather, like an accordion, Plaintiffs have stretched out the previously alleged predicate acts which, when viewed rationally, fit within those acts the Court

---

[1]  Capitalized terms not defined in the Summary section shall have the meaning ascribed in the body.

[2]  In the Second Amended Complaint, the Plaintiffs refer to the UCC1 sale as a "foreclosure" which is technically was not. In the interest of continuity of terms, movants will use "foreclosure" to describe the UCC1 sale for the remainder of the Brief.

[3]  Docket no. 90.

has already found to be insufficient in the Opinion. This is because the Second Amended Complaint does not include any new alleged purpose. The only stated and alleged goal of the alleged "scheme" is, was, and always will be the foreclosure sale which was concluded years ago.

4.      RICO was promulgated to reduce organized crime, not foreclosure of collateral and the sale thereafter. For all its bluster, the Complaint asserts RICO because a senior secured lender – to which Plaintiff voluntarily subordinated its interest – foreclosed on its collateral. As the Court states in the Opinion, alleged garden variety fraud will not give rise to RICO liability.

5.      The Second Amended Complaint fails to assert facts which would show an enterprise existed or exists to commit the acts alleged by Plaintiff. The Complaint alleges that an inner circle of entities and their officers/employees collaborated for the sole purpose of winding down a business and disposing of its assets into a new entity. Nowhere does Plaintiff assert sufficient facts to indicate that this enterprise existed for purposes other than to allegedly commit a single racketeering activity. All of Plaintiff's RICO causes of action fail on that basis.

6.      Furthermore, Plaintiff includes no allegations in its Complaint to suggest that Windspeed is an entity which qualifies as a distinct RICO entity or which is a part of an association-in-fact enterprise. For all the literal weight of the Complaint, no facts are asserted with any particularity to support that Windspeed and Mr. Szeto had knowledge or operated some level of control in the alleged racketeering activities. In fact, the deposition testimony of Windspeed's representative, Mr. Szeto, which is incorporated by reference into this suit, firmly establishes that Mr. Szeto (and thus Windspeed), lacked the requisite intent and never agreed to participate in racketeering activities with an alleged enterprise. Accordingly, Plaintiff fails to establish this common element to its RICO causes of action, and those RICO claims must be dismissed on this

basis.  The same failure to adequately allege knowledge or intent entitles both Windspeed and Mr. Szeto to dismissal of the state law claims against them.

## II. BACKGROUND

A. Procedural Background

7.      Mr. Szeto and Windspeed refer to and adopt the Motion to Dismiss filed by Defendants Ms. Zhexian Lin ("Lin"), Ms. Dana Marie Tomerlin ("Tomerlin"), Ms. Padasamai Vattana ("Vattana") and Ms. Vanessa Torres ("Torres" and together with Lin, Tomerlin, Vattana and the "Windspeed Employees") for their summary of the procedural posture of this case.  *See Windspeed Employees' Brief in Support of Motion to Dismiss Second Amended Complaint Claims Pursuant to Rule 12(b)(6)* (the "Employee's Brief"), pg. 3.

8.      Mr. Szeto and Windspeed's Motion and this Brief are filed seeking dismissal of the live *Second Amended Complaint*.  [**Docket No. 91**].

B. Summary of Averments in the Complaint

9.      Mr. Szeto and Windspeed refer to and adopt the Windspeed Employee's motion to dismiss filed by the Windspeed Employees for their initial summary of general averments in the Second Amended Complaint.[4]

*i. Windspeed Trading, LLC*

10.      In the Second Amended Complaint, Plaintiffs allege Windspeed was created as a sham to be "nothing more than a vehicle to fraudulently transfer the assets and business operations of ACET Global . . . ."  *See* Second Amended Complaint, p. 178, ¶ 397.  Plaintiff alleges various Defendants "beneficially owned" Windspeed, while Defendants Baymark Partners and Super G

---

[4]      In addition, Defendants hereby adopt and incorporate the motions to dismiss filed by the Baymark Defendants, Holdco, SG Credit Partners, Inc. and Marc Cole, and Hallett & Perrin PC and Julie Smith, as well as the arguments incorporated into their respective briefs in support.

took operational control of Windspeed through board positions and made all decisions regarding Windspeed. *See id.* at pg. 136, ¶ 298. Windspeed's appointed CEO, Mr. Szeto, is alleged to have exercised no control over Windspeed, having been relegated to merely a "small economic interest" in Windspeed." *Id.* at pg. 68, ¶ 159.[5]

11.     Plaintiff alleges that the board of Windspeed was a "sham," due to the allegation that no board meeting was ever held by the ownership of Windspeed, nor were there any minutes or resolutions. *See id.* at pg. 74, ¶ 173. Plaintiff alleges that sometime around October 2018, the assets of ACET Global were transferred to Windspeed, and Windspeed continued the e-commerce business of ACET Global. *See id.* at pgs. 85-91. Plaintiff alleges that the Foreclosure Sale Agreement, which is the operative document which sold the assets of ACET Global to Windspeed, amounted to a paper trail to cover up the theft of ACET Global's assets and to shield Windspeed from ACET Global's liabilities. *See id.* at pgs. 115, ¶ 250; 105, ¶ 230.

*ii. William Szeto*

12.     The complaint alleges that Mr. Szeto was "installed"[6] as the CEO for ACET Global in 2018 and caused ACET Global to transfer its assets and operations to Windspeed, an entity partially owned by Mr. Szeto, in October 2018. The Complaint frequently asserts that Mr. Szeto was "used"[7], "directed"[8], "caused" or "utilize[d]"[9] to serve various roles and perform various functions, such as maintaining two separate sets of books for ACET Global and Windspeed and winding down ACET Global. The Complaint goes so far, on multiple occasions, as to

---

[5]     Windspeed's own Company Agreement, cited to and quoted in the Complaint, provides that "members" of Windspeed have **no right to control** the business or have any authority to act for or bind the company. *See id.* at pg. 73, ¶ 169.

