UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), Directly and Derivatively on Behalf of ACET GLOBAL, LLC and BAYMARK ACET HOLDCO, LLC <br><br>and<br><br> ACET GLOBAL, LLC,<br><br>    *Plaintiffs*,<br><br>v.<br><br>BAYMARK PARTNERS, LP;<br>BAYMARK PARTNERS MANAGEMENT, LLC;<br>SUPER G CAPITAL, LLC;<br>SG CREDIT PARTNERS, INC.;<br>BAYMARK ACET HOLDCO, LLC;<br>BAYMARK ACET DIRECT INVEST, LLC;<br>BAYMARK PARTNERS;<br>DAVID HOOK; TONY LUDLOW;<br>MATT DENEGRE; WILLIAM SZETO;<br>MARC COLE; STEVEN BELLAH;<br>ZHEXIAN "JANE" LIN;<br>DANA MARIE TOMERLIN;<br>PADASAMAI VATTANA; PAULA KETTER;<br>VANESSA TORRES;<br>WINDSPEED TRADING, LLC;<br>HALLETT & PERRIN, P.C.; and<br>JULIE A. SMITH,<br><br>    *Defendants*. | CIVIL CAUSE NO. 3:21-CV-01171-B |

# DEFENDANTS DAVID HOOK AND TONY LUDLOW'S
# MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
# AND BRIEF IN SUPPORT

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

APPLICABLE STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.       Plaintiff's Allegations of a "Continuing Threat" Remain Entirely Conclusory . . . 4

           A.      *Greb v. Singleton*, Case No. 3:18-cv-10439-M . . . . . . . . . . . . . . . . . . . . . 5

           B.      *State Farm Mutual Automobile Ins. Co. v. Complete Pain Solutions LLC n/k/a Complete Pain Solutions PLLC*, Case No. 4:20-cv-02606 . . . . . . . . 8

    II.      The SAC Continues to Allege a Purported "Scheme" That Was "Narrowly Focused" and Had a "Finite Ending Point," Precluding the "Continuity" Required for a RICO Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# INDEX OF AUTHORITIES

**Cases**

*Alpert v. Riley*, Civil Action No. H-04-3774,
2011 WL 564031 (S.D. Tex. Feb. 8, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Alvarez v. Rosas*, Civil Action No. H-18-4646,
2020 WL 2061491 (S.D. Tex. Apr. 29, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

*Breitling v. LNV Corp.*, Civil Action No. 3:15-CV-0703-B,
2016 WL 852963 (N.D. Tex. Mar. 4, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396 (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . 13

*Eastern Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1 (D.D.C. 2014),
*aff'd*, 629 F. App'x 1 (D.C. Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12 (1st Cir. 2000) . . . . . . . . . . . . . . . . . 12

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
565 F.3d 200 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*GFRS Equip. Leasing Fund II LLC v. Nguyen*, Civil Action No. 3:18-CV-2250-L,
2019 WL 3530421 (N.D. Tex. Aug. 1, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*GICC Capital Corp. v. Technology Fin. Group, Inc.* 67 F.3d 463 (2d Cir. 1995). . . . . . . . . . . 13

*Hidden Values, Inc. v. Wade*, Civil Action No. 3-11-CV-1917-L,
2012 WL 1836087 (N.D. Tex. May 18, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732 (5th Cir. 2014) (per curiam) . . . . . . . . . . 2

*In re Burzynski*, 989 F.2d 733 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Maynard v. PayPal, Inc.*, Civil Action No. 3:18-CV-0259-D,
2019 WL 3552432 (N.D. Tex. Aug. 5, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Miller v. SS Hospitality Group, LLC*, No. 4:17-cv-00847-O,
2018 WL 3054691 (N.D. Tex. Jun. 5, 2018),
*report and recommendation adopted*, 2018 WL 3046262 (N.D. Tex. Jun. 20, 2018) . . . . . . . . . . 2

*Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, Civil Action No. 3:16-CV-1217-B,
2018 WL 2323243 (N.D. Tex. Mar. 26, 2018), *report and recommendation adopted*,
2018 WL 2323471 (N.D. Tex. May 2, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Orthoflex, Inc. v. ThermoTek, Inc.*, Civil Action Nos. 3:11-CV-0870-D, 3:10-CV-2618-D,
2012 WL 2864510 (N.D. Tex. Jul. 12, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Poe v. Bock*, EP-17-CV-00232-DCG,
2018 WL 4275839 (W.D. Tex. Sept. 7, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Qatalys, Inc. v. Mountain Med. Techs., Inc.*, Civil Action No. 3:14-cv-1784-L,
2015 WL 1401220 (N.D. Tex. Mar. 27, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337 (5th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . 2

*Ritter v. Klisivitch*, No. 06-CV-5511 (DRH)(WDW),
2008 WL 2967627 (E.D.N.Y. Jul. 30, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Varela v. Gonzales*, Civil Action No. 3:13-CV-1278-B,
2013 WL 5658606 (N.D. Tex. Oct. 17, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 8, 9, 12

