UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), Directly and Derivatively on Behalf of ACET GLOBAL, LLC and BAYMARK ACET HOLDCO, LLC<br><br>and<br><br>ACET Global, LLC,<br><br>**Plaintiffs,**<br><br>v.<br><br>BAYMARK PARTNERS, LP;<br>BAYMARK PARTNERS MANAGEMENT, LLC;<br>BAYMARK MANAGEMENT, LLC;<br>SUPER G CAPITAL, LLC;<br>SG CREDIT PARTNERS, INC.;<br>BAYMARK ACET HOLDCO, LLC;<br>BAYMARK ACET DIRECT INVEST, LLC;<br>BAYMARK PARTNERS;<br>et al.,<br><br>**Defendants.** | §§§§§§§§§§§§§§§§§§§§§§§§§§ | CIVIL CAUSE NO. 3:21-cv-01171-B |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DAVID HOOK AND TONY LUDLOW'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

Jason B. Freeman
  TX Bar No. 24069736

**FREEMAN LAW, PLLC**
7011 Main Street
Frisco, Texas 75034
Telephone: 214.984.3410
Fax: 214.984.3409
Jason@freemanlaw.com

**ATTORNEY FOR PLAINTIFFS**

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ..................................................................................................................ii

**TABLE OF AUTHORITIES**..........................................................................................................iii

I.   Argument. ..........................................................................................................................................1

   A.   Other Rico Cases. ........................................................................................................................1
   B.   The SAC Properly Alleges a Pattern and Continuity. ...................................................................3
       1.   It is Improper to Look to Authority Outside of this Circuit When Case Law within this Circuit—and from this Court—is on point. ...................................................................................3
       2.   The Court Should Not Disregard the Clear Text of the Statute............................................10
   C.   The Alleged Facts are Sufficient. ...............................................................................................11

II.   Prayer. .............................................................................................................................................13

**CERTIFICATE OF SERVICE** ......................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Abell v. Potomac Ins. Co.*,
  946 F.2d 1160 (5th Cir. 1991) ........................................................................................... 4
*Abraham v. Singh*,
  480 F.3d 351 (5th Cir. 2007) ............................................................................... 4, 5, 6, 11
*Adkins v. Silverman*,
  899 F.3d 395 (5th Cir. 2018) ............................................................................................ 10
*Ali v. Barr*,
  951 F.3d 275 (5th Cir. 2020) ............................................................................................ 10
*Armco Industrial Credit Corp. v. SLT Warehouse Co.*,
  782 F.2d 475 (5th Cir.1986) .............................................................................................. 5
*At the Airport v. ISATA*,
  438 F.Supp.2d 55 (E.D.N.Y.2006) ................................................................................... 6
*Bridgewater v. Double Diamond-Delaware, Inc.*,
  2010 WL 1875617 (N.D. Tex. May 10, 2010) ...................................................... 6, 7, 8
*Calcasieu Marine Nat'l Bank v. Grant*,
  943 F.2d 1453 (5th Cir. 1991) ........................................................................................... 4
*Commercial Metals Co. v. Chazanow*,
  2009 WL 3853704 (N.D. Tex. 2009) ............................................................................... 8
*Cypress/Spanish Ft. I, L.P. v. Professional Service Industries, Inc.*,
  814 F.Supp.2d 698 (N.D. Tex. 2011) .................................................................. 3, 6, 7, 8
*Delta Truck & Tractor, Inc. v. J.I. Case Co.*,
  855 F.2d 241 (5th Cir. 1988) ..................................................................................... 3, 4, 5
*Efron v. Embassy Suites (P.R.), Inc.*,
  223 F.3d 12 (1st Cir. 2000) ........................................................................................ 10, 11
*Greb v. Singleton*,
  2019 WL 13210371 (N.D. Tex. Sept. 30, 2019) ............................................................ 2
*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) ................................................................................................... Passim
*Heinze v. Tesco Corp.*,
  971 F.3d 475 (5th Cir. 2020) ............................................................................................ 10
*Howell Hydrocarbons, Inc. v. Adams*,
  897 F.2d 183 (5th Cir. 1990) ............................................................................................. 4
*Hoyt v. Lane Constr. Corp.*,
  927 F.3d 287 (5th Cir. 2019) ............................................................................................ 10
*ICONICS, Inc. v. Massaro*,
  192 F.Supp.3d 254 (2016) ................................................................................................ 11
*In re Burzynski*,
  989 F.2d 733 (5th Cir. 1993) ............................................................................................. 4
*In re Commonwealth/Tesoro Petroleum Corp. Securities Litigation*,
  467 F. Supp. 227 (W.D. Tex. 1979) ................................................................................. 6
*In re Urcarco Securities Litigation*,
  148 F.R.D. 561 (N.D. Tex. 1993) ..................................................................................... 6

