UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), Directly and Derivatively on Behalf of ACET GLOBAL, LLC and BAYMARK ACET HOLDCO, LLC<br><br>and<br><br>ACET Global, LLC,<br><br>**Plaintiffs,**<br><br>v.<br><br>BAYMARK PARTNERS, LP;<br>BAYMARK PARTNERS MANAGEMENT, LLC;<br>BAYMARK MANAGEMENT, LLC;<br>SUPER G CAPITAL, LLC;<br>SG CREDIT PARTNERS, INC.;<br>BAYMARK ACET HOLDCO, LLC;<br>BAYMARK ACET DIRECT INVEST, LLC;<br>BAYMARK PARTNERS;<br>et al.,<br><br>**Defendants.** | CIVIL CAUSE NO. 3:21-cv-01171-B |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO BAYMARK ACET HOLDCO'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT**

Jason B. Freeman
  TX Bar No. 24069736

**FREEMAN LAW, PLLC**
7011 Main Street
Frisco, Texas 75034
Telephone: 214.984.3410
Fax: 214.984.3409
Jason@freemanlaw.com

**ATTORNEY FOR PLAINTIFFS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... 2

TABLE OF AUTHORITIES .................................................................................................... 3

I. Baymark's Bankruptcy Argument is Frivolous and Warrants Sanctions. ......................... 1

II. Standing. ............................................................................................................................ 2

    A. Rule 23.1. ..................................................................................................................... 2
        1. The Verification. ..................................................................................................... 3
        2. Contrary to Baymark's Allegations, the Plaintiffs Have, In Fact, Alleged Member status. ... 4
        3. Constitutional "Standing" vs. Statutory "Standing". ............................................... 4
    B. Adequacy of Representation. ....................................................................................... 8

III. Prayer .............................................................................................................................. 12

CERTIFICATE OF SERVICE ................................................................................................ 14

## TABLE OF AUTHORITIES

### Cases

*Baker v. Carr*,
  369 U.S. 186 (1962) ............................................................................................................. 4, 5
*Bell v. Hood*,
  327 U.S. 678 (1946) ............................................................................................................. 4, 5
*Cetacean Cmty. v. Bush*,
  386 F.3d 1169 (9th Cir. 2004) ................................................................................................. 7
*Duke Power Co. v. Carolina Environmental Study Group*,
  438 U.S. 59 (1978) ............................................................................................................... 4, 5
*Evans v. Tubbe*,
  657 F.2d 661 (5th Cir. 1981) ............................................................................................... 4, 5
*Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.*,
  528 U.S. 167 (2000) ................................................................................................................. 6
*Hagans v. Lavine*,
  415 U.S. 528 (1974) ................................................................................................................. 5
*Hoggett v. Brown*,
  971 S.W.2d 472 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) ............................... 10
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .............................................................................................................. 6, 7
*Oneida Indian Nation v. County of Oneida*,
  414 U.S. 661 (1974) ................................................................................................................. 5
*Powell v. McCormack*,
  395 U.S. 486 (1969) ................................................................................................................. 5
*Sneed v. Webre*,
  465 S.W.3d 169 (Tex. 2015) .................................................................................................... 2
*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ............................................................................................................... 5, 7
*Surowitz v. Hilton Hotels Corp.*,
  383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) ................................................................ 3
*Tuscano v. Tuscano*,
  403 F. Supp. 2d 214 (E.D.N.Y. 2005) ..................................................................................... 3
*Williamson v. Tucker*,
  645 F.2d 404 (5th Cir. 1981) ............................................................................................... 5, 6

### Statutes

Tex. Bus. Orgs. Code § 101.463 ................................................................................................... 2
Tex. Bus. Orgs. Code § 101.463(a) ............................................................................................... 2
Tex. Bus. Orgs. Code § 101.463(b) ............................................................................................... 2
Tex. Bus. Orgs. Code § 101.463(c) ........................................................................................... 1, 3

**Other Authorities**

Act of May 28, 1997, 75th Leg., R.S, ch. 375, S.B. 555, § 30, sec. 5.14, 1997 Gen. Laws 1516, 1543
(expired Jan. 1, 2010) (current version at BUS. ORGS. § 21.563(c) (West 2012) ................................2

Baymark ACET Holdco, LLC ("Baymark" or "Holdco" for purposes of this Response) files its Motion to Dismiss, setting forth at least one truly frivolous argument.[1] The balance of its arguments, while not frivolous, are also unmeritorious.

