UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), Directly and Derivatively on Behalf of ACET GLOBAL, LLC and BAYMARK ACET HOLDCO, LLC<br><br>and<br><br>ACET Global, LLC,<br><br>**Plaintiffs,**<br><br>v.<br><br>BAYMARK PARTNERS, LP;<br>BAYMARK PARTNERS MANAGEMENT, LLC;<br>BAYMARK MANAGEMENT, LLC;<br>SUPER G CAPITAL, LLC;<br>SG CREDIT PARTNERS, INC.;<br>BAYMARK ACET HOLDCO, LLC;<br>BAYMARK ACET DIRECT INVEST, LLC;<br>BAYMARK PARTNERS;<br>et al.,<br><br>**Defendants.** | § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL CAUSE NO. 3:21-cv-01171-B |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO HALLETT & PERRIN, P.C. AND JULIE A. SMITH'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

Jason B. Freeman
  TX Bar No. 24069736

**FREEMAN LAW, PLLC**
7011 Main Street
Frisco, Texas 75034
Telephone: 214.984.3410
Fax: 214.984.3409
Jason@freemanlaw.com

**ATTORNEY FOR PLAINTIFFS**

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ...................................................................................................................ii

**TABLE OF AUTHORITIES**..........................................................................................................iii

I.   The Attorney Defendants' Motion Should be Denied. ......................................................1

   A.   "Shotgun" Pleadings..................................................................................................1
   B.   18 U.S.C. § 1962(c). .................................................................................................2
   C.   18 U.S.C. § 1962(a). .................................................................................................8
   D.   18 U.S.C. § 1962(d). .................................................................................................8

II.  State Law Claims................................................................................................................ 9

   A.   Attorney Immunity. .................................................................................................10
   B.   Common Law Fraud. ..............................................................................................10
   C.   Breach of Fiduciary Duty/Aiding and Abetting Breach of Fiduciary Duty. ............11
   D.   Texas Uniform Fraudulent Transfer Act. ................................................................12
   E.   Civil Conspiracy. .....................................................................................................12

III. Prayer. ...............................................................................................................................13

**CERTIFICATE OF SERVICE** .....................................................................................................14

## **TABLE OF AUTHORITIES**

### **Cases**

*Beck v. Prupis*,
    529 U.S. 494 (2000) ............................................................................................................9
*Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*,
    595 S.W.3d 651 (Tex. 2020) ............................................................................................ 10
*Cadle Co. v. Flanagan*,
    01 Civ. 531, 2006 WL 860063 (D.Conn. Mar. 31, 2006) ..................................................7
*City of New York v. Bello*,
    579 Fed. Appx. 15 (2d Cir. 2014) .....................................................................................9
*Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*,
    873 F. Supp. 2d 288 (D.D.C. 2012) ..................................................................................7
*In re Motel 6 Sec. Litig.*,
    161 F. Supp. 2d 227 (S.D.N.Y. 2001) ...............................................................................9
*JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*,
    No. 06 CIV. 6095 (JGK), 2007 WL 1159637 (S.D.N.Y. Apr. 18, 2007) ..........................7
*Poole v. Hous. & T.C. Ry. Co.*,
    58 Tex. 134 (1882) .......................................................................................................... 10
*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ...................................................................................................... 6, 7
*Salinas v. United States*,
    522 U.S. 52 (1997)..............................................................................................................9
*Tigrett v. Pointer*,
    580 S.W.2d 375 (Tex. App.—Dallas 1978) .................................................................... 11
*Tribune Co. v. Purcigliotti*,
    869 F.Supp. 1076 (S.D.N.Y. 1994) ...................................................................................7
*Troice v. Greenberg Traurig, L.L.P.*,
    921 F.3d 501 (5th Cir. 2019) .......................................................................................... 10
*United States v. Posada-Rios*,
    158 F.3d 832 (5th Cir. 1998) ...................................................................................6, 7, 9

### **Statutes**

18 U.S.C. § 1961(4) ....................................................................................................................8
18 U.S.C. § 1962(a) ....................................................................................................................8
18 U.S.C. § 1962(c) ................................................................................................................ 2, 6
18 U.S.C. § 1962(d) ................................................................................................................ 8, 9
Tex. Bus. & Com. Code § 24.008 ........................................................................................... 12

~  [Julie A. Smith] "it's not uncommon to backdate something[.]"

