UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest | § | |
| to ACET VENTURE PARTNERS, LLC), | § | |
| Directly and Derivatively on Behalf of | § | |
| ACET GLOBAL, LLC and | § | |
| BAYMARK ACET HOLDCO, LLC | § | |
| | § | |
| and | § | |
| | § | |
| ACET GLOBAL, LLC, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| BAYMARK PARTNERS, LP; | § | |
| BAYMARK PARTNERS MANAGEMENT, LLC; | § | |
| SUPER G CAPITAL, LLC; | § | CIVIL CAUSE NO. 3:21-CV-01171-B |
| SG CREDIT PARTNERS, INC.; | § | |
| BAYMARK ACET HOLDCO, LLC; | § | |
| BAYMARK ACET DIRECT INVEST, LLC; | § | |
| BAYMARK PARTNERS; | § | |
| DAVID HOOK; TONY LUDLOW; | § | |
| MATT DENEGRE; WILLIAM SZETO; | § | |
| MARC COLE; STEVEN BELLAH; | § | |
| ZHEXIAN "JANE" LIN; | § | |
| DANA MARIE TOMERLIN; | § | |
| PADASAMAI VATTANA; PAULA KETTER; | § | |
| VANESSA TORRES; | § | |
| WINDSPEED TRADING, LLC; | § | |
| HALLETT & PERRIN, P.C.; and | § | |
| JULIE A. SMITH, | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS HALLETT & PERRIN, P.C. AND JULIE A. SMITH'S
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
<u>PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      I.      Plaintiff's Improper "Shotgun" Pleading and Failure to Comply with Rule 8 . . . . 1

      II.     Plaintiff's Claims Under RICO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            A.     18 U.S.C § 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            B.     18 U.S.C. § 1962(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            C.     18 U.S.C. § 1962(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      III.    Plaintiff's State Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            A.     Attorney Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            B.     Common-Law Fraud (Count IV) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            C.     Breach of Fiduciary Duty/Aiding and Abetting Breach of Fiduciary Duty (Counts V, VI) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            D.     Texas Uniform Fraudulent Transfer Act (Count VII) . . . . . . . . . . . . . . . 9

            E.     Civil Conspiracy (Count VIII) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## INDEX OF AUTHORITIES

**Cases**

*The Cadle Co. v. Flanagan*, No. Civ. 301CV531AVC,
2006 WL 860063 (D. Conn. Mar. 31, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015). . . . . . . . . . . . . . . . . . . . . . . . . 7

*Clapper v. American Realty Investors, Inc.*, Civil Action No. 3:14-CV-2970-D,
2015 WL 3504856 (N.D. Tex. Jun. 3, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Six Flags Entm't Corp.*,
524 F. Supp. 3d 501 (N.D. Tex. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Feld Entm't, Inc. v. American Soc'y for the Prevention of Cruelty to Animals*,
873 F. Supp. 2d 288 (D.D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Green v. Innovis Data Solutions, Inc.*, Civil Action No. 3:20-CV-01614-L,
2021 WL 4244779 (N.D. Tex. Sept. 17, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65 (Tex. 2021) . . . . . . . . . . . . . . . . . . . . 7

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759 (5th Cir. 2019). . . . . . . . . . . . . . 7

*Jessen v. Duvall*, No. 14-16-00869-CV, 2018 WL 1004659
(Tex. App.—Houston [14th Dist.] Feb. 22, 2018, no pet.) (mem. op.) . . . . . . . . . . . . . . . . . . . . 9

*JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*,
No. 06 Civ. 6095(JGK), 2007 WL 1159637 (S.D.N.Y. Apr. 18, 2007). . . . . . . . . . . . . . . . . . . 4

*Morgen & Oswood Constr. Co., Inc. v. Nationwide Life Ins. Co.*,
Civil Action No. 13-666, 2022 WL 3042764 (E.D. Pa. Aug. 1, 2022) . . . . . . . . . . . . . . . . . . . . 3

*Murex, LLC v. GRC Fuels, Inc.*, Civil Action No. 3:15-CV-3789-B,
2016 WL 4207994 (N.D. Tex. Aug.10, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Parker v. Buckley Madole, P.C.*, Civil Action No. 4:17-CV-00307-ALM-CAN,
2018 WL 1704084 (E.D. Tex. Jan. 8, 2018),
*report and recommendation adopted*, 2018 WL 1625670 (E.D. Tex. Apr. 4, 2018). . . . . . . . . . 7

