**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION**

| | | |
|---|---|---|
| D&T PARTNERS LLC, Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | Case No. 3:21-CV-01171-B |
| | § | |
| BAYMARK PARTNERS LP, *et al.*, | § | |
| Defendants. | § | |

**REPLY IN SUPPORT OF DEFENDANTS SUPER G CAPITAL LLC'S AND STEVEN BELLAH'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Super G Capital LLC ("Super G") and Steven Bellah ("Bellah") file this reply in support of their *Motion to Dismiss Plaintiff's Second Amended Complaint* (the "Motion" at Docs. 98-100), and in rebuttal to Plaintiff's *Response in Opposition to Super G Capital LLC's and Steven Bellah's Motion to Dismiss Plaintiffs' Second Amended Complaint* (the "Response," at Doc. 118).

When reminded by the Motion[1] that shotgun pleadings—*i.e.*, pleadings: "contain[ing] several counts within a complaint with each count incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions"[2]; "'set[ting] forth an excessive number o[f] facts' before alleging that all the provided facts support various counts in the complaint"[3]; ascribing singular acts to multiple defendants or otherwise "lumping together" defendants[4]; making "too vague or internally contradictory" allegations[5]; presenting "conclusory allegations, unwarranted deduction, or legal conclusions"[6]; burying "any allegations that are material …

[1] Motion, Doc. 99 at p. 4.
[2] *Moore v. Carrington Mortg. Servs. LLC*, No. 3:17-CV-3132-G-BN, 2018 WL 3853711, at *3 (N.D.Tex. July 17, 2018) (Horan, J.) ("Such pleadings are subject to dismissal under Rule 12(b)(6).").
[3] *Zucker v. Farish*, No. 3:18-CV-01790-K, 2018 WL 6570867, at *3 (N.D.Tex. Dec. 12, 2018) (Kinkeade, J.).
[4] *Wilson v. Deutsche Bank Trust Co. Am.*, No. 3:18-CV-0854-D, 2019 WL 175078, at *7 (N.D.Tex. Jan. 10, 2019) (Fitzwater, J.); *Walker v. Beaumont Ind. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir.2019).
[5] *Wilson*, 2019 WL 175078, at *7.
[6] *Zucker*, 2018 WL 6570867, at *6.

beneath innumerable pages of rambling irrelevancies"[7]—are improper under the Rules, Plaintiff's Response is, simply, trust it: "The Complaint is replete with details … Each defendant played their part."[8] Presumably, it is up to each Defendant (and this Court) to wade through the *Second Amended Complaint*'s (the "SAC," at Doc. 91) "innumerable pages of rambling irrelevancies" to determine whether any "allegations that are material [to a given Defendant] are buried beneath"[9]—just do not ask Plaintiff to do so.[10] Super G and Bellah have taken the time to do the wading. And it is clear: despite Plaintiff's request that the Court simply take its word that adequately-pled claims are buried somewhere beneath the bunk, Plaintiff (again) fails to state facially-plausible claims for relief (and where applicable, to do so with particularity) against Super G and Bellah.

Indeed, Plaintiff's Response is virtually identical to its response to Super G/Bellah's motion to dismiss Plaintiff's prior pleading attempt[11]—which this Court granted. But for the addition of four subsections (§§II.G-J), the Response's recitation of the purported facts is identical[12]—and ***none of the new "fact" sections even mention Super G or Bellah***. With respect to Plaintiff's "argument," all but one sub-subsection (§V.A.1.i) is identical to Plaintiff's previous attempt to avoid dismissal[13]—and ***the sole new "argument" section is not even a response to Super G/Bellah's Motion*** but rather a non-sensical copy-and-paste job from Plaintiff's response to Windspeed Trading LLC and William Szeto's motion to dismiss.[14]

---

[7] *Id.* at *3.

[8] Response, Doc. 118 at p. 22.

[9] *Zucker*, 2018 WL 6570867, at *6.

[10] For example, with respect to its state-law claims (Response, Doc. 118 at §B), Plaintiff cites to a grand total of *one* of the SAC's 476 paragraphs when baldly asserting it has "more than adequately pled" *all* essential elements of its *four* state-law claims against Super G and Bellah.

[11] *Compare* Response, Doc. 118 *with* Doc. 66.

