UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), Directly and Derivatively on Behalf of ACET GLOBAL, LLC and BAYMARK ACET HOLDCO, LLC | § § § § § § | |
| and | § § | |
| ACET GLOBAL, LLC, | § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| BAYMARK PARTNERS, LP; BAYMARK PARTNERS MANAGEMENT, LLC; SUPER G CAPITAL, LLC; SG CREDIT PARTNERS, INC.; BAYMARK ACET HOLDCO, LLC; BAYMARK ACET DIRECT INVEST, LLC; BAYMARK PARTNERS; DAVID HOOK; TONY LUDLOW; MATT DENEGRE; WILLIAM SZETO; MARC COLE; STEVEN BELLAH; ZHEXIAN "JANE" LIN; DANA MARIE TOMERLIN; PADASAMAI VATTANA; PAULA KETTER; VANESSA TORRES; WINDSPEED TRADING, LLC; HALLETT & PERRIN, P.C.; and JULIE A. SMITH, | § § § § § § § § § § § § § § § § § § | CIVIL CAUSE NO. 3:21-CV-01171-B |
| Defendants. | § § | |

**BAYMARK DEFENDANTS'**
**REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.      Plaintiff's Improper "Shotgun" Pleading and Failure to Comply with Rule 8 . . . . 3

    II.     Plaintiff's Claims Under RICO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          A.      Predicate Acts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                1.      18 U.S.C. § 1503 (obstruction of justice) . . . . . . . . . . . . . . . . . . . 4

                2.      18 U.S.C. §§ 1956, 1957 (money laundering) . . . . . . . . . . . . . . . 5

                3.      18 U.S.C. §§ 152, 157 (bankruptcy fraud) . . . . . . . . . . . . . . . . . . 6

                4.      18 U.S.C. §§ 1341, 1343 (mail/wire fraud) . . . . . . . . . . . . . . . . . 7

          B.      Causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          C.      18 U.S.C. § 1962(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    III.     Plaintiff's State-Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## INDEX OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Berman, Trustee for the Estate of Michael S. Goldberg, LLC v. LaBonte*,
622 B.R. 503 (Bankr. D. Conn. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Six Flags Entm't Corp.*,
524 F. Supp. 3d 501 (N.D. Tex. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*George v. Blue Diamond Petroleum, Inc.*, 718 F. Supp. 539
(W. D. La. 1989), *aff'd*, 922 F.2d 838 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Green v. Innovis Data Solutions, Inc.*, Civil Action No. 3:20-CV-01614-L,
2021 WL 4244779 (N.D. Tex. Sept. 17, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Jaser v. AT&T Servs. Inc.*, Civil Case No. 3:18-CV-3429-B-BH,
2020 WL 1329151 (N.D. Tex. Mar. 23, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Marriott Bros. v. Gage*, 911 F.2d 1105 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nottingham v. Richardson*, 499 F. App'x 368 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Poe v. Bock*, EP-17-CV-00232-DCG,
2018 WL 4275839 (W.D. Tex. Sept. 7, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*,
9 F.4th 247 (5th Cir. 2021) (per curiam). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Crispo*, 306 F.3d 71 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Davis*, 752 F.2d 963 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. McBride*, 362 F.3d 360 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Williams*, 874 F.2d 968 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Defendants Baymark Partners Management, LLC; Baymark Management, LLC; Baymark ACET Direct Invest, LLC; Baymark Partners; and Matthew Denegre ("Baymark Defendants") file this Reply in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint ("Baymark Defendants' Motion") as follows:

## ARGUMENT AND AUTHORITIES

Despite being granted an extra twenty-five pages for its Response in Opposition to the Baymark Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 113] (the "Response"), Plaintiff once again fails to respond to multiple arguments raised in the Baymark Defendants' Motion.[1] "*Failure to respond to arguments made in a motion to dismiss results in waiver of opposition*."[2] Thus, Plaintiff has effectively conceded several of the Baymark Defendants' arguments.[3] Some of the arguments Plaintiff has conceded by offering no response whatsoever are the following:

- Plaintiff has failed to plead facts necessary to demonstrate any predicate act of "economic espionage" under 18 U.S.C. § 1831.[4]

---

[1] Plaintiff also admits in its Response that it only amended its pleading to attempt to address the "issues identified in the Court's May 9, 2022 Order." Response [Docket No. 113] at 1 n.1. Plaintiff then asks for yet another opportunity to amend "[s]hould the Court believe that a separate pleading issue exists." *Id.* When Plaintiff was drafting its Second Amended Complaint ("SAC"), it was fully aware of the numerous defects the Baymark Defendants, and the other Defendants, had identified with its prior pleading. It should not be given yet another "bite at the apple" because it made the conscious decision to ignore such defects just because the Court did not previously focus on them.

