UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| D&T PARTNERS, LLC (successor in interest to ACET VENTURE PARTNERS, LLC), et al., § § § § § **Plaintiffs,** § § v. § § BAYMARK PARTNERS, LP; *et al.* § § **Defendants.** § § | CIVIL CAUSE NO. 3:21-CV-01171-B |

***DEFENDANTS SG CREDIT PARTNERS, INC.'S AND MARC COLE'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
<u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>***

Andrea Levin Kim
State of Texas Bar No. 00798327
Northern District Bar No. 00798327
**DANIELS TREDENNICK, PLLC**
6363 Woodway Dr., Ste 700
Houston, Texas 77057
Telephone: (713) 917-0024
Fax: (713) 917-0026
Email: andrea.kim@dtlawyers.com

Rachel Williams
State of Texas Bar No. 24067175
Northern District Bar No. 24067175
**WILLIAMS LAW, PC**
10300 N. Central Expy., Ste. 544
Dallas, Texas 75231
Telephone: (214) 550-2858
Fax: (214) 550-2856
Email: rachel@williamslawtx.com

COUNSEL TO *DEFENDANTS SG CREDIT PARTNERS, INC. and MARC COLE*

## *TABLE OF CONTENTS*

1. Claims of Plaintiffs other than D&T are improper (Opp., at 9-13). ........................................1

2. Credit Partners cannot be liable under any claim (Opp., *passim*). ........................................2

3. Plaintiffs' RICO claims suffer from multiple fatal defects (Opp., at 12-22). ........................7

4. Plaintiffs' state law claims are unavailing (Opp., at 22-26)....................................................8

5. Plaintiffs fail to respond to challenges to personal and supplemental jurisdiction................10

6. Leave to replead......................................................................................................................10

## *TABLE OF AUTHORITIES*

**Cases**

*Chau v. Aviva Life & Annuity Co.*,
    2011 WL 1990446 (N.D. Tex. May 20, 2011)..................................................................9

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*,
    855 F.2d 241 (5th Cir. 1988)..............................................................................................7

*Inclusive Communs. Project, Inc. v. Lincoln Prop. Co.*,
    920 F.3d 890 (5th Cir. 2019)..............................................................................................6

*Kan v. OneWest Bank, FSB*,
    823 F. Supp. 2d 464 (W.D. Tex. 2011) .............................................................................2

*Miller v. SS Hosp. Grp., LLC*,
    2018 WL 3054691 (N.D. Tex. 2018) ................................................................................5

*Parker & Parsley Petroleum Co. v. Dresser Indus.*,
    972 F.2d 580 (5th Cir. 1992)..............................................................................................8

*Quadvest, L.P. v. San Jacinto River Auth.*,
    7 F.4th 337 (5th Cir. 2021) ................................................................................................5

*Rojero v. El Paso Cty.*,
    226 F. Supp. 3d 768 (W.D. Tex. 2016) .............................................................................9

*Saeed v. Bennett-Fouch Assocs., LLC*,
    2012 WL 13026741 (N.D. Tex. Aug. 28, 2012) ...............................................................9

*SSP Partners v. Gladstrong Invs. (USA) Corp.*,
    275 S.W.3d 444 (Tex. 2008)..............................................................................................6

*Walker v. Beaumont Ind. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019)..............................................................................................3

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*,
    90 F.3d 118, 123 (5th Cir. 1996).......................................................................................8

**Statutes**

TEX. BUS. & COM. CODE § 24.009(b)(2)....................................................................................9

TEX. BUS. ORGS. CODE § 101.453................................................................................................1

TEX. BUS. ORGS. CODE § 101.463(b)......................................................................................1, 2

**Rules**

Fed. R. Civ. P. 12(b), 12(b)(6) .................................................................................................. 1

Fed. R. Civ. P. 9(b) ............................................................................................................. 1, 9

