IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| D&T PARTNERS, LLC, successor-in-interest to ACET Venture Partners, LLC, *et al* §§§§ *Plaintiff*, §§ v. §§ BAYMARK PARTNERS, LP, *et al.*, §§§ *Defendants*. § | Civil Cause: 3:21-CV-1171-B |

**WINDSPEED EMPLOYEES' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO THE WINDSPEED EMPLOYEES' MOTION TO DISMISS AND BRIEF IN SUPPORT**

TO THE HON. JANE J. BOYLE;
UNITED STATES DISTRICT JUDGE:

COME NOW in this cause defendants Ms. Zhexian Lin ("Lin"), Ms. Dana Marie Tomerlin ("Tomerlin"), Ms. Padasamai Vattana ("Vattana"); Ms. Vanessa Torres ("Torres" and together with Lin, Tomerlin and Vattana the "Windspeed Employees"), and files this, their *Windspeed Employees' Reply to Plaintiffs' Response in Opposition to the Windspeed Employees' Motion to Dismiss and Brief in Support* (the "Reply"). In support of the Reply, the Windspeed Employees would respectfully show the Court as follows:

## I. SUMMARY

1. The Windspeed Employees were just that – employees at a company. Taking the Plaintiffs' Second Amended Complaint (the "SAC") at its face, the Windspeed Employees lack critical knowledge of core allegations within the SAC. Rather, the allegations within the SAC demonstrates only that the Windspeed Employees were simply engaged typical work-a-day activities. Nevertheless, the Windspeed Employees have been targeted by this SAC for RICO

claims usually reserved for criminal enterprises, not employees of a company in a business dispute with a jilter junior creditor.

2.  The SAC fails to show RICO liability for the Windspeed Employees and fails to show continuity with regard to the alleged scheme.

3.  Windspeed Employees respectfully request the Court incorporate the other replies into this for the purposes of judicial economy.

## II. ARGUMENTS AND AUTHORITY

A. This is Not a Case Concerning Long Term Criminal Conduct

4.  Plaintiff cites to a potpourri of federal cases for its general conclusion that RICO was intended by Congress to have a broad outreach. See Response, pgs. 11-12, and 15. Plaintiff wants to stop the analysis there and find that RICO can touch any of the facts alleged and parties involved in this case. It would be an understatement to say that Plaintiff oversimplifies the analysis. Plaintiff heavily relies on *Sedima v. Imrex Co., Inc.*, 473 U.S. 479 (1985), which provides that RICO is to "be liberally construed to effectuate its remedial purposes." See id. at 498. What are those "remedial purposes"? Specifically, the remedial purposes of RICO are to combat long-term criminal conduct. See *GFRS Equipment Leasing Fund II LLC v. Diane Trang Nguyen*, 2019 WL 3530421, at *4 (N.D. Tex. Aug. 1, 2019 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). Though Plaintiff would wish to place all alleged bad deeds under the guise of RICO, there is a significant caveat to that approach: "RICO [is not] a surrogate for garden-variety fraud actions properly brought under state law." *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (quoting *Tabas v. Tabas*, 47 F.3d 1280, 1310 (3d Cir. 1995)); *Delta Truck & Tractor, Inc.v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988) (RICO was not "intended to extend

to fraudulent commercial transactions affecting interstate commerce"). Plaintiffs' federal suit is exactly that, a garden-variety fraud allegation vastly inflated to look like a RICO suit.

B. Plaintiffs Have Failed to Sufficiently Plead Continuity

5.   It is well established, there must be continuity in a fraudulent scheme in order for it to fall under RICO, and that continuity can be established by either alleging a "closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'" *Zastrow v. Houston Auto Imports Greenway, Ltd.*, 789 F.3d 553, 561 (5th Cir. 2015).

6.   Continuity over an open period requires "a threat of continued racketeering activity." *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)). This may be established if it is plausibly alleged that the predicate acts "themselves involve a distinct threat of long-term racketeering activity" or "are part of an ongoing entity's regular way of doing business." *Id.* (quoting *H.J., Inc.*, 492 U.S. at 242-43). In this case, the only allegations of post-foreclosure acts related to the litigation brought by Plaintiffs. The inference that some future wrong might be committed by another defendant group is simply unfounded conjecture.

