IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D&T PARTNERS, LLC, successor-in-interest to ACET Venture Partners, LLC, *et al* | § § § § | |
| *Plaintiff*, | § § | Civil Cause: 3:21-CV-1171-B |
| v. | § § | |
| BAYMARK PARTNERS, LP, *et al.*, | § § § | |
| *Defendants*. | § | |

**WINDSPEED AND MR. SZETO'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO WINDSPEED AND MR. SZETO'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6) AND BRIEF IN SUPPORT**

TO THE HON. JANE J. BOYLE;
UNITED STATES DISTRICT JUDGE:

COME NOW in this cause defendants Windspeed Trading, LLC ("Windspeed") and William Szeto ("Mr. Szeto," and together with Windspeed, "Defendants"), and files this, their *Windspeed and Mr. Szeto's Reply to Plaintiffs' Response in Opposition to Windspeed and Mr. Szeto's Motion to Dismiss Second Amended Complaint Pursuant to Rule 12(b)(6) and Brief in Support* (the "Reply"). In support of the Reply, Defendants would respectfully show the Court as follows:

**I. SUMMARY**

1. Put simply, the Plaintiffs have not cobbled together a RICO claim based on a UCC foreclosure. This is not an organized crime case, nor has it been pled as such. In this case, a plaintiff subordinated its lien to a defendant's lien. That defendant then foreclosed its interest on the collateral. Windspeed was the company that purchased the foreclosed assets. Upset with its position, plaintiff has pulled disparate and isolated acts together in an unsuccessful attempt to

create a RICO case. The SAC's physical length itself is a testament to the convoluted lengths Plaintiffs take to turn a business dispute into a RICO case.

2. Plaintiffs raise the banner of the unsecured creditors in their SAC to claim harm not just to them, but others. But Plaintiffs gloss over the fact that they also had a lien on the same collateral transferred to Windspeed. With Plaintiff's lien on the collateral, unsecured creditors would have received nothing regardless.

3. Defendants respectfully requests to incorporate the arguments of the other defendants filing replies. This request is made in the interest of judicial economy.

## II. ARGUMENTS AND AUTHORITY

A. This is Not a Case Concerning Long Term Criminal Conduct

4. Plaintiff cites to a potpourri of federal cases for its general conclusion that RICO was intended by Congress to have a broad outreach. *See* Response, pgs. 11-12, and 15. Plaintiff wants to stop the analysis there and find that RICO can touch any of the facts alleged and parties involved in this case. It would be an understatement to say that Plaintiff oversimplifies the analysis. Plaintiff heavily relies on *Sedima v. Imrex Co., Inc.*, 473 U.S. 479 (1985), which provides that RICO is to "be liberally construed to effectuate its remedial purposes." *See id.* at 498. What are those "remedial purposes"? Specifically, the remedial purposes of RICO are to combat long-term criminal conduct. *See GFRS Equipment Leasing Fund II LLC v. Diane Trang Nguyen*, 2019 WL 3530421, at *4 (N.D. Tex. Aug. 1, 2019 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). Though Plaintiff would wish to place all alleged bad deeds under the guise of RICO, there is a significant caveat to that approach: "RICO [is not] a surrogate for garden-variety fraud actions properly brought under state law." *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (quoting *Tabas v. Tabas*, 47 F.3d 1280, 1310 (3d Cir. 1995)); *Delta Truck &*

*Tractor, Inc.v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988) (RICO was not "intended to extend to fraudulent commercial transactions affecting interstate commerce").  Plaintiff's federal suit is exactly that, a garden-variety fraud suit vastly inflated to look like a RICO suit.

B. Plaintiffs Have Failed to Sufficiently Plead Continuity

5.      It is well established, there must be continuity in a fraudulent scheme in order for it to fall under RICO, and that continuity can be established by either alleging a "closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'"  *Zastrow v. Houston Auto Imports Greenway, Ltd.*, 789 F.3d 553, 561 (5th Cir. 2015).