[6]     Second Amended Complaint p. 9, ¶ 8.
[7]     Second Amended Complaint, p. 55, ¶ 127; p. 68, ¶ 159; 178, ¶ 397.
[8]     Second Amended Complaint, p. 85, ¶ 195; p. 103, ¶ 226.
[9]     Second Amended Complaint, p. 9, ¶ 8; p. 27, ¶ 67.

condescendingly refer to Mr. Szeto as a "puppet" of the Defendants.  *See id.*, p. 34, ¶ 87; 68, ¶ 159; p. 75, ¶ 175; and p. 178, ¶ 397.

13.     Though Plaintiffs casually disregards his testimony, the deposition testimony of Mr. Szeto shows that he was unaware of D&T's secured loan, the secured loan which the alleged RICO enterprise was seeking to defraud.  Second Amended Complaint, p. 38, ¶ 98.[10]  When you pare down the mountain of statements made concerning Mr. Szeto in the Second Amended Complaint, you have this basic set of alleged facts: (1) Mr. Szeto was made CEO of ACET Global;[11] (2) Mr. Szeto was used to form and was made part owner of Windspeed;[12] (3) Mr. Szeto was tasked with forming the wind-down plan for ACET Global, including helping in the moving of equipment and inventory from ACET Global to Windspeed;[13] and (4) Mr. Szeto executed the Foreclosure Sale Agreement in March 2019.[14]

*iii. Foreclosure Sale is the Alleged Racketeering Activity*

14.     In the Complaint, Plaintiff alleges that numerous predicate acts giving rise to RICO claims occurred, such as (i) wire fraud, (ii) mail fraud, (iii) obstruction of justice, (iv) bankruptcy fraud, and (v) money laundering.  Second Amended Complaint pp. 146-153.  However, all these predicate acts are tied to a single alleged racketeering activity, the foreclosure sale and transfer of ACET Global's assets to Windspeed.  The alleged formation of the "enterprise" of Defendants[15], its collaboration, and its later alleged efforts to obstruct were all related to the disposition of assets

---

[10]     It is important to note that Plaintiffs acknowledges the possibility that Mr. Szeto was never informed about D&T's secured loan.  Second Amended Complaint, p. 125, fn 70.

[11]     Second Amended Complaint p. 33, ¶ 85.
[12]     Second Amended Complaint p. 173, ¶ 384; p. 9, ¶ 9.
[13]     Second Amended Complaint p. 34, ¶ 87; p. 41, ¶ 104; p. 41, ¶ 105.
[14]     Second Amended Complaint p. 119, ¶ 254.

[15]     Plaintiff also pleads, in Count III, that Windspeed, itself, is the RICO enterprise, in the alternative to there being an association-in-fact.  *See id.* at p. 185, ¶ 430.  This Motion deals with that allegation *infra*.

owned by ACET Global.  No allegation is made in this complaint that Defendants nor Windspeed have any plans to orchestrate another foreclosure sale or transfer of assets.  In fact, the Second Amended Complaint alleges the "critical steps" of the scheme were achieved in the summer and fall of 2018.  Second Amended Complaint p. 8, ¶ 8.  The objective of the alleged racketeering activity was achieved in March 2019 when the Foreclosure Sale Agreement completed the transfer of assets from ACET Global to Windspeed.   Second Amended Complaint p. 119, ¶ 254.

15.     The Complaint alleges that Defendants have either engaged in perjury or committed tax/bankruptcy fraud in order to hide the evidence of defrauding Plaintiff and all manner of alleged wrongs.[16]  Second Amended Complaint pp. 146-153.  Beyond the alleged efforts to obstruct pending litigation initiated by Plaintiff, the Complaint does not allege that the Defendants have continued their alleged racketeering activity against Plaintiff or anyone, for that matter.

### III. ARGUMENTS AND AUTHORITIES

16.     This Motion seeks dismissal under Rule 12(b)(6) of counts I, II, and III of the Complaint which assert claims under 18 U.S.C. § 1962(a), (c), and (d) of the Racketeer Influenced and Corrupt Organization Act ("RICO").   With the dismissal of these federal claims, the Windspeed Employees request the Court decline supplement jurisdiction and dismiss the remaining state court claims, or, in the alternative dismiss them on pursuant to Rule 12(b)(6) with prejudice.

A. Rule 12(b)(6) Standard

---

[16]     At one point, Plaintiffs allege Mr. Szeto committed "wire fraud" because another defendant allegedly perjured herself on a Zoom (*ie*, remote) deposition at his alleged insistence.  Second Amended Complaint p. 153.

17.     If a plaintiff's complaint fails to state such a claim, Rule 12(b)(6) allows a defendant to file a motion to dismiss.  *Murex, LLC v. GRC Fuels, Inc.*, No. 3:15-CV-3789-B, 2016 WL 4207994, at *2 (N.D. Tex. Aug. 10, 2016)

18.     To survive a motion to dismiss pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) ("Rule 12(b)(6)"), the factual allegations in a complaint must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. It also "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

19.     In assessing claims on a motion to dismiss, the Court may consider documents attached to the plaintiff's complaint or a motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); see also *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).

B. Rule 9(b) Standard

27.     When a plaintiff's allegations claim fraud or mistake, Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to "state with particularity the circumstances" surrounding the allegations.  Fed. R. Civ. P. 9(b); *see also Garcia v. Lion Mexico Consolidated, L.P.*, 2017 WL 9479195, at *4 (W.D. Tex. Sept. 11, 2017).  This standard includes "RICO claims resting on allegations of fraud." *Williams v. WMX-Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *see also Alufase USA LLC v. Palma*, 2016 WL 3911127, at *3 (S.D. Tex. May 6, 2016).  At a minimum, this means the plaintiff must plead the time, place, and contents of false representations;

the identity of the person making the misrepresentations; and what he obtained thereby. *See Cypress/Spanish Ft. I, L.P. v. Prof. Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 711 (N.D. Tex. 2011); *see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (plaintiff must plead the "who, what, when, where, and how" of the alleged fraud).