*Walker v. Allianz Life Ins. Co. of N. Am.*, No. 3-08-CV-2051-M,
2009 WL 1883418 (N.D. Tex. Jun. 30, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

*Whelan v. Winchester Prod. Co.*, 319 F.3d 225 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118 (5th Cir. 1996) . . . . . 11

*Zucker v. Farish*, Civil Action No. 3:18-CV-01790-K,
2018 WL 6570867 (N.D. Tex. Dec. 12, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Defendants David Hook ("Hook") and Tony Ludlow ("Ludlow")[1] file this Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support as follows:

## SUMMARY OF ARGUMENT

This Court gave Plaintiff "one chance to amend its pleadings" to try to overcome its failure to plead the pattern/continuity element necessary for its RICO claims (the only claims that give rise to federal jurisdiction). Plaintiff has now had that "one chance," and as was expected, its Second Amended Complaint ("SAC") has failed to cure what the Court specifically found lacking in Plaintiff's First Amended Complaint. Plaintiff's only well-pleaded allegations continue to be about a "narrowly focused alleged crime" that necessarily had "a finite ending point." Plaintiff offers only speculation and conclusory allegations regarding any purportedly "continuing threat," and that is simply not enough to state any claim under RICO. Thus, this Court should once again dismiss Plaintiff's RICO claims, but this time with prejudice.

## APPLICABLE STANDARDS

To satisfy Rule 12(b)(6), a plaintiff must set forth the "grounds for [its] entitlement to relief," and doing so "requires more than labels and conclusions."[2] "[A] formulaic recitation of the elements

---

[1] Defendant Baymark ACET Holdco, LLC ("Holdco") is separately filing its own Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support specifically to address Plaintiff's lack of standing to assert any claims on behalf of either ACET Global, LLC or Holdco and Plaintiff's failure to comply with Rule 23.1 as to its "derivative" claims. Hook and Ludlow hereby adopt and incorporate by reference the arguments in Holdco's brief. The Baymark Defendants are also separately filing their own Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support. Such Motion to Dismiss addresses the numerous pleading deficiencies in the SAC, both as to Plaintiff's RICO claims and to Plaintiff's state law claims, and including Plaintiff's continued failure to comply with the requirements of Federal Rule of Civil Procedure 8. Because Hook and Ludlow focus their brief specifically on the issue of the SAC's "fail[ure] to adequately plead a [RICO] pattern," they hereby adopt and incorporate by reference the arguments in the Baymark Defendants' brief. In the Court's May 9, 2022 Memorandum Opinion and Order ("Order"), the Court expressly sanctioned such cross-adoption of other parties' briefs and arguments. Order at 8 ("Equitable reasons support allowing the arguments applicable to one defendant to apply to all similarly situated defendants.").

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

**HOOK AND LUDLOW'S MOTION TO DISMISS SAC AND BRIEF IN SUPPORT— Page 1**

of a cause of action will not do."[3] Instead, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[4] To have the necessary "facial plausibility," there must be "factual content" that would allow the Court to draw the "reasonable inference" that the defendants are "liable for the misconduct alleged."[5] "[C]onclusory allegations, unwarranted deductions, [and] legal conclusions" will *not* satisfy the requirement for "factual content," and the Court should not accept them as true.[6] In considering a motion to dismiss, the Court may consider documents attached to or incorporated into a plaintiff's complaint, as well as matters of which the Court may take judicial notice.[7] Moreover, as the Fifth Circuit has expressly recognized, "[i]f an attached exhibit contradicts a factual allegation in the complaint, then the exhibit and not the allegation controls."[8]

---

[3] *Id.*

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

[5] *Id*. The Court should not "strain to find inferences favorable to the plaintiff." *Hidden Values, Inc. v. Wade*, Civil Action No. 3-11-CV-1917-L, 2012 WL 1836087, at *2 (N.D. Tex. May 18, 2012).

[6] *Hidden Values*, 2012 WL 1836087, at *2.

[7] *Varela v. Gonzales*, Civil Action No. 3:13-CV-1278-B, 2013 WL 5658606, at *2 (N.D. Tex. Oct. 17, 2013); *see also Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 209 n.6 (5th Cir. 2009).