*Jones v. Bock*,
  ——— U.S. ———, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) ..................................................4

*Mitchell Energy Corp. v. Martin*,
  616 F. Supp. 924 (S.D. Tex. 1985) ........................................................................................6

*Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*,
  879 F.2d 10 (2d Cir. 1989) ............................................................................................. 7, 8

*R.A.G.S. Couture, Inc. v. Hyatt*,
  774 F.2d 1350 (5th Cir. 1985) ................................................................................................5

*Sedima v. Imrex Co., Inc.*,
  473 U.S. 479 (1985) ............................................................................................................ 10

*Smith v. Cooper/T. Smith Corp.*,
  846 F.2d 325 (5th Cir. 1988) ................................................................................................5

*State Farm Mutual Automobile Insurance Co. v. Complete Pain Solutions LLC*,
  4:20-cv-02606 (S.D. Tex.) (filed on 07/23/2020) ..................................................................2

*Super Future Equities, Inc. v. Wells Fargo Bank Minnesota NA*,
  2007 WL 9717366 (N.D. Tex. 2007) (Boyle, J.) ..................................................................7

*United States v. Delgado*,
  401 F.3d 290 (5th Cir. 2005) ................................................................................................4

*United States v. Elliott*,
  571 F.2d 880 (5th Cir. 1978) ................................................................................................8

*United States v. Indelicato*,
  865 F.2d 1370 (2d Cir. 1989) .......................................................................................... 3, 8

*United States v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) ................................................................................................6

*Whelan v. Winchester Prod. Co.*,
  319 F.3d 225 (5th Cir. 2003) ................................................................................................4

*Whitlock v. Lowe (In re DeBerry)*,
  945 F.3d 943 (5th Cir. 2019) ............................................................................................. 10

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) ................................................................................................6

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*,
  90 F.3d 118, 123 (5th Cir. 1996) ..........................................................................................4

## **Statutes**

18 U.S.C. § 1961 ........................................................................................................................ 10

"Matt, shut the fuc# up."

> ~ **Tony Ludlow**, improperly interjecting and instructing his partner, Matthew Denegre, during Denegre's deposition; Ludlow is a licensed Texas attorney, officer of the court, and CPA; former Hallett & Perrin attorney; President of Baymark Partners, LP; Baymark Partners; Baymark ACET Holdco, LLC; Baymark ACET Direct Invest, LLC; and "the Baymark Director" of Windspeed Trading, LLC.

The Court should deny Ludlow and Hook's Motion to Dismiss.[1] They incorrectly maintain that there is insufficient "factual content" to permit any inference that they are liable for the alleged misconduct. (Mot., Doc. No. 107, p. 2). Although they argue that "Plaintiff offers only speculation and conclusory allegations," (*Id.* at p. 1), the SAC set forth an extraordinarily high level of thoroughness and support.

I. <u>Argument.</u>

    A. **Other Rico Cases.**

Ludlow and Hook go to great efforts to distinguish their other civil RICO suits. But they miss a fundamental point: Although the schemes were in fact similar (and one was *very* similar), similarity is not necessary. It is the mere fact and pleading of their involvement in multiple criminal schemes that provides a basis to reasonably infer continuity. Indeed, the defendants ignore the Supreme Court's admonition that "proof that a RICO defendant has been involved in multiple criminal schemes would certainly be highly relevant to the inquiry into the continuity of the defendant's racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).