While it styles its motion as a Rule 12(b)(1) motion centered on "standing," its failure to recognize the difference between Article III standing (a proper subject of a Rule 12(b)(1) motion) and non-constitutional, statutory standing (not a proper subject thereof) is ultimately fatal to its cause. Moreover, it flat-out misstates the record[2] in several glaring misrepresentations that are central to its claims.

Moreover, Plaintiffs request that the Court treat their claims that are filed under Texas Business Organizations Code section 101.463(c)(1) as "direct" claims. Plaintiffs specifically plead this treatment and it is proper and specifically authorized by the statute. Such treatment also avoids all of the procedural complexities that Baymark complains of and, at the same time, moots the bulk of its arguments.

## I. Baymark's Bankruptcy Argument is Frivolous and Warrants Sanctions.

Baymark makes a truncated argument, claiming with no authority that because ACET—at their doing—filed a bankruptcy petition 2.5 years ago, only the trustee of that long-since-dissolved bankruptcy estate can bring a case on behalf of ACET. But the bankruptcy was dismissed long ago. The court refused to grant any relief.

Baymark's argument is patently frivolous. It cites to not one case in support of the proposition. But Baymark's argument is even more troubling—and deserving of sanctions—for a separate reason: Completely oblivious to the otherwise obvious irony, the very same attorneys making

---

[1] Plaintiffs hereby adopt and incorporate their separate responses to the motions to dismiss filed by Defendants SG Credit Partners, Inc. and Marc Cole, Super G Capital LLC and Steven Bellah, Windspeed Trading, LLC and William Szeto, the Windspeed Employees, Hallett & Perrin, P.C. and Julie A. Smith, the Baymark Defendants, and David Hook and Tony Ludlow, as well as the arguments incorporated therein.
[2] Apparently, several of its co-conspirator defendants copied and pasted those misstatements without further inquiry.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO BAYMARK ACET HOLDCO'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**                                                  Page 1

this argument here (Edward Perrin and Hallett & Perrin) are, at the very same time, pursing legal claims[3] *on behalf of ACET* in state court. Thus, having put forward this very argument *while they—themselves—are at the very same time pursuing affirmative relief on a cause of action* on behalf of ACET renders this an imminently frivolous argument in violation of Rule 11 deserving of sanctions.

II. **Standing.**

A. **Rule 23.1.**

To begin with, Plaintiff has brought claims on behalf of ACET Global, LLC *directly*. In addition, out of an abundance of caution, plaintiff has styled an action derivatively on behalf of ACET. (SAC Caption and ¶ 37) ("Plaintiff ACET Global . . . appears here as a direct plaintiff and a derivative plaintiff.). (See also ¶ 5, fn. 8). Baymark has only raised an objection to ACET's *derivative* claim. But as set forth below, that claim is actually properly characterized as a "direct" claim under Texas law.

Plaintiff has asserted an action under section 101.463(b) of the Texas Business Organizations Code. As the Texas Supreme Court has cautioned, "[i]t is critical to recognize, and indeed outcome determinative in this case, that article 5.14's [the predecessor to section 101.463][4] standing, demand, and mandatory dismissal requirements **do not apply to shareholder derivative lawsuits brought on behalf of closely held corporations**. *Sneed v. Webre*, 465 S.W.3d 169, 181 (Tex. 2015).

Moreover, Section 101.463(b) provides a claim "by a member of a closely held limited liability company may be treated by a court as a direct action brought by the member for the member's own

---

[3] Although in a most ill-advised, illegitimate manner that will likely result in sanctions against them at the state level.

[4] *Cardwell v. Gurley*, No. 05-09-01068-CV, 12 (Tex. App. Jul. 18, 2018) *Cardwell v. Gurley*, No. 05-09-01068-CV, 12 (Tex. App. Jul. 18, 2018) ("A closely-held limited liability company is defined as a company with less than thirty-five shareholders and "no shares listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national securities association." *Id.* at § 101.463(a). Article 5.14(L)(1) of the now-superseded Texas Business Corporations Act (TBCA), and its successor in the TBOC, include the same provision for closely-held corporations. *See* Act of May 28, 1997, 75th Leg., R.S, ch. 375, S.B. 555, § 30, sec. 5.14, 1997 Gen. Laws 1516, 1543 (expired Jan. 1, 2010) (current version at BUS. ORGS. § 21.563(c) (West 2012)).")

benefit." TBOC § 101.463(c). All that is necessary is that "justice [so] require"—a standard that is imminently satisfied on the facts before the Court.