   [Julie A. Smith] "it's certainly not uncommon.
   Q.  At Hallett and Perrin?
   A.  Anywhere.
   Q.  What other firms have you worked at?
   A.  Gibson Dunn & Crutcher."

> *Julie A. Smith, Partner Hallett & Perrin*, Author of the Notice of Foreclosure mailed to her client.

~  "Super G is *wholly independent* from any of the Defendants named in Plaintiff's lawsuit."

> *Edward Perrin, Partner Hallett & Perrin*, Author of the Company Agreement of Windspeed Trading, LLC, establishing the "Baymark Director" and the "Super G Director." (emphasis added)

## I.     The Attorney Defendants' Motion Should be Denied.

The Attorney Defendants feign an ability to "decipher" Plaintiffs' allegations, citing Plaintiffs' "unbelievably verbose 'shotgun' pleading."[1]  (Mot. to Dismiss, Doc. No. 97, p. 1).  They then proceed to coordinate with all of the other defendants, cross referencing to one another's cross references, and "adopting by incorporation" a series of Byzantine "incorporations" that feels something like dividing by zero.  Apparently, the Attorney Defendants have chosen to "see" Plaintiff's .410—and "raise" with a sawed-off, 4-gauge in response.

### A.  "Shotgun" Pleadings.

"Shotgun" pleadings, the Attorney Defendants say, "typically 'set forth an excessive number [of] facts,' with the result that 'each count is replete with **factual allegations that could not possibly**

---

[1] Plaintiffs have filed a SAC, which addresses all issues identified in the Court's May 9, 2022 Order.  (Doc. No. 89). Should the Court believe that a separate pleading issue exists, Plaintiffs request that the Court grant leave to file a subsequent amended complaint.

Plaintiffs hereby adopt and incorporate their separate responses to the motions to dismiss filed by Defendants SG Credit Partners, Inc. and Marc Cole, Super G Capital LLC and Steven Bellah, the Windspeed Employees, Windspeed Trading, LLC and William Szeto, Baymark ACET Holdco, LLC, the Baymark Defendants, and David Hook and Tony Ludlow, as well as the arguments incorporated therein.

**be material** to that specific count, and that any allegations that are material are buried beneath **innumerable pages of rambling irrelevancies**." (Mot. to Dismiss, Doc. No. 97, p. 6) (emphasis added). The "ridiculously verbose" SAC, they maintain, leaves them "try[ing] to fish a gold coin from a bucket of mud." (*Id.* pp. 7).

Despite their invective, the Attorney Defendants seem to have had little trouble identifying what claims are aimed against them. Nonetheless, they fail to identify a single "factual allegation" that "could not possibly be material." Indeed, they fail to point out a single factual allegation that is "overly repetitious," much less to explain why. They simply quote ivory tower platitudes that sound great but have absolutely no application here.

The allegations are not buried. They are not sandwiched betwixt "innumerable pages of rambling irrelevancies." Yes, there are more pages than a run-of-the-mill complaint. But that is because there are many bad facts and much evidence to demonstrate them with. The unstated reality is, if Plaintiffs had not plead in such a systematic, thorough, and convincing manner, the Attorney Defendants would be whining about the paucity of facts and claiming that this is just another improper effort to hijack the civil RICO statute on flimsy factual allegations. On the contrary, this case is exactly why Congress enacted RICO.