*Paul v. Aviva Life & Annuity Co.*, Civil Action No. 3:09-CV-1490-B,
2010 WL 5105925 (N.D. Tex. Dec. 14, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Ruiz de Balderas v. ETX Successor Athens*, Case No. 6:19-CV-58-JDK-KNM,
2020 WL 1479583 (E.D. Tex. Mar. 4, 2020),
*report and recommendation adopted*, 2020 WL 1478563 (E.D. Tex. Mar. 26, 2020). . . . . . . . . . 7

*Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076 (S.D.N.Y. 1994),
*aff'd sub nom. Tribune Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Posada-Rios*, 158 F.3d 832 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Youngkin v. Hines*, 546 S.W.3d 675 (Tex. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zucker v. Farish*, Civil Action No. 3:18-CV-01790-K,
2018 WL 6570867 (N.D. Tex. Dec. 12, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Defendants Hallett & Perrin, P.C. ("H&P") and Julie A. Smith ("Smith") (collectively the "Attorney Defendants") file this Reply in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint ("Attorney Defendants' Motion"):

## ARGUMENT AND AUTHORITIES

Plaintiff's Response in Opposition to Hallett & Perrin, P.C. and Julie A. Smith's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 120] (the "Response") fails to respond to several arguments raised by the Attorney Defendants.[1] "*Failure to respond to arguments made in a motion to dismiss results in waiver of opposition*."[2] Thus, Plaintiff has effectively conceded several of the Attorney Defendants' arguments.[3]

## I.   Plaintiff's Improper "Shotgun" Pleading and Failure to Comply with Rule 8

The Attorney Defendants' Motion seeks dismissal of the SAC because it is the quintessential example of improper "shotgun" pleading and it fails to comply with Rule 8's express requirements.[4] Plaintiff's Response again makes no attempt to explain *why* the SAC should not be considered improper "shotgun" pleading, nor does it offer *any* substantive analysis as to how the SAC could

---

[1] Plaintiff also admits in its Response that it only amended its pleading to attempt to address the "issues identified in the Court's May 9, 2022 Order." Response [Docket No. 120] at 1 n.1. Plaintiff then asks for yet another opportunity to amend "[s]hould the Court believe that a separate pleading issue exists." *Id.* When Plaintiff was drafting its Second Amended Complaint ("SAC"), it was fully aware of *all* of the defects the Attorney Defendants, and the other Defendants, had identified with its pleading. It should not be given yet another "bite at the apple" simply because it chose to ignore such defects just because the Court did not focus on them.

[2] *Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Six Flags Entm't Corp.*, 524 F. Supp. 3d 501, 525 (N.D. Tex. 2021) (emphasis added).

[3] *See, e.g.*, *Green v. Innovis Data Solutions, Inc.*, Civil Action No. 3:20-CV-01614-L, 2021 WL 4244779, at *5 n.4 (N.D. Tex. Sept. 17, 2021) ("Plaintiff has not addressed this assertion in his pleadings or response to Defendant's motion. Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (internal quotation marks omitted).

[4] Attorney Defendants' Motion [Docket No. 120] at 6-8.

**ATTORNEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SAC— Page 1**

possibly comply with Rule 8.[5] By failing to provide any substantive response to the Attorney

Defendants' arguments on these issues, Plaintiff has waived any response.[6]

## II.    Plaintiff's Claims Under RICO

### A.    18 U.S.C. § 1962(c)

As argued in the Attorney Defendants' Motion, Plaintiff must allege facts that would support

the conclusion that the Attorney Defendants satisfy the "element of direction" requirement

established by the Supreme Court's decision in *Reves*.[7] In its Response, Plaintiff simply argues that

there is no such "direction" requirement.[8] In doing so, Plaintiff continues to ignore the difference

between analyzing a "horizontal" relationship and analyzing a "vertical" one.[9] Plaintiff relies heavily

on *United States v. Posada-Rios* for the proposition that there is no "direction" requirement for

liability under section 1962(c).[10] However, *Posada-Rios* was a case involving "a multiple-level,

international drug enterprise" in which the issue was specifically a "'vertical' question of how far