[12] *Compare* Response, Doc. 118 at §§II.A-F, K-N *with* Doc. 66 at §§II.A-J.

[13] *Compare* Response, Doc. 118 at §§V.A.2-7 *with* Doc. 66 at §§IV.B.3-8.

[14] *Compare* Response, Doc. 118 at §V.A.1.i *with* Doc. 115 at §VI.A.1.iii. To be clear, in the only argument that was not lifted wholesale from its prior response, Plaintiff responds to contentions made (or purportedly waived) by "the Windspeed Actors"—a term defined in its response to Windspeed's and Szeto's motion to dismiss to include those two defendants and no others (*see* Doc. 115 at p. 1)—not by Super G and Bellah. *See, e.g.*, Response, Doc. 118 at p. 12 ("Curiously, *the Windspeed Actors* make no arguments as to why they were not RICO 'persons' ... Rather, the

Put simply, after having its prior complaint dismissed for failure to sufficiently plead claims against Super G and Bellah (and the other Defendants), Plaintiff's Response: (1) does not identify any new factual allegations involving Super G or Bellah, much less any allegation curing the deficiencies identified in the Court's prior dismissal order; and (2) does not make any new arguments addressing the myriad deficiencies raised in Super G/Bellah's Motion, including the one at the heart of the Court's dismissal order—*i.e.*, the failure to adequately plead the continuity prong of the pattern element common to each of Plaintiff's RICO claims.

### A. Plaintiff's RICO claims should be dismissed.

Plaintiff's improper attempt to "lump together" all Defendants is exemplified by its Response to the Motion to dismiss the RICO claims against Super G/Bellah. For example, Plaintiff asserts that Super G and Bellah were "indirectly involved" in the "predicate acts" of "bankruptcy fraud, money laundering, and obstruction of justice."[15] But, as made clear by the SAC itself, the alleged bankruptcy fraud and money laundering involve "Concealment of Assets, False Oaths" purportedly made by certain Baymark Defendants to "a trustee or creditor or other office [*sic*] of the court" in the ACET Global bankruptcy proceeding.[16] There are no allegations that Super G or Bellah had anything to do with the bankruptcy, much less committed criminal concealment or deception therein. Likewise, Plaintiff's obstruction-of-justice allegations solely involve alleged perjury committed by other Defendants in the parallel state court case.[17] The SAC is devoid of any allegations that Super G or Bellah (who did not even testify) committed or suborned perjury—

*Windspeed Actors* focus all of their efforts on Plaintiffs' alternative allegations of an association-in-fact enterprise … [T]he *Windspeed Actors* have apparently waived any argument that the *Windspeed Actors* were not RICO persons …") (emphasis supplied).

[15] Response, Doc. 118 at pp. 14-15.

[16] *See* SAC, Doc. 91 at ¶¶444-45; *see also* Motion, Doc. 99 at p. 9.

[17] *See* SAC, Doc. 91 at ¶¶443; *see also* Motion, Doc. 99 at p. 9 & n.17.

much less any particulars as to the time, place, or contents thereof.[18]

Plaintiff's argument regarding predicate acts is the same—*verbatim*—in this Response as it was in Plaintiff's previous unsuccessful response. When arguing that it adequately pleads instances of Super G/Bellah's predicate acts of wire fraud, Plaintiff (again) sets forth, without explanation or analysis, a lengthy string-cite to several paragraphs of the SAC—the majority of which do not include communications or representations *by* either Super G or Bellah, and none of which involve communications or representations by Super G or Bellah *to Plaintiff*.[19] Nowhere in the Response (or the SAC) does Plaintiff "identify any particular content in [these wires] or explain how such content was fraudulent" [20]—particularly with respect to Super G and Bellah.

When arguing that it adequately pleads instances of Super G/Bellah's predicate acts of mail fraud, Plaintiff attempts to make two mailings out of one, calling the same notice (exhibit 17 to the SAC, at Doc. 92-16) two different names ("Notice of Forfeiture/Notice of Foreclosure" and "Notice of Disposition and Sale of Collateral") and deeming it two "[i]nstances of mail fraud."[21] Such transparent attempt to tie "two or more"[22] predicate acts to Super G/Bellah is plainly belied by the SAC itself. In any event, Plaintiff fails to describe how the notice—relating to Super G's exercise of rights pursuant to its "acknowledge[d]" and "consent[ed] to"[23] superior lien[24]—