[2] *Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Six Flags Entm't Corp*., 524 F. Supp. 3d 501, 525 (N.D. Tex. 2021) ("Failure to respond to arguments made in a motion to dismiss results in waiver of opposition.") (emphasis added).

[3] *See, e.g.*, *Green v. Innovis Data Solutions, Inc.*, Civil Action No. 3:20-CV-01614-L, 2021 WL 4244779, at *5 n.4 (N.D. Tex. Sept. 17, 2021) ("Plaintiff has not addressed this assertion in his pleadings or response to Defendant's motion. Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (internal quotation marks omitted).

[4] *See* Baymark Defendants' Motion [Docket No. 105] at 9-10.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SAC— Page 1**

- Plaintiff has failed to plead facts necessary to demonstrate any predicate act of "bank fraud" under 18 U.S.C. § 1344.[5]

- Plaintiff's conclusory allegations about purported "trade secrets" are not sufficient to demonstrate any predicate act of "theft of trade secrets" under 18 U.S.C. § 1832.[6]

- Many of the instances of "wire fraud" about which Plaintiff complains did not involve *interstate* wires, as is required for any claim for wire fraud under 18 U.S.C. § 1343.[7]

Plaintiff's Response also does not attempt to address the proper standard under a Rule 12(b)(6) motion to dismiss. Plaintiff once again expressly and exclusively relies on the "no set of facts" standard of pleading.[8] This standard was expressly "retired" by the Supreme Court in *Bell Atlantic Corporation v. Twombly* (which Plaintiff's Response fails to cite).[9] The standard established by *Twombly* over fifteen years ago is one of "facial plausibility."[10] This Court expressly invoked this standard in its May 9, 2022 Memorandum Opinion and Order ("Order") dismissing

---

[5] *Id.* at 10.

[6] *Id.* The Baymark Defendants also noted that Plaintiff has failed to explain how there can be a "theft" of trade secrets, or anything else, when the owner of such property acquiesces in the transfer. *See id.* at 10-11. Plaintiff also did not respond to this argument.

[7] *Id.* at 18. When the *intrastate* e-mails identified in the SAC are disregarded, there are far fewer alleged "predicate acts."

[8] Response [Docket No. 113] at 22.

[9] 550 U.S. 544, 562-63 (2007) ("*Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . *The phrase is best forgotten* . . . .") (emphasis added). Plaintiff's Response cites to post-*Twombly* Fifth Circuit cases that it claims still articulate and apply the "no set of facts" standard. *See* Response [Docket No. 113] at 22. However, one of the cases cited in Plaintiff's Response, *Petrobras America, Inc. v. Samsung Heavy Industries Company, Ltd.*, did not actually apply the "no set of facts" standard. Rather, it merely quoted that standard in a parenthetical to a pre-*Twombly* case as a "*cf.*" cite. *Petrobras*, 9 F.4th 247, 256 (5th Cir. 2021) (per curiam). In the other case, *Nottingham v. Richardson*, the court did cite to *Conley v. Gibson* (making no reference to *Twombly* or *Iqbal*) but then went on to note that because "[t]he district court looked outside the pleadings and reviewed testimony," it had "treated the motions for dismissal as motions for summary judgment." *Nottingham*, 499 F. App'x 368, 372-73 (5th Cir. 2012). In any event, it is axiomatic that the standard set by the Supreme Court necessarily controls.

[10] *See Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009).