Pursuant to Rules 12(b) and 9(b) of the Federal Rules of Civil Procedure, Defendants SG CREDIT PARTNERS, INC. ("Credit Partners") and MARC COLE ("Cole") hereby submit this reply memorandum of law in support of their motion to dismiss (Dkt. # 96) the Second Amended Complaint ("SAC") filed by Plaintiffs D&T PARTNERS, LLC ("D&T"), *et al.* (collectively, "Plaintiffs"). As set forth in Credit Partners and Cole's initial supporting memorandum (Dkt. # 96-1, cited as "Mem."), Plaintiffs' sparse, and in many instances demonstrably false, allegations against Credit Partners and Cole lack any plausible articulation of a claim against either, and Plaintiffs' arguments to the contrary in their opposition memorandum (Dkt. # 119, cited as "Opp.") should be rejected. For those reasons, the SAC fails to state a plausible claim as to each of the claims asserted against Credit Partners and Cole and should be dismissed with prejudice pursuant to Rule 12(b)(6) in its entirety as to Credit Partners and Cole.

**1. Claims of Plaintiffs other than D&T are improper (Opp., at 9-13).**

Plaintiffs' claims purportedly brought on behalf of ACET Global, LLC ("ACET") and Baymark ACET Holdco, LLC ("Holdco") are improper. To the extent Plaintiffs assert direct claims on behalf of ACET or Holdco, such claims fail for lack of standing as to claims against all defendants for the reasons set forth in Holdco's Motion to Dismiss (Dkt. # 103). To the extent Plaintiffs bring derivative claims against Credit Partners and Cole, those claims fail for failure to satisfy the statutory demand requirements of TEX. BUS. ORGS. CODE § 101.453. Plaintiffs contend that demand is not required and that this Court may treat Plaintiffs' derivative claims as direct claims because ACET and Holdco are closely held, but Plaintiffs fail to account for the express provisions of TEX. BUS. ORGS. CODE § 101.463(b) that limit application of the leeway afforded to closely held corporations to claims against "against a governing person, member, or officer of the limited liability company" and ***not*** to claims against third parties such as Credit Partners and Cole. In arguing that their derivative claims should be considered direct claims under § 101.463(c), in

an attempt to avoid the mandatory demand requirement, Plaintiffs fail to account for the conditional language of that subsection expressly limiting its application to only claims to which § 101.463(b) applies. TEX. BUS. ORGS. CODE § 101.463(c) (allowing a derivative claim to be deemed direct only "[i]f Sections 101.452-101.460 do not apply because of Subsection (b) and if justice requires"). Because Plaintiffs' claims against Credit Partners and Cole are derivative, and are claims against third parties to the entities, demand is not excused, and Plaintiffs' failure to plead compliance with the demand requirement is fatal to the derivative claims against Credit Partners and Cole.

Plaintiffs' response to these arguments is identical to their response to Credit Partners and Cole's motion to dismiss Plaintiffs' First Amended Complaint. *Compare* Plaintiffs' Response in Opposition to SG Credit's and Cole's Motion to Dismiss and Brief in Support (Dkt. # 67, cited as "Opp. to MtD FAC"), at 9-13 *with* Opp., at 9-12. Notably, Plaintiffs have not submitted a verification with respect to the SAC, still relying upon the verification of the FAC that the Plaintiffs submitted with their Opp. To Mtd FAC. (Opp., at 10 ("Plaintiff has supplemented its submission with a verification, curing any alleged defect. (Doc. No. 64).").) Plaintiffs' failure to make new arguments or cite new authority in opposition to these arguments show the speciousness of Plaintiffs' claims.