7.   With regard to closed-end continuity, certain undue inferences are still made to establish continuity, especially with regards to an association-in-fact. *See Delta Truck*, 855 F2d at 244 (an enterprise must not briefly flourish and fade but "function[] as a continuing unit"). To establish closed period continuity, the Plaintiffs need not just show that the events occurred over a "substantial period of time". It is also relevant whether there was only one alleged scheme and whether there exists broad or ongoing criminal behavior at which the RICO statue was aimed.[1] Here, only one alleged "scheme" exited and there was no broad ongoing criminal behavior.

---

[1] See this Court's *Memorandum Opinion & Order* at p. 13. [**Docket No. 89**]

**WINDSPEED EMPLOYEE'S REPLY**                                      **PAGE 3 OF 12**

8. Plaintiffs have not established the continuity element of a RICO enterprise. According to Plaintiffs, the various co-conspirators of the RICO enterprise set out to do one thing: denude the assets of ACET in order to defraud one of its secured creditors, one of the plaintiffs. This was accomplished, according to Plaintiffs, by transferring the assets of ACET over a few months into Windspeed and then making the transfer official by way of a back-dated foreclosure sale. Once the foreclosure sale took place and the assets were now the property of Windspeed, the mission was accomplished under Plaintiffs' theory. If Plaintiffs wish to cast Defendants' defense of pending litigation as an attempt to further defraud Plaintiff, such alleged actions are being committed as part of an "otherwise lawful" defense and do not indicate a threat of continued criminal acts, which are necessary to show continuity. *See Zastrow*, 789 F.3d at 561. Therefore, the Complaint fails to sufficiently allege RICO claims against Defendants.

9. Plaintiffs cite to *Cypress/Spanish Ft. I, L.P. v. Pro. Serv. Indus., Inc.*, 814 F. Supp. 2d 698 (N.D. Tex. 2011) for the proposition that a RICO claim can arise from a single "scheme". In the opinion the Court holds that continuity can be demonstrated "in various way", leaving the determination to the Court. *Cypress/Spanish Ft. I, L.P. v. Pro. Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 714 (N.D. Tex. 2011).[2] Regardless of whether a single scheme can give rise to a RICO claim, the plaintiff must still demonstrate continuity. Plaintiffs have not remedied their shortcomings from the prior 1st Amended Complaint and the Court should dismiss the SAC for the same reasons.

C. Conspiracy Claims Also Fail

---

[2] The facts are also distinguishable. In *Cypress/Spanish* the alleged predicate acts by the defendants were wrongs independent of the ultimate alleged scheme. That is to say, the plaintiff would have an independent cause of action against the actors for failing to follow the contractual requirements for the earthwork and lying about the work quality. In this case, all of the alleged predicate acts against the Windspeed Employees require that Windspeed and the others actually perpetrated the ultimate wrong against the Plaintiffs. Stated differently, setting up a CubeSmart account in one's own name for business purposes is not a crime. If it could ever exist as a crime (which is denied) it would require the existence of the scheme alleged. That was not the case in *Cypress/Spanish.*

10. As to conspiracy to commit RICO, Plaintiff cites to the general standard that a plaintiff need only allege facts from which it may be inferred that a party had knowledge and agreed to participate in the scheme. *See* Response, pg. 20; *U.S. v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998). However, Plaintiff leaves out the inconvenient qualifier that "close association with conspirators, standing alone, will not support an inference of participation in the conspiracy." *U.S. v. Maltos*, 985 F.2d 743, 746 (5th Cir. 1992) (conspiracy may not be proven by placing defendant in "a climate of activity that reeks of something foul"). Furthermore, a defendant's knowledge of or participation in a conspiracy "will not be lightly infer[red]." *Id.* (citing *U.S. v. Jackson*, 700 F.2d 181, 185 (5th Cir. 1983). Plaintiffs do not plausibly allege that Defendants had actual knowledge of a conspiracy to defraud Plaintiff. Rather, Plaintiffs lean into Defendants' close affiliations with other defendants to ask the Court to infer that Defendants agreed to conspire in this scheme. The Court cannot infer knowledge or an agreement in this instance.