6.      Continuity over an open period requires "a threat of continued racketeering activity."  *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)).  This may be established if it is plausibly alleged that the predicate acts "themselves involve a distinct threat of long-term racketeering activity" or "are part of an ongoing entity's regular way of doing business." *Id.* (quoting *H.J., Inc.*, 492 U.S. at 242-43).  It initially appeared from the Complaint that Plaintiff was alleging that alleged false testimony and perceived threats during a deposition were the predicate acts for its obstruction of justice claim.  It is clear Plaintiff makes a huge inferential leap, without explanation, that there exists a distinct threat of long-term racketeering activity.  Perhaps Plaintiff desires to argue that Defendants continued defense of this case is, in and of itself, a threat of long-term racketeering activity.  Such an argument does not pass muster.

7.      With regard to closed-end continuity, certain undue inferences are still made to establish continuity, especially with regards to an association-in-fact.  *See Delta Truck*, 855 F2d at 244 (an enterprise must not briefly flourish and fade but "function[] as a continuing unit").  To establish closed period continuity, the Plaintiffs need not just show that the events occurred over

a "substantial period of time". It is also relevant whether there was only one alleged scheme and whether there exists broad or ongoing criminal behavior at which the RICO statue was aimed.[1] Here, only one alleged "scheme" exited and there was no broad ongoing criminal behavior.

8.  Plaintiff has not established the continuity element of a RICO enterprise. According to Plaintiffs, the various co-conspirators of the RICO enterprise set out to do one thing: denude the assets of ACET in order to defraud one of its secured creditors, a plaintiff. This was accomplished, according to Plaintiffs, by transferring the assets of ACET over a few months into Windspeed and then making the transfer official by way of a back-dated foreclosure sale. Once the foreclosure sale took place and the assets were now the property of Windspeed, the mission was accomplished under Plaintiffs' theory. If Plaintiffs wish to cast Defendants' defense of pending litigation as an attempt to further defraud Plaintiffs, such alleged actions are being committed as part of an "otherwise lawful" defense and do not indicate a threat of continued criminal acts, which are necessary to show continuity. *See Zastrow*, 789 F.3d at 561. Therefore, the Complaint fails to sufficiently allege RICO claims against Defendants.

9.  Plaintiffs cite to *Cypress/Spanish Ft. I, L.P. v. Pro. Serv. Indus., Inc.*, 814 F. Supp. 2d 698 (N.D. Tex. 2011) for the proposition that a RICO claim can arise from a single "scheme". In the opinion the Court holds that continuity can be demonstrated "in various way", leaving the determination to the Court. *Cypress/Spanish Ft. I, L.P. v. Pro. Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 714 (N.D. Tex. 2011). Regardless of whether a single scheme can give rise to a RICO claim, the plaintiff must still demonstrate continuity. As set discussed in the Court's *Memorandum Opinion & Order*, it is still relevant that there was only one alleged scheme and there was no

---

[1] See this Court's *Memorandum Opinion & Order* at p. 13. [**Docket No. 89**]

alleged widespread ongoing criminal conduct. Plaintiffs have not remedied their shortcomings from the prior 1st Amended Complaint and the Court should dismiss the SAC for the same reasons.

C. Conspiracy Claims Also Fail

10.   As to conspiracy to commit RICO, Plaintiffs cite to the general standard that a plaintiff need only allege facts from which it may be inferred that a party had knowledge and agreed to participate in the scheme. *See* Response, pg. 20; *U.S. v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998). However, Plaintiffs leave out the inconvenient qualifier that "close association with conspirators, standing alone, will not support an inference of participation in the conspiracy." *U.S. v. Maltos*, 985 F.2d 743, 746 (5th Cir. 1992) (conspiracy may not be proven by placing defendant in "a climate of activity that reeks of something foul"). Furthermore, a defendant's knowledge of or participation in a conspiracy "will not be lightly infer[red]." *Id.* (citing *U.S. v. Jackson*, 700 F.2d 181, 185 (5th Cir. 1983). Plaintiffs do not plausibly allege that Defendants had actual knowledge of a conspiracy to defraud Plaintiff. Rather, Plaintiffs lean into Defendants' close affiliations with other defendants to ask the Court to infer that Defendants agreed to conspire in this scheme. The Court cannot infer knowledge or an agreement in this instance.