<u>C. Plaintiff Fails to Establish Elements Common to All RICO Causes of Action</u>

20.     18 U.S.C. § 1962 provides for the prohibited actions under the RICO statute set forth in four subsets.   18 U.S.C. § 1962(a), (b), (c), and (d).   In order to state a claim for damages under RICO, a plaintiff must allege (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.  18 U.S.C. § 1962(a)-(c); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).   RICO was created by Congress in order to combat long-term criminal conduct.   *GFRS Equipment Leasing Fund II LLC v. Nguyen*, No. 3:18-cv-2250-L, 2019 WL 3530421, at *4 (N.D. Tex. Aug. 1, 2019) (citing *H.J. Inc. v. Northwestern Bell Te. Co.*, 492 U.S. 229, 241 (1989)).   Civil RICO liability does not exist unless the pleadings allege actual criminal activity.  *Snow Ingredients Incorporated v. SnoWizard Incorporated*, 833 F.3d 512, 526 (5th Cir. 2016).

21.     Plaintiff has asserted that all defendants violated the following subsections of section 1962:

     a.   18 U.S.C. § 1962(c) – Count I,

     b.   18 U.S.C. § 1962(a)[17] – Count II, and

---

[17]     The heading for Count II in the Complaint does not list Windspeed or Mr. Szato. However, the averments in Count II refer to "All Defendants".  Complaint at p. 181.

   c. 18 U.S.C. § 1962(d) – Count III.

22. Elements common to all four sub-sections are: (1) a person who engages in (2) a pattern of racketeering activity[18] (3) connected to the acquisition, establishment, conduct or control of an enterprise. *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228–29 (5th Cir. 2003) citing *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir.1988), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989).  A "pattern of racketeering" requires at least two predicate acts of racketeering activity under 18 U.S.C. § 1961(1) that have occurred within ten years of each other.  18 U.S.C. § 1961(5).  These predicate acts must be related, and they must amount to or pose a threat of continued criminal activity.  *Nguyen*, 2019 WL 3530421, at *4 (citing *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)).

23. In the Opinion, the Court states as follows:

> The Court notes that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it…".It is the unusual frauds which help to distinguish the ordinary business disputes from viable RICO claims.

Opinion at p. 10, fn 7 (internal citations omitted).

24. In this case, Plaintiffs make outlandish claims of predicate acts against Mr. Szeto, including:

   a. Mr. Szeto is alleged to have committed wire fraud when he was on an email chain transmitting a wind down plan.  Second Amended Complaint p. 147.

   b. Mr. Szeto is alleged to have "bribed" employees with employment at Windspeed. *Id*.

   c. Mr. Szeto is alleged to have committed wire fraud when he sent a letter DHL changing ACET Global's address while he was CEO. *Id*.

---

[18] "'Racketeering activity'" includes certain state and federal offenses listed in § 1961(1). [citation omitted] The individual acts of racketeering are commonly described as the "predicate" acts or offenses." *Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B, 2007 WL 9711726, at *6 (N.D. Tex. May 9, 2007).

d.  Mr. Szeto is alleged to have committed wire fraud by emailing his proposal for ownership interests in Windspeed.  *Id*.

e.  Mr. Szeto is alleged to have committed wire fraud for executing the Warrant Purchase Agreement.  *Id*. at p. 148.

f.  The list of similar things like this goes on.

25.  These are not criminal acts.[19]  These are a desperate attempt by Plaintiffs to paint literally any mundane action as a federal crime.  Accordingly, mail fraud and wire fraud claims as predicate acts will not establish liability against Mr. Szeto.

26.  Additionally, Plaintiff includes unsubstantiated allegations that Mr. Szeto lied in his deposition in the referenced State Court matter.  Aside from the fact that Mr. Szeto denies that he lied, Plaintiffs cannot rely on litigation activity to support a claim for RICO.  *See SnoWizard Incorporated*, 833 F.3d at 524.  The reasoning behind this is that, if the alleged predicate acts took place in the context of defending a lawsuit, the unlawful conduct "did not constitute or threaten long-term criminal activity." *Zastrow*, 789 F.3d at 561 (quoting *Burzynski*, 989 F.2d at 742-43).  Since early 2019, Plaintiffs' allegations regarding predicate acts of an alleged enterprise have occurred in the context of defending against litigation from Plaintiff regarding the alleged fraudulent foreclosure sale.  Accordingly, there is no threat of long-term criminal activity, even if

---

[19]     Wire fraud requires: (1) a scheme to defraud; (2) the interstate use of the wires to execute the scheme; (3) the use of wires being incident to the essential execution of the scheme; and (4) actual injury to the plaintiff. *United States v. Humphrey*, 104 F.3d 65, 70 n.3 (5th Cir. 1997).  Like the other predicate claims, wire fraud requires heightened pleading under Rule 9(b).  *WMX Technologies, Inc*., 112 F.3d at 177.  If predicate acts of fraud are not pled with particularity, civil RICO claims are subject to dismissal.  *Arruda v. Curves International, Inc*., 2020 WL 4289380, at *3 (W.D. Tex. July 27, 2020).  In this case, Mr. Szeto has testified that he didn't even know about the D&T subordinated note, thus there was no scheme.  Further, even if all the elements were met, use of the wires was not "essential".  In the event this matter proceeds further, Defendants reserve the right to rise additional defenses.