[8] *Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021) (internal quotation marks omitted); *see also Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732, 737 (5th Cir. 2014) (per curiam) ("[The] conclusory allegation . . . is insufficient to survive dismissal because it is contradicted by the documents attached to his . . . complaint."); *Maynard v. PayPal, Inc.*, Civil Action No. 3:18-CV-0259-D, 2019 WL 3552432, at *10 (N.D. Tex. Aug. 5, 2019) ("To accept plaintiffs' contention would be to ignore the first page of the user agreement . . . ."); *Miller v. SS Hospitality Group, LLC*, No. 4:17-cv-00847-O, 2018 WL 3054691, at *4 (N.D. Tex. Jun. 5, 2018) ("However, in the context of a motion to dismiss, exhibits attached to a complaint control over allegations in a complaint, and the Court is not required to accept the plaintiff's interpretation of those exhibits."), *report and recommendation adopted*, 2018 WL 3046262 (N.D. Tex. Jun. 20, 2018); *Qatalys, Inc. v. Mountain Med. Techs., Inc.*, Civil Action No. 3:14-cv-1784-L, 2015 WL 1401220, at *5 (N.D. Tex. Mar. 27, 2015) ("If a document relied on . . . contradicts allegations . . ., the document, not the allegations, control . . . .") (quoting *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013)).

**HOOK AND LUDLOW'S MOTION TO DISMISS SAC AND BRIEF IN SUPPORT— Page 2**

## ARGUMENT AND AUTHORITIES[9]

To establish a prima facie civil RICO claim, Plaintiff must allege "(1) a substantive predicate violation of 18 U.S.C. § 1962; (2) injury to his business or property; and (3) a causal connection between the racketeering activity and the injury."[10] In turn, there are three elements common to all claims under section 1962: 1) a *person* who engages in 2) a *pattern* of racketeering activity 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*.[11] "Racketeering activity consists of two or more predicate offenses, which are defined by the RICO statute itself."[12]

In its May 9, 2022 Memorandum Opinion & Order, the Court focused on the pattern element and found it to be decisive: "The Court agrees with Defendants that the Amended Complaint fails to adequately plead a pattern. . . . Specifically, the Court finds that D&T failed to adequately plead the continuity prong . . . ."[13] More particularly, the Court agreed that "Defendants achieved their singular goal once all the assets from ACET Global were transferred to Windspeed and the foreclosure extinguished the D&T Note."[14] The Court further recognized:

---

[9]The other Defendants are also filing motions to dismiss the SAC. Hook and Ludlow hereby also adopt the arguments set forth in the following briefs filed by the other Defendants to the extent the arguments raised in such briefs apply equally to Hook and Ludlow: Defendants Hallett & Perrin, P.C. and Julie A. Smith's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support; Defendants SG Credit Partners, Inc.'s and Marc Cole's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Second Amended Complaint; Defendants Super G Capital, LLC's and Steven Bellah's Brief in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint; Windspeed Employees' Brief in Support of Motion to Dismiss Second Amended Complaint Claims Pursuant to Rule 12(b)(6); and Windspeed and Mr. Szeto's Brief in Support of Motion to Dismiss Second Amended Complaint Claims Pursuant to Rule 12(b)(6).

[10]*Varela*, 2013 WL 5658606, at *4.

[11]*See, e.g.*, *id* (emphasis added).

[12]*Breitling v. LNV Corp.*, Civil Action No. 3:15-CV-0703-B, 2016 WL 852963, at *4 (N.D. Tex. Mar. 4, 2016) (internal quotation marks omitted).

[13]Order at 11.

[14]*Id.* at 14.

> Nor have Plaintiffs pleaded any continuous threat of similar actions by the Defendants that might extend into the future. Instead, Defendants' extinction of the D&T Note created *a finite ending point for the scheme* and *precludes repetition*.[15]

Thus, the Court dismissed Plaintiff's RICO claims, but it gave Plaintiff "one chance to amend its pleadings in light of the deficiencies noted in this Order."[16]

Plaintiff has now had its "one chance to amend," and it has failed, once again, to plead facts that would support RICO pattern/continuity (either closed-ended or open-ended). Accordingly, the Court should dismiss Plaintiff's RICO claims with prejudice.

I.  **Plaintiff's Allegations of a "Continuing Threat" Remain Entirely Conclusory.**

In the SAC, Plaintiff tries to make the case that "there is a continuing threat of the Defendants' scheme, as the RICO Enterprise continues to actively undertake *new acquisition opportunities* to expand its enterprise—and the scope of the threat *to the next round of creditors and stakeholders*."[17] However, the SAC pleads no *facts* that would actually support this entirely conclusory allegation. Instead, Plaintiff merely points to two other RICO lawsuits involving Hook and Ludlow (and, by extension, Baymark Partners), as if that alone can a pattern make. Plaintiff's reliance on these other lawsuits as evidence of any "pattern" is utterly misplaced, as is evident from the facts actually alleged in those lawsuits.[18]

---

[15] *Id.* (emphasis added).

[16] *Id.* at 15, 16. The Court also declined to exercise supplemental jurisdiction over Plaintiff's state law claims and dismissed them as well. *Id.* at 16.

[17] SAC ¶ 320 (emphasis added).