---

[1] Plaintiffs hereby adopt and incorporate their separate responses to the motions to dismiss filed by Defendants SG Credit Partners, Inc. and Marc Cole, Super G Capital LLC and Steven Bellah, Windspeed Trading, LLC and William Szeto, the Windspeed Employees, Hallett & Perrin, P.C. and Julie A. Smith, Baymark ACET Holdco, LLC, and the Baymark Defendants, as well as the arguments incorporated therein.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DAVID HOOK AND TONY LUDLOW'S**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**         **Page 1**

In reality, however, the *Greb* case is very similar. For example, Baymark Partners, Hook, and Ludlow were defendants in that federal RICO lawsuit. *See Greb et al. v. Singleton et al.*, No. 3:18-cv-01439-M (N.D. Tex.), Dkt. No. 1. In that case, they engaged in a strikingly similar scheme to that at issue here: There, a creditor, CNB, "entered into an agreement with Baymark, through Tony Ludlow and David Hook, to advance Baymark the funds to purchase J&G [the "ACET Global" of that saga] in exchange for Baymark, Hook and Ludlow giving [the lender] a [hidden] share of the profits on the resale of J&G[] [i]n exchange for offering the purchase funds to Baymark. . . . It accomplished this by acquiring warrants, issued at the direction of Baymark to CNB, at the closing of the purchase of J&G by Baymark." *Id.* Complaint, ¶¶ 27, 28. In that case, the lender (much like Super G, here) who partnered with Baymark (through undisclosed warrants, much like Super G here) "sought to foreclose [just like Super G did here] on the" property at issue "by mailing foreclosure notices to [the Plaintiff]". *Greb v. Singleton*, No. 3:18-CV-01439-M, 2019 WL 13210371, at *1 (N.D. Tex. Sept. 30, 2019). In *Greg*, the "Plaintiffs sued . . . claiming that the foreclosure action was illegal" and that the defendants' "goal was to acquire property worth millions more than they could get by simply collecting on the loans." *Id.* Those events occurred during 2014 and 2015.

In another RICO case, an entity that was owned by Baymark Partners (through the same "Holdco" structure used in the D&T case) and that was managed by a Board of Managers comprised of just Ludlow and Hook, was sued by State Farm Mutual Insurance Company of Texas in a civil RICO conspiracy for their participation and benefit in a multi-million-dollar healthcare fraud scheme carried out by the entity that they controlled. *State Farm Mutual Automobile Insurance Co. v. Complete Pain Solutions LLC*, 4:20-cv-02606 (S.D. Tex.) (filed on 07/23/2020).[2] There, they facilitated a multi-million-dollar insurance fraud through events that occurred from 2015 to 2020. Unlike their scheme

---

[2] The entity is listed as a Baymark Partners' portfolio company on Baymark's website: https://baymarkpartners.com/portfolio/.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DAVID HOOK AND TONY LUDLOW'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**        **Page 2**

in *Greb*, the scheme they employed in *State Farm* was different from the scheme at issue in this case. But, it does demonstrate that they have "been involved in multiple criminal schemes," a fact that the Supreme Court has stated "would certainly be highly relevant to the inquiry into the continuity of the defendant's racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).

### B.  The SAC Properly Alleges a Pattern and Continuity.

Ludlow and Hook maintain that the "SAC so inadequately pleads the purported 'predicate acts,' it is difficult to analyze the 'relationship' component of the RICO 'pattern.'" (Mot., Doc. No. 107, p. 10). This, of course, is nonsense. The complaint is thorough, detailed, and well-supported. The pleading thoroughly demonstrates and explains the relationship between the predicate acts.

In addition, Ludlow and Hook maintain that because they looted ACET, "there is nothing left for the 'scheme' to do, and there can be no continuous 'pattern' of racketeering activity related to any such 'scheme.'" (*Id.* p. 12). They achieved their objective quickly, they claim, through a single scheme. They rely upon district court cases outside of this circuit, inviting the Court to impose extra-textual requirements into the civil RICO statute's requirements. They are wrong factually and legally.

#### 1.  It is Improper to Look to Authority Outside of this Circuit When Case Law within this Circuit—and from this Court—is on Point.

To begin with, it is improper to look to "persuasive" authority outside of this circuit when case law within this circuit—and from this court itself—is on point. The Fifth Circuit has previously reminded courts and litigants that "Two isolated acts of racketeering have been held sufficient to constitute a pattern under this Circuit's unique precedent." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988). This Court, itself, has previously held that "Congress did not mean 'to exclude from the reach of RICO multiple acts of racketeering simply because they achieve their objective quickly or because they further but a single scheme.'" *Cypress/Spanish Ft. I, L.P. v. Professional*

*Service Industries, Inc.*, 814 F.Supp.2d 698, 713 (N.D. Tex. 2011) (J. Boyle) (quoting *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989)). It is unclear why a different standard should apply here.