As such, under Texas law, the "derivative" claims at issue are actually "direct actions." And as set forth in the final paragraph of the SAC, "Plaintiff requests that, to the extent this case is a derivative proceeding, the Court treat this case as a direct action brought by the member for the member's own benefit pursuant to Tex. Bus. Org. Code § 101.463(c)." (SAC ¶ 476). Plaintiff notes that the claims at issue are brought under Texas law, and Texas law allows them to be treated as "direct" claims. To the extent that the Court so finds, Baymark's objections based on derivative-claim procedure all become moot and the additional complexities created by such a characterization go away.

### 1. The Verification.

To the extent that the Court does not find that the claims by ACET Global should be treated as a direct action, Plaintiffs next address the verification argument. To the extent Baymark raises a failure to comply with technical requirements, such as a verification, any such items can be easily addressed by repleading, if the Court believes that necessary. However, as courts across the country have recognized, "[t]he verification requirement of rule governing shareholder derivative actions is not intended to be a general impediment to shareholder derivative actions, but, rather, to those derivative lawsuits brought solely for the purpose of harassment or to force a quick settlement." *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 222 (E.D.N.Y. 2005). Courts have explained that:

> Although the complaint is not verified, the plaintiff's failure to do so is not fatal to the lawsuit. The verification requirement of Rule 23.1 is not intended to be a general impediment to shareholder derivative actions but, rather, to those derivative lawsuits brought solely for the purpose of harassment or to force a quick settlement. *See Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807 (1966). Where appropriate, courts allow plaintiffs to cure a verification defect by submitting an affidavit.

*Id.*

Plaintiff has supplemented its submission with a verification, curing any alleged defect.

### 2. Contrary to Baymark's Allegations, the Plaintiffs Have, In Fact, Alleged Member status.

With respect to "Holdco," Baymark makes a singular argument: It tells the Court that "Nowhere in the SAC does D&T even claim to be a member of Holdco." (Mot. to Dismiss, p. 5). On the contrary, Plaintiffs in fact alleged precisely that. The SAC, however, specifically alleges that D&T Partners has had "a 25% common membership interest in Baymark ACET Holdco, LLC" since July 20, 2017. (SAC ¶ 68).

Baymark then tells the Court that the SAC "does not allege that D&T was a member of either ACET Global." That too is wrong. The SAC alleged precisely that:

> On March 31, 2021, D&T Partners and Tomer Damti caused his 100%-owned entity, D&T Partners, LLC, to exercise its rights (pursuant to section 6(b)(vi) of the Security Agreement dated July 20, 2017) to effect the transfer of 59% of the Membership Interests of ACET Global, LLC into the name of D&T Partners, LLC. Damti owns 100% of the membership interests of D&T Partners, LLC and has sole management authority over D&T Partners, LLC. Pursuant to its rights under the relevant security agreement and company agreement, D&T Partners, LLC was appointed and is **the sole manager of ACET Global, LLC**. As a result, Plaintiff (through D&T Partners, LLC) has legal ownership of ACET Global, LLC.

(SAC ¶ 6, fn 10).

### 3. Constitutional "Standing" vs. Statutory "Standing".

Next, Baymark raises another misguided argument, asserting that Plaintiffs do not allege to have "standing." Baymark attempts to shoehorn a motion for summary judgment into the case in the guise of a Rule 12(b)(1) attack. Its arguments are not procedurally proper; they come up short substantively as well.

"Jurisdiction is not dependent upon whether the claim for relief is meritorious; the federal courts lack jurisdiction only if the claims are plainly frivolous or "patently without merit." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981). *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 70-72 (1978); *Baker v. Carr*, 369 U.S. 186, 199-200 (1962); *Bell v. Hood*, 327 U.S. 678, 682

**PLAINTIFFS' RESPONSE IN OPPOSITION TO BAYMARK ACET HOLDCO'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**                                                                 **Page 4**

(1946); *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981).  That is, it is not necessary or proper for the Court to be forced dive into the *merits* of Plaintiffs' claims,[5] as Baymark attempts; rather, the Court must simply ask whether the claims are "plainly frivolous or 'patently without merit.'"  Clearly they are not.  And jurisdiction thus exists.

> As the Fifth Circuit has held on multiple occasions:
>
> Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. The Supreme Court has made it clear that in that situation no purpose is served by indirectly arguing the merits in the context of federal jurisdiction. Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits.

*Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981).  *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981) (quoting and reaffirming) (citing 645 F.2d at 415 (footnote omitted), *citing Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 (1978); *Hagans v. Lavine*, 415 U.S. 528, 94 (1974); *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 (1974); *Powell v. McCormack*, 395 U.S. 486, 512-16 (1969); *Baker v. Carr*, 369 U.S. 186, 198-204 (1962); *Bell v. Hood*, 327 U.S. 678, 682 (1945).

Baymark also confuses the standing inquiry in the context of Rule 12(b)(1).  Namely, it confuses and conflates "constitutional" standing with "statutory" standing.  Only the former is the proper subject of a Rule 12(b)(1) motion, as it is the only standing inquiry that goes to Article III standing—and, thus, jurisdiction.  *Statutory* standing, on the other hand, does not go to the Court's *jurisdiction*.  E.g., *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998) (distinguishing between a statutory standing and constitution standing; stating "The latter question is an issue of *statutory* standing. It has nothing to do with whether there is case or controversy under Article III.")

---

[5] Should the Court feel that the merits should be briefed, Plaintiffs request leave to file a brief addressing the merits, as Baymark's substantive arguments are highly misleading and incorrect.  But Plaintiff maintains that the merits are not a proper focus at this stage of the litigation.

"Standing" can be raised here as a Rule 12(b)(1) motion only to the extent that it bears on the Court's jurisdiction. As a court of limited jurisdiction, federal district courts obviously cannot exceed Article III power. But *that* is a constitutional-standing inquiry. The elaborate, byzantine tour on which Baymark invites the Court—in a confusing effort to explore the nooks and crannies of the operative transactional documents—is not appropriate, at this stage of the litigation at least. That is particularly so where Baymark relies on arguments about the subjective intention behind language and seeks to move outside of the four corners of the documents and to raise arguments that go directly to the merits.[6]

To satisfy Article III, a plaintiff "must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000). If a plaintiff lacks Article III standing, Congress may not confer standing on that plaintiff by statute. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 576–77 (1992).

Again, "standing," as federal courts have recognized, comes in two different types. While as a general matter, "standing" refers to a party's right to make a legal claim or seek judicial enforcement of a duty or right, standing involves two distinct inquiries.

***First***, an Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the 'case or controversy' requirement of Article III. This is known as "Article III standing."

---

[6] Rule 12(b) provides that a motion to dismiss for failure to state a claim will be automatically converted into a motion for summary judgment (Rule 56) if the court considers matters outside the pleadings. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). A motion for summary judgment is not appropriate at this stage. And the court, as it knows, "must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981). To the extent that the Court would take up Baymark's arguments at this stage of the litigation, Plaintiff expressly requests discovery to address the assertions made by Baymark that are outside of the pleadings.

If a plaintiff lacks Article III standing, Congress may not confer standing on that plaintiff by statute. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 576–77 (1992). A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 101 (1998). This is a proper inquiry for a Rule 12(b)(1) motion. But "it is firmly established in [the Supreme Court's cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Thus, "[d]ismissal for lack of subject-matter jurisdiction," as Baymark seeks, "because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Id.*

***Second***, if a plaintiff has suffered sufficient injury to satisfy Article III, the court must ask whether a statute has conferred 'standing' on that plaintiff. This is known as "statutory standing" or "non-constitutional" standing. Non-constitutional standing exists when, if the Plaintiffs facts are proven, they have a right to recover under the cause of action plead. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004). *See also Steel Co.,* 523 U.S. at 97 (statutory standing is not a jurisdictional question of whether there is case or controversy under Article III). It is thus not the proper subject of a Rule 12(b)(1) motion, as Baymark files here. And indeed, the Supreme Court has eschewed "attempt[]s to convert the merits issue[s] in [a] case into a jurisdictional one." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93 (1998).

Thus, Baymark cannot, by nominally dressing its arguments up in the guise of Rule 12(b)(1), superimpose a higher standard and infuse an evidentiary battle at this stage that goes beyond the standards of Rule 12(b)(1). Indeed, the inquiry does not even fall under Rule 12(b)(6) because it raises a substantive question of whether the Plaintiffs can ultimately prove their case and prevail under the

state law that they have brought their claims under and Baymark raises assertions in support of its arguments that are outside of the pleadings (which can only be done in a 12(b)(1) context).