**B. 18 U.S.C. § 1962(c).**

The Attorney Defendants argue "Plaintiff's complete inability to allege any facts that would suggest that the Attorney Defendants come anywhere close to satisfying the 'operation-or-management" requirement for stating such a claim." (Mot. to Dismiss, p. 1). Instead, they argue, the SAC "describe[s] run-of-the mill legal services." (*Id.* at 1-2). "Plaintiff," they maintain, "has failed to plead any *facts* that would support any of these [RICO] claims against the Attorney Defendants." (Mot. to Dismiss, Doc. No. 97, p. 9)

The Attorney Defendants argue that the SAC "does no more" than allege that they "simply" performed legal work—"routine" legal work at that. (Mot. to Dismiss, Doc. No. 97, p. 10; p. 11 at fn. 44). While this kind of work may be "*routine*" for Hallett & Perrin, that admission would seem to hurt their cause, not help.[2]  Indeed, there seems to be a semantic disconnect here. Arguing here, as Julie Smith stated in her deposition, that "backdating" is a "standard practice" really, really misses the point. (SAC ¶ 249)

For most attorneys, the type of "legal work" described in the SAC—or *il*-"legal work, more properly described—is not routine. The SAC alleges that the Attorney Defendants discussed with their clients their concern that the after-the-fact foreclosure at issue was "riskier" than other options and would give rise to the risk of criminal and civil fraud charges, (SAC ¶ 19); but then played a critical, linchpin role in carrying out the fraudulent scheme. (*Id*.). Indeed, the SAC alleges that Hallett & Perrin and Julie A. Smith were fully complicit in the effort. (*Id*.)

The SAC alleges that they created Windspeed and coordinated the filing of a Certificate of Formation that hid the identity of the parties forming Windspeed. (SAC ¶¶ 8, 125-126). It alleges that Hallett & Perrin spearheaded the formation of Windspeed, drafting an intricate company agreement, warrants, and warrant purchase agreements designed to obfuscate Super G and Baymark Partners' interest in the entity. (SAC ¶ 127).

The SAC alleges (and proves) that they represented ACET Global; the Baymark Parties (all of them); *and* Windspeed. That is not normal.

The SAC alleges that Hallett & Perrin drafted the foreclosure letter that they directed to be sent <u>*to their other client*</u> (SAC 235); drafted intentionally backdated foreclosure documents designed to hide the nature of prior asset transfers and to ensure that ACET could not sue Windspeed, (SAC ¶

---

[2] Their admission that this type of work is "routine" also seems to be an admission that a continuing threat exists.

247)—all at a time when they owed fiduciary duties *to ACET* (SAC ¶ 24). The SAC alleges that they drafted foreclosure documents covering assets that they knew had already been transferred to Windspeed months before. (SAC ¶ 14). It alleges that they assisted with the transfer of all of ACET Global's assets to Windspeed, despite owing fiduciary duties to ACET. (SAC ¶ 455).

As evidenced by email, the SAC demonstrates that Hallett & Perrin discussed the defendants' fraudulent transfer liability risks with a third party, including Super G and its counsel. (SAC ¶ 122). They coordinated with Super G's counsel. In an arm's length transaction, they would not be aligned with the "creditor" who was putatively, at least, seeking to foreclose on their assets. Instead, Hallett & Perrin was coordinating with them, acknowledging the fraudulent transfer liability that the scheme created. (SAC ¶¶ 122, 123). They then carried that scheme out to transfer the assets to an entity that they helped ensure that "creditor" secretly owned and controlled along with Baymark.

The SAC demonstrates that Julie A. Smith sent an email stating "OMG, we could be close to signing this thing!" 21 days *after* the date she reflected as the signature date. (SAC ¶ 255). It alleges that the Attorney Defendants backdated key documents to hide the true nature of events. (SAC ¶¶ 242, 247, 248, 249, 381, 383).

The SAC alleges that the Attorney Defendants intentionally failed to preserve emails and electronic documents or to take any steps to do so when their co-conspirator client intentionally defaulted on a $3.2 million note. (SAC ¶ 308).

The SAC demonstrates that the Attorney Defendants lied about representing Windspeed (SAC ¶¶ 128, 256).