---

[5]The closest Plaintiff's Response comes is to complain that the Attorney Defendants "fail to identify a single 'factual allegation' that 'could not possibly be material'" and "fail to point out a single factual allegation that is 'overly repetitious,' much less to explain why." Plaintiff's Response [Docket No. 120] at 2. First, Plaintiff cites no authority for the proposition that the Attorney Defendants are required to identify immaterial allegations in the SAC. The problem with "shotgun" pleading is that *all* claims incorporate *all* factual allegations, regardless of whether specific allegations actually relate to specific claims. *See, e.g.*, *Zucker v. Farish*, Civil Action No. 3:18-CV-01790-K, 2018 WL 6570867, at *3 (N.D. Tex. Dec. 12, 2018). In other words, because of its "shotgun" pleading style, the SAC leaves the Court and the Attorney Defendants to guess which of Plaintiff's "facts" are specifically meant to support which of Plaintiff's purported claims against the Attorney Defendants and how. Second, the Attorney Defendants *did* identify examples of repetitiousness in the SAC. *See* Attorney Defendants' Motion [Docket No. 97] at 8 n.30. Plaintiff cites no authority to suggest that the Attorney Defendants are required to identify every instance of repetitive content in the SAC.

[6]*See supra* notes 2-3.

[7]*See Reves v. Ernst & Young*, 507 U.S. 170 (1993) (discussed in Attorney Defendants' Motion [Docket No.97] at 9-14).

[8]Response [Docket No. 120] at 6.

[9]*See* Attorney Defendants' Motion [Docket No. 97] at 10 n.36 (noting the difference between "horizontal" and "vertical" relationships for purposes of RICO).

[10]Response [Docket No. 120] at 6-7.

RICO liability may extend 'down the organizational ladder.'"[11] In contrast, *Reves* addresses the "horizontal" connection between third-party service providers, like the Attorney Defendants, and the alleged RICO "enterprise."[12] Thus, *Reves* provides the relevant analysis under which to evaluate Plaintiff's RICO claims against the Attorney Defendants.

Notably, Plaintiff's Response does not cite, much less attempt to distinguish, *any* of the cases cited in the Attorney Defendants' Motion in which the courts found no RICO liability for attorneys providing services to a purported RICO "enterprise."[13] Instead, Plaintiff cites cases in which an attorney was expressly found to have "*exceeded* the mere rendering of legitimate professional services."[14] Upon examination of these cases, it is clear that they involved significantly different facts than Plaintiff has alleged against the Attorney Defendants in the SAC.

In *Feld Entertainment, Inc. v. American Society for the Prevention of Cruelty to Animals*, the court described the alleged RICO "enterprise" as "the plaintiffs' side of the ESA litigation."[15] Not surprisingly, the *litigation* "enterprise" was "*managed and controlled by the lawyers* in the case."[16] Thus, the conduct at issue in *Feld Entertainment* was more akin to the "vertical" relationship in *Posada-Rios* than the "horizontal" relationship in *Reves*. Plaintiff, however, alleges no such litigation

---

[11]*United States v. Posada-Rios*, 158 F.3d 832, 856 (5th Cir. 1998).

[12]*Id.* ("Moreover, **unlike *Reves***, which involved a defendant with a 'horizontal' connection to the enterprise, this case presents a 'vertical' question . . . .") (emphasis added).

[13]*See* Attorney Defendants' Motion [Docket No. 97] at 10-11 (citing cases). A recent case from the Eastern District of Pennsylvania can be added to the list of cases refusing to find third-party service providers liable under RICO section 1962(c). *See Morgen & Oswood Constr. Co., Inc. v. Nationwide Life Ins. Co.*, Civil Action No. 13-666, 2022 WL 3042764, at *7 (E.D. Pa. Aug. 1, 2022) ("Services or goods provided by a third-party to the enterprise do not satisfy this [direction] requirement, regardless of how indispensable or valuable the services may have been . . . .").

[14]Response [Docket No. 120] at 7-8 (emphasis added).

[15]873 F. Supp. 2d 288, 327 (D.D.C. 2012) (cited in Plaintiff's Response [Docket No. 120] at 7).