---

[18] *See Gabriel v. Outlaw*, No. 3:20-CV-60-E, 2021 WL 1030157, at *2 (N.D.Tex. Mar. 1, 2021) (Tolliver, J.) ("Plaintiffs' complaint does not plausibly allege the necessary elements of a RICO claim on many fronts, including that it is absent of any factual allegations demonstrating a pattern of racketeering behavior. Plaintiffs allege in conclusory fashion that [Defendant] committed various criminal acts—such as perjury, obstruction of justice, and conspiracy—but the mere invocation of such crimes is insufficient to state a claim. Plaintiffs must plead plausible facts that show [Defendant] committed such predicate offenses, and they have wholly failed to do so.").

[19] Response, Doc. 118 at p. 15.

[20] *See Stiel v. Heritage Auctions Inc.*, No. 3:17-CV-02068-M, 2019 WL 12095440, at *4 (N.D.Tex. Jan. 23, 2019).

[21] Response, Doc. 118 at p. 15.

[22] *See Stiel*, 2019 WL 12095440, at *4 ("A RICO action requires a plaintiff to allege 'two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity.").

[23] Exhibit 24 to the SAC, Doc. 92-23 at App. 070-71.

[24] *See Breitling v. LNV Corp.*, No. 3:15-CV-0703-B, 2016 WL 852963, at *4 (N.D.Tex. Mar. 4, 2016) (Boyle, J.) ("A plaintiff alleging a RICO violation must plead the elements of the predicate offenses in addition to the elements of the RICO violation itself.").

constitutes a crime, much less one that poses a threat of continued criminal activity.

Plaintiff's arguments regarding the "persons," reliance and proximate cause, association-in-fact, and pattern of racketeering elements of its RICO claims are likewise identical to those made in Plaintiff's prior unsuccessful response.[25] With respect to reliance and proximate cause, Plaintiff (again) simply asserts that "[r]eliance and proximate cause are established throughout" the SAC, adding: "While the Complaint is admittedly long, its length does not excuse a simple failure to read it."[26] Equally true is that a gratuitously long complaint does not excuse a simple failure to plausibly (or particularly) plead one's claims.[27] Put plainly, Plaintiff wholly fails to identify a "direct"[28] link between Super G's and/or Bellah's purported predicate acts (to the extent they are even adequately pleaded as such) and Plaintiff's purported injury, *i.e.*, "the failure to pay millions of dollars owed to Plaintiff."[29] As explained in the Motion, any harm to Plaintiff would be attenuated and contingent, at best.[30]

The SAC remains devoid of any allegation that Super G or Bellah exercised some control or supervision over the purported RICO enterprise.[31] To the contrary, the SAC pleads Super G/Bellah as mere pawns of the Baymark Defendants.[32] Plaintiff's Response does nothing to explain, much less alleviate, this pleading contradiction.

Most glaring—in light of the Court's order dismissing Plaintiff's last pleading attempt

---

[25] *Compare* Response, Doc. 118 at §V.A.2, 4-6 *with* Doc. 66 at §IV.B.3, 5-7.
[26] Response, Doc. 118 at p. 16.
[27] *Zucker*, 2018 WL 6570867, at *3 ("A complaint can be long-winded … without pleading with particularity.").
[28] *Varela v. Gonzales*, No. 3:13-CV-1278-B, 2014 WL 1284985, at * 3 (N.D.Tex. Mar. 31, 2014) (Boyle, J.)("Supreme Court 'precedents make clear that in the RICO context, the focus' of the proximate cause analysis 'is on the directness of the relationship between the conduct and the harm … Thus, to establish RICO standing, Plaintiffs must show 'some direct relation between the injury asserted and the injurious conduct alleged' … Where the 'link' between the alleged injury and predicate acts 'is too remote, purely contingent, or indirect,' the RICO claim should be dismissed.").
[29] SAC, Doc. 91 at ¶¶406, 420.
[30] *See* Motion, Doc. 99 at pp. 11-12.
[31] For a concise explanation of how Plaintiff misinterprets *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (and other authority) with respect to the "conduct or participate" requirement for pleading a RICO "person," *see* Doc. 76 at ¶¶5-9 and Doc. 77 at ¶¶7-9.
[32] *See, e.g.*, SAC, Doc. 91 at ¶¶82, 233, 235, 463 and n.65; Motion, Doc. 99 at n.24.