---

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SAC— Page 2**

Plaintiff's claims.[11] Because Plaintiff's Response does not acknowledge this standard, it fails to analyze any of the Baymark Defendants' arguments in the context of whether the SAC provides "factual content" that would allow the Court to draw the "reasonable inference" that the Baymark Defendants are "liable for the misconduct alleged."[12]

## I.    Plaintiff's Improper "Shotgun" Pleading and Failure to Comply with Rule 8

The Baymark Defendants' Motion seeks dismissal of the Second Amended Complaint ("SAC") because it represents the quintessential example of improper "shotgun" pleading and because it fails to comply with Rule 8's express requirements.[13] Plaintiff's Response makes no attempt to explain why the SAC should not be considered improper "shotgun" pleading, nor does it offer any analysis as to how the SAC could possibly comply with Rule 8. By failing to provide any substantive response to the Baymark Defendants' arguments on these issues, Plaintiff has waived any response to this argument as well.[14]

Even if Plaintiff had not waived its response to the Baymark Defendants' Rule 8 arguments, it is clear that the SAC violates Rule 8. This Court has previously dismissed a complaint that, like the SAC, was "far too lengthy," "overly repetitious," and "difficult to follow."[15] The Court should also dismiss Plaintiff's SAC.

---

[11]Order [Docket No. 89] at 7 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (quoting *Ashcroft v. Iqbal*).

[12]*Iqbal*, 556 U.S. at 678.

[13]Baymark Defendants' Motion [Docket No. 105] at 7-8.

[14]*See supra* notes 2-3.

[15]*See Jaser v. AT&T Servs. Inc.*, Civil Case No. 3:18-CV-3429-B-BH, 2020 WL 1329151, at *5 (N.D. Tex. Mar. 23, 2020).

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SAC— Page 3**

## II.    Plaintiff's Claims Under RICO[16]

### A.    Predicate Acts

In light of the page limitations applicable to this Reply, the Baymark Defendants cannot address everything wrong with the arguments in Plaintiff's 56-page Response about the various purported predicate acts alleged in the SAC. However, some of the more glaring problems are set forth below.

*1.    18 U.S.C. § 1503 (obstruction of justice).*—The primary thrust of the Baymark Defendants' argument as to why Plaintiff cannot rely on "obstruction of justice" as a predicate act is that 18 U.S.C. § 1503 *only applies if a federal proceeding is involved*.[17] As a result, Plaintiff's favorite allegation regarding Ludlow's utterance during a *state-court* deposition is simply irrelevant as regards to any alleged RICO predicate act.[18] Plaintiff's Response does not offer any authority to support its claim that purportedly wrongful actions taken in relation to a state-court proceeding can

---

[16]Inexplicably, Plaintiff's Response includes *sixteen pages* of argument related to the RICO pattern/continuity. Response [Docket No. 113] at 4-19. The Baymark Defendants' Motion did not address pattern/continuity, but instead adopted Defendants David Hook and Tony Ludlow's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 107], which is specifically directed to RICO pattern/continuity. *See* Baymark Defendants' Motion [Docket No. 105] at 1 n.1. Particularly in light of the page limitations governing this Reply, the Baymark Defendants will not address herein Plaintiff's RICO pattern/continuity arguments. Such arguments are fully addressed in Defendants David Hook and Tony Ludlow's Reply in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint.

[17]Baymark Defendants' Motion [Docket No. 105] at 12 n.51 (citing cases). Again, when Plaintiff's allegations regarding purported "wrongdoing" in the state-court case are disregarded, there are far fewer "predicate acts" alleged in the SAC. Moreover, it is only the purported state-court "wrongdoing" that causes the "scheme" to extend "to the present."

[18]Plaintiff repeatedly references Ludlow's statement during Denegre's deposition whether it is relevant to the issue at hand or not. *See, e.g.*, Response [Docket No. 113] at 1, 2, 23, 37, 43, 45. Of course, Plaintiff never bothers to mention that Ludlow did not intend to be heard as he thought he was on mute. *See* SAC, Exhibit 3, Ludlow Depo. at 260:3-261:25.

give rise to a federal obstruction of justice claim.[19] Plaintiff's Response also offers no authority for

the proposition that bankruptcy "fraud" can also give rise to a section 1503 claim. One of the cases

cited by Plaintiff in its Response involved a conviction for "unlawful threats" directed at a

bankruptcy trustee under the "court-officer clause" of section 1503.[20] In the other case on which

Plaintiff relies, although a "fraudulent involuntary bankruptcy petition" was involved, what made

the conduct actionable under section 1503 was the fact that such petition was filed "with the intent

to intimidate" a federal judge.[21]