### 2. Credit Partners cannot be liable under any claim (Opp., *passim*).

The SAC utterly fails to plausibly allege any connection between Credit Partners and the wrongful conduct alleged. Credit Partners is conspicuously absent from the events, and in particular the foreclosure transaction, described in the SAC. As Credit Partners and Cole pointed out in their moving papers, "factual allegations must be placed in a context plausibly suggesting (not merely consistent with) each required element of the claim against each defendant." *Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 469 (W.D. Tex. 2011). With respect to RICO claims

in particular, a plaintiff "must plead the specified facts as to each defendant. It cannot lump together the defendants." *Walker v. Beaumont Ind. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019) (internal quotation marks omitted). In the Opposition, Plaintiffs do not point to any allegations of wrongdoing on the part of Credit Partners. Indeed, they cannot, because none exist. Plaintiffs' failure in this regard is fatal to all claims against Credit Partners.

Rather than plead actions taken by Credit Partners, Plaintiffs try to manufacture a basis to hold Credit Partners liable for the actions of other defendants and offer a "kitchen sink" of misleading juxtapositions, citations to deposition transcripts that are out of context, assertions that directly contradict material that Plaintiffs themselves incorporate by reference into the SAC, and unwarranted inferences constructed therefrom as follows:

| **Plaintiffs' Assertions** | **Credit Partners' & Cole's Response** |
|---|---|
| "Bellah was an employee of SG Credit and based in Texas. (SAC ¶ 31). He was in fact a senior executive of SG Credit and followed Cole to this new spin off company from Super G. (SAC ¶ 31)." (Opp., at 25.) | That assertion is false and contradicted by other allegations incorporated by reference into the SAC. At his deposition, Cole clearly and unequivocally testified that Bellah *did not* work for Credit Partners: "Mr. Cole, with respect to Mr. Bellah, does he still work at Super G? A. *No.* Q. Does he work at SG -- A. *No.* Q. -- Credit Partners? *No*?" (SAC, Ex. 8 (Cole 3/29/2021 Tr.) at 148:7-12.) Further, Cole testified that Bellah was employed by *Super G* and that Bellah no longer worked at *Super G*. (*Id.* at 17:2-12.) The testimony of other defendants uniformly follows suit. (*See, e.g.*, SAC, Ex. 1 (Denegre Tr.) at 137 & 218; Ex. 3 (Ludlow Tr.) at 44, 255; Ex. 7 (Hook Tr.) at 70.) Plaintiffs have no basis to assert that Bellah worked for Credit Partners, and he did not. |
| "The ACET Global transaction was transferred to Cole and SG Credit, and Cole and his associates oversaw and handled the ACET matter—continuing the fraudulent scheme in the same manner. (SAC ¶ 80)." (Opp., at 12.) | That assertion, and similar assertions (Opp., at 11 & 24), are false and contradicted by other allegations incorporated by reference into the SAC. Credit Partners has nothing to do with either the original ACET loan or the subsequent Windspeed loan, both of which are owned by Super G and are payable to Super G. Cole clearly and unequivocally testified that Credit Partners *did not purchase* either loan and that *neither loan was "transferred"* to Credit Partners. (SAC, Ex. 9 (Cole 4/1/21 Tr.) at 269:1-15.) Plaintiffs have no basis to assert otherwise, and their assertion is directly contradicted by Cole's deposition testimony incorporated into the SAC. |
| "According to the [sic] Cole's sworn testimony, the "SG" in SG Credit Partners is an acronym that stands for "Super | That assertion is false and contradicted by other allegations incorporated by reference into the SAC. Even if a name carried any significance, which it does not, Cole did not testify that "SG" in SG Credit Partners, Inc. is an acronym for "Super G"—in fact, he testified |