11. Plaintiff, seeking to over-state/misrepresent the elasticity of RICO, also relies on the *Reves v. Ernst & Young* opinion. 507 U.S. 170 (1993). Plaintiff represents that the *Reves* opinion holds that any person could be liable as a RICO person, regardless of whether or not they exercised any supervisory authority over the enterprise or scheme. *See* Response, pg. 13. This was not the standard in 1993, and it is certainly not the standard now. In the Fifth Circuit, *Reves* is not interpreted to hold that any party could be a RICO person, but rather, the party must have supervisory involvement in the enterprise. *See Ranieri v. AdvoCare International, L.P.*, 336 F. Supp.3d 701, 717 (N.D. Tex. 2018). To satisfy the "conduct or participate" requirement for a RICO person, the "plaintiff must set forth facts plausibly establishing that the defendant 'participated in the operation or management of the enterprise itself,' meaning that the defendant had 'some part in directing the enterprise's affairs." *Id.* (quoting *Reves*, 507 U.S. at 179, 183). In

other words, the "proper RICO defendant must have some sort of supervisory involvement." *Id.* (citing *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015)). This is precisely what Defendants have argued is missing in the Complaint. In fact, the Complaint argues the opposite: that Mr. Szeto was a "puppet" doing the will of others.

12. Plaintiffs further argue that a plaintiff does not need to prove that a defendant personally committed a predicate act in order to sufficiently allege the defendant is a RICO person. *See* Response, pgs. 13-14 (citing *Simmons v. Jackson*, No. 3:15-cv-01700-S-BT, 2019 WL 3043927, at *3 (N.D. Tex. June 7, 2019)). Plaintiff ignores that it does, however, need to plausibly allege that the defendant helped plan/direct the scheme for which the predicate acts were committed and, if the defendant is a "lower rung participant," that it did so "under the direction of upper management." *See Ranieri*, 336 F. Supp.3d at 717 (plaintiffs allegations fail to show certain defendants "had the power to direct the enterprise's affairs or had any kind of supervisory involvement" and that they "were acting under the direction of anyone . . ."). Importantly, "RICO liability does not arise from promoting an enterprise in the course of conducting one's own affairs." *Id.* (citing *Reves*, 507 U.S. at 185). Given the full and accurate picture of what the law states, Plaintiff has not plausibly alleged that Defendants "conducted or participated" in the racketeering scheme.

13. With regard to *Boyle v. U.S.*, Plaintiffs argue that a RICO person need not practice any control over an association-in-fact because an enterprise does not require a "hierarchical structure or "chain of command." *See* Response, pg. 17; 556 U.S. 938 (2009). Plaintiffs asks the Court to accept that it has sufficiently labeled Defendants as RICO persons by alleging they "acted in a manner outside the scope of their purpose or employment . . . ." *See* Response, pg. 20. However, Plaintiff misrepresents the relevance of *Boyle*'s holding. *Boyle* stands for the principal

that the "structure" of an association-in-fact enterprise need not require a "hierarchical structure" or "chain of command." *See* 556 U.S. at 939. The opinion in *Boyle* does not conclude that a RICO person need not practice any control or take a supervisory role in the racketeering scheme. What *Boyle* **does** confirm is that any RICO person must have the "common purpose of engaging in a course of conduct" to be affiliated with an enterprise. *See id.* at 939. In this instance, Plaintiff seeks to manufacture support for its belief that Defendants need not exercise any control or supervision over the enterprise to be considered RICO persons. Plaintiff will find no support for its manufactured legal theories in *Boyle*, nor elsewhere.

D. Inferential Leaps to Allege RICO Liability

14. In the Response, Plaintiffs' efforts to highlight what it believes to be its best argument for liability against the Windspeed Employees end up putting the frivolity of Plaintiffs' case against the Windspeed Employees on full display. Plaintiff's allegations are such: (1) two employees who worked in fulfillment "assisted" the enterprise by renting a temporary storage unit to store assets of ACET and put the unit under a personal name in order to "conceal their fraud;" (2) one employee took the ACET website and made it into the Windspeed website and closed/diverted bank accounts for ACET; and (3) the employee accountant executed a request to be the new account owner for an ACET account and listed herself as the new account owner . . . while using her Windspeed e-mail address. *See* Response, pgs. 22-25. Simply reading through the list of alleged predicate acts, it is clear that Plaintiffs have simply sought to assign federal crimes to mundane tasks in an effort to create the illusion of broad criminal activity, when in fact what is alleged is selling inventory in the ordinary course, setting up a website, accepting a job offer, filing paperwork, sending items *via* courier, etc. Its akin to driving behind another car all day noting driving habits, then crashing into the car and claiming RICO.