11.   Plaintiffs, seeking to over-state/misrepresent the elasticity of RICO, also relies on the *Reves v. Ernst & Young* opinion. 507 U.S. 170 (1993). Plaintiffs represent that the *Reves* opinion holds that any person could be liable as a RICO person, regardless of whether or not they exercised any supervisory authority over the enterprise or scheme. *See* Response, pg. 13. This was not the standard in 1993, and it is certainly not the standard now. In the Fifth Circuit, *Reves* is not interpreted to hold that any party could be a RICO person, but rather, the party must have supervisory involvement in the enterprise. *See Ranieri v. AdvoCare International, L.P.*, 336 F. Supp.3d 701, 717 (N.D. Tex. 2018). To satisfy the "conduct or participate" requirement for a

RICO person, the "plaintiff must set forth facts plausibly establishing that the defendant 'participated in the operation or management of the enterprise itself,' meaning that the defendant had 'some part in directing the enterprise's affairs.'" *Id.* (quoting *Reves*, 507 U.S. at 179, 183). In other words, the "proper RICO defendant must have some sort of supervisory involvement." *Id.* (citing *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015)). This is precisely what Defendants have argued is missing in the Complaint. In fact, the Complaint argues the opposite: that Mr. Szeto was a "puppet" doing the will of others.

12. Plaintiffs further argue that a plaintiff does not need to prove that a defendant personally committed a predicate act in order to sufficiently allege the defendant is a RICO person. *See* Response, pgs. 13-14 (citing *Simmons v. Jackson*, No. 3:15-cv-01700-S-BT, 2019 WL 3043927, at *3 (N.D. Tex. June 7, 2019)). Plaintiff ignores that it does, however, need to plausibly allege that the defendant helped plan/direct the scheme for which the predicate acts were committed and, if the defendant is a "lower rung participant," that it did so "under the direction of upper management." *See Ranieri*, 336 F. Supp.3d at 717 (plaintiffs allegations fail to show certain defendants "had the power to direct the enterprise's affairs or had any kind of supervisory involvement" and that they "were acting under the direction of anyone . . ."). Importantly, "RICO liability does not arise from promoting an enterprise in the course of conducting one's own affairs." *Id.* (citing *Reves*, 507 U.S. at 185). Given the full and accurate picture of what the law states, Plaintiff has not plausibly alleged that Defendants "conducted or participated" in the racketeering scheme.

13. With regard to *Boyle v. U.S.,* Plaintiffs argue that a RICO person need not practice any control over an association-in-fact because an enterprise does not require a "hierarchical structure or "chain of command." *See* Response, pg. 15; 556 U.S. 938 (2009). Plaintiffs asks the

Court to accept that it has sufficiently labeled Defendants as RICO persons by alleging they "acted in a manner outside the scope of their purpose or employment . . . ." *See* Response, pg. 20. However, Plaintiff misrepresents the relevance of *Boyle*'s holding. *Boyle* stands for the principal that the "structure" of an association-in-fact enterprise need not require a "hierarchical structure" or "chain of command." *See* 556 U.S. at 939. The opinion in *Boyle* does not conclude that a RICO person need not practice any control or take a supervisory role in the racketeering scheme. What *Boyle* **does** confirm is that any RICO person must have the "common purpose of engaging in a course of conduct" to be affiliated with an enterprise. *See id.* at 939. In this instance, Plaintiff seeks to manufacture support for its belief that Defendants need not exercise any control or supervision over the enterprise to be considered RICO persons. Plaintiff will find no support for its manufactured legal theories in *Boyle*, nor elsewhere.