"Mail fraud under 18 U.S.C. § 1341 has three elements: '(1) a scheme to defraud; (2) use of the mails to execute that scheme; and (3) the specific intent to defraud.'  *United States v. Swenson*, 25 F.4th 309, 316 (5th Cir. 2022).  Here again, Mr. Szeto's lack of knowledge would preclude this alleged crime because there was no specific intent to defraud, among other reasons.

it were assumed that such a threat existed before March of 2019.  Obstruction of justice fails as a predicate act in this case.

27.     As for Plaintiff's allegations regarding money laundering and engaging in monetary transactions in property derived from specified unlawful activity, it fails to allege sufficient facts to establish that either predicate act occurred.  A money laundering claim requires the plaintiff to show that a defendant conducted a financial transaction with the specific intent to promote an unlawful activity.  *Flores*, 746 F.Supp.2d at 842.  With the engagement in money transactions with property derived from unlawful activity, it must be shown the defendant had knowledge the property was derived from unlawful means.  *United States v. Martinez*, 921 F.3d 452, 476 (5th Cir. 2019).  The Complaint fails to sufficiently allege that Mr. Szeto was aware of Plaintiff's secured loan, and his deposition testimony establishes that.  Second Amended Complaint Ex. 2, p. 131, lns 2-21.

28.     Moreover, it is not enough that the predicate acts are merely related, but they must be sufficiently continuous to assure a federal cause of action.  *Commercial Metals Co. v. Chazanow*, No. 3:09-CV-0808-B, 2009 WL 3853704, at *4 (N.D. Tex. Nov. 7, 2009) (quoting *In re Burzynski*, 989 F.2d 733, 742 (5th Cir.1993)).  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement . . . ."  *Id.* (citing *H.J. Inc.*, 492 U.S. at 241).  Liability in a RICO action "depends on whether the threat of continuity is demonstrated."  *Id.* (citing *H.J. Inc.*, 492 U.S. at 241).

29.     The failure of establish any one of these elements will result in the failure to state a claim and thus dismissal under Rule 12(b)(6).  *See Whelan*, 319 F.3d at 230.

30.    42.    In addition to the reasons below, the Plaintiffs still have not plead either form of "continuity".  In the Opinion, the Court held that the Plaintiffs had neither met the pleading burden of showing closed period continuity or open-ended continuity.  Opinion pp. 12-15.

31.    43.    The purpose of the alleged RICO activity remains the singular goal of transferring ACET Global assets to Windspeed.  At best, there is the averment that Baymark may, at some point in the future, foreclose on collateral again in another transaction.  There is simply nothing in the Second Amended Complaint which would indicate that the Windspeed Employees, Windspeed, or Mr. Szeto will at any time be involved with D&T, Baymark or Super G ever again.

32.    44.    This reason alone requires dismissal.

D.  Plaintiff has Not Alleged an Association-in-Fact as a Matter of Law with Windspeed or Mr. Szeto

33.    There are several types of defined "enterprises" which will satisfy the requirements of section 1962.  The only one pled by the Plaintiffs, with an exception in Count III of this matter, is an association-in-fact.  Second Amended Complaint p. 155.  Thus, in order to meet the requirement of the existence of an enterprise for the purposes of section 1962, Plaintiffs must properly allege the existence of an association-in-fact, as the term is used in the statute.

34.    An "association in fact" enterprise "must have an ongoing organization or be a continuing unit, such that the enterprise has an existence that can be defined apart from the commission or the predicate acts."  *Murex*, 2016 WL 4207994, at *10 (quoting *Zastrow v. Hous. Auto Imprts. Greenway, Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015)).  "The enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it engages."  *Whelan*, 319 F.3d at 229.  In other words, "[t]he enterprise must be 'an entity separate and apart from the pattern of activity in which it engages.'"  *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 439–40 (5th Cir. 1987); *see also Zastrow*, 789 F.3d at 562 (if the

alleged enterprise is one "created by the alleged racketeering activity itself" it is not an association in fact). *Id.*

35.    Plaintiff must "plead specific facts that establish that the association exists for purposes other than simply to commit the predicate acts." *Aubrey v. D Magazine Partners, L.P.*, No. 3:19-cv-0056-B, 2020 WL 619839, at \*4 (N.D. Tex. Feb. 10, 2020).  Moreover, a plaintiff cannot simply lump a group of defendants together, but must instead "plead the specified facts as to each defendant."

36.    Failure to plausibly establish an association-in-fact enterprise demands dismissal of the entire RICO claim. *Whelan*,  319 F.3d at 230 (affirming dismissal of RICO claim for failure to demonstrate an enterprise); *Oblio Telecom, Inc. v. Patel*, 2009 WL 1650481, at \*7 (N.D. Tex. June 10, 2009); *Sharif*, 2007 WL 9711726, at \*10; *Armendariz v. Chowaiki*, 2016 WL 8856919, at \*9 (W.D. Tex. Mar. 31, 2016); *Brunig v. Clark*, 2007 WL 9712119, at \*8 (S.D. Tex. Sept. 24, 2007); *Clark v. Nat'l Equities Holdings, Inc.*, 561 F. Supp. 2d 632, 639 (E.D. Tex. 2006), *remanded in part on other grounds*, 229 F. App'x 314 (5th Cir. May 30, 2007).

i.    *Plaintiff Fails to Establish Windspeed is a RICO "Person" or a Part of an Association-in-Fact Enterprise*

37.     "The object of all civil and criminal RICO actions is the RICO 'person,' the defendant." *Delta Truck & Tractor, Inc.*, 855 F.2d at 242.  A defendant qualifies as a RICO "person," for purposes of liability, if the person "either [] poses or has posed a continuous threat of engaging in acts of racketeering . . . The continuous threat requirement may not be satisfied if no more is pled than that the person has engaged in a limited number of predicate racketeering acts." *Id*.