[18] *See Walker v. Allianz Life Ins. Co. of N. Am.*, No. 3-08-CV-2051-M, 2009 WL 1883418, at *5 (N.D. Tex. Jun. 30, 2009) ("Plaintiff's conclusory assertion that defendants have engaged in similar conspiracies to close other businesses, and his passing reference to 'numerous lawsuits' filed against defendants and their agents for 'identical schemes' are insufficient to establish a future threat of criminal activity.") (internal citation omitted).

A.    *Greb v. Singleton*, Case No. 3:18-cv-10439-M

The first lawsuit Plaintiff points to in the SAC is *Greb v. Singleton*, which Plaintiff claims involved "a strikingly similar scheme to that at issue here."[19] In fact, the "similarity" begins and ends with the fact that the *Greb* lawsuit was related to the purchase by Baymark Partners of a business and the fact that the deal at issue involved warrants in conjunction with such purchase.[20] This is hardly sufficient to show any RICO "pattern" considering that there is nothing inherently suspect in either the purchase of a business or the use of warrants.

In *Greb*, the plaintiff acknowledged that his former business, J&G Concrete Products, Inc. ("J&G") had for years been indebted to Citizens National Bank of Texas ("CNB"), one of the defendants in the lawsuit.[21] He also acknowledged that by 2013, J&G "was in technical default under two of its loans to *[sic]* CNB."[22] Then, "[i]n 2013 and 2014, CNB and Mark Singleton were pressuring Greb and J&G to either sell the company or refinance the debt."[23] Ultimately, CNB posted certain properties owned by J&G, as well as properties owned by Greb himself, for foreclosure.[24]

---

[19] SAC at 4.

[20] A true and correct copy of Greb's First Amended Complaint [Docket No. 19] is included in Hook and Ludlow's Appendix in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint ("App."), filed contemporaneously herewith. The Court may take judicial notice of this public record. *See, e.g.*, *Varela*, 2013 WL 5658606, at *2.

[21] *Greb* First Amended Complaint ¶ 14, App. at 004.

[22] *Id.* ¶ 15, App. at 004.

[23] *Id.* ¶ 16, App. at 005. Mr. Singleton, CNB's President and Chairman of the Board, was also named as a defendant in the lawsuit. *Id.* ¶ 9, App. at 003.

[24] *Id.* ¶ 16, App. at 005. In describing the plaintiff's allegations and characterizations of the events at issue, Hook and Ludlow are by no means endorsing such allegations and characterizations. In fact, Hook and Ludlow deny Greb's allegations and maintain that the only "scheme" that ever existed was solely in Greb's imagination. Nevertheless, in order to demonstrate that the "facts" alleged in *Greb* are in no way similar to those alleged by the Plaintiff in the SAC, Hook and Ludlow must describe what was actually alleged in *Greb*.

The plaintiff went on to claim that "CNB had fraudulently inflated the amount of debt J&G owed CNB" such that "CNB was effectively preventing J&G from refinancing its debt with any other bank."[25] The plaintiff alleged that it was *this* "fraudulent scheme" that constituted "mail fraud."[26] Notably, the plaintiff did not allege that Hook, Ludlow, or Baymark Partners had anything to do with this "fraudulent scheme."

The plaintiff further alleged that it was not until 2015 that Baymark Partners even entered the scene as a potential purchaser for J&G.[27] Then, according to the plaintiff, CNB came up with a "new plan" to "give Singleton and the other owners of CNB another means to increase their profit."[28] This "new plan" involved "Singleton secretly, and without telling Greb, enter[ing] into an agreement with Baymark, through Tony Ludlow and David Hook, to advance Baymark the funds to purchase J&G in exchange for Baymark, Hook and Ludlow giving CNB a share of the profits on the resale of J&G."[29] This profit participation came in the form of warrants issued to CNB.[30]

The plaintiff further alleged that "the conspirators began a flurry of activity to insure the Baymark purchase was the only J&G option."[31] Such activity included CNB's filing "an injunction

---

[25] *Id.* ¶ 19, App. at 006. The plaintiff also claimed that "CNB had no legitimate banking reason for foreclosing at that time" and that "the actual reason for posting at that time was to secure a profit significantly over the amount it was entitled to based on the notes by taking property worth 27 million dollars for a debt of about 8 million dollars." *Id.* ¶ 21, App. at 007.

[26] *Id.* ¶ 19, App. at 006.

[27] *Id.* ¶ 24, App. at 008 ("In May, 2015, a letter of intent was executed between Baymark and the J&G entities.").

[28] *Id.* ¶ 27, App. at 009.

[29] *Id.* ¶ 27, App. at 009. The plaintiff offered no explanation as to why either CNB or the prospective purchasers of J&G would have any duty to disclose to him the terms of their deal for financing of the transaction.

[30] *Id.* ¶ 28, App. at 010.

[31] *Id.* ¶ 35, App. at 011.