The Fifth Circuit has expressly cautioned against "turning the . . . continuity prong into a stringent pleading requirement," as the defendants ask the court to do here. *Abraham v. Singh*, 480 F.3d 351, 355–56 (5th Cir. 2007). The Fifth Circuit has provided that:

> In light of the liberal pleading standard with which the Plaintiffs' allegations must be viewed, *see Jones v. Bock,* —— U.S. ——, 127 S.Ct. 910, 919, 166 L.Ed.2d 798 (2007), the district court erred in turning the Supreme Court's explanation of the continuity prong into a stringent pleading requirement. *See Whelan v. Winchester Prod. Co.,* 319 F.3d 225, 231 (5th Cir.2003); *see also H.J. Inc.,* 492 U.S. at 241, 109 S.Ct. at 2902 ("[Showing continuity] may be done in a variety of ways, thus making it difficult to formulate in the abstract any general test for continuity. We can, however, begin to delineate the requirement."). For pleading purposes, we must determine whether a pattern of racketeering has been alleged that is sufficiently similar to what the Supreme Court contemplated in its *H.J., Inc.* discussion and what this Court has held to constitute a pattern of racketeering activity. At this early stage, a plaintiff's burden is not tied to the precise language that the Supreme Court used but to the Court's general explanation of the statute. Thus, the Court itself provided examples of how the continuity element may be satisfied and cautioned that the analysis "depends on the specific facts of each case ... [and] cannot be fixed in advance with such clarity that it will always be apparent." *Id.* at 242–43, 109 S.Ct. at 2902.
>
> Based on these standards, Plaintiffs have sufficiently pled "a continuity of racketeering activity, or its threat." *Id.* at 241, 109 S.Ct. at 2902. The Plaintiffs did not allege predicate acts "extending over a few weeks or months and threatening no future criminal conduct." *Id.* at 242, 109 S.Ct. at 2902. Rather, they alleged that the Defendants engaged in at least a two-year scheme involving repeated international travel to convince up to 200 or more Indian citizens to borrow thousands of dollars to travel to the United States only to find upon their arrival that things were not as they had been promised. *See, e.g., United States v. Delgado,* 401 F.3d 290, 298 (5th Cir.2005); *Abell v. Potomac Ins. Co.,* 946 F.2d 1160, 1168 (5th Cir.1991). Moreover, the allegations include not just Plaintiffs' recruitment in India but also their treatment in the United States. Unlike our precedents identifying a single illegal transaction, there are multiple victims, and there is no reason to suppose that this systematic victimization allegedly begun in November 2000 would not have continued indefinitely had the Plaintiffs not filed this lawsuit. *Cf. Word of Faith,* 90 F.3d at 123; *In re Burzynski,* 989 F.2d 733, 743 (5th Cir.1993); *Calcasieu Marine Nat'l Bank v. Grant,* 943 F.2d 1453, 1464 (5th Cir.1991); *Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183, 193 (5th Cir.1990); *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241, 244 (5th Cir.1988).

> After a careful review of the complaint, we are confident that the allegations satisfy the liberal pleading standard and allege continuity of racketeering activity. The district court erred in granting the Defendants' motion to dismiss on this basis.

*Abraham v. Singh*, 480 F.3d 351, 355–56 (5th Cir. 2007). The *Abraham* court's liberal approach to continuity pleading was not a one-off. It was consistent with decades of Fifth Circuit precedent, holding that pleading of the continuity prong is not judged by an onerous standard:

> In most cases, pleading the existence of a "pattern of racketeering activity" will supply this element of continuity to the RICO person. The continuous threat requirement may not be satisfied if no more is pled than that the person has engaged in a limited number of predicate racketeering acts. Two isolated acts of racketeering have been held sufficient to constitute a pattern under this Circuit's unique precedent.