Thus, Baymark's motion fails. If, as it claims, its motion is a Rule 12(b)(1) motion, it is improper. If, on the other hand, it is a Rule 12(b)(6) motion, it is also improper and fails because it invokes evidentiary matters and allegations that are outside the complaint.[7]

### B. Adequacy of Representation.

Baymark asks the Court to dismiss because it argues that Plaintiff has ulterior motives and a "personal agenda." In layman's terms, Baymark tells the Court that there are only two choices here: (i) The guy who was defrauded out of $3.2 million and seeks justice, or (ii) the guys who conspired to carry out a sophisticated, greed-driven fraudulent scheme, lied to a bankruptcy court, and placed their "officer-of-the-court" status on the roulette wheel and instructed a deponent to "shut the f*&# up" rather than tell the truth about the "foreclosure" sale. They tell the Court that only the latter group can adequately protect ACET. The proposition is ridiculous. The history and their prior looting of ACET makes this an easy one.

Moreover, the "vindictiveness" (of which they complain) is warranted; it comes with the territory when you carry out a scheme of this nature and defraud an innocent party of millions of dollars.

---

[7] Damti previously caused his 100%-owned entity, D&T Partners, LLC, to exercise its rights (pursuant to section 6(b)(vi) of the Security Agreement dated July 20, 2017) to effect the transfer of 59% of the Membership Interests of ACET Global, LLC into the name of D&T Partners, LLC. Damti owns 100% of the membership interests of D&T Partners, LLC and has sole management authority over D&T Partners, LLC.

Further, pursuant to its rights under the relevant security agreement and company agreement, D&T Partners, LLC was appointed and is the sole manager of ACET Global, LLC. As a result, D&T Partners, LLC has legal ownership of ACET Global, LLC.

Moreover, pursuant to the Company Agreement of ACET Global, LLC, D&T Partners, LLC is and has been authorized to exercise all voting rights with respect to ACET Global, LLC.

Should the court wish to receive in-depth briefing on these issues—which, again, go to the merits—Plaintiff requests leave to provide such briefing in full.

Baymark tells the Court that "D&T and its sole owner Tomer Damti are currently involved in other litigation *against* ACET Global." (Mot. to Dismiss p. 11). D&T originally filed a suit against a number of the Baymark parties, including ACET Global. It recently (in 2021, the year *this* lawsuit was filed) came to light that the actual facts demonstrated that the Baymark parties were the party at fault. But yes, ACET Global was the party with the contractual obligation to D&T. In the end, though, ACET Global is and was just a shell.

Then there is the fact that D&T exercised its security rights and took ownership and control of ACET Global. From that point, neither D&T nor Tomer Damti have had any motivation to pursue ACET Global. That is why Tomer Damti then non-suited a case that had been pending against ACET Global for several years (prolonged because of the stay during the fraudulent bankruptcy). Unbelievably, even after being informed that D&T had taken over ACET through the exercise of its security rights and that Hallett & Perrin had been terminated from representing ACET, Hallett & Perrin nonetheless filed a flurry of frivolous motions with that court (after Tomer Damti had dismissed all claims against ACET, because he had taken control of it and it had clearly become defunct, as evidenced by, among other things, the Baymark Defendants' representation to the bankruptcy court) seeking to obtain a finding of "prevailing party" status because Damti had non-suited his claims. (They are currently pursuing that, rather than letting the case go or recognizing their termination as counsel. That very fact—that they have expended such resources to defend and pursue claims on behalf of ACET, whom they claim is defunct, indicates that there are some very serious irregularities behind their act).

Finally, Baymark's counsel uses its motion—buttressed by its continued disregard for conflicts of interest—to make self-serving arguments for *their* benefit that are also extremely misleading. Its counsel, Hallett & Perrin, points to the "ridiculous speculation" about Ed Perrin's motives for making

false representations to undersigned counsel, representing that "Super G is wholly independent from any of the Defendants named in Plaintiff's lawsuit."

Perrin's representation was false and misleading on multiple levels. At best, it was intended to be highly misleading. ABA Rule 4.1 ("Misrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements."). Under Texas law, a duty to disclose arises in numerous circumstances: (1) when there is a special or fiduciary relationship; (2) when one party voluntarily discloses partial information, but fails to disclose the whole truth; (3) when one party makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression. *Hoggett v. Brown,* 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). Perrin violated those duties.

Perrin made the statement *month's* after the state court petition was filed. Despite the fact that he and his firm, Hallett & Perrin, drafted the company agreement for Windspeed (making Baymark **and Super G** board members) and, more importantly, drafted the warrant purchase agreement giving Baymark Partners and Super G economic ownership of Windspeed (all in 2018). Prior to the misrepresentation, undersigned counsel inquired to Mr. Perrin about whether Super G Capital had any relationship at all with Windspeed, ACET Global, Hook, Ludlow, or any of the Baymark Parties and whether they were fully independent. Bear in mind that at that time, zero documents had been produced; there was none of the mountain of evidence against Baymark that was only later discovered by counsel after persistent efforts and patiently waiting for the conclusion of a fraudulent bankruptcy.