The SAC demonstrates that the Attorney Defendants assisted Ludlow, Denegre, and Baymark with filing a fraudulent bankruptcy petition to mask their fraud. (SAC ¶17-18).

The SAC demonstrates that the Attorney Defendants lied in deposition testimony in an "effort to hide their relationship and involvement in the fraudulent transactions." (SAC ¶ 20).

The SAC alleges that the Attorney Defendants admitted their motive under penalty of perjury in a document submitted to the federal government that informed the federal government that due to Hallett & Perrin's "economic uncertainty" it was necessary for Hallett & Perrin to borrow $1,575,993 just "to support the ongoing operations" of Hallett & Perrin because of its financial straits. (SAC ¶ 24). In part because of their financial needs, they (Hallett & Perrin) placed their personal interests ahead of ACET Global's interests. Julie A. Smith (the partner credited with originating the Baymark matters) and Hallett & Perrin derived hundreds of thousands of dollars in financial revenues from the Baymark parties—dollars that their former Hallett & Perrin partner, Tony Ludlow, was all too happy to siphon off to them. (See SAC ¶¶ 24, 315).

The SAC alleges that the Attorney Defendants represented all of the various parties in after-the-fact litigation—despite being an obvious fact witness and likely defendant—in order to maintain control over the evidence and information about the fraud and to avoid any scenario where another law firm would represent ACET Global, as any objective law firm would quickly conclude that ACET Global had a direct cause of action (indeed, several of them) against Hallett & Perrin for its actions. (SAC ¶ 25). It also alleges that the Attorney Defendants deliberately misrepresented the relationship between and among Super G, Baymark, and Windspeed as part of an effort to hide the fraudulent transactions at issue. (SAC ¶¶ 128-131).

Indeed, the SAC does quite a bit more than allege the Attorney Defendants "simply" performed "routine" legal work.

Oblivious to—or just disregarding—the obvious conflicts of interest, the Attorney Defendants purposefully throw their clients under the bus, essentially stating that the "backdating" wasn't their fault because it was done at the "instruction from their clients." (Mot. to Dismiss, Doc. No. 97, p. 12, fn 48). As an agent for their clients clearly authorized to speak for them, this is a judicial admission, as is every other representation that they make in their filings regarding the parties.

Although they do not appear to realize it, this is also an admission of their involvement—though, to be fair, it is one they could not avoid given Julie Smith's prior testimony admitting to the scheme to backdate under oath. But clearly, their personal interests are antagonistic to those of their client.

Moreover, the Attorney Defendants misread *Reves*. They argue that under *Reves* it is necessary to allege that they were "directing" the actions. They argue that Plaintiffs' SAC provides that they "were not 'directing anything'" because Julie A. Smith's deposition was an exhibit to the SAC and the SAC "adopted and incorporated" the deposition as part of the FAC. (Mot. to Dismiss, Doc. No. 97, p. 12). (Julie A. Smith, of course, provided plenty of self-serving testimony, denying fraudulent acts.) The argument is a frivolous one. And, moreover, as set forth immediately below, the we-didn't-"direct"-anything argument relies on a false premise in the first place.

Indeed, *Reves* doesn't stand for the "element of direction" proposition to begin with. As the Fifth Circuit has explained: "*Reves* only requires that a defendant 'take part in' the operation of the enterprise, not that he direct its affairs." *United States v. Posada-Rios*, 158 F.3d 832, 856 (5th Cir. 1998).