[16]*Id.* (emphasis added); *see also id.* (describing one of the attorney defendants as having "participated in *the core activities* that constituted the affairs of the enterprise, namely, litigating the ESA case and executing the payments to Rider") (emphasis added).

**ATTORNEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SAC— Page 3**

"enterprise," so *Feld Entertainment* offers no support for maintaining Plaintiff's section 1962(c) claim against the Attorney Defendants.

In *JSC Foreign Economic Association Technostroyexport v. Weiss*, the plaintiff sought to sue certified public accountants under RICO section 1962(c).[17] In ruling on the defendants' motion to dismiss, the court noted that the complaint alleged that the accountants "did more than prepare tax returns or provide outside accounting services."[18] In particular, the court emphasized that the complaint alleged that an accountant "was an '*architect*' of some of the money laundering activities" and that he "*devised and managed* the scheme to use a chain of single-use entities to carry out real estate transactions."[19] Further, the court pointed to the allegations that the accountant "received more than $2 million in profits from the real estate transactions (*exceeding a reasonable fee* for mere outside professional services)" and that the accountant "was *an equity investor* in at least one of the real estate projects."[20] The SAC contains no similar allegations against the Attorney Defendants, so *Weiss* is similarly unhelpful to Plaintiff's cause.

In *The Cadle Company v. Flanagan*, the court considered a post-trial motion for judgment as a matter of law filed by defendants, including attorney defendants, after a jury found them liable under RICO section 1962(c).[21] While the pleading standards at issue in a Rule 12(b)(6) motion to dismiss were not at issue in *Flanagan*, the court identified several facts adduced at trial that stand

---

[17]No. 06 Civ. 6095(JGK), 2007 WL 1159637, at *1 (S.D.N.Y. Apr. 18, 2007) (cited in Plaintiff's Response [Docket No. 120] at 7). The Attorney Defendants also distinguished the *Weiss* case in their Motion as an example of a case with significantly different facts than those alleged by Plaintiff in this case. *See* Attorney Defendants' Motion [Docket No. 97] at 12 n.47.

[18]*Weiss*, 2007 WL 1159637, at *9.

[19]*Id.* (emphasis added).

[20]*Id.* (emphasis added).

[21]No. Civ. 301CV531AVC, 2006 WL 860063, at *1 (D. Conn. Mar. 31, 2006) (cited in Plaintiff's Response [Docket No. 120] at 7).

**ATTORNEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SAC— Page 4**

in stark contrast to the conduct alleged in the SAC. First, the court described the attorneys' conduct as including "wrongfully advising a client that he was free to disregard a federal injunction and turnover order."[22] The court also identified the attorneys' "knowingly filing false documents with the court in an attempt to frustrate collection."[23] Then, the court noted that it was the attorney "who advised [Flanagan] to characterize the proceeds as wages exempt from execution knowing all the while that the proceeds were 1099 income subject to execution."[24] Thus, the attorney conduct at issue in *Flanagan* was more akin to the "architect" allegations in *Weiss*, and not like those in the SAC.

Finally, in *Tribune Company v. Purcigliotti*, the court noted the plaintiffs' allegations that the attorney defendants "*helped devise the fraudulent scheme*, played an integral role in managing the scheme and *directed others to act in furtherance of the scheme*."[25] Unlike the allegations in *Tribune Company*, Plaintiff makes no allegations in the SAC that the Attorney Defendants "devised" any part of the alleged "scheme" and further includes no allegations that they "directed others to act."

## B.    18 U.S.C. § 1962(a)

As noted in the Attorney Defendants' Motion, any claim under RICO section 1962(a) requires that a plaintiff plead that it has suffered injury specifically *from the use* of "racketeering income."[26] Plaintiff's Response does not address this argument at all.[27] Moreover, Plaintiff's Response does even attempt to explain where in the SAC there is any allegation about any

---

[22]*Id.* at *9.

[23]*Id.*

[24]*Id.* at *10.

[25]869 F. Supp. 1076, 1099 (S.D.N.Y. 1994) (emphasis added), *aff'd sub nom. Tribune Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995) (cited in Plaintiff's Response [Docket No. 120] at 7).

[26]Attorney Defendants' Motion [Docket No. 97] at 14.