explicitly due to its failure to adequately plead a pattern of racketeering—is the Response's *verbatim* repetition of the same argument on this element as was made in Plaintiff's prior response. Word for word.[33] Plaintiff makes no attempt to explain how the SAC differs from its prior pleading attempt, both of which allege the same "narrowly focused alleged crime," *i.e.*, "to transfer assets from ACET Global to Windspeed, free and clear of any D&T Note."[34] Instead, Plaintiff (again) nakedly asserts "there is a continued threat of repetition of such conduct"[35], without explanation or any citation to any supporting allegations in the SAC—particularly with respect to Super G and/or Bellah. Is the continued threat that Defendants will try to somehow foreclose again?[36]

**B. Plaintiff's state law claims should be dismissed.**

Absent from the Response is any argument that, upon the dismissal of Plaintiff's RICO claims, this Court should not apply the Fifth Circuit's "general rule … to dismiss state claims when the federal claims to which they are pendent are dismissed."[37] Plaintiff provides no reason, argument, or authority that this is anything but the "usual case" in which "once all federal claims have been dismissed from an action, the[] [28 U.S.C. §1367(c)] factors counsel in favor of remanding the remaining state-law claims."[38] Particularly given the early (pleading) stage of this case, there is no reason to except from the general rule and make "needless decisions of state law" if this Court dismisses the sole federal-law claims.[39] Regardless, Plaintiff's Response (again) fails

---

[33] *Compare* Response, Doc. 118 at §V.A.6 *with* Doc. 66 at §IV.B.7.

[34] Court's Dismissal Order, Doc. 89 at p. 13. In fact, despite the Court's order, Plaintiff doubles down in its Response, calling "preposterous" the well-supported legal conclusion that one alleged scheme—with a singular objective and a targeted victim—fails to satisfy the continuity prong of RICO's pattern element. *Compare id. with* Doc. 118 at p. 19.

[35] Response, Doc. 118 at p. 15.

[36] *See* Court's Dismissal Order, Doc. 89 at p. 14 ("The foreclosure sale marked the end point of the Defendants' alleged scheme and therefore precludes open-ended continuity."). With respect to Plaintiff's RICO conspiracy claim, "[a] RICO conspiracy claim requires one additional element—there must be an agreement between the conspirators to specifically commit the alleged predicate acts." *Gabriel*, 2021 WL 1030157, at *2. As with the underlying elements addressed above, this too is absent from the SAC.

[37] *Drake v. Costume Armor Inc.*, 736 Fed.Appx. 505, 506 (5th Cir.2018).

[38] *Porter v. City of Dallas*, No. 3:20-CV-0999-B, 2021 WL 2255902, at *1 (N.D.Tex. June 3, 2021) (Boyle, J.).

[39] *Id.* at *1 (common-law factors all weigh in favor of remanding state-law claims where, as here, "at the time the federal claims were deleted hardly any federal judicial resources, let alone a significant amount of resources, had been

to address its failure to state plausible state-law claims against Super G or Bellah, *to wit*:

1. *Common Law Fraud.*

First, in the less-than-half-page that Plaintiff dedicates to this claim, it addresses what it deems "Bellah's fraudulent misrepresentation."[40] Yet, as highlighted in the Motion[41], Bellah is not named in this count of the SAC (even after two pleading amendments).[42]

Second, Plaintiff's Response confirms what Super G concluded after "[c]ombing the 194-page Complaint for what Plaintiff conceivably could be alleged as a misrepresentation by Super G to Plaintiff"[43]: that Plaintiff's fraud claim against Super G hinges solely on an early-2019 statement by Bellah to Tamti that "he [Bellah] was unaware of Windspeed."[44] However, Plaintiff fails to identify any portion of the SAC setting forth—much less with the particularity required by Rule 9(b)—multiple essential elements of fraud with respect to such statement, including:

- materiality, *i.e.*, the Bellah statement somehow induced Plaintiff to act (the SAC fails to identify a single act Plaintiff was induced to take based on Bellah's statement);

- fraudulent intent, *i.e.*, Super G intended Plaintiff to somehow act upon the Bellah statement and that Super G somehow obtained something thereby (the SAC is devoid of any allegations of Super G's intent, how Super G purportedly intended Plaintiff to act in response, or what Super G "obtained thereby");

- actual reliance, *i.e.*, that Plaintiff somehow detrimentally relied on the Bellah statement (there are no pleaded facts that Plaintiff did anything in response to Bellah's statement);

- justifiable reliance (there can be no justifiable reliance absent actual reliance); and

- pecuniary loss directly traceable to and which resulted from the purported misrepresentation (the SAC wholly fails to trace directly any of its purported damages (*e.g.*, non-payment of the D&T Note) to the Bellah statement).