    2.    *18 U.S.C. §§ 1956, 1957 (money laundering)*.—Plaintiff's Response spends over five

pages discussing its allegations of "money laundering."[22] Despite this fact, Plaintiff still fails to offer

a clear explanation of the basis for its claims under sections 1956 and 1957. For example, Plaintiff

seems to believe that it is sufficient for it to identify *any* "transaction." In this regard, Plaintiff points

to the loan from co-Defendant Super G Capital, LLC ("Super G").[23] As noted in the Baymark

Defendants' Motion, for a "transaction" to be actionable as "money laundering," it must *use* the

---

[19]The cases Plaintiff cites in support of its obstruction of justice argument all involve federal proceedings. *See, e.g.*, *United States v. McBride*, 362 F.3d 360, 372 (6th Cir. 2004) (upholding a conviction under 18 U.S.C. § 1503 when the defendant "acted with the intent to intimidate [federal] Judge Marbley as the latter prepared to sentence [the defendant's girlfriend]" in a federal tax evasion case); *United States v. Crispo*, 306 F.3d 71, 78 (2d Cir. 2002) (considering a conviction under "the court-officer clause" of section 1503 and concluding that the conduct charged, unlawful threats directed at a bankruptcy trustee, were covered by this clause); *United States v. Williams*, 874 F.2d 968, 976 (5th Cir. 1989) (recognizing that "[s]ection 1503 was enacted to protect individuals involved in federal judicial proceedings" and discussing the defendants' conduct in giving false testimony to a federal grand jury); *United States v. Davis*, 752 F.2d 963, 967 (5th Cir. 1985) ("The obstruction of justice counts involved Davis' failure to produce documents requested pursuant to a federal grand jury subpoena and Davis' alleged attempts to interfere with a witness in the proceeding against him.") (all cited in Plaintiff's Response [Docket No. 113] at 37-38).

[20]*Crispo*, 306 F.3d at 74, 78 (cited in Plaintiff's Response [Docket No. 113] at 38).

[21]*McBride*, 362 F.3d at 372.

[22]Response [Docket No. 113] at 38-43.

[23]*Id.* at 41-42.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SAC— Page 5**

"proceeds" of "specified unlawful activity."[24] The SAC pleads no facts to suggest that Super G made any loan with the "proceeds" of any "unlawful activity." Similarly, although Plaintiff's Response points to a "management fee," the SAC contains no allegations that the funds used to pay such management fee were the "proceeds" of any "unlawful activity."[25] In short, nothing Plaintiff offers in its Response demonstrates that the SAC has pleaded the facts necessary to support any predicate act of money laundering by the Baymark Defendants.

   3.    *18 U.S.C. §§ 152, 157 (bankruptcy fraud).*—Plaintiff once again concedes that it cannot rely on 18 U.S.C. § 157 as a RICO predicate act.[26] With respect to 18 U.S.C. § 152, Plaintiff's Response fails to point to any factual allegations in the SAC that would explain *how* the various "misrepresentations" allegedly contained in ACET Global's bankruptcy filing can be considered "material." Plaintiff merely makes the conclusory allegation that the various "false statements" were "designed to hide" the "fraud."[27] According to Plaintiff, the "fraud" was the fraudulent transfer of ACET Global's assets in October of 2018. However, as noted in the Baymark Defendants' Motion, the bankruptcy filing actually *disclosed* the existence of Plaintiff's state-court "fraudulent transfer" lawsuit.[28] Plaintiff does not acknowledge this disclosure or offer any explanation as to how the other purported "misrepresentations" could possibly serve to "hide" what was expressly disclosed.

---

[24]Baymark Defendants' Motion [Docket No. 105] at 13-14 (discussing section 1956).

[25]*See* Response [Docket No. 113] at 42.

[26]Response [Docket No. 113] at 33. Despite previously acknowledging this fact, *see* Plaintiff's Response in Opposition to the Baymark Defendants' Motion to Dismiss and Brief in Support [Docket No. 68] at 20, the SAC still asserted "predicate acts" under 18 U.S.C. § 157, *see* SAC ¶ 416.

[27]Response [Docket No. 113] at 35.

[28]Baymark Defendants' Motion [Docket No. 105] at 16-17.