| | |
|---|---|
| G"—that is, "Super G" Credit Partners, LP. (SAC ¶ 41 n. 33)." (Opp., at 11.) | that "SG" "doesn't stand for anything, but it pays tribute to where we came from, which is Super G Capital." (SAC, Ex. 8 (Cole 3/29/2021 Tr.) at 70:4-19.) Plaintiffs have no basis to assert otherwise, and their assertion is directly contradicted by Cole's deposition testimony incorporated into the SAC. |
| "Cole spun off, creating SG Credit, and brought *his* loan business, which as he testified, 'ACET and Windspeed fell under.' ([SAC, Exh. 8, 19:20-20:02])." (Opp., at 12.) | That assertion is based upon Cole's deposition testimony taken out of context. Cole clearly and unequivocally testified that Credit Partners *did not purchase* either loan and that *neither loan was "transferred"* to Credit Partners. (SAC, Ex. 9 (Cole 4/1/21 Tr.) at 269:1-15.) Cole's testimony cited in support of Plaintiffs' assertion (SAC, Ex. 8 (Cole 3/29/2021 Tr.) at 19:18-20:1) does not say that Credit Partners owned the ACET or Windspeed loans. Cole testified that Credit Partners generally deals in the *type of loans*, i.e., "cash flow loans," that Super G entered into with ACET and Windspeed, and notably does not say that the ACET or Windspeed loans were acquired or otherwise transferred from Super G to Credit Partners. |
| "In 2021, Cole appeared as the 'corporate representative' for Super G … (SAC, Exh. 8)." (Opp., at 11.)<br><br>"And in March of 2021, Cole employed and directed Super G's attorney … (SAC ¶ 300)." (*Id.* at 15.) | Those assertions are misleading juxtapositions. Cole's appearance as ***Super G***'s designated corporate representative to testify about actions that Cole took on behalf of ***Super G*** (SAC, Ex. 8 (Cole 3/29/2021 Tr.) at 19:18-20:1), does not give rise to any inference that ***Credit Partners*** was involved at all in those actions taken on behalf of ***Super G***. |
| "[A]ccording to Cole's sworn testimony, [Credit Partners] serviced Windspeed (even as the date of his deposition in 2021)." (Opp., at 11.)<br><br>"[Cole] specifically testified that as of March 29, 2021 (the date of his deposition), SG Credit's staff was working with Windspeed. [(SAC, Exh. 8, p. 18:16-23)])." (*Id.*) | Those assertions are misleading and contradicted by other allegations incorporated by reference into the SAC. At his deposition, Cole clearly and unequivocally testified that an agreement is in place between Credit Partners and Super G whereby Credit Partners services certain of ***Super G's loans***. (SAC, Ex. 8 (Cole 3/29/2021 Tr.) at18:8-22.) Plaintiffs omit the critical fact that any undertaking on the part of Credit Partners pursuant to the agreement with Super G was on behalf of ***Super G*** and concerned assets owned by ***Super G***. The servicing agreement mentioned by Cole does not establish that the Windspeed loan was owned by any entity other than Super G or that Credit Partners had anything to do with the underlying loan transaction, which it did not. |
| "Cole further testified that he 'originated loans as Super G Capital and sold those loans to SG Credit Partners. And when that pool of assets got large enough to generate income to hire my team, we [his team, including Bellah] resigned from Super G Capital and became employees of SG Credit Partners.' ([SAC, Exh. 8] at 70:23-71:04)." (Opp., at 12.) | Those assertions are false and contradicted by other allegations incorporated by reference into the SAC. As set forth herein, (1) Cole clearly and unequivocally testified that Bellah ***did not*** work for Credit Partners, and (2) Cole testified that Bellah was employed by ***Super G*** and that Bellah no longer worked at ***Super G***. Plaintiffs have no basis to assert that Bellah transitioned to Credit Partners, and their assertion is directly contradicted by Cole's deposition testimony incorporated into the SAC. |

4

| | |
|---|---|
| "And Cole testified that in 2019, Bellah was advising him on the foreclosure (which occurred after he testified he left for SG Credit with his 'team.' (SAC, Exh. 8, p. 160:10-24) Because SG Credit began in 2018; and SG Credit had taken over the Windspeed relationship; and Bellah was still working with Windspeed in 2019; then Bellah was clearly working under SG Credit ...." (Opp., at 25.) | That assertion is an inference lacking foundation in the SAC. Apparently abandoning the unsupported assertion that Bellah actually worked for Credit Partners, Plaintiffs seek to draw an inference that Bellah must have been working for Credit Partners in 2019 because Bellah was working on the Windspeed loan and that loan was owned by Credit Partners. As described herein, however, Credit Partners did not own either the original ACET loan or the subsequent Windspeed loan, both of which are owned by Super G. Therefore, no inference can be drawn that Bellah must have been acting on behalf of Credit Partners in 2019 when advising Super G (through Cole) in 2019. |