15. There are numerous assumptions made which lead Plaintiffs to the conclusion that the Windspeed Employees are RICO persons, but missing from these allegations is any explanation as to how these employees knew about the fraudulent scheme or that they knew about Plaintiff itself. In fact, the testimony from the Windspeed Employees that is incorporated into the SAC[3] shows they knew practically nothing of the parties and the entities which constituted the alleged enterprise. *See* SAC, Ex. 4, pg. 19; SAC, Ex 5, pg. 19; SAC Ex. 10, pg. 23.[4]

16. This lack of knowledge is fatal to Plaintiffs' RICO claims against the Windspeed Employees. For example, Plaintiff avers that the fulfillment employees rented a storage unit under a personal name in order to "conceal their fraud." Plaintiffs cannot point to a single allegation in the entire SAC that even remotely supports the inference that these employees acted with knowledge that they were supporting a fraudulent scheme. The words from the Northern District in *Ranieri* ring clear in this context: promoting an enterprise in the course of conducting one's own affairs does not make a party a participant in a fraudulent scheme. 336 F. Supp.3d at 717.

E. Plaintiff's Theory of Liability Suffers From Irreparable Gaps

17. The wealth of case law regarding the requisite participation needed to make a RICO person makes its abundantly clear that liability cannot be had against the Windspeed Employees. As much as Plaintiff argues that ordinary employees can be participants in racketeering activity because RICO is applied "broadly," the standard given by *Reves*, *Boyle*, and *Ranieri* makes it clear that you cannot have a RICO person within a degree of control or supervision over the enterprise.

---

[3] Any allegations which suggest the Windspeed Employees had knowledge of the scheme are entitled to no weight because, "[i]f an attached exhibit contradicts a factual allegation in the complaint, then indeed the exhibit and not the allegation controls." *Quadwest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021); *see Miller v. SS Hosp. Grp., LLC*, 2018 WL 3054691, at *4 (N.D. Tex. 2018).

[4] Incredibly, Plaintiff even admits that at least one employee, Dana Tomerlin, was not made aware of the foreclosure sale; the very sale that the enterprise allegedly orchestrated to pull off the fraud. *See* Doc. 91, pg. 111.

Plaintiff's arguments for the reach of RICO betray the fact that it knows that the Windspeed Employees never knowingly participated in some scheme to defraud Plaintiff.

18. Plaintiff tries to argue its position that the Windspeed Employees can be RICO persons, as the employees of an enterprise, but Plaintiff leaves it unclear as to what enterprise he is referring to. As is argued in the Reply for Defendants Windspeed Trading, LLC ("Windspeed") and William Szeto, Plaintiff impermissibly seeks to argue that an enterprise can be both an association-in-fact AND a legal enterprise, such as Windspeed. *See Allstate Insurance Company v. Benhamou*, 190 F. Supp.3d 631, 649 (S.D. Tex. 2016) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 n. 16 (5th Cir. 2000)). Plaintiffs cannot do so, and, to the extent Plaintiff opts to argue for an association-in-fact, as opposed to Windspeed or Baymark, Plaintiffs fails to allege in the SAC that the Windspeed Employees were acting as employees of the entire association.

19. Based on the scant allegations brought by Plaintiff to connect the Windspeed Employees to the alleged RICO conspiracy, it appears that Plaintiff's argument against the Windspeed Employees must rest on a "collective knowledge" theory. In the context of a RICO conspiracy cause of action, where "an essentially subjective state of mind is an element of a cause of action," the FIFTH CIRCUIT has declined to allow the element of state of mind to be met by a corporation's collective knowledge but must be met by showing the state of mind "actually exists" in the individual. *See Chaney v. Dreyfus Service Corp.*, 595 F.3d 219 (5th Cir. 2010). This failure transitions smoothly into Plaintiffs' failure to plausibly allege scienter in the actions of the Windspeed Employees with regards to the predicate acts. To show scienter, a plaintiff must plead that the defendant "act[ed] knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself." *Ranieri*, 336 F.