D. Inferential Leaps to Allege RICO Liability

14.     In the Response, Plaintiffs enumerate the list of allegations which it insists show Defendants were sufficiently connected to the fraudulent scheme alleged in the SAC. *See* Response, pgs. 14-15. Missing from the list of allegations, as well as the SAC, is any allegation that Defendants orchestrated the wind-down or the formation of a new entity *in order to* defraud a secured creditor. Furthermore, any conclusory allegation that Defendants knew about the secured claim is contradicted by Mr. Szeto's own deposition testimony[2], attached as evidence to the Complaint. *See* Doc. No. 91, pg. 38.[3]

---

[2] The conclusory allegations are entitled to no weight because, "[i]f an attached exhibit contradicts a factual allegation in the complaint, then indeed the exhibit and not the allegation controls." *Quadwest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021); *see Miller v. SS Hosp. Grp., LLC*, 2018 WL 3054691, at *4 (N.D. Tex. 2018).

[3] It bears repeating that Plaintiff acknowledges the possibility that Mr. Szeto was never informed about Plaintiff's alleged secured loan. *See* Doc. No. 91, pg. 123, fn 70.

15. Plaintiffs' allegations that Defendants were involved in the wind-down, formation, and transfer of assets fail to sufficiently allege association with the enterprise when there is only an unfounded inference that Defendants participated in the enumerated actions in the Response in order to carry out a conspiracy to defraud Plaintiff. As the Northern District in *Ranieri* made clear, promoting an enterprise in the course of conducting one's own affairs does not make a party a participant in a fraudulent scheme. 336 F. Supp.3d at 717.

E. Plaintiff's Theory of Liability Suffers From Additional Defects

16. Plaintiffs argue that Windspeed is BOTH a RICO enterprise and a RICO defendant. *See* Doc. 91, pg. 185. As the FIFTH CIRCUIT has noted, such a practice is roundly criticized. *See Allstate Insurance Company v. Benhamou*, 190 F. Supp.3d 631, 649 (S.D. Tex. 2016) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 n. 16 (5th Cir. 2000)). On the one hand, Plaintiff seeks to emphasize that Windspeed was created for the purpose of perpetrating a fraud, yet also desires to treat Windspeed as a spoke in the wheel of an association-in-fact. The FIFTH CIRCUIT does not allow such tactics, and Plaintiff has effectively pled Windspeed out as a plausible RICO "person," since there is effectively no distinction between the RICO person and the RICO enterprise. *Id.* (citing *St. Paul Mercury Ins.*, 224 F.3d at 446-447).

17. Plaintiffs similarly argue, on the one hand, that Mr. Szeto is merely an autonomic puppet of other masters in the RICO enterprise while, on the other hand, arguing that it has sufficiently alleged that Mr. Szeto is a RICO person. Based on the proper standards which Plaintiff ignores, there must be an allegation from Plaintiff that Mr. Szeto exercised some control or supervision over the enterprise. Such allegations are nowhere to be found in the Complaint. *See* Doc. 91, pg. 68, ¶ 159 (the parties "…stripped Szeto of any actual control…").

18.     Plaintiffs seeks to establish a series of racketeering activity occurred by focusing in on an otherwise lawful commercial event and alleging multiple acts of fraud that were part and parcel of this lawful commercial event. Such allegations do not amount to a RICO claim. *See Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1462 (5th Cir. 1991); *see also Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118 (5th Cir. 1996); *Delta Truck*, 855 F.2d at 243-44. The otherwise lawful commercial event is the foreclosure sale of ACET's assets and the purchase by Windspeed. The fact that Plaintiffs allege the foreclosure sale was actually product of a fraudulent scheme does not suddenly bring the sale within the realm of RICO, especially when the foreclosure sale, and the alleged defrauding of Plaintiff's secured loan, was ultimately a "single, short-term goal." *See id.*