38.    A RICO person, or, defendant, is distinct from the RICO enterprise and must be distinguished from the enterprise itself. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425,

439 (5th Cir. 2000).  To establish liability under section 1962(c), one must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name.  *Allstate Insurance Company v. Benhamou*, 190 F. Supp. 3d 631, 648 (S.D. Tex. 2016) (quoting *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, No. 4:09-cv-2556, 2011 WL 5325785, at *7 (S.D. Tex. Nov. 3, 2011)).

39.     Plaintiffs' RICO claims against Windspeed fail, at the very least, due to their inability to adequately plead that Windspeed is a RICO person under the statute.  First of all, the racketeering activity, which Plaintiff takes 194 pages to describe in the Second Amended Complaint, occurred over a limited period of time and was completed, according to Plaintiffs, early in 2019.  Furthermore, Plaintiffs' convoluted fact pattern does not clearly establish whether or not Windspeed is a RICO person distinct from the enterprise, as it appears the entire gravamen of Plaintiffs' suit is that Windspeed was created to be **THE** racketeering enterprise.  This is further supported by Plaintiff's direct allegation that Windspeed is, in fact, a RICO enterprise in Count III of the Complaint.  Second Amended Complaint p. 185, ¶ 430.

40.     According to Plaintiff, Windspeed's entire purpose for existence was to defraud D&T, and the other Defendants, including the entities and individuals which allegedly conspired to create Windspeed and the employees who work for Windspeed, are all allegedly associates-in-fact of the Windspeed enterprise.  Accordingly, Windspeed cannot be a RICO person, as it exercised no control over its creation and use as a racketeering vehicle, according to Plaintiff. *Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (each RICO "must have some part in directing" the affairs of the RICO enterprise, directly or indirectly).  The word "conduct" under the statute "require[s] some degree of direction and the word 'participate' [] require[s] some part in that direction." *Id.*

*ii. Plaintiff Fails to Establish Mr. Szeto as a RICO Person*

41.     Company officers and employees not associated other than through the activities of the company do not constitute an enterprise for purposes of § 1962(c)."  *Whelan*, 319 F.3d at 230. "The fact that officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation."  *Sharif*, 2007 WL 9711726, at *8 (citing *Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)); *Whelan*, 319 F.3d at 229; further citing *Atkinson*, 808 F.2d at 441 (concluding that bank, holding company, and three bank employees did not exist separately apart from the bank); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2nd Cir. 1994) ("[B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented.").

42.     Throughout the complaint, Plaintiffs use a variety of words to paint the picture that Mr. Szeto was operating at the behest of others.  Plaintiffs talk about Mr. Szeto being used, utilized, directed in order to carry out the alleged wind down of ACET Global and to form Windspeed and accomplish an alleged transfer of assets.  Second Amended Complaint p. 34, ¶ 87 ("Szeto was actually brought on to help form Windspeed and to serve as a puppet . . . in carrying out the planned wind down of ACET Global's operations and the fraudulent transfer of its assets to Windspeed . . . .").  Plaintiffs' cynical ploy to label Mr. Szeto as a puppet is not without consequences.  The Second Amended Complaint makes it apparent that Mr. Szeto did not exercise the control nor authority which is required to establish somebody as a RICO person.  The complaint only establishes that Mr. Szeto was acting in his role as CEO of both ACET Global and Windspeed, as

he was allegedly commanded to do by other Defendants.  Accordingly, all of Plaintiffs' RICO claims should fail as to Mr. Szeto on this basis alone.

E. Plaintiff Fails to Establish that Windspeed Itself is a Racketeering Enterprise

43.     A plaintiff is required to plead specific facts that establish that the enterprise exists for purposes other than simply to commit the predicate acts. *Zastrow*, 789 F.3d at 562 (affirming dismissal of RICO claim where the complaint alleged "an enterprise created by the alleged racketeering activity itself"); *Whelan*, 319 F.3d at 229 ("It is not enough to establish that a defendant corporation through its agents committed the predicate acts in the conduct of its own business."); *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 426 (5th Cir. 1987); *Patel*, 711 F. Supp. 2d at 678 (finding that the plaintiff must allege "the existence of an ascertainable structure separate and apart from the alleged pattern of racketeering."); *Clark*, 561 F. Supp. 2d at 638 (citing *Troyer v. Boomtown*, LLC, 2004 WL 2984364, at *8 (E.D. La. Dec. 22, 2004)).

44.     "An enterprise that "briefly flourished and faded" will not suffice; a plaintiff must adduce evidence showing that the enterprise functioned as a continuing unit.  *Whelan*, 319 F.3d at 230 citing (*Landry v. Air Line Pilots Ass'n Int'l, AFL–CIO*, 901 F.2d 404, 433 (5th Cir.1990)).

45.     Plaintiffs expend an excessive amount of words and space to allege that Windspeed was created in order to perpetuate racketeering activities.  The alleged purpose of this enterprise, Windspeed, was to denude ACET Global of assets and transfer them to Windspeed.  It is clear from the allegations in the complaint that the alleged purpose of Windspeed was to commit a predicate act, not to serve an independent purpose or goal.  Based on the very allegations contained in the complaint, Plaintiffs cannot establish any of the counts asserting RICO in this case.  Based on this pleading failure, Counts I-III should be dismissed for failure to state a claim.

F. Count I - 1962(c)

46.     Subsection (c) of RICO prohibits any "'person employed by or associated with any enterprise' from participating in or conducting the affairs of the enterprise through a pattern of racketeering activity."  18 U.S.C. § 1962(c); *see also Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (quoting *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995)).  "Under § 1962(c), the RICO 'person' and the RICO 'enterprise' must be distinct...[t]his required distinction is based on a textual reading of § 1962(c), which speaks of 'person[s] who are 'employed by or associated with' the 'enterprise.'"  *Sharif*, 2007 WL 9711726, at \*8.