**HOOK AND LUDLOW'S MOTION TO DISMISS SAC AND BRIEF IN SUPPORT— Page 6**

action against Larry Greb."[32] Then, "[a]fter the grant of this injunction, Greb was faced with virtually no choice: he had to either sell his 60% interest in J&G to Baymark (and its unknown investor, CNB) or face the loss of the company and virtually all of his personal assets."[33] The sale of J&G took place in the fall of 2015, and the plaintiff complained that "barely a year after the Baymark fund and its co-conspirators conspired to fraudulently coerce Larry Greb into selling the company for less than one-half of what it was worth, Baymark sold the company for $32,000,000" and that "7.5% of the profits from that sale went to CNB."[34]

In the *Greb* First Amended Complaint there are no allegations of fraudulent transfers of assets, no allegations of deferred compensation to the seller left unpaid, and no allegations of any "threat" to any creditors. Even more significantly, the "enterprise" alleged by the plaintiff in *Greb* was CNB, *not* any Baymark entity.[35] Further, the only "continuing threat" the plaintiff alleged in support of his RICO claim was also CNB, *not* Hook, *not* Ludlow, and *not* any Baymark entity:

> Singleton and the other directors and officers of CNB had as their goal, throughout 2014 and 2015, to use CNB as a vehicle to illegally profit from their lending customer over and above simply the legitimate return on their loan interest. They attempted it in 2014 and, on information and belief, *they have no doubt employed the same kind of subterfuge with other bank customers* both before and after J&G and Greb and *they will no doubt continue to do so in the future.*[36]

---

[32]*Id.* ¶ 36, App. at 012.

[33]*Id*. ¶ 39, App. at 013.

[34]*Id.* ¶ 41, App. at 014.

[35]*Id.* ¶ 42, App. at 014; *see also id.* ("*Singleton* has participated in the affairs of the enterprise through a pattern of racketeering activity at two different times in the years 2014 and 2015. During the second set of racketeering activity *he engaged* co-conspirators, Baymark, Hook, and Ludlow . . . .") (emphasis added).

[36]*Id.* ¶ 48, App. at 016 (emphasis added); *see also id.* ¶ 40, App. at 013 ("He [Singleton] attempts this fraud, to varying degrees twice within two years . . . . His willingness to engage in such fraudulent conduct is clear. He almost
(continued...)

Thus, not only were the facts alleged in *Greb* significantly different than those alleged by the Plaintiff in this case, but the "enterprise" and the "pattern" were also completely different and had no connection whatsoever to Hook, Ludlow, or Baymark Partners. Plaintiff's claim that the mere existence of the *Greb* lawsuit—*which lawsuit Judge Lynn dismissed*[37]—can somehow show the "pattern" required for Plaintiff's wholly unrelated RICO claims to proceed is absurd.

**B.    *State Farm Mutual Automobile Ins. Co. v. Complete Pain Solutions LLC n/k/a Complete Pain Solutions PLLC*, Case No. 4:20-cv-02606**

The other lawsuit referenced by Plaintiff in the SAC is even further removed from any "pattern" analysis applicable to Plaintiff's RICO claims. Plaintiff does acknowledge that *State Farm Mutual Automobile Insurance Co. v. Complete Pain Solutions LLC n/k/a Complete Pain Solutions PLLC* does not involve any sort of "fraudulent" business deal but instead "a multi-million-dollar healthcare fraud scheme."[38] However, Plaintiff's statement that such "scheme" was allegedly "carried out by the entity that they [Hook and Ludlow] controlled" mischaracterizes the facts alleged in the Complaint filed in the lawsuit.[39]

---

[36](...continued)
certainly undertook similar transactions in the past and he constitutes a continuing threat in the community because he will do the same thing again. . . . [T]here is a continuing threat that he will do the same in the future to other borrowers unless he is stopped.").

[37] A true and correct copy of Judge Lynn's September 30, 2019 Order Granting Motion to Dismiss and Requiring RICO Case Statement [Docket No. 41] is included in Hook and Ludlow's Appendix in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint. The Court may take judicial notice of this public record. *See, e.g.*, *Varela*, 2013 WL 5658606, at *2. It should be noted that Judge Lynn's Order took issue both with the "bald[] conclu[sion] that Defendants have employed the same tactics with other bank customers and will do so with future customers" and with the fact that "[t]he alleged scheme is inherently terminable." September 30, 2019 Order at 9, 10, App. at 029, 030.

[38] SAC at 4 (emphasis added).

[39] A true and correct copy of State Farm's Complaint [Docket No. 1] is included in Hook and Ludlow's Appendix in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint. The Court may take judicial (continued...)