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988). The Fifth Circuit's *Delta Truck* panel, in referring to the circuit's "unique" precedent, explained the court's case law holding that a mere two related acts related to a single business transaction constitutes a pattern of racketeering:

> In any circuit other than ours, it may have been proper to dismiss Delta's complaint on the ground that the numerous alleged acts of mail and wire fraud were parts of a single, otherwise lawful corporate merger not constituting a pattern of racketeering. But in *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1355 (5th Cir.1985), a panel of this court held that two acts of mail fraud that related to a single business transaction constituted a pattern of racketeering activity. The district court declined to follow *R.A.G.S.* because of its lack of analysis and because of the statement in *Armco Industrial Credit Corp. v. SLT Warehouse Co.,* 782 F.2d 475, 481 (5th Cir.1986), that the "'pattern of racketeering activity' language" in the RICO statute is something that must be interpreted in "the future." Several panels of this court have been critical of *R.A.G.S.*,[3] but each has been bound, as we are, by the rule of *R.A.G.S.* A request to reconsider *R.A.G.S.* "can only be made to the entire court sitting en banc, not to another panel." *Smith v. Cooper/T. Smith Corp.,* 846 F.2d 325, 329 (5th Cir.1988) [vacated by August 1, 1988 order for rehearing en banc]. The district court was not free to depart from *R.A.G.S.* We must assume a sufficient pattern of racketeering activity was alleged.

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988). And this, combined with *Delta Truck's* recognition that "[i]n most cases, pleading the existence of a 'pattern of racketeering activity' will supply this element of continuity to the RICO person," makes clear that the Plaintiffs have properly and sufficiently pled continuity.

As this Court has noted, RICO is applicable to a broad range of disputes that arise out of business frauds, such as the dispute in *Cypress/Spanish Ft. I, L.P. v. Professional Service Industries, Inc.*, 814 F.Supp.2d 698 (N.D. Tex 2011) (J. Boyle). In that case, the plaintiff adequately alleged mail and wire fraud predicate acts ("mailing and emailing of false reports that concealed the poor performance [of the defendants]") that carried out a simple scheme to violate a business contract and hide the defects and deficient construction work. By comparison, the fraudulent schemes at issue here were substantially more expansive, intricate, and sophisticated. And they did not involve "normal" acts.

As this very Court has recognized, "[t]he Fifth Circuit has held that the continuity requirement, though related to fraudulent predicate acts, need not meet heightened pleading requirements." *Bridgewater v. Double Diamond-Delaware, Inc.*, No. CIV.A.3:09-CV-1758-B, 2010 WL 1875617, at *11 (N.D. Tex. May 10, 2010) (J. Boyle) (citing *Abraham v. Singh*, 480 F.3d 351, 355-56 (5th Cir. 2007).[3]

---

[3] Even where Rule 9 pleading standards apply, they are more than adequately satisfied here, as this Court's own precedent makes clear:

> Though this burden requires specificity, a "complainant need not, however, state all facts pertinent to a case to satisfy the requirements of Rule 9(b)." *Mitchell Energy Corp. v. Martin*, 616 F. Supp. 924, 927 (S.D. Tex. 1985). "Rule 9(b) does not 'reflect a subscription to fact pleading' and requires only 'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after Twombly must make relief plausible, not merely conceivable, when taken as true." *United States v. Kanneganti*, 565 F.3d 180, 186 (5th Cir.2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir.1997)). In alleging a RICO scheme involving mail or wire fraud, it is not necessary to assert that each defendant personally made fraudulent mailings or wires; rather " Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud." *At the Airport v. ISATA*, 438 F.Supp.2d 55, 61 (E.D.N.Y.2006). Where a "plaintiff claims that mail and wire fraud were in *712 furtherance of a larger scheme to defraud ... Rule 9(b) 'only requires the plaintiff to delineate, with adequate particularity, the specific circumstances constituting the overall fraudulent scheme.'" *Id.*

*Cypress/Spanish Ft. I, L.P. v. Professional Service Industries, Inc.*, 814 F.Supp.2d 698, 711-12 (N.D. Tex. 2011) (J. Boyle).

> In considering whether a party's fraud claims satisfy the requirements of Rule 9(b), the "focal point" of a court's inquiry is whether the pleading satisfies the purposes of the Rule. Mitchell Energy, 616 F. Supp. at 927 (quoting *In re Commonwealth/Tesoro Petroleum Corp. Securities Litigation*, 467 F. Supp. 227, 250 (W.D. Tex. 1979)). " Rule 9(b) serves three purposes: [f]irst, the Rule ensures that defendants receive fair notice of the plaintiffs' claims; second, it protects the defendants' reputations from unfounded allegations of improper conduct, and third, the Rules helps prevent the institution of strike suits." *In re Urcarco Securities Litigation*, 148 F.R.D. 561, 564 (N.D. Tex. 1993); s*ee Mitchell Energy*, 616 F. Supp. at 927 (listing the same general purposes, though in place of "strike suits" providing that Rule 9(b) seeks to preclude plaintiffs from bringing suit as a "pretext for discovery" in order to discover whether any fraudulent acts have occurred).