In phone conversations, Perrin expressly confirmed that there was "no relationship" whatsoever between Super G Capital and indicated that he had personal knowledge of this. On September 26, 2019, Perrin authored an email, seeking to quell counsel's concerns about Super G Capital and the suspicious actions at issue. Perrin stated:

> I am also attaching for your reference publicly available documents related to the management of Super G. Further information about Super G can be found on Super G's website: https://www.supergcapital.com/about/ **I trust you will agree that this documentation/information confirms what we discussed last week, namely that Super G is wholly independent from any of the Defendants named in Plaintiff's lawsuit**.

Exhibit 46 of Complaint (email from Edward Perrin on September 26, 2019 to Jason B. Freeman) (emphasis added).

But those representations were knowingly false. For instance, as of October 23, 2018, Ludlow was serving as one of three board members for Windspeed (literally named the "Baymark Director") and held rights to 40% of Windspeed. Super G was serving as one of three board members for Windspeed and held rights to 40% of Windspeed. Each of the documents establishing those relationships was drafted by Mr. Perrin and his law firm. Super G and Baymark were co-members and held co-board positions (controlling positions) with respect to Windspeed. They were not "wholly independent," unrelated entities. Super G was not independent of Windspeed. Super G was not independent of Baymark.

At the time of Mr. Perrin's representations, D&T Partners was involved in a pending state lawsuit against several parties. In its then-live Original Petition, D&T Partners had pleaded several causes of action expressly referring to and naming Windspeed as a Defendant (one of which *only* named Windspeed) and all of the others of which names the Baymark parties. Below is a screen shot of two such counts from D&T Partners Petition, which was the "Plaintiff's lawsuit" that Perrin referred to:

> 29. On information and belief, ACET Global caused the transfer of substantially all of its assets, including goodwill and intangible assets, to Windspeed Trading, LLC. This act, or series of acts, breached the Security Agreement and Secured Promissory Note.
>
> **Count III: Declaratory Judgment**
> **(Windspeed Trading, LLC)**
>
> 30. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-24 above as if set forth here in full.
>
> 31. Plaintiff seeks a declaratory Judgment that Windspeed Trading, LLC has assumed all obligations under the Note and Security Agreement. Section (4) of the Security Agreement provides that "[u]pon any Fundamental Transaction, the successor entity to such Fundamental Transaction [here, Winspeed Trading, LLC] shall succeed to, and be substituted for . . . and shall assume all of the obligations of the Maker under this Note with the same effect as if such successor Person had been named as the Maker herein . . . ."
>
> **Count VIII: Texas Uniform Fraudulent Transfer Act**
> **(The Baymark parties; Windspeed Trading, LLC)**
>
> 43. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-24 above as if set forth here in full.

Clearly, Perrin's representations were false. Whether they were fraudulent is obviously a matter that Plaintiffs will have to prove. But against this background and the contextual evidence, it is more than a fair inference to conclude that they were—and, at any rate, not "ridiculous speculation," as he maintains.

### III.   Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that the Court deny Baymark ACET Holdco's Motion to Dismiss. Moreover, to the extent that the Court intends to otherwise grant any portion of their Motion, Plaintiffs hereby request leave to replead to remedy any purported deficiencies. Finally, the Plaintiffs request that the Court grant Plaintiffs all other relief, at law or in equity, to which they may show themselves justly entitled.

Dated: September 2, 2022 /s/ Jason B. Freeman
Jason B. Freeman
Texas Bar No. 24069736
Matthew L. Roberts
Texas Bar No. 24098330
Thomas L. Fahring III
Texas Bar No. 24074194
Gregory W. Mitchell
Texas Bar No. 00791285
Zachary J. Montgomery (forthcoming)
Texas Bar No. 24098130

**FREEMAN LAW, PLLC**
7011 Main Street
Frisco, Texas 75034
Telephone: 214.984.3410
Fax: 214.984.3409
Jason@freemanlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

On September 2, 2022, I filed the foregoing document with the clerk o court for the U.S. District Court, Northern District of Texas.  I hereby certify that I have served the document on all counsel and/or *pro se* parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

By: */s/ Jason B. Freeman*
     Jason B. Freeman