In *Reves*, the Supreme Court found that the petitioner, an outside accounting firm engaging in the valuation of a farming cooperative, was clearly not involved in the management of the enterprise or acting under direction of the cooperative's management, and the Court declined to "decide how far § 1962(c) extends down the ladder of operation." *Reves v. Ernst & Young*, 507 U.S. 170, 184 n. 9 (1993). Indeed, the Fifth Circuit has counseled against precisely the arguments put forward by the Attorney Defendants:

> In *Reves* the Court held that to be convicted of a substantive RICO offense under § 1962(c), "one must participate in the operation or management of the enterprise itself." *Reves,* 507 U.S. at 185, 113 S.Ct. at 1173. The Court concluded that in enacting § 1962(c) Congress intended "participate" to have the "common understanding of the word ... 'to take part in.'" *Id.* at 179, 113 S.Ct. at 1170. The Court specifically rejected the D.C. Circuit's suggestion that § 1962(c) requires significant control over or within an enterprise. *Id.* at 179 n. 4, 113 S.Ct. at 1170 n. 4. The Court held that "the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those

> with a formal position in the enterprise...." *Id.* at 179, 113 S.Ct. at 1170. The Court explained that "[a]n enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184, 113 S.Ct. at 1173.

*United States v. Posada-Rios*, 158 F.3d 832, 856 (5th Cir. 1998).

"Of course," as the Supreme Court explained in *Reves*, "the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184.

Indeed, a multitude of courts across the country have held that "*Reves* provides no blanket immunity for professionals regardless of their involvement in a criminal enterprise, and other cases suggest that, where professionals are alleged to have exceeded the mere rendering of legitimate professional services, the "operation or management" requirement will be pleaded adequately." *JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*, No. 06 CIV. 6095 (JGK), 2007 WL 1159637, at *8 (S.D.N.Y. Apr. 18, 2007); *Cadle Co. v. Flanagan,* 01 Civ. 531, 2006 WL 860063, at *9 (D.Conn. Mar. 31, 2006) (law firm's conduct "far exceeded the rendering of legal advice and constituted participation in fraudulent conduct in violation of RICO"); *Tribune Co. v. Purcigliotti,* 869 F.Supp. 1076, 1098 (S.D.N.Y. 1994) (participation requirement met where law firm helped devise and manage a fraudulent scheme), *aff'd sub nom. on other grounds, Tribune Co. v. Abiola,* 66 F.3d 12 (2d Cir.1995); *Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 326–27 (D.D.C. 2012) ("*Reves* provides no blanket immunity for professionals regardless of their involvement in a criminal enterprise ... where professionals are alleged to have exceeded the mere rendering of legitimate professional service, the 'operation or management' requirement will be pleaded adequately.")

### C. 18 U.S.C. § 1962(a).

Section 1962(a) makes unlawful, among other things, the indirect receipt of income derived from a pattern of racketeering combined with the use of that income or the proceeds of that income in the operation of *any* enterprise that is engaged in or affects interstate commerce. 18 U.S.C. § 1962(a). An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The entity/enterprise into which the funds flow need not be the same as the enterprise from which they came.

Here, Plaintiffs have alleged that Baymark was a RICO enterprise. (SAC ¶ 429). Plaintiffs have alleged that Hallett & Perrin is a separate enterprise. (SAC ¶ 432). Plaintiffs have also alleged an association-in-fact. (SAC ¶ 433).

Ed Perrin, in one of several recent unforced errors, produced a host of invoices from Hallett & Perrin to Baymark Partners, billing for the very subject matter at issue in this lawsuit. (SAC ¶ 20, fn. 10). The invoices reflect that Hallett & Perrin received substantial windfalls from their acts. (*Id.*). Although his testimony is not currently an exhibit, Perrin himself later testified regarding his firm's invoices and income from Baymark. As set out in the SAC, those receipts were used to fund the operations of Hallett & Perrin. (SAC ¶ 24). The SAC clearly set out a properly pled claim against the Attorney Defendants under section 1962(a).

### D. 18 U.S.C. § 1962(d).

The Attorney Defendants argue that Plaintiffs' "RICO conspiracy claim under section 1962(d) necessarily falls with the other two RICO claims." (Mot. to Dismiss, Doc. No. 97, p. 2). That is incorrect.