[27]*See* Plaintiff's Response [Docket No. 129] at 8 (discussing the section 1962(a) claim).

**ATTORNEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SAC— Page 5**

"reinvestment" by H&P of any income into any "enterprise."[28] As such, Plaintiff has waived its response and conceded this basis for dismissal of its section 1962(a) RICO claim.[29]

### C.     18 U.S.C. § 1962(d)

Plaintiff's only response to the Attorney Defendants' section 1962(d) argument is to argue that general conspiracy law, not the "management and control" test, applies.[30] Plaintiff does not cite, much less attempt to distinguish, the cases cited in the Attorney Defendants' Motion that concluded providing legal services to an "enterprise" will not give rise to a RICO section 1962(d) claim.[31] Moreover, if there is no viable substantive RICO claim—such as when, as in this case, a plaintiff cannot show the required continuity—there can be no RICO "conspiracy" claim.[32]

### III.     Plaintiff's State Law Claims

### A.     Attorney Immunity

The Response spends less than a page addressing the Attorney Defendants' argument that Plaintiff's claims are barred by attorney immunity. Plaintiff simply makes the conclusory pronouncement that "[t]he Attorney Defendants engaged in acts that were outside the scope of a legal representation for a client."[33] What Plaintiff fails to offer is any *analysis* explaining what alleged acts by the Attorney Defendants were specifically "outside the scope" of "legal representation."

---

[28]*Id.* Plaintiff merely reiterates the wholly conclusory allegation from the SAC that "Hallett & Perrin is a separate enterprise." *Id.*

[29]*See supra* notes 2-3.

[30]Plaintiff's Response [Docket No. 120] at 9.

[31]*See* Attorney Defendants' Motion [Docket No. 97] at 15 (addressing Plaintiff's RICO conspiracy claim).

[32]*See, e.g.*, *Paul v Aviva Life & Annuity Co.*, Civil Action No. 3:09-CV-1490-B, 2010 WL 5105925, at *6 (N.D. Tex. Dec. 14, 2010) ("First, by its statutory terms, a RICO conspiracy claim is a conspiracy to violate one of the other subsections of § 1962. Because all other RICO claims have been dismissed, the RICO conspiracy claim must also be dismissed.").

[33]Response [Docket No. 120] at 10.

**ATTORNEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SAC— Page 6**

Under Texas law, attorney immunity is a "comprehensive" defense that protects attorneys from suits by non-clients.[34] As the Fifth Circuit has expressly recognized, the focus relevant to a claim for attorney immunity is "on the *kind*—not the nature—of the attorney's conduct."[35] Conduct can be "wrongful," but if it is of the type of conduct that involves an attorney representing a client, attorney immunity still applies.[36] For example, attorney immunity applies to an attorney's discussions with opposing counsel in litigation and to an attorney's drafting transaction documents for a client, but it would not apply if an attorney acted as the getaway driver in a client's bank heist.[37]

Plaintiff's Response fails to explain what specific conduct by the Attorney Defendants was allegedly outside the scope of their representation of their clients or how any of the Attorney Defendants' conduct could be considered "foreign to the duties of an attorney." Instead, Plaintiff continues to focus on the "backdating" label it tries to apply to Smith's conduct.[38] What Plaintiff still fails to do, however, is offer *any* plausible explanation as to why the purported

---

[34] *See, e.g.*, *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

[35] *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 765 (5th Cir. 2019) (emphasis added).

[36] *See, e.g.*, *Ruiz de Balderas v. ETX Successor Athens*, Case No. 6:19-CV-58-JDK-KNM, 2020 WL 1479583, at *3 (E.D. Tex. Mar. 4, 2020) ("Balderas does not contest that the conduct at issue is within the scope of an attorney's practice, but merely relies on a non-existent fraud exception to attorney immunity."), *report and recommendation adopted*, 2020 WL 1478563 (E.D. Tex. Mar. 26, 2020); *Parker v. Buckley Madole, P.C.*, Civil Action No. 4:17-CV-00307-ALM-CAN, 2018 WL 1704084, at *5 (E.D. Tex. Jan. 8, 2018) ("[T]he relevant inquiry is whether the attorney's conduct was part of discharging his duties in representing his client. If the conduct is within this context, it is not actionable."), *report and recommendation adopted*, 2018 WL 1625670 (E.D. Tex. Apr. 4, 2018); *see also Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 77 (Tex. 2021) (discussing *Cantey Hanger* and the limits of attorney immunity and recognizing that attorney immunity does not apply "[w]hen an attorney personally participates 'in a fraudulent business scheme *with* his client,' as opposed to on his client's behalf") (emphasis in original).