---

devoted to the district court's consideration of the Texas state-law claims" and the "federal and state courts are … located within a few blocks of one another in downtown Dallas").

[40] Response, Doc. 118 at p. 20.

[41] Motion, Doc. 98 at n.5; Motion, Doc. 99 at nn.27, 32.

[42] SAC, Doc. 91 at p. 188.

[43] Motion, Doc. 99 at pp. 14-15.

[44] Response, Doc. 118 at p. 20; *see also* SAC, Doc. 91 at ¶299.

Plaintiff's common-law fraud claim against Super G should be dismissed.

2. *Aiding and Abetting Breach of Fiduciary Duties.*

After conceding that "if the underlying claim for breach of fiduciary duty fails, then the aiding and abetting such breach must fail as well"[45], Plaintiff sweepingly asserts that "Defendants herein [Super G and Bellah] knowingly participated and aided those [Fiduciary Claim] [D]efendants in carrying out the scheme that has been described in great detail herein and in the Complaint."[46] But, as with its fraud claim, Plaintiff fails to identify any portion of the SAC setting forth multiple essential elements of this claim, including:

- knowledge, *i.e.*, that Super G or Bellah were aware that the Fiduciary Claim Defendants' conduct constituted a breach of their fiduciary duties to Plaintiff (the SAC does not allege that either Super G or Bellah was even aware of the Fiduciary Claim Defendants' conduct involving payment of Management Fees, much less that such conduct was tortious);

- intent, *i.e.*, that Super G or Bellah intended to assist the Fiduciary Claim Defendants (again, the SAC does not allege Super G or Bellah were even aware of the purportedly breaching conduct, much less that they intend to assist such conduct);

- assistance or encouragement from Super G or Bellah to the Fiduciary Claim Defendants (again, the SAC does not allege Super G or Bellah were even aware of the purportedly breaching conduct, much less assisted or encouraged such conduct);

- causation, *i.e.*, that Super G's or Bellah's conduct was a substantial factor in causing the breach of fiduciary duty (again, there are no allegations of what Super G's or Bellah's "conduct" is supposed to have been with respect to the subject Management Fees, much less how such non-existent conduct could conceivably be a substantial factor in causing the breach).

Tellingly, Plaintiff fails to cite a single case or *even a single allegation within its 194-page complaint* to support its Response that it adequately pleaded its aiding-and-abetting claim against Super G and Bellah. This claim should be dismissed.

3. *Texas Uniform Fraudulent Transfer Act.*

---

[45] Response, Doc. 118 at pp. 20-21. As explained in the Motion (Doc. 98 at n.6; Doc. 99 at n.27), neither Super G nor Bellah is named in "Count V: Breach of Fiduciary Duty." *See* SAC, Doc. 91 at pp. 189-90.

[46] Response, Doc. 118 at p. 21. "Fiduciary Claim Defendants" is defined in the SAC, Doc. 91 at ¶454.

With respect to its TUFTA claim against Super G and Bellah, Plaintiff again fails to provide any legal support or to cite *any* portion of its SAC to support its sweeping assertion that "the claim against Defendants for violation of the Texas Uniform Fraudulent Transfer Act has been adequately pled."[47] It is difficult to imagine Plaintiff conjuring a broader, less-meaningful argument than its Response: "Defendants herein knowingly participated and aided[48] all other defendants in carrying out the fraudulent transfer scheme that has been described in great detail herein and in the Complaint."[49]