4.      *18 U.S.C. §§ 1341, 1343 (mail/wire fraud)*.—Plaintiff does not dispute in its

Response that claims of mail fraud and wire fraud require "a scheme to defraud *by means of false*

*or fraudulent representation*."[29] Instead, Plaintiff argues issues that the Baymark Defendants did not

raise in their Motion, such as the fact that a defendant need not personally handle the mail at issue

and that a plaintiff need not have relied on the mailing/wiring at issue.[30] The point made in the

Baymark Defendants' Motion about the alleged predicate acts of mail and wire fraud is that the

"scheme" Plaintiff alleges is not one carried out "by means of" false or fraudulent representations;

rather, it is a "scheme" involving the "looting" of a company.[31]

As noted in the Baymark Defendants' Motion, RICO claims of mail and wire fraud must be

"particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern

from allegations that, upon closer scrutiny, do not support it."[32] Plaintiff's RICO claims of mail and

wire fraud cannot withstand such scrutiny.

## B.      Causation

The Baymark Defendants' Motion raised two causation problems with respect to the SAC.

First, the Motion points out that Plaintiff's injury must have been caused by the various predicate

---

[29]*Compare* Baymark Defendants' Motion [Docket No. 105] at 17-18 *with* Response [Docket No. 113] at 43-45.

[30]*See* Response [Docket No. 113] at 44.

[31]It is useful to compare the facts at issue in one of the cases cited in the Response. In *George v. Blue Diamond Petroleum, Inc.*, the "scheme" was one involving securities fraud in which the defendants sent out misleading circulars to investors and prospective investors. 718 F. Supp. 539, 550 (W. D. La. 1989), *aff'd*, 922 F.2d 838 (5th Cir. 1990) (cited in Plaintiff's Response [Docket No. 113] at 43). The fraudulent representations were used to get the investors to invest. In contrast, the supposed "looting" of ACET Global's assets did not require any "fraudulent representations."

[32]*Poe v. Bock*, EP-17-CV-00232-DCG, 2018 WL 4275839, at *4 (W.D. Tex. Sept. 7, 2018).

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SAC— Page 7**

acts alleged.[33] Plaintiff's Response makes no attempt to explain how Plaintiff was specifically harmed by, for example, any alleged "bankruptcy fraud" or "money laundering" by the Baymark Defendants. Thus, Plaintiff has waived its opposition to this issue.[34] Moreover, Plaintiff's Response acknowledges that Plaintiff was harmed by the "deplet[ion] of *all* of [ACET Global's] assets."[35] Thus, once the assets were gone, there was no more harm to be done.

The second causation argument raised by the Baymark Defendants in their Motion is the fact that Plaintiff has an ongoing attempt to collect its debt through its state-court proceeding, which alleges claims for fraudulent transfer.[36] If Plaintiff were correct about what happened (which it is not), this effort by Plaintiff to collect on its debt could succeed, and if it did, Plaintiff would not have suffered any RICO damages. Plaintiff's Response does not directly address the merits of this causation issue. Instead, Plaintiff merely takes issue with how the Baymark Defendants' Motion described one of the cases cited in its causation argument.[37] Other cases support this proposition, however, including one cited in Plaintiff's Response.  In *Berman, Trustee for the Estate of Michael S. Goldberg, LLC v. LaBonte*, a bankruptcy court granted a defendant's motion to dismiss a "lost debt" claim because the plaintiff's "actual lost debt damages are speculative for trebling purposes

---

[33]Baymark Defendants' Motion [Docket No. 105] at 15, 17. "The causal nexus between the alleged predicate acts and the [plaintiff's] injury must be direct." *Marriott Bros. v. Gage*, 911 F.2d 1105, 1108 (5th Cir. 1990).

[34]*See supra* notes 2-3.

[35]Response [Docket No. 113] at 45 (emphasis in original).

[36]Baymark Defendants' Motion [Docket No. 105] at 19.