Inexplicably, Plaintiffs rely practically exclusively upon allegations flatly contradicted by the documents Plaintiffs incorporate by reference into the SAC, but those contradictory allegations are entitled to no weight because, "[i]f an attached exhibit contradicts a factual allegation in the complaint, then indeed the exhibit and not the allegation controls." *Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021) (internal quotation marks omitted); *see Miller v. SS Hosp. Grp., LLC*, 2018 WL 3054691, at *4 (N.D. Tex. 2018) (same). For example, the allegation that Bellah was an employee of Credit Partners is entitled to no weight, as that allegation is contracted by Cole's deposition testimony attached to the SAC. The allegation that Credit Partners somehow acquired the ACET or Windspeed loans, and thereby acquired a seat on the Windspeed Board, is also entitled to no weight for the same reason. The assertion that Cole was acting on behalf of Credit Partners at any time alleged in the SAC lacks any foundation and is contradicted by the numerous express allegations in the SAC that Cole was acting on behalf of Super G. The SAC lacks any allegation that Credit Partners engaged in any wrongful conduct whatsoever with respect to the ACET or Windspeed loans, and Plaintiffs' unfounded arguments concerning the servicing agreement are nothing more than misguided attempts to tie Credit Partners to Super G. As such, any assertion that Credit Partners is liable for the actions of Bellah as an agent of Credit Partners or that Credit Partners was acting on its own behalf through Cole as an owner of the ACET

or Windspeed loans necessarily fails. Guilt by association does not satisfy federal pleading standards; rather, where allegations "do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown— that the pleader is entitled to relief." *Inclusive Communs. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (internal quotation marks omitted).

Plaintiffs' feeble attempt to allege successor liability or veil piercing in order to demonstrate that Credit Partners should be held responsible for the actions of Super G similarly fails. There is no express agreement or transaction concerning ownership of the ACET or Windspeed loans upon which to base a successor liability claim. (Mem., at 7-8.) There is no requisite interrelationship between Credit Partners and Super G sufficient to pierce the corporate veil, much less one that is premised upon fraud and pled with particularity. *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008) (limiting veil piercing to "when the corporate form has been used as part of a basically unfair device to achieve an inequitable result" such as "to perpetrate a fraud, evade an existing obligation, achieve or perpetrate a monopoly, circumvent a statute, protect a crime, or justify wrong") (internal quotation marks omitted). At best, Plaintiffs plausibly allege some kind of business relationship between Credit Partners and Super G, but what is indisputably lacking, however, is any allegation that such relationship relates in any possible way to the actions described in the SAC. Without such connection, a relationship in a vacuum means nothing and does not state a plausible claim for relief. As such, there is no basis to attribute what are expressly alleged in the SAC as ***Super G***'s actions to Credit Partners, including but not limited to ***Super G***'s receipt of warrants to purchase a 40% ownership interest in Windspeed (SAC ¶¶ 161, 170, 176, & 254) and ***Super G's*** right to appoint a Windspeed director (SAC ¶ 168). Lacking any plausible factual allegations against Credit Partners itself, or any legal or factual basis to hold Credit Partners liable for any of the

alleged wrongdoing of others, each of the claims asserted in the SAC against Credit Partners (Counts I-III, IV, & VI-IX) fails to state a plausible claim and must be dismissed.