Supp.3d at 718. Furthermore, the pleadings must give rise to a strong inference of fraudulent intent. *Marriott Bros. v. Gage*, 704 F. Supp. 731, 740 (N.D. Tex. 1988).

20. As is alleged in both the motion to dismiss and this Reply, the Court will be hard-pressed to find any allegation in the Complaint which plausibly alleges that the Windspeed Employees exercised any control or supervision over a RICO enterprise, much less that the control or supervision was exercised with a specific intent to harm Plaintiff.

F. The Court Should Decline to Hear the State Law Claims

21. For the reasons set out in the Motion, this Court should decline supplement jurisdiction over the state law claims pled in the SAC.

### III. CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, the Windspeed Employees respectfully pray this Court grant the Motion and dismiss with prejudice all causes of action asserted by Plaintiffs in its Second Amended Complaint. The Windspeed Employees further respectfully request any additional relief to which they may be justly entitled.

\
\
\
\
\
\
\
\
\
\
\
\
\
\
\
\
\

Dated: September 20, 2022
Dallas, Texas

                                                           HIGIER ALLEN & LAUTIN, PC

                                                           By: <u>*/s/ Jason T. Rodriguez*</u>
                                                           Jason T. Rodriguez
                                                               Texas State Bar No. 24042827
                                                               *Attorney-In-Charge*
                                                           Timothy P. Woods
                                                               Texas State Bar No. 21965500
                                                          HIGIER ALLEN & LAUTIN, P.C.
                                                          2711 N. Haskell Ave., Suite 2400
                                                          Dallas, Texas 75204
                                                          Telephone: (972) 716-1888
                                                          Facsimile: (972) 716-1899
                                                          jrodriguez@higierallen.com
                                                          twoods@higierallen.com

                                            **ATTORNEYS FOR WINDSPEED TRADING, LLC, MR. WILLIAM SZETO, MS. ZHEXIAN LIN, MS. DANA MARIE TOMERLIN, MS. PADASAMAI VATTANA; MS. VANESSA TORRES**

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of September 2022, a true and correct copy of the foregoing document was served *via* the Court's ECF system and by email to the following parties.

| | |
|---|---|
| Jason B. Freeman<br>Freeman Law, PLLC<br>2595 Dallas Parkway, Suite 420<br>Frisco, Texas 75034<br>jason@freemanlaw-pllc.com<br><br>**Counsel for Plaintiff** | Edward P. Perrin, Jr.<br>Jennifer R. Poe<br>HALLETT & PERRIN, P.C.<br>1445 Ross Ave., Suite 2400<br>Dallas, Texas 75202<br>eperrin@hallettperrin.com<br>jpoe@hallettperrin.com<br><br>**Counsel for Baymark Defendants** |
| John David Blakley<br>William D. Dunn<br>DUNN SHEEHAN, LLP<br>3400 Carlisle Street, Suite 200<br>Dallas, Texas 75204<br>jdblakley@dunnsheehan.com<br><br>**Counsel for Super G Capital, LLC and Steven Bellah** | Andrea Levin Kim<br>DANIELS TREDENNICK, PLLC<br>6363 Woodway Dr., Ste. 700<br>Houston, Texas 77057<br>andrea.kim@dtlawyers.com<br><br>Rachel Williams<br>WILLIAMS LAW, PC<br>10300 N. Central Expry., Ste. 544<br>Dallas, Texas 75231<br>rachel@williamslawtx.com<br><br>**Counsel for SG Credit Partners, Inc. and Marc Cole** |
| Steven W Thornton<br>WESTERBURG & THORNTON PC<br>10440 N Central Expwy<br>Suite 800<br>Dallas, Texas 75231<br>steve@mwtlaw.com<br><br>**Counsel for Paula Ketter, Defendant** | |

                                                 */s/ Jason T. Rodriguez*
                                                   Jason T. Rodriguez