19.     Furthermore, Plaintiff cannot allege that the RICO association served a purpose beyond its stated goal of defrauding Plaintiff's secured claim. Once the assets of ACET were removed and left Plaintiff with no recourse, the goal of the association was attained, and the association would presumably "disband upon attainment of that goal." *See Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988). Accordingly, there is nothing linking the members of the association other than the alleged commission of the predicate criminal acts. *See id.*; *see also Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 433-34 (5th Cir. 1990) (once the result was obtained and follow-up actions taken, the enterprise ceased to exist, meaning no RICO association existed in fact).

F. The Court Should Decline to Hear the State Law Claims

20.     For the reasons set out in the Motion, this Court should decline supplement jurisdiction over the state law claims pled in the SAC.

## III. CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully pray this Court grant the Motion and dismiss with prejudice all causes of action asserted by Plaintiff in its Second Amended Complaint. Defendants further respectfully request any additional relief to which they may be justly entitled.

Dated: September 20, 2022
Dallas, Texas

                                  HIGIER ALLEN & LAUTIN, PC

                                  By: */s/ Jason T. Rodriguez*
                                  Jason T. Rodriguez
                                      Texas State Bar No. 24042827
                                      *Attorney-In-Charge*
                                  Timothy P. Woods
                                      Texas State Bar No. 21965500
                                  HIGIER ALLEN & LAUTIN, P.C.
                                  2711 N. Haskell Ave., Suite 2400
                                  Dallas, Texas 75204
                                  Telephone: (972) 716-1888
                                  Facsimile: (972) 716-1899
                                  jrodriguez@higierallen.com
                                  twoods@higierallen.com

**ATTORNEYS FOR WINDSPEED TRADING, LLC, MR. WILLIAM SZETO, MS. ZHEXIAN LIN, MS. DANA MARIE TOMERLIN, MS. PADASAMAI VATTANA; MS. VANESSA TORRES**

## CERTIFICATE OF SERVICE

   I hereby certify that on the 20th day of September 2022, a true and correct copy of the foregoing document was served *via* the Court's ECF system and by email to the following parties.

| | |
|---|---|
| Jason B. Freeman<br>Freeman Law, PLLC<br>2595 Dallas Parkway, Suite 420<br>Frisco, Texas 75034<br>jason@freemanlaw-pllc.com<br><br>**Counsel for Plaintiffs** | Edward P. Perrin, Jr.<br>Jennifer R. Poe<br>HALLETT & PERRIN, P.C.<br>1445 Ross Ave., Suite 2400<br>Dallas, Texas 75202<br>eperrin@hallettperrin.com<br>jpoe@hallettperrin.com<br><br>**Counsel for Baymark Defendants** |
| John David Blakley<br>William D. Dunn<br>DUNN SHEEHAN, LLP<br>3400 Carlisle Street, Suite 200<br>Dallas, Texas 75204<br>jdblakley@dunnsheehan.com<br><br>**Counsel for Super G Capital, LLC and Steven Bellah** | Andrea Levin Kim<br>DANIELS TREDENNICK, PLLC<br>6363 Woodway Dr., Ste. 700<br>Houston, Texas 77057<br>andrea.kim@dtlawyers.com<br><br>Rachel Williams<br>WILLIAMS LAW, PC<br>10300 N. Central Expry., Ste. 544<br>Dallas, Texas 75231<br>rachel@williamslawtx.com<br><br>**Counsel for SG Credit Partners, Inc. and Marc Cole** |
| Steven W Thornton<br>WESTERBURG & THORNTON PC<br>10440 N Central Expwy<br>Suite 800<br>Dallas, Texas 75231<br>steve@mwtlaw.com<br><br>**Counsel for Paula Ketter, Defendant** | |

            */s/ Jason T. Rodriguez*
             Jason T. Rodriguez