47.     Mr. Szeto is not mentioned specifically in this Count.  Rather, all the allegations are asserted against all the Defendants.  *See generally* Second Amended Complaint pp. 184-188.  Presumably, the alleged bad acts regarding Mr. Szeto are the previously averred acts in the complaint that he allegedly directed the Windspeed Employees to give "demonstrably false testimony during depositions," and they "coordinated" with Szeto to "provide misleading and false information to carry out the frauds of the enterprise."   As detailed in the Windspeed Employees' Motion to Dismiss, the Complaint fails to explain what role the Windspeed Employees or any Windspeed employee (including Mr. Szeto) had in the enterprise beyond fulfilling their duties as employees.  As words like "used," "utilized," and "facilitated" suggest, any action done in furtherance of racketeering activity was done at the behest of higher authority and without sufficient direction over the enterprise.  That means Mr. Szeto was not distinct from the alleged RICO enterprise, as he did not act with sufficient authority or control over the alleged RICO enterprise, and/or Windspeed.  Accordingly, Count I fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

G. Count II - 1962(a)

48.    "With respect to § 1962(a), a plaintiff must allege "that its injury flows from the use or investment of racketeering proceeds, rather than from the underlying predicate racketeering acts." *Sharif*, 2007 WL 9711726, at *8 citing *In re Sunpoint Sec.*, Inc., 350 B.R. 741, 747 (Bankr. E.D. Tex. 2006).  Courts within the FIFTH CIRCUIT have generally rejected claims under section 1962(a) which assert that the plaintiff was injured by the reinvestment of proceeds by the defendants into its business "for purposes of perpetuation or expansion." *Vanderbilt Mortg. and Finance, Inc. v. Flores*, 735 F.Supp.2d 679, 700 (S.D. Tex. 2010).

49.    It is clear that Count II fails to state a claim against Windspeed and Mr. Szeto upon which relief can be granted.  The Complaint explicitly states that the basis for this cause of action is due to reinvestment of funds received from racketeering activities into the enterprise of the Defendants.  As case law has made clear, no injury can be derived from the RICO enterprise reinvesting illegally derived funds back into the enterprise.  Accordingly, Plaintiff has failed to state a claim with regards to Count II and such count should be dismissed with prejudice.

## H. Count III - 1962(d)

50.    Count III of the Second Amended Complaint asserts that all Defendants in this matter, including Windspeed and Mr. Szeto, conspired to violate subsections (a), (b), and (c) of RICO, in violation of § 1962(d).  *See Word of Faith World Outreach Center Church, Inc.*, 90 F.3d at 121.  A claim for RICO conspiracy must allege "three elements: (1) knowledge by the defendant of the essential nature of the conspiracy; (2) the defendant's objective manifestation of an agreement to participate in the conduct of the affairs of an enterprise, and (3) an overt act, which need not be a crime, in furtherance of the conspiracy." *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F.Supp. 995, 1005 (S.D. Tex. 1995) (citing *United States v. Sutherland*, 656 F.2d 1181, 1187 (5th Circuit 1981).

51.     If a plaintiff's claims fail under Section 1962(a)-(c), then there is no cause of action under Section 1962(d).  *Sharif*, 2007 WL 9711726, at *9 citing *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993).  Because the claims against Windspeed and Mr. Szeto fail, as set forth above, the claim for conspiracy under Section 1962(d) must also fail and should be dismissed with prejudice as to them.

   i.   *Plaintiff Fails to Meet Heightened Pleading Standard and Establish Intent for Conspiracy*

52.     A person cannot be held liable for a RICO conspiracy "merely by evidence that he associated with other . . . conspirators or by evidence that places the defendant in a climate of activity that reeks of something foul."  *Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 239 (5th Cir. 2010 (quoting *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir 1998)).  A conspirator must at least know of the conspiracy and "adopt the goal of furthering or facilitating the criminal endeavor."  *Salinas v. United States*, 522 U.S. 52, 65 (1997).

53.     Plaintiff cannot establish specific intent with Windspeed, as Plaintiffs go to great efforts to allege that Windspeed was acting at the behest of other actors, and no discussion is had regarding Windspeed's intent.  The failure to establish any awareness of D&T's alleged interest in ACET Global's property necessarily results in the failure to establish a conspiracy RICO claim because it would be impossible to adopt the goal of harming D&T if the parties are unaware of D&T's existence.  For these reasons, Plaintiffs fail to establish its Count III claim, as well as every other RICO-based claim in the Complaint.  Count III should therefore be dismissed with prejudice.

G. State Law Causes of Action

54.     As in an initial matter, the Windspeed Employees respectfully request that the Court decline to extend supplemental jurisdiction over the state law claims in the event the RICO claims are dismissed for the reasons set forth in the Opinion.  If the RICO claims are not dismissed, or if

the Court determines to retain jurisdiction of the state law claims for any reason, the Windspeed Employees respectfully request the state law claims be dismissed for the reasons below.

55.     Mr. Szeto and Windspeed generally adopt the arguments asserted in the pending Motion to Dismiss, filed by Defendants SG Credit Partners, Inc. and Marc Cole (the "SG Parties"), regarding the applicability of Rule 9(b) to any state law claims based on underlying allegations of fraud or mistake, as well as analysis of an officer's alter ego liability.  *See Defendants SG Credit Partners, Inc. and Marc Cole's Motion to Dismiss.*

*i. Fraud*

56.     Common law fraud requires a false material representation which the defendant knew was false or was made "recklessly as a positive assertion without any knowledge of its truth." *Harris County, Texas v. Eli Lilly and Company*, 2020 WL 5803483, at *16 (S.D. Tex. Sept. 29, 2020) (quoting *Ernst & Young, LLP v. Pac. Mut. Life Ins.*, 51 S.W.3d 573, 577 (Tex. 2001)).  It must be shown that the defendant "intended to induce [the plaintiff] to act upon the representation" and that the plaintiff "actually and justifiably relied upon the representation and thereby suffered injury."  *Id.* (quoting *Ernst & Young, LLP*, 51 S.W.3d at 577).