First, neither Hook, Ludlow, nor Baymark Partners is even named as a defendant in the *State Farm* lawsuit.[40] Moreover, the only two defendants named in the RICO counts in the *State Farm* Complaint are *the two doctors* who purportedly submitted fraudulent bills and supporting documentation to the insurance companies.[41] The only claim asserted against the two entity defendants named in the Complaint is a state law claim for "money had and received."[42] Nowhere in the Complaint is there *any* allegation that any owners or managers of either entity had any role whatsoever in what is expressly alleged to have been the doctors' purported "scheme."[43]

Nothing about the *State Farm* lawsuit can help Plaintiff in this case show the required RICO pattern. That Plaintiff even mentions this completely unrelated and wholly dissimilar lawsuit is a mark of both Plaintiff's desperation and at least tacit recognition that it cannot plead any facts required to support this necessary element of its RICO claims.

## II. The SAC Continues to Allege a Purported "Scheme" That Was "Narrowly Focused" and Had a "Finite Ending Point," Precluding the "Continuity" Required for a RICO Claim.

The SAC still fails to plead facts to support the pattern element required for RICO claims. As the Court recognized in its Order, this element requires facts showing both a relationship between

---

[39](...continued)
notice of this public record. *See, e.g.*, *Varela*, 2013 WL 5658606, at *2.

[40]*See generally State Farm* Complaint, App. at 036-077. The only references to Hook, Ludlow, or "Baymark" are in paragraphs 20 and 21. *See* App. at 043, 044.

[41]*Id.* at 36, 38, App. at 071, 073.

[42]*Id.* at 40, App. at 075.

[43]The Complaint was filed on July 23, 2020, and it remains the live pleading in the lawsuit. In other words, the plaintiffs in the lawsuit have had *two years* to allege that someone other than the two doctor defendants is also responsible for the RICO "scheme," and they have not done so.

the predicate acts and, even more importantly, a threat of continued criminal activity.[44] Because the SAC so inadequately pleads the purported "predicate acts," it is difficult to analyze the "relationship" component of the RICO "pattern."[45] However, it is abundantly clear from the well pleaded facts in the SAC that Plaintiff cannot show *any* "threat of continued criminal activity."

The SAC continues to describe a purported "scheme" whose "critical steps . . . were carried out in the summer and fall of 2018."[46] In particular, Plaintiff complains that "the Baymark Defendants surreptitiously transferred . . . ACET Global's assets (tangible and intangible) and complete business operations to a new entity: Windspeed."[47] As Plaintiff again repeatedly alleges in the SAC, this purported "fraudulent transfer" was completed in or around October 2018.[48] Moreover, Plaintiff expressly alleges that the Baymark Defendants used ACET Global, LLC's bankruptcy to "*complet[e]* their fraudulent scheme."[49] Despite these allegations of a "scheme" that has been "complet[ed]," Plaintiff makes the entirely conclusory allegations that "the defendants have

---

[44]Order at 11; *see also Zucker v. Farish*, Civil Action No. 3:18-CV-01790-K, 2018 WL 6570867, at *7 (N.D. Tex. Dec. 12, 2018).

[45]The SAC makes the following conclusory allegation about the "relationship" among the various "predicate acts" it alleges: "The racketeering activities are related to each other. Indeed, they were critical pieces of the overall fraud." SAC ¶ 448. Plaintiff's failure to plead the various "predicate acts" referenced in the SAC is discussed in detail in the Baymark Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support.

[46]SAC ¶ 8.

[47]SAC ¶ 354; *see also id.* ¶ 14 ("*Long after* they had . . . transferred all of ACET's remaining assets to Windspeed, *in January of 2019* . . . Baymark and Super G coordinated to serve a Notice upon ACET Global . . . .") (emphasis added).

[48]*See, e.g.*, SAC ¶ 385 ("In October of 2018, the Baymark Defendants . . . transferred ACET Global's assets to Windspeed . . . ."); *id.* ¶ 397 ("The Baymark Defendants fraudulently transferred *all of ACET Global's assets and business operations* to Windspeed in late October of 2018.") (emphasis added).

[49]SAC ¶ 265 (emphasis added). The SAC does not explain why the bankruptcy was required to "complete" the "scheme" or what the Baymark Defendants allegedly achieved from this part of the "scheme."

**HOOK AND LUDLOW'S MOTION TO DISMISS SAC AND BRIEF IN SUPPORT— Page 10**

continued to engage in racketeering activities" and that such "continued activities will harm additional victims."[50]

The Fifth Circuit, along with District Courts within the Fifth Circuit, have consistently concluded that when alleged RICO predicate acts "are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown."[51] As stated in the *Nerium SkinCare, Inc. v. Nerium International, LLC* opinion adopted by this Court:

> Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed toward a single victim do not satisfy the RICO requirement of closed or open pattern continuity.[52]

---

[50]SAC ¶¶ 446, 447. Nowhere in the SAC does Plaintiff offer any facts to suggest that "additional victims" will be harmed or to explain who those "additional victims" might be. Plaintiff merely refers to other purported "victims" *already harmed* by the now completed transfer of all of ACET Global's assets—namely, ACET Global's other creditors. *See* SAC ¶¶ 2, 7, 14, 158, 315.