By comparison to the facts and schemes set forth herein, the *Bridgewater* case involved a remarkably straightforward alleged fraud.

Indeed, this Court has found a pattern sufficiently pled (and has therefore rejected a motion to dismiss) where the RICO plaintiff failed to even identify, in its pleading or in its motion papers, the particular subsection of § 1962 that formed the bases of its RICO claim. *Super Future Equities, Inc. v. Wells Fargo Bank Minnesota NA*, 2007 WL 9717366 (N.D. Tex. 2007) (Boyle, J.). In that case, the pattern and scheme was summarized in no more than six sentences and involved little more than defendants conspiring to issue false reports to certificate holders misstating financial metrics in order to deter the certificate holders from questioning advances that were paid out, keeping a singular fraudulent scheme alive. *Id.* at 3-4.

On other occasions, this Court has made clear that the pleading requirements at issue here are satisfied. For example, in *Cypress/Spanish Ft. I, L.P. v. Professional Service Industries, Inc.*, 814 F.Supp.2d 698, 713 (N.D. Tex. 2011) (J. Boyle), this Court addressed a motion to dismiss a civil RICO complaint that involved only a single plaintiff and defendant in a relatively simple business dispute and rejected the defendant's motion to dismiss for the plaintiff's alleged failure to plead a "pattern" of activities:

> PSI contends that activities occurring over the course of a single construction project cannot raise to the level of a "pattern" of racketeering activity. (Def.'s Mot. Dismiss 22). Specifically, PSI argues that the Amended Complaint fails to allege how long, how often, or the number of times the predicate acts occurred so as to determine whether a "pattern" existed. PSI also once again points out that Plaintiff does not point to any particular documents it alleges were fraudulent. Once again, Plaintiff does not directly respond to these contentions.

*Cypress/Spanish Ft. I, L.P. v. Professional Service Industries, Inc.*, 814 F.Supp.2d 698, 713 (N.D. Tex. 2011) (J. Boyle). The Court, summarily rejecting the defendant's "pattern" argument, responded as such:

> The Court disagrees. In order to establish a pattern of racketeering activity, a plaintiff need not demonstrate multiple schemes. *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 16 (2d Cir. 1989). **"Congress did not mean 'to exclude from the reach of RICO multiple acts of racketeering simply because they achieve their**

---

*Id.* at 712.

> **objective quickly or because they further but a single scheme.'"** *Id.* **(quoting *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989)).** Instead, continuity can be established "in various ways," including the nature of an enterprise or "the sheer number of predicate acts over several years." *Id.*
>
> In the instant case, Plaintiff alleges that Newell's earthwork was deficient "[f]rom the start," yet PSI nevertheless represented to Plaintiff by means of its reports, summaries, and invoices that the work was acceptable. Plaintiff alleges that PSI willfully emailed or faxed these false reports, summaries, and invoices, bribed employees to remain silent on the known defects on the project, and intimidated other employees to prevent the revelation of their misdeeds. These related acts formed a pattern over the course of the Project, which sufficiently satisfies the RICO Statute.
>
> Accordingly, the Court finds Plaintiff has adequately plead the existence of a pattern of racketeering activity, and PSI's Motion to Dismiss is DENIED.

*Cypress/Spanish Ft. I, L.P. v. Professional Service Industries, Inc.*, 814 F.Supp.2d 698, 713 (N.D. Tex. 2011) (J. Boyle) (bold added). By comparison, the alleged singular scheme in *Cypress/Spanish* was relatively simple and straightforward—and all of the handful of types of acts that were alleged there are alleged within this Complaint.

As this very Court has also noted, "The proscriptions of the RICO statute have broad reach; the 'RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise.'" *Bridgewater v. Double Diamond-Delaware, Inc.*, No. CIV.A.3:09-CV-1758-B, 2010 WL 1875617, at *11 (N.D. Tex. May 10, 2010) (J. Boyle) (citing *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir.1978)). And as this Court has also noted, quoting the Supreme Court, for purposes of determining whether a pattern has been plead, predicate acts are related where the acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Commercial Metals Co. v. Chazanow*, 2009 WL 3853704 (N.D. Tex. 2009) (J. Boyle) (quoting *H.J. Inc. v. Nw. Bell Tell. Co.*, 492 U.S. 229, 239 (1989).