For starters, the "*Reves*' management and control test does not apply to a RICO conspiracy." *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998) (citing *Salinas v. United States,* 522 U.S. 52 (1997). It is inapplicable to a section 1962(d) cause of action. *Id.*

Liability under § 1962(d) is governed by the general principles of conspiracy law. *Beck v. Prupis,* 529 U.S. 494, 504 (2000). So long as the plaintiff alleges the elements necessary for a § 1962(d) claim, the conspiracy claim stands—whether or not companion claims under another subsection of § 1962 are dismissed. *Salinas v. United States*, 522 U.S. 52, 65 (1997). See also *In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 237 (S.D.N.Y. 2001) ("It is not [even] necessary that plaintiffs allege a substantive RICO violation in order to prove liability for conspiracy."). Indeed, a defendant may be liable for conspiracy even though he was incapable of committing the substantive offense. *Salinas v. United States*, 522 U.S. 52, 64 (1997); *City of New York v. Bello*, 579 Fed. Appx. 15, 17 (2d Cir. 2014) ("A party 'may be liable for [RICO conspiracy even though he was incapable of committing the substantive offense.'")

As set forth above, the SAC quite clearly evinces allegations of a section 1962(d) conspiracy to which Hallett & Perrin and Julie A. Smith were party.

## II. State Law Claims.

The Attorney Defendants assert that "because Plaintiff has wholly failed to plead any viable claims," the Court can "simply dismiss the SAC in its entirety." (Mot. to Dismiss, Doc. No. 97, p. 16). But rather than stop there, they address their contention that Plaintiffs have also failed to state "various" claims under Texas law. And yet again, Plaintiffs "adopt" the "other Defendants' briefs," which they inform the Court "also address[] in various detail" the plaintiffs' state law claims. (Mot. to Dismiss, Doc. No. 97, p. 17).

### A. Attorney Immunity.

With their heads firmly in the sand, the Attorney Defendants repeatedly claim that the SAC does not allege that they did anything but normal, run-of-the-mill lawyer activities. As set forth above and in the FAC, that is simply not the case.

The Attorney Defendants engaged in acts that were outside the scope of a legal representation of a client. For example, "immunity does not apply when an attorney participates in a fraudulent business scheme with her client or knowingly facilitates a fraudulent transfer to help her clients." *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 657 (Tex. 2020). *Poole v. Hous. & T.C. Ry. Co.*, 58 Tex. 134 (1882) (holding that attorney immunity did not protect actions taken "for the purpose and with the intention of consummating [ ] fraud upon [the] appellant") (cited with approval in *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 657 (Tex. 2020)).

"Certainly, there is a wide range of criminal conduct that is not within the "scope of client representation" and therefore "foreign to the duties of an attorney."" *Id.* at 658. *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 507 (5th Cir. 2019) ("We conclude that criminal conduct does not automatically negate immunity, but in the usual case it will be outside the scope of representation.").

Attorney immunity has no application here.

### B. Common Law Fraud.

The Attorney Defendants are liable for fraud as co-conspirators in a conspiracy to commit and further a fraudulent scheme. While the Attorney Defendants maintain that Plaintiffs assert only "repeated generic references to 'fraud,'" their hyperbolic feigning has worn thin. One can only cry "wolf" so many times before their cries are disregarded.

Plaintiffs alleged a civil conspiracy. (SAC ¶ 464-65). The facts alleged, as recounted herein and throughout the responses and SAC clearly assert and plead with specificity, a conspiracy to commit fraud to which the Defendant Attorneys were party.

### C. Breach of Fiduciary Duty/Aiding and Abetting Breach of Fiduciary Duty.

The Attorney Defendants assert, multiple times, that Plaintiffs' pleadings "make no sense." (Mot. to Dismiss, Doc. No. 97, p. 20). Oh, but they do.