[37] *See, e.g.*, *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) ("Put differently, an attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer.").

[38] *See, e.g.*, Response [Docket No. 120] at 1. Plaintiff also focuses on a statement made by H&P attorney Ed Perrin to opposing counsel in litigation. *Id.* The Attorney Defendants deny that Mr. Perrin made any "misrepresentation" to Plaintiff's counsel, but in any event, Plaintiff cites no authority holding an attorney liable for alleged "misrepresentations" *made to opposing counsel in litigation*.

**ATTORNEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SAC— Page 7**

discrepancy between the "as of" March 1, 2019 date on the Foreclosure Sale Agreement and the late-March 2019 execution date has any possible significance.[39] According to Plaintiff's allegations, the "fraudulent transfer" of ACET Global's assets occurred in October of 2018. Thus, if the Agreement had been "backdated" to a date *before* the transfer took place, Plaintiff's allegations could at least make sense. As it is, it is apparent that Plaintiff is simply repeating the allegation of "backdating" because it has no argument of substance to attack Smith's conduct.

### B.      Common-Law Fraud (Count IV)

The Attorney Defendants also challenged the SAC as failing to plead any fraud claim against them with the particularity required by Rule 9(b).[40] In its Response, Plaintiff does not identify a single allegation in the SAC that would support a fraud claim against the Attorney Defendants.[41] Rather, Plaintiff merely points to the fact that it has alleged "a civil conspiracy."[42] Thus, Plaintiff has conceded that its fraud claim against the Attorney Defendants should be dismissed.

### C.      Breach of Fiduciary Duty/Aiding and Abetting Breach of Fiduciary Duty (Counts V, VI)

As noted in the Attorney Defendants' Motion, the SAC alleges *both* a breach of fiduciary duty and an "aiding and abetting" breach of fiduciary duty claim against the Attorney Defendants, which would suggest that the Attorney Defendants somehow "aided and abetted" themselves.[43] In its Response, Plaintiff seems to concede that it has no direct claim for breach of fiduciary duty

---

[39]*See* Attorney Defendants' Motion [Docket No. 97] at 13. By failing to offer any response to this point raised in the Attorney Defendants' Motion, Plaintiff has waived any response. *See supra* notes 2-3.

[40]Attorney Defendants' Motion [Docket No. 97] at 19-20.

[41]*See* Response [Docket No. 120] at 10-11.

[42]*Id.* at 11. Notably, the SAC does not assert its fraud claim against all alleged "conspirators, but instead expressly singles out specific Defendants, including the Attorney Defendants." *See* SAC [Docket No. 91] at 188.

[43]Attorney Defendants' Motion [Docket No. 97] at 20.

**ATTORNEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SAC— Page 8**

against the Attorney Defendants.[44] Plaintiff's Response certainly does not address the point made in the Attorney Defendants' Motion that the SAC alleges no facts to suggest that they had any power to force ACET Global to do anything, much less pay Plaintiff on the Seller Note.[45]

As for the "aiding and abetting" breach of fiduciary duty, Plaintiff's Response cites to no allegations in the SAC that could plausibly allege that the Attorney Defendants provided the necessary "substantial assistance" to the purported "looting" of ACET Global.[46]

### D.     Texas Uniform Fraudulent Transfer Act (Count VII)

Instead of arguing that the SAC *does* plead facts to suggest the Attorney Defendants were a transferee of any "fraudulently transferred" assets or the "beneficiary" of any "fraudulent transfer," Plaintiff once again makes several arguments that wholly miss the mark. First, Plaintiff complains that the Attorney Defendants did not cite to any "case cite authority" for the proposition that a claim under TUFTA is only proper against a transferee or the beneficiary of a transfer.[47] In fact, in their Motion, the Attorney Defendants cited *Clapper v. American Realty Investors, Inc.*[48] Moreover, they relied on TUFTA section 24.009.[49] In any event, in *Clapper*, the court recognized that "TUFTA

---

[44]*See* Response [Docket No. 120] at 11 (alleging that the Attorney Defendants "facilitated" the "looting of ACET's assets"). Plaintiff also asserts in its Response that the Attorney Defendants "carried out" the "looting," but cites no specific allegations in the SAC as to how the Attorney Defendants "carried out" (as opposed to "facilitated") any "looting." The SAC certainly contains no allegations that the Attorney Defendants ever exercised control over any of ACET Global's assets.