The SAC does not even mention Bellah in the paragraphs (Doc. 91, ¶¶460-63) setting forth the TUFTA claim. Super G is improperly lumped together with nine other Defendants referred to as the "Transfer Defendants" whom Plaintiff collectively labels "a sham to perpetrate a fraud" "caused" by Baymark "primarily for Baymark's direct personal benefit"[50]—without tying any TUFTA elements or factors[51] to Super G and without anything resembling rational explanation. For example, under TUFTA, "the claim must be brought by a *creditor* … against a *debtor*, and would require the *debtor* Defendants to have made the fraudulent transfer."[52] But there is no dispute, as pleaded by Plaintiff[53], that Super G was ACET Global's *creditor*, and ACET Global was Super G's *debtor* (and that Bellah is neither pleaded as a creditor nor a debtor in this matter). Plaintiff wholly fails to address this "flaw in the pleadings."[54]

Furthermore, Plaintiff's Response fails to address the other evident impediments to its

---

47 Response, Doc. 118 at p. 21.
48 The SAC does not include a claim against Super G or Bellah (or any Defendant) for aiding any TUFTA violation.
49 Response, Doc. 118 at p. 21.
50 SAC, Doc. 91 at ¶¶462-63.
51 For authority setting forth the TUFTA elements and factors, *see, e.g.*, *Thomas v. Hopkins*, No. 3:20-CV-576-S, 2021 WL 4268483, at *2 (N.D.Tex. Aug. 26, 2021) (Toliver, J.).
52 *Id*. at *3.
53 *See* SAC, Doc. 91 at ¶72.
54 *Thomas*, 2021 WL 4268483, at *3.

TUFTA claim set forth in the Motion[55], *e.g.*, that: TUFTA excludes "assets" encumbered by a valid lien[56] (here, Plaintiff "acknowledge[d]" and "consent[ed] to" subordination of its own lien to Super G's superior lien[57]); Plaintiff concedes that ACET Global was in default on Super G's loan months prior to the foreclosure[58]; and Plaintiff does not plead a disparity between Super G's secured debt and the value of ACET Global's assets.

4. *Civil Conspiracy.*

Toward the end of its complaint, Plaintiff broadly asserts that every Defendant somehow conspired with each and every other Defendant with respect to each and every "violation described above" in the prior 463 paragraphs.[59] Plaintiff's Response does nothing to hone this shotgun blast. There are (again) no citations to any portion of the SAC to specify the conspiracy claim as to Super G or Bellah. Such failure is not surprising, as the SAC itself fails to plausibly or particularly[60] plead beyond a speculative level: that Super G/Bellah conspired with one or more of the other Defendants; the supposed object to be accomplished thereby; a "meeting of minds" with Super G/Bellah as to such an object; that Super G/Bellah had knowledge of any such object or purpose of the purported conspiracy; that Super G/Bellah had specific intent as to any such object or purpose; or that there was some agreement with Super G/Bellah to inflict a wrong on Plaintiff.

**C. Plaintiff's request for leave to (again) replead should be denied.**

After multiple attempts, and thousands of pages of pleading and argument, Plaintiff clearly cannot remedy its pleading deficiencies and its request for leave to amend (again) should be denied.

---

[55] Motion, Doc. 99 at pp. 22-24.

[56] TEX. BUS. & COM. CODE §24.002(2)(A); *see also Tow v. Amegy Bank NA*, 498 B.R. 757, 769 (S.D.Tex.2013) ("A TUFTA transfer is the disposition of an 'asset.' An 'asset' does not include property subject to a valid lien.").

[57] *See* Exhibit 24 to the SAC, Doc. 92-23 at App. 070-71.

[58] SAC, Doc. 91 at ¶¶85, 89.

[59] *Id.* at ¶465.

[60] *See Smith v. HSBC Bank*, No. 3:15-CV-00094-P, 2015 WL 12911463, at *4 (N.D.Tex. Aug. 6, 2015) ("Where the alleged conspiracy sounds in fraud, the complaint must satisfy the heightened pleading standards in Rule 9 ...").

Respectfully submitted,

DUNN SHEEHAN LLP

By: */s/ John David Blakley*
John David Blakley
State Bar No. 24069388
jdblakley@dunnsheehan.com
William D. Dunn
State Bar No. 24002023
ddunn@dunnsheehan.com

5910 Central Expressway, Suite 1310
Dallas, Texas 75206
Phone: 214-866-0077
Fax: 214-866-0070

**ATTORNEYS FOR DEFENDANTS SUPER G CAPITAL LLC and STEVEN BELLAH**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record by e-service on this 20th day of September 2022.

*/s/ John David Blakley*
John David Blakley