[37]Response [Docket No. 113] at 46-47. For example, Plaintiff asserts that the Baymark Defendants did not disclose "that the quote was not a holding by the appellate court, but was a simple recitation of the district court's rationale." *Id.* at 47. However, in the Baymark Defendants' Motion, they expressly stated that the Second Circuit "recognized the District Court's conclusion." Baymark Defendants' Motion [Docket No. 105] at 19. There was no suggestion that the Second Circuit "adopted" or itself reached any "holding" similar to the District Court's analysis. Further, whether the issue is couched as "causation" or "ripeness" is merely a matter of semantics. *See* Response [Docket No. 113] at 47. The end result—the need for dismissal—is the same.

**BAYMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SAC— Page 8**

under RICO because the collateral actions to collect the judgment remain pending."[38] The court in that case cast the issue as one of "ripeness," but the end result is the same.[39]

### C.    18 U.S.C. § 1962(a)

As noted in the Baymark Defendants' Motion, a claim under RICO section 1962(a) requires a plaintiff to plead that it has suffered injury specifically *from the use* of "racketeering income."[40] Further, to state a claim under section 1962(a), the SAC would have to plead facts regarding "income" that was "derived . . . from a pattern of racketeering activity" as well as facts regarding the "use" or "investment" of such "income." Plaintiff's Response addresses its section 1962(a) claim in a single four-line paragraph, citing no authority and providing no substantive analysis.[41] Plaintiff makes no attempt whatsoever to point to facts stated in the SAC that would even suggest an injury to Plaintiff from the use or investment of racketeering income. For these reasons, Plaintiff has waived its response and conceded this basis for dismissal of its section 1962(a) RICO claim.[42]

## III.    Plaintiff's State Law Claims

In its Order, this Court recognized that the Fifth Circuit's "general rule" is to dismiss pendent state claims upon the dismissal of the federal claims giving rise to jurisdiction.[43] The Court also

---

[38]622 B.R. 503, 522 (Bankr. D. Conn. 2020) (cited in Plaintiff's Response [Docket No. 113] at 34).

[39]*Id.* at 521.

[40]Baymark Defendants' Motion [Docket No. 105] at 20.

[41]Response [Docket No. 68] at 47.

[42]*See supra* notes 2-3.

[43]Order [Docket No. 89] at 15.

concluded that "[a]ll factors counsel this Court to decline supplemental jurisdiction over Plaintiffs' state-law claims."[44]

  With respect to the substance of Plaintiff's state law claims, the Baymark Defendants note (1) Plaintiff's failure to challenge the assertion in the Baymark Defendants' Motion that Plaintiff cannot have relied on the one "misrepresentation" that the SAC specifically identifies; (2) Plaintiff's failure to explain how the Baymark Defendants can be liable for *both* breach of fiduciary duty *and* "aiding and abetting" such breach; (3) Plaintiff's failure to identify specific facts pleaded in the SAC that explain what "substantial assistance" any of the Baymark Defendants allegedly provided to any breaching fiduciary; and (4) Plaintiff's failure to explain how it can have a TUFTA claim against the Baymark Defendants, who were neither transferees nor the beneficiaries of any "fraudulent transfer." Accordingly, Plaintiff has also waived its opposition on these issues.[45]

---

[44]*Id.* at 16

[45]*See supra* notes 2-3.

\                                                Respectfully submitted,


                                                /s/ Edward P. Perrin, Jr.
                                                Edward P. Perrin, Jr.
                                                State Bar No. 15796700
                                                Jennifer R. Poe
                                                State Bar No. 00794470
                                                HALLETT & PERRIN, PC
                                                1445 Ross Ave., Suite 2400
                                                Dallas, TX 75202
                                                Telephone: (214) 953-0053
                                                Facsimile: (214) 922-4142
                                                eperrin@hallettperrin.com
                                                jpoe@hallettperrin.com

                                                **ATTORNEYS FOR DEFENDANTS**
                                                **BAYMARK PARTNERS MANAGEMENT, LLC;**
                                                **BAYMARK MANAGEMENT, LLC;**
                                                **BAYMARK ACET HOLDCO, LLC;**
                                                **BAYMARK ACET DIRECT INVEST, LLC;**
                                                **BAYMARK PARTNERS; DAVID HOOK;**
                                                **TONY LUDLOW; AND MATTHEW DENEGRE**


## CERTIFICATE OF SERVICE

On September 20, 2022, I electronically submitted the foregoing document with the Clerk of the  Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                                /s/ Edward P. Perrin, Jr.
                                                Edward P. Perrin, Jr.