### 3. Plaintiffs' RICO claims suffer from multiple fatal defects (Opp., at 12-22).

In their initial memorandum, Credit Partners and Cole set forth several fundamental defects in Plaintiffs' RICO claim, any one of which is fatal to such claim. Other defendants have done so as well, and any failure on the part of Plaintiffs to plausibly allege each of the necessary elements of a RICO claim such as a pattern of racketeering activity, predicate racketeering acts, and the existence of an enterprise by association-in-fact dooms that claim as to all defendants. (Mem., at 10-11.) In an effort to avoid dismissal of their claims as to Credit Partners and Cole in particular, Plaintiffs rely on allegations entitled to no weight for the reasons set forth in the preceding sections of this reply, namely, that Bellah was an employee of Credit Partners, that Credit Partners owned or owns the ACET loan or the Windspeed loans, and that Credit Partners and Super G are one entity such that Credit Partners is responsible for Super G's actions. In the absence of any plausible allegations, Plaintiffs' remaining RICO arguments are empty rhetoric.

Specifically, consistent with the overarching theme of Credit Partners and Cole's briefing, Plaintiffs make no plausible connection between Credit Partners or Cole to the wrongdoing alleged in the SAC. Neither Credit Partners nor Cole is a "person" in a RICO action because neither poses "a continuous threat of engaging in acts of racketeering." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988). Plaintiffs argue that the SAC alleges active and continuous involvement on the part of Cole on behalf of Super G and Credit Partners (Opp., at 15), but their citations either do not show such involvement or are conclusory and entitled to no weight. Plaintiffs again maintain that the SAC contains a plausible basis to conclude that Credit Partners and Cole participated in the RICO enterprise (Opp., at 18-19), but, again, there are no citations to the SAC indicating such participation.

The keystone argument that Cole, and Credit Partners through Cole, violated RICO is the allegation that that Cole, indisputably on behalf of Super G, knew of and ultimately approved parts of the workout transaction, but that level of participation falls well short of alleging that Cole took part in any enterprise engaging in acts of racketeering. It bears emphasizing that "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996); *see* Mem., at 13-14 (citing cases). Because the only activity in which Cole is alleged to have participated (on behalf of Super G) is a "single, otherwise lawful transaction," *i.e.* the challenged UCC foreclosure of the collateral securing the Super G loan, Cole's doing so cannot possibly amount to a pattern of racketeering activity, the operation or management of a RICO enterprise, or a conspiracy to do either. Without Cole's participation in the "single, otherwise lawful transaction," which does not violate RICO, Plaintiffs have absolutely nothing to support their RICO claims against Cole and Credit Partners, and the implausible RICO claims under § 1962(c) (Count I), § 1962(a) (Count II), and § 1962(d) (Count III) must be dismissed.

4. **Plaintiffs' state law claims are unavailing (Opp., at 22-26).**

Should the Court (again) dismiss Plaintiffs' federal claims, the Court should (again) decline to exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(c)(3) and dismiss all such claims. (*See* Dismissal Order, at 15-16.) As this Court has already found, the balance of the factors courts consider when deciding whether to exercise pendent jurisdiction—"judicial economy, convenience, fairness and comity"—weigh heavily in favor of declining to exercise pendent jurisdiction in this matter. (*Id.* (citing *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 586-90 (5th Cir. 1992).) Upon the dismissal of the RICO claims, there is no reason to retain jurisdiction over the remaining claims, especially given the pending Collection

Action against most of the defendants here. (SAC ¶ 1 n.5.) And once again, the Opp. is virtually word-for-word identical to the Opp. to MtD FAC with respect to the arguments to dismiss the state law claims. Plaintiffs have offered the Court no new reason to exercise jurisdiction over the state law claims.