57.     As to the fraud cause of action asserted against Mr. Szeto, this claim fails for the simple purpose that the Complaint does not notify the reader of a single misrepresentation which Mr. Szeto ever made to Plaintiff.  For that matter, the Second Amended Complaint cites no single communication between Mr. Szeto and D&T.  For all the reader may know, representatives of D&T and Mr. Szeto had never interacted before.  More importantly, there is absolutely no evidence to suggest that Mr. Szeto knowingly made a misrepresentation to Plaintiffs.  Based on the arguments and briefing regarding fraud claims asserted in the other Defendants' Motions to Dismiss, Plaintiff fails to assert a fraud claim against Mr. Szeto.

*ii. Breach of Fiduciary Duty and Aiding and Abetting*

58.     It is axiomatic that a breach of fiduciary duty claim requires that a fiduciary relationship exist between the plaintiff and the defendant.  *See Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied).  Additionally, for aiding and abetting, it must be shown that the accused "party must be aware it was participating in the breach."  *Ebert v. Gustin*, 2016 WL 11663164, at *8 (N.D. Tex. May 12, 2016) (citing *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)).

59.     Plaintiffs argue that Mr. Szeto breached his fiduciary duty to creditors when ACET Global became insolvent.  As an initial matter, Plaintiffs never actually aver when ACET Global is alleged to have become insolvent.  Only that, at some point in time, ACET Global was insolvent.  This alone precludes relief.

60.     However, simply asserting insolvency is not enough to give rise to a fiduciary duty to creditors under Texas law.  Under Texas law, an entity must not only be insolvent, but most also have ceased doing business before a duty to creditors (as a body, not to just one) can be properly asserted.  *Matter of ATP Oil & Gas Corp.*, 711 F. App'x 216, 221 (5th Cir. 2017) citing *Floyd v. Hefner*, No. CIV.A. H-03-5693, 2006 WL 2844245, at *11–12 (S.D. Tex. Sept. 29, 2006), on recons. in part, 556 F.Supp.2d 617 (S.D. Tex. 2008) ("Texas law does not impose fiduciary duties in favor of creditors on the directors of an insolvent, but still operating, corporation.").

61.     Plaintiffs' do not aver when ACET Global ceased operating either.  Rather, the Plaintiffs aver that ACET Global and Windspeed each had its own set of books for the duration of the time discussed in the Second Amended Complaint.  Thus, if anything, Plaintiffs have alleged that ACET Global continued to operate in some fashion.  This also precludes a fiduciary duty to creditors as a matter of law.

62.     For these reasons, this claim should be dismissed with prejudice.

63.     As to the alleged derivative claim asserted by Plaintiff, on behalf of ACET Global, Mr. Szeto and Windspeed refers to Holdco's Motion to Dismiss for its arguments that Plaintiff lacks standing to assert any derivative claim on behalf of ACET Global, and/or Holdco, for breach of fiduciary duty.  *See generally, Defendant Baymark ACET Holdco, LLC's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support.*

64.     Mr. Szeto and Windspeed further cite to and rely on the briefing provided by the SG Parties' Motion to Dismiss regarding the cause of action for aiding and abetting breach of fiduciary duty.  See Defendants SG Credit Partners, Inc. and Marc Cole's Amended Motion to Dismiss.

### iii. Texas Uniform Fraudulent Transfer Act (TUFTA)

65.     Mr. Szeto and Windspeed adopt and incorporate the briefing provided by the SG Parties in their Motion to Dismiss regarding the TUFTA cause of action.  See *Defendants SG Credit Partners, Inc. and Marc Cole's Motion to Dismiss.*

66.     Plaintiffs fail to take into account that, "to the extent that [property] is encumbered by a valid lien," that property is not an "asset" under TUFTA.  *Tow v. Amegy Bank, N.A.*, 498 B.R. 757, 770 (S.D. Tex. 2013) (quoting Tex. Bus. & Com. Code § 24.002(2)(A)).  The property at issue in this case was foreclosed on and sold for the amount of $514,144.86.  Second Amended Complaint p. 11, ¶ 15.  Plaintiff's lien, alone, is allegedly worth $3.2 million, not to mention the value of Super G's senior lien on the property.  Second Amended Complaint p. 11, ¶ 13.  Even if the valuation which Plaintiffs alleges was used by the Baymark Defendants in their taxes to value the property were used in this context, it still would be undersecured, based on Plaintiff's allegations as to the amount of its secured claim.  Second Amended Complaint p. 14, ¶ 2.

($2,907,290 in proceeds versus $3.2 million lien).  Plaintiff has not alleged a value for the property which would exceed the combined amount of the Plaintiff and Super G's liens on the property. Accordingly, TUFTA would not apply to the alleged transfer of fully secured assets from ACET Global to Windspeed.

67.     Furthermore, Windspeed did not receive the transfer of **any** assets from ACET Global.  Rather, as evidenced by the Bill of Sale executed March 1, 2019, Windspeed received the assets from Super G, upon foreclosure on the assets of ACET Global.  Second Amended Complaint Ex. 39.  Furthermore, Windspeed is a good-faith purchaser based on the Loan Agreement executed with Super G Capital, LLC, as evidenced in the Complaint.  *See id.*, Ex. 18.  Based on this evidence, Mr. Szeto also cannot be shown as a transferee of any of the assets of ACET Global.  Moreover, Plaintiff cannot prove Windspeed nor Mr. Szeto did not take in good faith or for a reasonably equivalent value *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016); Tex. Bus. & Comm. Code § 24.005(a)(2).  Plaintiff's TUFTA claim fails for this reason, as well.