[51]*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996); *see also In re Burzynski*, 989 F.2d 733, 743 (5th Cir. 1993) ("*All* of the alleged predicate acts took place as part of the *Burzynski I* litigation, which has ended.") (emphasis in original); *Alvarez v. Rosas*, Civil Action No. H-18-4646, 2020 WL 2061491, at *6 (S.D. Tex. Apr. 29, 2020) ("The allegations concern one scheme . . . and are inadequate to allege a pattern of racketeering activity."); *GFRS Equip. Leasing Fund II LLC v. Nguyen*, Civil Action No. 3:18-CV-2250-L, 2019 WL 3530421, at *4 (N.D. Tex. Aug. 1, 2019) ("The Amended Complaint does not contain any allegations that support a reasonable inference of long-term criminal conduct. For example, GFRS does not identify any other entities that have fallen victim to a similar fraudulent scheme . . . ."); *Poe v. Bock*, EP-17-CV-00232-DCG, 2018 WL 4275839, at *4 (W.D. Tex. Sept. 7, 2018) ("Plaintiffs allege a narrow scheme . . . to wrest away the Poe family business with five alleged conspirators and Richard being the only victim. Such a scheme does not satisfy the RICO requirement of closed- or open-pattern continuity."); *Orthoflex, Inc. v. ThermoTek, Inc.*, Civil Action Nos. 3:11-CV-0870-D, 3:10-CV-2618-D, 2012 WL 2864510, at *4 (N.D. Tex. Jul. 12, 2012) ("ThermoTek is the only alleged victim . . . ."); *Alpert v. Riley*, Civil Action No. H-04-3774, 2011 WL 564031, at *9 (S.D. Tex. Feb. 8, 2011) ("The plaintiffs assert that the scheme had a narrow purpose, to funnel the Alpert Trusts' funds to himself and his business associates. The record demonstrates that the scheme involved a limited number of perpetrators and victims, and had a narrow focus and goal. This does not constitute a pattern under RICO.") (internal alteration, citation, and quotation marks omitted); *Walker v. Allianz Life Ins. Co. of N. Am.*, No. 3-08-CV-2051-M, 2009 WL 1883418, at *5 (N.D. Tex. Jun. 30, 2009) (finding the plaintiff had failed to satisfy the "continuity" prong of the RICO statute when he complained of a "scheme" that was "inherently finite").

[52]Civil Action No. 3:16-CV-1217-B, 2018 WL 2323243, at *10 (N.D. Tex. Mar. 26, 2018), *report and recommendation adopted*, 2018 WL 2323471 (N.D. Tex. May 2, 2018); *see also id.* ("The RICO statute was never intended to allow plaintiff's to turn garden-variety state law fraud claims into federal RICO actions. Yet that is precisely what NSC attempts to do here. The RICO claim should be dismissed.") (internal alterations, citations, and quotation marks omitted).

Plaintiff basically describes a "scheme" to cheat Plaintiff (and now ACET Global's other creditors) and loot a single company—ACET Global.[53] By Plaintiff's own admission, such purported "scheme" achieved its goal, basically over the course of only a few months.[54] Accordingly, there is nothing left for the "scheme" to do, and there can be no continuous "pattern" of racketeering activity related to any such "scheme."

The First Circuit considered allegations similar to those in the SAC, and it found no RICO "pattern" in *Efron v. Embassy Suites (Puerto Rico), Inc.*[55] This Court has already found the *Efron* case to be "persuasive" on the issue of continuity.[56] In *Efron*, the plaintiff alleged "that several of his partners intentionally caused the project to experience financial difficulties in a scheme to extract additional money from him . . . and, ultimately, to squeeze down the value of [his] substantial interest in the partnership."[57] The First Circuit concluded:

> Almost by definition, the alleged fraud *had a limited life expectancy*. The scheme's objective . . . was to squeeze appellant and two co-partners out of the partnership early in its existence.
> . . . .
> Taken together, the acts as alleged comprise a single effort, over a finite period of time, to wrest control of a particular partnership from a limited number of its partners. *This cannot be a RICO violation*.[58]

---

[53] *See, e.g.*, SAC ¶¶ 11, 180, 298. The Baymark Defendants vehemently disagree with Plaintiff's characterization of what happened with ACET Global. However, they recognize that the Court must accept Plaintiff's *well pleaded* factual allegations as true at the motion to dismiss stage. *See, e.g.*, *Varela v. Gonzales*, Civil Action No. 3:13-CV-1278-B, 2013 WL 5658606, at *2 (N.D. Tex. Oct. 17, 2013).

[54] *See* SAC ¶ 8. In a misguided attempt to stretch out the duration of the purported "scheme," Plaintiff claims "predicate acts" related to a state court lawsuit also brought by Plaintiff. *See, e.g.*, SAC at 153. However, as explained more fully in the Baymark Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support, these are not predicate acts.