This Court has noted that the standard for adequately alleging a series of similar predicate acts is not high. *E.g., id.*, at *7 (J. Boyle) (a series of similar predicate acts of mail and wire fraud regularly

conducted through the MI enterprise that, as alleged, are not isolated or sporadic events. Thus, CMC has adequately pleaded that the predicate acts are related.") And because "[t]he Fifth Circuit has held that the continuity requirement, though related to fraudulent predicate acts, need not meet heightened pleading requirements," *id.*, continuity is easily satisfied here. *Id.* ("That CMC's Complaint does not firmly fix the dates of the alleged conduct is therefore not fatal. While there is no clear line delineating the point when a period of closed-ended conduct reaches a "substantial period of time," CMC's allegations—acts that continued for thirty two months—extend well beyond the periods of weeks or months that have been found to be inadequate.")

The Supreme Court has also recognized that continuity can be shown in any manner of ways, including where "the racketeering acts themselves include a specific threat of repetition" and where "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." As it has explained:

> A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit. Suppose a hoodlum were to sell "insurance" to a neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each month to collect the "premium" that would continue their "coverage." Though the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity. In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. Thus, the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. Such associations include, but extend well beyond, those traditionally grouped under the phrase "organized crime." The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "enterprise."

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242–43 (1989).

### 2. The Court Should Not Disregard the Clear Text of the Statute.

The defendants rely upon *Efron v. Embassy Suites (Puerto Irco), Inc.* 223 F.3d 12 (1st Cir. 2000),[4] arguing that the Court should read a number of extra-textual requirements into the civil RICO statute's requirements. This is improper.

The plain text of the statute, not excursions through legislative history or court-imposed policy, governs here. Racketeering is defined to include "*any* act which is indictable under." 18 U.S.C. § 1961. No limitation appears on the face of the statute. Nor do any of the limitations that the defendants urge in reliance upon *Efron* or any other authority.

In the Fifth Circuit, legislative history may only be used to interpret a statute where the plain text is unclear. *Heinze v. Tesco Corp.*, 971 F.3d 475, 484 (5th Cir. 2020); *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 294 (5th Cir. 2019) (quoting *Adkins v. Silverman*, 899 F.3d 395, 403 (5th Cir. 2018)); *see also, e.g.*, *Ali v. Barr*, 951 F.3d 275, 282 (5th Cir. 2020); *Whitlock v. Lowe (In re DeBerry)*, 945 F.3d 943, 949–50 (5th Cir. 2019).

More fundamentally, the Supreme Court has repeatedly instructed that plain text governs in the particular context of RICO and rejected judicial attempts to narrow the legislatively-enacted text. See, e.g., *H.J. Inc.*, 492 U.S. at 245 ("It is argued, nonetheless, that Congress' purpose in enacting RICO... was to combat organized crime; and that RICO's broad language should be read narrowly so that the Act's scope is coextensive with this purpose. We cannot accept this argument for a narrowing construction of the Act's expansive terms."). Indeed, the Court specifically identified the "breadth of the predicate offenses" as driving the divergence of RICO's actual use from its intended anti-mobster purpose—and then stated that if a "correction" was sought, it "must lie with Congress." *Sedima v.*

---

[4] In *Efron*, "the court pointed out that, of the viable predicate acts, all but two occurred during a 90–day period from June to September 1997." *Efron v. Embassy Suites (P.R., Inc.*, 223 F.3d 12, 16 n. 5 (1st Cir. 2000).

*Imrex Co., Inc.*, 473 U.S. 479, 499–500 (1985). A narrowing interpretation is not "a form of statutory amendment appropriately undertaken by the courts." *H.J. Inc.*, 492 U.S. at 245.

### C. The Alleged Facts are Sufficient.

The Plaintiffs adopt and incorporate the factual recitations set forth in each of their Responses to the defendants' motions to dismiss. A short summary here will suffice.