They assert that the SAC "is entirely missing" any conceivable indication of how they could possibly have played a role in ACET Global's failure to payment under the D&T Note. (Mot. to Dismiss, Doc. No. 97, p. 21)First, their view is myopic. ACET Global was their client. They knowingly facilitated and carried out the looting of ACET's assets, fraudulently transferring them to Windspeed—conspiring with the "creditor," Super G, in the process, hiding Baymark's and Super G's ownership and control over Windspeed, and stripping ACET Global for the benefit of its other clients and to the detriment of both ACET Global and D&T Partners. Their violation of their duties to ACET Global is a textbook case of *res ipsa loquitur*—there has quite possibly never been a more plain, clear, and obvious breach of fiduciary duty.

While not quite as obvious, ACET also owed a fiduciary duty to D&T, *its* creditor. It owed that fiduciary duty because ACET Global was in the zone of insolvency—or had long since passed across it. Thus, ACET Global (and its controlling officers, managers, and members) had a fiduciary duty to protect the interests of creditors—here, the largest secured creditor: D&T Partners/ACET Venture Partners, LLC. *Tigrett v. Pointer*, 580 S.W.2d 375, 383 (Tex. App.—Dallas 1978), *writ refused NRE* (1979). By looting ACET Global to benefit another client, Hallett & Perrin aided and abetted the violation of a fiduciary duty and likewise conspired to do so.

D.  **Texas Uniform Fraudulent Transfer Act.**

The Attorney Defendants assert, with no case cite for authority, that "TUFTA only provides for recovery against the transferee of the assets or the person for whose benefit the transfer was made." (Mot. to Dismiss, Doc. No. 97, pp. 21-22). That is not correct.

Texas Business & Commerce Code § 24.008, which Hallett & Perrin fails to cite, provides that a violation of TUFTA gives rise to several remedies, including "any other relief the circumstances may require." Language like that would generally signal to an attorney that a cite to case law would be helpful, if not necessary to make such a bald assertion to the Court. Because they provide no other explanation or cite to authority, leaving it to the Court or Plaintiffs to piece their argument and authorities together, the Attorney Defendants have waived any other claims in this respect.

Regardless, however, Plaintiffs have specifically pleaded to pierce the veil of Windspeed, the nominal recipient of the fraudulently transferred property. (SAC ¶ 471). They have also plead agency liability, (SAC ¶ 467); and civil conspiracy. (SAC ¶ 465). Under these theories, the Attorney Defendants are liable for TUFTA damages.

E.  **Civil Conspiracy.**

The Attorney Defendants devote one half-hearted paragraph to argue for dismissal of civil conspiracy. In sum and substance, they state that "[f]or all the reasons set forth above, as well as in the other Defendants' briefs, Plaintiff's claim for civil conspiracy against the Attorney Defendants must be dismissed along with its other claims." (Mot. To Dismiss, Doc. No. 97, p. 22). The Attorney Defendants' vague references to incorporation of other unspecified arguments in other briefs (altogether totaling well in excess of the briefing page limits) are not effective and Plaintiffs object to them. Because Plaintiffs have not provided any meaningful analysis or explanation, they have waived their arguments in this respect.

### III. Prayer.

WHEREFORE, Plaintiffs request that the Court deny the Attorney Defendants Motion to Dismiss. Moreover, to the extent that the Court intends to otherwise grant any portion of their Motion, Plaintiffs hereby specifically request leave to replead to remedy any purported deficiencies.

Dated: September 2, 2022

/s/ Jason B. Freeman
Jason B. Freeman
Texas Bar No. 24069736
Matthew L. Roberts
Texas Bar No. 24098330
Thomas L. Fahring III
Texas Bar No. 24074194
Gregory W. Mitchell
Texas Bar No. 00791285
Zachary J. Montgomery (forthcoming)
Texas Bar No. 24098130

**FREEMAN LAW, PLLC**
7011 Main Street
Frisco, Texas 75034
Telephone: 214.984.3410
Fax: 214.984.3409
Jason@freemanlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

On September 2, 2022, I filed the foregoing document with the clerk o court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or *pro se* parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

                                              By: */s/ Jason B. Freeman*
                                                          Jason B. Freeman