[45]*See* Attorney Defendants' Motion [Docket No. 97] at 21.

[46]*See Jessen v. Duvall*, No. 14-16-00869-CV, 2018 WL 1004659, at *7 (Tex. App.—Houston [14th Dist.] Feb. 22, 2018, no pet.) (mem. op.).

[47]Response [Docket No. 120] at 12.

[48]Civil Action No. 3:14-CV-2970-D, 2015 WL 3504856 (N.D. Tex. Jun. 3, 2015) (cited in Attorney Defendants' Motion [Docket No. 97] at 22 n.92). Plaintiff should be familiar with *Clapper* as it was cited in Plaintiff's Response in Opposition to the Baymark Defendants' Motion to Dismiss and Brief in Support [Docket No. 68] at 1 n.2.

[49]Attorney Defendants' Motion [Docket No. 97] at 22 n.92. For its part, Plaintiff cites to TUFTA section 24.008, Response [Docket No. 120] at 12, but cites no cases in which the "any other relief circumstances may require" language
(continued...)

**ATTORNEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SAC— Page 9**

allows recovery against the debtor, the transferee, or the person for whose benefit the transfer was made," citing *both* sections 24.008 and 24.009.[50] Plaintiff offers no authority to the contrary.

Plaintiff also notes in its Response that it has a claim to "pierce the veil" of Defendant Windspeed Trading, LLC.[51] What Plaintiff does not explain is how such "veil piercing" could reach *the Attorney Defendants*, who are not alleged to be owners of Windspeed Trading. Finally, Plaintiff falls back on its "conspiracy" claim.[52] Again, as the conspiracy claim is separate from its TUFTA claim, it cannot support a claim brought directly under TUFTA against the Attorney Defendants.

### E.    Civil Conspiracy (Count VIII)

If there is no underlying tort, there can be no claim for "conspiracy."[53] Thus, if the Court dismisses Plaintiff's tort claims, Plaintiff's claim for "conspiracy" necessarily falls.

### PRAYER

WHEREFORE, the Attorney Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiff's Second Amended Complaint and dismiss all of Plaintiff's claims asserted against them therein, as well as for such other and further relief to which they may be justly entitled.

---

[49](...continued)
of section 24.008 was applied to allow for liability against one who is not either the transferee or the beneficiary of a fraudulent transfer.

[50]*Clapper*, 2015 WL 3504856, at *6 (dismissing TUFTA claims against certain defendants because "plaintiffs do not plausibly allege that the TCI stock was directly transferred to any of the Unrelated Defendants or to any of the Individual Defendants").

[51]Response [Docket No. 120] at 12.

[52]*Id.*

[53]*E.g.*, *Murex, LLC v. GRC Fuels, Inc.*, Civil Action No. 3:15-CV-3789-B, 2016 WL 4207994, at *9 (N.D. Tex. Aug.10, 2016) (recognizing civil conspiracy as a "derivative tort").

**ATTORNEY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SAC— Page 10**

Respectfully submitted,

*/s/ Daniel D. Tostrud*
**DANIEL D. TOSTRUD**
Texas Bar No. 20146160
dtostrud@cobbmartinez.com
**MATTHEW E. LAST**
Texas Bar No. 24054910
mlast@cobbmartinez.com
**COBB MARTINEZ WOODWARD PLLC**
1700 Pacific Avenue, Suite 3100
Dallas, TX 75201
(214) 220-5200
(214) 220-5299 (Fax)

**ATTORNEYS FOR DEFENDANTS**
**HALLETT & PERRIN, P.C.**
**AND JULIE A. SMITH**

## CERTIFICATE OF SERVICE

On September 20, 2022, I electronically submitted the foregoing document with the Clerk of the  Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Daniel D. Tostrud*
Daniel D. Tostrud