Plaintiffs' state law claims should also be dismissed on their merits. Plaintiffs plead a fraud claim against Cole (Count IV), which they concede is subject to Rule 9(b) (Opp., at 8), but then do not even attempt to argue that their fraud allegations *against Cole* meet that standard (Opp., at 22-23), and instead allege only a statement made *by a different person* as a basis of their fraud claim (Opp., at 22). This is patently insufficient to allege a fraud claim *against Cole*. *See Chau v. Aviva Life & Annuity Co.*, 2011 WL 1990446, at *4 (N.D. Tex. May 20, 2011). Other than an *ipse dixit* claim that Rule 9(b) does not apply to non-fraud elements (Opp., at 9), Plaintiffs ignore the authority saying that, because the underlying torts sound in fraud, the conspiracy (Count VIII) and aiding and abetting (Count VI) claims are subject to Rule 9(b)'s heightened standard. (Mem., at 19-20.) Again, Plaintiffs plead no facts to show that Cole or Credit Partners conspired with any other defendant to harm Plaintiffs or aided and abetted any breach of fiduciary duty, much less with the particularity required by Rule 9(b). Further, Plaintiffs admit that their TUFTA claim (Count VII) is futile when they acknowledge that neither Cole nor Credit Partners are transferees of the transaction at issue. TEX. BUS. & COM. CODE § 24.009(b)(2). Finally, Plaintiffs' cause of action for respondent superior and/or agency liability (Count VIX [sic]) should be dismissed because (a) it is not a cause of action recognized under Texas law, *see Rojero v. El Paso Cty.*, 226 F. Supp. 3d 768, 772 (W.D. Tex. 2016), and (b) Plaintiffs have not alleged that Cole caused any defendant to perpetuate an actual fraud, much less primarily for Cole's direct benefit. *See Saeed v. Bennett-Fouch Assocs., LLC*, 2012 WL 13026741, at *2 (N.D. Tex. Aug. 28, 2012). Each of the state law claims must therefore be dismissed as to Credit Partners and Cole in its entirety.

**5. Plaintiffs fail to respond to challenges to personal and supplemental jurisdiction.**

In their initial memorandum, Credit Partners and Cole argue that, in the event the RICO claims are dismissed, there is no personal jurisdiction over Credit Partners (Mem., at 24-25), and that this Court should decline to exercise supplemental jurisdiction over the state law claims (Mem., at 25). Plaintiffs' failure – for the second time (*compare* Opp. to MtD FAC *with* Opp.) - to respond to each of those arguments is a concession to that relief.

**6. Leave to replead.**

The Court should decline to allow Plaintiffs *another* chance to replead. *See* Opp,. at 10. Three bites at the apple, with no effort to address deficiencies pointed out by the defendants and the Court (other than to repetitively summarize previously deficient allegations – *see* Redline of FAC to SAC, Dkt. # 96-2) and no attempt to make new arguments or cite new law in response to a motion to dismiss on the hope that they be permitted to replead yet again is a cynical approach to the judicial system that should not be rewarded.

WHEREFORE, for the reasons set forth herein and in their initial supporting memorandum, and also as set forth in the motion papers submitted by the other defendants which are adopted and incorporated herein by reference, Credit Partners and Cole respectfully submit that the SAC should be dismissed in its entirety with prejudice as to them.

Respectfully submitted,

DANIELS TREDENNICK, PLLC

BY:   */s/ Andrea L. Kim*
       Andrea Levin Kim
       State of Texas Bar No. 00798327
       Northern District Bar No. 00798327
       **DANIELS TREDENNICK, PLLC**
       6363 Woodway Dr., Ste 700
       Houston, Texas 77057
       Telephone: (713) 917-0024
       Fax: (713) 917-0026
       Email: andrea.kim@dtlawyers.com

Rachel Williams<br>
State of Texas Bar No. 24067175<br>
Northern District Bar No. 24067175<br>
**WILLIAMS LAW, PC**<br>
10300 N. Central Expy., Ste. 544<br>
Dallas, Texas 75231<br>
Telephone: (214) 550-2858<br>
Fax: (214) 550-2856<br>
Email: rachel@williamslawtx.com

COUNSEL TO *DEFENDANTS SG CREDIT PARTNERS, INC. and MARC COLE*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2022, copy of the foregoing was filed electronically by the EM/CMF System for the United States District Court for the Northern District of Texas and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ Andrea Levin Kim*
Andrea Levin Kim

11