*iv. Civil Conspiracy*

68.     To prevail on its civil conspiracy claim, Plaintiffs must establish the following essential elements: "(1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means) (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998); *see also Ernst & Young, L.L.P*, 51 S.W.3d at 583.  Proof of the conspirators' intent to engage in conduct which would result in injury, without more, does not establish a civil conspiracy claim; rather there must be the specific intent to agree to accomplish an unlawful purpose or a lawful purpose by unlawful means.  *In re*

*Artho*, 587 B.R. 866, 885 (Bankr. N.D. Tex. 2018) (citing *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 762 (Tex.App.—Houston [1st Dist. 2017, pet. denied)).

69.     As discussed in great detail in this Brief and in other Defendants' Motions to Dismiss, the failure to adequately allege the underlying causes of action for this claim renders this cause of action meritless.  Furthermore, there is no particularity pled which suggests that either Windspeed or Mr. Szeto knowingly had a meeting of the minds with the other Defendants to defraud Plaintiffs.  Accordingly, Plaintiffs' civil conspiracy cause of action fails as a matter of law.

H. The Court Should Decline To Exercise Supplemental Jurisdiction Over State Law Claims

70.     As already explained in detail above, Counts IV through VIII (the "State Law Claims") should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  In addition, in the event the Court dismisses Plaintiff's RICO causes of action against Windspeed and Mr. Szeto, the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).  "The district court has discretion to dismiss pendent state law claims, and may decline to exercise supplemental jurisdiction over such claims where it has dismissed claims over which it had original jurisdiction." *St. Germain v. Howard*, 556 F.3d 261, 263–64 (5th Cir. 2009) (affirming dismissal of state law claims after dismissing RICO claims under Rule 12(b)(6)).  In fact, it is the Fifth Circuit's "general rule [] to dismiss state claims when the federal claims to which they are pendent are dismissed." *Drake v. Costume Armour Inc.*, 736 Fed.Appx. 505, 506 (5th Cir.2018), citing, *inter alia*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 619 (1988).

71.     As expressed by other Defendants in this matter, the rationale for hearing the State Law Claims evaporates if the RICO causes of action are dismissed.  Plaintiff has a pending state court lawsuit dealing with the same issues and many of the same claims in which trial is imminent.

Plaintiff would unjustifiably be allowed to relitigate claims which have been thoroughly briefed and subjected to discovery in the state court matter.

### IV. CONCLUSION

72.     For the reasons stated in this Motion, Plaintiffs have failed to state a claim upon which relief can be granted for all of its RICO and state law causes of action.  Plaintiff has failed to allege acts to show that an actual RICO enterprise existed between the Defendants in this case which carried out a purpose distinctive from the alleged racketeering activity, nor that Windspeed itself was a RICO Enterprise.  Plaintiff has failed to meet the requirement to allege either type of RICO continuity.  Plaintiff wholly fails to establish that Mr. Szeto was a distinctive RICO person in a racketeering enterprise.  Furthermore, the failure to adequately allege facts supporting involvement in a RICO enterprise also warrant the dismissal of the state law claims brought against Windspeed and Mr. Szeto.

### V. PRAYER

WHEREFORE, PREMISES CONSIDERED, Mr. Szeto and Windspeed respectfully request that the Court dismiss with prejudice Counts I, II, III, IV, V, VI, VII, and VIII of the Complaint against them.  Mr. Szeto and Windspeed further pray for any additional relief to which they may be justly entitled.

/
/
/
/
/
/
/
/
/
/
/
/

Dated: July 22, 2022
Dallas, Texas

HIGIER ALLEN & LAUTIN, PC

By: */s/ Jason T. Rodriguez*
Jason T. Rodriguez
   Texas State Bar No. 24042827
   *Attorney-In-Charge*
Timothy P. Woods
   Texas State Bar No. 21965500

HIGIER ALLEN & LAUTIN, P.C.
2711 N. Haskell Ave., Suite 2400
Dallas, Texas 75204

Telephone: (972) 716-1888
Facsimile: (972) 716-1899

jrodriguez@higierallen.com
twoods@higierallen.com

**ATTORNEYS FOR WINDSPEED TRADING, LLC, MR. WILLIAM SZETO, MS. ZHEXIAN LIN, MS. DANA MARIE TOMERLIN, MS. PADASAMAI VATTANA; MS. VANESSA TORRES**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of July 2022, a true and correct copy of the foregoing document was served *via* the Court's ECF system and by email to the following parties.

| | |
|---|---|
| Jason B. Freeman<br>Freeman Law, PLLC<br>2595 Dallas Parkway, Suite 420<br>Frisco, Texas 75034<br>jason@freemanlaw-pllc.com<br><br>**Counsel for Plaintiff** | Edward P. Perrin, Jr.<br>Jennifer R. Poe<br>HALLETT & PERRIN, P.C.<br>1445 Ross Ave., Suite 2400<br>Dallas, Texas 75202<br>eperrin@hallettperrin.com<br>jpoe@hallettperrin.com<br><br>**Counsel for Baymark Defendants** |
| John David Blakley<br>William D. Dunn<br>DUNN SHEEHAN, LLP<br>3400 Carlisle Street, Suite 200<br>Dallas, Texas 75204<br>jdblakley@dunnsheehan.com<br><br>**Counsel for Super G Capital, LLC and Steven Bellah** | Andrea Levin Kim<br>DANIELS TREDENNICK, PLLC<br>6363 Woodway Dr., Ste. 700<br>Houston, Texas 77057<br>andrea.kim@dtlawyers.com<br><br>Rachel Williams<br>WILLIAMS LAW, PC<br>10300 N. Central Expry., Ste. 544<br>Dallas, Texas 75231<br><br>**Counsel for SG Credit Partners, Inc. and Marc Cole** |

*/s/ Jason T. Rodriguez*
Jason T. Rodriguez