[55] 223 F.3d 12 (1st Cir. 2000).

[56] Order at 12.

[57] *Id.* at 13.

[58] *Id* at 19-20, 21 (emphasis added).

**HOOK AND LUDLOW'S MOTION TO DISMISS SAC AND BRIEF IN SUPPORT— Page 12**

An Eastern District of New York case, *Ritter v. Klisivitch*, is also instructive.[59] There, the court considered RICO claims involving alleged fraudulent transfers.[60] The court characterized the allegations as "involving a single scheme of narrow scope, *viz.*, the frustration of Plaintiff's collections efforts, including one victim, and a limited number of related participants."[61] The court further concluded that the "scheme" alleged was "inherently terminable" as "*there [was] nothing left to loot.*"[62]

Plaintiff does not seem to appreciate what the Court concluded in its Order because Plaintiff's allegations in the SAC demand a similar conclusion. Plaintiff does not claim that ACET Global has any assets left, and it is the absence of assets in ACET Global that is the only cause of Plaintiff's purported injury.[63] To the extent there was ever any "scheme" (which the Baymark Defendants strenuously deny), it was "narrow," and it has come to its logical and undeniable end. As this Court correctly stated in its Order, "[t]he RICO statute is not meant to target

---

[59] No. 06-CV-5511 (DRH)(WDW), 2008 WL 2967627 (E.D.N.Y. Jul. 30, 2008).

[60] *Id.* at *11.

[61] *Id.*

[62] *See id.* at *12 (emphasis added); *see also GICC Capital Corp. v. Technology Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) ("Even if we assume that defendant's scheme was designed to deprive TFG of its assets, it is clear that the scheme was *inherently* terminable. It defies logic to suggest that a threat of continued looting activity exists when, as plaintiff admits, there is nothing left to loot.") (emphasis in original); *Eastern Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13 (D.D.C. 2014) ("[T]aking all of the plaintiff's assertions as true, the plaintiff has only alleged that the defendants engaged in acts designed to obtain control of the Property from the plaintiff at a low price, regardless of the amount of time over which those acts were committed. Thus, the plaintiff has failed to plead a 'pattern of racketeering activity.'"), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015); *Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 410 (E.D.N.Y. 2013) ("However, duration alone is not dispositive, especially in a case where the alleged illegal plan was directed at a single goal and the plan has terminated.").

[63] *See* SAC ¶¶ 406, 420 (both stating: "Specifically, the Defendants' violations of these statutes resulted in the failure to pay millions of dollars owed to Plaintiff.").

**HOOK AND LUDLOW'S MOTION TO DISMISS SAC AND BRIEF IN SUPPORT— Page 13**

such narrow crimes."[64] Thus, there can be no continuity and no "pattern" as is required before there can be any claim under RICO.[65]

## PRAYER

WHEREFORE, David Hook and Tony Ludlow respectfully request that the Court grant their Motion to Dismiss Plaintiff's Second Complaint and dismiss all of Plaintiff's claims asserted therein, as well as for such other and further relief to which they may be justly entitled.

Respectfully submitted,

/s/ Edward P. Perrin, Jr.
Edward P. Perrin, Jr.
State Bar No. 15796700
Jennifer R. Poe
State Bar No. 00794470
HALLETT & PERRIN, PC
1445 Ross Ave., Suite 2400
Dallas, TX 75202
Telephone: (214) 953-0053
Facsimile: (214) 922-4142
eperrin@hallettperrin.com
jpoe@hallettperrin.com

**ATTORNEYS FOR DEFENDANTS
BAYMARK PARTNERS MANAGEMENT, LLC;
BAYMARK MANAGEMENT, LLC;
BAYMARK ACET HOLDCO, LLC;
BAYMARK ACET DIRECT INVEST, LLC;
BAYMARK PARTNERS; DAVID HOOK;
TONY LUDLOW; AND MATTHEW DENEGRE**

---

[64] Order at 13.

[65] The "enterprise" element also includes a "continuity" component. *See, e.g.*, *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 230 (5th Cir. 2003) ("An enterprise that briefly flourished and faded will not suffice.") (internal quotation marks omitted). Because Plaintiff fails to plead the continuity required for a "pattern," it has also failed to plead the continuity required for any "association-in-fact enterprise." Other deficiencies in Plaintiff's attempt to plead an "enterprise" are more fully addressed in the other Defendants' briefs.

**HOOK AND LUDLOW'S MOTION TO DISMISS SAC AND BRIEF IN SUPPORT— Page 14**

**CERTIFICATE OF SERVICE**

On July 22, 2022, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

> */s/ Edward P. Perrin, Jr.*
> Edward P. Perrin, Jr.

**HOOK AND LUDLOW'S MOTION TO DISMISS SAC AND BRIEF IN SUPPORT— Page 15**