The SAC alleges a non-exhaustive list of **at least 100 RICO predicate acts** over **a four-year period** with harm to **more than 24 RICO victims**, such as Plaintiffs, the bankruptcy trustee, and Global's creditors. (Dkt. No. 91, at ¶¶ 317-18). These facts, taken as true, support a presumptive span of a substantial period of time for RICO continuity. *See also Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007) ("Unlike our precedents identifying a single transaction, there are multiple victims, and there is no reason to suppose that this systematic victimization . . . would not have continued indefinitely had the Plaintiffs not filed this lawsuit."); *ICONICS, Inc. v. Massaro*, 192 F.Supp.3d 254, 270 (2016) (citing *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12 (1st Cir. 2000)); *see id.* ("While the set of victims alleged by plaintiffs is not expansive, it includes not only [plaintiffs] but also, through the frauds committed in the bankruptcy process, the bankruptcy court and bankruptcy trustee.").

Moreover, the SAC sufficiently pleads open-ended continuity. Specifically, the SAC alleges that: (i) the Baymark Defendants exist for the purpose of illegally acquiring equity stakes in target companies and siphoning their assets and value at the expense of their creditors and stakeholders; (ii) defendants, in their deposition testimony, have expressly stated that they continue to regularly evaluate new businesses and acquisition opportunities to expand the RICO enterprise's operations; (iii) the Baymark Defendants have been named in a prior federal RICO lawsuit for the same or similar conduct as that alleged in this lawsuit; and (iv) the Baymark Defendants have made off with Global's trade secrets and continue to profit from the same even today. (Dkt. No. 91, at 3 & at ¶¶ 320-21).

Moreover, this case does not present a mere business dispute. It presents a series of elaborate, sophisticated, and coordinated acts of deception that played out over **a four-plus-year period** and featured **no less than 100 predicate RICO acts**. (SAC ¶ (i)).

Finally, the defendants attempt to downplay their continued threat by arguing that there was some finite end to their scheme because, it is argued, a purported "foreclosure sale" extinguished the D&T Note, wiping their hands clean and freeing them from the need to engage in any further acts of fraud to complete their scheme. No more threat; no possibility of repetition, they claim. The alleged "foreclosure sale" at issue is a red herring.

Their arguments miss the point: The fundamental point is that there *never was* a "foreclosure sale." It was a complete sham. There were only documents falsely memorializing something that never actually transpired. There was no finite event that ever marked an "end" to the schemes. Indeed, as Plaintiffs allege in the SAC, the defendants had siphoned off millions in assets months before they created after-the-fact documents to leave a fake trail. If the purported "sale" was *the* end goal, why had millions in assets already been siphoned off?

In fact, it was only a year and a half into their scheme that they considered multiple new strategies (of which the fake "foreclosure" sale documentation was one possible option) to deal with issues (such as D&T/Damti's counsel making inquiries) and that they determined, after discussing with their counsel and co-defendant, that the scheme was legally "riskier" than some alternatives, but "not to a point that it[ was] too risky" to engage in. (SAC ¶ 19) The fake sale, in other words, was not the "impetus" for anything; it was not the "end goal;" rather, it was a calculated means to an illegal end; merely a post-hoc attempt to cover up and further. But it was not by any means the last predicate act of fraud in their series of related, continuous fraudulent acts. Indeed, the SAC alleges (and demonstrates) that their frauds continued for years after.

## II. Prayer.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that the Court deny the Ludlow and Hook's Motion to Dismiss. Moreover, to the extent that the Court intends to otherwise grant any portion of their Motion, Plaintiffs hereby request leave to replead to remedy any purported deficiencies. Finally, the Plaintiffs request that the Court grant Plaintiffs all other relief, at law or in equity, to which they may show themselves justly entitled.

Dated: September 2, 2022

/s/ Jason B. Freeman
Jason B. Freeman
Texas Bar No. 24069736
Matthew L. Roberts
Texas Bar No. 24098330
Thomas L. Fahring III
Texas Bar No. 24074194
Gregory W. Mitchell
Texas Bar No. 00791285
Zachary J. Montgomery (forthcoming)
Texas Bar No. 24098130

**FREEMAN LAW, PLLC**
7011 Main Street
Frisco, Texas 75034
Telephone: 214.984.3410
Fax: 214.984.3409
Jason@freemanlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

On September 2, 2022, I filed the foregoing document with the clerk o court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or *pro se* parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

By: */s/ Jason B. Freeman*
  Jason B. Freeman